MORGAN, LEWIS & BOCKIUS LLP
Kathryn T. McGuigan, Bar No. 232112
kathryn.mcguigan@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Tel:   +1.213.612.2500
Fax:   +1.213.612.2501

MORGAN, LEWIS & BOCKIUS LLP
Zachary W. Shine, Bar No. 271522
zachary.shine@morganlewis.com
Nicole L. Antonopoulos, Bar No. 306882
nicole.antonopoulos@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105
Tel:   +1.415.442.1000
Fax:   +1.213.612.2501

Attorneys for Defendants
Charter Communications, LLC and
Charter Communications, Inc.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Lionel Harper, individually and on behalf of all others similarly and all aggrieved employees,<br><br>Plaintiff,<br><br>vs.<br><br>Charter Communications, LLC, Charter Communications, Inc., and Does 1 through 25,<br><br>Defendants. | Case No. 2:19-at-00392<br><br>[Shasta County Superior Court, Case No. 192423]<br><br>**DEFENDANTS CHARTER COMMUNICATIONS, LLC AND CHARTER COMMUNICATIONS, INC.'S NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA**<br><br>Diversity Jurisdiction Under The Class Action Fairness Act [28 U.S.C. §§ 1332(d), 1441, 1446 and 1453]<br><br>Complaint Filed: May 3, 2019 (Shasta County Superior Court) |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

NOTICE OF REMOVAL

DB2/ 36602707.5

**TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA, PLAINTIFF, AND HIS COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1453, Defendants Charter Communications, LLC, and Charter Communications, Inc. (together "Defendants") hereby remove the above-entitled action from the Superior Court of the State of California, in and for the County of Shasta, to the United States District Court for the Eastern District of California. This Court has original subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453, because diversity of citizenship exists and the amount in controversy exceeds $5,000,000 for purposes of CAFA.

More specifically, this removal is based on the following grounds:

**I.    PLEADINGS, PROCESS AND ORDERS**

1. On May 3, 2019, Plaintiff Lionel Harper ("Plaintiff") commenced this action in the Superior Court of the State of California for the County of Shasta, entitled *Lionel Harper v. Charter Communications, LLC, et al.*, Case No. 192423 (the "Complaint"). Plaintiff's Complaint alleges ten causes of action against Defendants: (1) failure to pay minimum wages for all hours worked in violation of California Labor Code §§ 1182.12, 1194, 1197, and 1194.4; (2) failure to pay overtime wages for all overtime hours worked in violation of California Labor Code §§ 510 and 1197; (3) failure to provide meal periods or pay premium wages in lieu thereof in violation of California Labor Code §§ 512 and 226.7; (4) failure to provide rest breaks or pay premium wages in lieu thereof in violation of California Labor Code § 226.7; (5) unlawful deduction of wages under California Labor Code § 221; (6) failure to provide accurate wage statements in violation of California Labor Code § 226; (7) failure to pay all wages owed upon termination in violation of California Labor Code § 203; (8) failure to provide timely and complete copies

of employment records in violation of California Labor Code §§ 226, 432, and 1198.5; (9) violation of California's Unfair Competition Law under California Business and Professions Code § 17200; and (10) civil penalties under the Private Attorney General Act ("PAGA").

2. Plaintiff served Defendants with his Complaint on May 7, 2019 (true and correct copies of the Complaint and Proofs of Service are attached hereto as **Exhibit A**.)

3. On May 17, 2019, Defendants filed and served their Answer to Plaintiff's Complaint. A true and correct copy of Defendants' Answer is attached as **Exhibit B**.

4. Exhibits A and B constitute all process, pleadings, and orders filed in this case.

## II. THE REMOVAL IS TIMELY

5. Without conceding that service of the Summons and Complaint was effective, this Notice of Removal is timely pursuant to 28 U.S.C. §1446(b) because it is being filed within thirty (30) days of completion of service on Defendants and within one (1) years of the commencement of this action. No previous Notice of Removal has been filed or made with this Court for the relief sought herein.

## III. THIS COURT HAS SUBJECT MATTER JURISDICTION

### A. The Court Has Original Subject Matter Jurisdiction Under CAFA

6. Removal under the Class Action Fairness Act("CAFA") diversity jurisdiction is proper pursuant to 28 U.S.C. §§ 1441, 1446, and 1453 because (i) diversity of citizenship exists between Plaintiff and one or more Defendants; (ii) the number of proposed class members is 100 or greater; and (iii) the amount placed in controversy by Plaintiff's Complaint exceeds, in the aggregate, $5 million, exclusive of interest and costs. 28 U.S.C. §§ 1332 (d)(2), 1453.

7. Plaintiff brings this action as a purported class action under Cal. Code Civ. Proc. § 382, with the class alleged to be "so numerous that joinder of all class

members is impracticable."[1]  Compl. ¶ 13.  Plaintiff alleges various class claims on behalf of an alleged class and two subclasses involving persons who were allegedly employed in California by Defendants.  *Id*. at ¶¶ 12, 14.  Plaintiff alleges that he currently lives in California, and worked in California for Defendants from approximately September 2017 until March 2018.  *Id*. at ¶ 5.  As demonstrated below, Plaintiff's class claims, when aggregated for all putative class members, place into controversy an amount in excess of $5 million.  Therefore, removal under CAFA diversity jurisdiction is proper pursuant to 28 U.S.C. §§ 1446 and 1453.

### B.  Diversity of Citizenship Exists for Purposes of CAFA.

8. In order to satisfy CAFA's diversity requirement, a party seeking removal need only show that minimal diversity exists, that is, that one putative class member is a citizen of a state different from that of one defendant.  28 U.S.C. § 1332(d)(2); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co*., 602 F.3d 1087, 1090-91 (9th Cir. 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)).  Plaintiff is a citizen of California and Defendants Charter Communications, Inc. and Charter Communications, LLC are not citizens of California. Thus, minimal diversity exists and removal is proper.

#### 1.  Plaintiff and the Members of the Putative Class Are California Citizens.

9. "An individual is a citizen of the state in which he is domiciled . . ." *Boon v. Allstate Ins. Co*., 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (*citing Kanter v. Warner-Lambert Co*., 265 F.3d 853, 857 (9th Cir. 2001)).  For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed.  *Armstrong v. Church of Scientology*

---

[1] Defendants do not concede, and reserve the right to contest at the appropriate time, Plaintiff's allegations that this action can properly proceed as a class action and/or representative action. Defendants further do not concede that any of Plaintiff's allegations constitute a cause of action under applicable California law.

*Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (*citing Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).  Evidence of continuing residence creates a presumption of domicile. *Washington v. Hovensa LLC*, 652 F.3d 340, 345 (3rd Cir. 2011); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir. 1994).  Once the removing party produces evidence supporting that presumption, the burden shifts to the other party to come forward with contrary evidence, if any, in order to dispute domicile.  *Id*.

10. At the time Plaintiff commenced this action and at the time of removal, Plaintiff was a citizen of the State of California.  In fact, Plaintiff alleges in this Complaint that he "is a resident of California."  Compl., ¶ 5. *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"), *citing*, *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).  Thus, Plaintiff is now and was, at the time of the filing of the Complaint, a citizen of California.

11. Members of the putative class are also alleged to be citizens of California, because Plaintiff purports to represent a putative class of all non-exempt employees who worked for Defendants in California within the four years. Compl. ¶ 12.

### 2. Defendant Charter Communications, Inc. Is Not A Citizen of California.

12. For diversity purposes, Defendant Charter Communications, Inc. is diverse from Plaintiff and putative members because it is not a citizen of California.

13. Pursuant to 28 U.S.C. § 1332, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The "principal place of business" for the purpose of determining diversity subject matter jurisdiction refers to "the place where a corporation's

officers direct, control, and coordinate the corporation's activities…[I]n practice it should normally be the place where the corporation maintains its headquarters- provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meeting[.]" *See Hertz Corp. v. Friend*, 559 U.S. 77, 92-93, 130 S. Ct. 1181, 1192 (2010).

14. Charter Communications, Inc. is now, and was at the time Plaintiff filed the Complaint, a corporation organized under the laws of the State of Delaware, with its principal place of business in Connecticut. Charter Communications, Inc.'s corporate decisions generally are made in Connecticut, including its operation, executive, administrative, and policymaking decisions. The majority of Charter Communications, Inc.'s executive officers principally conduct their business from headquarters in Connecticut. Thus, at all times relevant hereto, Charter Communications, Inc. has been a citizen of Connecticut, and not a citizen of California. 28 U.S.C. § 1332(c)(1).

### 3. Defendant Charter Communications, LLC Is Not A Citizen of California.

15. Charter Communications, LLC is a limited liability company which is treated the same as an unincorporated association for purposes of citizenship. *See Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). "Notwithstanding LLCs' corporate traits, however, every circuit that has addressed the question treats them like partnerships for purposes of diversity jurisdiction." *See id. citing, Gen. Tech. Applications, Inc. v. Exro Ltda.*, 388 F.3d 114, 120 (4th Cir. 2004); *GMAC Commercial Credit LLC v. Dillard Dep't Stores, Inc.*, 357 F.3d 827, 828-29 (8th Cir. 2004); *Rolling Greens MHP, L.P. v. Comcast SCH Holdings LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004); *Handelsman v. Bedford Village Assocs. Ltd P'ship*, 213 F.3d 48, 51 (2d Cir. 2000); *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998).

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 36602707.5

6                                NOTICE OF REMOVAL

16.     Therefore, for purposes of diversity jurisdiction, the corporate citizenship rule does not apply to LLCs. *See* 28 U.S.C. § 1332(c). Instead, the Ninth Circuit looks to the citizenship of each of the LLC's members. *See Johnson*, 437 F.3d at 899; *see also Carden v. Arkoma Assocs*., 494 U.S. 185, 189 (1990). Consistent with its sister circuits, the Ninth Circuit has held that, like a partnership, an LLC is a citizen of every state of which its owners/members are citizens. *See Johnson*, 437 F.3d at 899.

17.     Defendant Charter Communications, LLC is a Delaware limited liability company with its principal place of business in Missouri. The sole member of Defendant Charter Communications, LLC is Charter Communications Operating, LLC, which is a Delaware limited liability company with a principal place of business in Missouri.

18.     The sole member of Charter Communications Operating, LLC is CCO Holdings, LLC, which is a Delaware limited liability company with its principal place of business in Missouri.

19.     The sole member of CCO Holdings, LLC is Spectrum Management Holding Company, LLC, which is a Delaware limited liability company with its principal place of business in New York.

20.     Spectrum Management Holding Company, LLC's sole member is Charter Communications Holdings, LLC, a limited liability company organized in Delaware with its principal place of business and headquarters located in New York.

21.     Accordingly, Defendant, Charter Communications, LLC is not now, and was not at the time of the filing of the Complaint, a citizen and/or resident of the State of California for purposes of determining diversity jurisdiction. 28 U.S.C. § 1332(c)(1).

### 4. Doe Defendants

22. Although Plaintiff has named 25 fictitiously named "Doe" defendants, the citizenship of these "Doe" defendants is disregarded for purposes of removal. 28 U.S.C. § 1441(a); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998) (for removal purposes, the citizenship of defendants sued under fictitious names shall be disregarded); *see also Soliman v. Philip Morris, Inc.*, 311 F.3d 966, 971 (9th Cir. 2002). Thus, the inclusion of "Doe" defendants in Plaintiff's Complaint has no effect on Defendants' ability to remove.

23. Based on the Complaint, therefore, at least one member of the putative class is a citizen of a state different from that of Defendant Charter Communications, Inc., as Plaintiff is a citizen of California and Charter Communications, Inc. is a citizen of Connecticut. *See* 28 U.S.C. § 1332(d)(2)(A) (requiring only "minimal diversity" under which "any member of a class of plaintiffs is a citizen of a State different from any defendant").

### C. The Proposed Class Contains At Least 100 Members.

24. To qualify for removal under CAFA, a lawsuit must be brought on behalf of at least 100 putative class members. 28 U.S.C. §1332(d)(5). Plaintiff assert claims on behalf of himself and all nonexempt employees who worked for Defendants in California within four years from November 19, 2018. Compl. ¶ 12. Plaintiff also alleges a proposed class of "[a]ll salespersons employed by Defendants in California during the relevant time period" (the "Proposed Salesperson Class") and two proposed subclasses of"[a]ll salespersons employed by Defendants in California during the relevant time period whose employment was terminated" (the "Proposed Termination Pay Subclass"), and "[a]ll persons employed by Defendants in California during the relevant time period who were eligible for commission wages" (the "Proposed Commissions Subclass"). Compl. ¶ 14. A review of Defendants' records shows that, based on Plaintiff's definitions, the proposed class contains well over 100 current and former employees.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 36602707.5

8    NOTICE OF REMOVAL

**D.     The CAFA Amount In Controversy Requirement Is Satisfied.**

25.     A class action may be removed under CAFA if the claims place in controversy an aggregated amount that "exceeds the sum or value of $5,000,000, exclusive of interests and costs." *See* 28 U.S.C. § 1332(d)(6).

26.     A removing defendant "must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553 (2014) (citation omitted).  This short and plain statement "need include only a *plausible* allegation that the amount in controversy exceeds the jurisdictional threshold." *Id*. at 554 (emphasis added).  "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." *Korn v. Polo Ralph Lauren Corp*., 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (citing *Rippee v. Boston Market Corp.,* 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)).  This burden "is not 'daunting'"; indeed, courts "recognize that under this standard, a removing defendant is not obligated to 'research, state, and prove the plaintiff's claims for damages.'" *Korn*, 536 F. Supp. 2d at 1204-05.  The defendant needs only "provide evidence . . . that it is 'more likely than not' that the amount in controversy" satisfies the federal diversity jurisdictional amount requirement." *Sanchez v. Monumental Life Ins. Co*., 102 F.3d 398, 404 (9th Cir. 1996).

27.     Moreover, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the applicability of CAFA should be resolved in favor of federal jurisdiction. *See* Senate Judiciary Report, S. REP. 109-14, at 42 ("If a federal court is uncertain about whether 'all matters in controversy' in a purported class action do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case."); *id.* at 43 ("Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions.  Its provisions should be read broadly,

with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

28. In assessing the amount in controversy, a court must "assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012) (citing *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter,* 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)).

29. While Defendants deny Plaintiff's factual allegations and deny that he or any putative class members is entitled to any of the relief, aggregating the maximum potential value of their claims places into controversy an amount exceeding $5,000,000.[2] *Rhoades v. Progressive Casualty Ins., Co.*, 410 Fed. App'x. 10, 11 (9th Cir. 2010) ("'[O]nce the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million, . . . then the case belongs in federal court unless it is *legally impossible* for the plaintiff to recover that much.'" (quoting *Lewis v. Verizon Commc'ns Inc.*, No. 10-56512, 2010 WL 4645465, *4 (9th Cir. 2010) (emphasis added)).

30. The fact that a complaint fails to specify the total amount of damages in a dollar amount does not deprive this Court of jurisdiction. *Banta v. Am. Med. Response Inc.*, No. CV 11-03586 GAF RZX, 2011 WL 2837642, at *1 (C.D. Cal. July 15, 2011) ("Case law recognizes that, even where a pleading is indefinite on its face, a defendant may possess sufficient information allowing it to ascertain that the amount in controversy exceeds the jurisdiction minimum, may remove the action to

---

[2] This Notice of Removal discusses the nature and amount of damages placed at issue by Plaintiff's Complaint. Defendants' references to specific damage amounts and their citation to comparable cases are provided solely for the purpose of establishing that the amount in controversy is more likely than not in excess of the jurisdictional minimum. Defendants maintain that each of Plaintiff's claims is without merit and that Defendants are not liable to Plaintiff or any putative class member. In addition, Defendants deny that liability or damages can be established on a class-wide basis. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover any damages based on the allegations of the Complaint or otherwise.

federal court on that basis, and, if challenged, may present evidence to prove up the existence of removal jurisdiction.").

### 5. Information Relevant to The Amount In Controversy

31. Plaintiff's Complaint seeks to recover damages, penalties, restitution, pre-judgment and post-judgment interest, attorneys' fees and costs, and declaratory and injunctive relief, based on California wage and hour claims he asserts in the Complaint

32. Because Plaintiff alleges that he properly filed his claims in arbitration on November 18, 2018 (which Defendants specifically deny), the class period sought by Plaintiff for the entire action is from November 18, 2014 through the present. From November 18, 2014 through the present, Defendant Charter Communications, LLC[3] employed approximately 1,083 account executives.[4] Approximately 238 of these individuals have separated from their employment with Charter Communications, LLC since November 18, 2013 (the three year period preceding filing of the Complaint, per the applicable statute of limitations for waiting time penalty claims under Labor Code § 203). *Id.*

33. Between November 18, 2014 and the present, the 1,083 account executive putative class members were employed a total of approximately 99,660 workweeks.[5] While Plaintiff was employed as an exempt employee, for purposes of this petition only and without conceding he was nonexempt. Defendants have calculated the amount in controversy based on the computed average hourly rate of account executives during new class period. The average hourly wage for the 1,083 account executive putative class members during this period was approximately

---

[3] Plaintiff was employed by Defendants Charter Communications, LLC. Defendants maintain that Charter Communications, Inc. is therefore not a proper Defendant in this action.

[4] Although Plaintiff alleges a putative class of all nonexempt current and former employees of Defendants in California, for purposes of this removal, Defendants limit the amount in controversy analysis to putative class members with the same job title as Plaintiff, i.e., "account executive."

[5] While Plaintiff was employed as an exempt employee, for purposes of this petition only and without conceding he was nonexempt. Defendants have calculated the amount in controversy based on the computed average hourly rate of account executives during new class period.

$24.02. Defendants pay wages to California account executives on a bi-weekly basis, for a total of 26 pay periods per year.

### 6. Plaintiff's Wage Statement Claim Puts Into Controversy More Than $1,700,000 Million.

34. In his Sixth Cause of Action, Plaintiff alleges Defendants failed to provide accurate wage statements that reflected total hours worked, all deductions, and all gross and next wages earned, including minimum, overtime, and commission wages. Ex. A, Compl., ¶ 51. Plaintiff further alleges that he and the class he purports to represent are entitled to recover the greater of his actual damages or statutory penalties, costs, and reasonable attorneys' fees *Id*. ¶ 53.

35. Labor Code section 226(e) provides that an employee is entitled to recover the greater of all actual damages or $50 for the initial violation and $100 for each subsequent violation, up to a maximum of $4,000, plus costs and reasonable attorneys' fees, if an employer knowingly and intentionally fails to provide an accurate, itemized wage statement. Cal. Labor Code § 226(e). Such an award may be granted for each wage statement issued that fails to comply with section 226's requirements. Thus, according to Plaintiff's theory, he would be entitled to no less than $50 for the first violation, plus $100 for each subsequent violation, for every pay period during the class period where he allegedly did not receive an accurate statement of wages, subject to a maximum award of $4,000. This maximum award of $4,000 would be reached if he (or employees similarly situated) received 41 or more allegedly inaccurate wage statements ($50 first alleged violation + 40 alleged subsequent violations x $100 = $4,050, in excess of the statutory maximum); or, in other words, was employed for at least 41 pay periods. In addition, under Plaintiff's wage statement claim, each member of the putative class that he purports to represent would also be entitled to such an award, up to a maximum award of $4,000 for each putative class member.

36. There is a one-year statute of limitations on this claim. *See* Cal. Code

Civ. Proc. §340(a); *Martinez v. Morgan Stanley & Co. Inc.*, 2010 WL 3123175, *6 (S.D. Cal. August 9, 2010). Thus, the statute of limitation on Plaintiff's statutory penalty claim for inaccurate wage statements under § 226(e) commences on November 18, 2017. Between November 18, 2017 and May 17, 2019 for the account executive putative class members, there are 682 initial pay periods at $50 each for a total of $34,100 ($50 x 682 initial pay periods) and 17,106 subsequent pay periods at $100 each, for a total of $1,710,600 ($100 x 17,106). In total, these numbers yield $1,744,700 at issue on Plaintiff's wage statement claim.

### 7. Plaintiff's Waiting Time Penalties Claim Puts into Controversy Over $1,300,000.

37. Plaintiff's Seventh Cause of Action for waiting time penalties alleges that Defendants failed to pay Plaintiff and other employees who were terminated or quit all due but unpaid wages. Ex. A, Compl. ¶ 56. He seeks waiting time penalties for up to 30 days. *Id.* ¶ 55, 57.

38. Of the 1,083 account executive putative class members, 238 are former employees. The amount of waiting time penalties at issue per former employee per day on average, is $192.08 ($24.01 x 8 hours). For purposes of calculating Labor Code Section 203 penalties, therefore, the amount at issue for each former employee on average is $5,762.40 ($192.08 x 30 days). Accordingly, Plaintiff's claim for waiting time penalties on behalf of all former account executive putative class members under California Labor Code Sections 201, 202 and 203 places at issue approximately $1,371,451.20 (238 formerly employed account executive putative class members x $5,762.40).

### 8. Plaintiff's Meal Period Claim Puts Into Controversy More Than $2,200,000.

39. Plaintiff's Third Cause of Action alleges that Defendants failed to provide putative class members with meal breaks in violation of California law. Ex. A, Compl. ¶34. More specifically, he alleges that Defendants "failed to provide timely, off-duty, uninterrupted 30-minute meal periods…" Ex. A, Compl. ¶ 34. He

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 36602707.5

13

NOTICE OF REMOVAL

also alleges that Defendants "did not allow Plaintiff and other nonexempt employees to clock-out and clock-in for each meal period and accurately record the existence and length of each meal period taken…" *Id*. ¶ 34. Further, Plaintiff alleges that Defendants never paid Plaintiff any premium wages for meal periods that were untimely or that were missed, shortened, interrupted, or on-duty. ¶ 35

40. Under California law, employers must "provide" their employees with a 30-minute, uninterrupted meal period after five hours of work. Cal. Lab. Code § 512(a); *Brinker v. Superior Court*, 53 Cal. 4th 1004, 1040 (2012). In addition, employers must "authorize and permit" employees to take a 10-minute, uninterrupted rest period for every four hours worked or major fraction thereof. *Brinker*, 53 Cal. 4th at 1028-29. If an employer fails to provide such breaks (as is alleged in Plaintiff's Complaint), then the employer must pay the employee a premium wage equal to one hour of pay for each missed break. *Brinker*, 53 Cal. 4th at 1018; Cal. Lab. Code § 226.7(c). The one hour of premium pay is paid at the employee's regular hourly rate. *Murphy v. Kenneth Cole Prods.*, 40 Cal. 4th 1094 (2007).

41. If, as Plaintiff contends, putative class members were not provided with meal breaks, they would be entitled to one hour of premium pay for each missed meal period per day at the employee's regular hourly rate. *Murphy v. Kenneth Cole Productions*, 40 Cal. 4th 1094 (2007). Thus, taking as true Plaintiff's claim that Defendants did not provide meal breaks (as Plaintiff's Third Cause of Action alleges), account executive putative class members would be eligible for one hour of premium pay for each day worked. *See Muniz v. Pilot Travel Centers LLC*, No. CIV.S-07-0325 FCD EFB, 2007 WL 1302504 (E.D. Cal. May 1, 2007) (where plaintiff does not allege facts specific to the circumstances of allegedly missed meal and/or rest periods, defendant may use 100% violation rate in calculating the amount in controversy).

42. Although Defendants would be entitled for purposes of this Petition to

estimate that putative class members missed a meal five times per week, here Defendants' estimate is based on just one claimed missed meal period per week, and just for the account executive employees.

43. Using 48 actual workweeks in a 52-week year (to account for vacations, holidays, and days off) has been found to be a "good faith" estimate of the actual number of days employees worked when calculating the amount in controversy under CAFA. *See Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009). Consequently, using a conservative estimate of only one hour of meal period premium pay per week (i.e., one unprovided meal period), based on 48 work weeks per year, the amount in controversy is approximately **$2,209,696** (99,660 total work weeks x 48/52 x 1 hour of premium pay per week x $24.02 average hourly rate).

### 9. Plaintiff's Rest Period Claim Puts Into Controversy More Than $2,200,000.

44. Plaintiff's Fourth Cause of Action alleges that Defendants failed to provide putative class members with rest breaks in violation of California law. Ex. A, Compl., ¶¶ 38-41. Plaintiff alleges Defendants failed to provide timely, off-duty, uninterrupted 10-minute rest periods to Plaintiff and others. *Id.* at ¶ 39. Plaintiff also alleges that Defendants failed to compensate Plaintiff and others one additional hour of pay for each day a compliant rest period was not provided. *Id.*

45. If, as Plaintiff contends, putative class members were not provided with rest breaks, they would be entitled to one hour of premium pay for each missed rest break per day at the employee's regular hourly rate. *Murphy v. Kenneth Cole Productions*, 40 Cal. 4th 1094 (2007); *United Parcel Service Wage and House Cases v. Superior Court*, 196 Cal. App 4th 57, 65-59 (2011). Thus, taking as true Plaintiff's claim that Defendants did not provide rest breaks (as Plaintiff's Fourth Cause of Action alleges), putative class members would be eligible for one hour of premium pay for each day worked. *See Muniz v. Pilot Travel Centers LLC*, No.

CIV.S-07-0325 FCD EFB, 2007 WL 1302504 (E.D. Cal. May 1, 2007) (where plaintiff does not allege facts specific to the circumstances of allegedly missed meal and/or rest periods, defendant may use 100% violation rate in calculating the amount in controversy).

46. For purposes of this calculation, Defendants' estimate is based on just one claimed rest period penalty per week for account executive putative class members. Consequently, using a conservative estimate of only one hour of rest period premium pay per week (i.e., one not permitted rest period), based on 48 work weeks per year, the amount in controversy is approximately **$2,209,696** (99,660 total work weeks x 48/52 x 1 hour of premium pay per week x $24.02 average hourly rate).

### 10. The Complaint Also Seeks Recovery of Attorneys' Fees.

47. The Complaint also seeks attorneys' fees. Ex. A, Compl. (Prayer for Relief) ¶ J. Attorneys' fees are properly included in determining the amount in controversy. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 698 (9th Cir. 2007); *Sanchez v. Wal-Mart Stores, Inc.*, No. Civ. S-06-cv-2573 DFL KJM, 2007 WL 1345706, *2 (E.D. Cal. May 8, 2007) ("Attorney's fees, if authorized by statute or contract, are also part of the calculation"). Plaintiff's attorneys' fees are not limited to the amount incurred as of the time of removal. In *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029 (N.D. Cal. 2002), for example, the court held that "[attorneys' fees] necessarily accrue until the action is resolved" and, thus, the Ninth Circuit [in *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998)] must have anticipated that district courts would project fees beyond removal." 209 F. Supp. 2d at 1034-1035. As such, the *Simmons* court held that the "measure of [attorneys'] fees should be the amount that can reasonably be anticipated at the time of removal, not merely those already incurred." 209 F. Supp. 2d at 1035.

48. Although Defendants deny Plaintiff's claim for attorney's fees, for purposes of removal, the Ninth Circuit uses a benchmark rate of 25% of potential damages as the amount of attorney's fees. *In re Quintus Securities Litigation*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (benchmark for attorneys' fees is 25% of the common fund). Given the **$3,116,151** ($1,744,700 wage statement penalties + $1,371,451 waiting time penalties) amount in controversy discussed above, an award of 25% attorney's fees would increase the amount in controversy by $779,037.75.

### 11. The Amount in Controversy Is Satisfied for CAFA Jurisdiction Purposes.

49. Thus, although Defendants deny Plaintiff's allegations and deny that he or the class and subclasses that he purports to represent are entitled to the relief for which he has prayed, based on Plaintiff's allegations, theories, and prayer for relief, the amount he has placed in controversy well exceeds the $5 million threshold set forth under CAFA, based on only a few of the causes of action and for only the account executive putative class members, which represents a *fraction* of the putative class alleged in the Complaint.

50. Based on the calculations contained in this Notice of Removal, Plaintiff has placed into controversy at least $8,314,580 ($1,744,700 wage statement penalties + $1,371,451 waiting time penalties + $2,209,696 meal period premiums + $2,209,696 rest period premiums + $779,037 attorneys fees).

51. The allegations in Plaintiff's First Cause of Action for failure to pay minimum wage, Second Cause of Action for failure to pay overtime wages, Fifth Cause of Action for unlawful deduction of wages, Eighth Cause of Action for failure to provide timely and complete copies of employment records, Ninth Cause of Action for violation of California's unfair competition law, and Tenth Cause of Action for PAGA civil penalties *further increase* the amount in controversy.

## IV. THE OTHER PREREQUISITES FOR REMOVAL HAVE BEEN SATISFIED

### A. VENUE

52. Venue lies in the Eastern District of California pursuant to 28 U.S.C. § 1441(a), because this action was originally brought in the Superior Court of the State of California, County of Shasta, which lies within the Eastern District of California. Therefore, this is the appropriate court for removal.

### B. NOTICE

53. Defendants will promptly serve this Notice of Removal on all parties and will promptly file a copy of this Notice of Removal with the Superior Court of the State of California, County of Shasta, as required under 28 U.S.C. § 1446(d).

## V. CONCLUSION

54. Based on the foregoing, Defendants respectfully request that this action be removed to this Court. Defendants have sought no other relief. If any question arises as to the propriety of the removal of this action, Defendants request the opportunity to present a brief and oral argument in support of its position that this case is removable.

Dated: May 17, 2019                    MORGAN, LEWIS & BOCKIUS LLP

By */s/ Kathryn T. McGuigan*

Kathryn T. McGuigan
Zachary W. Shine
Nicole L. Antonopoulos
Attorneys for Defendant
Charter Communications, LLC and
Charter Communications, Inc.