# EXHIBIT A

Jamin S. Soderstrom, Bar No. 261054
**SODERSTROM LAW PC**
3 Park Plaza, Suite 100
Irvine, California 92614
Tel:    (949) 667-4700
Fax:    (949) 424-8091
jamin@soderstromlawfirm.com

*Counsel for Plaintiff and the Proposed Class*

**FILED**

MAY 0 3 2019

CLERK OF THE SUPERIOR COURT
BY: B. PACKHAM, DEPUTY CLERK

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF SHASTA

| | |
|---|---|
| **LIONEL HARPER, individually and on behalf of all others similarly situated and all aggrieved employees,** | Case No. **192423** |
| **Plaintiff,** | **CLASS AND PAGA ACTION COMPLAINT** |
| v. | |
| **CHARTER COMMUNICATIONS, LLC, CHARTER COMMUNICATIONS, INC., and DOES 1 through 25,** | **DEMAND FOR JURY TRIAL** |
| **Defendants.** | |

1

CLASS AND PAGA ACTION COMPLAINT

BY FAX

1  Plaintiff LIONEL HARPER ("Plaintiff"), brings this action against Defendants CHARTER

2  COMMUNICATIONS, LLC, CHARTER COMMUNICATIONS, INC., and DOES 1 through 25

3  (collectively, "Defendants"), and alleges as follows:

4  **JURISDICTION & VENUE**

5  1.  This action is brought by Plaintiff individually and on behalf of a class of similarly

6  situated employees who performed work for Defendants in California during the relevant time periods.

7  The Court has general jurisdiction over this action under Code Civ. Proc., § 410.10. The amounts of

8  wages, damages, and penalties sought by Plaintiff exceed the jurisdictional minimum and will be

9  established according to proof at trial.

10  2.  Venue is proper under Code Civ. Proc., §§ 395 and 395.5, because one or more

11  Defendants resides in this county and because a substantial portion of the events forming the basis of

12  this action occurred in this county.

13  3.  On September 14, 2018, Plaintiff complied with the requirements of Labor Code section

14  2699.3(a) by providing written notice via online filing to the Labor and Workforce Development

15  Agency ("LWDA"), and via certified mail return receipt requested to Defendants, of the specific

16  provisions of the Labor Code alleged to have been violated, including the facts and theories that support

17  the alleged violations. Plaintiff did not receive notice from the LWDA that it intended to investigate the

18  violations alleged in Plaintiff's written notice. Plaintiff therefore has complied with Labor Code section

19  2699.3's notice requirements and is authorized to commence a civil action under the Private Attorneys

20  General Act, Lab. Code § 2698 et seq. ("PAGA"). A copy of Plaintiff's written PAGA notice is attached

21  as **Exhibit 1**.

22  4.  On November 19, 2018, Plaintiff filed with JAMS a Demand for Arbitration and Request

23  for Ruling as to Inarbitrability based on a delegation requirement in the Parties' written agreement to

24  arbitrate. The Honorable Rebecca J. Westerfield (Retired) was appointed by JAMS as the arbitrator. On

25  April 25, 2019, the arbitrator issued a final award, styled an Order Dismissing Arbitration, dismissing

26  the arbitration in its entirety for lack of arbitration jurisdiction because the agreement to arbitrate was

27  null and void based on "poison pill" provision. A copy of the final award issued by the arbitrator is

28  attached as **Exhibit 2**.

1

**PARTIES**

2        5.      Plaintiff LIONEL HARPER is a resident of California. Plaintiff worked for Defendants

3    as a salesperson in California from approximately September 2017 until March 2018.

4        6.      Defendant CHARTER COMMUNICATIONS, LLC is a company doing business in

5    California. CHARTER COMMUNICATIONS, LLC was a joint employer of Plaintiff and similarly

6    situated individuals and is an affiliate of CHARTER COMMUNICATIONS, INC.

7        7.      Defendant CHARTER COMMUNICATIONS, INC. is a company doing business in

8    California. CHARTER COMMUNICATIONS, INC. was a joint employer of Plaintiff and similarly

9    situated individuals and is an affiliate of CHARTER COMMUNICATIONS, LLC.

10       8.      Plaintiff does not know the true names or capacities, whether individual or corporate, of

11   defendants sued as DOES 1 through 25 and, for that reason, sues such defendants under fictitious names.

12   Plaintiff is informed and believe that each DOE defendant was responsible in some respect for the

13   violations alleged herein and proximately caused Plaintiff and other similarly situated employees to be

14   subject to illegal employment practices and to suffer harm, and that each DOE defendant controlled

15   their work and was a joint employer. Plaintiff will seek leave to amend as and when the true names and

16   capacities of each DOE defendant become known.

17

**BACKGROUND**

18       9.      Defendants market and sell various services, including television, Internet, and phone

19   services, in California and nationwide.

20       10.     Plaintiff worked for Defendants in California as a salesperson from September 2017 to

21   March 2018. During his employment, Plaintiff worked with numerous other similarly situated

22   employees. Plaintiff's working experience gave him a thorough understanding of Defendants'

23   employment policies and practices.

24       11.     Plaintiff personally experienced and witnessed Defendants engaging in unlawful and

25   unfair business practices. Defendants continue to commit these unlawful and unfair business practices

26   to this day.

27   ///

28   ///

**CLASS ACTION ALLEGATIONS**

12.     Plaintiff brings this action as a class action under Cal. Code Civ. Proc. § 382 on behalf of all nonexempt employees who worked for Defendants in California within four years from November 19, 2018, the date Plaintiff filed the demand for arbitration concerning the claims asserted in this action and sought a ruling of inarbitrability based on lack of arbitration jurisdiction.

13.     The members of the class are so numerous that joinder of all class members is impracticable.

14.     Plaintiff reserves the right to amend the following class and subclass definitions before the Court determines whether class certification is appropriate, or thereafter upon leave of Court:

**Proposed Salesperson Class**

All salespersons employed by Defendants in California during the relevant time period.

**Proposed Termination Pay Subclass**

All salespersons employed by Defendants in California during the relevant time period whose employment was terminated.

**Proposed Commissions Subclass**

All persons employed by Defendants in California during the relevant time period who were eligible for commission wages.

15.     Common questions of law and fact exist include, but are not limited to:

a.     whether Defendants accurately kept track of Plaintiff's and class members' working hours;

b.     whether Defendants required Plaintiff and class members to record compliant meal periods regardless of whether compliant meal periods were provided;

c.     whether Defendants provided Plaintiff and class members off-duty, uninterrupted, timely meal periods and rest breaks;

d.     whether Defendants provided Plaintiff and class members paid rest breaks;

e.     whether Defendants paid premium wages when compliant meal periods and rest breaks were not provided;

4

f.      whether Defendants timely paid all wages due to terminated employees; and

g.      whether Defendants improperly classified Plaintiff and class members as exempt from certain Labor Code requirements, generally or with respect to training days and weeks.

16.    Plaintiff is a member of each of the classes and subclasses he seeks to represent and Plaintiff suffered harm and damages as a result of Defendants' conduct alleged herein.

17.    Plaintiff's claims are typical of the claims of other class members and Plaintiff has the same interests as the other members of the class.

18.    Plaintiff will fairly and adequately represent and protect the interests of the class. Plaintiff has retained able counsel experienced in employment and class action litigation. Plaintiff's interests are not antagonistic to the interests of other class members.

19.    The questions of fact and law common to Plaintiff and members of the class and subclasses predominate over any questions affecting only individual members.

20.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all class members is impractical. Moreover, since the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation makes it practically impossible for the class members to individually redress the wrongs committed against them.

21.    The class and appropriate subclasses are readily definable and prosecution of this action as a class action will eliminate the possibility of repetitive litigation. There will be no difficulty in the management of this action as a class action.

## CAUSES OF ACTION

### Count One

#### Failure to Pay Minimum Wages for All Hours Worked

22.    Plaintiff incorporates all prior paragraphs.

23.    Labor Code sections 1182.12, 1194, and 1197 requires employers to pay at least the legal minimum wage for all hours worked by nonexempt employees in California.

///

1    24.    As a matter of policy and practice, Defendants failed to pay Plaintiff and other employees

2    the required minimum wages for all hours worked. Specifically, but without limitation, Defendants

3    regularly required Plaintiff and other employees during training to work a full day and then complete

4    homework after the work day ended. The training and homework required employees to work more than

5    8 hours in a day, but Defendants did not keep track of or pay employees all wages owed for the time

6    worked over 8 hours in a day or 40 hours in a week during training. Defendants further failed to properly

7    keep track of all hours worked outside of training weeks and failed to pay employees all wages owed

8    for the time worked over 8 hours in a day or 40 hours in a week. Plaintiff and other similarly situated

9    employees were misclassified as exempt employees during all of their training days as well as their post-

10   training days.

11   25.    As a result of these policies and practices, Defendants do not pay its training employees

12   and post-training employees all of the minimum and overtime wages they are due, do not maintain

13   complete records of all time worked, and do not provide accurate wage statements. Plaintiff worked

14   more than 8 hours each training day and more than 40 hours each training week, and he was not paid

15   wages for all hours worked.

16   26.    Plaintiff was deprived of the minimum wages he was owed as a direct result of

17   Defendants' unlawful actions. Defendants have violated Labor Code sections 1182.12, 1194, and 1197,

18   and under Labor Code section 1194.2, Plaintiff and similarly situated employees are entitled to recover

19   unpaid minimum wages, liquidated damages, interest, costs, and reasonable attorneys' fees.

20                                          **Count Two**

21            **Failure to Pay Overtime Wages for All Overtime Hours Worked**

22   27.    Plaintiff incorporates all prior paragraphs.

23   28.    Labor Code section 510 requires employers to compensate all nonexempt employees at

24   1.5 times their regular hourly rate for all hours worked over 8 hours in a day and over 40 hours in a

25   week, and two times their regular hourly rate for all hours worked over 12 hours in a day or over 8 hours

26   on the seventh day of the week.

27   ///

28   ///

CLASS AND PAGA ACTION COMPLAINT

1    29.    As a matter of policy and practice, Defendants failed to pay Plaintiff and other employees

2  the required overtime wages for all hours worked. Specifically, but without limitation, Defendants

3  regularly required Plaintiff and other employees during training to work a full day and then complete

4  homework after the work day ended. The training and homework combined required employees to work

5  more than 8 hours in a day, but Defendants did not keep track of or pay employees all wages owed for

6  the time worked over 8 hours in a day or 40 hours in a week during training. Defendants further failed

7  to properly keep track of all hours worked outside of training weeks and failed to pay employees all

8  wages owed for the time worked over 8 hours in a day or 40 hours in a week. Plaintiff and other similarly

9  situated employees were misclassified as exempt employees during all of their training days as well as

10  their post-training days.

11    30.    As a result of these policies and practices, Defendants do not pay its training employees

12  and post-training employees all of the minimum and overtime wages they are due, do not maintain

13  complete records of all time worked, and do not provide accurate wage statements. Plaintiff worked

14  more than 8 hours each training day and more than 40 hours each training week, and he was not paid

15  overtime wages for all overtime hours worked.

16    31.    Plaintiff was deprived of the overtime wages he was owed for all hours worked as a result

17  of Defendants' unlawful actions. Defendants have violated Labor Code sections 510 and 1197, and

18  Plaintiff and similarly situated employees are entitled to recover unpaid overtime wages, interest, costs,

19  and reasonable attorneys' fees.

20                                    **Count Three**

21          **Failure to Provide Meal Periods or Pay Premium Wages In Lieu Thereof**

22    32.    Plaintiff incorporates all prior paragraphs.

23    33.    Labor Code section 512 requires employers to provide an off-duty, uninterrupted 30-

24  minute meal period if the employee works more than five hours in a day, and a second meal period if

25  the employee works more than 10 hours in a day. These meal periods must be free of all work duties.

26    34.    Defendants failed to provide timely, off-duty, uninterrupted 30-minute meal periods to

27  nonexempt employees like Plaintiff and failed to compensate them one additional hour of pay for each

28  meal period that is missed, shortened, interrupted, on-duty, or untimely. Defendants did not require or

1   allow Plaintiff and other nonexempt employees to clock-out and clock-in for each meal period and

2   accurately record the existence and length of each meal period taken, and knowingly suffered, permitted,

3   or required work to be performed during what should be a meal period. Defendants failed to provide

4   compliant meal periods both during training weeks and after training weeks.

5       35.     Defendants never paid Plaintiff any premium wages for meal periods that were untimely

6   or that were missed, shortened, interrupted, or on-duty.

7       36.     Defendants have violated Labor Code sections 512 and 226.7, and Plaintiff and similarly

8   situated employees are entitled to recover premium wages in the amount of one additional hour of pay

9   at his regular rate of pay for each violation, costs, and reasonable attorneys' fees.

10                              **Count Four**

11      **Failure to Provide Rest Breaks or Pay Premium Wages In Lieu Thereof**

12      37.     Plaintiff incorporates all prior paragraphs.

13      38.     Labor Code section 226.7 requires employers to provide a rest period mandated by an

14  applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission,

15  the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health.

16  Under paragraph 12 of the governing Industrial Wage Order, employers must permit nonexempt

17  employees to take 10 minutes of rest for every four hours worked, taken in the middle of the work period

18  unless impracticable. Under Labor Code section 226.7 and paragraph 12 of the governing Industrial

19  Wage Order, when employers do not provide compliant rest breaks, they must pay employees an

20  additional hour of pay at the employees' regular rate of pay for each violation.

21      39.     Defendants failed to provide timely, off-duty, uninterrupted 10-minute rest periods to

22  nonexempt employees like Plaintiff and failed to compensate them one additional hour of pay for each

23  day a compliant rest period was not provided. Defendants failed to provide compliant rest breaks both

24  during training and during post-training work.

25  ///

26  ///

27  ///

28  ///

1    40.    Defendants never paid Plaintiff or other employees any premium wages for rest breaks
2 that were untimely or were missed, shortened, interrupted, or on-duty.

3    41.    Defendants have violated Labor Code section 226.7, and Plaintiff and similarly situated
4 employees are entitled to recover premium wages in the amount of one additional hour of pay at his
5 regular rate of pay for each violation, costs, and reasonable attorneys' fees.

6                                    **Count Five**

7                    **Unlawful Deduction of Wages under Section 221**

8    42.    Plaintiff incorporates all prior paragraphs.

9    43.    California Labor Code sections 221, 223, and 224 protect employees against unlawful
10 deductions of their earned wages. Under Section 221, "It shall be unlawful for any employer to collect
11 or receive from an employee any part of wages theretofore paid by said employer to said employee."
12 Relatedly, under Section 223, "Where any statute or contract requires an employer to maintain the
13 designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the
14 wage designated by statute or by contract." Section 224 authorizes certain deductions that an employee
15 "expressly authorize[s] in writing," but forbids deductions that amount to a "rebate or deduction from
16 the standard wage . . . pursuant to wage agreement or statute." Additionally, under California Labor
17 Code section 2751, when an employer enters into a contract of employment and the contemplated
18 payment method includes commissions, the contract must "set forth the method by which the
19 commissions shall be computed and paid."

20    44.    Defendants recruit and incentivize sales employees like Plaintiff by emphasizing their
21 ability to earn commissions. However, Defendants impose unlawful and unfair incentive compensation
22 terms and then fail to pay all amounts owed under such terms. The terms result in Defendants unlawfully
23 and unfairly keeping, failing to pay, and/or deducting Plaintiff's and other employees' commission
24 wages.

25    45.    Defendants also failed to perform all of their obligations under the terms and unfairly
26 construes the terms and modifies the terms in their own favor.

27 ///

28 ///

9

CLASS AND PAGA ACTION COMPLAINT

46.     Defendants have not paid Plaintiff and similarly situated employees all of the commission wages they are owed, and have unlawfully and unfairly deducted, reconciled, or clawed back commission wages that were properly earned.

47.     Defendants violated Sections 221, 223, and 224 each time they failed to correctly and fairly calculate and pay earned commission and each time they have deducted, clawed back, or otherwise reconciled Plaintiff's and other employees' incentive compensation. Defendants further relied on methods for the computation and payment of commissions that are not set forth in the applicable terms in violation of Section 2751.

48.     Defendants have violated Labor Code sections 221, 223, 224, and 2751, and Plaintiff and similarly situated employees are entitled to recover the amount of deductions unlawfully taken, interest, costs, and reasonable attorneys' fees.

## Count Six

### Failure to Provide Accurate Wage Statements

49.     Plaintiff incorporates all prior paragraphs.

50.     Labor Code section 226 provides that employers shall furnish their employees with accurate itemized statements in writing showing gross wages earned, total hours worked, all deductions, net wages earned, all applicable hourly rates and the corresponding number of hours worked at each hourly rate, and the inclusive dates of all pay periods.

51.     As explained above, Defendants failed to keep accurate records reflecting Plaintiff's and other employees' hours worked and when meal periods occurred. Defendants also failed to provide accurate wages statements that reflected the total hours worked, all deductions, and all gross and net wages earned, including minimum, overtime, and commission wages. Plaintiff's wage statements never reflected any premium wage being paid for late, shortened, missed, or on-duty meal periods or rest breaks. Plaintiff's final several wage statements also failed to accurately record the time worked, wages due, and inclusive dates of the applicable pay periods.

52.     Defendants' violations were knowing and willful.

///

///

53.    Plaintiff and similarly situated employees are entitled to recover the greater of his actual damages or statutory penalties, costs, and reasonable attorneys' fees.

**Count Seven**

**Failure to Pay All Wages Owed Upon Termination**

54.    Plaintiff incorporates all prior paragraphs.

55.    Labor Code section 201 provides that discharged employees are entitled to be paid all wages due at the time of discharge, and Labor Code section 202 provides that employees who quit without at least 72 hours' notice are entitled to be paid all wages due within 72 hours of quitting. Under Labor Code section 203, willful failure to timely pay discharged and quitting employees all wages due requires employers to pay waiting time penalties in the amount of one day's compensation at the employees' regular rates of pay for each day the wages are not paid, up to 30 days.

56.    Defendants failed to timely and accurately pay Plaintiff and other employees who were terminated or quit all due but unpaid wages, and Defendants do not pay any wages as waiting time penalties. As discussed above, Defendants did not accurately record all hours worked and all meal period and rest breaks taken late, missed, shortened, or interrupted, and Defendants do not pay premium wages when a compliant meal period or rest break is not provided. Nor do Defendants pay all incentive compensation that is earned and payable. Consequently, when Defendants paid Plaintiff and other former employees' final paychecks, they were all miscalculated and too small.

57.    Plaintiff and similarly situated employees are entitled to recover waiting time penalties, costs, and reasonable attorneys' fees.

**Count Eight**

**Failure to Provide Timely and Complete Copies of Employment Records**

58.    Plaintiff incorporates all prior paragraphs.

59.    Labor Code section 226 requires employers to keep for a least three years copies of Plaintiff's wage statements and to provide them within 21 days of the date of a request. Labor Code section 432 requires employers to provide employees with a copy of any instrument that the employee signed related to his or her obtaining or holding of employment. Labor Code section 1198.5 requires

1  employers to provide employees within 30 days from the date of a request copies of their personnel

2  records.

3        60.    On June 5, 2018, Plaintiff, through his counsel via a written and signed authorization,

4  requested that Defendants provide copies of his personnel file, including all wage statements,

5  instruments he signed or acknowledged concerning his employment, and other records concerning his

6  obtaining and holding of employment, pursuant to Labor Code sections 226, 432, and 1198.5. On July

7  3, 2018, counsel for Defendants responded to Plaintiff's request in writing refusing to produce any

8  records and took the position that (i) an email sent by Plaintiff to a JAMS representative inquiring about

9  the possibility of a mediation constituted "the pendency of [a] lawsuit in the court with original

10  jurisdiction" during which time Defendants obligations under Labor Code section 1198.5 ceases, and

11  (ii) only an employee personally, not an employee's authorized legal representative, is entitled to request

12  copies of records under Labor Code sections 226 and 432.

13        61.    Defendants failed to produce any records under Labor Code sections 226, 432, and

14  1198.5 within the statutory time periods. On July 18, 2018, more than six weeks after Employee's

15  written request, Defendants finally consented to producing such records to Plaintiff's counsel.

16  Defendants ultimately produced an incomplete set of Plaintiff's records on September 4, 2018, 13 weeks

17  after his initial written request. Defendants failed to provide copies of any offer letter, all records related

18  to Plaintiff's performance and obtaining/holding employment, the employee handbook that governed

19  Plaintiff's employment, and signed copies or acknowledgements of such records.

20        62.    Plaintiff is entitled to recover a $750 statutory penalty, costs, and reasonable attorneys'

21  fees for violation of Section 226 and another $750 statutory penalty, costs, and reasonable attorneys'

22  fees for violation of Section 1198.5. Plaintiff is also entitled to injunctive relief to require Defendants'

23  future compliance with Sections 226 and 1198.5.

24  **Count Nine**

25  **Violation of California's Unfair Competition Law ("UCL")**

26        63.    Plaintiff incorporates all prior paragraphs.

27        64.    California Business and Professions Code section 17200 ("UCL") defines unfair

28  competition as an "unlawful" or "unfair" business act or practice.

1    65.    Defendants are each a "person" under UCL section 17021.

2    66.    Defendants have engaged and continue to engage in business practices that are both
3    unlawful and unfair and therefore violate the UCL.

4    67.    Defendants' failures described above—including their failures to pay all minimum,
5    overtime, and commission wages, provide compliant meal periods and rest breaks or pay premium
6    wages in lieu thereof, and provide complete and accurate wage statements, their taking of unlawful
7    deductions and failure to provide timely copies of employment records, and their misclassification of
8    sales persons during training weeks and post-training weeks—all constitute unlawful acts and practices
9    prohibited by the Labor Code and UCL. These failures also independently constitute unfair acts and
10   practices under the UCL.

11   68.    As a result of their unlawful and unfair acts and practices, Defendants have reaped and
12   continue to reap unfair benefits and illegal profits at the expense of Plaintiff and other nonexempt
13   employees.

14   69.    Defendants should be made to disgorge their ill-gotten gains and restore to Plaintiffs and
15   class members as restitution the wrongfully withheld wages to which they are entitled, as well as interest
16   on such wages.

17   70.    Plaintiff and other nonexempt employees also seek and are entitled to individual,
18   representative, and public injunctive and declaratory relief that compels Defendants to stop their
19   unlawful and unfair practices and fix their broken timekeeping, recordkeeping, and wage payment
20   systems and practices and their employee classifications.

21   71.    This action is designed to ensure the enforcement of important rights affecting the public
22   interest generally and the interests of a large number of employees. The necessity and financial burden
23   of private enforcement is great, and the risks to the named Plaintiff for stepping forward are also
24   significant. Plaintiff is thus entitled to recover reasonable attorneys' fees upon prevailing, and, in the
25   interest of justice, such fees should not be paid out of the recovery. *See* Cal. Code Civ. Proc. § 1021.5.

26   ///

27   ///

28   ///

**Count Ten**

**PAGA Civil Penalties**

72.     Plaintiff incorporates all prior paragraphs.

73.     Plaintiff is an aggrieved employee under PAGA. On September 14, 2018, Plaintiff timely filed a written PAGA notice with the LWDA and sent a copy of such notice by certified mail return receipt requested to Defendants. Plaintiff is authorized to bring a civil action against Defendants under PAGA and recover civil penalties in addition to other forms of available relief.

74.     Plaintiff identifies and seeks to recover civil penalties for the following Labor Code violations and any others discovered during the pendency of this arbitration:

a.     Failure to calculate and pay minimum and overtime wages in violation of Labor Code sections 510, 1182.12, and 1197;

b.     Failure to provide timely, complete, and uninterrupted meal periods and rest breaks or pay premium wages in lieu thereof in violation of Labor Code sections 226.7 and 512;

c.     Unlawful deductions in violation of Labor Code sections 221, 223, 224, and 2751;

d.     Failure to pay all wages earned upon termination or quitting and failure to pay waiting time penalty wages in violation of Labor Code sections 201, 202, and 203;

e.     Failure to pay all wages earned at least twice during each calendar month in violation of Labor Code section 204;

f.     Failure to maintain accurate and complete records and issue accurate wage statements in violation of Labor Code sections 226 and 1174(d); and

g.     Failure to timely provide a copy of personnel records upon request in violation of Labor Code sections 226, 432, and 1198.5.

75.     Plaintiff seeks to recover civil penalties on behalf of the state and all aggrieved employees who performed work for Defendants during the relevant time period under the sections of the Labor Code identified above, under Labor Code sections 201, 202, 203, 204, 210, 223, 225.5, 226, 226.3, 226.7, 256, 510, 512, 558, 558.1, 1174, 1174.5, 1182.12, 1194, 1194.2, 1197, 1197.1, 1197.5, 1198.5, 1206, and 2699, and under any additional Labor Code sections that Defendants violated as determined during the pendency of this action.

1        76.     Plaintiff further seeks to recover reasonable costs and attorneys' fees.

2 **PRAYER FOR RELIEF**

3      WHEREFORE, Plaintiff, individually and on behalf of all of Defendants' similarly situated

4 employees in California, pray for the following relief:

5      A.     Certification of this action as a class action;

6      B.     Designation of Plaintiff as a class representative and counsel for Plaintiffs as class

7 counsel;

8      C.     An award of all unpaid or underpaid wages, with interest;

9      D.     An award of actual and liquidated damages;

10      E.     Individual, representative, and public equitable, injunctive, and declaratory relief to

11 remedy Defendants' violations of California law, including but not limited to an order enjoining

12 Defendants from continuing their unlawful and unfair timekeeping, recordkeeping, wage payment, and

13 related practices;

14      F.     Statutory penalties;

15      G.     Civil penalties;

16      H.     Restitution and disgorgement;

17      I.     Pre-judgment and post-judgment interest as allowed by law;

18      J.     Reasonable attorneys' fees and costs under the Labor Code and/or under Cal. Code Civ.

19 Proc. § 1021.5; and

20      K.     Such additional and further relief as this Court may deem just and proper.

21

22 Dated: May 3, 2019                   SODERSTROM LAW PC

23                             By: _____

24                            *Counsel for Plaintiff and the Proposed Class*

25

26

27

28

15

1

**JURY TRIAL DEMANDED**

2

Plaintiff demands a trial by jury of all issues triable by jury.

3

4    Dated: May 3, 2019                          SODERSTROM LAW PC

5                                                By: _____

6                                                *Counsel for Plaintiff and the Proposed Class*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS AND PAGA ACTION COMPLAINT

# EXHIBIT 1



**SODERSTROM**
——— LAW ———

| 3 Park Plaza, Suite 100 | 949.667.4700 (phone) |
| Irvine, California 92614 | 949.424.8091 (facsimile) |
| soderstromlawfirm.com | jamin@soderstromlawfirm.com |

September 14, 2018

**BY ONLINE FILING**

Labor & Workforce Development Agency
Attn: PAGA Administrator
1515 Clay Street, Suite 801
Oakland, California 94612
PAGA@dir.ca.gov

**BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

| Charter Communications, LLC<br>Attn: Legal Department<br>7800 Crescent Executive Dr.<br>Charlotte, North Carolina 28217<br><br>Charter Communications, Inc.<br>Attn: Legal Department<br>400 Atlantic Street<br>Stamford, Connecticut 06901 | Copy via email to Charter's counsel:<br><br>Morgan, Lewis & Bockius LLP<br>Zachary W. Shine<br>One Market, Spear Street Tower<br>San Francisco, California 94105<br>zachary.shine@morganlewis.com |

Re:     *Notice of Violations of the California Labor Code*

To Whom It May Concern:

Soderstrom Law PC represents Lionel Harper ("Employee"), a former employee of Charter Communications, LLC, Charter Communications, Inc., and possibly one or more of their affiliates (collectively, "Defendant"). In accordance with California Labor Code section 2699.3, and on behalf of Employee and all aggrieved employees, this letter gives written notice to the Labor & Workforce Development Agency and to Defendant of serious and ongoing violations of the California Labor Code.

Employee is an "aggrieved employee" as the term is used in California's Private Attorneys General Act, Labor Code § 2698 *et seq.* ("PAGA"). The violations described below occurred during or in connection with his and other workers' employment with Defendant, and he has

Business Law    |    Employment Law    |    Consumer Law    |    Intellectual Property

September 14, 2018
PAGA Administrator
Charter Communications, LLC
Charter Communications, Inc.
Page 2 of 7

personal knowledge of such violations. On information and belief, the violations are ongoing. Accordingly, unless we are notified of an investigation by the Administrator within the period established by Section 2699.3, Soderstrom Law PC intends to commence and/or supplement existing claims in connection with a civil action brought against Defendant for the violations described herein and to seek all civil penalties available on behalf of the State.

## I.   LIABLE EMPLOYER

Defendant markets and sells various services, including television, Internet, and phone services, to consumers in California and nationwide. As Employee's employer, Defendant is liable for any and all violations of the Labor Code committed against Employee and all other aggrieved employees who performed work in California during the relevant time period and for the civil penalties provided for by the Labor Code.

## II.   AGGRIEVED EMPLOYEES

Employee is a resident of Redding, California. From September 2017 to March 2018, Employee worked for Defendant in California. Employee worked with many other employees during his employment, and his experience gave him a thorough understanding of Defendant's employment policies and practices. As detailed below, Employee personally suffered from Defendant's Labor Code violations and witnessed and learned of the same and other violations committed against other of Defendant's employees in California.

## III.   KNOWN LABOR CODE VIOLATIONS

Defendant committed the following Labor Code violations against Employee and/or other employees who performed work for Defendant in California. Upon information and belief, Defendant continues to commit the same or substantially similar violations to this day.

### A.   Failure to Accurately Calculate and Pay Minimum Wages and Overtime Wages in Violation of Labor Code Sections 510, 1182.12, and 1197 and the Governing Industrial Wage Order

Under Labor Sections 1182.12 and 1197 as well as paragraph 4 of the governing Industrial Wage Order, an employer must pay an employee at least the minimum applicable wage, as set by the statutes and Department of Industrial Relations, for all hours that the employee has been suffered or permitted to work. Additionally, under Labor Code section 510 and paragraph 3 of the governing Industrial Wage Order, an employer must compensate an employee at the rate of no less than one and one-half times the employee's regular rate of pay for any work in excess of eight hours in one day, any work in excess of 40 hours in one work week, and the first eight hours worked on the seventh day of work in any one work week. Any work in excess of 12 hours in one day and any work in excess of eight hours on any seventh day of a workweek must be compensated at a rate no less than twice the employee's regular rate of pay.

September 14, 2018
PAGA Administrator
Charter Communications, LLC
Charter Communications, Inc.
Page 3 of 7

As a matter of policy and practice, Defendant failed to pay Employee and other employees the required minimum and overtime wages for all hours worked. Specifically, but without limitation, Defendant regularly required employees during training to work a full day and then complete homework after the work day ended. The training and homework combined required employees to work more than 8 hours in a day, but Defendant did not keep track of or pay employees all wages owed for the time worked over 8 hours in a day or 40 hours in a week during training. Defendant further failed to properly keep track of all hours worked outside of training weeks and failed to pay employees all wages owed for the time worked over 8 hours in a day or 40 hours in a week.

As a result of these policies and practices, Defendant does not pay its training employees and post-training employees all of the minimum and overtime wages they are due, does not maintain complete records of all time worked, and does not provide accurate wage statements.

Defendant's violations of Labor Code Sections 510, 1182.12, and 1197 and paragraphs 3 and 4 of the governing Wage Order have aggrieved Employee and other similarly situated employees in California.

**B.      Failure to Provide Uninterrupted Meal Periods and Rest Breaks and Failure to Pay Premium Wages in Violation of Labor Code Sections 226.7, 512(a), and the Governing Industrial Wage Order**

Under Labor Code section 512(a) and paragraph 11 of the governing Industrial Wage Order, an employer may not require its employees to work more than five hours per day without providing an off-duty, uninterrupted meal period of not less than 30 minutes, and it may not require its employees to work more than 10 hours a day without providing a second 30-minute meal period. A meal period must begin no later than the end of the fifth hour of work. And under Labor Code section 226.7 and paragraph 11 of the governing Wage Order, if the employer does not provide these required meal breaks, the employer must pay the employee an additional hour of pay for each workday that the meal period is not provided.

Additionally, under paragraph 12 of the governing Industrial Wage Order, an employer must permit its employees to take 10 minutes of rest for every four hours worked or major fraction thereof, taken in the middle of the work period unless impracticable. And under Labor Code section 226.7 and paragraph 12 of the governing Wage Order, if the employer does not provide the required rest breaks, the employer must pay the employee an additional hour of pay for each workday that a rest period is not provided.

Defendant fails to provide timely, off-duty, uninterrupted 30-minute meal periods to nonexempt employees like Employee and fails to compensate them one additional hour of pay for each meal period that is missed, shortened, interrupted, on-duty, or untimely. Defendant does not require or allow Employee and other nonexempt employees to clock-out and clock-in for each meal period and accurately record the existence and length of each meal period taken, and

September 14, 2018
PAGA Administrator
Charter Communications, LLC
Charter Communications, Inc.
Page 4 of 7

knowingly suffers, permits, or requires work to be performed during what should be a meal period. Defendant fails to provide compliant meal periods and rest breaks both during training weeks and after training weeks.

Defendants' violations of Labor Code Sections 512 and 226.7, and paragraphs 11 and 12 of the governing Wage Order have aggrieved Employee and other similarly situated employees.

## C. Unlawful Commission Deductions in Violation of Labor Code Sections 221, 223, 224, and 2751

California Labor Code sections 221, 223, and 224 protect employees against unlawful deductions of their earned wages. Under Section 221, "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." Relatedly, under Section 223, "Where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract." Section 224 authorizes certain deductions that an employee "expressly authorize[s] in writing," but forbids deductions that amount to a "rebate or deduction from the standard wage . . . pursuant to wage agreement or statute." Additionally, under California Labor Code section 2751, when an employer enters into a contract of employment and the contemplated payment method includes commissions, the contract must "set forth the method by which the commissions shall be computed and paid."

Defendant recruits and incentivize sales employees like Employee by emphasizing their ability to earn commissions. However, Defendant imposes unlawful and unfair incentive compensation terms and then fails to pay all amounts owed under such terms. The terms result in Defendant unlawfully and unfairly keeping, failing to pay, and/or deducting Employee's and other employees' commission wages.

Defendant also fails to perform all of its obligations under the terms and unfairly construes the terms and modifies the terms in its favor.

Defendant has not paid Employee and similarly situated employees all of the commission wages they are owed, and has unlawfully and unfairly deducted, reconciled, or clawed back commission wages that were properly earned.

Defendant violated Sections 221, 223, and 224 each time it failed to correctly and fairly calculate and pay earned commission and each time it has deducted, clawed back, or otherwise reconciled Employee's and other employees' incentive compensation. Defendant further relied on methods for the computation and payment of commissions that are not set forth in the applicable terms in violation of Section 2751. Defendant's violations of Labor Code Sections 221, 223, 224, and 2751 have aggrieved Employee and similarly situated employees.

///

September 14, 2018
PAGA Administrator
Charter Communications, LLC
Charter Communications, Inc.
Page 5 of 7

### D. Willful Failure to Pay All Wages Earned Upon An Employee's Termination or Quitting and Failure to Pay Penalty Wages in Violation of Labor Code Sections 201, 202, and 203

Under Labor Code sections 201 and 202, an employer must pay an employee all unpaid wages immediately upon that employee's termination or within 72 hours if the employee has quit without providing advanced notice. And under Labor Code section 203, if an employer willfully fails to comply with Sections 201 or 202, the employee is entitled to continued wages up to 30 days from the date the unpaid wages were originally due to when they were actually paid.

Defendant fails to timely and accurately pay Employee and other employees who are terminated or quit all due but unpaid wages, and Defendant does not pay any wages as waiting time penalties. As discussed above, Defendant does not accurately record all hours worked and all meal period and rest breaks taken late, missed, shortened, or interrupted, and Defendant does not pay premium wages when a compliant meal period or rest break is not provided. Nor does Defendant pay all incentive compensation that is earned and payable. Consequently, when Defendant paid Employee and other former employees' final paychecks, they were all miscalculated and too small.

Defendant's violations of Labor Code section 201 and 202 have aggrieved Employee and other former employees who were terminated or quit. Defendant's failure to pay penalty wages under Labor Code section 203 has further aggrieved Employee and other former employees.

### E. Failure to Pay All Wages Earned at Least Twice During Each Calendar Month in Violation of Labor Code Section 204

Under Labor Code section 204, an employer must pay all wages earned by any employee, other than those mentioned in Sections 201, 201.3, 202, 204.1, or 204.2, twice during each calendar month, on days designated in advance by the employer as the regular paydays.

Defendant's failures described above—including the failure to pay all minimum and overtime wages due, the failure to pay premium wages in lieu of compliant meal periods and rest breaks, and the failure to properly calculate and pay all commission wages—caused it also to fail to pay all wages earned by Employee and similarly situated employees at least twice monthly.

Defendant's violations of Labor Code section 204 have aggrieved Employee and other similarly situated employees because they were not timely or accurately paid all wages earned at least twice each month.

///

///

///

September 14, 2018
PAGA Administrator
Charter Communications, LLC
Charter Communications, Inc.
Page 6 of 7

**F.      Failure to Maintain Accurate Records and Wage Statements in Violation of Labor Code Sections 226 and 1174(d) and the Governing Industrial Wage Order**

Under Labor Code section 1174(d), an employer must maintain at least three years of accurate payroll records reflecting each employee's hours worked daily and the wages paid to them. And under paragraph 7 of the governing Industrial Wage Order, these records must also show the employee's rate of pay, when each work period began and ended, and when meal periods and split shift intervals occurred.

Labor Code section 226 and paragraph 7 of the governing Wage Order further require an employer to provide its employees with accurate, semi-monthly itemized wage statements that reflect the employee's gross and net wages earned, total hours worked, all deductions, the inclusive dates of the pay period, and all applicable hourly rates.

As explained above, Defendant failed to keep accurate records reflecting Employee's and other employees' hours worked and when meal periods occurred. Defendant also failed to provide accurate wages statements that reflected the total hours worked, all deductions, and all gross and net wages earned, including commission wages. Employee's wage statements never reflected any premium wage being paid for late, shortened, missed, or on-duty meal periods or rest breaks. Employee's final several wage statements also failed to accurately record the time worked, wages due, and inclusive dates of the applicable pay periods.

Defendant's willful violations of Labor Code sections 226 and 1174(d) and the governing Wage Order have aggrieved Employee and other similarly situated employees.

**G.      Failure to Timely Provide a Copy of Personnel Records Upon Request in Violation of Labor Code Sections 226, 432, and 1198.5**

Under Labor Code section 226(c), an employer must provide employees, within 21 calendar days from the date of a request, copies of the records required to be kept under section 226(a) (i.e., wage statements).

Under Labor Code section 432, an employer must provide employees a copy of any instrument that the employee signed related to his or her obtaining or holding of employment.

Under Labor Code section 1198.5, an employer must provide employees, within 30 days from the date of a request, copies of their personnel records.

In a letter dated June 5, 2018, Employee, through his counsel via a written and signed authorization, requested that Defendant provide copies of his personnel file, including all wage statements, instruments he signed or acknowledged concerning his employment, and other records

September 14, 2018
PAGA Administrator
Charter Communications, LLC
Charter Communications, Inc.
Page 7 of 7

concerning his obtaining and holding of employment, pursuant to Labor Code sections 226, 432, and 1198.5.

On July 3, 2018, counsel for Defendant responded to Employee's request in writing refusing to produce any records and took the position that (i) an email sent by Employee to a JAMS representative inquiring about the possibility of a mediation constituted "the pendency of [a] lawsuit in the court with original jurisdiction" during which time its obligations under Labor Code section 1198.5 ceases, and (ii) only an employee personally, not an employee's authorized legal representative, is entitled to request copies of records under Labor Code sections 226 and 432.

Defendant failed to produce any records under Labor Code sections 226, 432, and 1198.5 within the statutory time periods. On July 18, 2018, more than six weeks after Employee's written request, Defendant finally consented to producing such records to Employee's counsel. Defendant ultimately produced an incomplete set of Employee's records on September 4, 2018, 13 weeks after Employee's initial written request. Defendant failed to provide copies of any offer letter, all records related to Employee's performance and obtaining/holding employment, the employee handbook that governed Employee's employment, any signed copies or acknowledgements of such records.

Defendant's violation of Labor Code sections 226, 432, and 1198.5 has aggrieved Employee.

## IV. CIVIL PENALTIES FOR LABOR CODE VIOLATIONS

Due to the above-described violations and similar violations that may be identified after further investigation or during discovery, Defendant is liable as an employer for specific or default civil penalties as provided by Labor Code section 2699 as well as Labor Code sections 201, 202, 203, 204, 210, 223, 225.5, 226, 226.3, 226.7, 256, 510, 512, 558, 558.1, 1174, 1174.5, 1182.12, 1194, 1194.2, 1197, 1197.1, 1197.5, 1198.5, and 1206.

Please contact me at 949.667.4700 or jamin@soderstromlawfirm.com if you would like to discuss this matter.

Very truly yours,

SODERSTROM LAW PC

Jamin S. Soderstrom

# EXHIBIT 2

Hon. Rebecca J. Westerfield (Ret.)
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111
Tel: (415) 982-5267
Fax: (415) 982-5287

ARBITRATOR

## JAMS ARBITRATION

| | |
|---|---|
| LIONEL HARPER, | REF NO. 1100104486 |
| Claimant, | |
| v. | ORDER DISMISSING ARBITRATION |
| CHARTER COMMUNICATIONS, LLC, CHARTER COMMUNICATIONS, INC., and DOES 1 to 25, | |
| Respondents. | |

## I.      **Introduction**

Claimant Lionel Harper ("Harper") brings this arbitration against
Respondents Charter Communications, LLC and Charter Communications, Inc.
(collectively, "Charter") for (1) Failure to pay minimum wages for all hours

1

worked; (2) Failure to pay overtime wages for all overtime hours worked; (3) Failure to provide meal periods or pay premium wages in lieu thereof; (4) Failure to provide rest breaks or pay premium wages in lieu thereof; (5) Unlawful deduction of wages under Section 221; (6) Failure to provide accurate wage statements; (7) Failure to pay all wages owed upon termination; (8) Failure to provide timely and complete copies of employment records; (9) Violation of California's Unfair Competition Law; and (10) PAGA civil penalties. These causes of action arise from Harper's employment with Charter from September 2017 until March 2018. When Harper was hired by Charter, he agreed to a Mutual Agreement to Arbitrate ("Arbitration Agreement").

Currently before the Arbitrator is Harper's Motion for Threshold Rulings Regarding Arbitrability. In this Motion, Harper seeks the following threshold rulings from the Arbitrator:

(1) The Arbitrator has the authority to decide all issues related to enforceability, scope, and arbitrability raised in the Demand.

(2) The Arbitration Agreement is "null and void" by its own terms because it includes invalid and unenforceable waivers of the right to bring representative claims, the right to act as a representative of the State and other aggrieved employees, and the right to seek public injunctive relief in any form.

(3) Because the Arbitration Agreement is "null and void," the Arbitrator has no jurisdiction over Harper's claims, and the arbitration must be dismissed in its entirety.

## II.  Analysis

### A.  The Arbitrator has authority to decide all issues related to enforceability, scope, and arbitrability raised in the Demand

Harper contends that the Arbitrator has authority to decide whether the Arbitration Agreement is "null and void." Charter does not dispute this point.

2

Rule 11 of the JAMS Rules provides that the "Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter."

### B.      The Arbitration Agreement includes an invalid and unenforceable Waiver

1.      The pre-dispute Waiver of Harper's right to bring or participate in a representative PAGA action is invalid and unenforceable.

Harper argues that the waiver in the Arbitration Agreement ("Waiver") is invalid and unenforceable because it is a pre-dispute waiver of Harper's right to bring or participate in a representative action brought under PAGA. The Waiver provides:

> You and Charter understand, acknowledge and agree that the terms of this Agreement include a waiver of any rights that you or Charter may have to bring or participate in an action against each other on a representative, class, or collective basis and understand and agree that the arbitrator shall not be permitted to order consolidation of claims or a representative, class, or collective, arbitration. This waiver does no take away or restrict your or Charter's rights to pursue your or its own claims, but only requires that any such claims be pursued in your or Charter's own individual capacity, rather than on an representative, class, or collective basis.

In Iskanian v. CLS Transportation Los Angeles LLC, 59 Cal. 4th 348 (2014), the California Supreme Court held that where an employment agreement compels the waiver of representative claims under the PAGA, it is contrary to public policy and unenforceable as a matter of state law. Id. at 384. The Court further concluded that the FAA does not preempt this state law rule against waiver of an employee's right to bring a representative PAGA action since the FAA aims to ensure an efficient forum for the resolution of private disputes whereas a PAGA action is a dispute between an employer and the state Labor and Workforce Development Agency. Id.

3

Charter does not directly dispute the applicability of <u>Iskanian</u> to the Waiver at issue here.  Instead, it contends that Charter is attempting to evade arbitration by bringing a PAGA claim.  It states that Harper "simply has a private dispute with his former employer," and it points to the relief sought by Harper, and more specifically, the individual, non-PAGA, relief set forth in the Arbitration Demand. Charter cites to <u>Esparza v KS Industries, L.P.</u>, 13 Cal. App. 5th 1228 (2017).  In <u>Esparza</u>, the defendant appealed from an order denying its motion to compel arbitration of a dispute with its former employee.  It contended that <u>Iskanian</u> prevented arbitration of claims only in representative actions that seek "civil penalties" and not unpaid wages payable solely to the aggrieved employee.  The appellate court examined <u>Iskanian</u> and found that because the plaintiff's claims for unpaid wages under PAGA constituted a private dispute that was subject to arbitration under the arbitration agreement and FAA, rather than non-arbitrable claim for civil penalties.  <u>Id</u>. at 1246.

Charter seeks to apply <u>Esparza</u> so that the Arbitrator will find that this is really a suit to recover victim-specific damages and interest on an individual basis and an attempt to make an end run around arbitration by styling it a PAGA action. However, <u>Esparza</u> itself did not make such a determination regarding the plaintiff employee's case before it.  Instead, the court remanded the case and directed the trial court to conduct further proceedings to allow the plaintiff to state his intention about pursuing claims for unpaid wages and any other types of individualized relief, and if he chooses to do so, then those claim would be arbitrated while the remainder of the litigation is stayed.  <u>Id</u>. at 1247.  If, however, plaintiff intended to limit his claims to PAGA representative claims seeking civil penalties and waive claims for individualized relief, the court can proceed on those claims without the need for arbitration.  <u>Id</u>.

Here, while Harper's Demand for Arbitration contains a majority of causes

4

of action seeking individualized relief, it also asserts a cause of action for PAGA civil penalties. Neither Esparza nor any authority raised by Charter allows the Arbitrator to ignore this cause of action and find that Harper is using the PAGA cause of action as "an end run around arbitration," even assuming this is true. Thus, the issue remains whether the Waiver at issue is unenforceable, and under Iskanian, the Arbitrator finds that it is unenforceable because it compels the waiver of representative claims under PAGA.

> 2.    Requiring Harper to act only in his "individual capacity" does not improperly waive his right to act as a representative of the State and other aggrieved employees.

Harper further contends that the Waiver is invalid and unenforceable because it prohibits him from acting in any capacity other than his "individual capacity," and this necessarily prevents him from serving as the State's representative. As Charter contends, Harper cites no authority in support of this assertion. Essentially, Harper seeks to expand Iskanian to bar waivers that use the language "individual capacity," but the Arbitrator finds no basis for doing so.

> 3.    Requiring Harper to act only in his "individual capacity" does not improperly prevent him from seeking representative and public injunctive relief in any forum.

In a final argument regarding the Waiver, Harper contends that the Waiver is invalid and unenforceable because it prevents Harper from seeking representative and public injunctive relief in any forum. In McGill v. Citibank, N.A., 2 Cal 5th 945, 951 (2017), the Court held that an arbitration provision that purports to waive the right to request in any forum public injunctive relief is invalid and unenforceable under California law.

In its Opposition, Charter relies on Magana v. DoorDash, Inc., 343 F. Supp. 3d 891, 900 (N.D. Cal. 2018), which set out two issues to consider in determining

5

whether an arbitration agreement prevents all adjudication of public injunctive relief in any forum. <u>Magana</u> is instructive here. First, the court considers whether plaintiff's complaint actually seeks public injunctive relief under California law. <u>Id</u>. Second, if it does, the court considers whether the arbitration agreement prevents plaintiff from adjudicating a claim for such relief in any forum. <u>Id</u>.

Charter argues both that Harper does not seek public injunctive relief and that the Agreement does not prevent Harper from adjudicating a claim for injunctive relief in any forum. With respect to the first issue, "public injunctive relief under the UCL . . . is relief that has 'the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public. Relief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff – or to a group of individuals similarly situated to the plaintiff – does not constitute public injunctive relief." <u>McGill</u>, 2 Cal. 5th at 955. Because Harper seeks injunctive relief for his California Labor Code claims in his Demand, he does not assert a claim for public injunctive relief as in <u>Magana</u>. <u>See</u> <u>Magana</u>, 343 F. Supp. 3d at 901 (the court found that the claims under California Labor Code "have the primary purpose and effect of redressing and preventing harm to [the employer's] employees" and that "the injunctive relief he seeks would be entirely opposite of what McGill requires – any benefit to the public would be derivative of and ancillary to the benefit to [the employer's] employees.")

Second, the Arbitration Agreement does not prevent adjudication of public injunctive relief in any forum because the Arbitrator may adjudicate a claim for such relief. While Harper argues that the Arbitration Agreement has a representative, class and collective action waiver provision, the <u>McGill</u> court held that a claim for public injunctive relief is not a class, collective, or representative action. <u>McGill</u>, 2 Cal. 5th at 959-61. As Charter points out, the Agreement states "[t]his waiver does not take away or restrict your or Charter's right to pursue your

6

or its own claims, but only requires that any such claims be pursued in your or Charter's own individual capacity." As such, Harper can seek public injunctive relief in arbitration. Thus, the Arbitrator finds that requiring Harper to act only in his "individual capacity" does not improperly prevent him from seeking representative and public injunctive relief in any forum.

**C.    The invalid and unenforceable Waiver triggers the poison pill and renders the entire Arbitration Agreement "null and void" by its own terms**

Harper contends that the invalid and unenforceable Waiver triggers the "poison pill" and renders the entire Arbitration Agreement null and void by its own terms. The poison pill provision, as Harper refers to it, in the Arbitration Agreement provides:

> [S]hould the dispute involve a representative, collective or class action claim, and the REPRESENTATIVE, COLLECTIVE, AND CLASS ACTION WAIVER is found to be invalid or unenforceable for any reason, then this entire Agreement (except for the parties' agreement to waive a jury trial) shall be null and void and the dispute will not be arbitrable.

Given the plain meaning of this language, Harper's contention has merit.

In opposition, Charter argues that the "straightforward meaning" of this provision is, if an employee brings a representative, collective or class action claim, and the waiver is found to be invalid or unenforceable, then no part of the arbitration provision applies to that claim – i.e., the arbitration provision is null and void in its entirety only as to the representative, collective or class action claim. However, Charter's interpretation is at odds with the language used in the Agreement and places a limitation not supported by the words chosen. As Harper points out, Charter could have drafted this provision narrowly, but it did not. He points to the following language found in another case:

7

> The Representative Action Waiver will be severable from this Agreement in any case in which there is a final judicial determination that the Representative Action Waiver is invalid, unenforceable, unconscionable, void or voidable. In such instances and where the claim is brought as a private attorney general, such private attorney general claim must be ignored in a civil court of competent jurisdiction, but all other provisions of this Agreement, including without limitation the Class Action Waiver, will continue to apply.

Murphy v. HRB Green Res., LLC, 2016 WL 11527027 at *5 (N.D. Cal. Oct. 14, 2016). Instead, the provision agreed to by the parties in this case clearly states that "this *entire* Agreement shall be null and void and the dispute will not be arbitrable."

Harper cites to a few district court cases wherein the court rejected Charter's same argument that the Arbitrator should construe the poison pill provision narrowly. In McArdle v. AT&T Mobility LLC, 2017 WL 4354998 (N.D. Cal. Oct. 2, 2017), the court stated that "Defendant's proposed construction of this sentence ignores the agreement's use of the word 'entirety' and attempts to read in limiting language that does not exist, such as adding the words 'as to the specific claim' at the end of the paragraph." Similarly, in Roberts v. AT&T Mobility, LLC, 2018 WL 1317346 at *8-9 (N.D. Cal. Mar. 14, 2018, the court stated that "had it been so intended, the nullification provision could have referred to nullification of the 'subsection' or 'paragraph'; it did not. Instead, it refers to 'the entirety of the arbitration provision.'" The Arbitrator agrees with the reasoning of the courts in these cases.

Charter also seeks to have the arbitrable and non-arbitrable claims severed so that the arbitrable claims are sent to arbitration. However, the cases relied on by Charter for this proposition do not involve the existence of the poison pill provision. Indeed, Harper acknowledges that but for the poison pill provision, severance would be possible.

8

Charter further asserts that because there is a reading of this provision that would allow for severing a non-arbitrable claim to allow it to proceed in court, with all other claims sent to arbitration, this provision must be interpreted that way. It relies on the federal policy favoring arbitration and quotes from a Supreme Court holding that an order compelling arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986). Here, the provision at issue is neither ambiguous nor susceptible of Charter's desired interpretation.

Thus, the Arbitrator finds that because the pre-dispute Waiver of Harper's right to bring or participate in a representative PAGA action is invalid and unenforceable, the poison pill provision is triggered, thereby rendering the Arbitration Agreement null and void.

### D. Because the Arbitration Agreement is null and void, the Arbitrator has no jurisdiction over Harper's claims

Based on the determinations set forth above, the Arbitration Agreement is null and void. While the FAA reflects a "liberal federal policy favoring arbitration," it also reflects "the fundamental principle that arbitration is a matter of contract." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (citations omitted). As such, "courts must place arbitration agreements on an equal footing with other contracts, . . ., and enforce them according to their terms . . . ." Id.; see also Epic Systems Corp. v. Lewis, 138 S. Ct. 1612, 1621 (2018) (Supreme Court noted that the Arbitration Act requires courts "vigorously" to "enforce arbitration agreements according to their terms"). Here, the Arbitration Agreement contains a Waiver that is found to be invalid and enforceable. Under the same Arbitration Agreement, such a finding renders the entire Agreement null and void and the dispute not arbitrable. The Arbitrator therefore has no jurisdiction over

9

Harper's claims set forth in the Demand, and consequently, the arbitration must be dismissed in its entirety.

## III.   Conclusion

Accordingly, the Arbitrator dismisses Claimant Lionel Harper's Demand for Arbitration.

DATED:  April 25, 2019

Hon. Rebecca Westerfield (Ret.)
Arbitrator

10

## PROOF OF SERVICE BY EMAIL & U.S. MAIL

Re: Harper, Lionel vs. Charter Communications, Inc.
Reference No. 1100104486

I, Melissa Ornstil, Esq., not a party to the within action, hereby declare that on April 25, 2019, I

served the attached Order Dismissing Arbitration on the parties in the within action by Email and by

depositing true copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United

States Mail, at San Francisco, CALIFORNIA, addressed as follows:

Jamin Soderstrom Esq.
Soderstrom Law PC
3 Park Plaza
Suite 100
Irvine, CA   92614
Tel: 949-667-4700
Email: jamin@soderstromlawfirm.com
   Parties Represented:
   Lionel Harper

Zachary Shine Esq.
Morgan, Lewis & Bockius LLP
One Market
Spear Street Tower
San Francisco, CA   94105-1596
Tel: 415-442-1000
Email: zachary.shine@morganlewis.com
   Parties Represented:
   Charter Communications, Inc.
   Charter Communications, LLC

Kathryn T. McGuigan Esq.
Morgan, Lewis & Bockius LLP
300 S Grand Ave
22nd Floor
Los Angeles, CA   90071-3132
Tel: 213-612-7390
Email: kathryn.mcguigan@morganlewis.com
   Parties Represented:
   Charter Communications, Inc.
   Charter Communications, LLC

I declare under penalty of perjury the foregoing to be true and correct. Executed at San

Francisco, CALIFORNIA on April 25, 2019.

_Melissa Ornstil_

Melissa Ornstil, Esq.

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address): | TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|---|

JAMIN S. SODERSTROM, SBN 261054   (949) 667-4700
3 PARK PLZ STE 100

IRVINE          CA          92614
ATTORNEY FOR (Name    Plaintiff

Insert of Court Name of Judicial District and Branch Court if any
SUPERIOR COURT OF THE STATE OF CALIFORNIA, SHASTA COUNTY

SHORT TITLE OF CASE
HARPER v CHARTER COMMUNICATIONS, LLC

| 3502652 | (HEARING) Date | Time | Dept | | Case Number: 192423 |
|---|---|---|---|---|---|
| | | | 3 | | REFERENCE NO. Harper |

## PROOF OF SERVICE OF SUMMONS

1. AT THE TIME OF SERVICE I WAS AT LEAST 18 YEARS OF AGE AND NOT A PARTY TO THIS ACTION

2. I SERVED COPIES OF THE:
   SUMMONS & COMPLAINT
   CIVIL CASE COVER SHEET
   NOTICE OF ASSIGNMENT
   ADR INFORMATION PACKAGE

3. a. PARTY SERVED:    CHARTER COMMUNICATIONS, LLC

   CSC-LAWYERS INCORPORATING SERVICE, AGENT FOR SERVICE
   b. PERSON SERVED: BECKY DEGEORGE, AUTHORIZED TO RECEIVE
      CAUCASIAN FEMALE 35YRS 5'8" 185LBS. BLOND HAIR

4. c. ADDRESS:    2710 Gateway Oaks Drive Suite 150n
      Sacramento          CA          95833

5. I SERVED THE PARTY NAMED IN ITEM 2

   a. BY PERSONALLY DELIVERING THE COPIES
      ON    5/7/2019   AT   3:35:00 PM

6. THE "NOTICE TO PERSON SERVED" WAS COMPLETED AS FOLLOWS:
   d. ON BEHALF OF:
      CHARTER COMMUNICATIONS, LLC

      CSC-LAWYERS INCORPORATING SERVICE, AGENT FOR SERVICE

   UNDER THE FOLLOWING CODE OF CIVIL PROCEDURE SECTION : OTHER-LIMITED LIABILITY COMPANY

7a. Person Serving:    Katrina        Williams

d. The fee for service was          $50.00
e. I am:
   (1)        not a registered California process server:
   (3) X    registered California process server:
      (i) Independent Contractor
      (i) Registration No: 2015-10
      (i) County:   SACRAMENTO

b. DDS Legal Support
2900 Bristol St
Costa Mesa, Ca 92626

c. (714) 662-5555

8. I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.   Katrina        Williams
   5/9/2019

_____
SIGNATURE

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address)<br>JAMIN S. SODERSTROM, SBN 261054<br>3 PARK PLZ STE 100 | | | TELEPHONE NO.<br>(949) 667-4700 | FOR COURT USE ONLY | |
|---|---|---|---|---|---|
| IRVINE         CA         92614 | | | | | |
| ATTORNEY FOR (Name         Plaintiff | | | | | |
| Insert of Court Name of Judicial District and Branch Court if any<br>SUPERIOR COURT OF THE STATE OF CALIFORNIA, SHASTA COUNTY | | | | | |
| SHORT TITLE OF CASE<br>HARPER v CHARTER COMMUNICATIONS, LLC | | | | | |
| 3502638 | (HEARING) Date | Time | Dept | Case Number:                192423 | |
| | | | 3 | REFERENCE NO.<br>Harper | |

### PROOF OF SERVICE OF SUMMONS

1. AT THE TIME OF SERVICE I WAS AT LEAST 18 YEARS OF AGE AND NOT A PARTY TO THIS ACTION

2. I SERVED COPIES OF THE:
   SUMMONS & COMPLAINT
   CIVIL CASE COVER SHEET
   NOTICE OF ASSIGNMENT
   ADR INFORMATION PACKAGE

3. a. PARTY SERVED:   CHARTER COMMUNICATIONS, INC.

   CSC-LAWYERS INCORPORATING SERVICE, AGENT FOR SERVICE
   b. PERSON SERVED: BECKY DEGEORGE, AUTHORIZED TO RECEIVE
   CAUCASIAN FEMALE 50YRS 5'8" 185LBS. BLOND HAIR

4. c. ADDRESS:   2710 Gateway Oaks Drive Suite 150n
   Sacramento         CA         95833

5. I SERVED THE PARTY NAMED IN ITEM 3
   a. BY PERSONALLY DELIVERING THE DOCUMENTS LISTED IN ITEM 2 TO THE PARTY OR PERSON
   AUTHORIZED TO RECEIVE SERVICE OF PROCESS FOR THE PARTY. ON         5/7/2019  AT   3:35:00 PM
6. THE "NOTICE TO PERSON SERVED" WAS COMPLETED AS FOLLOWS:
   d. ON BEHALF OF:
   CHARTER COMMUNICATIONS, INC.

   CSC-LAWYERS INCORPORATING SERVICE, AGENT FOR SERVICE
   UNDER THE FOLLOWING CODE OF CIVIL PROCEDURE SECTION : CORPORATION  CCP 416.10

| | | | |
|---|---|---|---|
| 7a. Person Serving:   Katrina         Williams | | d. The fee for service was         $161.60<br>e. I am: | |
| | | (1)         not a registered California process server: | |
| b. DDS Legal Support<br>2900 Bristol St<br>Costa Mesa, Ca 92626 | | (3)  X    registered California process server:<br>(i) Independent Contractor | |
| c. (714) 662-5555 | | (i) Registration No:  2015-10<br>(i) County:   SACRAMENTO | |

8. I declare under the penalty of perjury under the laws of the State of California that the
foregoing is true and correct. Katrina         Williams
5/9/2019

Form Approved for Optional Use Judicial
Council of California
POS-010 [REV Jan 1 2007]

SIGNATURE
CRC 982(A)(23)

PROOF OF SERVICE