Jamin S. Soderstrom, Bar No. 261054
jamin@soderstromlawfirm.com
SODERSTROM LAW PC
3 Park Plaza, Suite 100
Irvine, California 92614
Tel: (949) 667-4700
Fax: (949) 424-8091

*Counsel for Plaintiff and the Putative Class*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIONEL HARPER, individually and on behalf of all others similarly situated and all aggrieved employees,<br><br>    Plaintiff,<br><br>v.<br><br>CHARTER COMMUNICATIONS, LLC, CHARTER COMMUNICATIONS, INC., and DOES 1 through 25,<br><br>    Defendants. | Case No.   2:19-cv-00902-WBS-DMC<br><br>**PLAINTIFF LIONEL HARPER'S NOTICE OF MOTION AND MOTION TO CONFIRM ARBITRATION AWARD AND ENTER JUDGMENT**<br><br>Hearing Date:   July 1, 2019<br>Hearing Time:   1:30 p.m.<br>Courtroom:   5<br>Honorable Judge:   William Shubb<br>Arbitration Award:   April 25, 2019 |

## TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ...............................................................................1

I. INTRODUCTION ................................................................................................2

II. BACKGROUND ...................................................................................................3

    A. Harper agrees to the Arbitration Agreement as a condition of his employment. ......3

    B. Harper asks for a mediation and then seeks his personnel records through counsel. .................4

    C. Harper files his Demand with JAMS and seeks threshold arbitrability and enforceability rulings as required by the Arbitration Agreement. ...................5

    D. The Arbitrator orders discovery and briefing on the threshold arbitrability issues. ..................5

    E. The Arbitrator rules that the "invalid and unenforceable Waiver triggers the poison pill and renders the entire Arbitration Agreement 'null and void' by its own terms." .................7

    F. Harper promptly files his non-arbitrable wage-and-hour dispute in court. ..............8

III. ARGUMENT .........................................................................................................9

    A. The Court is required to confirm the arbitration award in its entirety because there is no basis to vacate, modify, or correct the award. ...................9

    B. Charter waived any argument that arbitrability issues should have been submitted to a different arbitration provider under a different arbitration agreement. .................11

IV. CONCLUSION ...................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Eastern Associated Coal Corp. v Mine Workers*,
    531 U.S. 57 (2000) ..................................................................................................10

*Fidelity Fed. Bank, FSB v. Durga Ma Corp.*,
    386 F.3d 1306 (9th Cir. 2004) .................................................................................12

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995) ..................................................................................................9

*Hall Street Associates, L.L.C. v. Mattel, Inc.*,
    552 U.S. 576 (2008) ..................................................................................................9

*Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*,
    791 F.2d 1334 (9th Cir. 1986) .................................................................................11

*Oxford Health Plans LLC v. Sutter*,
    569 U.S. 564 (2013) ................................................................................................10

*Shearson Hayden Stone, Inc. v. Liang*,
    653 F.2d 310 (7th Cir. 1981) ...................................................................................11

*Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*,
    559 U.S. 662 (2010) ................................................................................................10

**Federal Statutes**

9 U.S.C. § 9 .....................................................................................................................9

9 U.S.C. § 10 ...................................................................................................................9

9 U.S.C. § 11 ...................................................................................................................9

9 U.S.C. § 13 ...................................................................................................................9

28 U.S.C. § 1332(d) .........................................................................................................2

**State Statutes**

Cal. Labor Code § 226 .....................................................................................................4

Cal. Labor Code § 432 .....................................................................................................4

Cal. Labor Code § 1198.5 ................................................................................................4

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on July 1, 2019 at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 5 of the United States District Court for the Eastern District of California, located at 501 I Street, Sacramento, CA 95814. Plaintiff Lionel Harper will and hereby does move the Court for an order to confirming an arbitration award dated April 25, 2019 and entering judgment thereon. This Motion is based on Sections 9 and 13 of the Federal Arbitration Act, 9 U.S.C. § 1 et seq. This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Jamin S. Soderstrom and all exhibits thereto, all documents in the Court's file, and such other arguments as may be presented to the Court. Undersigned counsel requested that Defendants stipulate to confirm the arbitration award but Defendants declined, necessitating the filing of this Motion.

Dated: May 24, 2019          SODERSTROM LAW PC

By: */s/ Jamin S. Soderstrom*
     Jamin S. Soderstrom
*Counsel for Plaintiffs and the Proposed Class*

## I. INTRODUCTION

This motion asks the Court, under Sections 9 and 13 of the Federal Arbitration Act ("FAA"), to confirm and enter judgment on the arbitration award that was issued by JAMS Arbitrator Hon. Rebecca J. Westerfield (Ret.) on April 25, 2019.

Plaintiff Lionel Harper entered into a Mutual Agreement to Arbitrate ("Arbitration Agreement") with Defendants Charter Communications, LLC and Charter Communications, Inc. (collectively, "Charter") as a condition of his employment. The Arbitration Agreement designated JAMS as the arbitration provider and required the parties to submit all arbitrability and enforceability issues to the Arbitrator. Charter insisted on Harper submitting his claims to JAMS under the Arbitration Agreement, agreed to the appointment of the Arbitrator, paid the filing and arbitration fees required by JAMS, and did not object to the Arbitrator exercising jurisdiction over Harper's Demand or issuing threshold rulings on the arbitrability and enforceability issues raised in Harper's Demand.

Five months after the Demand was filed and after arbitration discovery and briefing had occurred, the Arbitrator issued an arbitration award confirming: (1) the Arbitrator had jurisdiction to rule on the arbitrability of Harper's wage-and-hour dispute and the enforceability of the Arbitration Agreement; (2) an invalid representative action waiver triggered a "poison pill" provision and rendered the entire Arbitration Agreement "null and void" by its own terms; and (3) the arbitration must be dismissed in its entirety because the wage-and-hour dispute raised by Harper's Demand is not arbitrable.

Shortly after the Arbitrator issued the award, Harper filed this action.[1] Harper requested that Charter stipulate to confirming the arbitration award but Charter declined, necessitating the filing of this motion. Soderstrom Decl. ¶ 21. Because there is no basis to vacate, modify, or correct the Arbitrator's award, the Court "must grant" this motion and confirm the award.

A year *after* Charter first insisted that Harper arbitrate with JAMS under the Arbitration Agreement and nearly a month *after* the Arbitrator issued the award, Charter for the first time raised an argument in a "meet and confer" letter that a different form of arbitration agreement may apply to

---

[1] Charter filed a notice of removal on May 17, 2019, purporting to invoke federal court jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Because Charter removed based on improper "guesswork" and failed to meet its removal pleading burden, Harper filed a motion to remand. Harper believes the Court should decide the motion to remand before it decides this motion to confirm because an order granting remand would render this motion moot.

Harper's dispute and may require him to arbitrate the same claims the Arbitrator already ruled are not arbitrable. Soderstrom Decl. ¶ 22, Ex. 17. Harper anticipates Charter will argue this different agreement justifies vacating the award. However, new evidence is not a valid ground to vacate an arbitration award and Charter waived any right it may have had to argue that a different agreement should have applied to Harper's dispute when it insisted that Harper proceed under the Arbitration Agreement, agreed to JAMS and to the appointment of the Arbitrator, and failed to produce any alternative agreement in the Arbitrator-ordered arbitration discovery.

Harper respectfully asks the Court to grant this motion, confirm the arbitration award in its entirety, and enter judgment on the award as if it had been rendered by this Court.

## II. BACKGROUND

### A. Harper agrees to the Arbitration Agreement as a condition of his employment.

One of the conditions of Harper's employment with Charter was that he agree to Charter's Mutual Agreement to Arbitrate (the "Arbitration Agreement"). Soderstrom Decl. ¶ 2, Ex. 1. The Arbitration Agreement is governed by the FAA. *Id.* It designated JAMS as the arbitration provider and the JAMS Employment Arbitration Rules & Procedures and JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness as the applicable arbitration rules. *Id.* It required arbitration of "any and all claims, disputes, and/or controversies between [Harper] and Charter arising from or related to [Harper's] employment with Charter." *Id.* It also included a broad waiver that read:

> REPRESENTATIVE, COLLECTIVE, AND CLASS ACTION WAIVER:
> You and Charter understand, acknowledge and agree that the terms of this Agreement include a waiver of any rights that you or Charter may have to bring or participate in an action against each other on a representative, class, or collective basis and understand and agree that the arbitrator shall not be permitted to order consolidation of claims or a representative, class, or collective, arbitration. This waiver does not take away or restrict your or Charter's right to pursue your or its own claims, but only requires that any such claims be pursued in your or Charter's own individual capacity, rather than on a representative, class, or collective basis.

*Id.* (hereinafter, the "Waiver").

The Arbitration Agreement also included a severance provision and a "poison pill" provision related to the Waiver:

///

> You and Charter agree that if the Agreement or any clause or term of the Agreement is found to be void, unenforceable, or unconscionable, the remainder of the Agreement shall be enforced without the invalid, unenforceable, or unconscionable clause or term, or the application of the clause or term shall be limited as to avoid any invalid, unenforceable, or unconscionable result. The only exception to this severability provision is, should the dispute involve a representative, collective or class action claim, and the REPRESENTATIVE, COLLECTIVE, AND CLASS ACTION WAIVER is found to be invalid or unenforceable for any reason, then this entire Agreement (except for the parties' agreement to waive a jury trial) shall be null and void and the dispute will not be arbitrable.

*Id.* It does not reference any other dispute resolution procedure or agreement. *Id.*

### B. Harper asks for a mediation and then seeks his personnel records through counsel.

During Harper's employment, he experienced and observed numerous wage-and-hour violations related to his and his colleagues' working hours, meal periods, rest breaks, calculation and payment of wages, and wage statements, among other things. *See* Dkt. 1-1 (original complaint).

Following his termination, Harper contacted JAMS and asked to mediate his grievances against Charter but Charter refused to mediate his grievances and offered to arbitrate his claims with JAMS under to the Arbitration Agreement. Soderstrom Decl. ¶ 3, Ex. 2. After Charter refused to mediate, Harper engaged counsel who sought, via a written request for records and signed acknowledgement dated June 5, 2018, the personnel and employment records that were required to be produced to Harper under Labor Code sections 226, 432, and 1198.5. *Id.* ¶ 4, Ex. 3. Charter initially refused to produce any of Harper's personnel records because Harper had allegedly "initiated the litigation process against Charter with JAMS" when he contacted JAMS about a possible mediation. *Id.* ¶ 5, Ex. 4. Eventually, Charter agreed to produce some (not all) of Harper's personnel records but then waited over two months to produce them. *Id.* ¶¶ 6-8 & Exs. 5-6. After agreeing to produce certain records in a July 18, 2018 email, Charter again asked Harper to confirm that he intended to abide by the Arbitration Agreement and submit his employment dispute to JAMS. *Id.* ¶ 7, Ex. 6.

Charter finally provided Harper with some of the employment records that were required to be produced under the Labor Code on September 4, 2018, three months after his written request. *Id.* ¶¶ 5-8. Consistent with Harper's understanding of his arbitration rights and obligations and Charter's previous representations, Charter's initial production of documents included another copy of the

Arbitration Agreement that designated JAMS as the arbitration provider and that included the Waiver and poison pill provisions described above. *Id.* ¶ 8.

### C. Harper files his Demand with JAMS and seeks threshold arbitrability and enforceability rulings as required by the Arbitration Agreement.

On September 14, 2018, Harper filed a detailed written "PAGA notice" with the California Labor and Workforce Development Agency ("LWDA") and served a copy of the notice via certified mail on Charter and its counsel. *Id.* ¶ 9, Ex. 7.

On November 19, 2019, when he did not receive notice that the LWDA intended to investigate the Labor Code violations alleged in his PAGA notice, Harper complied with the Arbitration Agreement's delegation requirement and filed his Demand with JAMS. *Id.* ¶ 10, Ex. 8.

Harper's Demand attached a copy of the Arbitration Agreement, a copy of the PAGA notice, and sought three threshold rulings: (1) that the Arbitrator had the authority to decide all enforceability, scope, and arbitrability issues; (2) that the entire Arbitration Agreement is "null and void" by its own terms based on the unenforceable Waiver and the poison pill; and (3) that no arbitration jurisdiction existed beyond the ability of the Arbitrator to rule that the Arbitration Agreement was "null and void" and the arbitration should be dismissed because Harper's wage-and-hour dispute is not arbitrable. *Id.* The Demand specifically identified the Labor Code claims that, if the Arbitration Agreement was not deemed "null and void," would be subject to arbitration. *Id.* It also specifically indicated that Harper would seek individual, representative, and class relief in court if the Arbitration Agreement was found to be "null and void" and the arbitration was dismissed because the dispute was not arbitrable. *Id.*

Harper paid the required filing fees to JAMS in accordance with its rules and the terms of the Arbitration Agreement, thereby initiating the arbitration process. *Id.*

### D. The Arbitrator orders discovery and briefing on the threshold arbitrability issues.

Consistent with its original offer to arbitrate, its follow-up requests that Harper comply with the Arbitration Agreement, and its several productions of the Arbitration Agreement as part of Harper's personnel records, Charter did not object to proceeding in arbitration before JAMS under the terms of the Arbitration Agreement. *Id.* ¶ 11. In fact, Charter insisted that Harper arbitrate his wage-and-hour dispute with JAMS under the Arbitration Agreement, it paid its share of the arbitration costs and fees

required by JAMS, and it proposed several "off list" JAMS arbitrators during the arbitrator selection process. *Id.* The parties eventually agreed to the appointment of the Honorable Rebecca J. Westerfield (Ret.) as the Arbitrator. *Id.* ¶ 11, Ex. 9. Charter did refuse, however, Harper's request to engage in informal discovery that would be relevant to the arbitrability and enforceability issues. *Id.* ¶ 12.

On February 8, 2019, the Arbitrator held a preliminary hearing via teleconference, considered Charter's and Harper's separate proposals on how the arbitration should proceed, considered Harper's request for leave to file a motion concerning threshold issues of arbitrability, and heard argument concerning Harper's request for the discovery and production of any and all documents potentially related to Harper's arbitration obligations.[2] *Id.* ¶¶ 13-14 & Exs. 10-11. That same day, the Arbitrator issued an order (1) granting Harper's request for leave to file a motion concerning the arbitrability of his claims; (2) overruling Charter's objection to any discovery and requiring Charter to collect and produce no later than February 22, 2019 "any job application related or onboarding documents [Harper] may have completed, signed, acknowledged, or been provided" and "any employee handbooks or other policies, acknowledgements, or agreements that governed [Harper's] employment;" and (3) setting a briefing and hearing schedule for Harper's motion regarding threshold issues. *Id.* ¶ 14, Ex. 12.

On February 22, 2019, Charter produced copies of all of the documents that it considered responsive to the Arbitrator's discovery order. *Id.* ¶ 15. The documents Charter produced included another copy of the Arbitration Agreement, a record indicating that Harper had received and acknowledged the Arbitration Agreement, and a copy of the Employee Handbook that Charter said governed his employment. *Id.* The Employee Handbook referenced a "Solution Channel" that required binding arbitration for disputes related to Harper's employment, but it did not give any indication that any form of an arbitration agreement or dispute resolution procedure existed other than the Arbitration Agreement that accompanied Charter's production of the Employee Handbook and that required that all disputes be submitted to JAMS. *Id.*

---

[2] Harper's counsel also raised the issue of whether separate failure to accommodate and wrongful termination claims that Harper had against Charter should be added to the arbitration or filed as a separate proceeding. Soderstrom Decl. ¶ 13, Ex. 10. Because the factual and legal basis for Harper's wage-and-hour claims (which included representative PAGA claims) was materially different from the factual and legal basis for Harper's accommodation and termination claims (which did not include a representative PAGA claim), Harper ultimately filed his accommodation and termination claims in a separate arbitration with JAMS.

After Charter produced all of the documents it considered responsive to the Arbitrator's discovery order, Harper filed his motion on March 1, 2019. *Id.* ¶ 16, Ex. 13. He argued that the Arbitrator had jurisdiction to rule on all arbitrability and enforceability issues, that the Waiver was invalid and unenforceable under California law, that the poison pill was triggered because Harper's wage-and-hour dispute involved a representative PAGA claim, and that the Arbitration Agreement was "null and void" by its own terms and no part of his wage-and-hour dispute—individual, representative, or class—was arbitrable. *Id.*

Charter filed a response brief on March 15, 2019 and opposed Harper's motion. *Id.* ¶ 17, Ex. 14. It argued that the Arbitration Agreement was valid and enforceable, that the "representative" action part of the Waiver was severable and simply required Harper to bring his representative PAGA claim in court, that the poison pill had not been triggered, and that Harper should be required to arbitrate his individual wage-and-hour claims under the Arbitration Agreement. *Id.* It did not produce evidence of any other form of arbitration agreement or dispute resolution procedure or argue that the arbitration should not proceed with JAMS under the terms of the Arbitration Agreement. *Id.*

Harper filed a reply brief in support of his motion on March 21, 2019. *Id.* ¶ 18, Ex. 15. He reiterated that "[b]ecause the entire Arbitration Agreement is null and void, there is no longer any agreement that requires Harper to arbitrate any portion of his wage-and-hour dispute against Charter. All of his wage-and-hour claims can be brought in court and he can seek all forms of relief that are available under California law." *Id.*

E. **The Arbitrator rules that the "invalid and unenforceable Waiver triggers the poison pill and renders the entire Arbitration Agreement 'null and void' by its own terms."**

The Arbitrator carefully examined the Arbitration Agreement and the parties' briefs and supporting documents and held a telephonic motion hearing on March 26, 2019. *Id.* ¶ 19. A month later she issued a final award dated April 25, 2019 that granted Harper's requested threshold rulings, found the wage-and-hour dispute he raised was not arbitrable, and resulted in the dismissal of the entire arbitration for lack of arbitration jurisdiction. *Id.* ¶ 20, Ex. 16.

///

In her written award, the Arbitrator first confirmed she had jurisdiction to consider the threshold arbitrability and enforceability issues raised by the Demand and in Harper's motion, a point Charter never disputed. *Id.* The Arbitrator then analyzed the terms of the Arbitration Agreement—including specifically the Waiver and the poison pill—and the relevant authorities cited by both sides. *Id.* She determined that "because the pre-dispute Waiver of Harper's right to bring or participate in a representative PAGA action is invalid and unenforceable, the poison pill provision is triggered, thereby rendering the Arbitration Agreement null and void." *Id.*

The Arbitrator concluded that "[b]ecause the Arbitration Agreement is null and void, the Arbitrator has no jurisdiction over Harper's claims." *Id.* "Here, the Arbitration Agreement contains a Waiver that is found to be invalid and unenforceable. Under the same Arbitration Agreement, such a finding renders the entire Agreement null and void and the dispute not arbitrable. The Arbitrator therefore has no jurisdiction over Harper's claims set forth in the Demand, and consequently, the arbitration must be dismissed in its entirety." *Id.*

### F. Harper promptly files his non-arbitrable wage-and-hour dispute in court.

Harper promptly filed his wage-and-hour dispute in California state court on May 3, 2019. Dkt. 1-1 (original complaint). He raised the same claims in court that he had identified in his Demand and sought individual, representative, and class relief under the Labor Code. *Id.* He asked Charter to stipulate to confirm the arbitration award, but Charter declined. Soderstrom Decl. ¶ 21.

Several weeks later on May 22, 2019, Charter told Harper in a "meet and confer" letter that it had found a different form of arbitration agreement that it believed may have applied to Harper's employment and the dispute that the Arbitrator rules was not arbitrable. *Id.* ¶ 22, Ex. 17. Charter asked Harper to "agree[] to arbitrate his claims on an individual basis and dismiss his putative class and representative claims" based on the previously undisclosed arbitration agreement. *Id.* Charter did not explain why it failed to identify the other form of arbitration agreement in the six months before Harper filed his Demand, during the five months of arbitration (which included Arbitrator-ordered discovery), or during the month following the Arbitrator's issuance of the arbitration award. *Id.* Harper declined Charter's request for a do over and reiterated his intention to seek confirmation of the award and pursue his non-arbitrable wage-and-hour dispute in court. *Id.*

## III. ARGUMENT

The Court should confirm the arbitration award in its entirety and enter judgment on it as if the award had been rendered in this Court. There is no basis for the Court to vacate, modify, or correct the arbitration award, and Charter has waived any objection to JAMS' administration of the arbitration, the Arbitrator's exercise of jurisdiction over the threshold issues of arbitrability and enforceability, or the application of the Arbitration Agreement to Harper's wage-and-hour dispute.

### A. The Court is required to confirm the arbitration award in its entirety because there is no basis to vacate, modify, or correct the award.

A court order confirming the arbitration award is necessary to complete the arbitration and give the award the same force and effect as if it had been rendered by a court. *See* 9 U.S.C. § 13 (upon confirmation of the arbitration award, the judgment so entered shall have the same force and effect as a judgment in an action and may be enforced as if it had been rendered in an action in the court in which is its entered). Under Section 9 of the FAA, the Court "must grant" an order confirming the April 25, 2019 arbitration award "unless the award is vacated, modified, or corrective as prescribed in sections 10 and 11" of the FAA. 9 U.S.C. § 9. Confirmation and entry of judgment is required here.

There is no basis for the Court to modify or correct the arbitration award because the award shows no hint of miscalculation or material mistakes, the arbitration did not address issues that were not properly submitted to arbitration, and the form of the award was not imperfect in a way that did not affect the merits of the controversy. 9 U.S.C. § 11.

There is also no basis to vacate the award. Courts may vacate an arbitrator's decision "only in very unusual circumstances." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995). Courts may only vacate awards in the event of "corruption, fraud, or undue means," based on "evident partiality or corruption" of the Arbitrator, or based on Arbitrator misconduct or misbehavior that prejudiced Charter's rights, or the Arbitrator "exceeded [her] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made." 9 U.S.C. § 10(a)(4). This limited judicial review of arbitration awards "maintain[s] arbitration's essential virtue of resolving disputes straightaway." *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 588 (2008). If parties

could take "full-bore legal and evidentiary appeals," arbitration would become "merely a prelude to a more cumbersome and time-consuming judicial review process." *Id.*

The only possible basis Charter could try to raise to vacate the award is that that Arbitrator somehow exceeded her powers, but any such argument would fail here. "A party seeking relief under [the exceeded her powers] provision bears a heavy burden." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013). "It is not enough . . . to show that the arbitrator committed an error—or even a serious error." *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662, 671 (2010). Because the parties "bargained for the arbitrator's construction of their agreement," an arbitral decision "even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits." *Eastern Associated Coal Corp. v Mine Workers*, 531 U.S. 57, 62 (2000) (quotations omitted). Only if "the arbitrator acts outside the scope of [her] contractually delegated authority"—issuing an award that simply reflects [her] own notions of economic justice" rather than "drawing its essence from the contract—may a court overturn [her] determination." *Id.* (internal marks and citation omitted). The "sole question" is "whether the arbitrator (even arguably) interpreted the parties' contract, not whether [she] got its meaning right or wrong." *Sutter*, 569 U.S. at 569.

Like the unhappy defendant who opposed confirmation of an arbitration award in *Sutter*, Charter "chose arbitration, and it must now live with that choice." *Id.* at 572. Charter insisted that Harper must comply with the Arbitration Agreement which required that he submit all arbitrability and enforceability issues to an arbitrator appointed by JAMS, the arbitration provider that Charter had specifically designated. Soderstrom Decl. ¶¶ 2-15. Charter produced the same version of the Arbitration Agreement three separate times—once to Harper, twice to Harper's counsel, and once during the arbitration itself. *Id.* ¶¶ 2, 4, 8, 15 & Exs. 1, 4. Charter represented both to Harper and to the Arbitrator that it had collected and produced all documents potentially related to Harper's arbitration obligations as required by the discovery order, and that the only arbitration-related agreement that existed between the parties was the Arbitration Agreement. *Id.* ¶¶ 13-15. And Charter failed to object—before, during, or after the arbitration—to JAMS acting as the arbitration provider or the Arbitrator being appointed and deciding the arbitrability and enforceability issues related to Harper's wage-and-hour dispute.

///

10
PLAINTIFF LIONEL HARPER'S MOTION TO CONFIRM ARBITRATION AWARD

As shown in the Arbitrator's award itself and in the underlying briefing, the Arbitrator carefully examined the terms of the Arbitration Agreement, the evidence showing that the Arbitration Agreement was the only contract that governed the parties' arbitration rights and obligations, and the authorities relevant to deciding whether Harper's wage-and-hour dispute must be arbitrated. *Id.* ¶¶ 16-20, Exs. 13-16. The Arbitrator also ordered Charter (over its own objection) to collect and produce all documents potentially relevant to Harper's arbitration obligations, and Charter failed to raise any issue concerning which agreement—i.e., the Arbitration Agreement or a different document—should govern the parties' arbitration rights and obligations. *Id.* ¶¶ 13-15 & Exs. 10-12.

Charter cannot now avoid confirmation of the arbitration award by blaming the Arbitrator. The Arbitrator committed no error whatsoever. She gave Charter every opportunity to argue that Harper's dispute was arbitrable, that the Arbitration Agreement was not "null and void," and/or that a different form of arbitration agreement or dispute resolution procedure existed and arguably could have governed Hart's wage-and-hour dispute with Charter. Charter's failure to raise arguments in favor of arbitrability is entirely of its own making and is not a basis to vacate the Arbitrator's award.

**B.** **Charter waived any argument that arbitrability issues should have been submitted to a different arbitration provider under a different arbitration agreement.**

Charter apparently intends to oppose confirmation of the arbitration award and to demand another arbitration concerning the same arbitrability and enforceability issues that the Arbitrator already decided, this time using a different arbitration provider under a different form of arbitration agreement. *Id.* ¶ 22, Ex. 17. Any motion seeking to compel arbitration of the same wage-and-hour dispute the Arbitrator already ruled is not arbitrable would be frivolous and grounds for sanctions.

Charter cannot avoid confirmation of a valid and binding arbitration award that was secured without objection to the Arbitrator's or JAMS' jurisdiction simply because it now believes a potentially-conflicting different form of agreement may have caused the Arbitrator to reach a different result on the merits of the parties' arbitrability arguments. It is well settled that "[n]ewly discovered evidence does not justify vacation of an award," and even if it did, Charter's "failure to exercise due diligence . . . bars it from claiming this evidence is new." *Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*, 791 F.2d 1334 (9th Cir. 1986); *Shearson Hayden Stone, Inc. v. Liang*, 653 F.2d 310, 313 (7th

Cir. 1981) (newly discovered evidence not grounds for vacating an award under the FAA). The existence of a different form of arbitration agreement that Charter could have and should have discovered and produced in the year prior to the issuance of the Arbitrator's award is not a ground for vacating the Arbitrator's award or forcing Harper to re-arbitrate arguments he already won.

Further, Charter waived and/or defaulted on any argument it could have raised that the arbitration should not have proceeded with JAMS under the Arbitration Agreement. *See Fidelity Fed. Bank, FSB v. Durga Ma Corp.*, 386 F.3d 1306, 1313 (9th Cir. 2004) (ruling that failure to raise an issue with the arbitrator that a party knew or should have known results in waiver of objection). The JAMS rules (which Charter chose and both parties complied with) required Charter to raise an objection to the Arbitrator exercising jurisdiction over the issues and claims Harper submitted in his Demand promptly and in writing, or the objection would be deemed waived, and yet Charter failed to raise any objection. JAMS Rule 27(b) ("If any Party becomes aware of information that could be the basis of a challenge for cause to the continued service of the Arbitrator, such challenge must be made promptly, in writing, to the Arbitrator or JAMS. Failure to do so shall constitute a waiver of any objection to continued service by the Arbitrator.").

Charter *insisted* for a full year that Harper was *required* to submit his dispute with Charter to JAMS pursuant to the Arbitration Agreement. During that time it never once argued or even suggested that Harper was *potentially* subject to a different form of arbitration agreement or different dispute resolution process. It objected to *any* discovery or production of documents and, apparently, it was not diligent in performing the Arbitrator-ordered discovery that should have unearthed any potentially conflicting agreements or procedures. Charter then waited until a month *after* the Arbitrator rejected the merits of its arguments to mention the existence of a different form of arbitration agreement that Harper *allegedly* agreed to. Even then, it simply sent Harper a "meet and confer" letter in connection with this action asking him to simply dismiss his claims and agree to re-arbitrate the same issues he already won. Any objection to the Arbitrator's or JAMS' jurisdiction over the issues raised in the arbitration or addressed in the Arbitrator's award has been waived.

///

///

If Charter does raise the existence of a different form of arbitration agreement as a basis for vacating, modifying, or correcting the Arbitrator's award, the Court should reject its argument. The Arbitrator did not commit any error and the subject matter of the dispute was properly placed before her without any objection from Charter. The Court should hold that Charter agreed to proceed in arbitration with JAMS under the Arbitration Agreement and that Charter waived any argument that a different arbitration provider or different form of arbitration agreement *arguably* could have governed the dispute. Charter insisted on and agreed to the arbitration that has already been completed and it must now live with the results.

## IV. CONCLUSION

Harper fully complied with his arbitration obligations and secured a valid and binding arbitration award that determined his wage-and-hour dispute against Charter is not arbitrable. There is no evidence that the Arbitrator exceeded her powers and there is no basis for the Court to vacate, modify, or correct the arbitration award. Accordingly, under Sections 9 and 13 of the FAA, the Court "must grant" Harper's motion, confirm the arbitration award in its entirety, and enter judgment on the award as if it had been rendered in this Court.

Dated: May 24, 2019　　　　　　　　　　SODERSTROM LAW PC

　　　　　　　　　　　　　　　　　　By: */s/ Jamin S. Soderstrom*
　　　　　　　　　　　　　　　　　　　　Jamin S. Soderstrom
　　　　　　　　　　　　　　　　　　*Counsel for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 24, 2019, I caused the foregoing document to be served on all counsel of record by the Court's CM/ECF electronic filing system.

By: */s/ Jamin S. Soderstrom*
Jamin S. Soderstrom