1  Jamin S. Soderstrom, Bar No. 261054
   jamin@soderstromlawfirm.com
2  SODERSTROM LAW PC
   3 Park Plaza, Suite 100
3  Irvine, California 92614
   Tel: (949) 667-4700
4  Fax: (949) 424-8091

5
   *Counsel for Plaintiff and the Putative Class*
6

7

8                  UNITED STATES DISTRICT COURT

9                EASTERN DISTRICT OF CALIFORNIA

10

11 | LIONEL HARPER, individually and on behalf of    | Case No.   2:19-cv-00902-WBS-DMC
    all others similarly situated and all aggrieved   |
12  employees,                                         | **DECLARATION OF JAMIN S.**
                                                       | **SODERSTROM IN SUPPORT OF**
13           Plaintiff,                                | **PLAINTIFF LIONEL HARPER'S MOTION**
                                                       | **TO CONFIRM ARBITRATION AWARD**
    v.                                                 | **AND ENTER JUDGMENT**
14
    CHARTER COMMUNICATIONS, LLC,                       |
15  CHARTER COMMUNICATIONS, INC., and                  | Hearing Date:        July 1, 2019
    DOES 1 through 25,                                 | Hearing Time:        1:30 p.m.
16                                                     | Courtroom:           5
            Defendants.                                | Honorable Judge:     William Shubb
17                                                     | Arbitration Award:   April 25, 2019

18

19

20

21

22

23

24

25

26

27

28

                              1
                DECLARATION OF JAMIN S. SODERSTROM

<u>DECLARATION OF JAMIN S. SODERSTROM</u>

I, Jamin S. Soderstrom, declare as follows:

1.      I am an attorney duly licensed to practice law in the State of California and before this Court. I am the founding shareholder of Soderstrom Law PC, counsel of record for Plaintiff Lionel Harper in this case and in the arbitration that was completed on April 25, 2019. The facts set forth in this Declaration are based on my own personal knowledge and, if called as a witness, I could and would competently testify to the facts set forth herein.

2.      Attached as **Exhibit 1** is a true and correct copy of the Mutual Agreement to Arbitrate that Harper entered into with Defendants Charter Communications, LLC and Charter Communications, Inc. (collectively, "Charter") as a condition of his employment. Charter provided a copy of this agreement to Harper during his employment and Charter later produced a copy of the same agreement to me on July 3, 2017 (attached to a letter), on September 4, 2018 (in response to Harper's request for personnel records) and on February 22, 2019 (in response to the Arbitrator's order requiring Charter to collect and produce documents potentially related to Harper's arbitration rights and obligations). The Mutual Agreement to Arbitrate was the only form of arbitration agreement that Charter ever referred to or produced to me prior to May 22, 2019.

3.      In May 2018, Harper contacted JAMS and inquired whether Charter would be willing to mediate Harper's employment grievances. JAMS contacted Charter and Charter responded with an email stating: "While Charter is willing to arbitrate Mr. Harper's claims, the Company is not willing to Mediate them, as that is not part of the Company's Solution Channel process, to which he is bound. Can you check with Mr. Harper and see if he is interested in Arbitrating his claims?" Attached as **Exhibit 2** is a true and correct copy of the email sent from Charter's attorney Gregory S. Drake to a JAMS representative (with privileged material redacted).

4.      Attached as **Exhibit 3** is a true and correct copy of a June 5, 2018 email attaching a June 5, 2018 Request for Employment Records letter that I sent to Charter's attorney Mr. Drake. The letter also attached an authorization for release of records signed by Harper. The letter requested that Charter produce all documents required to be provided to Harper under Labor Code sections 226, 432, and 1198.5 and any other documents maintained in his personnel file.

5.      Attached as **Exhibit 4** is a July 3, 2018 Letter I received from Zachary W. Shine, outside counsel for Charter. In the letter, Charter took the position that "Mr. Harper has already initiated the litigation process against Charter with JAMS" and that "[a]s a result, Charter is not obligated to produce Mr. Harper's personnel documents under California Labor Code section 1198.5." If further took the position that "[t]here is no requirement under either Sections 226(b) or 432 [of the Labor Code] that an employer provide *an employee's representative* with copies of the records." It also insisted that Harper arbitrate any and all claims against Charter:

> By way of this letter, Charter also requests that your client stipulate to arbitration of any and all claims against Charter. Mr. Harper, at the time of his hire, entered into a Mutual Arbitration Agreement ("Agreement") with Charter in which he agreed to arbitrate all employment-related claims. A copy of the agreement, which was acknowledged by Mr. Harper, is enclosed with this letter. The Agreement states "that any and all claims, disputes, and/or controversies between you and Charter arising from or related to your employment with Charter shall be submitted exclusively to and determined exclusively by binding arbitration before a single Judicial Arbitration and Mediation Services, Inc. ("JAMS") arbitrator under the Federal Arbitration Act, 9 U.S.C. § 1 et seq." We understand Mr. Harper has already initiated the alternative dispute resolution process with JAMS, and are hopeful he will continue to abide by his agreement to submit any claims he intends to assert against Charter to binding arbitration. . . . Please let me know at your earliest convenience whether Mr. Harper will stipulate to binding arbitration with JAMS pursuant to the Mutual Arbitration Agreement.

The letter also attached a copy of the Mutual Agreement to Arbitrate that designated JAMS as the arbitration provider.

6.      Attached as **Exhibit 5** is a true and correct copy of a July 7, 2018 email I sent to Mr. Shine in response to Charter's July 3, 2018 letter refusing to produce any of Harper's personnel records.

7.      Attached as **Exhibit 6** is a true and correct copy of a July 18, 2018 email I received from Mr. Shine in response to my July 7, 2018 email. Charter again stated "we hope that Mr. Harper will abide by the [Mutual Agreement to Arbitrate] and pursue his claims through binding arbitration as agreed." It further indicated that Charter had reconsidered its position on producing Harper's personnel records to his counsel pursuant to his written and signed authorization and offered to do so in "a week or so." Thereafter, apparently Harper sent an email to Charter that gave Charter the impression he was not represented by counsel. It then took over a month for Charter to accept representations that Harper

3

1    was indeed represented by undersigned counsel and wanted Charter to communicate with and produce

2    documents to his counsel.

3        8.    On September 4, 2018, three months after Harper requested his personnel records,

4    Charter produced the records it maintained were responsive to Harper's requests under Labor Code

5    section 226, 432, and 1198.5. The only document produced by Charter that referenced arbitration was

6    another copy of the same Mutual Agreement to Arbitrate that designated JAMS as the arbitration

7    provider.

8        9.    Attached as **Exhibit 7** is a true and correct copy of the written PAGA notice dated

9    September 14, 2018 that I filed with the California Labor and Workforce Development Agency and sent

10   certified mail to Charter on Harper's behalf. I did not receive notice from the LWDA within 65 days

11   that it intended to investigate or pursue any of the claims and allegations described in the PAGA notice.

12       10.    Attached as **Exhibit 8** is a true and correct copy of the Demand for Arbitration and

13   Request for Rulings as to Inarbitrability ("Demand") that I filed on Harper's behalf with JAMS on

14   November 19, 2018. Exhibits 1 and 2 to the Demand are copies of the Mutual Agreement to Arbitrate

15   and the PAGA Notice letter. I paid the required filing fees on Harper's behalf pursuant to JAMS' rules

16   and the Arbitration Agreement's requirements.

17       11.    Charter did not object to the filing of the arbitration with JAMS and it paid its portion of

18   the required arbitration filing fees and costs. Following the filing of the Demand, I corresponded and

19   spoke with Charter's counsel, Mr. Shine, multiple times about selection of an arbitrator. On December

20   17, 2018, we agreed on the appointment of Hon. Rebecca J. Westerfield (Ret.) of JAMS and Mr. Shine

21   sent an email to JAMS confirming the parties' agreement. Attached as **Exhibit 9** is a true and correct

22   copy of the Appointment of Arbitrator dated December 20, 2018.

23       12.    In January 2019, I inquired into whether Charter was willing to engage in any informal

24   discovery as arbitration started to move forward. I specifically requested documents that Harper

25   completed as part of his job application, documents he electronically signed or acknowledged, and a

26   copy of the underlying agreements he had or may have with Charter, as those documents would be

27   relevant to preliminary briefing of threshold arbitrability issues as well as the substantive claims. In

28   early February 2019, Charter indicated that it was not willing to engage in any informal discovery.

13.     On February 7, 2019, I submitted at the request of the Arbitrator "Claimant's Agenda for Arbitration Readiness Call," a true and correct copy of which is attached as **Exhibit 10**. I specifically (1) sought leave to file a motion concerning the arbitrability of Harper's claims, (2) requested that Charter be ordered to produce the basic employment records that are relevant to threshold arbitrability issues, and (3) sought guidance as to whether Harper should add his non-wage-and-hour claims against Charter to this arbitration or file them in a separate proceeding. The agenda Charter submitted, which is attached as **Exhibit 11**, stated that "Respondent firmly believes arbitration is entirely appropriate here and that the Claimant must be bound by his agreement to arbitrate his claims. Respondent urges the arbitrator to hear Claimant's claim on the merits and initiate arbitration."

14.     On February 8, 2019, the Arbitrator held a preliminary hearing and arbitration readiness call with the parties' counsel. During that hearing, I argued that leave should be granted to file a motion concerning threshold arbitrability issues and that Charter should be required to collect and produce any and all documents that could be relevant to the parties' arbitration rights and obligations. Charter objected to any motions and any discovery. The Arbitrator ultimately granted my request for leave to file a motion concerning threshold arbitrability issues and ordered Charter to produce the documents I had requested. A true and correct copy of the Arbitrator's February 8, 2019 case management order is attached as **Exhibit 12**.

15.     On February 22, 2019, Charter produced to me all documents it believed were responsive to the Arbitrator's discovery order. Among those documents were another copy of the Mutual Agreement to Arbitrate designating JAMS as the arbitration provider, a copy of an Employee Handbook that referenced arbitration but did not include any other arbitration form, agreement, or procedure, and an electronic record indicating that Harper had received and acknowledged the Mutual Agreement to Arbitrate. Charter did not produce any other documents in connection with the arbitration.

16.     On March 1, 2019, I filed on Harper's behalf a Motion for Threshold Rulings which asked the Arbitrator to confirm she had jurisdiction to rule on arbitrability, scope, and enforceability issues, asked the Arbitrator to rule that the Mutual Agreement to Arbitrate was "null and void" by its own terms, and asked the Arbitrator to find that none of Harper's claims was arbitrable and to dismiss

the arbitration for lack of jurisdiction. A true and correct copy of the motion, with supporting documents, is attached as **Exhibit 13**.

17.    On March 15, 2019, Charter filed its response brief in opposition to Harper's Motion. Charter did not object to JAMS' administration of the arbitration or the Arbitrator's exercise of jurisdiction over the dispute, and it did not contest that the parties were bound by the Mutual Agreement to Arbitrate or argue that any other document was relevant to the determination of the arbitrability of Harper's claims. A true and correct copy of the response brief is attached as **Exhibit 14**.

18.    On March 21, 2019, I filed on Harper's behalf a reply brief in support of his Motion. A true and correct copy of the reply brief is attached as **Exhibit 15**.

19.    On March 26, 2019, the Arbitrator held a motion hearing via teleconference during which both sides participated and argued the merits of Harper's Motion. The Arbitrator took the motion under advisement.

20.    On April 25, 2019, the Arbitrator issued an arbitration award that confirmed she had jurisdiction to hear the issues before her, found that the Mutual Agreement to Arbitrate was "null and void" according to its own terms based on an unenforceable Waiver, found that Harper's wage-and-hour dispute was therefore not arbitrable, and dismissed the arbitration for lack of jurisdiction. A true and correct copy of the Arbitrator's award dated April 25, 2019 is attached as **Exhibit 16**.

21.    On May 3, 2019, I filed on Harper's behalf an original complaint in California state court raising the same wage-and-hour dispute that the Arbitrator had determined was not arbitrable. The complaint was served on Charter on May 7, 2019. I requested that Charter stipulate to confirming the Arbitrator's arbitration award, but it declined. On May 17, 2019, Charter filed in state court an Answer to the complaint. Later on May 17, 2019, Charter filed a notice of removal to federal court.

22.    On May 22, 2019, I received via email a letter from Charter's counsel indicating that Charter had found a different form of arbitration agreement that it believed was applicable to Harper's employment and the claims he raised in the arbitration and later filed in court. The letter suggested that this separate agreement should have governed the already completed arbitration and that, if the agreement did apply, Charter may have prevailed on the merits of its arguments. The letter asked "whether in light of this additional information Plaintiff agrees to arbitrate his claims on an individual

basis and dismiss his putative class and representative claims." A true and correct copy of the May 22, 2019 letter, with attachments, is attached as **Exhibit 17**. I declined Charter's request for a do over and reiterated Harper's intention to seek confirmation of the Arbitrator's award and pursue his non-arbitrable wage-and-hour dispute in court.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct. This Declaration was executed on May 24, 2019 at Irvine, California.

By: _____

Jamin S. Soderstrom

*Counsel for Plaintiff and the Putative Class*

SODERSTROM DECLARATION

# EXHIBIT 1



# MUTUAL AGREEMENT TO ARBITRATE

By accepting employment with Charter, you and Charter (as defined below) agree that any and all claims, disputes, and/or controversies between you and Charter arising from or related to your employment with Charter shall be submitted exclusively to and determined exclusively by binding arbitration before a single Judicial Arbitration and Mediations Services, Inc. ("JAMS") arbitrator under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"). Examples of such claims include, but are not limited to, claims (1) under the Fair Labor Standards Act ("FLSA"), (2) under state labor laws, (3) under any state law governing Charter's obligation to provide meal, rest, or other breaks, (4) alleging that you were paid improperly or paid insufficient wages, overtime, compensation, or that Charter failed to comply with any law relating to the payment of wages, (5) under any other state law related to your employment with Charter, (6) by Charter against you for breach of duty of loyalty, (7) by Charter against you for breach of fiduciary duty, (8) by Charter or you for breach of contract, (9) by Charter against you for theft of trade secrets/conversion, or (10) by Charter or you for breach of duty of good faith and fair dealing. You and Charter further agree that all arbitration proceedings shall be conducted in accordance with the JAMS Employment Arbitration Rules & Procedures and JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness. JAMS' arbitration rules and the location of JAMS' resolution centers may be found online at the web address provided above in the form of a hyperlink. As set forth in the applicable JAMS rules, Charter will bear all costs unique to arbitration, except for the Case Initiation Fee, which will be split between you and Charter in accordance with JAMS' fee schedule.  **Please read the JAMS rules carefully before electronically signing this agreement.**

For purposes of this Agreement, "Charter" means Charter Communications, Inc. together with its parents, subsidiaries, affiliates, successors and assigns.

You and Charter agree that the arbitrator's decision shall be final and binding on the parties (except as otherwise provided for under the FAA). The arbitration shall be conducted at the JAMS resolution center that is closest to your residence. You have the right to retain and be represented by counsel in any such arbitration.

**REPRESENTATIVE, COLLECTIVE, AND CLASS ACTION WAIVER: You and Charter understand, acknowledge and agree that the terms of this Agreement include a waiver of any rights that you or Charter may have to bring or participate in an action against each other on a representative, class, or collective basis and understand and agree that the arbitrator shall not be permitted to order consolidation of claims or a representative, class, or collective, arbitration. This waiver does not take away or restrict your or Charter's right to pursue your or its own claims, but only requires that any such claims be pursued in your or Charter's own individual capacity, rather than on a representative,**

CHA000006



**class, or collective basis.**

In the event a dispute between you and Charter is not arbitrable under this Agreement for any reason and is pursued in court, you and Charter agree to waive any right to a jury trial that might otherwise exist.

You and Charter agree that if the Agreement or any clause or term of the Agreement is found to be void, unenforceable, or unconscionable, the remainder of the Agreement shall be enforced without the invalid, unenforceable, or unconscionable clause or term, or the application of the clause or term shall be limited as to avoid any invalid, unenforceable, or unconscionable result. The only exception to this severability provision is, should the dispute involve a representative, collective or class action claim, and the REPRESENTATIVE, COLLECTIVE, AND CLASS ACTION WAIVER is found to be invalid or unenforceable for any reason, then this entire Agreement (except for the parties' agreement to waive a jury trial) shall be null and void and the dispute will not be arbitrable.

This Arbitration Agreement supersedes any other agreement to arbitrate previously in place between you and Charter.

Nothing herein shall prevent you from filing and pursuing the following: an administrative proceeding before the U.S. Equal Employment Opportunity Commission or an equivalent state or local agency (although if you choose to pursue a claim following the exhaustion of such administrative proceeding, that claim would be subject to arbitration); a proceeding before the National Labor Relations Board; a claim for medical and disability benefits under workers' compensation; or a claim for unemployment benefits.

# EXHIBIT 2



**From:** Drake, Greg S
**Sent:** Tuesday, May 29, 2018 7:53 AM
**To:** Karen Clerici <KClerici@JAMSADR.com>
**Subject:** RE: Harper v. Spectrum

Hi, Karen, I apologize for not responding sooner but I have been in trial and in negotiations.  While Charter is willing to arbitrate Mr. Harper's claims, the Company is not willing to Mediate them, as that is not part of the Company's  Solution Channel process, to which he is bound.  Can you check with Mr. Harper and see if he is interested in Arbitrating his claims?  Thank you.

Greg Drake



# EXHIBIT 3

**From:** Jamin Soderstrom
**To:** "Gregory.S.Drake@charter.com"
**Cc:** Diana Alderete
**Bcc:** Jamin Soderstrom
**Subject:** Lionel Harper"s personnel records
**Date:** Tuesday, June 5, 2018 9:44:00 AM
**Attachments:** image001.png
2018.06.05 Request for Employment Records Harper

Dear Mr. Drake,

Please see the attached letter and authorization for the release of employment records related to Mr. Lionel Harper. Please also direct all future communications concerning Mr. Harper to me.

If you would like me to mail a physical copy of the attached correspondence to you or another person or department within Charter, Spectrum, or one of their affiliates, please let me know.

Best regards,
Jamin

**Jamin S. Soderstrom**
Founding Shareholder





SODERSTROM
LAW

| | |
|---|---|
| 3 Park Plaza, Suite 100 | 949.667.4700 (phone) |
| Irvine, California 92614 | 949.424.8091 (facsimile) |
| soderstromlawfirm.com | jamin@soderstromlawfirm.com |

June 5, 2018

**BY EMAIL TO COUNSEL**

Charter Communications, Inc. and affiliates
c/o Mr. Gregory S. Drake (counsel)
400 Atlantic Avenue
Stamford, Connecticut 06901
gregory.s.drake@charter.com

     Re:    *Request for Lionel Harper's Employment Records*

To Whom It May Concern:

     I am counsel for Mr. Lionel Harper, a former employee of Charter Communications, Inc. and possibly one or more of its affiliates (collectively, "Charter"). All future communications related to Mr. Harper should be directed to me.

     Pursuant to California Labor Code sections 226, 432, and 1198.5, and applicable Industrial Wage Commission Orders, I am requesting that Charter provide me with copies of the following records for Mr. Harper:

1.      His personnel files.

2.      Each employee handbook applicable to his employment.

3.      All of his itemized wage statements, pay stubs, and time records.

4.      All of his business-related expense reimbursement records.

5.      All documents signed by him (physically or electronically) in the course of his employment, including but not limited to any employment agreement, arbitration agreement, release agreement, or any other document, instrument, or agreement.

6.      All records related to his performance, including but not limited to any formal performance evaluations or informal performance evaluations (e.g., emails between or among him, his colleagues, and/or his superiors).

Business Law   |   Employment Law   |   Consumer Law   |   Intellectual Property

June 5, 2018
Page 2 of 2

> 7.    All records related to any grievance concerning him, including but not limited to any written communications (including emails) between or among him, his colleagues, and/or his superiors.

I have enclosed with this letter an "Authorization for Release of Employment Records" signed by Mr. Harper covering all such records.

Please provide me with copies of all of the documents identified above as soon as practicable, but in no event later than 21 days from the date of this request.

Due to potential litigation related to Mr. Harper's employment and termination, Charter is instructed to put in place a litigation hold concerning any and all documents and records (paper and electronic) that relate or refer to Mr. Harper's employment in any way and to Charter's employment policies and practices generally. This litigation hold should include, but not be limited to, preserving in their current form all emails, text messages, social media messages, and any other forms of communications or records created or maintained by Charter or on Charter's behalf or by one or more of Charter's managers or human resources personnel.

Thank you for your anticipated cooperation in this matter.

Very truly yours,

SODERSTROM LAW PC

Jamin S. Soderstrom

*Enclosure*

DocuSign Envelope ID: 3C355A08-FD0B-4A24-A470-1CF4234D26B9



SODERSTROM
LAW

| 3 Park Plaza, Suite 100 | 949.667.4700 (phone) |
| Irvine, California 92614 | 949.424.8091 (facsimile) |
| soderstromlawfirm.com | jamin@soderstromlawfirm.com |

## AUTHORIZATION FOR RELEASE OF EMPLOYMENT RECORDS

To Whom It May Concern:

I, Lionel Harper, request that Charter Communications, Inc. and any of its applicable affiliates send copies of the following documents to my counsel, Soderstrom Law PC, located at 3 Park Plaza, Suite 100, Irvine, California 92614.

(i)     My personnel file.
(ii)    My itemized wage statements, pay stubs, and time records.
(iii)   My business-related expense reimbursement records.
(iv)    Any and all documents I signed (physically or electronically) in the course of my employment.
(v)     Any employment agreement, arbitration agreement, alternative dispute resolution agreement, release agreement, or other form of instrument or agreement that I signed related to my employment.
(vi)    All records related to my performance.
(vii)   All records related to any grievance that concerns me.
(viii)  Any employee handbook applicable to my employment.
(ix)    Any other records that relate to my compensation, time scheduled or worked, or other employment-related matters.
(x)     Any other records I am authorized to obtain or review under California Labor Code sections 226, 432, or 1198.5, or under any applicable Industrial Wage Commission Order.

06/23/1970

_____
Date of Birth

0042

_____
Last 4 Digits of SSN

6/4/2018 8:29:44 PM PDT

_____
Date

DocuSigned by:
*Lionel Harper*
A2F8E7FE5556475...

_____
Employee

Business Law    |    Employment Law    |    Consumer Law    |    Intellectual Property

# EXHIBIT 4

# Morgan Lewis

**Zachary W. Shine**
+1.415.442.1163
zachary.shine@morganlewis.com


July 3, 2018

**VIA EMAIL AND U.S. MAIL**

Jamin S. Soderstrom
Soderstrom Law, P.C.
3 Part Plaza, Suite 100
Irvine, California 92614

Re:    Harper v. Charter Communications, Inc.

Dear Mr. Soderstrom:

This firm represents Charter Communications, Inc. ("Charter") with regard to the claims by your client Lionel Harper.  Please direct all future correspondence to me.

With regard to your request for Mr. Harper's personnel records in your June 5, 2018 letter, as you may or may not be aware, Mr. Harper has already initiated the litigation process against Charter with JAMS.  As a result, Charter is not obligated to produce Mr. Harper's personnel documents under California Labor Code section 1198.5.  *See* Cal. Lab. Code § 1198.5(n) ("...the right of the employee, former employee, or his or her representative to inspect or copy personnel records under this section ceases during the pendency of the lawsuit in the court with original jurisdiction").

Additionally, under Section 226(b), an employer "shall afford *current and former employees* the right to inspect or copy records pertaining to their employment, upon reasonable request to the employer."  Similarly, Section 432 states *an employee* may obtain a copy of an instrument signed by the employee upon request.  There is no requirement under either Sections 226(b) or 432 that an employer provide *an employee's representative* with copies of the records.  If Mr. Harper makes a request for these records himself, as opposed to a request from his representative, Charter will provide these records to Mr. Harper.

By way of this letter, Charter also requests that your client stipulate to arbitration of any and all claims against Charter.  Mr. Harper, at the time of his hire, entered into a Mutual Arbitration Agreement ("Agreement") with Charter in which he agreed to arbitrate all employment-related claims.  A copy of the Agreement, which was acknowledged by Mr. Harper, is enclosed with this letter.  The Agreement states "that any and all claims, disputes, and/or controversies between you and Charter arising from or related to your employment with Charter shall be submitted exclusively to and determined exclusively by binding arbitration before a single Judicial Arbitration and Medians Services, Inc. ("JAMS") arbitrator under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*"

**Morgan, Lewis & Bockius** LLP

One Market
Spear Street Tower
San Francisco, CA  94105-1596        **T** +1.415.442.1000
United States                        **F** +1.415.442.1001

Jamin S. Soderstrom
July 3, 2018
Page 2

We understand Mr. Harper has already initiated the alternative dispute resolution process with JAMS, and are hopeful he will continue to abide by his agreement to submit any claims he intends to assert against Charter to binding arbitration.

Since Mr. Harper agreed to arbitrate any employment-related disputes with Charter, we hereby request that Mr. Harper stipulate to arbitration of his claims. If Mr. Harper agrees, we will provide a proposed stipulation. In the absence of a stipulation, should Mr. Harper decide to file a complaint in court, Charter will be forced to move to compel arbitration.

Please let me know at your earliest convenience whether Mr. Harper will stipulate to binding arbitration with JAMS pursuant to the Mutual Arbitration Agreement.

I look forward to hearing from you.

Sincerely,

Zachary W. Shine



# <u>MUTUAL AGREEMENT TO ARBITRATE</u>

By accepting employment with Charter, you and Charter (as defined below) agree that any and all claims, disputes, and/or controversies between you and Charter arising from or related to your employment with Charter shall be submitted exclusively to and determined exclusively by binding arbitration before a single Judicial Arbitration and Mediations Services, Inc. ("JAMS") arbitrator under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"). Examples of such claims include, but are not limited to, claims (1) under the Fair Labor Standards Act ("FLSA"), (2) under state labor laws, (3) under any state law governing Charter's obligation to provide meal, rest, or other breaks, (4) alleging that you were paid improperly or paid insufficient wages, overtime, compensation, or that Charter failed to comply with any law relating to the payment of wages, (5) under any other state law related to your employment with Charter, (6) by Charter against you for breach of duty of loyalty, (7) by Charter against you for breach of fiduciary duty, (8) by Charter or you for breach of contract, (9) by Charter against you for theft of trade secrets/conversion, or (10) by Charter or you for breach of duty of good faith and fair dealing. You and Charter further agree that all arbitration proceedings shall be conducted in accordance with the JAMS Employment Arbitration Rules & Procedures and JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness. JAMS' arbitration rules and the location of JAMS' resolution centers may be found online at the web address provided above in the form of a hyperlink. As set forth in the applicable JAMS rules, Charter will bear all costs unique to arbitration, except for the Case Initiation Fee, which will be split between you and Charter in accordance with JAMS' fee schedule.  **<u>Please read the JAMS rules carefully before electronically signing this agreement.</u>**

For purposes of this Agreement, "Charter" means Charter Communications, Inc. together with its parents, subsidiaries, affiliates, successors and assigns.

You and Charter agree that the arbitrator's decision shall be final and binding on the parties (except as otherwise provided for under the FAA). The arbitration shall be conducted at the JAMS resolution center that is closest to your residence. You have the right to retain and be represented by counsel in any such arbitration.

**REPRESENTATIVE, COLLECTIVE, AND CLASS ACTION WAIVER: You and Charter understand, acknowledge and agree that the terms of this Agreement include a waiver of any rights that you or Charter may have to bring or participate in an action against each other on a representative, class, or collective basis and understand and agree that the arbitrator shall not be permitted to order consolidation of claims or a representative, class, or collective, arbitration. This waiver does not take away or restrict your or Charter's right to pursue your or its own claims, but only requires that any such claims be pursued in your or Charter's own individual capacity, rather than on a representative,**



**class, or collective basis.**

In the event a dispute between you and Charter is not arbitrable under this Agreement for any reason and is pursued in court, you and Charter agree to waive any right to a jury trial that might otherwise exist.

You and Charter agree that if the Agreement or any clause or term of the Agreement is found to be void, unenforceable, or unconscionable, the remainder of the Agreement shall be enforced without the invalid, unenforceable, or unconscionable clause or term, or the application of the clause or term shall be limited as to avoid any invalid, unenforceable, or unconscionable result. The only exception to this severability provision is, should the dispute involve a representative, collective or class action claim, and the REPRESENTATIVE, COLLECTIVE, AND CLASS ACTION WAIVER is found to be invalid or unenforceable for any reason, then this entire Agreement (except for the parties' agreement to waive a jury trial) shall be null and void and the dispute will not be arbitrable.

This Arbitration Agreement supersedes any other agreement to arbitrate previously in place between you and Charter.

Nothing herein shall prevent you from filing and pursuing the following: an administrative proceeding before the U.S. Equal Employment Opportunity Commission or an equivalent state or local agency (although if you choose to pursue a claim following the exhaustion of such administrative proceeding, that claim would be subject to arbitration); a proceeding before the National Labor Relations Board; a claim for medical and disability benefits under workers' compensation; or a claim for unemployment benefits.

# EXHIBIT 5

| | |
|---|---|
| **From:** | Jamin Soderstrom |
| **To:** | Shine, Zachary W. |
| **Cc:** | McGuigan, Kathryn T.; Diana Alderete |
| **Subject:** | RE: Harper / Charter Communications, Inc. |
| **Date:** | Saturday, July 7, 2018 9:03:11 AM |
| **Attachments:** | image001.png |

Hi Zack,

Thanks for your email and letter.

I'd like to be clear about Charter's positions before moving forward.

1. Charter's position is that it is relieved of its statutory obligations under Section 1198.5(h) because Mr. Harper emailed JAMS to inquire about mediation and Charter rejected any thought of mediation and asked whether he was willing to arbitrate? What part of that situation satisfies the "files a lawsuit" requirement of subsection (h) or initiates any "litigation process" to use your preferred phrase?

2. Charter's position is that Mr. Harper's signed, written request to receive copies of his records identified in Sections 226 and 432 is ineffective because his request was attached to a cover letter sent by his counsel and he requested that the records themselves be sent directly to his counsel instead of him? Do you have any authority supporting that view, or is that simply your reading of the statutes themselves? My reading of 226 is that all a current or former employee needs to do is make a "reasonable request to the employer" that is "written or oral," and that 432 only requires that a "request" be made in one form or another. There is no language in either statute that suggests employees cannot use a representative to make or forward a request or receive the records themselves.

3. You indicate that Mr. Harper acknowledged and agreed to the "Mutual Arbitration Agreement" attached to your letter, but you provide no context or proof of such acknowledgement and agreement. For me even to advise Mr. Harper on a proposed stipulation, I will need to know far more information than you have provided in your letter.

I look forward to receiving your response and an indication of what authorities Charter is relying on to refuse to provide records to Mr. Harper's representative based on a written request signed by him. I also hope Charter will reconsider its positions on Mr. Harper's records and simply forward them on to me directly. To the extent Charter continues to demand that Mr. Harper send a request directly instead of relying on his counsel, however, who at Charter should receive such a request?

Best regards,
Jamin

**Jamin S. Soderstrom**
Founding Shareholder



---

**From:** Shine, Zachary W. <zachary.shine@morganlewis.com>
**Sent:** Tuesday, July 3, 2018 4:52 PM
**To:** Jamin Soderstrom <jamin@soderstromlawfirm.com>
**Cc:** McGuigan, Kathryn T. <kathryn.mcguigan@morganlewis.com>
**Subject:** Harper / Charter Communications, Inc.

Good afternoon Mr. Soderstrom,

We represent Charter with regard to the claims by your client, Lionel Harper.  Please direct all future correspondence to us.

Attached please find a letter in response to your June 5, 2018 letter as well as other issues.  The original will follow by mail.  Please feel free to contact me directly with any questions or comments.

Regards,

Zack

**Zachary W. Shine**
**Morgan, Lewis & Bockius LLP**
One Market, Spear Street Tower | San Francisco, CA 94105
Direct: +1.415.442.1163 | Main: +1.415.442.1000 | Fax: +1.415.442.1001
zachary.shine@morganlewis.com | www.morganlewis.com
Assistant: Constance J. Ericson | +1.415.442.1602 | constance.ericson@morganlewis.com

DISCLAIMER
This e-mail message is intended only for the personal use
of the recipient(s) named above. This message may be an
attorney-client communication and as such privileged and
confidential and/or it may include attorney work product.
If you are not an intended recipient, you may not review,
copy or distribute this message. If you have received this
communication in error, please notify us immediately by
e-mail and delete the original message.

# EXHIBIT 6

| | |
|---|---|
| **From:** | Shine, Zachary W. |
| **To:** | Jamin Soderstrom |
| **Cc:** | McGuigan, Kathryn T.; Diana Alderete |
| **Subject:** | RE: Harper / Charter Communications, Inc. |
| **Date:** | Wednesday, July 18, 2018 8:58:00 AM |
| **Attachments:** | image001.png |

Jamin,

Thank you for your email.  The client is locating Mr. Harper's acknowledgment concerning the mutual arbitration agreement, and we will provide that to you shortly.  Once we do, we hope that Mr. Harper will abide by the agreement, and pursue his claims through binding arbitration as agreed.  We are happy to discuss the specifics of arbitration with you should Mr. Harper so agree.

We have discussed your request for Mr. Harper's personnel file, and even though he has initiated the process with JAMS, we will produce the file to you.  Additionally, although we still maintain that Mr. Harper must request documents pursuant to Section 226 and 432 himself, as a courtesy, we will gather these documents and produce them to you as well.  Please allow a week or so for the client to locate and provide the requested documents.  In the meantime, please let me know if you have any questions.

Regards,

Zack

**Zachary W. Shine**
**Morgan, Lewis & Bockius LLP**
One Market, Spear Street Tower | San Francisco, CA 94105
Direct: +1.415.442.1163 | Main: +1.415.442.1000 | Fax: +1.415.442.1001
————————————————

---

**From:** Jamin Soderstrom <jamin@soderstromlawfirm.com>
**Sent:** Saturday, July 7, 2018 9:03 AM
**To:** Shine, Zachary W. <zachary.shine@morganlewis.com>
**Cc:** McGuigan, Kathryn T. <kathryn.mcguigan@morganlewis.com>; Diana Alderete <diana@soderstromlawfirm.com>
**Subject:** RE: Harper / Charter Communications, Inc.

[EXTERNAL EMAIL]
Hi Zack,

Thanks for your email and letter.

I'd like to be clear about Charter's positions before moving forward.

1. Charter's position is that it is relieved of its statutory obligations under Section 1198.5(h) because Mr. Harper emailed JAMS to inquire about mediation and Charter rejected any

thought of mediation and asked whether he was willing to arbitrate? What part of that situation satisfies the "files a lawsuit" requirement of subsection (h) or initiates any "litigation process" to use your preferred phrase?

2. Charter's position is that Mr. Harper's signed, written request to receive copies of his records identified in Sections 226 and 432 is ineffective because his request was attached to a cover letter sent by his counsel and he requested that the records themselves be sent directly to his counsel instead of him? Do you have any authority supporting that view, or is that simply your reading of the statutes themselves? My reading of 226 is that all a current or former employee needs to do is make a "reasonable request to the employer" that is "written or oral," and that 432 only requires that a "request" be made in one form or another. There is no language in either statute that suggests employees cannot use a representative to make or forward a request or receive the records themselves.

3. You indicate that Mr. Harper acknowledged and agreed to the "Mutual Arbitration Agreement" attached to your letter, but you provide no context or proof of such acknowledgement and agreement. For me even to advise Mr. Harper on a proposed stipulation, I will need to know far more information than you have provided in your letter.

I look forward to receiving your response and an indication of what authorities Charter is relying on to refuse to provide records to Mr. Harper's representative based on a written request signed by him. I also hope Charter will reconsider its positions on Mr. Harper's records and simply forward them on to me directly. To the extent Charter continues to demand that Mr. Harper send a request directly instead of relying on his counsel, however, who at Charter should receive such a request?

Best regards,
Jamin

**Jamin S. Soderstrom**
Founding Shareholder



From: Shine, Zachary W. <zachary.shine@morganlewis.com>
Sent: Tuesday, July 3, 2018 4:52 PM
To: Jamin Soderstrom <jamin@soderstromlawfirm.com>
Cc: McGuigan, Kathryn T. <kathryn.mcguigan@morganlewis.com>
Subject: Harper / Charter Communications, Inc.

Good afternoon Mr. Soderstrom,

We represent Charter with regard to the claims by your client, Lionel Harper.  Please direct all future correspondence to us.

Attached please find a letter in response to your June 5, 2018 letter as well as other issues.  The original will follow by mail.  Please feel free to contact me directly with any questions or comments.

Regards,

Zack

**Zachary W. Shine**
**Morgan, Lewis & Bockius LLP**
One Market, Spear Street Tower | San Francisco, CA 94105
Direct: +1.415.442.1163 | Main: +1.415.442.1000 | Fax: +1.415.442.1001
zachary.shine@morganlewis.com | www.morganlewis.com
Assistant: Constance J. Ericson | +1.415.442.1602 | constance.ericson@morganlewis.com

DISCLAIMER
This e-mail message is intended only for the personal use
of the recipient(s) named above. This message may be an
attorney-client communication and as such privileged and
confidential and/or it may include attorney work product.
If you are not an intended recipient, you may not review,
copy or distribute this message. If you have received this
communication in error, please notify us immediately by
e-mail and delete the original message.

# EXHIBIT 7

# SODERSTROM
## LAW

| | |
|---|---|
| 3 Park Plaza, Suite 100 | 949.667.4700 (phone) |
| Irvine, California 92614 | 949.424.8091 (facsimile) |
| soderstromlawfirm.com | jamin@soderstromlawfirm.com |

September 14, 2018

**BY ONLINE FILING**

Labor & Workforce Development Agency
Attn: PAGA Administrator
1515 Clay Street, Suite 801
Oakland, California 94612
PAGA@dir.ca.gov

**BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

| | |
|---|---|
| Charter Communications, LLC<br>Attn: Legal Department<br>7800 Crescent Executive Dr.<br>Charlotte, North Carolina 28217<br><br>Charter Communications, Inc.<br>Attn: Legal Department<br>400 Atlantic Street<br>Stamford, Connecticut 06901 | Copy via email to Charter's counsel:<br><br>Morgan, Lewis & Bockius LLP<br>Zachary W. Shine<br>One Market, Spear Street Tower<br>San Francisco, California 94105<br>zachary.shine@morganlewis.com |

       Re:    *Notice of Violations of the California Labor Code*

To Whom It May Concern:

       Soderstrom Law PC represents Lionel Harper ("Employee"), a former employee of Charter Communications, LLC, Charter Communications, Inc., and possibly one or more of their affiliates (collectively, "Defendant"). In accordance with California Labor Code section 2699.3, and on behalf of Employee and all aggrieved employees, this letter gives written notice to the Labor & Workforce Development Agency and to Defendant of serious and ongoing violations of the California Labor Code.

       Employee is an "aggrieved employee" as the term is used in California's Private Attorneys General Act, Labor Code § 2698 *et seq.* ("PAGA"). The violations described below occurred during or in connection with his and other workers' employment with Defendant, and he has

September 14, 2018
PAGA Administrator
Charter Communications, LLC
Charter Communications, Inc.
Page 2 of 7

personal knowledge of such violations. On information and belief, the violations are ongoing. Accordingly, unless we are notified of an investigation by the Administrator within the period established by Section 2699.3, Soderstrom Law PC intends to commence and/or supplement existing claims in connection with a civil action brought against Defendant for the violations described herein and to seek all civil penalties available on behalf of the State.

## I.     LIABLE EMPLOYER

Defendant markets and sells various services, including television, Internet, and phone services, to consumers in California and nationwide. As Employee's employer, Defendant is liable for any and all violations of the Labor Code committed against Employee and all other aggrieved employees who performed work in California during the relevant time period and for the civil penalties provided for by the Labor Code.

## II.     AGGRIEVED EMPLOYEES

Employee is a resident of Redding, California. From September 2017 to March 2018, Employee worked for Defendant in California. Employee worked with many other employees during his employment, and his experience gave him a thorough understanding of Defendant's employment policies and practices. As detailed below, Employee personally suffered from Defendant's Labor Code violations and witnessed and learned of the same and other violations committed against other of Defendant's employees in California.

## III.     KNOWN LABOR CODE VIOLATIONS

Defendant committed the following Labor Code violations against Employee and/or other employees who performed work for Defendant in California. Upon information and belief, Defendant continues to commit the same or substantially similar violations to this day.

### A.     Failure to Accurately Calculate and Pay Minimum Wages and Overtime Wages in Violation of Labor Code Sections 510, 1182.12, and 1197 and the Governing Industrial Wage Order

Under Labor Sections 1182.12 and 1197 as well as paragraph 4 of the governing Industrial Wage Order, an employer must pay an employee at least the minimum applicable wage, as set by the statutes and Department of Industrial Relations, for all hours that the employee has been suffered or permitted to work. Additionally, under Labor Code section 510 and paragraph 3 of the governing Industrial Wage Order, an employer must compensate an employee at the rate of no less than one and one-half times the employee's regular rate of pay for any work in excess of eight hours in one day, any work in excess of 40 hours in one work week, and the first eight hours worked on the seventh day of work in any one work week. Any work in excess of 12 hours in one day and any work in excess of eight hours on any seventh day of a workweek must be compensated at a rate no less than twice the employee's regular rate of pay.

September 14, 2018
PAGA Administrator
Charter Communications, LLC
Charter Communications, Inc.
Page 3 of 7

As a matter of policy and practice, Defendant failed to pay Employee and other employees the required minimum and overtime wages for all hours worked. Specifically, but without limitation, Defendant regularly required employees during training to work a full day and then complete homework after the work day ended. The training and homework combined required employees to work more than 8 hours in a day, but Defendant did not keep track of or pay employees all wages owed for the time worked over 8 hours in a day or 40 hours in a week during training. Defendant further failed to properly keep track of all hours worked outside of training weeks and failed to pay employees all wages owed for the time worked over 8 hours in a day or 40 hours in a week.

As a result of these policies and practices, Defendant does not pay its training employees and post-training employees all of the minimum and overtime wages they are due, does not maintain complete records of all time worked, and does not provide accurate wage statements.

Defendant's violations of Labor Code Sections 510, 1182.12, and 1197 and paragraphs 3 and 4 of the governing Wage Order have aggrieved Employee and other similarly situated employees in California.

**B.    Failure to Provide Uninterrupted Meal Periods and Rest Breaks and Failure to Pay Premium Wages in Violation of Labor Code Sections 226.7, 512(a), and the Governing Industrial Wage Order**

Under Labor Code section 512(a) and paragraph 11 of the governing Industrial Wage Order, an employer may not require its employees to work more than five hours per day without providing an off-duty, uninterrupted meal period of not less than 30 minutes, and it may not require its employees to work more than 10 hours a day without providing a second 30-minute meal period. A meal period must begin no later than the end of the fifth hour of work. And under Labor Code section 226.7 and paragraph 11 of the governing Wage Order, if the employer does not provide these required meal breaks, the employer must pay the employee an additional hour of pay for each workday that the meal period is not provided.

Additionally, under paragraph 12 of the governing Industrial Wage Order, an employer must permit its employees to take 10 minutes of rest for every four hours worked or major fraction thereof, taken in the middle of the work period unless impracticable. And under Labor Code section 226.7 and paragraph 12 of the governing Wage Order, if the employer does not provide the required rest breaks, the employer must pay the employee an additional hour of pay for each workday that a rest period is not provided.

Defendant fails to provide timely, off-duty, uninterrupted 30-minute meal periods to nonexempt employees like Employee and fails to compensate them one additional hour of pay for each meal period that is missed, shortened, interrupted, on-duty, or untimely. Defendant does not require or allow Employee and other nonexempt employees to clock-out and clock-in for each meal period and accurately record the existence and length of each meal period taken, and

September 14, 2018
PAGA Administrator
Charter Communications, LLC
Charter Communications, Inc.
Page 4 of 7

knowingly suffers, permits, or requires work to be performed during what should be a meal period. Defendant fails to provide compliant meal periods and rest breaks both during training weeks and after training weeks.

Defendants' violations of Labor Code Sections 512 and 226.7, and paragraphs 11 and 12 of the governing Wage Order have aggrieved Employee and other similarly situated employees.

### C.    Unlawful Commission Deductions in Violation of Labor Code Sections 221, 223, 224, and 2751

California Labor Code sections 221, 223, and 224 protect employees against unlawful deductions of their earned wages. Under Section 221, "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." Relatedly, under Section 223, "Where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract." Section 224 authorizes certain deductions that an employee "expressly authorize[s] in writing," but forbids deductions that amount to a "rebate or deduction from the standard wage . . . pursuant to wage agreement or statute." Additionally, under California Labor Code section 2751, when an employer enters into a contract of employment and the contemplated payment method includes commissions, the contract must "set forth the method by which the commissions shall be computed and paid."

Defendant recruits and incentivize sales employees like Employee by emphasizing their ability to earn commissions. However, Defendant imposes unlawful and unfair incentive compensation terms and then fails to pay all amounts owed under such terms. The terms result in Defendant unlawfully and unfairly keeping, failing to pay, and/or deducting Employee's and other employees' commission wages.

Defendant also fails to perform all of its obligations under the terms and unfairly construes the terms and modifies the terms in its favor.

Defendant has not paid Employee and similarly situated employees all of the commission wages they are owed, and has unlawfully and unfairly deducted, reconciled, or clawed back commission wages that were properly earned.

Defendant violated Sections 221, 223, and 224 each time it failed to correctly and fairly calculate and pay earned commission and each time it has deducted, clawed back, or otherwise reconciled Employee's and other employees' incentive compensation. Defendant further relied on methods for the computation and payment of commissions that are not set forth in the applicable terms in violation of Section 2751. Defendant's violations of Labor Code Sections 221, 223, 224, and 2751 have aggrieved Employee and similarly situated employees.

///

September 14, 2018
PAGA Administrator
Charter Communications, LLC
Charter Communications, Inc.
Page 5 of 7

### D.    Willful Failure to Pay All Wages Earned Upon An Employee's Termination or Quitting and Failure to Pay Penalty Wages in Violation of Labor Code Sections 201, 202, and 203

Under Labor Code sections 201 and 202, an employer must pay an employee all unpaid wages immediately upon that employee's termination or within 72 hours if the employee has quit without providing advanced notice. And under Labor Code section 203, if an employer willfully fails to comply with Sections 201 or 202, the employee is entitled to continued wages up to 30 days from the date the unpaid wages were originally due to when they were actually paid.

Defendant fails to timely and accurately pay Employee and other employees who are terminated or quit all due but unpaid wages, and Defendant does not pay any wages as waiting time penalties. As discussed above, Defendant does not accurately record all hours worked and all meal period and rest breaks taken late, missed, shortened, or interrupted, and Defendant does not pay premium wages when a compliant meal period or rest break is not provided. Nor does Defendant pay all incentive compensation that is earned and payable. Consequently, when Defendant paid Employee and other former employees' final paychecks, they were all miscalculated and too small.

Defendant's violations of Labor Code section 201 and 202 have aggrieved Employee and other former employees who were terminated or quit. Defendant's failure to pay penalty wages under Labor Code section 203 has further aggrieved Employee and other former employees.

### E.    Failure to Pay All Wages Earned at Least Twice During Each Calendar Month in Violation of Labor Code Section 204

Under Labor Code section 204, an employer must pay all wages earned by any employee, other than those mentioned in Sections 201, 201.3, 202, 204.1, or 204.2, twice during each calendar month, on days designated in advance by the employer as the regular paydays.

Defendant's failures described above—including the failure to pay all minimum and overtime wages due, the failure to pay premium wages in lieu of compliant meal periods and rest breaks, and the failure to properly calculate and pay all commission wages—caused it also to fail to pay all wages earned by Employee and similarly situated employees at least twice monthly.

Defendant's violations of Labor Code section 204 have aggrieved Employee and other similarly situated employees because they were not timely or accurately paid all wages earned at least twice each month.

///

///

///

September 14, 2018
PAGA Administrator
Charter Communications, LLC
Charter Communications, Inc.
Page 6 of 7

**F.      Failure to Maintain Accurate Records and Wage Statements in Violation of Labor Code Sections 226 and 1174(d) and the Governing Industrial Wage Order**

Under Labor Code section 1174(d), an employer must maintain at least three years of accurate payroll records reflecting each employee's hours worked daily and the wages paid to them. And under paragraph 7 of the governing Industrial Wage Order, these records must also show the employee's rate of pay, when each work period began and ended, and when meal periods and split shift intervals occurred.

Labor Code section 226 and paragraph 7 of the governing Wage Order further require an employer to provide its employees with accurate, semi-monthly itemized wage statements that reflect the employee's gross and net wages earned, total hours worked, all deductions, the inclusive dates of the pay period, and all applicable hourly rates.

As explained above, Defendant failed to keep accurate records reflecting Employee's and other employees' hours worked and when meal periods occurred. Defendant also failed to provide accurate wages statements that reflected the total hours worked, all deductions, and all gross and net wages earned, including commission wages. Employee's wage statements never reflected any premium wage being paid for late, shortened, missed, or on-duty meal periods or rest breaks. Employee's final several wage statements also failed to accurately record the time worked, wages due, and inclusive dates of the applicable pay periods.

Defendant's willful violations of Labor Code sections 226 and 1174(d) and the governing Wage Order have aggrieved Employee and other similarly situated employees.

**G.      Failure to Timely Provide a Copy of Personnel Records Upon Request in Violation of Labor Code Sections 226, 432, and 1198.5**

Under Labor Code section 226(c), an employer must provide employees, within 21 calendar days from the date of a request, copies of the records required to be kept under section 226(a) (i.e., wage statements).

Under Labor Code section 432, an employer must provide employees a copy of any instrument that the employee signed related to his or her obtaining or holding of employment.

Under Labor Code section 1198.5, an employer must provide employees, within 30 days from the date of a request, copies of their personnel records.

In a letter dated June 5, 2018, Employee, through his counsel via a written and signed authorization, requested that Defendant provide copies of his personnel file, including all wage statements, instruments he signed or acknowledged concerning his employment, and other records

September 14, 2018
PAGA Administrator
Charter Communications, LLC
Charter Communications, Inc.
Page 7 of 7

concerning his obtaining and holding of employment, pursuant to Labor Code sections 226, 432, and 1198.5.

On July 3, 2018, counsel for Defendant responded to Employee's request in writing refusing to produce any records and took the position that (i) an email sent by Employee to a JAMS representative inquiring about the possibility of a mediation constituted "the pendency of [a] lawsuit in the court with original jurisdiction" during which time its obligations under Labor Code section 1198.5 ceases, and (ii) only an employee personally, not an employee's authorized legal representative, is entitled to request copies of records under Labor Code sections 226 and 432.

Defendant failed to produce any records under Labor Code sections 226, 432, and 1198.5 within the statutory time periods. On July 18, 2018, more than six weeks after Employee's written request, Defendant finally consented to producing such records to Employee's counsel. Defendant ultimately produced an incomplete set of Employee's records on September 4, 2018, 13 weeks after Employee's initial written request. Defendant failed to provide copies of any offer letter, all records related to Employee's performance and obtaining/holding employment, the employee handbook that governed Employee's employment, any signed copies or acknowledgements of such records.

Defendant's violation of Labor Code sections 226, 432, and 1198.5 has aggrieved Employee.

## IV.    CIVIL PENALTIES FOR LABOR CODE VIOLATIONS

Due to the above-described violations and similar violations that may be identified after further investigation or during discovery, Defendant is liable as an employer for specific or default civil penalties as provided by Labor Code section 2699 as well as Labor Code sections 201, 202, 203, 204, 210, 223, 225.5, 226, 226.3, 226.7, 256, 510, 512, 558, 558.1, 1174, 1174.5, 1182.12, 1194, 1194.2, 1197, 1197.1, 1197.5, 1198.5, and 1206.

Please contact me at 949.667.4700 or jamin@soderstromlawfirm.com if you would like to discuss this matter.

Very truly yours,

SODERSTROM LAW PC

Jamin S. Soderstrom

# EXHIBIT 8

**IN THE MATTER OF JAMS ARBITRATION OF**

| | |
|---|---|
| **LIONEL HARPER,** | **Case No.** |
| **Claimant,** | |
| **v.** | **DEMAND FOR ARBITRATION AND REQUEST FOR RULING AS TO INARBITRABILITY** |
| **CHARTER COMMUNICATIONS, LLC, CHARTER COMMUNICATIONS, INC., and DOES 1 to 25,** | |
| **Respondents.** | **Filed:       November 19, 2018** |
| | **Venue:      San Francisco, California** |

Claimant LIONEL HARPER ("Claimant"), brings this arbitration against Respondents CHARTER COMMUNICATIONS, LLC, CHARTER COMMUNICATIONS, INC., and DOES 1 through 25 (collectively, "Respondents"), and alleges as follows:

**JURISDICTION, VENUE, AND APPLICABLE RULES**

1.      Claimant and Respondents entered into a Mutual Agreement to Arbitrate ("Arbitration Agreement") that selected JAMS as the arbitration provider. *See* Exhibit 1.

2.      The Arbitration Agreement states that "arbitration shall be conducted at the JAMS resolution center that is closest to your residence." *Id.* Claimant requests that the San Francisco be set as the venue of the arbitration, subject to further agreement among the parties.

3.      The Arbitration Agreement states that "all arbitration proceedings shall be conducted in accordance with the JAMS Employment Arbitration Rules & Procedures and JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness" (the "JAMS Employment Rules"). *Id.*

4.      The Arbitration Agreement states that arbitration shall be "before a single [JAMS] arbitrator." *Id.*

## PARTIES

5.      Claimant is a resident of California. Claimant worked for Respondents in California from September 2017 to March 2018.

6.      Respondent CHARTER COMMUNICATIONS, LLC is a limited liability company doing business in California and is a joint employer of Claimant.

7.      Respondent CHARTER COMMUNICATIONS, INC. is a corporation doing business in California and is a joint employer of Claimant.

8.      Claimant does not know the true names or capacities, whether individual or corporate, of Respondents sued as DOES 1 through 25 and, for that reason, sues such Respondents under fictitious names. Claimant is informed and believe that each DOE defendant was responsible in some respect for the violations alleged herein and proximately caused Claimant and other similarly situated employees to be subject to illegal employment practices and to suffer harm, and that each DOE defendant controlled their work and was a joint employer. Claimant will seek leave to amend as and when the true names and capacities of each DOE defendant become known.

9.      On September 14, 2018, Claimant complied with the requirements of Labor Code section 2699.3(a) by providing written notice via online filing to the Labor and Workforce Development Agency ("LWDA"), and via certified mail return receipt requested to Respondents, of the specific provisions of the Labor Code alleged to have been violated, including the facts and theories that support the alleged violations. Claimant did not receive notice from the LWDA that it intended to investigate the violations alleged in Claimant's written notice. Claimant therefore has complied with Labor Code section 2699.3's notice requirements and is authorized to

2                                                      DEMAND FOR ARBITRATION

commence a civil action under the Private Attorney General Act, Lab. Code § 2698 *et seq.* ("PAGA"). A copy of Claimant's written PAGA notice is attached as <u>Exhibit 2</u>.

## **<u>REQUEST FOR THRESHOLD RULINGS</u>**

10.    Claimant respectfully seeks the following threshold rulings from the arbitrator:

**Threshold Ruling 1**:

The Parties' identification and incorporation of the JAMS Employment Rules into the Arbitration Agreement irrevocably delegated to the arbitrator the authority to determine the enforceability, scope, and arbitrability issues raised in this Demand.

**Threshold Ruling 2**:

The entire Arbitration Agreement is "null and void" by its own terms based on the unenforceable waiver of the right to bring any form of representative claim and the unenforceable waiver of the right to seek public injunctive relief in any forum.

**Threshold Ruling 3**:

No part of the disputes between the Parties is arbitrable and there is no arbitration jurisdiction beyond the ability of the arbitrator to rule that the Arbitration Agreement is "null and void."

11.    Claimant requests that the arbitrator permit briefing and conduct a hearing on the threshold issues identified above and issue a written ruling holding that the Arbitration Agreement is null and void dismissing the arbitration for lack of jurisdiction. Claimant expressly reserves the right to assert class action, collective action, and representative action claims on behalf of similarly situated employees and other aggrieved employees of Respondents in court.

12.    In the event the arbitrator determines that the Arbitration Agreement is not "null and void" by its own terms and jurisdiction exists, Claimant asks the arbitrator to consider and, following a hearing, rule on the claims asserted below. This request includes consideration of and

a ruling on the merits of Claimant's representative PAGA claim because, only to the extent the Arbitration Agreement is not null and void, Claimant hereby consents on behalf of the State to arbitrate representative PAGA claims asserted herein and in Claimant's PAGA written notice.

## FACTUAL ALLEGATIONS

13.     Respondents market and sell various services, including television, Internet, and phone services, in California and nationwide.

14.     Claimant worked for Respondents in California as a salesperson from September 2017 to March 2018. During his employment, Claimant worked with numerous other similarly situated employees. Claimant's working experience gave him a thorough understanding of Respondents' employment policies and practices.

15.     Claimant personally experienced and witnessed Respondents engaging in unlawful and unfair business practices. Respondents continue to commit these unlawful and unfair business practices to this day.

## CAUSES OF ACTION

16.     The following causes of action are brought on an individual basis to the extent the arbitrator determines the Arbitration Agreement is not "null and void" by its own terms. Claimant expressly reserves the right to assert such claims on a class, collective, and/or representative basis in court to the extent the arbitrator rules that there is no arbitration jurisdiction over such claims.

17.     Notwithstanding the previous paragraph, Claimant asserts the PAGA claim on a representative basis on behalf of the State and all other aggrieved employees of Respondents. To the extent the Arbitration Agreement is not null and void, Claimant consents on the State's behalf to arbitrate the representative PAGA claim.

DEMAND FOR ARBITRATION

**First Cause of Action**

**Failure to Pay Minimum Wages for All Hours Worked**

18.     Claimant incorporates all prior paragraphs.

19.     Labor Code sections 1182.12, 1194, and 1197 requires employers to pay at least the legal minimum wage for all hours worked by nonexempt employees in California.

20.     As a matter of policy and practice, Respondents failed to pay Claimant and other employees the required minimum wages for all hours worked. Specifically, but without limitation, Respondents regularly required Claimant and other employees during training to work a full day and then complete homework after the work day ended. The training and homework combined required employees to work more than 8 hours in a day, but Respondents did not keep track of or pay employees all wages owed for the time worked over 8 hours in a day or 40 hours in a week during training. Respondents further failed to properly keep track of all hours worked outside of training weeks and failed to pay employees all wages owed for the time worked over 8 hours in a day or 40 hours in a week. Claimant and other similarly situated employees were misclassified as exempt employees during all of their training days as well as their post-training days.

21.     As a result of these policies and practices, Respondents do not pay its training employees and post-training employees all of the minimum and overtime wages they are due, does not maintain complete records of all time worked, and does not provide accurate wage statements.

22.     Claimant was deprived of the minimum wages he was owed as a direct result of Respondents' unlawful actions. Respondents have violated Labor Code sections 1182.12, 1194, and 1197, and under Labor Code section 1194.2, Claimant is entitled to recover unpaid minimum wages, liquidated damages, interest, costs, and reasonable attorneys' fees.

## Second Cause of Action

### Failure to Pay Overtime Wages for All Overtime Hours Worked

23.    Claimant incorporates all prior paragraphs.

24.    Labor Code section 510 requires employers to compensate all nonexempt employees at 1.5 times their regular hourly rate for all hours worked over 8 hours in a day and over 40 hours in a week, and two times their regular hourly rate for all hours worked over 12 hours in a day or over 8 hours on the seventh day of the week.

25.    As a matter of policy and practice, Respondents failed to pay Claimant and other employees the required overtime wages for all hours worked. Specifically, but without limitation, Respondents regularly required Claimant and other employees during training to work a full day and then complete homework after the work day ended. The training and homework combined required employees to work more than 8 hours in a day, but Respondents did not keep track of or pay employees all wages owed for the time worked over 8 hours in a day or 40 hours in a week during training. Respondents further failed to properly keep track of all hours worked outside of training weeks and failed to pay employees all wages owed for the time worked over 8 hours in a day or 40 hours in a week. Claimant and other similarly situated employees were misclassified as exempt employees during all of their training days as well as their post-training days.

26.    Claimant was deprived of the overtime wages he was owed for all hours worked as a result of Respondents' unlawful actions. Respondents have violated Labor Code sections 510 and 1197, and Claimant is entitled to recover unpaid overtime wages, interest, costs, and reasonable attorneys' fees.

## Third Cause of Action

### Failure to Provide Meal Periods or Pay Premium Wages In Lieu Thereof

27.    Claimant incorporates all prior paragraphs.

6                                                        DEMAND FOR ARBITRATION

28.     Labor Code section 512 requires employers to provide an off-duty, uninterrupted 30-minute meal period if the employee works more than five hours in a day, and a second meal period if the employee works more than 10 hours in a day. These meal periods must be free of all work duties.

29.     Respondents failed to provide timely, off-duty, uninterrupted 30-minute meal periods to nonexempt employees like Claimant and failed to compensate them one additional hour of pay for each meal period that is missed, shortened, interrupted, on-duty, or untimely. Respondents did not require or allow Claimant and other nonexempt employees to clock-out and clock-in for each meal period and accurately record the existence and length of each meal period taken, and knowingly suffered, permitted, or required work to be performed during what should be a meal period. Respondents failed to provide compliant meal periods both during training weeks and after training weeks.

30.     Respondents never paid Claimant any premium wages for meal periods that were untimely or that were missed, shortened, interrupted, or on-duty.

31.     Respondents have violated Labor Code sections 512 and 226.7, and Claimant is entitled to recover premium wages in the amount of one additional hour of pay at his regular rate of pay for each violation, costs, and reasonable attorneys' fees.

### Fourth Cause of Action

### Failure to Provide Rest Breaks or Pay Premium Wages In Lieu Thereof

32.     Claimant incorporates all prior paragraphs.

33.     Labor Code section 226.7 requires employers to provide a rest period mandated by an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health. Under paragraph 12 of the governing Industrial Wage Order,

DEMAND FOR ARBITRATION

employers must permit nonexempt employees to take 10 minutes of rest for every four hours worked, taken in the middle of the work period unless impracticable. Under Labor Code section 226.7 and paragraph 12 of the governing Industrial Wage Order, when employers do not provide compliant rest breaks, they must pay employees an additional hour of pay at the employees' regular rate of pay for each violation.

34.    Respondents failed to provide timely, off-duty, uninterrupted 10-minute rest periods to nonexempt employees like Claimant and failed to compensate them one additional hour of pay for each day a compliant rest period was not provided. Respondents failed to provide compliant rest breaks both during training and during post-training work.

35.    Respondents never paid Claimant or other employees any premium wages for rest breaks that were untimely or were missed, shortened, interrupted, or on-duty.

36.    Respondents have violated Labor Code section 226.7, and Claimant is entitled to recover premium wages in the amount of one additional hour of pay at his regular rate of pay for each violation, costs, and reasonable attorneys' fees.

### Fifth Cause of Action

### Unlawful Deduction of Wages under Section 221

37.    Claimant incorporates all prior paragraphs.

38.    California Labor Code sections 221, 223, and 224 protect employees against unlawful deductions of their earned wages. Under Section 221, "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." Relatedly, under Section 223, "Where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract." Section 224 authorizes certain deductions that an employee "expressly authorize[s] in writing," but forbids

deductions that amount to a "rebate or deduction from the standard wage . . . pursuant to wage agreement or statute." Additionally, under California Labor Code section 2751, when an employer enters into a contract of employment and the contemplated payment method includes commissions, the contract must "set forth the method by which the commissions shall be computed and paid."

39.     Respondents recruit and incentivize sales employees like Claimant by emphasizing their ability to earn commissions. However, Respondents impose unlawful and unfair incentive compensation terms and then fail to pay all amounts owed under such terms. The terms result in Respondents unlawfully and unfairly keeping, failing to pay, and/or deducting Claimant's and other employees' commission wages.

40.     Respondents also failed to perform all of their obligations under the terms and unfairly construes the terms and modifies the terms in its favor.

41.     Respondents have not paid Claimant and similarly situated employees all of the commission wages they are owed, and have unlawfully and unfairly deducted, reconciled, or clawed back commission wages that were properly earned.

42.     Respondents violated Sections 221, 223, and 224 each time they failed to correctly and fairly calculate and pay earned commission and each time they have deducted, clawed back, or otherwise reconciled Claimant's and other employees' incentive compensation. Respondents further relied on methods for the computation and payment of commissions that are not set forth in the applicable terms in violation of Section 2751.

43.     Respondents have violated Labor Code sections 221, 223, 224, and 2751, and Claimant is entitled to recover the amount of deductions unlawfully taken, interest, costs, and reasonable attorneys' fees.

**Sixth Cause of Action**

**Failure to Provide Accurate Wage Statements**

44.  Claimant incorporates all prior paragraphs.

45.  Labor Code section 226 provides that employers shall furnish their employees with accurate itemized statements in writing showing gross wages earned, total hours worked, all deductions, net wages earned, all applicable hourly rates and the corresponding number of hours worked at each hourly rate, and the inclusive dates of all pay periods.

46.  As explained above, Respondents failed to keep accurate records reflecting Claimant's and other employees' hours worked and when meal periods occurred. Respondents also failed to provide accurate wages statements that reflected the total hours worked, all deductions, and all gross and net wages earned, including commission wages. Claimant's wage statements never reflected any premium wage being paid for late, shortened, missed, or on-duty meal periods or rest breaks. Claimant's final several wage statements also failed to accurately record the time worked, wages due, and inclusive dates of the applicable pay periods.

47.  Respondents' violations were knowing and willful.

48.  Claimant is entitled to recover the greater of his actual damages or statutory penalties, costs, and reasonable attorneys' fees.

**Seventh Cause of Action**

**Failure to Pay All Wages Owed Upon Termination**

49.  Claimant incorporates all prior paragraphs.

50.  Labor Code section 201 provides that discharged employees are entitled to be paid all wages due at the time of discharge, and Labor Code section 202 provides that employees who quit without at least 72 hours' notice are entitled to be paid all wages due within 72 hours of quitting. Under Labor Code section 203, willful failure to timely pay discharged and quitting

employees all wages due requires employers to pay waiting time penalties in the amount of one day's compensation at the employees' regular rates of pay for each day the wages are not paid, up to 30 days.

51.     Respondents failed to timely and accurately pay Claimant and other employees who were terminated or quit all due but unpaid wages, and Respondents do not pay any wages as waiting time penalties. As discussed above, Respondents did not accurately record all hours worked and all meal period and rest breaks taken late, missed, shortened, or interrupted, and Respondents do not pay premium wages when a compliant meal period or rest break is not provided. Nor do Respondents pay all incentive compensation that is earned and payable. Consequently, when Respondents paid Claimant and other former employees' final paychecks, they were all miscalculated and too small.

52.     Claimant is entitled to recover waiting time penalties, costs, and reasonable attorneys' fees.

## Eighth Cause of Action

### Failure to Provide Timely and Complete Copies of Employment Records

53.     Claimant incorporates all prior paragraphs.

54.     Labor Code section 226 requires employers to keep for a least three years copies of Claimant's wage statements and to provide them within 21 days of the date of a request. Labor Code section 432 requires employers to provide employees with a copy of any instrument that the employee signed related to his or her obtaining or holding of employment. Labor Code section 1198.5 requires employers to provide employees within 30 days from the date of a request copies of their personnel records.

55.     Claimant, through his counsel via a written and signed authorization, requested that Respondents provide copies of his personnel file, including all wage statements, instruments he

DEMAND FOR ARBITRATION

signed or acknowledged concerning his employment, and other records concerning his obtaining and holding of employment, pursuant to Labor Code sections 226, 432, and 1198.5. On July 3, 2018, counsel for Respondents responded to Claimant's request in writing refusing to produce any records and took the position that (i) an email sent by Claimant to a JAMS representative inquiring about the possibility of a mediation constituted "the pendency of [a] lawsuit in the court with original jurisdiction" during which time Respondents obligations under Labor Code section 1198.5 ceases, and (ii) only an employee personally, not an employee's authorized legal representative, is entitled to request copies of records under Labor Code sections 226 and 432.

56.     Respondents failed to produce any records under Labor Code sections 226, 432, and 1198.5 within the statutory time periods. On July 18, 2018, more than six weeks after Employee's written request, Respondents finally consented to producing such records to Claimant's counsel. Respondents ultimately produced an incomplete set of Claimant's records on September 4, 2018, 13 weeks after his initial written request. Respondents failed to provide copies of any offer letter, all records related to Claimant's performance and obtaining/holding employment, the employee handbook that governed Claimant's employment, and signed copies or acknowledgements of such records.

57.     Claimant is entitled to recover a $750 statutory penalty, costs, and reasonable attorneys' fees for violation of Section 226 and another $750 statutory penalty, costs, and reasonable attorneys' fees for violation of Section 1198.5. Claimant is also entitled to injunctive relief to require Respondents' future compliance with Sections 226 and 1198.5.

### Ninth Cause of Action

### Violation of California's Unfair Competition Law ("UCL")

58.     Claimant incorporates all prior paragraphs.

59.     California Business and Professions Code section 17200 ("UCL") defines unfair

competition as an "unlawful" or "unfair" business act or practice.

60.    Respondents are each a "person" under UCL section 17021.

61.    Respondents have engaged and continue to engage in business practices that are both unlawful and unfair and therefore violate the UCL.

62.    Respondents' failures described above—including their failures to pay all minimum and overtime wages, provide compliant meal periods and rest breaks or pay premium wages in lieu thereof, and provide complete and accurate wage statements, and their taking of unlawful deductions and failure to provide timely copies of employment records—all constitute unlawful acts and practices prohibited by the Labor Code and UCL. These failures also independently constitute unfair acts and practices under the UCL.

63.    As a result of their unlawful and unfair acts and practices, Respondents have reaped and continue to reap unfair benefits and illegal profits at the expense of Claimant and other nonexempt employees.

64.    Respondents should be made to disgorge their ill-gotten gains and restore to Claimants and class members as restitution the wrongfully withheld wages to which they are entitled, as well as interest on such wages.

65.    Claimant and other nonexempt employees also seek and are entitled to individual, representative, and public injunctive and declaratory relief that compels Respondents to stop their unlawful and unfair practices and fix their broken timekeeping, recordkeeping, and wage payment systems and practices and their employee classifications.

66.    This action is designed to ensure the enforcement of important rights affecting the public interest generally and the interests of a large number of employees. The necessity and financial burden of private enforcement is great, and the risks to the named Claimant for stepping forward are also significant. Claimant is thus entitled to recover her reasonable attorneys' fees

DEMAND FOR ARBITRATION

upon prevailing, and, in the interest of justice, such fees should not be paid out of the recovery. *See* Cal. Code Civ. Proc. § 1021.5.

## Tenth Cause of Action

### PAGA Civil Penalties

67.    Claimant incorporates all prior paragraphs.

68.    Claimant is an aggrieved employee under PAGA. On September 14, 2018, Claimant timely filed a written PAGA notice with the LWDA and sent a copy of such notice by certified mail return receipt requested to Respondents. Claimant is authorized to bring a civil action against Respondents under PAGA and recover civil penalties in addition to other forms of available relief. As a representative of the state, but only to the extent the Arbitration Agreement is not "null and void" by its own terms, Claimant consents on the State's behalf to arbitrate representative PAGA claims seeking civil penalties on behalf of all aggrieved employees.

69.    Claimant identifies and seeks to recover civil penalties for the following Labor Code violations and any others discovered during the pendency of this arbitration:

a.    Failure to calculate and pay minimum and overtime wages in violation of Labor Code sections 510, 1182.12, and 1197;

b.    Failure to provide timely, complete, and uninterrupted meal periods and rest breaks or pay premium wages in lieu thereof in violation of Labor Code sections 226.7 and 512;

c.    Unlawful deductions in violation of Labor Code sections 221, 223, 224, and 2751;

d.    Failure to pay all wages earned upon termination or quitting and failure to pay waiting time penalty wages in violation of Labor Code sections 201, 202, and 203;

e.    Failure to pay all wages earned at least twice during each calendar month in violation of Labor Code section 204;

DEMAND FOR ARBITRATION

f.    Failure to maintain accurate and complete records and issue accurate wage statements in violation of Labor Code sections 226 and 1174(d); and

g.    Failure to timely provide a copy of personnel records upon request in violation of Labor Code sections 226, 432, and 1198.5.

70.    Claimant seeks to recover civil penalties on behalf of the state and all aggrieved employees who performed work for Respondents during the relevant time period under the sections of the Labor Code identified above, under Labor Code sections 201, 202, 203, 204, 210, 223, 225.5, 226, 226.3, 226.7, 256, 510, 512, 558, 558.1, 1174, 1174.5, 1182.12, 1194, 1194.2, 1197, 1197.1, 1197.5, 1198.5, 1206, and 2699, and under any additional Labor Code sections that Respondents violated as determined during the pendency of this arbitration.

71.    Claimant further seeks to recover his reasonable costs and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Claimant prays for the following relief:

A.    A threshold ruling that the arbitrator decides all enforceability, scope, and arbitrability issues;

B.    A threshold ruling that the Arbitration Agreement is "null and void" by its own terms and that all disputes among the Parties must be litigated in court;

C.    A threshold ruling that no jurisdiction exists beyond a ruling that the Arbitration Agreement is "null and void" by its own terms;

D.    Alternatively, a ruling that Claimant can pursue his representative PAGA claim in arbitration;

E.    Alternatively, a ruling, after proper discovery and a hearing, in favor of Claimant on each of his causes of action and

a.    an award of all unpaid or underpaid wages, with interest,

b.      an award of actual and liquidated damages;

c.      an award of statutory penalties;

d.      an award of civil penalties on behalf of the State for all aggrieved employees;

e.      restitution and disgorgement;

f.      pre-judgment and post-judgment interest as allowed by law;

F.      Individual, representative, and public equitable, injunctive, and declaratory relief to remedy Respondents' violations of California law, including but not limited to an order enjoining Respondents from continuing their unlawful and unfair timekeeping, recordkeeping, wage payment, employee classification, and related practices;

G.      Reasonable attorneys' fees and costs under the Labor Code and/or under Cal. Code Civ. Proc. § 1021.5;

H.      Such additional and further relief as the arbitrator may deem just and proper; and

I.      A written and reasoned award following an in-person hearing on the issues and claims raised in this arbitration.


Dated: November 19, 2018        SODERSTROM LAW PC

                         By: */s/ Jamin S. Soderstrom*
                         *Counsel for Claimant and the Proposed Class*

                                            DEMAND FOR ARBITRATION

# EXHIBIT 1



## MUTUAL AGREEMENT TO ARBITRATE

By accepting employment with Charter, you and Charter (as defined below) agree that any and all claims, disputes, and/or controversies between you and Charter arising from or related to your employment with Charter shall be submitted exclusively to and determined exclusively by binding arbitration before a single Judicial Arbitration and Mediations Services, Inc. ("JAMS") arbitrator under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"). Examples of such claims include, but are not limited to, claims (1) under the Fair Labor Standards Act ("FLSA"), (2) under state labor laws, (3) under any state law governing Charter's obligation to provide meal, rest, or other breaks, (4) alleging that you were paid improperly or paid insufficient wages, overtime, compensation, or that Charter failed to comply with any law relating to the payment of wages, (5) under any other state law related to your employment with Charter, (6) by Charter against you for breach of duty of loyalty, (7) by Charter against you for breach of fiduciary duty, (8) by Charter or you for breach of contract, (9) by Charter against you for theft of trade secrets/conversion, or (10) by Charter or you for breach of duty of good faith and fair dealing. You and Charter further agree that all arbitration proceedings shall be conducted in accordance with the JAMS Employment Arbitration Rules & Procedures and JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness. JAMS' arbitration rules and the location of JAMS' resolution centers may be found online at the web address provided above in the form of a hyperlink. As set forth in the applicable JAMS rules, Charter will bear all costs unique to arbitration, except for the Case Initiation Fee, which will be split between you and Charter in accordance with JAMS' fee schedule.  **Please read the JAMS rules carefully before electronically signing this agreement.**

For purposes of this Agreement, "Charter" means Charter Communications, Inc. together with its parents, subsidiaries, affiliates, successors and assigns.

You and Charter agree that the arbitrator's decision shall be final and binding on the parties (except as otherwise provided for under the FAA). The arbitration shall be conducted at the JAMS resolution center that is closest to your residence. You have the right to retain and be represented by counsel in any such arbitration.

**REPRESENTATIVE, COLLECTIVE, AND CLASS ACTION WAIVER: You and Charter understand, acknowledge and agree that the terms of this Agreement include a waiver of any rights that you or Charter may have to bring or participate in an action against each other on a representative, class, or collective basis and understand and agree that the arbitrator shall not be permitted to order consolidation of claims or a representative, class, or collective, arbitration. This waiver does not take away or restrict your or Charter's right to pursue your or its own claims, but only requires that any such claims be pursued in your or Charter's own individual capacity, rather than on a representative,**

CHA000006

**Charter**
COMMUNICATIONS

**class, or collective basis.**

In the event a dispute between you and Charter is not arbitrable under this Agreement for any reason and is pursued in court, you and Charter agree to waive any right to a jury trial that might otherwise exist.

You and Charter agree that if the Agreement or any clause or term of the Agreement is found to be void, unenforceable, or unconscionable, the remainder of the Agreement shall be enforced without the invalid, unenforceable, or unconscionable clause or term, or the application of the clause or term shall be limited as to avoid any invalid, unenforceable, or unconscionable result. The only exception to this severability provision is, should the dispute involve a representative, collective or class action claim, and the REPRESENTATIVE, COLLECTIVE, AND CLASS ACTION WAIVER is found to be invalid or unenforceable for any reason, then this entire Agreement (except for the parties' agreement to waive a jury trial) shall be null and void and the dispute will not be arbitrable.

This Arbitration Agreement supersedes any other agreement to arbitrate previously in place between you and Charter.

Nothing herein shall prevent you from filing and pursuing the following: an administrative proceeding before the U.S. Equal Employment Opportunity Commission or an equivalent state or local agency (although if you choose to pursue a claim following the exhaustion of such administrative proceeding, that claim would be subject to arbitration); a proceeding before the National Labor Relations Board; a claim for medical and disability benefits under workers' compensation; or a claim for unemployment benefits.

# EXHIBIT 2

# SODERSTROM LAW

3 Park Plaza, Suite 100
Irvine, California 92614
soderstromlawfirm.com

949.667.4700 (phone)
949.424.8091 (facsimile)
jamin@soderstromlawfirm.com

September 14, 2018

**BY ONLINE FILING**

Labor & Workforce Development Agency
Attn: PAGA Administrator
1515 Clay Street, Suite 801
Oakland, California 94612
PAGA@dir.ca.gov

**BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

| | |
|---|---|
| Charter Communications, LLC<br>Attn: Legal Department<br>7800 Crescent Executive Dr.<br>Charlotte, North Carolina 28217<br><br>Charter Communications, Inc.<br>Attn: Legal Department<br>400 Atlantic Street<br>Stamford, Connecticut 06901 | Copy via email to Charter's counsel:<br><br>Morgan, Lewis & Bockius LLP<br>Zachary W. Shine<br>One Market, Spear Street Tower<br>San Francisco, California 94105<br>zachary.shine@morganlewis.com |

      Re:    *Notice of Violations of the California Labor Code*

To Whom It May Concern:

      Soderstrom Law PC represents Lionel Harper ("Employee"), a former employee of Charter Communications, LLC, Charter Communications, Inc., and possibly one or more of their affiliates (collectively, "Defendant"). In accordance with California Labor Code section 2699.3, and on behalf of Employee and all aggrieved employees, this letter gives written notice to the Labor & Workforce Development Agency and to Defendant of serious and ongoing violations of the California Labor Code.

      Employee is an "aggrieved employee" as the term is used in California's Private Attorneys General Act, Labor Code § 2698 *et seq.* ("PAGA"). The violations described below occurred during or in connection with his and other workers' employment with Defendant, and he has

September 14, 2018
PAGA Administrator
Charter Communications, LLC
Charter Communications, Inc.
Page 2 of 7

personal knowledge of such violations. On information and belief, the violations are ongoing. Accordingly, unless we are notified of an investigation by the Administrator within the period established by Section 2699.3, Soderstrom Law PC intends to commence and/or supplement existing claims in connection with a civil action brought against Defendant for the violations described herein and to seek all civil penalties available on behalf of the State.

## I.    LIABLE EMPLOYER

Defendant markets and sells various services, including television, Internet, and phone services, to consumers in California and nationwide. As Employee's employer, Defendant is liable for any and all violations of the Labor Code committed against Employee and all other aggrieved employees who performed work in California during the relevant time period and for the civil penalties provided for by the Labor Code.

## II.    AGGRIEVED EMPLOYEES

Employee is a resident of Redding, California. From September 2017 to March 2018, Employee worked for Defendant in California. Employee worked with many other employees during his employment, and his experience gave him a thorough understanding of Defendant's employment policies and practices. As detailed below, Employee personally suffered from Defendant's Labor Code violations and witnessed and learned of the same and other violations committed against other of Defendant's employees in California.

## III.    KNOWN LABOR CODE VIOLATIONS

Defendant committed the following Labor Code violations against Employee and/or other employees who performed work for Defendant in California. Upon information and belief, Defendant continues to commit the same or substantially similar violations to this day.

### A.    Failure to Accurately Calculate and Pay Minimum Wages and Overtime Wages in Violation of Labor Code Sections 510, 1182.12, and 1197 and the Governing Industrial Wage Order

Under Labor Sections 1182.12 and 1197 as well as paragraph 4 of the governing Industrial Wage Order, an employer must pay an employee at least the minimum applicable wage, as set by the statutes and Department of Industrial Relations, for all hours that the employee has been suffered or permitted to work. Additionally, under Labor Code section 510 and paragraph 3 of the governing Industrial Wage Order, an employer must compensate an employee at the rate of no less than one and one-half times the employee's regular rate of pay for any work in excess of eight hours in one day, any work in excess of 40 hours in one work week, and the first eight hours worked on the seventh day of work in any one work week. Any work in excess of 12 hours in one day and any work in excess of eight hours on any seventh day of a workweek must be compensated at a rate no less than twice the employee's regular rate of pay.

September 14, 2018
PAGA Administrator
Charter Communications, LLC
Charter Communications, Inc.
Page 3 of 7

As a matter of policy and practice, Defendant failed to pay Employee and other employees the required minimum and overtime wages for all hours worked. Specifically, but without limitation, Defendant regularly required employees during training to work a full day and then complete homework after the work day ended. The training and homework combined required employees to work more than 8 hours in a day, but Defendant did not keep track of or pay employees all wages owed for the time worked over 8 hours in a day or 40 hours in a week during training. Defendant further failed to properly keep track of all hours worked outside of training weeks and failed to pay employees all wages owed for the time worked over 8 hours in a day or 40 hours in a week.

As a result of these policies and practices, Defendant does not pay its training employees and post-training employees all of the minimum and overtime wages they are due, does not maintain complete records of all time worked, and does not provide accurate wage statements.

Defendant's violations of Labor Code Sections 510, 1182.12, and 1197 and paragraphs 3 and 4 of the governing Wage Order have aggrieved Employee and other similarly situated employees in California.

**B.    Failure to Provide Uninterrupted Meal Periods and Rest Breaks and Failure to Pay Premium Wages in Violation of Labor Code Sections 226.7, 512(a), and the Governing Industrial Wage Order**

Under Labor Code section 512(a) and paragraph 11 of the governing Industrial Wage Order, an employer may not require its employees to work more than five hours per day without providing an off-duty, uninterrupted meal period of not less than 30 minutes, and it may not require its employees to work more than 10 hours a day without providing a second 30-minute meal period. A meal period must begin no later than the end of the fifth hour of work. And under Labor Code section 226.7 and paragraph 11 of the governing Wage Order, if the employer does not provide these required meal breaks, the employer must pay the employee an additional hour of pay for each workday that the meal period is not provided.

Additionally, under paragraph 12 of the governing Industrial Wage Order, an employer must permit its employees to take 10 minutes of rest for every four hours worked or major fraction thereof, taken in the middle of the work period unless impracticable. And under Labor Code section 226.7 and paragraph 12 of the governing Wage Order, if the employer does not provide the required rest breaks, the employer must pay the employee an additional hour of pay for each workday that a rest period is not provided.

Defendant fails to provide timely, off-duty, uninterrupted 30-minute meal periods to nonexempt employees like Employee and fails to compensate them one additional hour of pay for each meal period that is missed, shortened, interrupted, on-duty, or untimely. Defendant does not require or allow Employee and other nonexempt employees to clock-out and clock-in for each meal period and accurately record the existence and length of each meal period taken, and

September 14, 2018
PAGA Administrator
Charter Communications, LLC
Charter Communications, Inc.
Page 4 of 7

knowingly suffers, permits, or requires work to be performed during what should be a meal period. Defendant fails to provide compliant meal periods and rest breaks both during training weeks and after training weeks.

Defendants' violations of Labor Code Sections 512 and 226.7, and paragraphs 11 and 12 of the governing Wage Order have aggrieved Employee and other similarly situated employees.

### C.    Unlawful Commission Deductions in Violation of Labor Code Sections 221, 223, 224, and 2751

California Labor Code sections 221, 223, and 224 protect employees against unlawful deductions of their earned wages. Under Section 221, "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." Relatedly, under Section 223, "Where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract." Section 224 authorizes certain deductions that an employee "expressly authorize[s] in writing," but forbids deductions that amount to a "rebate or deduction from the standard wage . . . pursuant to wage agreement or statute." Additionally, under California Labor Code section 2751, when an employer enters into a contract of employment and the contemplated payment method includes commissions, the contract must "set forth the method by which the commissions shall be computed and paid."

Defendant recruits and incentivize sales employees like Employee by emphasizing their ability to earn commissions. However, Defendant imposes unlawful and unfair incentive compensation terms and then fails to pay all amounts owed under such terms. The terms result in Defendant unlawfully and unfairly keeping, failing to pay, and/or deducting Employee's and other employees' commission wages.

Defendant also fails to perform all of its obligations under the terms and unfairly construes the terms and modifies the terms in its favor.

Defendant has not paid Employee and similarly situated employees all of the commission wages they are owed, and has unlawfully and unfairly deducted, reconciled, or clawed back commission wages that were properly earned.

Defendant violated Sections 221, 223, and 224 each time it failed to correctly and fairly calculate and pay earned commission and each time it has deducted, clawed back, or otherwise reconciled Employee's and other employees' incentive compensation. Defendant further relied on methods for the computation and payment of commissions that are not set forth in the applicable terms in violation of Section 2751. Defendant's violations of Labor Code Sections 221, 223, 224, and 2751 have aggrieved Employee and similarly situated employees.

///

September 14, 2018
PAGA Administrator
Charter Communications, LLC
Charter Communications, Inc.
Page 5 of 7

> **D.    Willful Failure to Pay All Wages Earned Upon An Employee's Termination or Quitting and Failure to Pay Penalty Wages in Violation of Labor Code Sections 201, 202, and 203**

Under Labor Code sections 201 and 202, an employer must pay an employee all unpaid wages immediately upon that employee's termination or within 72 hours if the employee has quit without providing advanced notice. And under Labor Code section 203, if an employer willfully fails to comply with Sections 201 or 202, the employee is entitled to continued wages up to 30 days from the date the unpaid wages were originally due to when they were actually paid.

Defendant fails to timely and accurately pay Employee and other employees who are terminated or quit all due but unpaid wages, and Defendant does not pay any wages as waiting time penalties. As discussed above, Defendant does not accurately record all hours worked and all meal period and rest breaks taken late, missed, shortened, or interrupted, and Defendant does not pay premium wages when a compliant meal period or rest break is not provided. Nor does Defendant pay all incentive compensation that is earned and payable. Consequently, when Defendant paid Employee and other former employees' final paychecks, they were all miscalculated and too small.

Defendant's violations of Labor Code section 201 and 202 have aggrieved Employee and other former employees who were terminated or quit. Defendant's failure to pay penalty wages under Labor Code section 203 has further aggrieved Employee and other former employees.

> **E.    Failure to Pay All Wages Earned at Least Twice During Each Calendar Month in Violation of Labor Code Section 204**

Under Labor Code section 204, an employer must pay all wages earned by any employee, other than those mentioned in Sections 201, 201.3, 202, 204.1, or 204.2, twice during each calendar month, on days designated in advance by the employer as the regular paydays.

Defendant's failures described above—including the failure to pay all minimum and overtime wages due, the failure to pay premium wages in lieu of compliant meal periods and rest breaks, and the failure to properly calculate and pay all commission wages—caused it also to fail to pay all wages earned by Employee and similarly situated employees at least twice monthly.

Defendant's violations of Labor Code section 204 have aggrieved Employee and other similarly situated employees because they were not timely or accurately paid all wages earned at least twice each month.

///

///

///

September 14, 2018
PAGA Administrator
Charter Communications, LLC
Charter Communications, Inc.
Page 6 of 7

**F.    Failure to Maintain Accurate Records and Wage Statements in Violation of Labor Code Sections 226 and 1174(d) and the Governing Industrial Wage Order**

Under Labor Code section 1174(d), an employer must maintain at least three years of accurate payroll records reflecting each employee's hours worked daily and the wages paid to them. And under paragraph 7 of the governing Industrial Wage Order, these records must also show the employee's rate of pay, when each work period began and ended, and when meal periods and split shift intervals occurred.

Labor Code section 226 and paragraph 7 of the governing Wage Order further require an employer to provide its employees with accurate, semi-monthly itemized wage statements that reflect the employee's gross and net wages earned, total hours worked, all deductions, the inclusive dates of the pay period, and all applicable hourly rates.

As explained above, Defendant failed to keep accurate records reflecting Employee's and other employees' hours worked and when meal periods occurred. Defendant also failed to provide accurate wages statements that reflected the total hours worked, all deductions, and all gross and net wages earned, including commission wages. Employee's wage statements never reflected any premium wage being paid for late, shortened, missed, or on-duty meal periods or rest breaks. Employee's final several wage statements also failed to accurately record the time worked, wages due, and inclusive dates of the applicable pay periods.

Defendant's willful violations of Labor Code sections 226 and 1174(d) and the governing Wage Order have aggrieved Employee and other similarly situated employees.

**G.    Failure to Timely Provide a Copy of Personnel Records Upon Request in Violation of Labor Code Sections 226, 432, and 1198.5**

Under Labor Code section 226(c), an employer must provide employees, within 21 calendar days from the date of a request, copies of the records required to be kept under section 226(a) (i.e., wage statements).

Under Labor Code section 432, an employer must provide employees a copy of any instrument that the employee signed related to his or her obtaining or holding of employment.

Under Labor Code section 1198.5, an employer must provide employees, within 30 days from the date of a request, copies of their personnel records.

In a letter dated June 5, 2018, Employee, through his counsel via a written and signed authorization, requested that Defendant provide copies of his personnel file, including all wage statements, instruments he signed or acknowledged concerning his employment, and other records

September 14, 2018
PAGA Administrator
Charter Communications, LLC
Charter Communications, Inc.
Page 7 of 7

concerning his obtaining and holding of employment, pursuant to Labor Code sections 226, 432, and 1198.5.

On July 3, 2018, counsel for Defendant responded to Employee's request in writing refusing to produce any records and took the position that (i) an email sent by Employee to a JAMS representative inquiring about the possibility of a mediation constituted "the pendency of [a] lawsuit in the court with original jurisdiction" during which time its obligations under Labor Code section 1198.5 ceases, and (ii) only an employee personally, not an employee's authorized legal representative, is entitled to request copies of records under Labor Code sections 226 and 432.

Defendant failed to produce any records under Labor Code sections 226, 432, and 1198.5 within the statutory time periods. On July 18, 2018, more than six weeks after Employee's written request, Defendant finally consented to producing such records to Employee's counsel. Defendant ultimately produced an incomplete set of Employee's records on September 4, 2018, 13 weeks after Employee's initial written request. Defendant failed to provide copies of any offer letter, all records related to Employee's performance and obtaining/holding employment, the employee handbook that governed Employee's employment, any signed copies or acknowledgements of such records.

Defendant's violation of Labor Code sections 226, 432, and 1198.5 has aggrieved Employee.

## IV.    CIVIL PENALTIES FOR LABOR CODE VIOLATIONS

Due to the above-described violations and similar violations that may be identified after further investigation or during discovery, Defendant is liable as an employer for specific or default civil penalties as provided by Labor Code section 2699 as well as Labor Code sections 201, 202, 203, 204, 210, 223, 225.5, 226, 226.3, 226.7, 256, 510, 512, 558, 558.1, 1174, 1174.5, 1182.12, 1194, 1194.2, 1197, 1197.1, 1197.5, 1198.5, and 1206.

Please contact me at 949.667.4700 or jamin@soderstromlawfirm.com if you would like to discuss this matter.

Very truly yours,

SODERSTROM LAW PC

Jamin S. Soderstrom

# Demand for Arbitration Form

Instructions for Submittal of Arbitration to JAMS

## INSTRUCTIONS

Please submit this form to your local JAMS Resolution Center. Once the below items are received, a JAMS professional will contact all parties to commence and coordinate the arbitration process, including the appointment of an arbitrator and scheduling a hearing date.

📞 **1-800-352-JAMS**
🖥 **www.jamsadr.com**

---

If you wish to proceed with an arbitration by executing and serving a Demand for Arbitration on the appropriate party, please submit the following items to JAMS with the requested number of copies:

**A. Demand for Arbitration** *(2 copies)*

**B. Proof of service of the Demand on the appropriate party** *(2 copies)*

**C. Entire contract containing the arbitration clause** *(2 copies)*
- *To the extent there are any court orders or stipulations relevant to this arbitration demand, e.g. an order compelling arbitration, please also include two copies.*

**D. Administrative Fees**
- *For two-party matters, the Filing Fee is $1,500. For matters involving three or more parties, the filing fee is $2,000. The entire Filing Fee must be paid in full to expedite the commencement of the proceedings. Thereafter, a Case Management Fee of 12% will be assessed against all Professional Fees, including time spent for hearings, pre- and post-hearing reading and research and award preparation. JAMS also charges a $1,500 filing fee for counterclaims. For matters involving consumers, the consumer is only required to pay $250. See JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses. For matters based on a clause or agreement that is required as a condition of employment, the employee is only required to pay $400. See JAMS Policy on Employment Arbitrations, Minimum Standards of Fairness.*

- *A refund of $600 will be issued if the matter is withdrawn within five days of filing. After five days, the filing fee is non-refundable.*

**Once completed, please submit to your local JAMS Resolution Center.**
*Resolution Center locations can be found on the JAMS website at: http://www.jamsadr.com/locations/.*

# Demand for Arbitration Form (continued)

Instructions for Submittal of Arbitration to JAMS

## TO RESPONDENT (PARTY ON WHOM DEMAND FOR ARBITRATION IS MADE)

Add more respondents on **page 6**.

| | |
|---|---|
| RESPONDENT NAME | Charter Communications, Inc. |
| ADDRESS | 400 Atlantic Street |

| CITY | STATE | ZIP |
|---|---|---|
| Stamford | CT | 06901 |

| PHONE | FAX | EMAIL |
|---|---|---|
| | | |

### RESPONDENT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

| | |
|---|---|
| REPRESENTATIVE/ATTORNEY | Zachary W. Shine |
| FIRM/COMPANY | Morgan, Lewis & Bockius, LLP |
| ADDRESS | One Market, Spear Street Tower |

| CITY | STATE | ZIP |
|---|---|---|
| San Francisco | CA | 94105 |

| PHONE | FAX | EMAIL |
|---|---|---|
| 415-442-1163 | | zachary.shine@morganlewis.com |

## FROM CLAIMANT

Add more claimants on **page 7**.

| | |
|---|---|
| CLAIMANT NAME | Lionel Harper |
| ADDRESS | |

| CITY | STATE | ZIP |
|---|---|---|
| | | |

| PHONE | FAX | EMAIL |
|---|---|---|
| | | |

### CLAIMANT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

| | |
|---|---|
| REPRESENTATIVE/ATTORNEY | Jamin S. Soderstrom |
| FIRM/COMPANY | Soderstrom Law, PC |
| ADDRESS | 3 Park Plaza, Suite 100 |

| CITY | STATE | ZIP |
|---|---|---|
| Irvine | CA | 92620 |

| PHONE | FAX | EMAIL |
|---|---|---|
| 949-667-4700 | 949.424.8091 | jamin@soderstromlawfirm.com |

# Demand for Arbitration Form (continued)

Instructions for Submittal of Arbitration to JAMS

## MEDIATION IN ADVANCE OF THE ARBITRATION

☐  If mediation in advance of the arbitration is desired, please check here and a JAMS Case Manager will assist the parties in coordinating a mediation session.

## NATURE OF DISPUTE / CLAIMS & RELIEF SOUGHT BY CLAIMANT

CLAIMANT HEREBY DEMANDS THAT YOU SUBMIT THE FOLLOWING DISPUTE TO FINAL AND BINDING ARBITRATION.
A MORE DETAILED STATEMENT OF CLAIMS MAY BE ATTACHED IF NEEDED.

Please see attached detail demand for arbitration.

AMOUNT IN CONTROVERSY (US DOLLARS) _____

# Demand for Arbitration Form (continued)

Instructions for Submittal of Arbitration to JAMS

## ARBITRATION AGREEMENT

This demand is made pursuant to the arbitration agreement which the parties made as follows. *Please cite location of arbitration provision and attach* <u>*two copies*</u> *of entire agreement.*

**ARBITRATION PROVISION LOCATION**

Please see attached Exhibit 1 to demand.

## RESPONSE

The respondent may file a response and counter-claim to the above-stated claim according to the applicable arbitration rules. *Send the original response and counter-claim to the claimant at the address stated above with* <u>*two copies*</u> *to JAMS.*

## REQUEST FOR HEARING

**REQUESTED LOCATION**    San Francisco

## ELECTION FOR EXPEDITED PROCEDURES (IF COMPREHENSIVE RULES APPLY)

*See:* **Comprehensive Rule 16.1**

☐    By checking the box to the left, Claimant requests that the Expedited Procedures described in JAMS Comprehensive Rules 16.1 and 16.2 be applied in this matter. Respondent shall indicate not later than seven (7) days from the date this Demand is served whether it agrees to the Expedited Procedures.

## SUBMISSION INFORMATION

**SIGNATURE** *Jamin S. Soderstrom*    **DATE**    November 19, 2018

**NAME (PRINT/TYPED)**    Jamin S. Soderstrom

# Demand for Arbitration Form (continued)

## Instructions for Submittal of Arbitration to JAMS

Completion of this section is <u>required for all consumer or employment claims</u>.

## CONSUMER AND EMPLOYMENT ARBITRATION

Please indicate if this is a CONSUMER ARBITRATION.  For purposes of this designation, and whether this case will be administered in California or elsewhere, JAMS is guided by *California Rules of Court Ethics Standards for Neutral Arbitrators, Standard 2(d) and (e)*, as defined below, and the JAMS Consumer and Employment Minimum Standards of Procedural Fairness:

☑ <u>YES</u>, this **is** a CONSUMER ARBITRATION.

☐ <u>NO</u>, this **is not** a CONSUMER ARBITRATION.

"Consumer arbitration" means an arbitration conducted under a pre-dispute arbitration provision contained in a contract that meets the criteria listed in paragraphs (1) through (3) below. "Consumer arbitration" excludes arbitration proceedings conducted under or arising out of public or private sector labor-relations laws, regulations, charter provisions, ordinances, statutes, or agreements.

1. The contract is with a consumer party, as defined in these standards;
2. The contract was drafted by or on behalf of the non-consumer party; and
3. The consumer party was required to accept the arbitration provision in the contract.

"Consumer party" is a party to an arbitration agreement who, in the context of that arbitration agreement, is any of the following:

1. An individual who seeks or acquires, including by lease, any goods or services primarily for personal, family, or household purposes including, but not limited to, financial services, insurance, and other goods and services as defined in section 1761 of the Civil Code;
2. An individual who is an enrollee, a subscriber, or insured in a health-care service plan within the meaning of section 1345 of the Health and Safety Code or health-care insurance plan within the meaning of section 106 of the Insurance Code;
3. An individual with a medical malpractice claim that is subject to the arbitration agreement; or
4. An employee or an applicant for employment in a dispute arising out of or relating to the employee's employment or the applicant's prospective employment that is subject to the arbitration agreement.

In addition, JAMS is guided by its Consumer Minimum Standards and Employment Minimum Standards when determining whether a matter is a consumer matter.

If Respondent disagrees with the assertion of Claimant regarding whether this IS or IS NOT a CONSUMER ARBITRATION, Respondent should communicate this objection in writing to the JAMS Case Manager and Claimant within seven (7) calendar days of service of the Demand for Arbitration.

## EMPLOYMENT MATTERS

If this is an EMPLOYMENT matter, Claimant must complete the following information:

Private arbitration companies are required to collect and publish certain information at least quarterly, and make it available to the public in a computer-searchable format. In employment cases, this includes the amount of the employee's annual wage. The employee's name will not appear in the database, but the employer's name will be published. Please check the applicable box below:

☐ Less than $100,000    ☐ $100,000 to $250,000    ☐ More than $250,000    ☑ Decline to State

## WAIVER OF ARBITRATION FEES

In certain states (e.g. California), the law provides that consumers (as defined above) with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of the arbitration fees. In those cases, the respondent must pay 100% of the fees. Consumers must submit a declaration under oath stating the consumer's monthly income and the number of persons living in his or her household. Please contact JAMS at 1-800-352-5267 for further information. Note: this requirement is not applicable in all states.

# Demand for Arbitration Form (continued)

Instructions for Submittal of Arbitration to JAMS

## RESPONDENT #2 (PARTY ON WHOM DEMAND FOR ARBITRATION IS MADE)

| RESPONDENT NAME | Charter Communications, LLC | | |
|---|---|---|---|
| ADDRESS | 7800 Crescent Executive Dr | | |
| CITY | Charlotte | STATE NC | ZIP 28217 |
| PHONE | FAX | EMAIL | |

RESPONDENT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

| REPRESENTATIVE/ATTORNEY | |
|---|---|
| FIRM/COMPANY | |
| ADDRESS | |

| CITY | STATE | ZIP |
|---|---|---|

| PHONE | FAX | EMAIL |
|---|---|---|

## RESPONDENT #3 (PARTY ON WHOM DEMAND FOR ARBITRATION IS MADE)

| RESPONDENT NAME | |
|---|---|
| ADDRESS | |

| CITY | STATE | ZIP |
|---|---|---|

| PHONE | FAX | EMAIL |
|---|---|---|

RESPONDENT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

| REPRESENTATIVE/ATTORNEY | |
|---|---|
| FIRM/COMPANY | |
| ADDRESS | |

| CITY | STATE | ZIP |
|---|---|---|

| PHONE | FAX | EMAIL |
|---|---|---|



# Demand for Arbitration Form (continued)

Instructions for Submittal of Arbitration to JAMS

## CLAIMANT #2

| CLAIMANT NAME | |
|---|---|

| ADDRESS | |
|---|---|

| CITY | STATE | ZIP |
|---|---|---|

| PHONE | FAX | EMAIL |
|---|---|---|

CLAIMANT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

| REPRESENTATIVE/ATTORNEY | |
|---|---|

| FIRM/COMPANY | |
|---|---|

| ADDRESS | |
|---|---|

| CITY | STATE | ZIP |
|---|---|---|

| PHONE | FAX | EMAIL |
|---|---|---|

## CLAIMANT #3

| CLAIMANT NAME | |
|---|---|

| ADDRESS | |
|---|---|

| CITY | STATE | ZIP |
|---|---|---|

| PHONE | FAX | EMAIL |
|---|---|---|

CLAIMANT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

| REPRESENTATIVE/ATTORNEY | |
|---|---|

| FIRM/COMPANY | |
|---|---|

| ADDRESS | |
|---|---|

| CITY | STATE | ZIP |
|---|---|---|

| PHONE | FAX | EMAIL |
|---|---|---|

**IN THE MATTER OF JAMS ARBITRATION OF**

| | |
|---|---|
| **LIONEL HARPER,** | **Case No.** |
| | |
| **Claimant,** | |
| | **PROOF OF SERVICE** |
| **v.** | |
| | |
| **CHARTER COMMUNICATIONS, LLC,** | **Filed:**      **November 19, 2018** |
| **CHARTER COMMUNICATIONS, INC.,** | **Venue:**     **San Francisco, California** |
| **and DOES 1 to 25,** | |
| | |
| **Respondents.** | |

1                                                                                   PROOF OF SERVICE

**PROOF OF SERVICE**

I, Diana Alderete, am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 3 Park Plaza, Suite 100, Irvine, CA 92614.

On November 15, 2018, I served the document(s) described below on the following person(s) in the manner indicated as:

1. **DEMAND FOR ARBITRATION**
2. **JAMS DEMAND FOR ARBITRATION FORM**

**Zachary W. Shine, Esq.**
**Morgan, Lewis & Bockius LLP**
**One Market, Spear Street Tower**
**San Francisco, CA 94105**
**Zachary.shine@morganlewis.com**
**Phone: 415-442-1163**
**Counsel for Respondents**

**[ ]    (**BY ELECTRONIC SERVICE) I am causing the document(s) to be served on the Filing User(s) through the Court's Electronic Filing System.

**[X  ]**   (BY ELECTRONIC TRANSMISSION) I served electronically from the electronic notification address of  diana@soderstromlawfirm.com  the document described above and a copy of this declaration to the person and at the electronic notification address set forth herein. The electronic transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on November 19, 2018, at Irvine, California.

_____
Diana Alderete

# EXHIBIT 9



# APPOINTMENT OF ARBITRATOR

NOTICE TO ALL PARTIES                                                    December 20, 2018

      Re:    Harper, Lionel vs. Charter Communications, Inc.
             Reference #:  1100104486

Dear Parties:

Hon. Rebecca Westerfield (Ret.) has been appointed Arbitrator in the above-referenced matter.  In accordance with the JAMS Employment Arbitration Rules no party may have *ex-parte* communications with the Arbitrator.  Any necessary communication with the Arbitrator must be initiated through the case manager.

The Arbitrator will bill in accordance with the enclosed Fee Schedule. The arbitration will be administered consistent with the enclosed JAMS Policy on Employment Arbitration, Minimum Standards of Procedural Fairness.  According to this Policy, the only fee a consumer employee may be required to pay is $400 of the Filing Fee.  All other costs, including the remainder of the Filing Fee, must be borne by the company. JAMS will also administer the case consistent with JAMS Cancelation/Continuance policy.  Any party who cancels or continues a hearing after the deadline will be responsible for 100% of the professional fees unless we can fill the reserved but unused time with another matter.

JAMS agreement to render services is not only with the parties, but extends to the attorney or other representative of the parties in arbitration.  Under appropriate circumstances, the Arbitrator may award JAMS fees and expenses against any party.

The paying party has been billed a preliminary retainer to cover the expense of all pre-hearing work, such as reading, drafting of orders, and conference calls.  Enclosed is an invoice for this retainer.  Upon receipt of payment, a Preliminary Arbitration Management Conference Call will be scheduled with the Arbitrator.



Your new contact person for this file is Liz Magana, Case Manager to Hon. Rebecca Westerfield (Ret.).

Liz Magana
Two Embarcadero Center Suite 1500
San Francisco, CA 94111
Phone: 415-774-2649
Fax:
Email: EMagana@jamsadr.com

Contact me at 415-774-2626 or jdienner@jamsadr.com if you have questions.

Sincerely,


Jesse C. Dienner
Senior Case Manager
jdienner@jamsadr.com

Enclosure

# General Fee Schedule
*Hon. Rebecca Westerfield (Ret.)*

## PROFESSIONAL FEES

**Daily Rate** ..................................................**$9,500**
Includes up to 8 hours of hearing time on the scheduled day.

**Half Day Rate** ..........................................................**$5,000**
Includes up to 4 hours of hearing time on the scheduled day.

- Other professional time (additional hearing time, pre and post hearing reading and research, and conference call) will be billed at $950 per hour.

## ARBITRATION FEES
**Filing Fee**
$1,500 – Two Party Matter
$2,000 – Matters involving three or more parties
$1,500 – Counterclaims
- Entire filing fee must be paid in full to expedite the commencement of the proceedings
- A refund of $600 will be issued if the matter is withdrawn within five days of filing. After five days, the Filing Fee is non-refundable

**Case Management Fee**
- 12% of Professional Fees
- Professional Fees include time spent for hearings, pre- and post-hearing reading and research, and award preparation.
- The Case Management Fee includes access to an exclusive nationwide panel of judges, attorneys, and other ADR experts, dedicated services including all administration through the duration of the case, document handling, and use of JAMS conference facilities including after hours and on-site business support. Weekends and holidays are subject to additional charges.

## FEES FOR OTHER MATTERS
**(Discovery, Special Master, Reference, Appraisal and Neutral Analysis Matters)**
Initial non-refundable fee of $600 per party
Plus 12% of Professional Fees

## CANCELLATION/CONTINUANCE POLICY

| Number of Days | Cancellation/Continuance Period | Fee |
|---|---|---|
| 1 day or less | 30 days or more prior to hearing | 100% REFUNDABLE, except for time incurred |
| 2 days or more | 60 days or more prior to hearing | 100% REFUNDABLE, except for time incurred |
| Hearings of any length | Inside the cancellation/continuance period | NON-REFUNDABLE |

- Unused hearing time is non-refundable.
- Hearing fees are non-refundable if time scheduled (or a portion thereof) is cancelled or continued after the cancellation date unless the Arbitrator's time can be rescheduled with another matter. The cancellation policy exists because time reserved and later cancelled generally cannot be replaced. In all cases involving non-refundable time, the cancelling or continuing party is responsible for the fees of all parties.
- A retainer for anticipated preparation and follow-up time will be billed to the parties. Any unused portion will be refunded.
- All fees are due and payable upon receipt of invoice and payment must be received in advance of hearing. JAMS reserves the right to cancel your hearing if fees are not paid by all parties by the applicable cancellation date and JAMS confirms the cancellation in writing.
- Receipt of payment for all fees is required prior to service of an arbitration order or award.
- For arbitrations arising out of employer-promulgated plans, the only fee that an employee may be required to pay is $400. The employer must bear the remainder of the employee's share of the filing fee and all Case Management Fees. Any questions or disagreements about whether a matter arises out of an employer-promulgated plan or an individually negotiated agreement or contract will be determined by JAMS, whose determination shall be final.
- For arbitrations arising out of pre-dispute arbitration clauses between companies and individual consumers, JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses, Minimum Standards of Procedural Fairness applies. In those cases, when a consumer (as defined by those Minimum Standards) initiates arbitration against the company, the only fee required to be paid by the consumer is $250. The company must bear the remainder of the consumer's share of the Case Management Fees.
- Parties that, through mutual agreement, have held their case in abeyance for one year will be assessed an annual abeyance fee of $500, and $500 every six months thereafter. If a party refuses to pay the assessed fee, the other party or parties may opt to pay the entire fee on behalf of all parties, otherwise the matter will be closed.
- JAMS panelists may use a law clerk depending on the complexity of the case. The parties will be informed at the onset of the engagement if the neutral plans to employ a clerk. The clerk's hourly rate will be billed to the parties subject to the agreed fee split and in accordance with JAMS' policies.

JAMS agreement to render services is with the attorney, the party and/or other representatives of the party.



JAMS Policy on
Employment Arbitration
Minimum Standards of
Procedural Fairness

Effective July 15, 2009

# JAMS POLICY ON EMPLOYMENT ARBITRATION MINIMUM STANDARDS OF PROCEDURAL FAIRNESS

This document presents the principles and policies of JAMS on the use of arbitration for resolving employment-related disputes. These policies include the Minimum Standards of Procedural Fairness, which apply to arbitrations based on pre-dispute agreements that are required as a condition of employment. JAMS will administer mandatory arbitrations in employment cases only if the arbitration provision complies with JAMS Minimum Standards.

JAMS continues to urge employers and employees to use, at the earliest point possible, mediation and other ADR processes that encourage consensual resolution of disputes in a fair, affordable and efficient manner. We also recommend that employers consult with counsel when considering, drafting or implementing pre-dispute arbitration clauses that relate to statutory employment claims.

## A. Preference for Mediation and Voluntary Arbitration

JAMS encourages the use of mediation and of voluntary arbitration that is not a condition of initial or continued employment. JAMS does not take a position on the enforceability of condition-of-employment arbitration clauses, but it monitors developments in courts, legislatures and regulatory agencies concerning the enforceability of the clauses. If courts rule definitively that such clauses are unenforceable, or if laws or regulations proscribe their use, JAMS will comply with the rulings or laws in the applicable cases or jurisdictions. Absent such proscriptions, JAMS accepts arbitration assignments based on condition-of-employment clauses (provided the Minimum Standards are met) but does not encourage the use of such clauses.

## B. Minimum Standards of Procedural Fairness

If an arbitration is based on a clause or agreement that is required as a condition of employment, JAMS will accept the assignment only if the proceeding complies with the Minimum Standards of Procedural Fairness for Employment Arbitration.

## Standard No. 1:
## All Remedies Available

All remedies that would be available under the applicable law in a court proceeding, including attorneys fees and exemplary damages, as well as statutes of limitations, must remain available in the arbitration. Post-arbitration remedies, if any, must remain available to an employee.

*Comment:* This standard does not make any change in the remedies available. Its purpose is to ensure that the remedies available in arbitrations and court proceedings are the same. JAMS does not object if an employer chooses to limit its own post-arbitration remedies.

## Standard No. 2: Arbitrator Neutrality

The arbitrator(s) must be neutral, and an employee must have the right to participate in the selection of the arbitrator(s).

## Standard No. 3:
## Representation by Counsel

The agreement or clause must provide that an employee has the right to be represented by counsel. Nothing in the clause or procedures may discourage the use of counsel.

## Standard No. 4: Access to
## Information/Discovery

The procedures must provide for an exchange of core information prior to the arbitration.

*Comment:* Generally, this discovery should include at least (a) exchange of relevant documents, (b) identification of witnesses and (c) one deposition for each side, i.e., of the employee and of a supervisor or other decision-maker of the employer. Other discovery should be available at the arbitrator's discretion.

## Standard No. 5:
## Presentation of Evidence

At the arbitration hearing, both the employee and the employer must have the right to (a) present proof, through testimony and documentary evidence, and (b) cross-examine witnesses.

## Standard No. 6: Costs and Location Must Not Preclude Access to Arbitration

An employee's access to arbitration must not be precluded by the employee's inability to pay any costs or by the location of the arbitration. The only fee that an employee may be required to pay is the initial JAMS Case Management Fee. All other costs must be borne by the company, including any additional JAMS Case Management Fees and all professional fees for the arbitrator's services. In California, the arbitration provision may not require an employee who does not prevail to pay the fees and costs incurred by the opposing party.

*Comment*: JAMS does not preclude an employee from contributing to administrative and arbitrator fees and expenses.

## Standard No. 7: Mutuality

JAMS will not administer arbitrations pursuant to clauses that lack mutuality. Both the employer and the employee must have the same obligation (either to arbitrate or go to court) with respect to the same kinds of claims.

## Standard No. 8: Written Awards

An arbitration award will consist of a written statement signed by the Arbitrator regarding the disposition of each claim and the relief, if any, awarded as to each claim. The Arbitrator will also provide a concise written statement of the reasons for the Award, stating the essential findings and conclusions on which the award is based.

\* \* \*

If JAMS becomes aware that an arbitration clause or procedure does not comply with the Minimum Standards, it will notify the employer of the Minimum Standards and inform the employer that the arbitration demand will not be accepted unless there is full compliance with those standards. In assessing whether the standards are met and whether to accept the arbitration assignment, JAMS, as the ADR provider, will limit its inquiry to a facial review of the clause or procedure. If a factual inquiry is required, for example, to determine compliance with Minimum Standards, it must be conducted by an arbitrator or court.

## C. Questions about Enforcement and Arbitrability

If a party contests the enforceability of a pre-dispute arbitration agreement that was required as a condition of employment, and if compliance with the Minimum Standards is in question, JAMS will, if given notice of the dispute, defer administering the arbitration for a reasonable period of time to allow the contesting party to seek a judicial ruling on the issue. JAMS will comply with that judicial determination. If there is no judicial determination within a reasonable period of time, JAMS will resolve questions of arbitrability under the applicable JAMS Arbitration Rules and Procedures for Employment Disputes.

## D. Other

Parties to an employment arbitration may choose to follow the Arbitration Rules and Procedures for Employment Disputes that were developed by JAMS. These Rules andProcedures exceed the Minimum Standards by providing further procedural protections, including additional discovery and an optional appeal process, to all parties in an employment arbitration.

JAMS is committed to ensuring that all staff who work on employment-related dispute resolution issues are aware of these principles and policies. Internal controls are used to ensure knowledge and compliance by the staff, and to ensure that the company's marketing activities in the employment area do not give rise to any actual or perceived conflict of interest on the part of JAMS or its neutrals.

*Note: These Minimum Standards do not apply if the agreement to arbitrate was individually negotiated by the employee and employer, or if the employee was represented or advised by counsel during the negotiations.*



800.352.5267 | www.jamsadr.com

## <u>PROOF OF SERVICE BY E-Mail</u>

Re: Harper, Lionel vs. Charter Communications, Inc.
Reference No. 1100104486

I, Jesse Dienner, not a party to the within action, hereby declare that on  December 20, 2018, I

served the attached Appointment of Arbitrator on the parties in the within action by electronic mail at San

Francisco, CALIFORNIA, addressed as follows:

Jamin Soderstrom Esq.
Soderstrom Law PC
3 Park Plaza
Suite 100
Irvine, CA   92614
Phone: 949-667-4700
jamin@soderstromlawfirm.com
    Parties Represented:
    Lionel Harper

Zachary Shine Esq.
Morgan, Lewis & Bockius LLP
One Market
Spear Street Tower
San Francisco, CA   94105-1596
Phone: 415-442-1000
zachary.shine@morganlewis.com
    Parties Represented:
    Charter Communications, Inc.
    Charter Communications, LLC

Kathryn T. McGuigan Esq.
Morgan, Lewis & Bockius LLP
300 S Grand Ave
22nd Floor
Los Angeles, CA   90071-3132
Phone: 213-612-2500
kathryn.mcguigan@morganlewis.com
    Parties Represented:
    Charter Communications, Inc.
    Charter Communications, LLC

       I declare under penalty of perjury the foregoing to be true and correct. Executed at San Francisco,

CALIFORNIA on  December 20, 2018.

Jesse Dienner
JAMS
JDIENNER@JAMSADR.COM

# EXHIBIT 10

Hon. Rebecca J. Westerfield (Ret.)
JAMS
Two Embarcadero Center # 1500
San Francisco, CA 94111
Tel: (415) 982-5267
Fax: (415) 982-5287
rwesterfield@jamsadr.com

## IN THE MATTER OF JAMS ARBITRATION OF

| | |
|---|---|
| **LIONEL HARPER,**<br><br>     **Claimant,**<br><br>v.<br><br>**CHARTER COMMUNICATIONS, LLC,**<br>**CHARTER COMMUNICATIONS, INC.,**<br>**and DOES 1 to 25,**<br><br>     **Respondents.** | **Case No. 1100104486**<br>**Arbitrator:   Hon. Rebecca Westerfield**<br><br><br>**CLAIMANT'S AGENDA FOR**<br>**ARBITRATION READINESS CALL**<br><br><br>**Arbitration Filed:   February 7, 2019**<br>**Venue:    San Francisco** |

## AGENDA FOR ARBITRATION READINESS CALL
February 8, 2019 at 12:30 PT. Dial-in number: 1-877-696-5267; code 4947#.

**Proposals and Issues set forth below:**

   Claimant respectfully asks the Arbitrator to consider and address several threshold arbitrability issues and then, if any arbitrable claims remain, schedule and conduct a full arbitration readiness call after ruling on the threshold issues. Specifically:

   1.  Claimant requests leave to file a motion concerning the arbitrability of his claims. Specifically, Claimant seeks a determination that the "poison pill" clause in the Arbitration Agreement has been triggered and that the arbitration agreement is therefore "null and void" by its own terms. Due to the delegation requirement, Claimant was required to submit threshold arbitrability issues to the Arbitrator.

   2.  Claimant requests a preliminary order requiring Respondents to produce the basic employment records that are relevant to threshold arbitrability issues at least one

week before such motion is due. These records would include any job application-related or onboarding documents Claimant may have completed, signed, acknowledged, or been provided, and any employee handbooks or other policies, acknowledgements, or agreements that governed his employment. These records would not include emails and other discoverable records that go to the merits of Claimant's claims. Claimant recently requested such documents from Respondents but Respondents have declined to engage in any informal discovery.

3.    Claimant seeks guidance as to certain non-wage-and-hour claims involving violations of the FEHA and related claims that he preserved by obtaining a Right to Sue. Claimant would either (a) seek leave to add such claims in an amended demand or (b) file a separate arbitration devoted solely to those claims.

4.    Claimant proposes and agrees to email service for all documents filed or served in this arbitration and suggests that the filing deadline be 11:59 p.m. PST the date the document is due to be filed or served.

5.    Claimant requests the following briefing schedule for the Arbitrator's determination of threshold arbitrability issues:

| | | |
|---|---|---|
| a. | Production of documents re threshold issues | February 22, 2019 |
| b. | Claimant's Motion re Threshold Issues | March 1, 2019 |
| c. | Respondents' Response | March 15, 2019 |
| d. | Claimant's Reply | March 22, 2019 |
| e. | Telephonic hearing | Week of March 25, 2019 |

1) **Schedule**
   a) Arbitration hearing schedule: _____, 2018 at
      _____
      i) Normal hearing day: 9:30 a.m. -- 5:30 p.m., one hour for lunch
      ii) Flexibility to accommodate witnesses, counsel, *i.e.*, start early, shorten lunch, work late
      iii) Any known conflicts?  Other hearings, *etc*.

2) **Time Division/Timekeeping**
   a) Assures completion of hearing within time reserved
   b) Parties must agree
   c) Method

3) **Reporter**
   a) Arrangements to share cost?
   b) Daily?

**4) <u>Electronic filing</u>**
   **a)** Arbitrator receives all submissions in <u>electronic form with courtesy hardcopy</u>: witness and exhibit lists, briefs and exhibits
   **b)** Bring exhibits to hearing in notebooks or on thumb drive or DVD (instructions for preparation below)
   **c)** The parties **shall stipulate to agreed or uncontested facts** and shall provide any stipulation to the Tribunal in hard copy and electronic form (formatted to "Word") according to prior Case Management Orders.

**5) <u>Exhibits</u>**
   **a)** Exhibits not objected to shall be deemed admitted.

   **b)** Each exhibit should be a separate .pdf file on thumb drive or DVD
   **c)** Please use following convention to label each exhibit: "Ex. ###--Abbreviated Name Doc--date"
   **d) JOINT EXHIBIT LIST** to be submitted on thumb drive and hardcopy
   **e)** One exhibit only for each exhibit both sides identify
   **f)** Internal pagination sufficient to identify every page of a document (and/or Bates Nos.)
   **g)** Means to display on screen at hearing
   **h)** Binders for counsel's own use, witness, other side
   **i)** Expectation: minimize new exhibits at hearing, except impeachment.

**6) <u>Witnesses</u>**
   **a)** Witness lists include short description of each witness's anticipated testimony, and time estimate
   **b)** Witnesses not identified per Scheduling Order shall not be allowed to testify absent showing of good cause
   **c)** Witnesses usually will testify only once -- -not in each side's case in chief -- exception with Arbitrator's permission for party witnesses who will attend hearing
   **d)** Identify to adversary next trial day's witnesses by 6 pm (or other time mutually agreed on by counsel)
   **e)** Have witness waiting at all times
   **f)** Witnesses by deposition
      **i)** Not necessary to consume hearing time except for <u>key </u>testimony
      **ii)** Non-key testimony: provide arbitrator with .pdf file (designations and counter-designations in same file), and/or video clips; arbitrator will read off line.

**7) <u>Opening Statements</u>**
   **a)** Encouraged
   **b)** Graphics, Demonstratives, Spreadsheets, Matrixes, etc., are welcome (exchange night before use)
   **c)** Time limits (TBD)

**8) <u>Witness examination</u>**
   **a)** Background information (high school, college, employment history) normally should be very brief

**b)** Expert witnesses: consider using CV for background
**c)** Unnecessary for multiple witnesses to testify re non-key points --'cumulative' objections will be sustained
**d)** Avoid reading documents to witnesses ("Did I read that right?"  "Do you see that?") or having the witness "read the document into the record"

**9) <u>Closing Arguments/Post-Trial Briefs</u>**
   **a)** Discuss in course of main hearing
   **b)** Any legal point that arises during the hearing may be addressed in a supplemental brief at any time

**10) <u>Logistics</u>**
   Counsel may liaison with Office Manager to:
   **a)** Set up room if available prior to first day of hearing
   **b)** Identify break out rooms
   **c)** Lunch provided
   **d)** Client services available at JAMS:
      **i)** computers
      **ii)** internet
      **iii)** printing
      **iv)** copying
      **v)** Wireless for your laptop

**11) <u>Other Issues??</u>**


Respectfully submitted,


Dated: February 7, 2019                    SODERSTROM LAW PC

                                           By: */s/ Jamin S. Soderstrom*

                                           *Counsel for Claimant*

4

# EXHIBIT 11

Hon. Rebecca J. Westerfield (Ret.)
JAMS
Two Embarcadero Center # 1500
San Francisco, CA 94111
Tel: (415) 982-5267
Fax: (415) 982-5287

JAMS ARBITRATION

| | |
|---|---|
| LIONEL HARPER,<br><br>        Claimant,<br><br>    v.<br><br>CHARTER COMMUNICATIONS, LLC,<br>CHARTER COMMUNICATIONS, INC.,<br>and DOES 1 to 25,<br><br>      Respondents. | JAMS Ref. No. 1100104486<br><br>**RESPONDENT'S AGENDA FOR**<br><br>**ARBITRATION READINESS CALL** |

<u>**AGENDA FOR ARBITRATION READINESS CALL**</u>
February 8, 2019 at 12:30 p.m. PT.  Dial-in number 1-877-696-5267 code 4947#

Claimant's Demand for Arbitration sets for a request that the arbitrator hear three threshold issues largely concerning the issue of arbitrability before ultimately engaging in arbitration of Claimant's substantive claims.  Respondent firmly believes arbitration is entirely appropriate here and that the Claimant must be bound by his agreement to arbitrate his claims.  Respondent urges the arbitrator to hear Claimant's claim on the merits and initiate arbitration.  Should the arbitrator consider claimant's threshold issues, these issues will likely need to be addressed, by setting a reasonable briefing schedule, before discussing the particular details of the arbitration and before any discovery begins.

Proposals and Issues set forth below:

1) <u>**Schedule**</u>
    **a)** Arbitration hearing schedule: _____, 2018 at _____.
        **i)** Normal hearing day: 9:30 a.m. -- 5:30 p.m., one hour for lunch
        **ii)** Flexibility to accommodate witnesses, counsel, *i.e.*, start early, shorten lunch,

1

work late
  **iii)** Any known conflicts?  Other hearings, *etc*.  ARBITRATION HEARING ON
  FEBRUARY 3, 2020


**2) <u>Time Division/Timekeeping</u>**
  **a)** Assures completion of hearing within time reserved
  **b)** Parties must agree
  **c)** Method

**3) <u>Reporter</u>**
  **a)** Arrangements to share cost?
  **b)** Daily?

**4) <u>Electronic filing</u>**
  **a)** Arbitrator receives all submissions in <u>electronic form with courtesy hardcopy</u>:
  witness and exhibit lists, briefs and exhibits
  **b)** Bring exhibits to hearing in notebooks or on thumb drive or DVD (instructions for
  preparation below)
  **c)** The parties **shall stipulate to agreed or uncontested facts** and shall provide any
  stipulation to the Tribunal in hard copy and electronic form (formatted to "Word")
  according to prior Case Management Orders.

**5) <u>Exhibits</u>**
  **a)** Exhibits not objected to shall be deemed admitted.

  **b)** Each exhibit should be a separate .pdf file on thumb drive or DVD
  **c)** Please use following convention to label each exhibit: "Ex. ###--Abbreviated Name
  Doc--date"
  **d)** **JOINT EXHIBIT LIST** to be submitted on thumb drive and hardcopy
  **e)** One exhibit only for each exhibit both sides identify
  **f)** Internal pagination sufficient to identify every page of a document (and/or Bates
  Nos.)
  **g)** Means to display on screen at hearing
  **h)** Binders for counsel's own use, witness, other side
  **i)** Expectation: minimize new exhibits at hearing, except impeachment.

**6) <u>Witnesses</u>**
  **a)** Witness lists include short description of each witness's anticipated testimony, and
  time estimate
  **b)** Witnesses not identified per Scheduling Order shall not be allowed to testify absent
  showing of good cause
  **c)** Witnesses usually will testify only once -- -not in each side's case in chief --
  exception with Arbitrator's permission for party witnesses who will attend hearing
  **d)** Identify to adversary next trial day's witnesses by 6 pm (or other time mutually
  agreed on by counsel)

2

**e)** Have witness waiting at all times
**f)** Witnesses by deposition
    **i)** Not necessary to consume hearing time except for <u>key</u> testimony
    **ii)** Non-key testimony: provide arbitrator with .pdf file (designations and counter-designations in same file), and/or video clips; arbitrator will read off line.

**7)** <u>**Opening Statements**</u>
  **a)** Encouraged
  **b)** Graphics, Demonstratives, Spreadsheets, Matrixes, etc., are welcome (exchange night before use)
  **c)** Time limits (TBD)

**8)** <u>**Witness examination**</u>
  **a)** Background information (high school, college, employment history) normally should be very brief
  **b)** Expert witnesses: consider using CV for background
  **c)** Unnecessary for multiple witnesses to testify re non-key points --'cumulative' objections will be sustained
  **d)** Avoid reading documents to witnesses ("Did I read that right?"  "Do you see that?") or having the witness "read the document into the record"

**9)** <u>**Closing Arguments/Post-Trial Briefs**</u>
  **a)** Discuss in course of main hearing
  **b)** Any legal point that arises during the hearing may be addressed in a supplemental brief at any time

**10)** <u>**Logistics**</u>
    Counsel may liaison with Office Manager to:
  **a)** Set up room if available prior to first day of hearing
  **b)** Identify break out rooms
  **c)** Lunch provided
  **d)** Client services available at JAMS:
    **i)** computers
    **ii)** internet
    **iii)** printing
    **iv)** copying
    **v)** Wireless for your laptop

**11)** <u>**Other Issues??**</u>

# EXHIBIT 12

Hon. Rebecca J. Westerfield (Ret.)
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111
Tel: (415) 982-5267
Fax: (415) 982-5287

ARBITRATOR


JAMS ARBITRATION


| HARPER, LIONEL, | JAMS Ref. No. 1100104486 |
|---|---|
| Claimant, | **CASE MANAGEMENT ORDER NO. 1** |
| v. | |
| CHARTER COMMUNICATIONS, LLC, and CHARTER COMMUNICATIONS, INC., | |
| Respondents. | |


On February 8, 2019 the first Arbitration Management Conference was held

telephonically in this matter before the undersigned Arbitrator, Hon. Rebecca J. Westerfield

(Ret.). Also participating in the Conference were Jamin Soderstrom, Esq., counsel for

Claimant; Zachary Shine, Esq., counsel for Respondents; and Liz Magana, Case Manager to

the Arbitrator.

Following discussion, the Arbitrator hereby orders as follows:

1. Claimant's request for leave to file a motion concerning the arbitrability of

   his claims is GRANTED.

1

2. Respondent shall produce to Claimant by no later than February 22, 2019 the following:

    a) any job application related or onboarding documents Claimant may have completed, signed, acknowledged, or been provided; and

    b) any employee handbooks or other policies, acknowledgments, or agreements that governed Claimant's employment.

3. Claimant's counsel shall file its motion regarding threshold issues by no later than March 1, 2019. Respondent's counsel shall file its response by no later than March 15, 2019 and Claimant's reply by no later than March 22, 2019. The hearing shall be conducted telephonically on March 26, 2019 at 12:30 p.m. PT. the dial-in number shall be 1-877-696-5267 and enter code 4947#.

Should counsel have any further issues or need a further conference they are directed to contact Case Manager, Liz Magana, at EMagana@jamsadr.com or (415) 774-2649.

IT IS SO ORDERED.

Dated:  February 8, 2019

                                                      Hon. Rebecca J. Westerfield (Ret.)
                                                      Arbitrator

## PROOF OF SERVICE BY E-Mail

Re: Harper, Lionel vs. Charter Communications, Inc.
Reference No. 1100104486

I, Brian Palencia, not a party to the within action, hereby declare that on February 08, 2019, I served the attached Case Management Order No. 1 on the parties in the within action by electronic mail at San Francisco, CALIFORNIA, addressed as follows:

Jamin Soderstrom Esq.
Soderstrom Law PC
3 Park Plaza
Suite 100
Irvine, CA   92614
Phone: 949-667-4700
jamin@soderstromlawfirm.com
   Parties Represented:
   Lionel Harper

Zachary Shine Esq.
Morgan, Lewis & Bockius LLP
One Market
Spear Street Tower
San Francisco, CA   94105-1596
Phone: 415-442-1000
zachary.shine@morganlewis.com
   Parties Represented:
   Charter Communications, Inc.
   Charter Communications, LLC

Kathryn T. McGuigan Esq.
Morgan, Lewis & Bockius LLP
300 S Grand Ave
22nd Floor
Los Angeles, CA   90071-3132
Phone: 213-612-2500
kathryn.mcguigan@morganlewis.com
   Parties Represented:
   Charter Communications, Inc.
   Charter Communications, LLC

I declare under penalty of perjury the foregoing to be true and correct. Executed at San Francisco, CALIFORNIA on February 08, 2019.

Brian Palencia
JAMS
BPalencia@jamsadr.com

# EXHIBIT 13

**IN THE MATTER OF JAMS ARBITRATION OF**

| | |
|---|---|
| **LIONEL HARPER,** | **Case No. 1100104486** |
| **Claimant,** | **Arbitrator:    Hon. Rebecca Westerfield** |
| **v.** | **CLAIMANT LIONEL HARPER'S** |
| **CHARTER COMMUNICATIONS, LLC,** | **MOTION FOR THRESHOLD RULINGS** |
| **CHARTER COMMUNICATIONS, INC.,** | **AS TO INARBITRABILITY** |
| **and DOES 1 to 25,** | |
| **Respondents.** | **Arbitration Filed:    November 19, 2018** |
| | **Venue:            San Francisco** |
| | **Motion Filed:        March 1, 2019** |

## INTRODUCTION

Claimant Lionel Harper respectfully asks the Arbitrator to issue the following rulings:

**Threshold Ruling 1**: The Arbitrator has authority to decide all issues related to enforceability, scope, and arbitrability raised in the Demand.

**Threshold Ruling 2**: The Arbitration Agreement is "null and void" by its own terms because it includes invalid and unenforceable waivers of the right to bring representative claims, the right to act as a representative of the State and other aggrieved employees, and the right to seek public injunctive relief in any forum.

**Threshold Ruling 3**: Because the Arbitration Agreement is "null and void," the Arbitrator has no jurisdiction over Harper's claims and the arbitration must be dismissed in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

When Harper was hired by Respondents Charter Communications, LLC and Charter Communications, Inc. ("Charter"), he was required to agree to a Mutual Agreement to Arbitrate.

*See* Soderstrom Decl. ¶ 2, Ex. 1 ("Arbitration Agreement"). The Arbitration Agreement was drafted as broadly as possible to cover "any and all claims, disputes, and/or controversies between you and Charter arising from or related to your employment with Charter." *Id.* It provided that "all arbitration proceedings shall be conducted in accordance with the JAMS Employment Arbitration Rules & Procedures and JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness." *Id.*

The Arbitration Agreement also contained the following waiver:

> **REPRESENTATIVE, COLLECTIVE, AND CLASS ACTION WAIVER: You and Charter understand, acknowledge and agree that the terms of this Agreement include a waiver of any rights that you or Charter may have to bring or participate in an action against each other on a representative, class, or collective basis and understand and agree that the arbitrator shall not be permitted to order consolidation of claims or a representative, class, or collective, arbitration. This waiver does not take away or restrict your or Charter's rights to pursue your or its own claims, but only requires that any such claims be pursued in your or Charter's own individual capacity, rather than on a representative, class, or collective basis.**

> . . . .

> You and Charter agree that if the Agreement or any clause or term of the Agreement is found to be void, unenforceable, or unconscionable, the remainder of the Agreement shall be enforced without the invalid, unenforceable, or unconscionable clause or term, or the application of the clause or term shall be limited as to avoid any invalid, unenforceable, or unconscionable result. The only exception to this severability provision is, should the dispute involve a representative, collective or class action claim, and the REPRESENTATIVE, COLLECTIVE, AND CLASS ACTION WAIVER is found to be invalid or unenforceable for any reason, then this entire Agreement (except for the parties' agreement to waive a jury trial) shall be null and void and the dispute will not be arbitrable.

Arbitration Agreement (bold in original).

The provision declaring that the entire Arbitration Agreement is "null and void" if the REPRESENTATIVE, COLLECTIVE, AND CLASS ACTION WAIVER ("WAIVER") is "invalid or unenforceable for any reason" is commonly called a "poison pill." Companies typically use poison pill provisions like this one to ensure that disputes involving requests for relief that

extends beyond the individual litigants themselves (i.e., class, representative, or public disputes) are litigated in court instead of decided in arbitration.

Harper agreed to the Arbitration Agreement and then worked for Charter from September 2017 until March 2018, when Charter terminated his employment. On June 5, 2018, Harper, through his counsel, sought copies of his personnel records from Charter. Soderstrom Decl. ¶ 3, Ex. 2 (records request). Three months later, on September 4, 2018, Harper's counsel received copies of *some* of his personnel records, which records included a copy of the Arbitration Agreement. *Id.*

On September 14, 2018, Harper filed with the Labor and Workforce Development Agency ("LWDA") a written notice that described a host of alleged Labor Code violations committed by Charter and he sent a copy of the notice certified mail to Charter. *Id.* ¶ 4, Ex. 3 ("PAGA Notice"). The LWDA did not respond to Harper's PAGA Notice or otherwise indicate that it would investigate the allegations described in the PAGA Notice. *Id.* On November 19, 2018, Harper filed this arbitration and identified the causes of action he intends to pursue in court or, alternatively, that he intends to pursue in arbitration. *See* Demand.

Harper's Demand includes claims brought under California's Labor Code—including claims under the Private Attorneys General Act, Cal. Lab. Code § 2698 *et seq.* ("PAGA")—and under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"). *See* Demand ¶¶ 18-71. Harper asserts representative claims under PAGA and he seeks individual, representative, and public injunctive relief under the Labor Code and the UCL generally. *Id.*

On February 8, 2019, Harper requested and the Arbitrator granted leave to file this motion seeking threshold rulings as to inarbitrability. *See* CMO 1.

///

Claimant's Motion for Threshold Rulings

**ARGUMENT**

**I.     The Arbitrator Decides Whether the Arbitration Agreement is "Null and Void."**

The Arbitration Agreement expressly incorporates by reference the JAMS Employment Arbitration Rules & Procedures and JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness ("JAMS Rules"). Rule 11 of the JAMS Rules provides that the "Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." Incorporation of the JAMS Rules constitutes clear and unmistakable evidence that the parties intended to delegate threshold issues to the Arbitrator. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, -- S. Ct. --, 2019 WL 122164, at *4 (Jan. 8, 2019); *Nielsen Contracting, Inc. v. Applied Underwriters, Inc.*, 22 Cal. App. 5th 1096, 1107-08 (May 3, 2018); *Brennen v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). The Arbitrator should find that she has jurisdiction to rule on the threshold arbitrability determinations Harper is seeking in this motion.

**II.     The WAIVER is invalid and unenforceable as a matter of California law.**

The Arbitration Agreement covers any and all claims, disputes, and/or controversies Harper has related to his employment with Charter, including the claims identified in his Demand concerning violations of the Labor Code and the UCL. The broad scope of the Arbitration Agreement is unremarkable and unobjectionable.

The broad WAIVER in the Arbitration Agreement, however, is an entirely different matter. The WAIVER expressly waives Harper's right "to bring or participate in an action against [Charter] on a representative . . . basis." The WAIVER further "requires that any [claims or disputes raised under the Labor Code or UCL] be pursued in your . . . own individual capacity, rather than on a representative, class, or collective basis."

The WAIVER is invalid and unenforceable for three reasons: (1) it waives Harper's right to bring or participate in a representative PAGA action in any forum, (2) it waives Harper's right to act as a representative of the State and other aggrieved employees, and (3) it waives Harper's right to seek representative and public injunctive relief in any forum.

**A.**    **The pre-dispute waiver of Harper's right to bring or participate in a representative PAGA action is invalid and unenforceable under *Iskanian*.**

The WAIVER is invalid and unenforceable because it is a pre-dispute waiver of Harper's right to bring or participate in a representative action brought under PAGA. It is black-letter law that "where, as here, an employment agreement compels the waiver of representative claims under the PAGA, it is contrary to public policy and unenforceable as a matter of state law." *Iskanian v. CLS Transportation Los Angeles LLC*, 59 Cal. 4th 348, 384 (2014).

Harper timely filed a PAGA Notice with the LWDA and he is now the State's representative with statutory authorization to bring an action on behalf of himself and other current and former employees to prosecute the violations identified in his PAGA Notice. *See* Lab. Code § 2699(a) (authorizing an aggrieved employee to bring an action on behalf of himself or herself and other current or former employees); *id.* § 2699.3(a) (setting forth notice requirements that are prerequisites to filing a representative action under PAGA).

Despite his statutory authorization to file a representative PAGA action, the WAIVER expressly prohibits Harper from bringing any form of representative action in any forum—court or arbitration.[1] This prohibition necessarily includes bringing a representative PAGA action. The

---

[1] The Arbitration Agreement does not exempt or carve out any claims from arbitration but instead requires "any and all claims, disputes, and/or controversies" to be "submitted exclusively to" arbitration. Accordingly, the WAIVER waives Harper's right to bring or participate in a representative PAGA action *both* in arbitration *and* in court.

Claimant's Motion for Threshold Rulings

WAIVER goes so far as to prohibit him from *participating* in a representative PAGA action that is filed by another employee (and it also would prohibit other aggrieved employees from participating in his representative PAGA action).

Because the WAIVER is a pre-dispute waiver of any and all representative claims that Harper could bring or participate in, and because Charter required Harper to agree to the WAIVER as a condition of his employment, it falls squarely within the class of waivers that *Iskanian* held were contrary to public policy and unenforceable under California law. 59 Cal. 4th at 384. The Arbitrator should find that the WAIVER is invalid and unenforceable because it is contrary to public policy and is unenforceable under California law.

**B.    Requiring Harper to act only in his "individual capacity" improperly waives his right to act as a representative of the State and other aggrieved employees.**

The WAIVER is invalid and unenforceable because it prohibits Harper from acting in any capacity other than his "individual capacity." This provision necessarily prevents him from serving as the State's representative who is authorized by statute to recover civil penalties on behalf of himself and other current and former employees of Charter. According to the WAIVER, even though Harper timely filed a PAGA Notice and has now secured statutory authorization to act as the State's representative and to represent himself and other current and former Charter employees, he is not allowed to act in that capacity because he is only allowed to act in his "individual capacity" and to pursue individualize relief.

Because Harper is authorized by statute to act in a representative capacity under PAGA, and because the WAIVER prohibits him from acting in that capacity because he would not be acting in his "individual capacity," the WAIVER is contrary to public policy and is invalid and unenforceable under California law.

**C.**    **Requiring Harper to act only in his "individual capacity" improperly prevents**
          **him from seeking representative and public injunctive relief in any forum.**

The WAIVER is also invalid and unenforceable because it prevents him from seeking representative and public injunctive relief in any forum. The Labor Code authorizes Harper to seek and obtain injunctive relief that prevents Charter from committing any further violations of law (which, necessarily, would prevent violations against other employees). *See* Lab. Code § 1194.5; Cal. Bus. & Prof. Code §§ 17203, 17535 (authorizing injunctive relief with respect to unfair and unlawful business practices, which include violations of the Labor Code). Moreover, any provision in a pre-dispute arbitration agreement that waives the right to seek public injunctive relief "is contrary to California public policy and is thus unenforceable under California law." *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 951 (2017). Moreover, as discussed above, PAGA claims can only be brought in a representative capacity and any injunctive relief ordered in connection with a PAGA claim is necessarily representative injunctive relief.

The WAIVER's broad language makes clear that Charter's intent was to prohibit Harper and other employees from seeking anything other than *individualized* relief in arbitration and to foreclose Harper's right to seek *any* relief in court. Harper's waiver of the right to bring claims in anything other than his "individual capacity" is simply another way of saying he waived the right to seek any form of relief that extends beyond himself and that will or could benefit third parties or the public. This necessarily includes representative injunctive relief under the Labor Code and PAGA and public injunctive relief under the UCL.

Multiple courts have construed broad waivers that used nearly identical language as waiving the right to seek public injunctive relief in any forum. *See, e.g.*, *Roberts v. AT&T Mobility LLC*, 2018 WL 1317346, at *5-8 (N.D. Cal. Mar. 14, 2018) (court held that a waiver that restricted

Claimant's Motion for Threshold Rulings

arbitration to claims brought only in an "individual capacity" was an unenforceable waiver of the right to seek public injunctive relief); *McArdle v. AT&T Mobility LLC*, 2017 WL 4354998, at *3 (N.D. Cal. Oct. 2, 2017) (same); *Blair v. Rent-A-Center, Inc.*, 2017 WL 4805577, at *3 (N.D. Cal. Oct. 25, 2017) (court held that a waiver that restricted arbitration to claims brought only on an "individual basis" and prevented the arbitrator from hearing disputes broad as a "class, collective, mass, private attorney general, or representative action" was an unenforceable waiver of the right to seek public injunctive relief); *cf. McGill*, 2 Cal. 5th at 956 (court held that a provision that only allowed relief "on an individual (non-class, nonrepresentative) basis" was an unenforceable waiver of the right to seek public injunctive relief).

Just like the WAIVER here, the waivers in those cases did not specifically mention waiving the right to seek "public injunctive relief." Instead, they restricted the capacity in which a claimant could act to his or her "individual" capacity and expressly or implicitly permitted only *individualized* relief. *See Roberts*, 2018 WL 1317346, at *7 (noting that "[i]n both PAGA and public injunction cases, relief is sought for parties beyond the individual plaintiff").

The WAIVER prohibits Harper from seeking relief in anything other than his "individual capacity" and prevents him from obtaining representative injunctive relief under PAGA and the Labor Code and public injunctive relief under the UCL. This prohibition is invalid and unenforceable under California law.

## III.    Charter is not entitled to a favorable interpretation of its form contract of adhesion.

The only way Charter can avoid the having the Arbitration Agreement be rendered "null and void" by its own terms is to convince the Arbitrator to adopt a narrow interpretation of the WAIVER's broad language (one that improperly favors the drafter). In contrast, Harper simply

Claimant's Motion for Threshold Rulings

asks the Arbitrator to interpret the broad WAIVER language just as Charter intended (broadly) and to construe any ambiguities against the drafter.

The Arbitration Agreement is a form contract of adhesion that Charter imposed on Harper as a condition of his employment. As such, if the scope or effect of the WAIVER or the poison pill is vague or ambiguous in any respect, the Arbitrator must adopt Harper's proposed interpretations as long as they are reasonable. *Sandquist v. Lebo Automotive, Inc.*, 1 Cal. 5th 233, 247-48 (2016) ("Where one party chooses the terms of a contract, he is likely to provide more carefully for the protection of his own interests than for those of the other party. He is also more likely than the other party to have reason to known of uncertainties of meaning. Indeed, he may leave meaning deliberately obscure, intending to decide at a later date what meaning to assert. In cases of doubt, therefore, so long as other factors are not decisive, there is substantial reason for preferring the meaning of the other party."). Put differently, Charter cannot draft adhesive contract terms with less-than-precise language and then benefit from an interpretation of those terms that favor its preferred outcome. *Id.* at 248 ("The rule requiring the resolution of ambiguities against the drafting party applies with peculiar force in the case of a contract of adhesion.").

The Arbitrator should not let Charter try to massage or manipulate the phrasing of the WAIVER in a way designed specifically to avoid triggering the poison pill. Charter's intent in drafting the WAIVER was clear: under no circumstances would an employee like Harper be allowed to pursue or participate in a representative action or to seek relief that is anything other than individualized relief. The Arbitrator should reject any proposed interpretation that tries to sidestep the core purpose of the WAIVER.

///

///

Claimant's Motion for Threshold Rulings

IV.    **The invalid and unenforceable WAIVER triggers the poison pill and renders the entire Arbitration Agreement "null and void" by its own terms.**

Because the WAIVER is invalid and unenforceable for at least three reasons, the entire Arbitration Agreement is "null and void" by its own terms. The arbitration should be dismissed in its entirety based on the poison pill's clear and unmistakable language.

According to the Arbitration Agreement:

> [S]hould the dispute involve a representative, collective or class action claim, and the REPRESENTATIVE, COLLECTIVE, AND CLASS ACTION WAIVER is found to be invalid or unenforceable for any reason, then this entire Agreement (except for the parties' agreement to waive a jury trial) shall be null and void and the dispute will not be arbitrable.

The Arbitrator should not let Charter sidestep its own agreement. The Arbitrator also should not construe the WAIVER or the poison pill narrowly and revive any aspect of the Arbitration Agreement that is otherwise "null and void" by its own terms. A narrow, piecemeal approach is exactly what the broad poison pill was designed to prevent.

Courts have rejected defendants' attempts to construe their own poison pills narrowly to resurrect an otherwise void arbitration agreement. *See Roberts*, 2018 WL 1317346, at *8-9 (poison pill enforced); *McArdle*, 2017 WL 4354998, at *5 (poison pill enforced). Of course, Charter *could have* drafted its poison pill narrowly (or had no poison pill at all), which arguably would have allowed the Arbitrator to sever aspects of the WAIVER that are invalid and unenforceable while preserving the rest of the Arbitration Agreement. *See Blair*, 2017 WL 4805577, at *5-6 (no poison pill existed so the court severed the unenforceable waiver and left the remainder intact). Charter chose not to do so, instead preferring that the "entire" Arbitration Agreement be null and void.

## CONCLUSION

Because the WAIVER is invalid and unenforceable for multiple reasons, the poison pill has been triggered and the entire Arbitration Agreement is "null and void" by its own terms. The

Arbitrator should rule that all of Hart's claims must be brought in court, and then dismiss the arbitration for lack of jurisdiction.


Respectfully submitted,

Dated: March 1, 2019                          SODERSTROM LAW PC

                                              By: */s/ Jamin S. Soderstrom*                    
                                                   Jamin S. Soderstrom

                                              *Counsel for Claimant*

IN THE MATTER OF JAMS ARBITRATION OF

| | |
|---|---|
| **LIONEL HARPER,** | **Case No. 1100104486** |
| | **Arbitrator:  Hon. Rebecca Westerfield** |
| **Claimant,** | |
| | **DECLARATION OF JAMIN S.** |
| **v.** | **SODERSTROM IN SUPPORT OF** |
| | **CLAIMANT LIONEL HARPER'S** |
| **CHARTER COMMUNICATIONS, LLC,** | **MOTION FOR THRESHOLD RULINGS** |
| **CHARTER COMMUNICATIONS, INC.,** | **AS TO INARBITRABILITY** |
| **and DOES 1 to 25,** | |
| | **Arbitration Filed:  November 19, 2018** |
| **Respondents.** | **Venue:  San Francisco** |
| | **Motion Filed:  March 1, 2019** |

## DECLARATION OF JAMIN S. SODERSTROM

I, Jamin S. Soderstrom, declare as follows:

1.       I am an attorney duly licensed to practice law in the State of California and before the JAMS in California. I am the founding shareholder of Soderstrom Law PC, counsel of record for Claimant Lionel Harper in this arbitration. The facts set forth in this Declaration are based on my own personal knowledge and, if called as a witness, I could and would competently testify to the facts set forth herein.

2.       Attached as **Exhibit 1** is a true and correct copy of the "Mutual Agreement to Arbitrate" that Charter produced in connection with Harper's employment.

3.       Attached as **Exhibit 2** is a true and correct copy of the request for Harper's employment records and his signed authorization that I sent to Charter on June 5, 2018. I did not receive any records from Charter related to Harper's employment until September 4, 2018.

4.      Attached as **<u>Exhibit 3</u>** is a true and correct copy of the PAGA Notice I filed with the LWDA on September 14, 2018 on Harper's behalf. The LWDA did not respond to the PAGA Notice or otherwise indicate that it would investigate the allegations described therein.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct. This Declaration was executed on March 1, 2019 at Irvine, California.

By: _____

Jamin S. Soderstrom

*Counsel for Claimant*

SODERSTROM DECLARATION

2

# EXHIBIT 1



## MUTUAL AGREEMENT TO ARBITRATE

By accepting employment with Charter, you and Charter (as defined below) agree that any and all claims, disputes, and/or controversies between you and Charter arising from or related to your employment with Charter shall be submitted exclusively to and determined exclusively by binding arbitration before a single Judicial Arbitration and Mediations Services, Inc. ("JAMS") arbitrator under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"). Examples of such claims include, but are not limited to, claims (1) under the Fair Labor Standards Act ("FLSA"), (2) under state labor laws, (3) under any state law governing Charter's obligation to provide meal, rest, or other breaks, (4) alleging that you were paid improperly or paid insufficient wages, overtime, compensation, or that Charter failed to comply with any law relating to the payment of wages, (5) under any other state law related to your employment with Charter, (6) by Charter against you for breach of duty of loyalty, (7) by Charter against you for breach of fiduciary duty, (8) by Charter or you for breach of contract, (9) by Charter against you for theft of trade secrets/conversion, or (10) by Charter or you for breach of duty of good faith and fair dealing. You and Charter further agree that all arbitration proceedings shall be conducted in accordance with the JAMS Employment Arbitration Rules & Procedures and JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness. JAMS' arbitration rules and the location of JAMS' resolution centers may be found online at the web address provided above in the form of a hyperlink. As set forth in the applicable JAMS rules, Charter will bear all costs unique to arbitration, except for the Case Initiation Fee, which will be split between you and Charter in accordance with JAMS' fee schedule. **Please read the JAMS rules carefully before electronically signing this agreement.**

For purposes of this Agreement, "Charter" means Charter Communications, Inc. together with its parents, subsidiaries, affiliates, successors and assigns.

You and Charter agree that the arbitrator's decision shall be final and binding on the parties (except as otherwise provided for under the FAA). The arbitration shall be conducted at the JAMS resolution center that is closest to your residence. You have the right to retain and be represented by counsel in any such arbitration.

**REPRESENTATIVE, COLLECTIVE, AND CLASS ACTION WAIVER: You and Charter understand, acknowledge and agree that the terms of this Agreement include a waiver of any rights that you or Charter may have to bring or participate in an action against each other on a representative, class, or collective basis and understand and agree that the arbitrator shall not be permitted to order consolidation of claims or a representative, class, or collective, arbitration. This waiver does not take away or restrict your or Charter's right to pursue your or its own claims, but only requires that any such claims be pursued in your or Charter's own individual capacity, rather than on a representative,**



**class, or collective basis.**

In the event a dispute between you and Charter is not arbitrable under this Agreement for any reason and is pursued in court, you and Charter agree to waive any right to a jury trial that might otherwise exist.

You and Charter agree that if the Agreement or any clause or term of the Agreement is found to be void, unenforceable, or unconscionable, the remainder of the Agreement shall be enforced without the invalid, unenforceable, or unconscionable clause or term, or the application of the clause or term shall be limited as to avoid any invalid, unenforceable, or unconscionable result. The only exception to this severability provision is, should the dispute involve a representative, collective or class action claim, and the REPRESENTATIVE, COLLECTIVE, AND CLASS ACTION WAIVER is found to be invalid or unenforceable for any reason, then this entire Agreement (except for the parties' agreement to waive a jury trial) shall be null and void and the dispute will not be arbitrable.

This Arbitration Agreement supersedes any other agreement to arbitrate previously in place between you and Charter.

Nothing herein shall prevent you from filing and pursuing the following: an administrative proceeding before the U.S. Equal Employment Opportunity Commission or an equivalent state or local agency (although if you choose to pursue a claim following the exhaustion of such administrative proceeding, that claim would be subject to arbitration); a proceeding before the National Labor Relations Board; a claim for medical and disability benefits under workers' compensation; or a claim for unemployment benefits.

# EXHIBIT 2



SODERSTROM
LAW

3 Park Plaza, Suite 100            949.667.4700 (phone)
Irvine, California 92614           949.424.8091 (facsimile)
soderstromlawfirm.com             jamin@soderstromlawfirm.com

June 5, 2018

**BY EMAIL TO COUNSEL**

Charter Communications, Inc. and affiliates
c/o Mr. Gregory S. Drake (counsel)
400 Atlantic Avenue
Stamford, Connecticut 06901
gregory.s.drake@charter.com

      Re:    *Request for Lionel Harper's Employment Records*

To Whom It May Concern:

      I am counsel for Mr. Lionel Harper, a former employee of Charter Communications, Inc. and possibly one or more of its affiliates (collectively, "Charter"). All future communications related to Mr. Harper should be directed to me.

      Pursuant to California Labor Code sections 226, 432, and 1198.5, and applicable Industrial Wage Commission Orders, I am requesting that Charter provide me with copies of the following records for Mr. Harper:

1.     His personnel files.

2.     Each employee handbook applicable to his employment.

3.     All of his itemized wage statements, pay stubs, and time records.

4.     All of his business-related expense reimbursement records.

5.     All documents signed by him (physically or electronically) in the course of his employment, including but not limited to any employment agreement, arbitration agreement, release agreement, or any other document, instrument, or agreement.

6.     All records related to his performance, including but not limited to any formal performance evaluations or informal performance evaluations (e.g., emails between or among him, his colleagues, and/or his superiors).

June 5, 2018
Page 2 of 2

      7.      All records related to any grievance concerning him, including but not limited to any written communications (including emails) between or among him, his colleagues, and/or his superiors.

      I have enclosed with this letter an "Authorization for Release of Employment Records" signed by Mr. Harper covering all such records.

      Please provide me with copies of all of the documents identified above as soon as practicable, but in no event later than 21 days from the date of this request.

      Due to potential litigation related to Mr. Harper's employment and termination, Charter is instructed to put in place a litigation hold concerning any and all documents and records (paper and electronic) that relate or refer to Mr. Harper's employment in any way and to Charter's employment policies and practices generally. This litigation hold should include, but not be limited to, preserving in their current form all emails, text messages, social media messages, and any other forms of communications or records created or maintained by Charter or on Charter's behalf or by one or more of Charter's managers or human resources personnel.

      Thank you for your anticipated cooperation in this matter.

      Very truly yours,

      SODERSTROM LAW PC

      Jamin S. Soderstrom

*Enclosure*



**SODERSTROM**
LAW

| | |
|---|---|
| 3 Park Plaza, Suite 100 | 949.667.4700 (phone) |
| Irvine, California 92614 | 949.424.8091 (facsimile) |
| soderstromlawfirm.com | jamin@soderstromlawfirm.com |

## AUTHORIZATION FOR RELEASE OF EMPLOYMENT RECORDS

To Whom It May Concern:

I, Lionel Harper, request that Charter Communications, Inc. and any of its applicable affiliates send copies of the following documents to my counsel, Soderstrom Law PC, located at 3 Park Plaza, Suite 100, Irvine, California 92614.

(i)      My personnel file.

(ii)     My itemized wage statements, pay stubs, and time records.

(iii)    My business-related expense reimbursement records.

(iv)    Any and all documents I signed (physically or electronically) in the course of my employment.

(v)     Any employment agreement, arbitration agreement, alternative dispute resolution agreement, release agreement, or other form of instrument or agreement that I signed related to my employment.

(vi)    All records related to my performance.

(vii)   All records related to any grievance that concerns me.

(viii)  Any employee handbook applicable to my employment.

(ix)    Any other records that relate to my compensation, time scheduled or worked, or other employment-related matters.

(x)     Any other records I am authorized to obtain or review under California Labor Code sections 226, 432, or 1198.5, or under any applicable Industrial Wage Commission Order.

| | |
|---|---|
| 06/23/1970 | 0042 |
| **Date of Birth** | **Last 4 Digits of SSN** |
| | DocuSigned by: |
| | *Lionel Harper* |
| 6/4/2018 8:29:44 PM PDT | A2F8E7FE5556475... |
| **Date** | **Employee** |

Business Law   |   Employment Law   |   Consumer Law   |   Intellectual Property

# EXHIBIT 3



**SODERSTROM**
LAW

| 3 Park Plaza, Suite 100 | 949.667.4700 (phone) |
| Irvine, California 92614 | 949.424.8091 (facsimile) |
| soderstromlawfirm.com | jamin@soderstromlawfirm.com |

September 14, 2018

**BY ONLINE FILING**

Labor & Workforce Development Agency
Attn: PAGA Administrator
1515 Clay Street, Suite 801
Oakland, California 94612
PAGA@dir.ca.gov

**BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

| Charter Communications, LLC<br>Attn: Legal Department<br>7800 Crescent Executive Dr.<br>Charlotte, North Carolina 28217<br><br>Charter Communications, Inc.<br>Attn: Legal Department<br>400 Atlantic Street<br>Stamford, Connecticut 06901 | Copy via email to Charter's counsel:<br><br>Morgan, Lewis & Bockius LLP<br>Zachary W. Shine<br>One Market, Spear Street Tower<br>San Francisco, California 94105<br>zachary.shine@morganlewis.com |

Re:    *Notice of Violations of the California Labor Code*

To Whom It May Concern:

Soderstrom Law PC represents Lionel Harper ("Employee"), a former employee of Charter Communications, LLC, Charter Communications, Inc., and possibly one or more of their affiliates (collectively, "Defendant"). In accordance with California Labor Code section 2699.3, and on behalf of Employee and all aggrieved employees, this letter gives written notice to the Labor & Workforce Development Agency and to Defendant of serious and ongoing violations of the California Labor Code.

Employee is an "aggrieved employee" as the term is used in California's Private Attorneys General Act, Labor Code § 2698 *et seq.* ("PAGA"). The violations described below occurred during or in connection with his and other workers' employment with Defendant, and he has

September 14, 2018
PAGA Administrator
Charter Communications, LLC
Charter Communications, Inc.
Page 2 of 7

personal knowledge of such violations. On information and belief, the violations are ongoing. Accordingly, unless we are notified of an investigation by the Administrator within the period established by Section 2699.3, Soderstrom Law PC intends to commence and/or supplement existing claims in connection with a civil action brought against Defendant for the violations described herein and to seek all civil penalties available on behalf of the State.

## I.   LIABLE EMPLOYER

Defendant markets and sells various services, including television, Internet, and phone services, to consumers in California and nationwide. As Employee's employer, Defendant is liable for any and all violations of the Labor Code committed against Employee and all other aggrieved employees who performed work in California during the relevant time period and for the civil penalties provided for by the Labor Code.

## II.   AGGRIEVED EMPLOYEES

Employee is a resident of Redding, California. From September 2017 to March 2018, Employee worked for Defendant in California. Employee worked with many other employees during his employment, and his experience gave him a thorough understanding of Defendant's employment policies and practices. As detailed below, Employee personally suffered from Defendant's Labor Code violations and witnessed and learned of the same and other violations committed against other of Defendant's employees in California.

## III.   KNOWN LABOR CODE VIOLATIONS

Defendant committed the following Labor Code violations against Employee and/or other employees who performed work for Defendant in California. Upon information and belief, Defendant continues to commit the same or substantially similar violations to this day.

### A.   Failure to Accurately Calculate and Pay Minimum Wages and Overtime Wages in Violation of Labor Code Sections 510, 1182.12, and 1197 and the Governing Industrial Wage Order

Under Labor Sections 1182.12 and 1197 as well as paragraph 4 of the governing Industrial Wage Order, an employer must pay an employee at least the minimum applicable wage, as set by the statutes and Department of Industrial Relations, for all hours that the employee has been suffered or permitted to work. Additionally, under Labor Code section 510 and paragraph 3 of the governing Industrial Wage Order, an employer must compensate an employee at the rate of no less than one and one-half times the employee's regular rate of pay for any work in excess of eight hours in one day, any work in excess of 40 hours in one work week, and the first eight hours worked on the seventh day of work in any one work week. Any work in excess of 12 hours in one day and any work in excess of eight hours on any seventh day of a workweek must be compensated at a rate no less than twice the employee's regular rate of pay.

September 14, 2018
PAGA Administrator
Charter Communications, LLC
Charter Communications, Inc.
Page 3 of 7

As a matter of policy and practice, Defendant failed to pay Employee and other employees the required minimum and overtime wages for all hours worked. Specifically, but without limitation, Defendant regularly required employees during training to work a full day and then complete homework after the work day ended. The training and homework combined required employees to work more than 8 hours in a day, but Defendant did not keep track of or pay employees all wages owed for the time worked over 8 hours in a day or 40 hours in a week during training. Defendant further failed to properly keep track of all hours worked outside of training weeks and failed to pay employees all wages owed for the time worked over 8 hours in a day or 40 hours in a week.

As a result of these policies and practices, Defendant does not pay its training employees and post-training employees all of the minimum and overtime wages they are due, does not maintain complete records of all time worked, and does not provide accurate wage statements.

Defendant's violations of Labor Code Sections 510, 1182.12, and 1197 and paragraphs 3 and 4 of the governing Wage Order have aggrieved Employee and other similarly situated employees in California.

**B.    Failure to Provide Uninterrupted Meal Periods and Rest Breaks and Failure to Pay Premium Wages in Violation of Labor Code Sections 226.7, 512(a), and the Governing Industrial Wage Order**

Under Labor Code section 512(a) and paragraph 11 of the governing Industrial Wage Order, an employer may not require its employees to work more than five hours per day without providing an off-duty, uninterrupted meal period of not less than 30 minutes, and it may not require its employees to work more than 10 hours a day without providing a second 30-minute meal period. A meal period must begin no later than the end of the fifth hour of work. And under Labor Code section 226.7 and paragraph 11 of the governing Wage Order, if the employer does not provide these required meal breaks, the employer must pay the employee an additional hour of pay for each workday that the meal period is not provided.

Additionally, under paragraph 12 of the governing Industrial Wage Order, an employer must permit its employees to take 10 minutes of rest for every four hours worked or major fraction thereof, taken in the middle of the work period unless impracticable. And under Labor Code section 226.7 and paragraph 12 of the governing Wage Order, if the employer does not provide the required rest breaks, the employer must pay the employee an additional hour of pay for each workday that a rest period is not provided.

Defendant fails to provide timely, off-duty, uninterrupted 30-minute meal periods to nonexempt employees like Employee and fails to compensate them one additional hour of pay for each meal period that is missed, shortened, interrupted, on-duty, or untimely. Defendant does not require or allow Employee and other nonexempt employees to clock-out and clock-in for each meal period and accurately record the existence and length of each meal period taken, and

September 14, 2018
PAGA Administrator
Charter Communications, LLC
Charter Communications, Inc.
Page 4 of 7

knowingly suffers, permits, or requires work to be performed during what should be a meal period.
Defendant fails to provide compliant meal periods and rest breaks both during training weeks and
after training weeks.

Defendants' violations of Labor Code Sections 512 and 226.7, and paragraphs 11 and 12
of the governing Wage Order have aggrieved Employee and other similarly situated employees.

### C.    Unlawful Commission Deductions in Violation of Labor Code Sections 221, 223, 224, and 2751

California Labor Code sections 221, 223, and 224 protect employees against unlawful
deductions of their earned wages. Under Section 221, "It shall be unlawful for any employer to
collect or receive from an employee any part of wages theretofore paid by said employer to said
employee." Relatedly, under Section 223, "Where any statute or contract requires an employer to
maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while
purporting to pay the wage designated by statute or by contract." Section 224 authorizes certain
deductions that an employee "expressly authorize[s] in writing," but forbids deductions that
amount to a "rebate or deduction from the standard wage . . . pursuant to wage agreement or
statute." Additionally, under California Labor Code section 2751, when an employer enters into a
contract of employment and the contemplated payment method includes commissions, the contract
must "set forth the method by which the commissions shall be computed and paid."

Defendant recruits and incentivize sales employees like Employee by emphasizing their
ability to earn commissions. However, Defendant imposes unlawful and unfair incentive
compensation terms and then fails to pay all amounts owed under such terms. The terms result in
Defendant unlawfully and unfairly keeping, failing to pay, and/or deducting Employee's and other
employees' commission wages.

Defendant also fails to perform all of its obligations under the terms and unfairly construes
the terms and modifies the terms in its favor.

Defendant has not paid Employee and similarly situated employees all of the commission
wages they are owed, and has unlawfully and unfairly deducted, reconciled, or clawed back
commission wages that were properly earned.

Defendant violated Sections 221, 223, and 224 each time it failed to correctly and fairly
calculate and pay earned commission and each time it has deducted, clawed back, or otherwise
reconciled Employee's and other employees' incentive compensation. Defendant further relied on
methods for the computation and payment of commissions that are not set forth in the applicable
terms in violation of Section 2751. Defendant's violations of Labor Code Sections 221, 223, 224,
and 2751 have aggrieved Employee and similarly situated employees.

///

September 14, 2018
PAGA Administrator
Charter Communications, LLC
Charter Communications, Inc.
Page 5 of 7

     **D.**     **Willful Failure to Pay All Wages Earned Upon An Employee's Termination or Quitting and Failure to Pay Penalty Wages in Violation of Labor Code Sections 201, 202, and 203**

Under Labor Code sections 201 and 202, an employer must pay an employee all unpaid wages immediately upon that employee's termination or within 72 hours if the employee has quit without providing advanced notice. And under Labor Code section 203, if an employer willfully fails to comply with Sections 201 or 202, the employee is entitled to continued wages up to 30 days from the date the unpaid wages were originally due to when they were actually paid.

Defendant fails to timely and accurately pay Employee and other employees who are terminated or quit all due but unpaid wages, and Defendant does not pay any wages as waiting time penalties. As discussed above, Defendant does not accurately record all hours worked and all meal period and rest breaks taken late, missed, shortened, or interrupted, and Defendant does not pay premium wages when a compliant meal period or rest break is not provided. Nor does Defendant pay all incentive compensation that is earned and payable. Consequently, when Defendant paid Employee and other former employees' final paychecks, they were all miscalculated and too small.

Defendant's violations of Labor Code section 201 and 202 have aggrieved Employee and other former employees who were terminated or quit. Defendant's failure to pay penalty wages under Labor Code section 203 has further aggrieved Employee and other former employees.

     **E.**     **Failure to Pay All Wages Earned at Least Twice During Each Calendar Month in Violation of Labor Code Section 204**

Under Labor Code section 204, an employer must pay all wages earned by any employee, other than those mentioned in Sections 201, 201.3, 202, 204.1, or 204.2, twice during each calendar month, on days designated in advance by the employer as the regular paydays.

Defendant's failures described above—including the failure to pay all minimum and overtime wages due, the failure to pay premium wages in lieu of compliant meal periods and rest breaks, and the failure to properly calculate and pay all commission wages—caused it also to fail to pay all wages earned by Employee and similarly situated employees at least twice monthly.

Defendant's violations of Labor Code section 204 have aggrieved Employee and other similarly situated employees because they were not timely or accurately paid all wages earned at least twice each month.

///

///

///

September 14, 2018
PAGA Administrator
Charter Communications, LLC
Charter Communications, Inc.
Page 6 of 7

**F.      Failure to Maintain Accurate Records and Wage Statements in Violation of Labor Code Sections 226 and 1174(d) and the Governing Industrial Wage Order**

Under Labor Code section 1174(d), an employer must maintain at least three years of accurate payroll records reflecting each employee's hours worked daily and the wages paid to them. And under paragraph 7 of the governing Industrial Wage Order, these records must also show the employee's rate of pay, when each work period began and ended, and when meal periods and split shift intervals occurred.

Labor Code section 226 and paragraph 7 of the governing Wage Order further require an employer to provide its employees with accurate, semi-monthly itemized wage statements that reflect the employee's gross and net wages earned, total hours worked, all deductions, the inclusive dates of the pay period, and all applicable hourly rates.

As explained above, Defendant failed to keep accurate records reflecting Employee's and other employees' hours worked and when meal periods occurred. Defendant also failed to provide accurate wages statements that reflected the total hours worked, all deductions, and all gross and net wages earned, including commission wages. Employee's wage statements never reflected any premium wage being paid for late, shortened, missed, or on-duty meal periods or rest breaks. Employee's final several wage statements also failed to accurately record the time worked, wages due, and inclusive dates of the applicable pay periods.

Defendant's willful violations of Labor Code sections 226 and 1174(d) and the governing Wage Order have aggrieved Employee and other similarly situated employees.

**G.      Failure to Timely Provide a Copy of Personnel Records Upon Request in Violation of Labor Code Sections 226, 432, and 1198.5**

Under Labor Code section 226(c), an employer must provide employees, within 21 calendar days from the date of a request, copies of the records required to be kept under section 226(a) (i.e., wage statements).

Under Labor Code section 432, an employer must provide employees a copy of any instrument that the employee signed related to his or her obtaining or holding of employment.

Under Labor Code section 1198.5, an employer must provide employees, within 30 days from the date of a request, copies of their personnel records.

In a letter dated June 5, 2018, Employee, through his counsel via a written and signed authorization, requested that Defendant provide copies of his personnel file, including all wage statements, instruments he signed or acknowledged concerning his employment, and other records

September 14, 2018
PAGA Administrator
Charter Communications, LLC
Charter Communications, Inc.
Page 7 of 7

concerning his obtaining and holding of employment, pursuant to Labor Code sections 226, 432, and 1198.5.

On July 3, 2018, counsel for Defendant responded to Employee's request in writing refusing to produce any records and took the position that (i) an email sent by Employee to a JAMS representative inquiring about the possibility of a mediation constituted "the pendency of [a] lawsuit in the court with original jurisdiction" during which time its obligations under Labor Code section 1198.5 ceases, and (ii) only an employee personally, not an employee's authorized legal representative, is entitled to request copies of records under Labor Code sections 226 and 432.

Defendant failed to produce any records under Labor Code sections 226, 432, and 1198.5 within the statutory time periods. On July 18, 2018, more than six weeks after Employee's written request, Defendant finally consented to producing such records to Employee's counsel. Defendant ultimately produced an incomplete set of Employee's records on September 4, 2018, 13 weeks after Employee's initial written request. Defendant failed to provide copies of any offer letter, all records related to Employee's performance and obtaining/holding employment, the employee handbook that governed Employee's employment, any signed copies or acknowledgements of such records.

Defendant's violation of Labor Code sections 226, 432, and 1198.5 has aggrieved Employee.

## IV.    CIVIL PENALTIES FOR LABOR CODE VIOLATIONS

Due to the above-described violations and similar violations that may be identified after further investigation or during discovery, Defendant is liable as an employer for specific or default civil penalties as provided by Labor Code section 2699 as well as Labor Code sections 201, 202, 203, 204, 210, 223, 225.5, 226, 226.3, 226.7, 256, 510, 512, 558, 558.1, 1174, 1174.5, 1182.12, 1194, 1194.2, 1197, 1197.1, 1197.5, 1198.5, and 1206.

Please contact me at 949.667.4700 or jamin@soderstromlawfirm.com if you would like to discuss this matter.

Very truly yours,

SODERSTROM LAW PC

Jamin S. Soderstrom

# EXHIBIT 14

1  MORGAN, LEWIS & BOCKIUS LLP
   KATHRYN T. MCGUIGAN (SBN 232112)
2  kathryn.mcguigan@morganlewis.com
   300 South Grand Avenue, 22nd Floor
3  Los Angeles, California 90071-3132
   Tel:    +1.213.612.2500
4  Fax:    +1.213.612.2501

5  MORGAN, LEWIS & BOCKIUS LLP
   ZACHARY W. SHINE (SBN 271522)
6  zachary.shine@morganlewis.com
   One Market, Spear Street Tower
7  San Francisco, CA  94105-1596
   Tel:       +1.415.442.1000
8  Fax:       +1.415.442.1001

9  Attorneys for Respondents
   CHARTER COMMUNICATIONS, LLC AND
10 CHARTER COMMUNICATIONS, INC.

11                          JAMS ARBITRATION

12

13 LIONEL HARPER,                              Case No. 1100104486

14              Claimant,
                                               **CHARTER'S RESPONSE TO**
15      vs.                                    **CLAIMANT'S MOTION FOR**
                                               **THRESHOLD RULINGS REGARDING**
16 CHARTER COMMUNICATIONS, LLC,                **ARBITRABILITY**
   CHARTER COMMUNICATIONS, INC., and
17 DOES 1 to 25,                               Date:    March 26, 2019
                                               Time:    12:30 p.m.
18              Respondents.
                                               Arbitrator:  Hon. Rebecca Westerfield
19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

                                   1

# I.   **INTRODUCTION**

There is a strong presumption in favor of arbitration.  *Cione v. Foresters Equity Servs., Inc.,*

58 Cal. App. 4th 625, 642 (1997) ("a heavy presumption weighs the scales in favor of arbitrability").

Under both California and federal law, any doubts about arbitrability "should be resolved in favor of

arbitration."  *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009) ("an order

to arbitrate the particular grievance should not be denied unless it may be said with positive assurance

that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

Doubts should be resolved in favor of coverage."); *see also*, *Three Valleys Mun. Water Dist. v. E.F.*

*Hutton & Co.*, 925 F.2d 1136, 1139 (9th Cir.1991) ("Under the Federal Arbitration Act ... any doubts

concerning the scope of arbitrable issues should be resolved in favor of arbitration ....")

Here, claimant Lionel Harper ("Claimant") agrees that when he was hired by Charter (Charter

Communications, LLC and Charter Communications, Inc. are collectively referred to as "Charter") he

entered into a Mutual Agreement to Arbitrate "any and all claims, disputes, and/or controversies

between you and Charter arising from or related to your employment with Charter."  Claimant's

Demand for Arbitration ("Demand"), ¶ 1; Claimant's Motion for Threshold Rulings as to

Inarbitrability ("Claimant's Motion"), pp. 1-2; Mutual Agreement to Arbitrate ("Agreement" or

"Arbitration Agreement"), attached as Exhibit 1 to Claimant's Motion.  As an acknowledgment of the

validity of the Arbitration Agreement, on November 19, 2018, Claimant voluntarily brought this

action in arbitration before JAMS.  *See* Demand.  Claimant's Demand alleges Charter violated the

California Labor Code by, among other things, failing to provide him meal and rest periods, failing to

pay him commissions and regular and overtime wages, and failing to pay all wages owed upon

termination.  Claimant also alleges a single cause of action for "civil penalties" under California's

Private Attorneys General Act ("PAGA").  Yet, while acknowledging the validity of the Agreement,

Claimant simultaneously seeks a "threshold ruling" from the Arbitrator that "the entire Arbitration

Agreement is 'null and void' by its own terms based on the unenforceable waiver of the right to bring

any form of representative claim and the unenforceable waiver of the right to seek public injunctive

relief in any forum."  Demand, ¶ 10.

Claimant's argument regarding inarbitrability is based on his misguided interpretation of the

non-severability clause in the Arbitration Agreement which he claims allows him to evade arbitration of *all claims*, including his nine individual causes of action, as well as his representative PAGA claim, if any portion of the representative, collective and class action waiver is found invalid or unenforceable. But that reading is wrong. Rather, the straightforward meaning of the sentence at issue is, if an employee brings a representative, collective or class action claim, and the waiver is found to be invalid or unenforceable, then no part of the arbitration provision applies to *that claim* – i.e., the arbitration provision is "null and void" in its "entirety" only as to the representative, collective or class action claim. In articulating his self-serving reading of this provision, Claimant completely ignores the plain purpose of this provision, which is to ensure Charter would not be forced into a class or representative arbitration.

It is readily apparent Claimant's inclusion of a specious claim for "civil penalties" under PAGA, while knowing full well a PAGA claim cannot be arbitrated since the Agreement does not allow representative actions and California law does not allow arbitration of PAGA claims, is nothing more than a thinly veiled attempt by Claimant to evade arbitration. A closer reading of Claimant's Demand reveals nine of the ten causes of action are simply *individual* wage claims. Moreover, his PAGA claim in reality seeks nearly all *non*-PAGA remedies in the form of premium pay for alleged missed meal and rest periods pursuant to Labor Code section 226.7, actual damages for unpaid regular and overtime compensation and commissions, Labor Code section 203 waiting time penalties, unlawful deductions, statutory damages for failure to timely provide copies of his employment records, and statutory damages pursuant to Labor Code section 558. These claims for individual non-PAGA relief must be arbitrated. Moreover, even if Claimant does allege limited claims for "civil penalties" under PAGA on a representative basis, the proper course of action is to enforce the Arbitration Agreement as to the non-PAGA claims, and sever or dismiss the PAGA claims, rather than invalidate the entire Arbitration Agreement.

Claimant's secondary argument that the Agreement is rendered "void" because Claimant has somehow waived his right to seek "public injunctive relief in any forum" is also fatally flawed. First, Claimant does not seek public injunctive relief, but rather injunctive relief related to his Labor Code claims, which numerous courts have found does not constitute public injunctive relief. Moreover,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 36080105.1

- 3 -

CHARTER'S RESPONSE TO CLAIMANT'S MOTION FOR THRESHOLD RULINGS

1  even if he did seek public injunctive relief, which he does not, the Arbitration Agreement expressly

2  allows him to bring a claim for injunctive relief in arbitration.

3        Since Claimant's action is overwhelmingly one for individual relief, as opposed to a

4  representative action for civil penalties under PAGA, and the representative, collective and class

5  action waiver is otherwise valid and enforceable, Respondents respectfully request that the Arbitrator

6  reject Claimant's transparent attempt to evade arbitration, and order arbitration of his individual and

7  non-PAGA claims pursuant to the Arbitration Agreement and the strong presumption in favor of

8  arbitration. Since PAGA claims are not arbitrable, Charter also requests that the Arbitrator dismiss or

9  sever Claimant's PAGA claims.

10  **I.**       **FACTUAL AND PROCEDURAL BACKGROUND**

11        **A.**       **Claimant Expressly Agreed To Arbitrate All Employment-Related Disputes.**

12        Claimant rightfully acknowledges he agreed to arbitrate "any and all claims, disputes, and/or

13  controversies between [Claimant] and Charter arising from or related to [his] employment with

14  Charter…" Claimant's Motion, pp. 1-2; Demand, ¶¶ 1-4. The Arbitration Agreement includes a

15  representative, collective, and class action waiver, by which Claimant acknowledged he waived "any

16  rights that [Claimant] or Charter may have to bring or participate in an action against each other on a

17  representative, class, or collective basis…" Arbitration Agreement, ¶ 4. The Agreement also

18  includes a severability provision stating:

19        You and Charter agree that if the Agreement or any clause or term of the Agreement is

20  found to be void, unenforceable, or unconscionable, the remainder of the Agreement
      shall be enforced without the invalid, unenforceable, or unconscionable clause or term,

21  or the application of the clause or term shall be limited as to avoid any invalid,
      unenforceable, or unconscionable result. The only exception to this severability

22  provision is, should the dispute involve a representative, collective or class action claim,
      and the REPRESENTATIVE, COLLECTIVE, AND CLASS ACTION WAIVER is

23  found to be invalid or unenforceable for any reason, then this entire Agreement (except
      for the parties' agreement to waive a jury trial) shall be null and void and the dispute

24  will not be arbitrable.

25  *Id.* at ¶ 6. By its terms, the Agreement is governed by the Federal Arbitration Act, 9 U.S.C. §1 et seq

26  ("FAA"). *Id.* at ¶ 1.

27  ///

28  ///

- 4 -

CHARTER'S RESPONSE TO CLAIMANT'S MOTION FOR THRESHOLD RULINGS

### B.     Claimant Voluntarily Submitted His Claims to Arbitration.

On November 19, 2018, acknowledging that he was bound to arbitrate his claims against Charter, Claimant filed a demand for arbitration asserting the following individual claims: (1) failure to pay minimum wages for all hours worked, (2) failure to pay overtime wages for all overtime hours worked, (3) failure to provide meal periods or pay premium wages in lieu thereof, (4) failure to provide rest breaks or pay premium wages in lieu thereof, (5) unlawful deduction of wages under section 221, (6) failure to provide accurate wage statements, (7) failure to pay all wages owed upon termination, (8) failure to provide timely and complete copies of employment records, and (9) violation of California's unfair competition law.  Demand, ¶¶ 16-66.  Claimant also makes a separate claim for "civil penalties" under PAGA.  *Id.* at ¶¶ 67-71.

### C.     Claimant Now Refuses To Arbitrate His Claims.

While he voluntarily submitted his claims to arbitration and acknowledges the validity of the Arbitration Agreement, Claimant now requests that the Arbitrator rule on the threshold issue of whether his action is arbitrable.  Claimant's Motion.  Specifically, he argues, "the entire Arbitration Agreement is 'null and void' by its own terms based on the unenforceable waiver of the right to bring any form of representative claim and the unenforceable waiver of the right to seek public injunctive relief in any forum."  Demand, ¶ 10.  Claimant must not be allowed to evade his express agreement to arbitrate his individual employment-related claims.

## II.     LEGAL ARGUMENT

The FAA establishes the validity and enforceability of written agreements to arbitrate disputes.[1]  An arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The Supreme

---

[1] California also has a "strong public policy in favor of arbitration," embodied in the California Arbitration Act ("CAA").  Cal. Code Civ. Proc. § 1280 *et seq.*; *see also*, *Broughton v. Cigna Healthplans of Cal.*, 21 Cal. 4th 1066, 1074-75 (1999).  The CAA provides that pre-dispute arbitration agreements between employers and employees are enforceable.  Cal. Code Civ. Proc. § 1280(a) (stating that agreements to arbitrate include "agreements between employers and employees or between [his or] her respective representatives").  Any doubts as to the scope of arbitrable issues should be resolved in favor of arbitration.  *See Ruiz v. Sysco Food Services*, 122 Cal. App. 4th 520, 538 (2004).  As a result, "a heavy presumption weighs the scales in favor of arbitrability."  *Cione v. Foresters Equity Servs., Inc.,* 58 Cal. App. 4th 625, 642 (1997).

1  Court stated the FAA espouses a general policy favoring arbitration agreements. *AT&T Mobility v.*

2  *Concepcion*, 563 U.S. 333, 339 (2011). In passing the FAA, Congress meant to exercise its power

3  under the Commerce Clause to the fullest limits. *Allied-Bruce Terminix Companies, Inc. v. Dobson*,

4  513 U.S. 265, 273-74, 277 (1995). Courts are directed to resolve any "ambiguities as to the scope of

5  the arbitration clause itself … in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. Of Leland*

6  *Stanford Jr. Univ.*, 489 U.S. 468, 476-77 (1989).

7         Courts have consistently held employment arbitration agreements are governed by the FAA.

8  *See Epic Systems Corp. v. Lewis*, 2018 WL 2292444 *5 (U.S. May 21, 2018); *Armendariz v. Found.*

9  *Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 98 (2000). A valid and enforceable agreement

10  requiring resolution of employment-related disputes through arbitration precludes the employee's

11  right to pursue claims in a judicial context. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20

12  (1991) ("having made the bargain to arbitrate, the parties should be held to it unless Congress itself

13  has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue."

14  *Id.* at 26 (citations omitted). The "liberal federal policy" favoring arbitration, and consequent

15  limitation on obstacles to the enforceability of arbitration agreements was re-emphasized by the

16  United States Supreme Court in *Epic Systems*, including that Congress "specifically directed [courts]

17  to respect and enforce the parties' chosen arbitration procedures" and that the FAA "requires courts

18  'rigorously' to 'enforce arbitration agreements according to their terms, including terms that

19  specify… *the rules* under which that arbitration will be conducted." *Epic Systems*, 2018 WL

20  2292444, at *5-6.

21         In *AT&T Mobility LLC v. Concepcion*, the Supreme Court also held that no court may treat

22  arbitration agreements differently than other contracts, and that courts may not invalidate an

23  arbitration agreement based on defenses or legal rules that apply uniquely to arbitration agreements.

24  563 U.S. 333, 339 (2011); *see also, e.g., Richards v. Ernst & Young, LLP*, 734 F.3d 871, 874 (9th Cir.

25  2013) ("[T]he Supreme Court recently has reiterated that 'courts must rigorously enforce arbitration

26  agreements according to their terms' …"). These holdings unambiguously confirm the FAA

27  preempts state law rules that "derive their meaning from the fact that an agreement to arbitrate is at

28  issue." *Id., see also, Esparza v. KS Industries, L.P.*, 13 Cal. App. 5th 1228, 1234 (2017) ("If the act

1  requires a claim to be arbitrated, a contrary rule of state law must give way because of federal

2  preemption").

3       Here, Claimant does not dispute the Agreement is a valid written agreement to arbitrate all

4  claims arising out of or related to his employment with Charter.  Because the explicit and

5  unambiguous language of the Agreement shows Claimant's claims in this action are covered under

6  the Agreement, Claimant must arbitrate his claims against Respondents.

7
   **A.    Claimant Cannot Evade Arbitration By Styling His Suit to Recover Damages on
8         an Individual Basis as a "PAGA Action."**

9       Claimant cannot evade arbitration by tacking on a claim for PAGA "civil penalties" and then

10  claiming the Agreement's representative, collective and class action waiver is unenforceable.

11  Claimant relies solely on *Iskanian* for this misguided premise.  But the *Iskanian* holding is narrow – it

12  bars only a "predispute waiver of an employee's right to bring an action that can only be brought by

13  the state or its representatives, where any resulting judgment is binding on the state and any monetary

14  penalties largely go to state coffers."  *Id.* at 388.  It does <u>not</u> apply to a private dispute between an

15  employee and an employer where the employee seeks statutory damages that go directly to the

16  employee.  The California Supreme Court made a clear distinction between "civil penalties recovered

17  on behalf of the state under the PAGA," and "statutory damages to which employees may be entitled

18  in their individual capacities," and explained a party to an arbitration agreement with a representative

19  and class action waiver cannot "bring a suit for the individual damages claims of [other] employees.

20  This pursuit of victim-specific relief by a party to an arbitration agreement would be tantamount to a

21  private class action…. Under *Concepcion*, such an action could not be maintained in the face of a

22  class waiver."  *Iskanian*, 59 Cal. 4th at 380, 387-88.

23       In *Esparza v. KS Industries, L.P.*, the California Court of Appeal recently recognized the

24  narrowness of the holding in *Iskanian* when it held a claim for unpaid wages and statutory damages,

25  although styled as a PAGA action, was subject to arbitration because it was not actually a PAGA

26  representative claim but, rather, a private dispute between an employee and an employer.  *Id.* at 1246.

27  The *Esparza* court observed that in *Iskanian*, the Supreme Court recognized the distinction between

28  civil penalties (a public dispute) and statutory damages (a private dispute): "The civil penalties

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Los Angeles

- 7 -

recovered on behalf of the state under the PAGA are distinct from the statutory damages to which employees may be entitled in their individual capacities." *Id.* at 1242. The court explained "[t]he dispute over wages is a private dispute because, among other things, it could be pursued by Employee in his own right." *Id.* at 1246. The court also recognized "that private disputes can overlap with the claims that could be pursued by state labor law enforcement agencies. When there is overlap, the claims retain their private nature and continue to be covered by the Federal Arbitration Act. To hold otherwise would allow a rule of state law to erode or restrict the scope of the Federal Arbitration Act – a result that cannot withstand scrutiny under federal preemption doctrine." *Id.* As such, the *Esparza* court found "preventing arbitration of a claim for unpaid wages would interfere with the Federal Arbitration Act's goal of promoting arbitration as a forum for private dispute resolution." *Id.*, *citing Iskanian*, 59 Cal. 4th at 389.[2]

In *Mandviwala v. Five Star Quality Care, Inc.*, 2018 WL 671138 at *2 (9th Cir. Feb. 2, 2018) (unpublished), the Ninth Circuit attempted to "determine how the California Supreme Court might decide the issue," and found *Esparza* to be "consistent with the ruling of *Iskanian*." *Id.* The Ninth Circuit explained the employee's "claims for unpaid wages under California Labor Code § 558 are subject to arbitration" since "[r]ecovery of unpaid wages is a private dispute, particularly because it could be pursued individually by the employee (citation omitted) [and] *Iskanian* is limited to claims 'that can only be brought by the state or its representatives, where any resulting judgment is binding on the state and any monetary penalties largely go to state coffers.'" *Id.*

Here, Claimant simply has a private dispute with his former employer. He expressly brings these claims "on an individual basis" (Claimant's Demand, p. 4) and seeks relief that goes far beyond civil penalties under PAGA. In particular, he seeks the following individual, non-PAGA, relief:

---

[2] Claimant may cite *Lawson v. ZB, N.A.*, 18 Cal. App. 5th 705 (2017), which held claims for unpaid wages under Labor Code section 558 sought in a PAGA action are not subject to arbitration. But any such argument must be rejected as the California Supreme Court has granted review of *Lawson*, and, "[p]ending review and filing of the Supreme Court's opinion, unless otherwise ordered by the Supreme Court under (3), a published opinion of a Court of Appeal in the matter has no binding or precedential effect, and may be cited for potentially persuasive value only." Cal. Rule of Court 8.1115(e)(1); *see also*, Cal. Rule of Court 8.1115(e)(1) (comment discussing Subdivision (e)(1)) ("when a decision that is pending review conflicts with another published Court of Appeal decision that is not under review, only that other published decision will continue to have binding or precedential effect on the superior court").

1  •  "Claimant was deprived of the minimum wages he was owed as a direct result of

2  Respondents' unlawful actions." (Demand, ¶¶ 22, 69(a))

3  •  "Claimant was deprived of the overtime wages he was owed for all hours worked as a

4  result of Respondents' unlawful actions." (Demand, ¶¶ 26, 69(a))

5  •  "Respondents never paid Claimant any premium wages for meal periods that were

6  untimely or that were missed, shortened, interrupted, or on-duty." (Demand, ¶¶ 30, 69(b))

7  •  "Respondents never paid Claimant any premium wages for rest periods that were

8  untimely or that were missed, shortened, interrupted, or on-duty." (Demand, ¶¶ 35, 69(b))

9  •  "Respondents have violated Labor Code sections 221, 223, 224, and 2751, and

10  Claimant is entitled to recover the amount of deductions unlawfully taken, interest, costs, and

11  reasonable attorneys' fees." (Demand, ¶ 43)

12  •  "Claimant is entitled to recover the greater of his actual damages or *statutory*

13  penalties, costs, and reasonable attorneys' fees" (emphasis added) for Respondents' alleged failure to

14  provide accurate wages statements. (Demand, ¶¶ 48, 69(f))

15  •  "Claimant is entitled to recover waiting time penalties, costs, and reasonable attorneys'

16  fees" for Respondents alleged failure to pay all wages owed upon termination. (Demand, ¶¶ 52,

17  69(d))

18  •  "Claimant is entitled to recover a $750 *statutory* penalty, costs, and reasonable

19  attorneys' fees for violation of Section 226 and another $750 *statutory* penalty, costs, and reasonable

20  attorneys' fees for violation of Section 1198.5. Claimant is also entitled to injunctive relief to require

21  Respondents' future compliance with Sections 226 and 1198.5." (emphasis added) (Demand, ¶¶ 57,

22  69(g))

23  •  Claimant expressly seeks relief under Labor Code section 558, pursuant to which any

24  unpaid wages recovered are paid to the effective employee, rather than to the LWDA. (Demand, ¶

25  70; LWDA Letter); *Esparza*, 13 Cal. App. 5th at 1242 ("Although the statue refers to the amount 'as

26  a penalty,' it does not constitute a 'civil penalty' as that term is used in *Iskanian* because it is payable

27  to employees and not a state agency").

28

1    Although, in his Prayer for Relief, Claimant alleges he is seeking "civil penalties" under

2   PAGA, he also expressly seeks *an award of statutory penalties*, an award of all unpaid or underpaid

3   wages, with interest, an award of actual and liquidated damages and "such additional and further

4   relief as the arbitrator may deem just and proper." (Demand, ¶¶ E, H)  He also seeks pre-judgement

5   interest, which is only available when a Claimant recovers damages, and cannot be awarded on

6   PAGA penalties.[3]

7          This is no mere PAGA action.  It is a suit to recover victim-specific damages and interest on

8   an individual basis and an attempt to make an end run around arbitration by styling it a "PAGA

9   action."  *See Esparza*, 13 Cal. App. 5th at 1245 ("In *Iskanian*, our Supreme Court clearly expressed

10  the need to avoid semantics and analyze substance in determining the scope of representative claims

11  that could be pursued outside arbitration without violating the Federal Arbitration Act").  As such, the

12  representative, collection and class action waiver in the Agreement should be enforced, and Plaintiff's

13  individual, non-PAGA claims should be compelled to arbitration pursuant to **the terms of the**

14  Agreement.

15          **B.    Any Non-Arbitrable Claims May Be Severed.**

16          Even if Claimant's Demand includes proper representative claims for civil penalties under the

17  PAGA, Plaintiff's individual claims remain arbitrable and do not void the entire Arbitration

18  Agreement.  When a plaintiff asserts arbitrable and non-arbitrable claims, the arbitrable claims must

19  be severed and sent to arbitration.  *KPMG LLP v. Cocchi*, 565 U.S. 18, 22 (2011); *Levin v. Caviar,*

20  *Inc.*, 146 F. Supp. 3d 1146, 1159 (N.D. Cal. 2015) (severing PAGA waiver where "the sole

21  substantively unconscionable element of the [agreement] is the PAGA…"); *Murphy v. HRB Green*

22  *Res., LLC*, 2016 WL 11527027 at *7 (N.D. Cal. Oct. 14, 2016) ("where the Arbitration Agreement is

23

---

24  [3] Prejudgment interest can only be recovered on a readily ascertainable amount to which a party <u>holds an interest</u>.  Civ.
     Code § 3287(a) (prejudgment interest may be recovered when "a person...is entitled to recover *damages* certain....")

25  (emphasis added).  A putative PAGA representative, and allegedly aggrieved employees under PAGA, however, do not
     own an assignable interest in the penalty amount and, therefore, prejudgment interest is not available.  *See, e.g.,*

26  *Amalgamated Transit Union*, 46 Cal. 4th 993, 1003 (2009) (explaining that PAGA "does not create property rights or any
     other substantive rights."); *Villacres v. AMB Industries Inc.*, 189 Cal. App. 4th 562, 579 (2010) ("The PAGA is limited to

27  the recovery of *civil* penalties.") (emphasis in original); *Thomas v. Aetna Health of California*, 2011 WL 2173715, at *17-
     18 (E.D. Cal. Jun. 2, 2011) ("Private PAGA Claimants' interests are only tangential and derivative of the LWDA; PAGA

28  was not designed to compensate employees nor can the penalties recovered be considered 'damages' in a compensatory
     sense.").

1    not permeated by unconscionability, and the PAGA claims overlap with the issues to be decided by

2    the arbitrator, severing the PAGA waiver and staying the PAGA claims is the proper course of

3    action").

4        Claimant does not deny this general rule, but resists its application on the basis of his

5    misguided interpretation of the non-severability clause in the Arbitration Agreement.  The Agreement

6    provides, in paragraph 6:

> You and Charter agree that if the Agreement or any clause or term of the Agreement is
> found to be void, unenforceable, or unconscionable, the remainder of the Agreement
> shall be enforced without the invalid, unenforceable, or unconscionable clause or term,
> or the application of the clause or term shall be limited as to avoid any invalid,
> unenforceable, or unconscionable result.  The only exception to this severability
> provision is, should the dispute involve a representative, collective or class action claim,
> and the REPRESENTATIVE, COLLECTIVE, AND CLASS ACTION WAIVER is
> found to be invalid or unenforceable for any reason, then this entire Agreement (except
> for the parties' agreement to waive a jury trial) shall be null and void and the dispute
> will not be arbitrable.

13       Claimant asserts the last sentence of this provision allows him to evade arbitration of *all*

14   *claims*, including his nine individual causes of action, as well as his representative PAGA claim, if

15   any portion of the representative, collective and class action waiver is found invalid or unenforceable.

16   But that reading is incorrect.  Rather, the straightforward meaning of the sentence is, if an employee

17   brings a representative, collective or class action claim, and the waiver is found to be invalid or

18   unenforceable, then no part of the arbitration provision applies to *that claim* – i.e., the arbitration

19   provision is "null and void" in its "entirety" only as to the representative, collective or class action

20   claim.

21       Claimant's reading completely ignores the plain purpose of this provision, which is to ensure

22   that Charter would not be forced into a class or representative arbitration – a real risk before

23   *Concepcion*.  That purpose would not be served by construing this provision to render Charter's

24   arbitration agreement null and void as to *all of an employee's claims* if a court or arbitrator declared

25   the class waiver unenforceable with respect to just one claim or one remedy.  In *Franco v. Arakelian*

26   *Enterprises, Inc.*, 234 Cal. App. 4th 947, 965 (2015), the California Court of Appeal rejected the

27   argument that an arbitration agreement should be declared unenforceable in its entirety because it

28   waived representative PAGA claims.  The court noted that by compelling individual arbitration, the

CHARTER'S RESPONSE TO CLAIMANT'S MOTION FOR THRESHOLD RULINGS

1  plaintiff "is prevented from gaining undeserved relief from his agreement to arbitrate his individual

2  claims, while [the defendant] is prevented from the undeserved detriment of having its entire

3  agreement voided due to its inclusion of a provision respecting only certain claims." *Id.*

4          The FAA also requires rejecting plaintiffs' nonsensical interpretation. Because there is a

5  reading of this provision that would allow for severing a non-arbitrable claim to allow it to proceed in

6  court – with all other claims sent to arbitration – this provision must be interpreted that way. The

7  Supreme Court has held that when "the problem at hand is the construction of the contract language,"

8  "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in

9  favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25

10 (1983). In other words, an order compelling arbitration "should not be denied unless it may be said

11 with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the

12 asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

13 Claimant's reliance on the state law canon that ambiguities should be resolved against the drafter

14 (Claimant's Motion, pp. 8-9) is inapposite here. When "the federal policy favoring arbitration is in

15 tension with the tenet of *contra proferentem* for adhesion contracts, the federal policy favoring

16 arbitration trumps the state contract law tenet." *Kristian v. Comcast Corp.*, 446 F.3d 25, 35 (1st Cir.

17 2006); *Chan v. Drexel Burnham Lambert, Inc.*, 178 Cal. App. 3d 632, 639 (Ct. App. 1986)

18 ("ambiguities in an arbitration clause are to be resolved in favor of arbitration, notwithstanding the

19 California rule that a contract is construed most strongly against the drafter"). Here, rather than void

20 the Arbitration Agreement as to all of Claimant's claims, the only proper reading of this provision is

21 to find the Agreement is "null and void" only as to Claimant's PAGA representative claim, and sever

22 that claim.

23      **C.      Claimant May Be Compelled to Arbitrate His Claims In His Individual Capacity.**

24          While citing *absolutely no authority* to back up his baseless assertion, Claimant curiously also

25 claims that because he may only bring his claims in his "individual capacity," for this reason alone,

26 the waiver provision in the Agreement is invalid and unenforceable under California Law.

27 Claimant's Motion, p. 6. But representative, collective and class action waivers, like the one

28 contained in the Agreement, are absolutely enforceable under California and federal law, as

1  interpreted by the United States Supreme Court. *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal.

2  4th 348 (2014); *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228 (2013); *Concepcion, supra*,

3  563 U.S. 333 (2011).  Most recently, in *Epic Systems*, the Supreme Court definitively held arbitration

4  agreements providing for individualized proceedings must be enforced as written.  *Id.* (holding that in

5  the Federal Arbitration Act, Congress instructed courts "to enforce arbitration agreements according

6  to their terms—including terms providing for individualized proceedings").

7          **D.     Claimant's UCL Claim Does Not Render the Agreement Unenforceable.**

8          Claimant argues the waiver provision in the Arbitration Agreement is also unenforceable

9  because Claimant has agreed to waive the right to seek "public injunctive relief" in any forum.

10  Claimant's Motion, pp. 6-8.  Claimant relies primarily on *McGill v. Citibank, N.A.*, 2 Cal. 5th 945

11  (2017) for the proposition that "any provision in a pre-dispute arbitration agreement that waives the

12  right to seek public injunctive relief" is unenforceable under California law.  Claimant's Motion. P. 7.

13  Determining whether an Arbitration Agreement prevents all adjudication of public injunctive relief in

14  any forum requires consideration of two issues.  *Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891, 900

15  (N.D. Cal. 2018).  First, the court considers whether plaintiff's complaint actually seeks public

16  injunctive relief under California law.  *Id.*  Second, if it does, the court considers whether the

17  Arbitration Agreement prevents plaintiff from adjudicating a claim for such relief in any forum.  *Id.*

18          **1.     Claimant Does Not Seek Public Injunctive Relief.**

19          "[P]ublic injunctive relief under the UCL ... is relief that has 'the primary purpose and

20  effect of' prohibiting unlawful acts that threaten future injury to the general public.  Relief that has

21  the primary purpose or effect of redressing or preventing injury to an individual plaintiff – or to a

22  group of individuals similarly situated to the plaintiff – does not constitute public injunctive relief."

23  *McGill*, 2 Cal. 5th at 955; *Magana*, 343 F. Supp. 3d at 900.  Moreover, the "subjective motivation

24  behind a party's purported public injunction suit" is not determinative.  *Kilgore v. KeyBank, Nat.*

25  *Ass'n*, 718 F.3d 1052, 1060 (9th Cir. 2013); *see also, Croucier v. Credit One Bank, N.A.*, 2018 WL

26  2836889 (S.D. Cal. June 11, 2018) (finding "*McGill* is inapplicable because Plaintiff is not seeking

27  public injunctive relief").

28

1    In *Magana*, the plaintiff employee sought injunctive relief against his former employer for his

2 California Labor Code claims. *Magana*, 343 F. Supp. 3d at 901. In finding the plaintiff did not assert

3 a claim for public injunctive relief, the court found, "[t]hose claims have the primary purpose and

4 effect of redressing and preventing harm to [the employer's] employees. Indeed, plaintiff's argument

5 makes clear that the injunctive relief he seeks would be entirely opposite of what *McGill* requires –

6 any benefit to the public would be derivate of and ancillary to the benefit to [the employer's]

7 employees [...]." *Id.*

8    Here, just like in *Magana*, Claimant only seeks injunctive relief for his California Labor Code

9 claims. Demand, ¶¶ 58-66 ("Respondents' failures described above – including their failures to pay

10 all minimum and overtime wages, provide compliant meal periods and rest breaks or pay premium

11 wages in lieu thereof, and provide complete and accurate wage statements, and their taking of

12 unlawful deductions and failure to provide timely copies of employment records – all constitute

13 unlawful acts and practices prohibited by the Labor Code and UCL."). Since this is simply "[r]elief

14 that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff – or

15 to a group of individuals similarly situated to the plaintiff," Claimant does not assert a claim for

16 public injunctive relief. His argument fails on this basis alone.

17
### 2. The Agreement Does Not Prevent Claimant From Adjudicating a Claim for Injunctive Relief In Any Forum.
18

19    Even if the Demand did seek public injunctive relief, which it does not, the Arbitration

20 Agreement does not prevent adjudication of public injunctive relief in any forum, because the

21 arbitrator may adjudicate a claim for such relief. Claimant argues the Arbitration Agreement has a

22 representative, class and collective action waiver provision which waives "any rights that [Claimant]

23 or Charter may have to bring or participate in an action against each other on a representative, class,

24 or collective basis." But, as the courts in both *McGill* and *Magana* held, a claim for public injunctive

25 relief is <u>not</u> a class, collective, or representative action. *See McGill*, 2 Cal. 5th at 959–61 (explaining

26 why an action seeking public injunctive relief is not a "representative action"); *Magana*, 343 F. Supp.

27 3d at 901. In *Magana*, the Arbitration Agreement provided that "[e]xcept as provided in the Class

28 Action Waiver, the Arbitrator may award all remedies to which a party is entitled under applicable

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

- 14 -

law and which would otherwise be available in a court of law[.]" *Id.* The court reasoned that "[t]herefore, Magana can seek public injunctive relief in arbitration under the terms of the agreement, so the agreement is enforceable under *McGill*." *Id.*, citing *McGill*, 2 Cal. 5th at 952. Similarly, here, the Agreement states "[t]his waiver does not take away or restrict your or Charter's right to pursue your or its own claims, but only requires that any such claims be pursued in your or Charter's own individual capacity…" Therefore, Claimant could seek public injunctive relief in arbitration under the terms of the agreement. The Agreement is enforceable for this reason as well.

## IV.  **CONCLUSION**

Since Claimant's action is primarily one for individual relief and the representative, collective and class action waiver is otherwise valid and enforceable, Respondents respectfully request that the Arbitrator order arbitration of Claimant's individual wage claims pursuant to the terms of the Arbitration Agreement. To the extent Claimant alleges representative claims under PAGA, those claims must be severed or dismissed.

Dated:    March 15, 2019                    MORGAN, LEWIS & BOCKIUS LLP


By_____
    KATHRYN T. MCGUIGAN
    ZACHARY W. SHINE
    Attorneys for Respondents
    CHARTER COMMUNICATIONS, LLC,
    CHARTER COMMUNICATIONS, INC.

DB2/ 36080105.1 CHARTER'S RESPONSE TO CLAIMANT'S MOTION FOR THRESHOLD RULINGS

# EXHIBIT 15

**IN THE MATTER OF JAMS ARBITRATION OF**

| | |
|---|---|
| **LIONEL HARPER,** | **Case No. 1100104486** |
| **Claimant,** | **Arbitrator:   Hon. Rebecca Westerfield** |
| **v.** | **CLAIMANT LIONEL HARPER'S** |
| **CHARTER COMMUNICATIONS, LLC,** | **REPLY IN SUPPORT OF HIS MOTION** |
| **CHARTER COMMUNICATIONS, INC.,** | **FOR THRESHOLD RULINGS AS TO** |
| **and DOES 1 to 25,** | **INARBITRABILITY** |
| **Respondents.** | **Arbitration Filed:  November 19, 2018** |
| | **Venue:          San Francisco** |
| | **Motion Filed:    March 1, 2019** |

## INTRODUCTION

Attempting to escape its own unenforceable representative action waiver and poison pill, Charter pays lip service to authorities that require the Parties' Arbitration Agreement to be rigorously enforced according to its terms but then asks for the opposite result.

Charter first argues that Harper is not entitled to the requested threshold rulings because he is not acting in a representative capacity or primarily seeking representative relief. That is plainly wrong. Harper's arbitration demand and the evidence supporting his motion confirm that he is statutorily authorized to act on behalf of the State and other aggrieved employees and that he is seeking threshold rulings as to the inarbitrability of his wage-and-hour dispute (as the delegation clause requires him to do) before he files his dispute in court. Because the poison pill renders the *entire* Arbitration Agreement "null and void," Harper has no other arbitration obligations concerning this dispute and he is allowed to bring his wage-and-hour claims in court and seek individual, representative, and classwide relief.

1

Knowing its representative action waiver is invalid and unenforceable as a matter of law and is not preempted by the Federal Arbitration Act ("FAA"), Charter tries to avoid its own poison pill by asking the Arbitrator to sever Harper's representative PAGA claim from the underlying Labor Code violations *even though* they comprise a single wage-and-hour dispute and *even though* the plain language of the poison pill prohibits piecemeal, claim-by-claim severance. Charter's only support for its argument is a handful of cases where the arbitration agreements did not have poison pills so the courts simply applied the standard severance analysis.

The proper analysis of the Parties' arbitration obligations is as follows:

(1)     Harper is authorized under the PAGA statute to represent the State and aggrieved employees and to seek representative relief in the form of civil penalties that are based on the numerous violations of the Labor Code he has identified.

(2)     The Arbitration Agreement has a delegation clause that requires Harper to submit threshold validity and arbitrability issues to the Arbitrator instead of a court.

(3)     The Arbitration Agreement has an unenforceable representative action waiver that, if a poison pill did not exist, would generally be severable and (a) would allow Harper to bring his representative PAGA claim in court but (b) would require the rest of the wage-and-hour dispute to be arbitrated on an individual basis.

(4)     But the Arbitration Agreement also has a poison pill which has been triggered because Harper's wage-and-hour dispute "involves" a representative PAGA claim. The poison pill renders the "entire" Arbitration Agreement "null and void."

(5)     Because the entire Arbitration Agreement is null and void, the Arbitrator has no jurisdiction over *any* of Harper's wage-and-hour claims, the class action waiver no longer exists, and Harper is allowed to bring his wage-and-hour dispute in court on an individual, class, and representative basis.

The Arbitrator should issue three threshold rulings and hold that: (1) she decides all issues related to enforceability, scope, and arbitrability raised in Harper's demand; (2) the poison pill has been triggered and it renders the "entire" Arbitration Agreement "null and void;" and (3) because the entire Arbitration Agreement is null and void, she has no jurisdiction over Harper's wage-and-hour dispute and the arbitration must be dismissed in its entirety.

Claimant's REPLY in support of his Motion for Threshold Rulings

## ARGUMENT

### I.    Harper Has Not "Acknowledged the Validity" of the Arbitration Agreement.

Charter does not challenge Harper's request for Threshold Ruling 1: that the Arbitrator has authority to decide all issues related to enforceability, scope, and arbitrability raised in Harper's arbitration demand. Instead, Charter repeatedly asserts—incorrectly—that Harper "acknowledged the validity of the Arbitration Agreement" simply by filing his arbitration demand. But all Harper has done is comply with the delegation clause which requires that he submit all enforceability, scope, and arbitrability issues to the Arbitrator and that he obtain threshold rulings *before* he brings his wage-and-hour dispute in court. Harper's compliance with the delegation clause in no way "acknowledges the validity" of the Arbitration Agreement in these circumstances.[1]

Harper acted in accordance with the JAMS rules and settled law when he filed an arbitration demand that submitted the threshold issues of the Arbitration Agreement's validity and enforceability directly to the Arbitrator. *See Nielsen Contracting, Inc. v. Applied Underwriters, Inc.*, 22 Cal. App. 5th 1096, 1107-08 (May 3, 2018); *Aanderud v. Superior Court*, 13 Cal. App. 5th 880, 892-93 (2017); *Brennen v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *see also Sandquist v. Lebo Automotive, Inc*., 1 Cal. 5th 233, 245-46 (2016). The fact that Harper's arbitration demand and his motion both explicitly dispute the validity and enforceability of the Arbitration Agreement as applied to his wage-and-hour dispute shows that Charter's argument that he has "acknowledged the validity" of the Arbitration Agreement absurd.[2]

---

[1] In Charter's view, Harper would have been required to ignore the delegation clause, file a putative class and representative PAGA action in court, and only then agree or be compelled to delegate these same threshold issues to the Arbitrator. That would have been a pointless exercise when neither Harper nor Charter dispute the existence or enforceability of the delegation clause.

[2] As Harper's counsel indicated during the preliminary hearing teleconference, Harper has preserved separate failure to accommodate and wrongful termination claims that are factually and legally distinct from his wage-and-hour dispute. Because the failure to accommodate dispute does

Harper has properly submitted issues concerning the Arbitration Agreement's validity and scope to the Arbitrator and she has authority to grant Harper's requested rulings.

## II.    The "Entire" Arbitration Agreement is "Null and Void" by its Own Terms.

### A.    <u>Charter cannot sidestep the plain language of the Arbitration Agreement.</u>

The Federal Arbitration Act "requires courts 'rigorously' to 'enforce arbitration agreements according to their terms,'" *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018), and it requires that arbitration agreements be treated like any other contract. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Charter pays lip service to these principles but then tries to sidestep the representative action waiver and poison pill language that it chose and imposed on Harper as a condition of his employment.

The Arbitration Agreement includes an express waiver of Harper's right to bring or participate in a representative action, including a representative PAGA action that seeks civil penalties that are recoverable on behalf of the State and other aggrieved employees. The representative action waiver is invalid and unenforceable as a matter of California law. *Iskanian v. CLS Transportation Los Angeles LLC*, 59 Cal. 4th 348 (2014). Charter does not dispute the waiver's invalidity and unenforceability, it simply tries to limit its impact on this dispute and asks the Arbitrator to treat the "waiver" like a carve-out that would not trigger the poison pill.

The Arbitration Agreement also includes an express poison pill that renders the "entire" agreement "null and void" and requires the entire wage-and-hour dispute to be litigated in court. Specifically, the Arbitration Agreement states "should the dispute involve a representative, collective or class action claim, and the REPRESENTATIVE, COLLECTIVE, AND CLASS

---

not implicate the unenforceable representative action waiver or the poison pill, Harper intends to file a separate arbitration demand and pursue relief for those separate claims in arbitration.

Claimant's REPLY in support of his Motion for Threshold Rulings

ACTION WAIVER is found to be invalid or unenforceable for any reason, then this entire Agreement . . . shall be null and void and the dispute will not be arbitrable." Harper's wage-and-hour dispute against Charter clearly "involves" a representative PAGA claim; his PAGA Notice identified specific Labor Code violations that serve as a predicate for his PAGA claim; and his arbitration demand identified the specific Labor Code claims he will bring against Charter in court once he obtains threshold rulings from the Arbitrator, all of which support his PAGA claim.

Because the representative action waiver is "invalid and unenforceable" and because the Parties' wage-and-hour dispute "involves" a representative PAGA claim, the plain language of the poison pill renders the "entire" Arbitration Agreement "null and void." Accordingly, no part of Harper's wage-and-hour dispute is arbitrable.

B.    **Charter asks the Arbitrator to read limitations into the Arbitration Agreement that do not exist and that the Parties did not agree on.**

Charter does not actually dispute the fact that its representative action waiver is invalid and unenforceable under *Iskanian*. Instead, Charter focuses on the poison pill and asks the Arbitrator to read into the Arbitration Agreement words that Charter did not use and the Parties did not agree on. Charter hopes the Arbitrator will simply sever Harper's representative PAGA claim and send it to court, retain jurisdiction over the underlying Labor Code violations which serve as the predicate for the PAGA claim, and preserve the class action waiver that would have be enforceable *but for* the existence of the poison pill.

As explained above, the "entire" Arbitration Agreement is null and void because the Parties' wage-and-hour dispute "involves" a representative PAGA claim. Yet Charter asks the Arbitrator to find that the Arbitration Agreement is null and void only as to "that claim," i.e., the PAGA claim itself. *See* Response at 11 (arguing that if "the waiver is found to be invalid or

Claimant's REPLY in support of his Motion for Threshold Rulings

unenforceable for any reason, then no part of the arbitration provision applies to *that claim* – i.e. .

. . the representative, collective, or class action claim") (emphasis in original). If Charter wanted

to ensure that only a single claim that is part of a broader dispute would be severed and would not

be arbitrable, it could have said so in the Arbitration Agreement. It didn't.

Charter's opposition brief cited multiple cases which held that an unenforceable PAGA

waiver is severable and does not render an entire arbitration agreement unenforceable. *Levin v.*

*Caviar, Inc*., 146 F. Supp. 3d 1146, 1159 (N.D. Cal. 2015) (entire arbitration agreement not

unenforceable based on unenforceable PAGA waiver; no poison pill); *Murphy v. HRB Green Res.,*

*LLC*, 2016 WL 11527027, at *7 (N.D. Cal. Oct. 14, 2016) (arbitration agreement clearly stated

that only unenforceable PAGA waiver would be severed; no poison pill); *Franco v. Arakelian*

*Enterprises, Inc*., 234 Cal. App. 4th 947, 965 (2015) (entire arbitration agreement not

unenforceable based on unenforceable PAGA waiver; no poison pill). Charter's problem is that

none of the cases it relies on involved a poison pill.

Charter does not even try to address the cases Harper cited that require the Arbitrator to

treat the poison pill like any other contract provision and to enforce it rigorously according to its

terms (construing any ambiguity against the drafter). Charter simply insists that the "plain

purpose" of the poison pill was to help Charter avoid a class arbitration, to sever *only* Harper's

representative PAGA claim, and to preserve the remainder of the Arbitration Agreement (including

the class action waiver). That interpretation disregards the actual language Charter chose.

Charter could have drafted a severability clause that reflected such intent, as other

employers have done:

> The Representative Action Waiver will be severable from this Agreement in any
> case in which there is a final judicial determination that the Representative Action
> Waiver is invalid, unenforceable, unconscionable, void or voidable. In such
> instances and where the claim is brought as a private attorney general, such private

Claimant's REPLY in support of his Motion for Threshold Rulings

> attorney general claim must be litigated in a civil court of competent jurisdiction, but all other provisions of this Agreement, including without limitation the Class Action Waiver, will continue to apply.

*Murphy v. HRB Green Res., LLC*, 2016 WL 11527027 at *5 (N.D. Cal. Oct. 14, 2016); *see also*

*Blair v. Rent-A-Center, Inc.*, 2017 WL 4805577, at *3 (N.D. Cal. Oct. 25, 2017) (the parties'

agreement expressly stated that "if there is a final judicial determination that applicable law

precludes enforcement of [the individual arbitration paragraph's] limitations as to a particular

claim for relief, then that claim (and only that claim) must be severed from the arbitration and may

be brought in court"). Charter chose not to and it now regrets its choice.

The only "plain purpose" reflected in the Parties' agreement is that *the entire Arbitration*

*Agreement* will be null and void if the Parties' dispute *involves* a representative action and the

representative action waiver is found invalid or unenforceable *for any reason*.

**C.    Courts have rejected Charter's exact argument asking the Arbitrator to construe the poison pill narrowly and to apply claim-by-claim severance.**

Courts have rejected Charter's exact argument. In *McArdle v. AT&T Mobility LLC*, 2017

WL 4354998 (N.D. Cal. Oct. 2, 2017), a case Charter does not even attempt to distinguish, the

court explained:

> The language of the "poison pill" sentence unambiguously provides that "the entirety of this arbitration provision shall be null and void" if subsection 2.2(6), waiving claims and relief on behalf of other persons, is found to be unenforceable. Defendants' proposed construction of this sentence ignores the agreement's use of the word "entirety" and attempts to read in limiting language that does not exist, such as adding the words "as to the specific claim" at the end of the paragraph.

*Id*. at *5. Similarly, in *Roberts v. AT&T Mobility LLC*, 2018 WL 1317346, at *8-9 (N.D. Cal. Mar.

14, 2018), the court rejected the defendant's argument that the poison pill only applied to "that

claim" where the poison pill unambiguously stated: "If this specific provision is found to be

unenforceable, then the entirety of the arbitration provision shall be null and void." The *Roberts*

court further explained that "had it been so intended, the nullification provision could have referred to nullification of the 'subsection' or 'paragraph'; it did not. Instead, it refers to 'the entirety of the arbitration provision.'" *Id*. at *9.

Just like the broad poison pill language in those cases "left no room for doubt," *McArdle*, 2017 WL 4354998, at *5; *Roberts*, 2018 WL 1317346, at *9, the poison pill language Charter imposed on Harper and its other employees also leaves no room for doubt. The poison pill unambiguously renders the entire Arbitration Agreement null and void.

**D.    The fact that Harper also intends to seek individual and class relief in court does not save the unenforceable waiver or let Charter avoid the poison pill.**

Charter argues that Harper should be required to arbitrate each of the Labor Code violations underlying his PAGA claim because he intends to seek "victim-specific damages and interest on an individual basis." Charter's argument completely misses the point of Harper's arbitration demand and motion and relies on irrelevant authorities while ignoring the cases Harper relies on that actually involve poison pills.

If the Arbitration Agreement did not include an unenforceable representative action waiver, then Charter's argument would have merit because Harper's individual claims would fall within the Arbitration Agreement's broad terms and he would not have waived the right to pursue his PAGA claim in court. But the Arbitration Agreement does include an unenforceable waiver. Further, if the Arbitration Agreement did not include a poison pill that renders the "entire" agreement null and void, then the representative PAGA claim could be severed and the individual Labor Code claims would be arbitrable (and the class action waiver would be enforceable). The combination of an unenforceable waiver and a poison pill changes everything.

8

Claimant's REPLY in support of his Motion for Threshold Rulings

Because the entire Arbitration Agreement is null and void, there is no longer any agreement that requires Harper to arbitrate any portion of his wage-and-hour dispute against Charter. All of his wage-and-hour claims can be brought in court and he can seek all forms of relief that are available under California law. Charter's argument ignores the unenforceable waiver and the poison pill and Charter hopes the Arbitrator will ignore them too.

The two cases Charter relies on are irrelevant to this dispute. Both *Esparza v. KS Industries, L.P.*, 13 Cal. App. 5th 1228 (2017) and *Mandviwala v. Five Star Quality Care*, Inc., 723 F. App'x 415, 417-18 (9th Cir. Feb. 2, 2018) involved circumstances where an employee styled a claim as a "PAGA-only" claim but sought *both* civil penalties *and* individualized wages. The courts found that the employees had to arbitrate their wage claims because the constituted individualized relief; the fact that the employees styled the request a "PAGA claim" did not avoid FAA preemption. *Esparza*, 13 Cal. App. 5th at 1246; *Mandviwala*, 723 Fed. App'x at 417-18. Neither case involved a poison pill, so both courts simply severed the individualized wage claims from the civil penalties claims and compelled the employees to arbitrate the individualized wage claims.

Both cases are entirely consistent with *Iskanian* because they adhere to the rule that pre-dispute waivers of the right to bring representative PAGA claims are unenforceable as a matter of law. Beyond that, they are irrelevant to this dispute.[3]

### E.    Charter cannot manufacture ambiguity to support its preferred construction.

Charter does not want the Arbitrator to enforce the Arbitration Agreement according to its terms; it wants the Arbitrator to help it rewrite the Arbitration Agreement by replacing the phrase "the dispute" with "that claim" and the phrase "null and void" with "null and void only as to that

---

[3] Coincidentally, Harper's counsel was counsel for KS Industries in *Esparza* (when he still represented corporate defendants) and knowns firsthand arguments and rulings in the case.

Claimant's REPLY in support of his Motion for Threshold Rulings

claim." Such a reading would be inconsistent with the actual language Charter chose and the Parties' agreed to. It would also make the poison pill superfluous and unnecessary because Charter's own authorities show that an unenforceable PAGA waiver is severable and will not invalidate an entire arbitration agreement. Harper's text-based and straightforward interpretation of the poison pill is the only interpretation that gives meaning and purpose to the poison pill and that adheres to the actual language Charter chose.

But even if the Arbitrator accepts Charter's proposed construction as colorable, Charter still loses because ambiguities in a form contract of adhesion contract must be construed against the drafter. *Sandquist*, 1 Cal. 5th at 247; *accord Castillo v. CleanNet USA, Inc*., 2018 WL 6619986, at *23-24 (N.D. Cal. Dec. 18, 2018). Charter's insistence that ambiguities—if it can create any— should be resolved in favor of arbitration ignores settled law and would violate "the Supreme Court's instructions that arbitration agreements must be on equal footing with other contracts, instead treating such contracts as more enforceable than other contracts." *Revitch v. DirecTV, LLC*, 2018 WL 4030550, at *16 (N.D. Cal. Aug. 23, 2018) (rejecting defendant's argument that ambiguities in an arbitration agreement should be construed in favor of arbitration).

If the Arbitrator views any part of the Arbitration Agreement as ambiguous, she should adopt Harper's reasonable, text-based interpretation and reject Charter's proposed interpretation that would render the poison pill meaningless and unnecessary.

## CONCLUSION

The representative action waiver is invalid and unenforceable. The poison pill has been triggered because the dispute "involves" a representative PAGA claim. And the "entire" Arbitration Agreement is null and void. The Arbitrator should hold that Harper's wage-and-hour dispute must be brought in court and then dismiss the arbitration for lack of jurisdiction.

Claimant's REPLY in support of his Motion for Threshold Rulings

Respectfully submitted,

Dated: March 21, 2019                    SODERSTROM LAW PC

                                          By: */s/ Jamin S. Soderstrom*
                                                 Jamin S. Soderstrom

                                          *Counsel for Claimant*

Claimant's REPLY in support of his Motion for Threshold Rulings

# EXHIBIT 16

Hon. Rebecca J. Westerfield (Ret.)
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111
Tel: (415) 982-5267
Fax: (415) 982-5287

ARBITRATOR

JAMS ARBITRATION

| | |
|---|---|
| LIONEL HARPER,<br><br>Claimant,<br><br>v.<br><br>CHARTER COMMUNICATIONS, LLC, CHARTER COMMUNICATIONS, INC., and DOES 1 to 25,<br><br>Respondents. | REF NO. 1100104486<br><br>ORDER DISMISSING ARBITRATION |

I. **Introduction**

Claimant Lionel Harper ("Harper") brings this arbitration against Respondents Charter Communications, LLC and Charter Communications, Inc. (collectively, "Charter") for (1) Failure to pay minimum wages for all hours

1

worked; (2) Failure to pay overtime wages for all overtime hours worked; (3) Failure to provide meal periods or pay premium wages in lieu thereof; (4) Failure to provide rest breaks or pay premium wages in lieu thereof; (5) Unlawful deduction of wages under Section 221; (6) Failure to provide accurate wage statements; (7) Failure to pay all wages owed upon termination; (8) Failure to provide timely and complete copies of employment records; (9) Violation of California's Unfair Competition Law; and (10) PAGA civil penalties. These causes of action arise from Harper's employment with Charter from September 2017 until March 2018. When Harper was hired by Charter, he agreed to a Mutual Agreement to Arbitrate ("Arbitration Agreement").

Currently before the Arbitrator is Harper's Motion for Threshold Rulings Regarding Arbitrability. In this Motion, Harper seeks the following threshold rulings from the Arbitrator:

(1) The Arbitrator has the authority to decide all issues related to enforceability, scope, and arbitrability raised in the Demand.

(2) The Arbitration Agreement is "null and void" by its own terms because it includes invalid and unenforceable waivers of the right to bring representative claims, the right to act as a representative of the State and other aggrieved employees, and the right to seek public injunctive relief in any form.

(3) Because the Arbitration Agreement is "null and void," the Arbitrator has no jurisdiction over Harper's claims, and the arbitration must be dismissed in its entirety.

## II.     Analysis

### A.     The Arbitrator has authority to decide all issues related to enforceability, scope, and arbitrability raised in the Demand

Harper contends that the Arbitrator has authority to decide whether the Arbitration Agreement is "null and void." Charter does not dispute this point.

2

Rule 11 of the JAMS Rules provides that the "Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter."

**B.    The Arbitration Agreement includes an invalid and unenforceable Waiver**

1.    The pre-dispute Waiver of Harper's right to bring or participate in a representative PAGA action is invalid and unenforceable.

Harper argues that the waiver in the Arbitration Agreement ("Waiver") is invalid and unenforceable because it is a pre-dispute waiver of Harper's right to bring or participate in a representative action brought under PAGA.  The Waiver provides:

> You and Charter understand, acknowledge and agree that the terms of this Agreement include a waiver of any rights that you or Charter may have to bring or participate in an action against each other on a representative, class, or collective basis and understand and agree that the arbitrator shall not be permitted to order consolidation of claims or a representative, class, or collective, arbitration.  This waiver does no take away or restrict your or Charter's rights to pursue your or its own claims, but only requires that any such claims be pursued in your or Charter's own individual capacity, rather than on an representative, class, or collective basis.

In Iskanian v. CLS Transportation Los Angeles LLC, 59 Cal. 4th 348 (2014), the California Supreme Court held that where an employment agreement compels the waiver of representative claims under the PAGA, it is contrary to public policy and unenforceable as a matter of state law.  Id. at 384.  The Court further concluded that the FAA does not preempt this state law rule against waiver of an employee's right to bring a representative PAGA action since the FAA aims to ensure an efficient forum for the resolution of private disputes whereas a PAGA action is a dispute between an employer and the state Labor and Workforce Development Agency.  Id.

3

Charter does not directly dispute the applicability of Iskanian to the Waiver at issue here. Instead, it contends that Charter is attempting to evade arbitration by bringing a PAGA claim. It states that Harper "simply has a private dispute with his former employer," and it points to the relief sought by Harper, and more specifically, the individual, non-PAGA, relief set forth in the Arbitration Demand. Charter cites to Esparza v KS Industries, L.P., 13 Cal. App. 5th 1228 (2017). In Esparza, the defendant appealed from an order denying its motion to compel arbitration of a dispute with its former employee. It contended that Iskanian prevented arbitration of claims only in representative actions that seek "civil penalties" and not unpaid wages payable solely to the aggrieved employee. The appellate court examined Iskanian and found that because the plaintiff's claims for unpaid wages under PAGA constituted a private dispute that was subject to arbitration under the arbitration agreement and FAA, rather than non-arbitrable claim for civil penalties. Id. at 1246.

Charter seeks to apply Esparza so that the Arbitrator will find that this is really a suit to recover victim-specific damages and interest on an individual basis and an attempt to make an end run around arbitration by styling it a PAGA action. However, Esparza itself did not make such a determination regarding the plaintiff employee's case before it. Instead, the court remanded the case and directed the trial court to conduct further proceedings to allow the plaintiff to state his intention about pursuing claims for unpaid wages and any other types of individualized relief, and if he chooses to do so, then those claim would be arbitrated while the remainder of the litigation is stayed. Id. at 1247. If, however, plaintiff intended to limit his claims to PAGA representative claims seeking civil penalties and waive claims for individualized relief, the court can proceed on those claims without the need for arbitration. Id.

Here, while Harper's Demand for Arbitration contains a majority of causes

of action seeking individualized relief, it also asserts a cause of action for PAGA
civil penalties.  Neither Esparza nor any authority raised by Charter allows the
Arbitrator to ignore this cause of action and find that Harper is using the PAGA
cause of action as "an end run around arbitration," even assuming this is true.
Thus, the issue remains whether the Waiver at issue is unenforceable, and under
Iskanian, the Arbitrator finds that it is unenforceable because it compels the waiver
of representative claims under PAGA.

> 2.    Requiring Harper to act only in his "individual capacity" does
> not improperly waive his right to act as a representative of the State
> and other aggrieved employees.

Harper further contends that the Waiver is invalid and unenforceable
because it prohibits him from acting in any capacity other than his "individual
capacity," and this necessarily prevents him from serving as the State's
representative.  As Charter contends, Harper cites no authority in support of this
assertion.  Essentially, Harper seeks to expand Iskanian to bar waivers that use the
language "individual capacity," but the Arbitrator finds no basis for doing so.

> 3.    Requiring Harper to act only in his "individual capacity" does
> not improperly prevent him from seeking representative and public
> injunctive relief in any forum.

In a final argument regarding the Waiver, Harper contends that the Waiver is
invalid and unenforceable because it prevents Harper from seeking representative
and public injunctive relief in any forum.  In McGill v. Citibank, N.A., 2 Cal 5th
945, 951 (2017), the Court held that an arbitration provision that purports to waive
the right to request in any forum public injunctive relief is invalid and
unenforceable under California law.

In its Opposition, Charter relies on Magana v. DoorDash, Inc., 343 F. Supp.
3d 891, 900 (N.D. Cal. 2018), which set out two issues to consider in determining

whether an arbitration agreement prevents all adjudication of public injunctive relief in any forum. <u>Magana</u> is instructive here. First, the court considers whether plaintiff's complaint actually seeks public injunctive relief under California law. <u>Id</u>. Second, if it does, the court considers whether the arbitration agreement prevents plaintiff from adjudicating a claim for such relief in any forum. <u>Id</u>.

Charter argues both that Harper does not seek public injunctive relief and that the Agreement does not prevent Harper from adjudicating a claim for injunctive relief in any forum. With respect to the first issue, "public injunctive relief under the UCL . . . is relief that has 'the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public. Relief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff – or to a group of individuals similarly situated to the plaintiff – does not constitute public injunctive relief." <u>McGill</u>, 2 Cal. 5th at 955. Because Harper seeks injunctive relief for his California Labor Code claims in his Demand, he does not assert a claim for public injunctive relief as in <u>Magana</u>. <u>See</u> <u>Magana</u>, 343 F. Supp. 3d at 901 (the court found that the claims under California Labor Code "have the primary purpose and effect of redressing and preventing harm to [the employer's] employees" and that "the injunctive relief he seeks would be entirely opposite of what McGill requires – any benefit to the public would be derivative of and ancillary to the benefit to [the employer's] employees.")

Second, the Arbitration Agreement does not prevent adjudication of public injunctive relief in any forum because the Arbitrator may adjudicate a claim for such relief. While Harper argues that the Arbitration Agreement has a representative, class and collective action waiver provision, the <u>McGill</u> court held that a claim for public injunctive relief is not a class, collective, or representative action. <u>McGill</u>, 2 Cal. 5th at 959-61. As Charter points out, the Agreement states "[t]his waiver does not take away or restrict your or Charter's right to pursue your

6

or its own claims, but only requires that any such claims be pursued in your or Charter's own individual capacity." As such, Harper can seek public injunctive relief in arbitration. Thus, the Arbitrator finds that requiring Harper to act only in his "individual capacity" does not improperly prevent him from seeking representative and public injunctive relief in any forum.

**C.    The invalid and unenforceable Waiver triggers the poison pill and renders the entire Arbitration Agreement "null and void" by its own terms**

Harper contends that the invalid and unenforceable Waiver triggers the "poison pill" and renders the entire Arbitration Agreement null and void by its own terms. The poison pill provision, as Harper refers to it, in the Arbitration Agreement provides:

> [S]hould the dispute involve a representative, collective or class action claim, and the REPRESENTATIVE, COLLECTIVE, AND CLASS ACTION WAIVER is found to be invalid or unenforceable for any reason, then this entire Agreement (except for the parties' agreement to waive a jury trial) shall be null and void and the dispute will not be arbitrable.

Given the plain meaning of this language, Harper's contention has merit.

In opposition, Charter argues that the "straightforward meaning" of this provision is, if an employee brings a representative, collective or class action claim, and the waiver is found to be invalid or unenforceable, then no part of the arbitration provision applies to that claim – i.e., the arbitration provision is null and void in its entirety only as to the representative, collective or class action claim. However, Charter's interpretation is at odds with the language used in the Agreement and places a limitation not supported by the words chosen. As Harper points out, Charter could have drafted this provision narrowly, but it did not. He points to the following language found in another case:

7

> The Representative Action Waiver will be severable from this
> Agreement in any case in which there is a final judicial determination
> that the Representative Action Waiver is invalid, unenforceable,
> unconscionable, void or voidable.  In such instances and where the
> claim is brought as a private attorney general, such private attorney
> general claim must be ignored in a civil court of competent
> jurisdiction, but all other provisions of this Agreement, including
> without limitation the Class Action Waiver, will continue to apply.

Murphy v. HRB Green Res., LLC, 2016 WL 11527027 at *5 (N.D. Cal. Oct. 14,
2016).  Instead, the provision agreed to by the parties in this case clearly states that
"this *entire* Agreement shall be null and void and the dispute will not be
arbitrable."

Harper cites to a few district court cases wherein the court rejected Charter's
same argument that the Arbitrator should construe the poison pill provision
narrowly.  In McArdle v. AT&T Mobility LLC, 2017 WL 4354998 (N.D. Cal. Oct.
2, 2017), the court stated that "Defendant's proposed construction of this sentence
ignores the agreement's use of the word 'entirety' and attempts to read in limiting
language that does not exist, such as adding the words 'as to the specific claim' at
the end of the paragraph."  Similarly, in Roberts v. AT&T Mobility, LLC, 2018
WL 1317346 at *8-9 (N.D. Cal. Mar. 14, 2018, the court stated that "had it been so
intended, the nullification provision could have referred to nullification of the
'subsection' or 'paragraph'; it did not.  Instead, it refers to 'the entirety of the
arbitration provision.'"  The Arbitrator agrees with the reasoning of the courts in
these cases.

Charter also seeks to have the arbitrable and non-arbitrable claims severed
so that the arbitrable claims are sent to arbitration.  However, the cases relied on by
Charter for this proposition do not involve the existence of the poison pill
provision.  Indeed, Harper acknowledges that but for the poison pill provision,
severance would be possible.

8

Charter further asserts that because there is a reading of this provision that would allow for severing a non-arbitrable claim to allow it to proceed in court, with all other claims sent to arbitration, this provision must be interpreted that way. It relies on the federal policy favoring arbitration and quotes from a Supreme Court holding that an order compelling arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986). Here, the provision at issue is neither ambiguous nor susceptible of Charter's desired interpretation.

Thus, the Arbitrator finds that because the pre-dispute Waiver of Harper's right to bring or participate in a representative PAGA action is invalid and unenforceable, the poison pill provision is triggered, thereby rendering the Arbitration Agreement null and void.

**D.    Because the Arbitration Agreement is null and void, the Arbitrator has no jurisdiction over Harper's claims**

Based on the determinations set forth above, the Arbitration Agreement is null and void. While the FAA reflects a "liberal federal policy favoring arbitration," it also reflects "the fundamental principle that arbitration is a matter of contract." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (citations omitted). As such, "courts must place arbitration agreements on an equal footing with other contracts, . . ., and enforce them according to their terms . . . ." Id.; see also Epic Systems Corp. v. Lewis, 138 S. Ct. 1612, 1621 (2018) (Supreme Court noted that the Arbitration Act requires courts "vigorously" to "enforce arbitration agreements according to their terms"). Here, the Arbitration Agreement contains a Waiver that is found to be invalid and enforceable. Under the same Arbitration Agreement, such a finding renders the entire Agreement null and void and the dispute not arbitrable. The Arbitrator therefore has no jurisdiction over

Harper's claims set forth in the Demand, and consequently, the arbitration must be dismissed in its entirety.

## III.    **Conclusion**

Accordingly, the Arbitrator dismisses Claimant Lionel Harper's Demand for Arbitration.


DATED:   April 25, 2019

Hon. Rebecca Westerfield (Ret.)
Arbitrator

## <u>PROOF OF SERVICE BY EMAIL & U.S. MAIL</u>

Re: Harper, Lionel vs. Charter Communications, Inc.
Reference No. 1100104486

I, Melissa Ornstil, Esq., not a party to the within action, hereby declare that on April 25, 2019, I served the attached Order Dismissing Arbitration on the parties in the within action by Email and by depositing true copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United States Mail, at San Francisco, CALIFORNIA, addressed as follows:

Jamin Soderstrom Esq.
Soderstrom Law PC
3 Park Plaza
Suite 100
Irvine, CA   92614
Tel: 949-667-4700
Email: jamin@soderstromlawfirm.com
    Parties Represented:
    Lionel Harper

Zachary Shine Esq.
Morgan, Lewis & Bockius LLP
One Market
Spear Street Tower
San Francisco, CA   94105-1596
Tel: 415-442-1000
Email: zachary.shine@morganlewis.com
    Parties Represented:
    Charter Communications, Inc.
    Charter Communications, LLC

Kathryn T. McGuigan Esq.
Morgan, Lewis & Bockius LLP
300 S Grand Ave
22nd Floor
Los Angeles, CA   90071-3132
Tel: 213-612-7390
Email: kathryn.mcguigan@morganlewis.com
    Parties Represented:
    Charter Communications, Inc.
    Charter Communications, LLC

I declare under penalty of perjury the foregoing to be true and correct. Executed at San Francisco, CALIFORNIA on April 25, 2019.

_Melissa Ornstil_

Melissa Ornstil, Esq.

# EXHIBIT 17

# Morgan Lewis

**Nicole L. Antonopoulos**
Associate
+1.415.442.1305
nicole.antonopoulos@morganlewis.com

May 22, 2019

**VIA E-MAIL AND REGULAR MAIL**

SODERSTROM LAW PC
Jamin S. Soderstrom
jamin@soderstromlawfirm.com
3 Park Plaza, Suite 100
Irvine, CA  92614

Re:        Re: *Lionel Harper v. Charter Communications, LLC. et al*
           Eastern District of California, Case No. 2:19-at-00392

Dear Mr. Soderstrom:

We write to meet and confer with you further regarding Defendants Charter Communications, LLC and Charter Communications, Inc.'s ("Charter") request that Plaintiff Lionel Harper ("Plaintiff") arbitrate his claims on an individual basis.  In further conferring with Charter, we have learned that Charter's Solution Channel Program, an updated employment-based legal dispute resolution program, applies to Plaintiff.  *See* Exhibit 1 [Solution Channel Guidelines].  Enclosed is the email notification that Charter sent to Plaintiff on October 6, 2017, stating that he would be enrolled in Solution Channel unless he opted out of the program within 30 days. *See* Exhibit 2 [Solution Channel Email Notification].

The October 6, 2017 email notification included a link to the Solution Channel web page located on the Charter intranet site accessible to employees.  *See* Exhibit 3 [Solution Channel web page content].  The Solution Channel web page accessible to employees included a reference and link to Charter's Mutual Arbitration Agreement.  Exhibit 4 [Mutual Arbitration Agreement].  Plaintiff did not opt out of the Solution Channel program within 30 days of receiving the notification email and thus became a participant of Solution Channel on November 6, 2017.  *See* Exhibit 5 [Record of Solution Channel Participation Date].

The Solution Channel Program addresses the concern raised by Plaintiff in his Motion for Threshold Rulings Regarding Arbitrability—that the representative waiver is invalid and unenforceable and thus renders the entire arbitration agreement null and void.  The terms of the Solution Channel arbitration agreement provides:

> [I]f any portion or provision of this Agreement (including, without implication of
> limitation, any portion or provision of any section of this Agreement) is determined

**Morgan, Lewis & Bockius** LLP

One Market
Spear Street Tower
San Francisco, CA  94105-1596       **T** +1.415.442.1000
United States                       **F** +1.415.442.1001

DB2/ 36587710.1

SODERSTROM LAW PC
May 22, 2019
Page 2

> to be illegal, invalid, or unenforceable by any court of competent jurisdiction and cannot be modified to be legal, valid, or enforceable to the fullest extent permitted by law, and said illegal, invalid, or unenforceable portion or provisions shall be deemed not to be a part of this Agreement.  The only exception to this severability provision is, should the dispute involve a representative collective or class action claim, and the representative, collective, and class action waiver (Section D) is found to be invalid or unenforceable for any reason **then this Agreement (except for the parties' agreement to waive a jury trial) shall be null and void with respect to such representative, collective, and/or class claim only, and the dispute will not be arbitrable with respect to such claim(s).**

*See* Exhibit 4.  To the extent that you contend the representative waiver is unenforceable and a court finds that such a term is unconscionable, then the plain language of the Solution Channel arbitration agreement provides that the arbitration agreement does not apply to such representative claims.

Please let us know by May 24 whether in light of this additional information Plaintiff agrees to arbitrate his claims on an individual basis and dismiss his putative class and representative claims.

Sincerely,

Nicole Antonopoulos

Enclosures

EXHIBIT 1



# ARBITRATION PROGRAM

# Solution Channel

For Resolution of Employment-Based Legal Disputes

PROGRAM GUIDELINES



Version Date—September 25, 2017

# TABLE OF CONTENTS

## OUR EMPLOYMENT PHILOSOPHY                                                    3

Charter Strives to Create a Positive Work Experience for All Employees           3

Employment Opportunities at Charter Are Equal and Fair                           3

Inclusion in the Workplace Is a Priority at Charter                              3

Charter Promotes an Environment of Open Communication in the Workplace           3

## DEALING WITH CONFLICT IN THE WORKPLACE                                       5

Charter Has Created a Welcome and Productive Culture                             5

Charter Employees Are Expected to Act Professionally and With Integrity          5

Reporting a Workplace Conflict                                                   5

Reports of Violations of Charter's Code of Conduct May Be Submitted
Through Charter's Ethics and Compliance Hotline                                  6

Charter's Policy and Code of Conduct Prohibit Retaliation                        6

## THE CHANNEL FOR RESOLUTION OF
## EMPLOYMENT-RELATED LEGAL DISPUTES                                            7

Charter's Solution Channel                                                       7

Solution Channel at a Glance                                                     8

General Rules                                                                    8

Initiating a Claim                                                               10

Internal Claim Review                                                            10

Arbitrating a Dispute                                                            11

## WHAT YOU NEED TO KNOW ABOUT SOLUTION CHANNEL                                 13

Rights and Responsibilities                                                      13

Who Is Covered                                                                   13

Covered and Excluded Claims                                                      14

How to Submit a Claim                                                            16

Deadlines and Timelines                                                          17

Key Elements to Arbitration                                                      17

## KEY TERMS TO KNOW AND UNDERSTAND                                             21

# Our Employment Philosophy

### CHARTER STRIVES TO CREATE A POSITIVE WORK EXPERIENCE FOR ALL EMPLOYEES

Charter recruits and hires top talent. To retain and develop that talent, Charter believes that work should be a positive experience, where employees are treated fairly, respectfully, honestly, professionally, and with integrity.

### EMPLOYMENT OPPORTUNITIES AT CHARTER ARE EQUAL AND FAIR

Charter has a long-standing practice and policy of offering equal opportunities to all employees and applicants for employment without regard to race, color, sex, pregnancy, age, religion, creed, physical or mental disability status, medical condition, genetic information, national origin, nationality, ancestry, citizenship status, veteran status, military status, sexual orientation, gender identity, gender expression, marital status, domestic partner status, or any other basis protected by law. This practice and policy applies to every aspect of employment, including recruitment, hiring, promotion, compensation, transfers, layoffs, terminations, Charter-sponsored training, education, tuition assistance, benefits and all other employment decisions. Additionally, Charter complies fully with all local, state, and federal employment laws prohibiting discrimination, harassment, and retaliation in the workplace.

### INCLUSION IN THE WORKPLACE IS A PRIORITY AT CHARTER

Recognizing the value of a diverse workforce, Charter takes affirmative steps to create a work environment that is inclusive, welcoming, and supportive of individuals from different backgrounds and cultures. The value we place on these individual differences demonstrates Charter's commitment to treating employees respectfully and acknowledging their contributions to the organization's overall success.

### CHARTER PROMOTES AN ENVIRONMENT OF OPEN COMMUNICATION IN THE WORKPLACE

Charter maintains an Open Door Policy, which encourages employees to raise concerns, issues, questions, and ideas with their leadership and human resources teams. The primary goals of the Open Door Policy are to promptly resolve workplace issues, create a receptive environment in which ideas can be shared and provide a way to express concerns.

Employees who use the Open Door Policy in a professional and appropriate manner will never be penalized or retaliated against for doing so.

Charter is an equal opportunity employer. Discrimination, harassment, and retaliation are not tolerated at Charter. Our diverse workforce shows Charter's commitment to embracing and supporting individual and cultural differences.

4

# Dealing with Conflict in the Workplace

## CHARTER HAS CREATED A WELCOME AND PRODUCTIVE CULTURE

A work environment in which employees feel welcome and valued leads to a more productive and dedicated workforce. A productive and dedicated workforce leads to exceptional service, which is reflected in our customers' satisfaction with and loyalty to Charter. Because Charter's success is ultimately dependent upon a positive workplace culture and employee experience, we strive each day to preserve that culture and experience.

## CHARTER EMPLOYEES ARE EXPECTED TO ACT PROFESSIONALLY AND WITH INTEGRITY

Charter takes pride in its professional and congenial work environment. In our efforts to safeguard a workplace in which employees can thrive, every Charter employee is expected to follow Charter's Professional Conduct Policy and Code of Conduct. This means that employees must treat others respectfully, perform their job duties and assignments with integrity, accept responsibility for their actions, maintain honesty in all business interactions, and comply fully with applicable laws.

## REPORTING A WORKPLACE CONFLICT

We understand that conflicts may sometimes arise at work. An employee who has a work-related concern or issue is strongly encouraged to promptly bring the matter to the attention of his or her leader or a human resources representative. When issues and concerns are addressed at the outset, it minimizes the disruption in the workplace, and helps to allow for resolution while employees remain focused on providing quality service to customers.

Conflict and disharmony in the workplace are taken seriously at Charter. Appropriate complaints that are brought to the attention of Charter's leadership or human resources team will be investigated. While we cannot guarantee that the outcome of an investigation will be satisfactory to everyone, we can promise that the investigation will be thorough and unbiased, that any action taken will be lawful, and that the individuals affected will be treated with respect and dignity.

5

Charter employees work in an environment in which they are not only permitted, but are encouraged, to speak up about issues and concerns when they first surface. Charter believes that the timely and appropriate resolution of workplace conflict results in a more productive workforce, dedicated to providing superior customer service.

### REPORTS OF VIOLATIONS OF CHARTER'S CODE OF CONDUCT MAY BE SUBMITTED THROUGH CHARTER'S ETHICS AND COMPLIANCE HOTLINE

In those rare instances where an individual believes there has been a violation of Charter's Code of Conduct that cannot be reported through normal channels, Charter maintains an ethics and compliance hotline referred to as EthicsPoint. Reports can be submitted at www.EthicsPoint.com or by calling 866.384.4277. Charter's policy prohibiting retaliation extends to those who submit a report using EthicsPoint.

### CHARTER'S POLICY AND CODE OF CONDUCT PROHIBIT RETALIATION

Charter is steadfast in its belief that no employee should be in fear of reprisals for bringing a complaint, encouraging or aiding another person to report a concern, or cooperating during an investigation. Charter's policy prohibiting retaliation in any form and of any kind is strictly enforced as to all employees. This means that no employee will be discharged, disciplined, denied a promotion, demoted, assigned to an unfavorable work shift and/or location, targeted by a leader, or otherwise treated unfairly in retaliation for complaining about an issue, encouraging or aiding another person to complain, or cooperating during an investigation.

Charter's Code of Conduct impresses upon employees the importance of acting and treating others professionally, with integrity, honestly, lawfully, and respectfully. Charter's continued success hinges upon employees' adherence to the highest ethical standards in their day-to-day business activities.

6

# The Channel for Resolution of Employment-Related Legal Disputes

## CHARTER'S SOLUTION CHANNEL

With an emphasis on fostering a positive work environment where open communication is encouraged, Charter is confident that the vast majority of workplace conflicts will be appropriately resolved through less formal channels. However, we also recognize that there may be some employment-based disputes that are best addressed through a more structured and formal resolution process.

Solution Channel is a dispute resolution alternative developed by Charter. Solution Channel is the means by which a current employee, a former employee, an applicant for employment, or Charter can efficiently and privately resolve covered employment-based legal disputes. Solution Channel provides a number of tangible benefits:



**Benefits of Solution Channel**

- Internal Review
- Impartial Decisions
- Speedy Resolutions
- Flexibility
- Direct Involvement
- Fair and Equitable
- Cost Efficient
- Streamlined Procedures

Solution Channel is not intended to be a substitute for the manner in which routine conflicts, concerns, and issues in the workplace are handled. Solution Channel is reserved for the resolution of certain legal disputes that arise in the course of the pre-employment and employment relationship.

Contract workers assigned to provide services to Charter or Charter customers are not eligible to participate in Solution Channel.

## SOLUTION CHANNEL AT A GLANCE

The process involves multiple steps, any of which may result in resolution of the dispute. If necessary, the last step is final and binding arbitration of the dispute. An overview of the rules and the dispute resolution process follows.

> While Charter believes that nearly all workplace disputes can be resolved through Charter's Open Door Policy and other informal avenues, Solution Channel affords an efficient and less costly way to resolve those issues that are better resolved through a more formal process.

## GENERAL RULES

1. Unless there is an agreement to the contrary, Solution Channel is the exclusive means of resolving employment-related legal disputes that are covered under this Program.

2. With limited exceptions, participation in Solution Channel is a condition of consideration for employment with Charter, and a condition of working at Charter.

3. Upon implementation of Solution Channel, current employees will be provided a 30-day opt-out period. Those employees will be covered by Solution Channel unless they opt out. Those employees covered by a collective bargaining agreement or other employment agreement are excluded from Solution Channel unless expressly allowed under those agreements (although nothing in this document shall limit the applicability of any arbitration or other dispute resolution provision contained in those agreements).

4. Applicants who choose to be considered for employment with Charter are required to accept Charter's Mutual Arbitration Agreement.

8

5.  By participating in Solution Channel, the right (a) of a current or former employee or applicant to initiate or pursue a covered claim against Charter or for Charter to initiate or pursue a covered claim against a current or former employee or applicant acting in the scope of employment in a court of law or equity is waived; (b) to have a covered claim heard by a court, judge, or jury is waived; and (c) to bring or pursue a covered claim as a representative or member of a class, collective, or representation action is waived.

6.  Participation in Solution Channel does not bar a claimant from filing or pursuing a charge or complaint with a government agency. However, either party may choose to request that the government agency defer its investigation or processing of the charge or complaint pending the outcome of the dispute through Solution Channel.

7.  A claim must be submitted to Solution Channel within the time period established by the applicable statute of limitations.

8.  A submitted claim may be amended to clarify, add or remove information or allegations and related claims. A claim may not be amended later than the day of the informal conference with the arbitrator.

9.  A respondent to a claim may submit a counterclaim (or claim against the other party), that will be reviewed and/or arbitrated with the original claim.

10. Absent extraordinary circumstances, any claim submitted through Solution Channel will generally be resolved within one year.

11. Should a covered claim proceed to arbitration, the American Arbitration Association (AAA) will be the administrator of the claim. Charter will pay the AAA administrative fees and the arbitrator's fees and expenses. All other costs, fees and expenses associated with the arbitration, including without limitation each party's attorneys' fees, will be borne by the party incurring the costs, fees and expenses.

12. The arbitrator will apply the burdens of proof and law applicable to the claim, had the claim been brought in court.

13. At the discretion of the arbitrator, the prevailing party may recover any remedy that the party would have been allowed to recover had the dispute been brought in court.

14. Questions, concerns, or comments related to Solution Channel should be directed to SolutionChannel@charter.com.

Charter believes that Solution Channel is the best way to resolve covered employment-related legal disputes. In an effort to ensure you and Charter benefit from this Program, Charter will absorb most of the administrative costs of arbitration if a claimant decides to arbitrate a covered claim.

## INITIATING A CLAIM

1. A claimant (an eligible current employee, former employee, applicant for employment, or Charter) will use a dedicated web-based portal to electronically submit a claim.

2. The claim should describe in detail the nature of the dispute, the date of and persons involved in the alleged misconduct or violation, and the remedy requested.

3. Once the claim is submitted, an automated email response will be sent to the claimant, confirming submission of the claim.

All covered claims must be timely submitted as required under the Program.

All covered claims must be timely submitted as required under the Program in order to be considered. Untimely claims will not be internally reviewed or arbitrated through Solution Channel.

## INTERNAL CLAIM REVIEW

1. Upon receipt, the claim will be reviewed to determine whether the claim is covered by Solution Channel.

2. If the claim is not covered, the claimant will be notified by email and the claim may be referred to Employee Relations, EthicsPoint, or closed.

3. If the claim is covered, there will be further review of the claim by Charter.

4. A summary of Charter's decision following its review will be emailed to the claimant.

5. The claimant will notify Charter by email whether he or she wishes to proceed to arbitration.

**ARBITRATING A DISPUTE**

1. Once a party is notified of a claimant's desire to proceed to arbitration to resolve the dispute, the AAA will be notified by Charter and an arbitrator will be jointly selected by the parties.

2. The parties will meet telephonically with the arbitrator to schedule a mutually convenient date, time, and place for the arbitration hearing.

3. Prior to the scheduled hearing, the parties will engage in discovery or the exchange of information, which may include answering written questions (interrogatories), exchanging documents, and taking the deposition testimony of witnesses.

4. An evidentiary hearing will be held at which witnesses will be asked to testify under oath. A hearing may be waived only by agreement of both parties.

5. Following the hearing, the arbitrator will issue a final and binding written decision.

# What Happens After a Claim Is Submitted?



## The Claim is Reviewed Internally

**COVERED CLAIM**

Claimant notified of decision after internal review

If claimant accepts internal resolution, claim closed

**EXCLUDED CLAIM**

Claim Closed

Claimant Notified



## A Claimant May Choose to Arbitrate

CHOOSE TO ARBITRATE

JOINTLY SELECT ARBITRATOR

EXCHANGE DOCUMENTS AND INFORMATION

PARTICIPATE IN ARBITRATION HEARING

FINAL AND BINDING DECISION OF ARBITRATOR

# What You Need to Know About Solution Channel

## RIGHTS AND RESPONSIBILITIES

As participants in Solution Channel, you and Charter have a right to:

- A hearing and decision by a neutral arbitrator on a covered legal claim, if the claim is not resolved informally

- Representation by an attorney at each party's own expense

- Resolution of a covered legal claim generally within a year of a claim being filed

- Damages or other remedies allowed by law, as deemed appropriate by the arbitrator

You and Charter are responsible for:

- Meeting all Program deadlines

- Participating in Solution Channel in good faith, including providing truthful information and not pursuing claims to harass or threaten the other party

- Complying with all Program rules

## WHO IS COVERED

### Applicants
All applicants must agree to participate in Solution Channel as a condition of being considered for employment at Charter. Applicants offered employment will be required to participate in Solution Channel throughout and following their employment with Charter.

### Current Employees
Current employees at the effective date of Solution Channel will be enrolled in the Program, unless the employee opts out. Employees covered by a collective bargaining agreement or other employment agreement are excluded from Solution Channel (although nothing in this document shall limit the applicability of any arbitration or other dispute resolution provision contained in those agreements).

### Former Employees
Former employees who did not opt out of Solution Channel will remain enrolled in the Program.

### Charter
Charter and its affiliates and subsidiaries are enrolled in Solution Channel.

## COVERED AND EXCLUDED CLAIMS

All disputes, claims, and controversies that could be asserted in court or before an administrative agency or for which you or Charter have an alleged cause of action related to pre-employment, employment, employment termination or post-employment-related claims, whether the claims are denominated as tort, contract, common law, or statutory claims (whether under local, state or federal law), are covered by and must be resolved through Solution Channel, unless expressly excluded below.

Employee claims that are covered by and must be resolved through Solution Channel include without limitation, claims for:

- Unlawful termination, failure to hire or failure to promote

- Unlawful discrimination, harassment or retaliation (including such claims based upon race, color, national origin, sex, pregnancy, age, religion, sexual orientation, disability, and any other prohibited grounds)

- Wage and hour-based claims, including claims for unpaid wages, commissions, or other compensation or penalties (including meal and rest break claims, claims for inaccurate wage statements, claims for reimbursement of expenses)

- Claims arising under the Family Medical Leave Act, the Americans with Disabilities Act and/or similar state laws (including unlawful denial of or interference with a leave of absence, claims for unlawful denial of accommodation or failure to engage in the interactive process)

- Claims arising under whistleblower laws or for violations of the Sarbanes-Oxley Act

- Claims for violations of the Occupational Safety and Health Act or other safety or occupational health laws, whether arising before, during or after the termination of employment

- Claims related to background checks and any and all other pre-employment and employment checks, including any claims brought under the Fair Credit Reporting Act and/or similar federal, state or local statutes or ordinances

The following Charter claims are covered and must be resolved through Solution Channel:

- Collection of overpaid wages and commissions

- Recovery of reimbursed tuition

- Recovery of relocation reimbursement

- Damage to or loss of Charter property

- Recovery of unauthorized charges on Company credit card

14

No covered claims between a person enrolled in Solution Channel and Charter, may be pursued in a court. All covered claims may only be pursued on an individual basis. Individuals participating in this Program waive their right to bring a covered claim in court and on behalf of a group or class of individuals.

In the event a dispute between you and Charter is not arbitrable under Solution Channel for any reason and is pursued in court, you and Charter agree to waive any right to a jury trial that might otherwise exist.

The following employee claims are **excluded** from and will not be resolved through Solution Channel:

- Claims for workers' compensation benefits
- Claims for unemployment compensation benefits
- Claims arising under the National Labor Relations Act
- Claims arising under the Employee Retirement Income Security Act, or for breach of employee benefits or welfare plans
- Claims arising under separation or severance agreements or non-compete agreements (unless arbitration is provided for under the terms of the agreement)
- Claims for violations of the Health Information Portability and Accountability Act
- Claims related to corrective action that do not result in termination of employment
- Claims older than the statute of limitations applicable to such claims
- Claims related to intellectual property

The following Charter claims are **excluded** from and will not be resolved through Solution Channel:

- Claims of theft or embezzlement, or any criminal conduct
- Claims related to intellectual property
- Claims that have already been filed in federal or state court at the time of the effective date of the Mutual Arbitration Agreement, provided that such claims were not previously subject to any arbitration agreement
- Claims covered by a collective bargaining agreement, a severance agreement, a non-compete agreement, or a written employment contract (although nothing in this document shall limit the applicability of any arbitration or other dispute resolution provision contained in those agreements)
- Claims for injunctive or other equitable relief related to unfair competition and the taking, use or unauthorized disclosure of trade secrets or confidential information

## HOW TO SUBMIT A CLAIM

If you are unable to informally resolve your employment-related legal concern to your satisfaction, you may submit a covered claim by following these steps:

### Solution Channel Website

- Access the Solution Channel website at www.CharterSolutionChannel.com from any computer or mobile device.

- Register so that you can obtain login credentials to access the claims submission web page.

- Login credentials will be emailed to you.

### Completing the Claim Form

- Log in at the Solution Channel website, and you will be directed to the Solution Channel claim portal.

- Click Start.

- Complete the claim form accurately and completely. In the form, you will describe the nature of your claim, the basis for your claim, and the remedy you are seeking.

- Save any information you wish to include in the claim form before exiting the form.

- You may save information and exit, and then later add additional information by logging into the site and selecting your claim.

### Acknowledgment and Submission of the Claim

- When you have completed the form and are ready to submit your claim, you must acknowledge and attest to the accuracy of the information in the form and then click Submit Claim. The date you submit the completed claim form to Charter will determine whether the claim was timely filed.

- You will receive an email confirming receipt of the claim, along with a claim number. You should keep a copy of this information. Charter will also receive an automated notification that your claim has been submitted.

- If you require an accommodation, or are otherwise unable to submit a claim using the portal, you must send your request for assistance by email to Charter at SolutionChannel@charter.com.

## DEADLINES AND TIMELINES

- You must submit a covered claim before the end of the statute of limitations applicable to the claim. You have the right to consult with an attorney regarding the applicable statute of limitations or your claim in general.

- Charter will communicate to you whether the claim is arbitrable within **10 days** after the claim is submitted.

- Charter will complete its internal review of an arbitrable claim and issue its determination, within **60 days** after the claim is submitted.

- You must indicate whether you wish to proceed with an arbitration hearing within **15 days** after receiving the determination.

- If you indicate that you wish to proceed with an arbitration hearing, the parties will have **10 days** to select an arbitrator.

- An informal conference with the arbitrator will typically be scheduled for within **10 days** after the arbitrator is selected and confirmed to preside over the matter.

- The parties will have up to **90 days** after the informal conference with the arbitrator, to exchange information or conduct other discovery.

- The arbitration hearing will generally occur within **180 days** after the informal conference with the arbitrator, and will generally last one or two days.

- The parties will be permitted to submit post-hearing briefs to the arbitrator within **45 days** after the arbitration.

- The arbitrator will issue a decision and the matter will be fully resolved, generally no later than one year after the submission of the claim.

It is imperative that you comply with the employee deadlines highlighted above to preserve your rights under Solution Channel. Deadlines will not be postponed or extended absent mutual agreement of the parties or good cause shown by the party requesting postponement.

## KEY ELEMENTS OF ARBITRATION

### Selecting an Arbitrator

If you are not satisfied with Charter's decision following the internal claim review and decide to proceed with arbitration of your claim, you must notify Charter of your intention to proceed with arbitration.

If you decide to move forward with arbitration, the next step is for the parties to jointly select an arbitrator. Charter will obtain from the AAA a list of five potential arbitrators deemed by AAA to have significant experience arbitrating employment claims.

17

Charter will email the list to you, and you will have the first opportunity to strike the name of an arbitrator that you do not wish to preside over the arbitration. After you strike a name and communicate your decision to Charter by email, Charter will then have the same opportunity to strike one name from the list and send you an email with Charter's decision. The parties continue to take turns striking names until there is just one arbitrator name left on the list.

The remaining arbitrator on the list will serve as the arbitrator, so long as he or she is available within the timelines required by this Program. Charter will notify AAA of the parties' choice for arbitrator, and will notify you by email when the arbitrator has been confirmed to preside over the claim.

## The Initial Conference

After the arbitrator is appointed, an informal telephone conference is held between the arbitrator and both parties and their legal representatives (if applicable). In cooperation with the arbitrator, the parties will identify the steps needed to prepare for the hearing and may set dates for submission of witness lists, exhibits, any briefs, and the hearing. The arbitrator may also discuss the law and burdens of proof that apply and any other issues relating to how the parties will proceed toward and during the arbitration hearing.

Either party may challenge the arbitrability of a claim until the day of the initial conference with the arbitrator.

All decisions or orders of the arbitrator will be documented in a letter or other written format for both parties.

## Exchanging Information and Preparing for Hearing

The parties will have 90 days to exchange information and take depositions. Information is generally exchanged through written questions or requests for documents, called interrogatories, requests for production, or third party subpoenas. Each party will be permitted to take up to four (4) depositions and allowed up to 20 total interrogatories (including subparts) and up to 15 total requests for documents to the other party, whether the interrogatories and requests for documents are sent at one time or in increments. Each party will bear the cost of taking depositions, including court reporter and witness fees.

Any disagreements regarding the exchange of information or depositions will be resolved by the arbitrator to allow a full and equal opportunity to all parties to present evidence that the arbitrator deems material and relevant to the resolution of the dispute.

The arbitrator has the discretion to draw an adverse inference against a party who fails to timely cooperate in the exchange of information.

18

## What to Expect During the Hearing

An arbitration hearing is not as formal as a trial. These hearings will be held, at Charter's expense, at a hotel meeting or conference room or similar, neutral location within 100 miles of your last Charter work location, unless another location is mutually agreed upon.

The arbitrator is typically seated between the parties. The parties may call witnesses to testify, and any testifying witness under oath will be seated near the arbitrator. A court reporter will usually be seated near the witness seat to transcribe all testimony and substantive statements of the arbitrator and parties or their representatives.

After the arbitrator makes initial remarks and tells the parties about some ground rules for the arbitration, the arbitrator may allow each party or their legal representative to make an opening statement. These statements are followed by witness testimony, with the claimant calling his or her witnesses first. Witnesses will be subject to direct and cross examination. The parties will bear the same burden of proof and production of evidence regarding the claim as would apply if the claim had been brought in court. At the end of all of the witness testimony, the parties may also have the chance to make closing arguments to the arbitrator.

Following the hearing, the parties will be given the opportunity to submit written, post-hearing briefs to the arbitrator. The arbitrator will issue a written opinion containing the arbitrator's findings, decision and any award. The arbitration decision will be final and binding as to the claim arbitrated by the parties, but will have no binding effect in any other proceeding.



# Key Terms to Know and Understand

Because Solution Channel is the process utilized at Charter to resolve most legal disputes related to employment, it is important to know and understand the meaning of terms associated with and used to explain Solution Channel. Following is an alphabetized glossary of key terms and how they are defined for purposes of Solution Channel.

American Arbitration Association – Founded in 1926, the American Arbitration Association (AAA) is a non-profit public service organization dedicated to the resolution of disputes through alternative procedures. AAA will preside over disputes that proceed to arbitration through Solution Channel.

Arbitration – A hearing or other proceeding where a legal dispute between Charter and a current employee, former employee, or applicant for employment is formally presented to a neutral third party for final and binding resolution. During arbitration, the parties (claimant and respondent) are also permitted to present evidence that supports their position.

Arbitrator – A neutral and objective third party jointly selected by the claimant and respondent involved in a legal dispute. The arbitrator acts as an impartial judge in that he or she examines and weighs the value and credibility of evidence presented during arbitration, reviews and analyzes the applicable laws, and reaches a final and binding decision that resolves the dispute.

Brief – A written explanation of a party's position and arguments in a legal dispute. Both the claimant and respondent are generally given the opportunity to submit a brief to the arbitrator. Depending upon the nature of the dispute, the arbitrator may request that the parties submit a pre-hearing brief and/or a post-hearing brief.

Claim – A legal demand made by a person or party seeking monetary or non-monetary compensation or another remedy for a loss suffered as the result of a legal dispute. Through Solution Channel, a current employee, former employee, or applicant for employment can resolve eligible employment-related claims asserted against Charter. Similarly, Solution Channel is the means by which Charter will resolve qualifying employment-related claims it may assert against a current or former employee. Solution Channel does not allow claims to be brought by a group or class of current employees, former employees, or applicants for employment. Under Solution Channel, claims can only be brought by or on behalf of an individual, or by or on behalf of Charter.

21

Claimant – The person or party that initiates a claim. A claim may be brought by a current employee, a former employee, an applicant for employment, or Charter.

Claim Form – The official statement and description of a claim asserted by a person or party.

Decision – A written summary and analysis prepared by the arbitrator following an arbitration proceeding. The decision typically includes factual findings, an overview of the applicable laws, the arbitrator's final and binding decision, the rationale for the decision, and any monetary or nonmonetary remedy awarded to the claimant.

Discovery – The period during which the claimant and respondent exchange documents and other evidence related to the claim. Discovery may be in written form, the deposition testimony of a witness, or other tangible things such as audio recordings, video recordings, pictures, and/or social media postings.

Dispute – A disagreement of a legal nature between Charter and a current employee, a former employee, or an applicant for employment. Solution Channel is the mechanism for resolving covered employment-related disputes.

Evidence – Documents, testimony, written statements, and other tangible items that prove or disprove facts relating to a claim.

Final and Binding – A term used to describe a decision of the arbitrator that generally cannot be appealed to any other person or body and is enforceable like a court ruling or judgment.

Legal Representative – An attorney authorized to act on behalf of Charter or a claimant during the arbitration process. You may involve a legal representative, but this is not required. Each party bears the cost of an attorney, unless the arbitrator orders otherwise.

Remedy – The relief or damages awarded by an arbitrator to the claimant if the arbitrator finds in favor of the claimant. The type of relief will vary, based on the nature of the claim, but will be limited to the form of relief that would be available in court or through an administrative agency.

Respondent – The party who is defending a claim.

Statute of Limitations – The period of time during which the law allows an individual or entity to pursue a particular type of claim. If an individual or entity files a claim beyond this period of time, the claim will not be covered by Solution Channel and the claimant will be notified that the claim has been closed. For example, if the statute of limitations for filing a claim to collect a debt is two years, then the claim must be filed no later than two years after the debt was first owed, otherwise, the statute of limitations has run and the claim will be closed. Also, to be timely, any claim that must be filed with an administrative agency or body as a precondition or prerequisite to filing the claim in court, must be filed with Solution Channel within the time period by which the charge, complaint or other similar document would have had to be filed with the agency or other administrative body. If you file a charge or complaint with an administrative agency or body, any participation by Charter in the proceeding shall not be deemed a waiver of your obligation to arbitrate your claims pursuant to this Agreement. By participating in this Program, you waive any argument that Charter's participation in such a proceeding acts as a waiver or modification of the parties' agreement to arbitrate. If an aggrieved party pursues an administrative charge or complaint and files a timely complaint with Solution Channel, the arbitration shall proceed as quickly as possible under these Guidelines.

Testimony – Oral statements made under oath and transcribed by a court reporter, at either a deposition or an arbitration.

Waiver – An agreement to give up a right in exchange for receiving a benefit.



©2017 Charter Communications



## NOTICE

PLEASE READ THE FOLLOWING MUTUAL ARBITRATION AGREEMENT ("AGREEMENT") CAREFULLY.  IF YOU ACCEPT THE TERMS OF THE AGREEMENT (WHETHER YOU ARE AN APPLICANT, CURRENT EMPLOYEE, OR FORMER EMPLOYEE), YOU ARE AGREEING TO SUBMIT ANY COVERED EMPLOYMENT-RELATED DISPUTE BETWEEN YOU AND CHARTER COMMUNICATIONS (CHARTER) TO BINDING ARBITRATION. YOU ARE ALSO AGREEING TO WAIVE ANY RIGHT TO LITIGATE THE DISPUTE IN A COURT AND/OR HAVE THE DISPUTE DECIDED BY A JURY.

## MUTUAL ARBITRATION AGREEMENT

A.  **Arbitration Requirement.** You and Charter mutually agree that, as a condition of Charter considering your application for employment and/or your employment with Charter, any dispute arising out of or relating to your pre-employment application and/or employment with Charter or the termination of that relationship, except as specifically excluded below, must be resolved through binding arbitration by a private and neutral arbitrator, to be jointly chosen by you and Charter.

B.  **Covered Claims.** You and Charter mutually agree that the following disputes, claims, and controversies (collectively referred to as "covered claims") will be submitted to arbitration in accordance with this Agreement:

   1.  all  disputes, claims, and controversies that could be asserted in court or before an administrative agency or for which you or Charter have an alleged cause of action related to pre-employment, employment, employment termination or post-employment-related claims, whether the claims are denominated as tort, contract, common law, or statutory claims (whether under local, state or federal law), including without limitation claims for: collection of overpaid wages and commissions, recovery of reimbursed tuition or relocation expense reimbursement, damage to or loss of Charter property, recovery of unauthorized charges on company credit card; claims for unlawful termination, unlawful failure to hire or failure to promote, wage and hour-based claims including claims for unpaid wages, commissions, or other compensation or penalties (including meal and rest break claims, claims for inaccurate wage statements, claims for reimbursement of expenses); unlawful discrimination or harassment (including such claims based upon race, color, national origin, sex, pregnancy, age, religion, sexual orientation, disability, and any other prohibited grounds), claims for unlawful retaliation, claims arising under the Family Medical Leave Act, Americans with Disabilities Act or similar state laws, including unlawful denial of or interference with a leave of absence, claims for unlawful denial of accommodation or failure to engage in the interactive process, whistleblower claims, claims for violations of the Sarbanes-Oxley Act, claims for violations of Occupational Safety and Health Administration or other safety or occupational health, whether arising before, during or after the termination of your employment, claims related to background and any and all other pre-employment and employment checks, including any claims brought under the Fair Credit Reporting Act and/or similar federal, state or local statutes or ordinances;

   2.  all disputes, claims, and controversies set forth in Section B.1 above, whether made against Charter, or any of its subsidiaries, parent, or affiliated entities, or its individual officers, directors, shareholders, agents, managers, or employees (in an official or personal capacity, if such claim against the employee arises from or in any way relates to your pre-employment or employment relationship with Charter); and

   3.  all disputes related to the arbitrability of any claim or controversy.

Version Date – September 25, 2017

|1



C.  **Excluded Claims.** All other claims not covered under Section B above will not be submitted to arbitration under this Agreement.  In addition, the following claims are specifically excluded from arbitration under this Agreement:

1.  Claims for workers' compensation benefits (other than retaliation for pursuing such claims);

2.  Claims for unemployment compensation benefits (other than retaliation for pursuing such claims);

3.  Claims arising under the National Labor Relations Act;

4.  Claims for violations of the Employee Retirement Income Security Act of 1974, or for breach of employee benefits or welfare plans that contain procedures for resolution of disputes under those plans, which shall be governed by those procedures;

5.  Claims arising under the Health Insurance Portability and Accountability Act of 1996;

6.  Claims for injunctive or other equitable relief related to unfair competition and the taking, use or unauthorized disclosure of trade secrets or confidential information;

7.  Claims arising under separation or severance agreements or non-compete agreements (unless arbitration is provided for under the terms of the agreement);

8.  Claims related to corrective action or other performance management that does not result in termination of employment;

9.  Claims older than the statute of limitations applicable to such claims;

10.  Claims of theft or embezzlement or any criminal conduct;

11.  Claims over the validity of any party's intellectual property rights;

12.  Any claims covered by a collective bargaining agreement, a severance agreement, or a written employment contract (although nothing in this Agreement shall limit the applicability of any arbitration or other dispute resolution provision contained in those agreements);

13.  Any claims expressly non-arbitrable by statute, including 12 U.S.C. §5567(d)(2); 7 U.S.C. §26(n); or 18 U.S.C. §1514A(e)(2);

14.  Any claims that have already been filed in federal or state court at the time you execute this Agreement, provided that such claims were not previously subject to any arbitration agreement.

Nothing in this Agreement shall prevent you from filing and pursuing the following: an administrative proceeding before the Equal Employment Opportunity Commission (EEOC) or an equivalent state or local agency (although if you choose to pursue the claim, any proceeding on the merits or for damages will be subject to arbitration); a proceeding before the National Labor Relations Board (NLRB); a claim for medical and/or disability benefits under applicable workers' compensation laws; or a claim for unemployment compensation benefits.

D.  **Individual Claims Limitation and Representative, Collective, and Class Action Waiver.** You and Charter agree that both parties may only bring claims against the other party in their individual capacity and not as a plaintiff or class member in any purported class or representative proceeding, whether those claims are covered claims under Section B, or excluded claims under Section C.  Additionally, the arbitrator shall not be permitted to order consolidation of claims or a representative, class, or collective, arbitration.



E.  **Time Limits.** The aggrieved party must give written notice of the claim, in the manner required by this Agreement, within the time limit established by the applicable statute of limitations for each legal claim being asserted.  To be timely, any claim that must be filed with an administrative agency or body as a precondition or prerequisite to filing the claim in court, must be filed with Solution Channel within the time period by which the charge, complaint or other similar document would have had to be filed with the agency or other administrative body.  Whether a demand for arbitration is untimely is an affirmative defense, and will be decided by the arbitrator before any hearing on the merits of the aggrieved party's claim.  If you file a charge or complaint with an administrative agency or body, any participation by Charter in the proceeding shall not be deemed a waiver of your obligation to arbitrate your claims pursuant to this Agreement.  You agree not to assert, and agree to waive, any argument that Charter's participation in such a proceeding acts as a waiver or modification of the parties' agreement to arbitrate.

F.  **Claim.** To pursue arbitration of a dispute under this Agreement, you must first submit a written claim at www.CharterSolutionChannel.com, a site hosted by a third party designated by Charter. In your claim, you must (1) describe the nature and basis of the claim or dispute, (2) set forth the specific relief sought, and (3) include a sworn verification that the dispute is covered by this Agreement and that the information submitted in the notice is accurate.  In the event that Charter intends to seek arbitration of a dispute under this Agreement, it must send by certified mail to the individual's last known address, a written claim that meets the requirements of this Section F.

G.  **Location.** Any arbitration hearing conducted under this Agreement will take place within 100 miles of the Charter office to which you last reported during your employment as of the date of the filing of the Notice, or the Charter office at which you sought employment, unless another location is mutually selected by the parties.

H.  **Selection of Arbitrator.** The arbitration shall be held before one arbitrator who is a current member of the American Arbitration Association (AAA) and is listed on the Employment Dispute Resolution Roster.  Within 45 days after submission of the claim, Charter will request from the AAA a list of at least five arbitrators willing to hear and decide the dispute.  Within 20 days after receipt of the list from the AAA, the parties will select an arbitrator to hear and resolve the dispute and will notify the AAA of the selection of an arbitrator.

I.  **Conduct of Arbitration.**

1.  *Rules.*  Arbitration hearings will be conducted pursuant to the Solution Channel Program Guidelines and the arbitrator shall have the sole authority to determine whether a particular claim or controversy is arbitrable.

2.  *Authority of the Arbitrator.*  The arbitrator will decide all discovery disputes related to the arbitration.  Unless the parties agree to submit written arguments in lieu of a hearing on the merits of the claim[s], the arbitrator will schedule and conduct an evidentiary hearing, at which the arbitrator will hear testimony and receive evidence.  The arbitrator shall apply the governing law applicable to any substantive claim asserted, including the applicable law necessary to determine when the claim arose and any damages.

3.  *Waiver of Hearing.*  The parties may, at any time prior to a hearing, mutually agree to forego a hearing, and instead submit all evidence and argument to the arbitrator in writing.

4.  *Burden of Proof.*  The arbitrator will apply the burdens of proof and law applicable to the claim, had the claim been adjudicated in court.

5.  *Decision.*  The arbitrator will issue a decision within 30 days after the close of an arbitration hearing, or at a later time on which the parties agree.  The decision will be signed and dated by the arbitrator, and will contain

Version Date – September 25, 2017



express findings of fact and the legal reasons for the decision and any award, except as otherwise provided for under the Federal Arbitration Act.

J.  **Enforcement of the Decision.** Judgment on the arbitrator's decision may be entered in any court having jurisdiction over the matter, within 45 days following its issuance.

K.  **Arbitration Costs.** Charter will pay the AAA administrative fees and the arbitrator's fees and expenses.  All other costs, fees and expenses associated with the arbitration, including without limitation each party's attorneys' fees, will be borne by the party incurring the costs, fees and expenses.  The parties agree and acknowledge, however, that the failure or refusal of either party to submit to arbitration as required by this Agreement will constitute a material breach of this Agreement.  If any judicial action or proceeding is commenced in order to compel arbitration, and if arbitration is in fact compelled or the party resisting arbitration submits to arbitration following the commencement of the action or proceeding, the party that resisted arbitration will be required to pay to the other party all costs, fees and expenses that they incur in compelling arbitration, including, without limitation, reasonable attorneys' fees.

L.  **Jury Trial and Litigation Waiver.** You and Charter understand that, by agreeing to arbitration, both parties are waiving their right to demand a jury in any claim that is subject to arbitration under this Agreement.  In addition, in the event a dispute between you and Charter is not arbitrable under this Agreement for any reason and is pursued in court, you and Charter agree to waive any right to a jury trial that might otherwise exist.  Although this Agreement does not preclude either party from filing timely charges with any applicable administrative agency, neither party will ever seek or accept any damages, remedies, or other relief (any right to which is hereby waived) except through the binding arbitration process set forth in this Agreement.

M.  **Conflicts.** In the event of a conflict between this Agreement and the Solution Channel Program Guidelines, the terms of this Agreement will control.

N.  **No Retaliation.** Charter will not retaliate against you for seeking, in good faith, to resolve a dispute pursuant to this Agreement.

O.  **Employment-At-Will.** This Agreement in no way alters the at-will employment relationship between you and Charter.  You and Charter are free to terminate the employment relationship at any time for any lawful reason, and your employment is not for any specific duration.

P.  **Entire Agreement.** This Agreement sets for the complete agreement of the parties on the subject of resolution of the covered disputes, and supersedes any prior or contemporaneous oral or written understanding on this subject; provided, however, that this Agreement will not apply to the resolution of any charges, complaints, or lawsuits that have been filed with an administrative agency or court before the Effective Date of this Agreement.

Q.  **Severability.** The parties explicitly acknowledge and agree that the provisions of this Agreement are both reasonable and enforceable.  However, if any portion or provision of this Agreement (including, without implication of limitation, any portion or provision of any section of this Agreement) is determined to be illegal, invalid, or unenforceable by any court of competent jurisdiction and cannot be modified to be legal, valid, or enforceable, the remainder of this Agreement shall not be affected by such determination and shall be valid and enforceable to the fullest extent permitted by law, and said illegal, invalid, or unenforceable portion or provision shall be deemed not to be a part of this Agreement.  The only exception to this severability provision is, should the dispute involve a representative, collective or class action claim, and the representative, collective, and class action waiver (Section D) is found to be



invalid or unenforceable for any reason, then this Agreement (except for the parties' agreement to waive a jury trial) shall be null and void with respect to such representative, collective, and/or class claim only, and the dispute will not be arbitrable with respect to such claim(s).

R.  **Federal Arbitration Act.** This Agreement will be governed by the Federal Arbitration Act.

S.  **Consideration.** You agree that Charter has offered you sufficient consideration for this Agreement, including, without limitation, consideration of your application for employment with Charter, your employment with Charter, and/or Charter's mutual agreement to arbitrate disputes.

T.  **Termination.** This Agreement survives the termination of your employment with Charter (including if you are later re-employed by and/or if your employment with Charter terminates again).

U.  **Voluntary.** You acknowledge that you have carefully read this Agreement, fully understand what it means, and are entering into it voluntarily.

V.  **Effective Date.** This Agreement is effective and you are legally bound by the terms of Charter's Solution Channel and this Agreement, as of the date of your consent to participate in Solution Channel.

# EXHIBIT 2

| | |
|---|---|
| **From:** | Paul Marchand </O=CHARTER COMMUNICATIONS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN= 1EBF6C9DAC6F4BC2AE0754F77DCB8233-R> |
| **Sent:** | Friday, October 6, 2017 1:09 PM |
| **To:** | Harper, Lionel E |
| **Subject:** | Charter's Code of Conduct and Employee Handbook |

View web version



October 6, 2017

We should all take personal pride in ensuring our company acts with integrity and respect. We strive to do the right thing – no matter the circumstance or the situation.

Our reputation and the creation of long-term value rest on how we conduct ourselves individually and collectively as a company. In this regard, our behavior is governed by the standards, guidelines and policies outlined in a few key resources. These resources explain what you should expect in the workplace, as well as the company's expectations of you.

Our *Code of Conduct* embodies our business ideals, describes behavior employees should strive to model, and provides the framework for reporting ethical concerns in the workplace. The *Employee Handbook* sets forth the policies, guidelines and rules that govern workplace behavior. Further integrating our three legacy companies, we have refreshed Charter's *Code of Conduct* and *Employee Handbook* to ensure we're all abiding by the same standards. The basic principles and values that guide our daily decisions remain unchanged. The *Code of Conduct* and *Employee Handbook* are available on Panorama. The *Employee Handbook* includes references and links to various policies. We also have various business unit policies and other corporate policies to guide our activity. You are encouraged to review and familiarize yourself with the *Code of Conduct,* the *Employee Handbook* and these additional policies. We'll continue to see success in the marketplace by putting our customers first, acting with integrity and making professionalism our daily routine.

Even with clearly articulated standards, guidelines and policies, we understand that workplace

conflicts arise from time to time. The vast majority of these will be appropriately resolved through informal channels (such as speaking directly to your supervisor, manager or local human resources representative), though we also recognize that some employment-based disputes may be better addressed through a more structured and formal resolution process, similar to the process that was already the standard at Time Warner Cable and for our senior executives, which has covered over 40,000 Charter employees. In the unlikely event of a dispute not resolved through the normal channels, Charter has launched *Solution Channel*, a program that allows you and the company to efficiently resolve covered employment-related legal disputes through binding arbitration.

By participating in *Solution Channel*, you and Charter both waive the right to initiate or participate in court litigation (including class, collective and representative actions) involving a covered claim and/or the right to a jury trial involving any such claim. More detailed information about *Solution Channel* is located on Panorama. Unless you opt out of participating in *Solution Channel* within the next 30 days, you will be enrolled. Instructions for opting out of *Solution Channel* are also located on Panorama.

Thank you for doing your part to make Charter a positive, supportive and professional place to work. We are proud of our company and how we behave.

Paul Marchand                                    Rick Dykhouse
Executive Vice President,                         Executive Vice President,
Chief Human Resources Officer                     General Counsel and Corporate Secretary

E-MAIL CONFIDENTIALITY NOTICE:
The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message or any attachment is strictly prohibited.

© 2017 Charter Communications

This email was sent to Lionel.Harper@charter.com from PaulMarchandEVP@charter.com
Receive in Plain Text

# EXHIBIT 3

Case 2:19-cv-00902-DC-DMC     Document 9-1     Filed 05/24/19     Page 206 of 215



## SOLUTION CHANNEL

Support & Resources          Report an Issue          Solution Channel

# Solution Channel

## *Charter's Program for Resolution of Employment-Based Legal Disputes*

## Our Commitment

Charter is committed to creating and maintaining a work environment where employees are treated fairly, respectfully, honestly, professionally, and with integrity.

## Dealing With Conflict in the Workplace

Charter offers a number of ways to address work-related concerns if they arise. Charter maintains an Open Door Policy that allows employees to freely share ideas, make suggestions, and express concerns informally and without repercussion. You are encouraged to confer with your supervisor, another leader, or the HR team, to discuss any employment-related ideas, suggestions, or concerns. Ethics or compliance issues should be reported through EthicsPoint.

Charter is confident that the vast majority of workplace conflicts will be appropriately resolved through less formal channels. However, we also recognize that there may be some employment-based disputes that are best addressed through a more structured and formal resolution process.

## Introduction to Solution Channel

Solution Channel is a dispute resolution alternative developed by Charter, where a current employee, a former employee, an applicant for employment, or Charter can efficiently and privately resolve covered employment-based legal disputes. Solution Channel is not intended to be a substitute for the manner in which routine conflicts, concerns, and issues in the workplace are handled. Rather, it is reserved for the resolution of certain legal disputes that arise during the course of the employment and pre-employment relationship. Participation in Solution Channel means that you and Charter agree

to waive any right to participate in court litigation involving covered disputes and to arbitrate those disputes that are not successfully resolved following the internal review phase of the process.

# At a Glance

Through Solution Channel, Charter is committed to reaching a mutually satisfactory resolution of covered legal disputes. The process involves multiple steps, any of which may result in resolution of the dispute. If necessary, the last step is final and binding arbitration of the dispute. Solution Channel offers a number of tangible benefits, including the following:

**Fair, Equitable and Speedy Resolutions.** It can take years to resolve a claim in court, but Solution Channel offers the opportunity to have claims heard and decided by a neutral arbitrator within a year after a claim is filed.

**Cost Efficient.** Charter pays for the arbitrator, the arbitration site, and the claim filing fees. The speedy resolution available through Solution Channel reduces the costs and attorneys' fees that might typically be incurred in court litigation.

**Direct Involvement.** Claims are decided by an independent, neutral arbitrator that the employee and Charter jointly select from a panel of experienced arbitrators.

**Streamlined Procedures.** Court litigation involves numerous hearings, depositions, and other proceedings, but arbitrations involve fewer steps, allowing a case to be resolved within a year of a claim being filed.

## Key Documents
- Mutual Arbitration Agreement
- Program Guidelines

# Submitting a Claim Through Solution Channel

To utilize Solution Channel, you must submit a claim online. To submit a claim or check the status of a claim you previously filed, go to www.CharterSolutionChannel.com.

Submitted claims will first be reviewed by Charter to determine whether they are covered by Solution Channel. If a claim is covered by Solution Channel, it will then be reviewed internally by Charter. Claims not resolved at this phase in the process may proceed to arbitration.

# EXHIBIT 4



## NOTICE

PLEASE READ THE FOLLOWING MUTUAL ARBITRATION AGREEMENT ("AGREEMENT") CAREFULLY.  IF YOU ACCEPT THE TERMS OF THE AGREEMENT (WHETHER YOU ARE AN APPLICANT, CURRENT EMPLOYEE, OR FORMER EMPLOYEE), YOU ARE AGREEING TO SUBMIT ANY COVERED EMPLOYMENT-RELATED DISPUTE BETWEEN YOU AND CHARTER COMMUNICATIONS (CHARTER) TO BINDING ARBITRATION. YOU ARE ALSO AGREEING TO WAIVE ANY RIGHT TO LITIGATE THE DISPUTE IN A COURT AND/OR HAVE THE DISPUTE DECIDED BY A JURY.

## MUTUAL ARBITRATION AGREEMENT

A.  **Arbitration Requirement.** You and Charter mutually agree that, as a condition of Charter considering your application for employment and/or your employment with Charter, any dispute arising out of or relating to your pre-employment application and/or employment with Charter or the termination of that relationship, except as specifically excluded below, must be resolved through binding arbitration by a private and neutral arbitrator, to be jointly chosen by you and Charter.

B.  **Covered Claims.** You and Charter mutually agree that the following disputes, claims, and controversies (collectively referred to as "covered claims") will be submitted to arbitration in accordance with this Agreement:

1.  all  disputes, claims, and controversies that could be asserted in court or before an administrative agency or for which you or Charter have an alleged cause of action related to pre-employment, employment, employment termination or post-employment-related claims, whether the claims are denominated as tort, contract, common law, or statutory claims (whether under local, state or federal law), including without limitation claims for: collection of overpaid wages and commissions, recovery of reimbursed tuition or relocation expense reimbursement, damage to or loss of Charter property, recovery of unauthorized charges on company credit card; claims for unlawful termination, unlawful failure to hire or failure to promote, wage and hour-based claims including claims for unpaid wages, commissions, or other compensation or penalties (including meal and rest break claims, claims for inaccurate wage statements, claims for reimbursement of expenses); unlawful discrimination or harassment (including such claims based upon race, color, national origin, sex, pregnancy, age, religion, sexual orientation, disability, and any other prohibited grounds), claims for unlawful retaliation, claims arising under the Family Medical Leave Act, Americans with Disabilities Act or similar state laws, including unlawful denial of or interference with a leave of absence, claims for unlawful denial of accommodation or failure to engage in the interactive process, whistleblower claims, claims for violations of the Sarbanes-Oxley Act, claims for violations of Occupational Safety and Health Administration or other safety or occupational health, whether arising before, during or after the termination of your employment, claims related to background and any and all other pre-employment and employment checks, including any claims brought under the Fair Credit Reporting Act and/or similar federal, state or local statutes or ordinances;

2.  all disputes, claims, and controversies set forth in Section B.1 above, whether made against Charter, or any of its subsidiaries, parent, or affiliated entities, or its individual officers, directors, shareholders, agents, managers, or employees (in an official or personal capacity, if such claim against the employee arises from or in any way relates to your pre-employment or employment relationship with Charter); and

3.  all disputes related to the arbitrability of any claim or controversy.



C. **Excluded Claims.** All other claims not covered under Section B above will not be submitted to arbitration under this Agreement. In addition, the following claims are specifically excluded from arbitration under this Agreement:

1. Claims for workers' compensation benefits (other than retaliation for pursuing such claims);

2. Claims for unemployment compensation benefits (other than retaliation for pursuing such claims);

3. Claims arising under the National Labor Relations Act;

4. Claims for violations of the Employee Retirement Income Security Act of 1974, or for breach of employee benefits or welfare plans that contain procedures for resolution of disputes under those plans, which shall be governed by those procedures;

5. Claims arising under the Health Insurance Portability and Accountability Act of 1996;

6. Claims for injunctive or other equitable relief related to unfair competition and the taking, use or unauthorized disclosure of trade secrets or confidential information;

7. Claims arising under separation or severance agreements or non-compete agreements (unless arbitration is provided for under the terms of the agreement);

8. Claims related to corrective action or other performance management that does not result in termination of employment;

9. Claims older than the statute of limitations applicable to such claims;

10. Claims of theft or embezzlement or any criminal conduct;

11. Claims over the validity of any party's intellectual property rights;

12. Any claims covered by a collective bargaining agreement, a severance agreement, or a written employment contract (although nothing in this Agreement shall limit the applicability of any arbitration or other dispute resolution provision contained in those agreements);

13. Any claims expressly non-arbitrable by statute, including 12 U.S.C. §5567(d)(2); 7 U.S.C. §26(n); or 18 U.S.C. §1514A(e)(2);

14. Any claims that have already been filed in federal or state court at the time you execute this Agreement, provided that such claims were not previously subject to any arbitration agreement.

Nothing in this Agreement shall prevent you from filing and pursuing the following: an administrative proceeding before the Equal Employment Opportunity Commission (EEOC) or an equivalent state or local agency (although if you choose to pursue the claim, any proceeding on the merits or for damages will be subject to arbitration); a proceeding before the National Labor Relations Board (NLRB); a claim for medical and/or disability benefits under applicable workers' compensation laws; or a claim for unemployment compensation benefits.

D. **Individual Claims Limitation and Representative, Collective, and Class Action Waiver.** You and Charter agree that both parties may only bring claims against the other party in their individual capacity and not as a plaintiff or class member in any purported class or representative proceeding, whether those claims are covered claims under Section B, or excluded claims under Section C. Additionally, the arbitrator shall not be permitted to order consolidation of claims or a representative, class, or collective, arbitration.

Version Date – September 25, 2017



E.   **Time Limits.** The aggrieved party must give written notice of the claim, in the manner required by this Agreement, within the time limit established by the applicable statute of limitations for each legal claim being asserted.  To be timely, any claim that must be filed with an administrative agency or body as a precondition or prerequisite to filing the claim in court, must be filed with Solution Channel within the time period by which the charge, complaint or other similar document would have had to be filed with the agency or other administrative body.  Whether a demand for arbitration is untimely is an affirmative defense, and will be decided by the arbitrator before any hearing on the merits of the aggrieved party's claim.  If you file a charge or complaint with an administrative agency or body, any participation by Charter in the proceeding shall not be deemed a waiver of your obligation to arbitrate your claims pursuant to this Agreement.  You agree not to assert, and agree to waive, any argument that Charter's participation in such a proceeding acts as a waiver or modification of the parties' agreement to arbitrate.

F.   **Claim.** To pursue arbitration of a dispute under this Agreement, you must first submit a written claim at www.CharterSolutionChannel.com, a site hosted by a third party designated by Charter. In your claim, you must (1) describe the nature and basis of the claim or dispute, (2) set forth the specific relief sought, and (3) include a sworn verification that the dispute is covered by this Agreement and that the information submitted in the notice is accurate.  In the event that Charter intends to seek arbitration of a dispute under this Agreement, it must send by certified mail to the individual's last known address, a written claim that meets the requirements of this Section F.

G.   **Location.** Any arbitration hearing conducted under this Agreement will take place within 100 miles of the Charter office to which you last reported during your employment as of the date of the filing of the Notice, or the Charter office at which you sought employment, unless another location is mutually selected by the parties.

H.   **Selection of Arbitrator.** The arbitration shall be held before one arbitrator who is a current member of the American Arbitration Association (AAA) and is listed on the Employment Dispute Resolution Roster.  Within 45 days after submission of the claim, Charter will request from the AAA a list of at least five arbitrators willing to hear and decide the dispute.  Within 20 days after receipt of the list from the AAA, the parties will select an arbitrator to hear and resolve the dispute and will notify the AAA of the selection of an arbitrator.

I.   **Conduct of Arbitration.**

  1.   *Rules.*  Arbitration hearings will be conducted pursuant to the Solution Channel Program Guidelines and the arbitrator shall have the sole authority to determine whether a particular claim or controversy is arbitrable.

  2.   *Authority of the Arbitrator.*  The arbitrator will decide all discovery disputes related to the arbitration.  Unless the parties agree to submit written arguments in lieu of a hearing on the merits of the claim[s], the arbitrator will schedule and conduct an evidentiary hearing, at which the arbitrator will hear testimony and receive evidence.  The arbitrator shall apply the governing law applicable to any substantive claim asserted, including the applicable law necessary to determine when the claim arose and any damages.

  3.   *Waiver of Hearing.*  The parties may, at any time prior to a hearing, mutually agree to forego a hearing, and instead submit all evidence and argument to the arbitrator in writing.

  4.   *Burden of Proof.*  The arbitrator will apply the burdens of proof and law applicable to the claim, had the claim been adjudicated in court.

  5.   *Decision.*  The arbitrator will issue a decision within 30 days after the close of an arbitration hearing, or at a later time on which the parties agree.  The decision will be signed and dated by the arbitrator, and will contain



express findings of fact and the legal reasons for the decision and any award, except as otherwise provided for under the Federal Arbitration Act.

J.    **Enforcement of the Decision.** Judgment on the arbitrator's decision may be entered in any court having jurisdiction over the matter, within 45 days following its issuance.

K.    **Arbitration Costs.** Charter will pay the AAA administrative fees and the arbitrator's fees and expenses. All other costs, fees and expenses associated with the arbitration, including without limitation each party's attorneys' fees, will be borne by the party incurring the costs, fees and expenses. The parties agree and acknowledge, however, that the failure or refusal of either party to submit to arbitration as required by this Agreement will constitute a material breach of this Agreement. If any judicial action or proceeding is commenced in order to compel arbitration, and if arbitration is in fact compelled or the party resisting arbitration submits to arbitration following the commencement of the action or proceeding, the party that resisted arbitration will be required to pay to the other party all costs, fees and expenses that they incur in compelling arbitration, including, without limitation, reasonable attorneys' fees.

L.    **Jury Trial and Litigation Waiver.** You and Charter understand that, by agreeing to arbitration, both parties are waiving their right to demand a jury in any claim that is subject to arbitration under this Agreement. In addition, in the event a dispute between you and Charter is not arbitrable under this Agreement for any reason and is pursued in court, you and Charter agree to waive any right to a jury trial that might otherwise exist. Although this Agreement does not preclude either party from filing timely charges with any applicable administrative agency, neither party will ever seek or accept any damages, remedies, or other relief (any right to which is hereby waived) except through the binding arbitration process set forth in this Agreement.

M.    **Conflicts.** In the event of a conflict between this Agreement and the Solution Channel Program Guidelines, the terms of this Agreement will control.

N.    **No Retaliation.** Charter will not retaliate against you for seeking, in good faith, to resolve a dispute pursuant to this Agreement.

O.    **Employment-At-Will.** This Agreement in no way alters the at-will employment relationship between you and Charter. You and Charter are free to terminate the employment relationship at any time for any lawful reason, and your employment is not for any specific duration.

P.    **Entire Agreement.** This Agreement sets for the complete agreement of the parties on the subject of resolution of the covered disputes, and supersedes any prior or contemporaneous oral or written understanding on this subject; provided, however, that this Agreement will not apply to the resolution of any charges, complaints, or lawsuits that have been filed with an administrative agency or court before the Effective Date of this Agreement.

Q.    **Severability.** The parties explicitly acknowledge and agree that the provisions of this Agreement are both reasonable and enforceable. However, if any portion or provision of this Agreement (including, without implication of limitation, any portion or provision of any section of this Agreement) is determined to be illegal, invalid, or unenforceable by any court of competent jurisdiction and cannot be modified to be legal, valid, or enforceable, the remainder of this Agreement shall not be affected by such determination and shall be valid and enforceable to the fullest extent permitted by law, and said illegal, invalid, or unenforceable portion or provision shall be deemed not to be a part of this Agreement. The only exception to this severability provision is, should the dispute involve a representative, collective or class action claim, and the representative, collective, and class action waiver (Section D) is found to be



invalid or unenforceable for any reason, then this Agreement (except for the parties' agreement to waive a jury trial) shall be null and void with respect to such representative, collective, and/or class claim only, and the dispute will not be arbitrable with respect to such claim(s).

R.  **Federal Arbitration Act.** This Agreement will be governed by the Federal Arbitration Act.

S.  **Consideration.** You agree that Charter has offered you sufficient consideration for this Agreement, including, without limitation, consideration of your application for employment with Charter, your employment with Charter, and/or Charter's mutual agreement to arbitrate disputes.

T.  **Termination.** This Agreement survives the termination of your employment with Charter (including if you are later re-employed by and/or if your employment with Charter terminates again).

U.  **Voluntary.** You acknowledge that you have carefully read this Agreement, fully understand what it means, and are entering into it voluntarily.

V.  **Effective Date.** This Agreement is effective and you are legally bound by the terms of Charter's Solution Channel and this Agreement, as of the date of your consent to participate in Solution Channel.

# EXHIBIT 5

## Solution Channel

**Lionel Harper**

**Electronic Opt-Out Acknowledgment**

I am a participant in Solution Channel

|  |  |
|---|---|
| **Employee ID:** | 6034111 |
| **Hire Date:** | 09/18/2017 |
| **Business Unit:** | MRKTG, Marketing |
| **Location:** | CA10481, 5797 Eastside Rd |
| **Participation Date:** | November 6, 2017 |