1    MORGAN, LEWIS & BOCKIUS LLP
     Kathryn T. McGuigan, Bar No. 232112
2    kathryn.mcguigan@morganlewis.com
     300 South Grand Avenue
3    Twenty-Second Floor
     Los Angeles, CA  90071-3132
4    Tel:    +1.213.612.2500
     Fax:    +1.213.612.2501
5

6    MORGAN, LEWIS & BOCKIUS LLP
     Zachary W. Shine, Bar No. 271522
7    zachary.shine@morganlewis.com
     Nicole L. Antonopoulos, Bar No. 306882
8    nicole.antonopoulos@morganlewis.com
     One Market, Spear Street Tower
9    San Francisco, CA  94105
     Tel:    +1.415.442.1000
10   Fax:    +1.213.612.2501
     Attorneys for Defendants
11   Charter Communications, LLC and Charter
     Communications, Inc.
12
                    UNITED STATES DISTRICT COURT
13
                   EASTERN DISTRICT OF CALIFORNIA
14

15   LIONEL HARPER, individually and on behalf    Case No. 2:19-cv-00902-WBS-DMC
     of all others similarly and all aggrieved
16   employees,                                   **DECLARATION OF KATHRYN
                                                   MCGUIGAN IN SUPPORT OF
17                  Plaintiff,                     DEFENDANTS' MOTION TO COMPEL
                                                   ARBITRATION OF PLAINTIFF'S
18          vs.                                    INDIVIDUAL CLAIMS, DISMISS THE
                                                   PUTATIVE CLASS CLAIMS, AND
19   CHARTER COMMUNICATIONS, LLC,                  STAY THE PAGA CLAIMS**
     CHARTER COMMUNICATIONS, INC., and
20   Does 1 through 25,                            Date:   July 29, 2019
                                                   Time:   1:30 p.m.
21                  Defendants.                    Dept:   Courtroom 5
                                                   Hon. William B. Shubb
22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

DB2/ 36752958.2

                                    MCGUIGAN DECLARATION ISO
                                      DEFENDANTS' MOTION
                                    TO COMPEL ARBITRATION
                                CASE NO.  2:19-CV-00902-WBS-DMC

I, Kathryn T. McGuigan, hereby declare as follows:

1.      I am an attorney with Morgan, Lewis & Bockius and counsel of record for Defendants Charter Communications, Inc. and Charter Communications, LLC (together "Charter").  I am an attorney licensed to practice before all courts in the State of California.  I make this Declaration in support of Charter's Motion to Compel Arbitration of Plaintiff's Individual Claims, Dismiss the Putative Class Claims, and Stay the PAGA Claims.  I have personal knowledge of the facts set forth in this declaration and, if I were called as a witness, I could and would testify competently to them.

2.      In approximately April 2018, JAMS contacted Charter to notify it that JAMS received a request from Plaintiff Lionel Harper ("Plaintiff") to initiate mediation with JAMS of his employment-related claims against Charter.  In response, Charter's counsel informed JAMS that Charter was willing to arbitrate the dispute about Plaintiff's employment with Charter.

3.      On June 5, 2018, Plaintiff's counsel, Jamin Soderstrom, sent a letter to Charter's counsel concerning "potential litigation related to Mr. Harper's employment and termination." Attached as **Exhibit 1** is a true and correct copy of the letter that Charter's counsel received from Plaintiff's counsel in June 2018.

4.      On July 3, 2018, my colleague Zachary W. Shine sent a letter by U.S. Mail and email to Mr. Soderstrom.  I was copied on Mr. Shine's correspondence.  The letter described Plaintiff's agreement to a JAMS arbitration agreement at the time that he was hired by Charter in September 2017, and requested that Plaintiff arbitrate his employment-related claims in accordance with the JAMS arbitration agreement.  The letter enclosed a copy of the JAMS arbitration agreement.  Attached as **Exhibit 2** is a true and correct copy of Mr. Shine's July 3, 2018 letter.

5.      On November 19, 2018, Plaintiff filed a demand for arbitration with JAMS and requested a very limited ruling as to inarbitrability under the terms of the JAMS arbitration agreement.  In his demand, Plaintiff only requested that the Arbitrator rule on whether the class and representative action waiver in the JAMS agreement voided the entire agreement per its own

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

1

MCGUIGAN DECLARATION ISO
DEFENDANTS' MOTION
TO COMPEL ARBITRATION
CASE NO.  2:19-CV-00902-WBS-DMC

DB2/ 36752958.2

terms.  Attached as **Exhibit 3** is a true and correct copy of Plaintiff's arbitration demand filed with JAMS.

6.      On or around April 25, 2019, the Arbitrator issued an Order Dismissing Arbitration.  The Arbitrator's Order is based solely on the unique terms of the JAMS arbitration agreement.  Specifically, the Arbitrator's Order found that the JAMS arbitration agreement included an invalid and unenforceable representative waiver, which triggered a "poison pill provision," thereby rending that specific agreement null and void by its own unique terms.  The Arbitrator's Order did not make any rulings on the substance of Plaintiff's claims.  Attached as **Exhibit 4** is a true and correct copy of the Arbitrator's April 25, 2019 Order Dismissing Arbitration.

7.      On May 3, 2019, Plaintiff filed a complaint in Superior Court alleging ten causes of action against Charter: (1) failure to pay minimum wages for all hours worked in violation of California Labor Code §§ 1182.12, 1194, 1197, and 1194.4; (2) failure to pay overtime wages for all overtime hours worked in violation of California Labor Code §§ 510 and 1197; (3) failure to provide meal periods or pay premium wages in lieu thereof in violation of California Labor Code §§ 512 and 226.7; (4) failure to provide rest breaks or pay premium wages in lieu thereof in violation of California Labor Code § 226.7; (5) unlawful deduction of wages under California Labor Code § 221; (6) failure to provide accurate wage statements in violation of California Labor Code § 226; (7) failure to pay all wages owed upon termination in violation of California Labor Code § 203; (8) failure to provide timely and complete copies of employment records in violation of California Labor Code §§ 226, 432, and 1198.5; (9) violation of California's Unfair Competition Law under California Business and Professions Code § 17200; and (10) civil penalties under the Private Attorney General Act ("PAGA") (the "Complaint").

8.      On May 17, 2019, Charter removed the Complaint to this Court.

9.      During my discussions with Charter about Plaintiff's May 3, 2019 Complaint, Charter informed me that Charter's Solution Channel Program, an updated employment-based legal dispute resolution program that was implemented in October 2017, applied to Plaintiff, and

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

DB2/ 36752958.2

2

MCGUIGAN DECLARATION ISO
DEFENDANTS' MOTION
TO COMPEL ARBITRATION
CASE NO.  2:19-CV-00902-WBS-DMC

1    that though his participation in the Solution Channel Program, Plaintiff agreed to be bound by a

2    subsequent arbitration agreement that superseded the JAMS arbitration agreement and contained

3    different terms than the JAMS arbitration agreement.

4        10.    On May 22, 2019, my colleague Nicole L. Antonopoulos sent a meet and confer

5    correspondence by U.S. Mail and email informing Mr. Soderstrom that Charter implemented an

6    updated dispute resolution program in October 2017, called Solution Channel that applied to

7    Plaintiff.  The letter described Plaintiff's participation in Solution Channel and requested that

8    Plaintiff arbitrate his claims on an individual basis in accordance with the Solution Channel

9    Arbitration Agreement.  Ms. Antonopoulos also enclosed copies of the Solution Channel Program

10   materials and documents indicating Plaintiff's receipt of those materials, as well as Plaintiff's

11   receipt of information regarding how to opt out of the program.  I was copied on Ms.

12   Antonopoulos' May 22, 2019 email correspondence and letter.  A true and correct copy of the

13   May 22, 2019 email correspondence and letter to Plaintiff's counsel is attached as **Exhibit 5.**

14       11.    On May 24, 2019, Mr. Soderstrom responded by email and stated that he did not

15   believe that Plaintiff was bound by the Solution Channel arbitration agreement.  A true and

16   correct copy of the May 24, 2019 email correspondence that I received from Plaintiff's counsel is

17   attached as **Exhibit 6.**

18       12.    Neither Plaintiff nor Defendants have propounded any discovery in this matter.

19   The Parties have noticed no depositions, served no discovery requests or requests for admissions,

20   and not asked to inspect any documents.

21       I declare under penalty of perjury under the laws of California and the United States that

22   the foregoing is true and correct.

23       Executed on this 14th day of June 2019, at Los Angeles, California.

24

25

26   _____

27                      Kathryn T. McGuigan

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

DB2/ 36752958.2

3

MCGUIGAN DECLARATION ISO
DEFENDANTS' MOTION
TO COMPEL ARBITRATION
CASE NO.  2:19-CV-00902-WBS-DMC

# EXHIBIT 1



## SODERSTROM
### LAW

| | |
|---|---|
| 3 Park Plaza, Suite 100 | 949.667.4700 (phone) |
| Irvine, California 92614 | 949.424.8091 (facsimile) |
| soderstromlawfirm.com | jamin@soderstromlawfirm.com |

June 5, 2018

**BY EMAIL TO COUNSEL**

Charter Communications, Inc. and affiliates
c/o Mr. Gregory S. Drake (counsel)
400 Atlantic Avenue
Stamford, Connecticut 06901
gregory.s.drake@charter.com

Re:     *Request for Lionel Harper's Employment Records*

To Whom It May Concern:

I am counsel for Mr. Lionel Harper, a former employee of Charter Communications, Inc. and possibly one or more of its affiliates (collectively, "Charter"). All future communications related to Mr. Harper should be directed to me.

Pursuant to California Labor Code sections 226, 432, and 1198.5, and applicable Industrial Wage Commission Orders, I am requesting that Charter provide me with copies of the following records for Mr. Harper:

1.     His personnel files.

2.     Each employee handbook applicable to his employment.

3.     All of his itemized wage statements, pay stubs, and time records.

4.     All of his business-related expense reimbursement records.

5.     All documents signed by him (physically or electronically) in the course of his employment, including but not limited to any employment agreement, arbitration agreement, release agreement, or any other document, instrument, or agreement.

6.     All records related to his performance, including but not limited to any formal performance evaluations or informal performance evaluations (e.g., emails between or among him, his colleagues, and/or his superiors).

June 5, 2018
Page 2 of 2

      7.      All records related to any grievance concerning him, including but not limited to any written communications (including emails) between or among him, his colleagues, and/or his superiors.

I have enclosed with this letter an "Authorization for Release of Employment Records" signed by Mr. Harper covering all such records.

Please provide me with copies of all of the documents identified above as soon as practicable, but in no event later than 21 days from the date of this request.

Due to potential litigation related to Mr. Harper's employment and termination, Charter is instructed to put in place a litigation hold concerning any and all documents and records (paper and electronic) that relate or refer to Mr. Harper's employment in any way and to Charter's employment policies and practices generally. This litigation hold should include, but not be limited to, preserving in their current form all emails, text messages, social media messages, and any other forms of communications or records created or maintained by Charter or on Charter's behalf or by one or more of Charter's managers or human resources personnel.

Thank you for your anticipated cooperation in this matter.

                            Very truly yours,

                            SODERSTROM LAW PC

                            Jamin S. Soderstrom

*Enclosure*



# SODERSTROM
## — LAW —

3 Park Plaza, Suite 100          949.667.4700 (phone)
Irvine, California 92614         949.424.8091 (facsimile)
soderstromlawfirm.com            jamin@soderstromlawfirm.com

## AUTHORIZATION FOR RELEASE OF EMPLOYMENT RECORDS

To Whom It May Concern:

I, Lionel Harper, request that Charter Communications, Inc. and any of its applicable affiliates send copies of the following documents to my counsel, Soderstrom Law PC, located at 3 Park Plaza, Suite 100, Irvine, California 92614.

(i)     My personnel file.
(ii)    My itemized wage statements, pay stubs, and time records.
(iii)   My business-related expense reimbursement records.
(iv)    Any and all documents I signed (physically or electronically) in the course of my employment.
(v)     Any employment agreement, arbitration agreement, alternative dispute resolution agreement, release agreement, or other form of instrument or agreement that I signed related to my employment.
(vi)    All records related to my performance.
(vii)   All records related to any grievance that concerns me.
(viii)  Any employee handbook applicable to my employment.
(ix)    Any other records that relate to my compensation, time scheduled or worked, or other employment-related matters.
(x)     Any other records I am authorized to obtain or review under California Labor Code sections 226, 432, or 1198.5, or under any applicable Industrial Wage Commission Order.

06/23/1970                                  0042
_____                   _____
Date of Birth                               Last 4 Digits of SSN

                                            ┌─DocuSigned by:
6/4/2018 8:29:44 PM PDT                      │ Lionel Harper
                                            └─A2F8E7FE5556475...
_____                   _____
Date                                        Employee

Business Law    |    Employment Law    |    Consumer Law    |    Intellectual Property

# EXHIBIT 2

**From:**                Shine, Zachary W. <zachary.shine@morganlewis.com>
**Sent:**                Tuesday, July 3, 2018 4:52 PM
**To:**                   jamin@soderstromlawfirm.com
**Cc:**                   McGuigan, Kathryn T.
**Subject:**           Harper / Charter Communications, Inc.
**Attachments:**      7-3-2018 Letter to Jamin S. Soderstrom.pdf

Good afternoon Mr. Soderstrom,

We represent Charter with regard to the claims by your client, Lionel Harper. Please direct all future correspondence to us.

Attached please find a letter in response to your June 5, 2018 letter as well as other issues. The original will follow by mail. Please feel free to contact me directly with any questions or comments.

Regards,

Zack

**Zachary W. Shine**
**Morgan, Lewis & Bockius LLP**
One Market, Spear Street Tower | San Francisco, CA 94105
Direct: +1.415.442.1163 | Main: +1.415.442.1000 | Fax: +1.415.442.1001
zachary.shine@morganlewis.com | www.morganlewis.com
Assistant: Constance J. Ericson | +1.415.442.1602 | constance.ericson@morganlewis.com

# Morgan Lewis

**Zachary W. Shine**
+1.415.442.1163
zachary.shine@morganlewis.com

July 3, 2018

**VIA EMAIL AND U.S. MAIL**

Jamin S. Soderstrom
Soderstrom Law, P.C.
3 Part Plaza, Suite 100
Irvine, California 92614

Re:      Harper v. Charter Communications, Inc.

Dear Mr. Soderstrom:

This firm represents Charter Communications, Inc. ("Charter") with regard to the claims by your client Lionel Harper.  Please direct all future correspondence to me.

With regard to your request for Mr. Harper's personnel records in your June 5, 2018 letter, as you may or may not be aware, Mr. Harper has already initiated the litigation process against Charter with JAMS.  As a result, Charter is not obligated to produce Mr. Harper's personnel documents under California Labor Code section 1198.5.  *See* Cal. Lab. Code § 1198.5(n) ("...the right of the employee, former employee, or his or her representative to inspect or copy personnel records under this section ceases during the pendency of the lawsuit in the court with original jurisdiction").

Additionally, under Section 226(b), an employer "shall afford *current and former employees* the right to inspect or copy records pertaining to their employment, upon reasonable request to the employer."  Similarly, Section 432 states *an employee* may obtain a copy of an instrument signed by the employee upon request.  There is no requirement under either Sections 226(b) or 432 that an employer provide *an employee's representative* with copies of the records.  If Mr. Harper makes a request for these records himself, as opposed to a request from his representative, Charter will provide these records to Mr. Harper.

By way of this letter, Charter also requests that your client stipulate to arbitration of any and all claims against Charter.  Mr. Harper, at the time of his hire, entered into a Mutual Arbitration Agreement ("Agreement") with Charter in which he agreed to arbitrate all employment-related claims.  A copy of the Agreement, which was acknowledged by Mr. Harper, is enclosed with this letter.  The Agreement states "that any and all claims, disputes, and/or controversies between you and Charter arising from or related to your employment with Charter shall be submitted exclusively to and determined exclusively by binding arbitration before a single Judicial Arbitration and Medians Services, Inc. ("JAMS") arbitrator under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*"

**Morgan, Lewis & Bockius** LLP

One Market
Spear Street Tower
San Francisco, CA  94105-1596      **T** +1.415.442.1000
United States                                  **F** +1.415.442.1001

Jamin S. Soderstrom
July 3, 2018
Page 2

We understand Mr. Harper has already initiated the alternative dispute resolution process with JAMS, and are hopeful he will continue to abide by his agreement to submit any claims he intends to assert against Charter to binding arbitration.

Since Mr. Harper agreed to arbitrate any employment-related disputes with Charter, we hereby request that Mr. Harper stipulate to arbitration of his claims.  If Mr. Harper agrees, we will provide a proposed stipulation.  In the absence of a stipulation, should Mr. Harper decide to file a complaint in court, Charter will be forced to move to compel arbitration.

Please let me know at your earliest convenience whether Mr. Harper will stipulate to binding arbitration with JAMS pursuant to the Mutual Arbitration Agreement.

I look forward to hearing from you.


Sincerely,

Zachary W. Shine



## <u>MUTUAL AGREEMENT TO ARBITRATE</u>

By accepting employment with Charter, you and Charter (as defined below) agree that any and all claims, disputes, and/or controversies between you and Charter arising from or related to your employment with Charter shall be submitted exclusively to and determined exclusively by binding arbitration before a single Judicial Arbitration and Mediations Services, Inc. ("JAMS") arbitrator under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"). Examples of such claims include, but are not limited to, claims (1) under the Fair Labor Standards Act ("FLSA"), (2) under state labor laws, (3) under any state law governing Charter's obligation to provide meal, rest, or other breaks, (4) alleging that you were paid improperly or paid insufficient wages, overtime, compensation, or that Charter failed to comply with any law relating to the payment of wages, (5) under any other state law related to your employment with Charter, (6) by Charter against you for breach of duty of loyalty, (7) by Charter against you for breach of fiduciary duty, (8) by Charter or you for breach of contract, (9) by Charter against you for theft of trade secrets/conversion, or (10) by Charter or you for breach of duty of good faith and fair dealing. You and Charter further agree that all arbitration proceedings shall be conducted in accordance with the JAMS Employment Arbitration Rules & Procedures and JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness. JAMS' arbitration rules and the location of JAMS' resolution centers may be found online at the web address provided above in the form of a hyperlink. As set forth in the applicable JAMS rules, Charter will bear all costs unique to arbitration, except for the Case Initiation Fee, which will be split between you and Charter in accordance with JAMS' fee schedule.  **<u>Please read the JAMS rules carefully before electronically signing this agreement.</u>**

For purposes of this Agreement, "Charter" means Charter Communications, Inc. together with its parents, subsidiaries, affiliates, successors and assigns.

You and Charter agree that the arbitrator's decision shall be final and binding on the parties (except as otherwise provided for under the FAA). The arbitration shall be conducted at the JAMS resolution center that is closest to your residence. You have the right to retain and be represented by counsel in any such arbitration.

**REPRESENTATIVE, COLLECTIVE, AND CLASS ACTION WAIVER: You and Charter understand, acknowledge and agree that the terms of this Agreement include a waiver of any rights that you or Charter may have to bring or participate in an action against each other on a representative, class, or collective basis and understand and agree that the arbitrator shall not be permitted to order consolidation of claims or a representative, class, or collective, arbitration. This waiver does not take away or restrict your or Charter's right to pursue your or its own claims, but only requires that any such claims be pursued in your or Charter's own individual capacity, rather than on a representative,**



**class, or collective basis.**

In the event a dispute between you and Charter is not arbitrable under this Agreement for any reason and is pursued in court, you and Charter agree to waive any right to a jury trial that might otherwise exist.

You and Charter agree that if the Agreement or any clause or term of the Agreement is found to be void, unenforceable, or unconscionable, the remainder of the Agreement shall be enforced without the invalid, unenforceable, or unconscionable clause or term, or the application of the clause or term shall be limited as to avoid any invalid, unenforceable, or unconscionable result. The only exception to this severability provision is, should the dispute involve a representative, collective or class action claim, and the REPRESENTATIVE, COLLECTIVE, AND CLASS ACTION WAIVER is found to be invalid or unenforceable for any reason, then this entire Agreement (except for the parties' agreement to waive a jury trial) shall be null and void and the dispute will not be arbitrable.

This Arbitration Agreement supersedes any other agreement to arbitrate previously in place between you and Charter.

Nothing herein shall prevent you from filing and pursuing the following: an administrative proceeding before the U.S. Equal Employment Opportunity Commission or an equivalent state or local agency (although if you choose to pursue a claim following the exhaustion of such administrative proceeding, that claim would be subject to arbitration); a proceeding before the National Labor Relations Board; a claim for medical and disability benefits under workers' compensation; or a claim for unemployment benefits.

# EXHIBIT 3

**IN THE MATTER OF JAMS ARBITRATION OF**

| | |
|---|---|
| **LIONEL HARPER,** | **Case No.** |
| **Claimant,** | |
| **v.** | **DEMAND FOR ARBITRATION AND REQUEST FOR RULING AS TO INARBITRABILITY** |
| **CHARTER COMMUNICATIONS, LLC, CHARTER COMMUNICATIONS, INC., and DOES 1 to 25,** | |
| **Respondents.** | **Filed:  November 19, 2018**<br>**Venue:  San Francisco, California** |

Claimant LIONEL HARPER ("Claimant"), brings this arbitration against Respondents CHARTER COMMUNICATIONS, LLC, CHARTER COMMUNICATIONS, INC., and DOES 1 through 25 (collectively, "Respondents"), and alleges as follows:

**JURISDICTION, VENUE, AND APPLICABLE RULES**

1.      Claimant and Respondents entered into a Mutual Agreement to Arbitrate ("Arbitration Agreement") that selected JAMS as the arbitration provider. *See* Exhibit 1.

2.      The Arbitration Agreement states that "arbitration shall be conducted at the JAMS resolution center that is closest to your residence." *Id.* Claimant requests that the San Francisco be set as the venue of the arbitration, subject to further agreement among the parties.

3.      The Arbitration Agreement states that "all arbitration proceedings shall be conducted in accordance with the JAMS Employment Arbitration Rules & Procedures and JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness" (the "JAMS Employment Rules"). *Id.*

4.      The Arbitration Agreement states that arbitration shall be "before a single [JAMS] arbitrator." *Id.*

## **PARTIES**

5.      Claimant is a resident of California. Claimant worked for Respondents in California from September 2017 to March 2018.

6.      Respondent CHARTER COMMUNICATIONS, LLC is a limited liability company doing business in California and is a joint employer of Claimant.

7.      Respondent CHARTER COMMUNICATIONS, INC. is a corporation doing business in California and is a joint employer of Claimant.

8.      Claimant does not know the true names or capacities, whether individual or corporate, of Respondents sued as DOES 1 through 25 and, for that reason, sues such Respondents under fictitious names. Claimant is informed and believe that each DOE defendant was responsible in some respect for the violations alleged herein and proximately caused Claimant and other similarly situated employees to be subject to illegal employment practices and to suffer harm, and that each DOE defendant controlled their work and was a joint employer. Claimant will seek leave to amend as and when the true names and capacities of each DOE defendant become known.

9.      On September 14, 2018, Claimant complied with the requirements of Labor Code section 2699.3(a) by providing written notice via online filing to the Labor and Workforce Development Agency ("LWDA"), and via certified mail return receipt requested to Respondents, of the specific provisions of the Labor Code alleged to have been violated, including the facts and theories that support the alleged violations. Claimant did not receive notice from the LWDA that it intended to investigate the violations alleged in Claimant's written notice. Claimant therefore has complied with Labor Code section 2699.3's notice requirements and is authorized to

2                                                          DEMAND FOR ARBITRATION

commence a civil action under the Private Attorney General Act, Lab. Code § 2698 *et seq.* ("PAGA"). A copy of Claimant's written PAGA notice is attached as <u>Exhibit 2</u>.

<b><u>REQUEST FOR THRESHOLD RULINGS</u></b>

10.     Claimant respectfully seeks the following threshold rulings from the arbitrator:

**Threshold Ruling 1**:

The Parties' identification and incorporation of the JAMS Employment Rules into the Arbitration Agreement irrevocably delegated to the arbitrator the authority to determine the enforceability, scope, and arbitrability issues raised in this Demand.

**Threshold Ruling 2**:

The entire Arbitration Agreement is "null and void" by its own terms based on the unenforceable waiver of the right to bring any form of representative claim and the unenforceable waiver of the right to seek public injunctive relief in any forum.

**Threshold Ruling 3**:

No part of the disputes between the Parties is arbitrable and there is no arbitration jurisdiction beyond the ability of the arbitrator to rule that the Arbitration Agreement is "null and void."

11.     Claimant requests that the arbitrator permit briefing and conduct a hearing on the threshold issues identified above and issue a written ruling holding that the Arbitration Agreement is null and void dismissing the arbitration for lack of jurisdiction. Claimant expressly reserves the right to assert class action, collective action, and representative action claims on behalf of similarly situated employees and other aggrieved employees of Respondents in court.

12.     In the event the arbitrator determines that the Arbitration Agreement is not "null and void" by its own terms and jurisdiction exists, Claimant asks the arbitrator to consider and, following a hearing, rule on the claims asserted below. This request includes consideration of and

DEMAND FOR ARBITRATION

a ruling on the merits of Claimant's representative PAGA claim because, only to the extent the Arbitration Agreement is not null and void, Claimant hereby consents on behalf of the State to arbitrate representative PAGA claims asserted herein and in Claimant's PAGA written notice.

## FACTUAL ALLEGATIONS

13.     Respondents market and sell various services, including television, Internet, and phone services, in California and nationwide.

14.     Claimant worked for Respondents in California as a salesperson from September 2017 to March 2018. During his employment, Claimant worked with numerous other similarly situated employees. Claimant's working experience gave him a thorough understanding of Respondents' employment policies and practices.

15.     Claimant personally experienced and witnessed Respondents engaging in unlawful and unfair business practices. Respondents continue to commit these unlawful and unfair business practices to this day.

## CAUSES OF ACTION

16.     The following causes of action are brought on an individual basis to the extent the arbitrator determines the Arbitration Agreement is not "null and void" by its own terms. Claimant expressly reserves the right to assert such claims on a class, collective, and/or representative basis in court to the extent the arbitrator rules that there is no arbitration jurisdiction over such claims.

17.     Notwithstanding the previous paragraph, Claimant asserts the PAGA claim on a representative basis on behalf of the State and all other aggrieved employees of Respondents. To the extent the Arbitration Agreement is not null and void, Claimant consents on the State's behalf to arbitrate the representative PAGA claim.

DEMAND FOR ARBITRATION

**First Cause of Action**

**Failure to Pay Minimum Wages for All Hours Worked**

18.     Claimant incorporates all prior paragraphs.

19.     Labor Code sections 1182.12, 1194, and 1197 requires employers to pay at least the legal minimum wage for all hours worked by nonexempt employees in California.

20.     As a matter of policy and practice, Respondents failed to pay Claimant and other employees the required minimum wages for all hours worked. Specifically, but without limitation, Respondents regularly required Claimant and other employees during training to work a full day and then complete homework after the work day ended. The training and homework combined required employees to work more than 8 hours in a day, but Respondents did not keep track of or pay employees all wages owed for the time worked over 8 hours in a day or 40 hours in a week during training. Respondents further failed to properly keep track of all hours worked outside of training weeks and failed to pay employees all wages owed for the time worked over 8 hours in a day or 40 hours in a week. Claimant and other similarly situated employees were misclassified as exempt employees during all of their training days as well as their post-training days.

21.     As a result of these policies and practices, Respondents do not pay its training employees and post-training employees all of the minimum and overtime wages they are due, does not maintain complete records of all time worked, and does not provide accurate wage statements.

22.     Claimant was deprived of the minimum wages he was owed as a direct result of Respondents' unlawful actions. Respondents have violated Labor Code sections 1182.12, 1194, and 1197, and under Labor Code section 1194.2, Claimant is entitled to recover unpaid minimum wages, liquidated damages, interest, costs, and reasonable attorneys' fees.

## Second Cause of Action

### Failure to Pay Overtime Wages for All Overtime Hours Worked

23.     Claimant incorporates all prior paragraphs.

24.     Labor Code section 510 requires employers to compensate all nonexempt employees at 1.5 times their regular hourly rate for all hours worked over 8 hours in a day and over 40 hours in a week, and two times their regular hourly rate for all hours worked over 12 hours in a day or over 8 hours on the seventh day of the week.

25.     As a matter of policy and practice, Respondents failed to pay Claimant and other employees the required overtime wages for all hours worked. Specifically, but without limitation, Respondents regularly required Claimant and other employees during training to work a full day and then complete homework after the work day ended. The training and homework combined required employees to work more than 8 hours in a day, but Respondents did not keep track of or pay employees all wages owed for the time worked over 8 hours in a day or 40 hours in a week during training. Respondents further failed to properly keep track of all hours worked outside of training weeks and failed to pay employees all wages owed for the time worked over 8 hours in a day or 40 hours in a week. Claimant and other similarly situated employees were misclassified as exempt employees during all of their training days as well as their post-training days.

26.     Claimant was deprived of the overtime wages he was owed for all hours worked as a result of Respondents' unlawful actions. Respondents have violated Labor Code sections 510 and 1197, and Claimant is entitled to recover unpaid overtime wages, interest, costs, and reasonable attorneys' fees.

## Third Cause of Action

### Failure to Provide Meal Periods or Pay Premium Wages In Lieu Thereof

27.     Claimant incorporates all prior paragraphs.

DEMAND FOR ARBITRATION

28.     Labor Code section 512 requires employers to provide an off-duty, uninterrupted 30-minute meal period if the employee works more than five hours in a day, and a second meal period if the employee works more than 10 hours in a day. These meal periods must be free of all work duties.

29.     Respondents failed to provide timely, off-duty, uninterrupted 30-minute meal periods to nonexempt employees like Claimant and failed to compensate them one additional hour of pay for each meal period that is missed, shortened, interrupted, on-duty, or untimely. Respondents did not require or allow Claimant and other nonexempt employees to clock-out and clock-in for each meal period and accurately record the existence and length of each meal period taken, and knowingly suffered, permitted, or required work to be performed during what should be a meal period. Respondents failed to provide compliant meal periods both during training weeks and after training weeks.

30.     Respondents never paid Claimant any premium wages for meal periods that were untimely or that were missed, shortened, interrupted, or on-duty.

31.     Respondents have violated Labor Code sections 512 and 226.7, and Claimant is entitled to recover premium wages in the amount of one additional hour of pay at his regular rate of pay for each violation, costs, and reasonable attorneys' fees.

### Fourth Cause of Action

### Failure to Provide Rest Breaks or Pay Premium Wages In Lieu Thereof

32.     Claimant incorporates all prior paragraphs.

33.     Labor Code section 226.7 requires employers to provide a rest period mandated by an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health. Under paragraph 12 of the governing Industrial Wage Order,

7                                                          DEMAND FOR ARBITRATION

employers must permit nonexempt employees to take 10 minutes of rest for every four hours worked, taken in the middle of the work period unless impracticable. Under Labor Code section 226.7 and paragraph 12 of the governing Industrial Wage Order, when employers do not provide compliant rest breaks, they must pay employees an additional hour of pay at the employees' regular rate of pay for each violation.

34.     Respondents failed to provide timely, off-duty, uninterrupted 10-minute rest periods to nonexempt employees like Claimant and failed to compensate them one additional hour of pay for each day a compliant rest period was not provided. Respondents failed to provide compliant rest breaks both during training and during post-training work.

35.     Respondents never paid Claimant or other employees any premium wages for rest breaks that were untimely or were missed, shortened, interrupted, or on-duty.

36.     Respondents have violated Labor Code section 226.7, and Claimant is entitled to recover premium wages in the amount of one additional hour of pay at his regular rate of pay for each violation, costs, and reasonable attorneys' fees.

### Fifth Cause of Action

### Unlawful Deduction of Wages under Section 221

37.     Claimant incorporates all prior paragraphs.

38.     California Labor Code sections 221, 223, and 224 protect employees against unlawful deductions of their earned wages. Under Section 221, "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." Relatedly, under Section 223, "Where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract." Section 224 authorizes certain deductions that an employee "expressly authorize[s] in writing," but forbids

deductions that amount to a "rebate or deduction from the standard wage . . . pursuant to wage agreement or statute." Additionally, under California Labor Code section 2751, when an employer enters into a contract of employment and the contemplated payment method includes commissions, the contract must "set forth the method by which the commissions shall be computed and paid."

39.    Respondents recruit and incentivize sales employees like Claimant by emphasizing their ability to earn commissions. However, Respondents impose unlawful and unfair incentive compensation terms and then fail to pay all amounts owed under such terms. The terms result in Respondents unlawfully and unfairly keeping, failing to pay, and/or deducting Claimant's and other employees' commission wages.

40.    Respondents also failed to perform all of their obligations under the terms and unfairly construes the terms and modifies the terms in its favor.

41.    Respondents have not paid Claimant and similarly situated employees all of the commission wages they are owed, and have unlawfully and unfairly deducted, reconciled, or clawed back commission wages that were properly earned.

42.    Respondents violated Sections 221, 223, and 224 each time they failed to correctly and fairly calculate and pay earned commission and each time they have deducted, clawed back, or otherwise reconciled Claimant's and other employees' incentive compensation. Respondents further relied on methods for the computation and payment of commissions that are not set forth in the applicable terms in violation of Section 2751.

43.    Respondents have violated Labor Code sections 221, 223, 224, and 2751, and Claimant is entitled to recover the amount of deductions unlawfully taken, interest, costs, and reasonable attorneys' fees.

## Sixth Cause of Action

### Failure to Provide Accurate Wage Statements

44.    Claimant incorporates all prior paragraphs.

45.    Labor Code section 226 provides that employers shall furnish their employees with accurate itemized statements in writing showing gross wages earned, total hours worked, all deductions, net wages earned, all applicable hourly rates and the corresponding number of hours worked at each hourly rate, and the inclusive dates of all pay periods.

46.    As explained above, Respondents failed to keep accurate records reflecting Claimant's and other employees' hours worked and when meal periods occurred. Respondents also failed to provide accurate wages statements that reflected the total hours worked, all deductions, and all gross and net wages earned, including commission wages. Claimant's wage statements never reflected any premium wage being paid for late, shortened, missed, or on-duty meal periods or rest breaks. Claimant's final several wage statements also failed to accurately record the time worked, wages due, and inclusive dates of the applicable pay periods.

47.    Respondents' violations were knowing and willful.

48.    Claimant is entitled to recover the greater of his actual damages or statutory penalties, costs, and reasonable attorneys' fees.

## Seventh Cause of Action

### Failure to Pay All Wages Owed Upon Termination

49.    Claimant incorporates all prior paragraphs.

50.    Labor Code section 201 provides that discharged employees are entitled to be paid all wages due at the time of discharge, and Labor Code section 202 provides that employees who quit without at least 72 hours' notice are entitled to be paid all wages due within 72 hours of quitting. Under Labor Code section 203, willful failure to timely pay discharged and quitting

employees all wages due requires employers to pay waiting time penalties in the amount of one day's compensation at the employees' regular rates of pay for each day the wages are not paid, up to 30 days.

51.     Respondents failed to timely and accurately pay Claimant and other employees who were terminated or quit all due but unpaid wages, and Respondents do not pay any wages as waiting time penalties. As discussed above, Respondents did not accurately record all hours worked and all meal period and rest breaks taken late, missed, shortened, or interrupted, and Respondents do not pay premium wages when a compliant meal period or rest break is not provided. Nor do Respondents pay all incentive compensation that is earned and payable. Consequently, when Respondents paid Claimant and other former employees' final paychecks, they were all miscalculated and too small.

52.     Claimant is entitled to recover waiting time penalties, costs, and reasonable attorneys' fees.

### Eighth Cause of Action

### Failure to Provide Timely and Complete Copies of Employment Records

53.     Claimant incorporates all prior paragraphs.

54.     Labor Code section 226 requires employers to keep for a least three years copies of Claimant's wage statements and to provide them within 21 days of the date of a request. Labor Code section 432 requires employers to provide employees with a copy of any instrument that the employee signed related to his or her obtaining or holding of employment. Labor Code section 1198.5 requires employers to provide employees within 30 days from the date of a request copies of their personnel records.

55.     Claimant, through his counsel via a written and signed authorization, requested that Respondents provide copies of his personnel file, including all wage statements, instruments he

signed or acknowledged concerning his employment, and other records concerning his obtaining and holding of employment, pursuant to Labor Code sections 226, 432, and 1198.5. On July 3, 2018, counsel for Respondents responded to Claimant's request in writing refusing to produce any records and took the position that (i) an email sent by Claimant to a JAMS representative inquiring about the possibility of a mediation constituted "the pendency of [a] lawsuit in the court with original jurisdiction" during which time Respondents obligations under Labor Code section 1198.5 ceases, and (ii) only an employee personally, not an employee's authorized legal representative, is entitled to request copies of records under Labor Code sections 226 and 432.

56.     Respondents failed to produce any records under Labor Code sections 226, 432, and 1198.5 within the statutory time periods. On July 18, 2018, more than six weeks after Employee's written request, Respondents finally consented to producing such records to Claimant's counsel. Respondents ultimately produced an incomplete set of Claimant's records on September 4, 2018, 13 weeks after his initial written request. Respondents failed to provide copies of any offer letter, all records related to Claimant's performance and obtaining/holding employment, the employee handbook that governed Claimant's employment, and signed copies or acknowledgements of such records.

57.     Claimant is entitled to recover a $750 statutory penalty, costs, and reasonable attorneys' fees for violation of Section 226 and another $750 statutory penalty, costs, and reasonable attorneys' fees for violation of Section 1198.5. Claimant is also entitled to injunctive relief to require Respondents' future compliance with Sections 226 and 1198.5.

## Ninth Cause of Action

## Violation of California's Unfair Competition Law ("UCL")

58.     Claimant incorporates all prior paragraphs.

59.     California Business and Professions Code section 17200 ("UCL") defines unfair

competition as an "unlawful" or "unfair" business act or practice.

60.     Respondents are each a "person" under UCL section 17021.

61.     Respondents have engaged and continue to engage in business practices that are both unlawful and unfair and therefore violate the UCL.

62.     Respondents' failures described above—including their failures to pay all minimum and overtime wages, provide compliant meal periods and rest breaks or pay premium wages in lieu thereof, and provide complete and accurate wage statements, and their taking of unlawful deductions and failure to provide timely copies of employment records—all constitute unlawful acts and practices prohibited by the Labor Code and UCL. These failures also independently constitute unfair acts and practices under the UCL.

63.     As a result of their unlawful and unfair acts and practices, Respondents have reaped and continue to reap unfair benefits and illegal profits at the expense of Claimant and other nonexempt employees.

64.     Respondents should be made to disgorge their ill-gotten gains and restore to Claimants and class members as restitution the wrongfully withheld wages to which they are entitled, as well as interest on such wages.

65.     Claimant and other nonexempt employees also seek and are entitled to individual, representative, and public injunctive and declaratory relief that compels Respondents to stop their unlawful and unfair practices and fix their broken timekeeping, recordkeeping, and wage payment systems and practices and their employee classifications.

66.     This action is designed to ensure the enforcement of important rights affecting the public interest generally and the interests of a large number of employees. The necessity and financial burden of private enforcement is great, and the risks to the named Claimant for stepping forward are also significant. Claimant is thus entitled to recover her reasonable attorneys' fees

upon prevailing, and, in the interest of justice, such fees should not be paid out of the recovery. *See* Cal. Code Civ. Proc. § 1021.5.

## Tenth Cause of Action

### PAGA Civil Penalties

67.     Claimant incorporates all prior paragraphs.

68.     Claimant is an aggrieved employee under PAGA. On September 14, 2018, Claimant timely filed a written PAGA notice with the LWDA and sent a copy of such notice by certified mail return receipt requested to Respondents. Claimant is authorized to bring a civil action against Respondents under PAGA and recover civil penalties in addition to other forms of available relief. As a representative of the state, but only to the extent the Arbitration Agreement is not "null and void" by its own terms, Claimant consents on the State's behalf to arbitrate representative PAGA claims seeking civil penalties on behalf of all aggrieved employees.

69.     Claimant identifies and seeks to recover civil penalties for the following Labor Code violations and any others discovered during the pendency of this arbitration:

a.     Failure to calculate and pay minimum and overtime wages in violation of Labor Code sections 510, 1182.12, and 1197;

b.     Failure to provide timely, complete, and uninterrupted meal periods and rest breaks or pay premium wages in lieu thereof in violation of Labor Code sections 226.7 and 512;

c.     Unlawful deductions in violation of Labor Code sections 221, 223, 224, and 2751;

d.     Failure to pay all wages earned upon termination or quitting and failure to pay waiting time penalty wages in violation of Labor Code sections 201, 202, and 203;

e.     Failure to pay all wages earned at least twice during each calendar month in violation of Labor Code section 204;

DEMAND FOR ARBITRATION

f.      Failure to maintain accurate and complete records and issue accurate wage statements in violation of Labor Code sections 226 and 1174(d); and

g.      Failure to timely provide a copy of personnel records upon request in violation of Labor Code sections 226, 432, and 1198.5.

70.     Claimant seeks to recover civil penalties on behalf of the state and all aggrieved employees who performed work for Respondents during the relevant time period under the sections of the Labor Code identified above, under Labor Code sections 201, 202, 203, 204, 210, 223, 225.5, 226, 226.3, 226.7, 256, 510, 512, 558, 558.1, 1174, 1174.5, 1182.12, 1194, 1194.2, 1197, 1197.1, 1197.5, 1198.5, 1206, and 2699, and under any additional Labor Code sections that Respondents violated as determined during the pendency of this arbitration.

71.     Claimant further seeks to recover his reasonable costs and attorneys' fees.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Claimant prays for the following relief:

A.      A threshold ruling that the arbitrator decides all enforceability, scope, and arbitrability issues;

B.      A threshold ruling that the Arbitration Agreement is "null and void" by its own terms and that all disputes among the Parties must be litigated in court;

C.      A threshold ruling that no jurisdiction exists beyond a ruling that the Arbitration Agreement is "null and void" by its own terms;

D.      Alternatively, a ruling that Claimant can pursue his representative PAGA claim in arbitration;

E.      Alternatively, a ruling, after proper discovery and a hearing, in favor of Claimant on each of his causes of action and

a.      an award of all unpaid or underpaid wages, with interest,

       b.      an award of actual and liquidated damages;

       c.      an award of statutory penalties;

       d.      an award of civil penalties on behalf of the State for all aggrieved employees;

       e.      restitution and disgorgement;

       f.      pre-judgment and post-judgment interest as allowed by law;

F.      Individual, representative, and public equitable, injunctive, and declaratory relief to remedy Respondents' violations of California law, including but not limited to an order enjoining Respondents from continuing their unlawful and unfair timekeeping, recordkeeping, wage payment, employee classification, and related practices;

G.      Reasonable attorneys' fees and costs under the Labor Code and/or under Cal. Code Civ. Proc. § 1021.5;

H.      Such additional and further relief as the arbitrator may deem just and proper; and

I.      A written and reasoned award following an in-person hearing on the issues and claims raised in this arbitration.


Dated: November 19, 2018           SODERSTROM LAW PC

                               By: */s/ Jamin S. Soderstrom*
                               *Counsel for Claimant and the Proposed Class*

                                             DEMAND FOR ARBITRATION

# EXHIBIT 1



## MUTUAL AGREEMENT TO ARBITRATE

By accepting employment with Charter, you and Charter (as defined below) agree that any and all claims, disputes, and/or controversies between you and Charter arising from or related to your employment with Charter shall be submitted exclusively to and determined exclusively by binding arbitration before a single Judicial Arbitration and Mediations Services, Inc. ("JAMS") arbitrator under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"). Examples of such claims include, but are not limited to, claims (1) under the Fair Labor Standards Act ("FLSA"), (2) under state labor laws, (3) under any state law governing Charter's obligation to provide meal, rest, or other breaks, (4) alleging that you were paid improperly or paid insufficient wages, overtime, compensation, or that Charter failed to comply with any law relating to the payment of wages, (5) under any other state law related to your employment with Charter, (6) by Charter against you for breach of duty of loyalty, (7) by Charter against you for breach of fiduciary duty, (8) by Charter or you for breach of contract, (9) by Charter against you for theft of trade secrets/conversion, or (10) by Charter or you for breach of duty of good faith and fair dealing. You and Charter further agree that all arbitration proceedings shall be conducted in accordance with the JAMS Employment Arbitration Rules & Procedures and JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness. JAMS' arbitration rules and the location of JAMS' resolution centers may be found online at the web address provided above in the form of a hyperlink. As set forth in the applicable JAMS rules, Charter will bear all costs unique to arbitration, except for the Case Initiation Fee, which will be split between you and Charter in accordance with JAMS' fee schedule.  **Please read the JAMS rules carefully before electronically signing this agreement.**

For purposes of this Agreement, "Charter" means Charter Communications, Inc. together with its parents, subsidiaries, affiliates, successors and assigns.

You and Charter agree that the arbitrator's decision shall be final and binding on the parties (except as otherwise provided for under the FAA). The arbitration shall be conducted at the JAMS resolution center that is closest to your residence. You have the right to retain and be represented by counsel in any such arbitration.

**REPRESENTATIVE, COLLECTIVE, AND CLASS ACTION WAIVER: You and Charter understand, acknowledge and agree that the terms of this Agreement include a waiver of any rights that you or Charter may have to bring or participate in an action against each other on a representative, class, or collective basis and understand and agree that the arbitrator shall not be permitted to order consolidation of claims or a representative, class, or collective, arbitration. This waiver does not take away or restrict your or Charter's right to pursue your or its own claims, but only requires that any such claims be pursued in your or Charter's own individual capacity, rather than on a representative,**



**class, or collective basis.**

In the event a dispute between you and Charter is not arbitrable under this Agreement for any reason and is pursued in court, you and Charter agree to waive any right to a jury trial that might otherwise exist.

You and Charter agree that if the Agreement or any clause or term of the Agreement is found to be void, unenforceable, or unconscionable, the remainder of the Agreement shall be enforced without the invalid, unenforceable, or unconscionable clause or term, or the application of the clause or term shall be limited as to avoid any invalid, unenforceable, or unconscionable result. The only exception to this severability provision is, should the dispute involve a representative, collective or class action claim, and the REPRESENTATIVE, COLLECTIVE, AND CLASS ACTION WAIVER is found to be invalid or unenforceable for any reason, then this entire Agreement (except for the parties' agreement to waive a jury trial) shall be null and void and the dispute will not be arbitrable.

This Arbitration Agreement supersedes any other agreement to arbitrate previously in place between you and Charter.

Nothing herein shall prevent you from filing and pursuing the following: an administrative proceeding before the U.S. Equal Employment Opportunity Commission or an equivalent state or local agency (although if you choose to pursue a claim following the exhaustion of such administrative proceeding, that claim would be subject to arbitration); a proceeding before the National Labor Relations Board; a claim for medical and disability benefits under workers' compensation; or a claim for unemployment benefits.

# EXHIBIT 2



3 Park Plaza, Suite 100                        949.667.4700 (phone)
Irvine, California 92614                      949.424.8091 (facsimile)
soderstromlawfirm.com                   jamin@soderstromlawfirm.com

September 14, 2018

**BY ONLINE FILING**

Labor & Workforce Development Agency
Attn: PAGA Administrator
1515 Clay Street, Suite 801
Oakland, California 94612
PAGA@dir.ca.gov

**BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

| | |
|---|---|
| Charter Communications, LLC<br>Attn: Legal Department<br>7800 Crescent Executive Dr.<br>Charlotte, North Carolina 28217<br><br>Charter Communications, Inc.<br>Attn: Legal Department<br>400 Atlantic Street<br>Stamford, Connecticut 06901 | Copy via email to Charter's counsel:<br><br>Morgan, Lewis & Bockius LLP<br>Zachary W. Shine<br>One Market, Spear Street Tower<br>San Francisco, California 94105<br>zachary.shine@morganlewis.com |

  Re:  *Notice of Violations of the California Labor Code*

To Whom It May Concern:

  Soderstrom Law PC represents Lionel Harper ("Employee"), a former employee of Charter Communications, LLC, Charter Communications, Inc., and possibly one or more of their affiliates (collectively, "Defendant"). In accordance with California Labor Code section 2699.3, and on behalf of Employee and all aggrieved employees, this letter gives written notice to the Labor & Workforce Development Agency and to Defendant of serious and ongoing violations of the California Labor Code.

  Employee is an "aggrieved employee" as the term is used in California's Private Attorneys General Act, Labor Code § 2698 *et seq.* ("PAGA"). The violations described below occurred during or in connection with his and other workers' employment with Defendant, and he has

September 14, 2018
PAGA Administrator
Charter Communications, LLC
Charter Communications, Inc.
Page 2 of 7

personal knowledge of such violations. On information and belief, the violations are ongoing. Accordingly, unless we are notified of an investigation by the Administrator within the period established by Section 2699.3, Soderstrom Law PC intends to commence and/or supplement existing claims in connection with a civil action brought against Defendant for the violations described herein and to seek all civil penalties available on behalf of the State.

## I.    LIABLE EMPLOYER

Defendant markets and sells various services, including television, Internet, and phone services, to consumers in California and nationwide. As Employee's employer, Defendant is liable for any and all violations of the Labor Code committed against Employee and all other aggrieved employees who performed work in California during the relevant time period and for the civil penalties provided for by the Labor Code.

## II.    AGGRIEVED EMPLOYEES

Employee is a resident of Redding, California. From September 2017 to March 2018, Employee worked for Defendant in California. Employee worked with many other employees during his employment, and his experience gave him a thorough understanding of Defendant's employment policies and practices. As detailed below, Employee personally suffered from Defendant's Labor Code violations and witnessed and learned of the same and other violations committed against other of Defendant's employees in California.

## III.    KNOWN LABOR CODE VIOLATIONS

Defendant committed the following Labor Code violations against Employee and/or other employees who performed work for Defendant in California. Upon information and belief, Defendant continues to commit the same or substantially similar violations to this day.

### A.    Failure to Accurately Calculate and Pay Minimum Wages and Overtime Wages in Violation of Labor Code Sections 510, 1182.12, and 1197 and the Governing Industrial Wage Order

Under Labor Sections 1182.12 and 1197 as well as paragraph 4 of the governing Industrial Wage Order, an employer must pay an employee at least the minimum applicable wage, as set by the statutes and Department of Industrial Relations, for all hours that the employee has been suffered or permitted to work. Additionally, under Labor Code section 510 and paragraph 3 of the governing Industrial Wage Order, an employer must compensate an employee at the rate of no less than one and one-half times the employee's regular rate of pay for any work in excess of eight hours in one day, any work in excess of 40 hours in one work week, and the first eight hours worked on the seventh day of work in any one work week. Any work in excess of 12 hours in one day and any work in excess of eight hours on any seventh day of a workweek must be compensated at a rate no less than twice the employee's regular rate of pay.

September 14, 2018
PAGA Administrator
Charter Communications, LLC
Charter Communications, Inc.
Page 3 of 7

As a matter of policy and practice, Defendant failed to pay Employee and other employees the required minimum and overtime wages for all hours worked. Specifically, but without limitation, Defendant regularly required employees during training to work a full day and then complete homework after the work day ended. The training and homework combined required employees to work more than 8 hours in a day, but Defendant did not keep track of or pay employees all wages owed for the time worked over 8 hours in a day or 40 hours in a week during training. Defendant further failed to properly keep track of all hours worked outside of training weeks and failed to pay employees all wages owed for the time worked over 8 hours in a day or 40 hours in a week.

As a result of these policies and practices, Defendant does not pay its training employees and post-training employees all of the minimum and overtime wages they are due, does not maintain complete records of all time worked, and does not provide accurate wage statements.

Defendant's violations of Labor Code Sections 510, 1182.12, and 1197 and paragraphs 3 and 4 of the governing Wage Order have aggrieved Employee and other similarly situated employees in California.

**B.    Failure to Provide Uninterrupted Meal Periods and Rest Breaks and Failure to Pay Premium Wages in Violation of Labor Code Sections 226.7, 512(a), and the Governing Industrial Wage Order**

Under Labor Code section 512(a) and paragraph 11 of the governing Industrial Wage Order, an employer may not require its employees to work more than five hours per day without providing an off-duty, uninterrupted meal period of not less than 30 minutes, and it may not require its employees to work more than 10 hours a day without providing a second 30-minute meal period. A meal period must begin no later than the end of the fifth hour of work. And under Labor Code section 226.7 and paragraph 11 of the governing Wage Order, if the employer does not provide these required meal breaks, the employer must pay the employee an additional hour of pay for each workday that the meal period is not provided.

Additionally, under paragraph 12 of the governing Industrial Wage Order, an employer must permit its employees to take 10 minutes of rest for every four hours worked or major fraction thereof, taken in the middle of the work period unless impracticable. And under Labor Code section 226.7 and paragraph 12 of the governing Wage Order, if the employer does not provide the required rest breaks, the employer must pay the employee an additional hour of pay for each workday that a rest period is not provided.

Defendant fails to provide timely, off-duty, uninterrupted 30-minute meal periods to nonexempt employees like Employee and fails to compensate them one additional hour of pay for each meal period that is missed, shortened, interrupted, on-duty, or untimely. Defendant does not require or allow Employee and other nonexempt employees to clock-out and clock-in for each meal period and accurately record the existence and length of each meal period taken, and

September 14, 2018
PAGA Administrator
Charter Communications, LLC
Charter Communications, Inc.
Page 4 of 7

knowingly suffers, permits, or requires work to be performed during what should be a meal period. Defendant fails to provide compliant meal periods and rest breaks both during training weeks and after training weeks.

Defendants' violations of Labor Code Sections 512 and 226.7, and paragraphs 11 and 12 of the governing Wage Order have aggrieved Employee and other similarly situated employees.

**C.      Unlawful Commission Deductions in Violation of Labor Code Sections 221, 223, 224, and 2751**

California Labor Code sections 221, 223, and 224 protect employees against unlawful deductions of their earned wages. Under Section 221, "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." Relatedly, under Section 223, "Where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract." Section 224 authorizes certain deductions that an employee "expressly authorize[s] in writing," but forbids deductions that amount to a "rebate or deduction from the standard wage . . . pursuant to wage agreement or statute." Additionally, under California Labor Code section 2751, when an employer enters into a contract of employment and the contemplated payment method includes commissions, the contract must "set forth the method by which the commissions shall be computed and paid."

Defendant recruits and incentivize sales employees like Employee by emphasizing their ability to earn commissions. However, Defendant imposes unlawful and unfair incentive compensation terms and then fails to pay all amounts owed under such terms. The terms result in Defendant unlawfully and unfairly keeping, failing to pay, and/or deducting Employee's and other employees' commission wages.

Defendant also fails to perform all of its obligations under the terms and unfairly construes the terms and modifies the terms in its favor.

Defendant has not paid Employee and similarly situated employees all of the commission wages they are owed, and has unlawfully and unfairly deducted, reconciled, or clawed back commission wages that were properly earned.

Defendant violated Sections 221, 223, and 224 each time it failed to correctly and fairly calculate and pay earned commission and each time it has deducted, clawed back, or otherwise reconciled Employee's and other employees' incentive compensation. Defendant further relied on methods for the computation and payment of commissions that are not set forth in the applicable terms in violation of Section 2751. Defendant's violations of Labor Code Sections 221, 223, 224, and 2751 have aggrieved Employee and similarly situated employees.

///

September 14, 2018
PAGA Administrator
Charter Communications, LLC
Charter Communications, Inc.
Page 5 of 7

**D. Willful Failure to Pay All Wages Earned Upon An Employee's Termination or Quitting and Failure to Pay Penalty Wages in Violation of Labor Code Sections 201, 202, and 203**

Under Labor Code sections 201 and 202, an employer must pay an employee all unpaid wages immediately upon that employee's termination or within 72 hours if the employee has quit without providing advanced notice. And under Labor Code section 203, if an employer willfully fails to comply with Sections 201 or 202, the employee is entitled to continued wages up to 30 days from the date the unpaid wages were originally due to when they were actually paid.

Defendant fails to timely and accurately pay Employee and other employees who are terminated or quit all due but unpaid wages, and Defendant does not pay any wages as waiting time penalties. As discussed above, Defendant does not accurately record all hours worked and all meal period and rest breaks taken late, missed, shortened, or interrupted, and Defendant does not pay premium wages when a compliant meal period or rest break is not provided. Nor does Defendant pay all incentive compensation that is earned and payable. Consequently, when Defendant paid Employee and other former employees' final paychecks, they were all miscalculated and too small.

Defendant's violations of Labor Code section 201 and 202 have aggrieved Employee and other former employees who were terminated or quit. Defendant's failure to pay penalty wages under Labor Code section 203 has further aggrieved Employee and other former employees.

**E. Failure to Pay All Wages Earned at Least Twice During Each Calendar Month in Violation of Labor Code Section 204**

Under Labor Code section 204, an employer must pay all wages earned by any employee, other than those mentioned in Sections 201, 201.3, 202, 204.1, or 204.2, twice during each calendar month, on days designated in advance by the employer as the regular paydays.

Defendant's failures described above—including the failure to pay all minimum and overtime wages due, the failure to pay premium wages in lieu of compliant meal periods and rest breaks, and the failure to properly calculate and pay all commission wages—caused it also to fail to pay all wages earned by Employee and similarly situated employees at least twice monthly.

Defendant's violations of Labor Code section 204 have aggrieved Employee and other similarly situated employees because they were not timely or accurately paid all wages earned at least twice each month.

///

///

///

September 14, 2018
PAGA Administrator
Charter Communications, LLC
Charter Communications, Inc.
Page 6 of 7

**F.    Failure to Maintain Accurate Records and Wage Statements in Violation of Labor Code Sections 226 and 1174(d) and the Governing Industrial Wage Order**

Under Labor Code section 1174(d), an employer must maintain at least three years of accurate payroll records reflecting each employee's hours worked daily and the wages paid to them. And under paragraph 7 of the governing Industrial Wage Order, these records must also show the employee's rate of pay, when each work period began and ended, and when meal periods and split shift intervals occurred.

Labor Code section 226 and paragraph 7 of the governing Wage Order further require an employer to provide its employees with accurate, semi-monthly itemized wage statements that reflect the employee's gross and net wages earned, total hours worked, all deductions, the inclusive dates of the pay period, and all applicable hourly rates.

As explained above, Defendant failed to keep accurate records reflecting Employee's and other employees' hours worked and when meal periods occurred. Defendant also failed to provide accurate wages statements that reflected the total hours worked, all deductions, and all gross and net wages earned, including commission wages. Employee's wage statements never reflected any premium wage being paid for late, shortened, missed, or on-duty meal periods or rest breaks. Employee's final several wage statements also failed to accurately record the time worked, wages due, and inclusive dates of the applicable pay periods.

Defendant's willful violations of Labor Code sections 226 and 1174(d) and the governing Wage Order have aggrieved Employee and other similarly situated employees.

**G.    Failure to Timely Provide a Copy of Personnel Records Upon Request in Violation of Labor Code Sections 226, 432, and 1198.5**

Under Labor Code section 226(c), an employer must provide employees, within 21 calendar days from the date of a request, copies of the records required to be kept under section 226(a) (i.e., wage statements).

Under Labor Code section 432, an employer must provide employees a copy of any instrument that the employee signed related to his or her obtaining or holding of employment.

Under Labor Code section 1198.5, an employer must provide employees, within 30 days from the date of a request, copies of their personnel records.

In a letter dated June 5, 2018, Employee, through his counsel via a written and signed authorization, requested that Defendant provide copies of his personnel file, including all wage statements, instruments he signed or acknowledged concerning his employment, and other records

September 14, 2018
PAGA Administrator
Charter Communications, LLC
Charter Communications, Inc.
Page 7 of 7

concerning his obtaining and holding of employment, pursuant to Labor Code sections 226, 432, and 1198.5.

On July 3, 2018, counsel for Defendant responded to Employee's request in writing refusing to produce any records and took the position that (i) an email sent by Employee to a JAMS representative inquiring about the possibility of a mediation constituted "the pendency of [a] lawsuit in the court with original jurisdiction" during which time its obligations under Labor Code section 1198.5 ceases, and (ii) only an employee personally, not an employee's authorized legal representative, is entitled to request copies of records under Labor Code sections 226 and 432.

Defendant failed to produce any records under Labor Code sections 226, 432, and 1198.5 within the statutory time periods. On July 18, 2018, more than six weeks after Employee's written request, Defendant finally consented to producing such records to Employee's counsel. Defendant ultimately produced an incomplete set of Employee's records on September 4, 2018, 13 weeks after Employee's initial written request. Defendant failed to provide copies of any offer letter, all records related to Employee's performance and obtaining/holding employment, the employee handbook that governed Employee's employment, any signed copies or acknowledgements of such records.

Defendant's violation of Labor Code sections 226, 432, and 1198.5 has aggrieved Employee.

## IV.    CIVIL PENALTIES FOR LABOR CODE VIOLATIONS

Due to the above-described violations and similar violations that may be identified after further investigation or during discovery, Defendant is liable as an employer for specific or default civil penalties as provided by Labor Code section 2699 as well as Labor Code sections 201, 202, 203, 204, 210, 223, 225.5, 226, 226.3, 226.7, 256, 510, 512, 558, 558.1, 1174, 1174.5, 1182.12, 1194, 1194.2, 1197, 1197.1, 1197.5, 1198.5, and 1206.

Please contact me at 949.667.4700 or jamin@soderstromlawfirm.com if you would like to discuss this matter.

Very truly yours,

SODERSTROM LAW PC

Jamin S. Soderstrom

EXHIBIT 4

Hon. Rebecca J. Westerfield (Ret.)
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111
Tel: (415) 982-5267
Fax: (415) 982-5287

ARBITRATOR

JAMS ARBITRATION

| | |
|---|---|
| LIONEL HARPER, | REF NO. 1100104486 |
| Claimant, | |
| v. | ORDER DISMISSING ARBITRATION |
| CHARTER COMMUNICATIONS, LLC, CHARTER COMMUNICATIONS, INC., and DOES 1 to 25, | |
| Respondents. | |

## I.    <u>Introduction</u>

Claimant Lionel Harper ("Harper") brings this arbitration against

Respondents Charter Communications, LLC and Charter Communications, Inc.

(collectively, "Charter") for (1) Failure to pay minimum wages for all hours

worked; (2) Failure to pay overtime wages for all overtime hours worked; (3) Failure to provide meal periods or pay premium wages in lieu thereof; (4) Failure to provide rest breaks or pay premium wages in lieu thereof; (5) Unlawful deduction of wages under Section 221; (6) Failure to provide accurate wage statements; (7) Failure to pay all wages owed upon termination; (8) Failure to provide timely and complete copies of employment records; (9) Violation of California's Unfair Competition Law; and (10) PAGA civil penalties. These causes of action arise from Harper's employment with Charter from September 2017 until March 2018. When Harper was hired by Charter, he agreed to a Mutual Agreement to Arbitrate ("Arbitration Agreement").

Currently before the Arbitrator is Harper's Motion for Threshold Rulings Regarding Arbitrability. In this Motion, Harper seeks the following threshold rulings from the Arbitrator:

(1) The Arbitrator has the authority to decide all issues related to enforceability, scope, and arbitrability raised in the Demand.

(2) The Arbitration Agreement is "null and void" by its own terms because it includes invalid and unenforceable waivers of the right to bring representative claims, the right to act as a representative of the State and other aggrieved employees, and the right to seek public injunctive relief in any form.

(3) Because the Arbitration Agreement is "null and void," the Arbitrator has no jurisdiction over Harper's claims, and the arbitration must be dismissed in its entirety.

## II.   Analysis

### A.   The Arbitrator has authority to decide all issues related to enforceability, scope, and arbitrability raised in the Demand

Harper contends that the Arbitrator has authority to decide whether the Arbitration Agreement is "null and void." Charter does not dispute this point.

2

Rule 11 of the JAMS Rules provides that the "Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter."

**B.    The Arbitration Agreement includes an invalid and unenforceable Waiver**

1.    The pre-dispute Waiver of Harper's right to bring or participate in a representative PAGA action is invalid and unenforceable.

Harper argues that the waiver in the Arbitration Agreement ("Waiver") is invalid and unenforceable because it is a pre-dispute waiver of Harper's right to bring or participate in a representative action brought under PAGA. The Waiver provides:

> You and Charter understand, acknowledge and agree that the terms of this Agreement include a waiver of any rights that you or Charter may have to bring or participate in an action against each other on a representative, class, or collective basis and understand and agree that the arbitrator shall not be permitted to order consolidation of claims or a representative, class, or collective, arbitration. This waiver does no take away or restrict your or Charter's rights to pursue your or its own claims, but only requires that any such claims be pursued in your or Charter's own individual capacity, rather than on an representative, class, or collective basis.

In <u>Iskanian v. CLS Transportation Los Angeles LLC</u>, 59 Cal. 4th 348 (2014), the California Supreme Court held that where an employment agreement compels the waiver of representative claims under the PAGA, it is contrary to public policy and unenforceable as a matter of state law. <u>Id</u>. at 384. The Court further concluded that the FAA does not preempt this state law rule against waiver of an employee's right to bring a representative PAGA action since the FAA aims to ensure an efficient forum for the resolution of private disputes whereas a PAGA action is a dispute between an employer and the state Labor and Workforce Development Agency. <u>Id</u>.

Charter does not directly dispute the applicability of Iskanian to the Waiver at issue here. Instead, it contends that Charter is attempting to evade arbitration by bringing a PAGA claim. It states that Harper "simply has a private dispute with his former employer," and it points to the relief sought by Harper, and more specifically, the individual, non-PAGA, relief set forth in the Arbitration Demand. Charter cites to Esparza v KS Industries, L.P., 13 Cal. App. 5th 1228 (2017). In Esparza, the defendant appealed from an order denying its motion to compel arbitration of a dispute with its former employee. It contended that Iskanian prevented arbitration of claims only in representative actions that seek "civil penalties" and not unpaid wages payable solely to the aggrieved employee. The appellate court examined Iskanian and found that because the plaintiff's claims for unpaid wages under PAGA constituted a private dispute that was subject to arbitration under the arbitration agreement and FAA, rather than non-arbitrable claim for civil penalties. Id. at 1246.

Charter seeks to apply Esparza so that the Arbitrator will find that this is really a suit to recover victim-specific damages and interest on an individual basis and an attempt to make an end run around arbitration by styling it a PAGA action. However, Esparza itself did not make such a determination regarding the plaintiff employee's case before it. Instead, the court remanded the case and directed the trial court to conduct further proceedings to allow the plaintiff to state his intention about pursuing claims for unpaid wages and any other types of individualized relief, and if he chooses to do so, then those claim would be arbitrated while the remainder of the litigation is stayed. Id. at 1247. If, however, plaintiff intended to limit his claims to PAGA representative claims seeking civil penalties and waive claims for individualized relief, the court can proceed on those claims without the need for arbitration. Id.

Here, while Harper's Demand for Arbitration contains a majority of causes

4

of action seeking individualized relief, it also asserts a cause of action for PAGA civil penalties. Neither Esparza nor any authority raised by Charter allows the Arbitrator to ignore this cause of action and find that Harper is using the PAGA cause of action as "an end run around arbitration," even assuming this is true. Thus, the issue remains whether the Waiver at issue is unenforceable, and under Iskanian, the Arbitrator finds that it is unenforceable because it compels the waiver of representative claims under PAGA.

> 2.    Requiring Harper to act only in his "individual capacity" does not improperly waive his right to act as a representative of the State and other aggrieved employees.

Harper further contends that the Waiver is invalid and unenforceable because it prohibits him from acting in any capacity other than his "individual capacity," and this necessarily prevents him from serving as the State's representative. As Charter contends, Harper cites no authority in support of this assertion. Essentially, Harper seeks to expand Iskanian to bar waivers that use the language "individual capacity," but the Arbitrator finds no basis for doing so.

> 3.    Requiring Harper to act only in his "individual capacity" does not improperly prevent him from seeking representative and public injunctive relief in any forum.

In a final argument regarding the Waiver, Harper contends that the Waiver is invalid and unenforceable because it prevents Harper from seeking representative and public injunctive relief in any forum. In McGill v. Citibank, N.A., 2 Cal 5th 945, 951 (2017), the Court held that an arbitration provision that purports to waive the right to request in any forum public injunctive relief is invalid and unenforceable under California law.

In its Opposition, Charter relies on Magana v. DoorDash, Inc., 343 F. Supp. 3d 891, 900 (N.D. Cal. 2018), which set out two issues to consider in determining

5

whether an arbitration agreement prevents all adjudication of public injunctive relief in any forum.  <u>Magana</u> is instructive here.  First, the court considers whether plaintiff's complaint actually seeks public injunctive relief under California law.  <u>Id</u>.  Second, if it does, the court considers whether the arbitration agreement prevents plaintiff from adjudicating a claim for such relief in any forum.  <u>Id</u>.

Charter argues both that Harper does not seek public injunctive relief and that the Agreement does not prevent Harper from adjudicating a claim for injunctive relief in any forum.  With respect to the first issue, "public injunctive relief under the UCL . . . is relief that has 'the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public.  Relief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff – or to a group of individuals similarly situated to the plaintiff – does not constitute public injunctive relief."  <u>McGill</u>, 2 Cal. 5th at 955.  Because Harper seeks injunctive relief for his California Labor Code claims in his Demand, he does not assert a claim for public injunctive relief as in <u>Magana</u>.  <u>See</u> <u>Magana</u>, 343 F. Supp. 3d at 901 (the court found that the claims under California Labor Code "have the primary purpose and effect of redressing and preventing harm to [the employer's] employees" and that "the injunctive relief he seeks would be entirely opposite of what McGill requires – any benefit to the public would be derivative of and ancillary to the benefit to [the employer's] employees.")

Second, the Arbitration Agreement does not prevent adjudication of public injunctive relief in any forum because the Arbitrator may adjudicate a claim for such relief.  While Harper argues that the Arbitration Agreement has a representative, class and collective action waiver provision, the <u>McGill</u> court held that a claim for public injunctive relief is not a class, collective, or representative action.  <u>McGill</u>, 2 Cal. 5th at 959-61.  As Charter points out, the Agreement states "[t]his waiver does not take away or restrict your or Charter's right to pursue your

6

or its own claims, but only requires that any such claims be pursued in your or Charter's own individual capacity." As such, Harper can seek public injunctive relief in arbitration. Thus, the Arbitrator finds that requiring Harper to act only in his "individual capacity" does not improperly prevent him from seeking representative and public injunctive relief in any forum.

C. **The invalid and unenforceable Waiver triggers the poison pill and renders the entire Arbitration Agreement "null and void" by its own terms**

Harper contends that the invalid and unenforceable Waiver triggers the "poison pill" and renders the entire Arbitration Agreement null and void by its own terms. The poison pill provision, as Harper refers to it, in the Arbitration Agreement provides:

> [S]hould the dispute involve a representative, collective or class action claim, and the REPRESENTATIVE, COLLECTIVE, AND CLASS ACTION WAIVER is found to be invalid or unenforceable for any reason, then this entire Agreement (except for the parties' agreement to waive a jury trial) shall be null and void and the dispute will not be arbitrable.

Given the plain meaning of this language, Harper's contention has merit.

In opposition, Charter argues that the "straightforward meaning" of this provision is, if an employee brings a representative, collective or class action claim, and the waiver is found to be invalid or unenforceable, then no part of the arbitration provision applies to that claim – i.e., the arbitration provision is null and void in its entirety only as to the representative, collective or class action claim. However, Charter's interpretation is at odds with the language used in the Agreement and places a limitation not supported by the words chosen. As Harper points out, Charter could have drafted this provision narrowly, but it did not. He points to the following language found in another case:

7

> The Representative Action Waiver will be severable from this Agreement in any case in which there is a final judicial determination that the Representative Action Waiver is invalid, unenforceable, unconscionable, void or voidable. In such instances and where the claim is brought as a private attorney general, such private attorney general claim must be ignored in a civil court of competent jurisdiction, but all other provisions of this Agreement, including without limitation the Class Action Waiver, will continue to apply.

Murphy v. HRB Green Res., LLC, 2016 WL 11527027 at *5 (N.D. Cal. Oct. 14, 2016). Instead, the provision agreed to by the parties in this case clearly states that "this *entire* Agreement shall be null and void and the dispute will not be arbitrable."

Harper cites to a few district court cases wherein the court rejected Charter's same argument that the Arbitrator should construe the poison pill provision narrowly. In McArdle v. AT&T Mobility LLC, 2017 WL 4354998 (N.D. Cal. Oct. 2, 2017), the court stated that "Defendant's proposed construction of this sentence ignores the agreement's use of the word 'entirety' and attempts to read in limiting language that does not exist, such as adding the words 'as to the specific claim' at the end of the paragraph." Similarly, in Roberts v. AT&T Mobility, LLC, 2018 WL 1317346 at *8-9 (N.D. Cal. Mar. 14, 2018, the court stated that "had it been so intended, the nullification provision could have referred to nullification of the 'subsection' or 'paragraph'; it did not. Instead, it refers to 'the entirety of the arbitration provision.'" The Arbitrator agrees with the reasoning of the courts in these cases.

Charter also seeks to have the arbitrable and non-arbitrable claims severed so that the arbitrable claims are sent to arbitration. However, the cases relied on by Charter for this proposition do not involve the existence of the poison pill provision. Indeed, Harper acknowledges that but for the poison pill provision, severance would be possible.

8

Charter further asserts that because there is a reading of this provision that would allow for severing a non-arbitrable claim to allow it to proceed in court, with all other claims sent to arbitration, this provision must be interpreted that way. It relies on the federal policy favoring arbitration and quotes from a Supreme Court holding that an order compelling arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986). Here, the provision at issue is neither ambiguous nor susceptible of Charter's desired interpretation.

Thus, the Arbitrator finds that because the pre-dispute Waiver of Harper's right to bring or participate in a representative PAGA action is invalid and unenforceable, the poison pill provision is triggered, thereby rendering the Arbitration Agreement null and void.

**D.  Because the Arbitration Agreement is null and void, the Arbitrator has no jurisdiction over Harper's claims**

Based on the determinations set forth above, the Arbitration Agreement is null and void. While the FAA reflects a "liberal federal policy favoring arbitration," it also reflects "the fundamental principle that arbitration is a matter of contract." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (citations omitted). As such, "courts must place arbitration agreements on an equal footing with other contracts, . . ., and enforce them according to their terms . . . ." Id.; see also Epic Systems Corp. v. Lewis, 138 S. Ct. 1612, 1621 (2018) (Supreme Court noted that the Arbitration Act requires courts "vigorously" to "enforce arbitration agreements according to their terms"). Here, the Arbitration Agreement contains a Waiver that is found to be invalid and enforceable. Under the same Arbitration Agreement, such a finding renders the entire Agreement null and void and the dispute not arbitrable. The Arbitrator therefore has no jurisdiction over

9

Harper's claims set forth in the Demand, and consequently, the arbitration must be dismissed in its entirety.

## III.   **Conclusion**

Accordingly, the Arbitrator dismisses Claimant Lionel Harper's Demand for Arbitration.

DATED:   April 25, 2019

Hon. Rebecca Westerfield (Ret.)
Arbitrator

10

## PROOF OF SERVICE BY EMAIL & U.S. MAIL

Re: Harper, Lionel vs. Charter Communications, Inc.
Reference No. 1100104486

I, Melissa Ornstil, Esq., not a party to the within action, hereby declare that on April 25, 2019, I

served the attached Order Dismissing Arbitration on the parties in the within action by Email and by

depositing true copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United

States Mail, at San Francisco, CALIFORNIA, addressed as follows:

Jamin Soderstrom Esq.
Soderstrom Law PC
3 Park Plaza
Suite 100
Irvine, CA  92614
Tel: 949-667-4700
Email: jamin@soderstromlawfirm.com
  Parties Represented:
  Lionel Harper

Zachary Shine Esq.
Morgan, Lewis & Bockius LLP
One Market
Spear Street Tower
San Francisco, CA  94105-1596
Tel: 415-442-1000
Email: zachary.shine@morganlewis.com
  Parties Represented:
  Charter Communications, Inc.
  Charter Communications, LLC

Kathryn T. McGuigan Esq.
Morgan, Lewis & Bockius LLP
300 S Grand Ave
22nd Floor
Los Angeles, CA  90071-3132
Tel: 213-612-7390
Email: kathryn.mcguigan@morganlewis.com
  Parties Represented:
  Charter Communications, Inc.
  Charter Communications, LLC

I declare under penalty of perjury the foregoing to be true and correct. Executed at San

Francisco, CALIFORNIA on April 25, 2019.

_Melissa Ornstil_

Melissa Ornstil, Esq.

# EXHIBIT 5

# Morgan Lewis

**Nicole L. Antonopoulos**
Associate
+1.415.442.1305
nicole.antonopoulos@morganlewis.com

May 22, 2019

**VIA E-MAIL AND REGULAR MAIL**

SODERSTROM LAW PC
Jamin S. Soderstrom
jamin@soderstromlawfirm.com
3 Park Plaza, Suite 100
Irvine, CA  92614

Re:      Re: *Lionel Harper v. Charter Communications, LLC. et al*
         Eastern District of California, Case No. 2:19-at-00392

Dear Mr. Soderstrom:

We write to meet and confer with you further regarding Defendants Charter Communications, LLC and Charter Communications, Inc.'s ("Charter") request that Plaintiff Lionel Harper ("Plaintiff") arbitrate his claims on an individual basis.  In further conferring with Charter, we have learned that Charter's Solution Channel Program, an updated employment-based legal dispute resolution program, applies to Plaintiff.  *See* Exhibit 1 [Solution Channel Guidelines].  Enclosed is the email notification that Charter sent to Plaintiff on October 6, 2017, stating that he would be enrolled in Solution Channel unless he opted out of the program within 30 days. *See* Exhibit 2 [Solution Channel Email Notification].

The October 6, 2017 email notification included a link to the Solution Channel web page located on the Charter intranet site accessible to employees.  *See* Exhibit 3 [Solution Channel web page content].  The Solution Channel web page accessible to employees included a reference and link to Charter's Mutual Arbitration Agreement.  Exhibit 4 [Mutual Arbitration Agreement].  Plaintiff did not opt out of the Solution Channel program within 30 days of receiving the notification email and thus became a participant of Solution Channel on November 6, 2017.  *See* Exhibit 5 [Record of Solution Channel Participation Date].

The Solution Channel Program addresses the concern raised by Plaintiff in his Motion for Threshold Rulings Regarding Arbitrability—that the representative waiver is invalid and unenforceable and thus renders the entire arbitration agreement null and void.  The terms of the Solution Channel arbitration agreement provides:

> [I]f any portion or provision of this Agreement (including, without implication of
> limitation, any portion or provision of any section of this Agreement) is determined

**Morgan, Lewis & Bockius** LLP

One Market
Spear Street Tower
San Francisco, CA  94105-1596      **T** +1.415.442.1000
United States                      **F** +1.415.442.1001

SODERSTROM LAW PC
May 22, 2019
Page 2

to be illegal, invalid, or unenforceable by any court of competent jurisdiction and cannot be modified to be legal, valid, or enforceable to the fullest extent permitted by law, and said illegal, invalid, or unenforceable portion or provisions shall be deemed not to be a part of this Agreement.  The only exception to this severability provision is, should the dispute involve a representative collective or class action claim, and the representative, collective, and class action waiver (Section D) is found to be invalid or unenforceable for any reason **then this Agreement (except for the parties' agreement to waive a jury trial) shall be null and void with respect to such representative, collective, and/or class claim only, and the dispute will not be arbitrable with respect to such claim(s).**

*See* Exhibit 4.  To the extent that you contend the representative waiver is unenforceable and a court finds that such a term is unconscionable, then the plain language of the Solution Channel arbitration agreement provides that the arbitration agreement does not apply to such representative claims.

Please let us know by May 24 whether in light of this additional information Plaintiff agrees to arbitrate his claims on an individual basis and dismiss his putative class and representative claims.

Sincerely,

Nicole Antonopoulos

Enclosures

# EXHIBIT 1



# ARBITRATION PROGRAM

# Solution Channel

For Resolution of Employment-Based Legal Disputes

PROGRAM GUIDELINES



Version Date—September 25, 2017

# TABLE OF CONTENTS

OUR EMPLOYMENT PHILOSOPHY                                               3

   Charter Strives to Create a Positive Work Experience for All Employees    3

   Employment Opportunities at Charter Are Equal and Fair                 3

   Inclusion in the Workplace Is a Priority at Charter                    3

   Charter Promotes an Environment of Open Communication in the Workplace    3

DEALING WITH CONFLICT IN THE WORKPLACE                                 5

   Charter Has Created a Welcome and Productive Culture                   5

   Charter Employees Are Expected to Act Professionally and With Integrity    5

   Reporting a Workplace Conflict                                         5

   Reports of Violations of Charter's Code of Conduct May Be Submitted
   Through Charter's Ethics and Compliance Hotline                        6

   Charter's Policy and Code of Conduct Prohibit Retaliation              6

THE CHANNEL FOR RESOLUTION OF
EMPLOYMENT-RELATED LEGAL DISPUTES                                      7

   Charter's Solution Channel                                             7

   Solution Channel at a Glance                                           8

   General Rules                                                          8

   Initiating a Claim                                                     10

   Internal Claim Review                                                 10

   Arbitrating a Dispute                                                 11

WHAT YOU NEED TO KNOW ABOUT SOLUTION CHANNEL                          13

   Rights and Responsibilities                                           13

   Who Is Covered                                                        13

   Covered and Excluded Claims                                           14

   How to Submit a Claim                                                 16

   Deadlines and Timelines                                               17

   Key Elements to Arbitration                                           17

KEY TERMS TO KNOW AND UNDERSTAND                                      21

# Our Employment Philosophy

### CHARTER STRIVES TO CREATE A POSITIVE WORK EXPERIENCE FOR ALL EMPLOYEES

Charter recruits and hires top talent. To retain and develop that talent, Charter believes that work should be a positive experience, where employees are treated fairly, respectfully, honestly, professionally, and with integrity.

### EMPLOYMENT OPPORTUNITIES AT CHARTER ARE EQUAL AND FAIR

Charter has a long-standing practice and policy of offering equal opportunities to all employees and applicants for employment without regard to race, color, sex, pregnancy, age, religion, creed, physical or mental disability status, medical condition, genetic information, national origin, nationality, ancestry, citizenship status, veteran status, military status, sexual orientation, gender identity, gender expression, marital status, domestic partner status, or any other basis protected by law. This practice and policy applies to every aspect of employment, including recruitment, hiring, promotion, compensation, transfers, layoffs, terminations, Charter-sponsored training, education, tuition assistance, benefits and all other employment decisions. Additionally, Charter complies fully with all local, state, and federal employment laws prohibiting discrimination, harassment, and retaliation in the workplace.

### INCLUSION IN THE WORKPLACE IS A PRIORITY AT CHARTER

Recognizing the value of a diverse workforce, Charter takes affirmative steps to create a work environment that is inclusive, welcoming, and supportive of individuals from different backgrounds and cultures. The value we place on these individual differences demonstrates Charter's commitment to treating employees respectfully and acknowledging their contributions to the organization's overall success.

### CHARTER PROMOTES AN ENVIRONMENT OF OPEN COMMUNICATION IN THE WORKPLACE

Charter maintains an Open Door Policy, which encourages employees to raise concerns, issues, questions, and ideas with their leadership and human resources teams. The primary goals of the Open Door Policy are to promptly resolve workplace issues, create a receptive environment in which ideas can be shared and provide a way to express concerns.

3

Employees who use the Open Door Policy in a professional and appropriate manner will never be penalized or retaliated against for doing so.

Charter is an equal opportunity employer. Discrimination, harassment, and retaliation are not tolerated at Charter. Our diverse workforce shows Charter's commitment to embracing and supporting individual and cultural differences.

# Dealing with Conflict in the Workplace

### CHARTER HAS CREATED A WELCOME AND PRODUCTIVE CULTURE

A work environment in which employees feel welcome and valued leads to a more productive and dedicated workforce. A productive and dedicated workforce leads to exceptional service, which is reflected in our customers' satisfaction with and loyalty to Charter. Because Charter's success is ultimately dependent upon a positive workplace culture and employee experience, we strive each day to preserve that culture and experience.

### CHARTER EMPLOYEES ARE EXPECTED TO ACT PROFESSIONALLY AND WITH INTEGRITY

Charter takes pride in its professional and congenial work environment. In our efforts to safeguard a workplace in which employees can thrive, every Charter employee is expected to follow Charter's Professional Conduct Policy and Code of Conduct. This means that employees must treat others respectfully, perform their job duties and assignments with integrity, accept responsibility for their actions, maintain honesty in all business interactions, and comply fully with applicable laws.

### REPORTING A WORKPLACE CONFLICT

We understand that conflicts may sometimes arise at work. An employee who has a work-related concern or issue is strongly encouraged to promptly bring the matter to the attention of his or her leader or a human resources representative. When issues and concerns are addressed at the outset, it minimizes the disruption in the workplace, and helps to allow for resolution while employees remain focused on providing quality service to customers.

Conflict and disharmony in the workplace are taken seriously at Charter. Appropriate complaints that are brought to the attention of Charter's leadership or human resources team will be investigated. While we cannot guarantee that the outcome of an investigation will be satisfactory to everyone, we can promise that the investigation will be thorough and unbiased, that any action taken will be lawful, and that the individuals affected will be treated with respect and dignity.

Charter employees work in an environment in which they are not only permitted, but are encouraged, to speak up about issues and concerns when they first surface. Charter believes that the timely and appropriate resolution of workplace conflict results in a more productive workforce, dedicated to providing superior customer service.

## REPORTS OF VIOLATIONS OF CHARTER'S CODE OF CONDUCT MAY BE SUBMITTED THROUGH CHARTER'S ETHICS AND COMPLIANCE HOTLINE

In those rare instances where an individual believes there has been a violation of Charter's Code of Conduct that cannot be reported through normal channels, Charter maintains an ethics and compliance hotline referred to as EthicsPoint. Reports can be submitted at www.EthicsPoint.com or by calling 866.384.4277. Charter's policy prohibiting retaliation extends to those who submit a report using EthicsPoint.

## CHARTER'S POLICY AND CODE OF CONDUCT PROHIBIT RETALIATION

Charter is steadfast in its belief that no employee should be in fear of reprisals for bringing a complaint, encouraging or aiding another person to report a concern, or cooperating during an investigation. Charter's policy prohibiting retaliation in any form and of any kind is strictly enforced as to all employees. This means that no employee will be discharged, disciplined, denied a promotion, demoted, assigned to an unfavorable work shift and/or location, targeted by a leader, or otherwise treated unfairly in retaliation for complaining about an issue, encouraging or aiding another person to complain, or cooperating during an investigation.

Charter's Code of Conduct impresses upon employees the importance of acting and treating others professionally, with integrity, honestly, lawfully, and respectfully. Charter's continued success hinges upon employees' adherence to the highest ethical standards in their day-to-day business activities.

# The Channel for Resolution of Employment-Related Legal Disputes

### CHARTER'S SOLUTION CHANNEL

With an emphasis on fostering a positive work environment where open communication is encouraged, Charter is confident that the vast majority of workplace conflicts will be appropriately resolved through less formal channels. However, we also recognize that there may be some employment-based disputes that are best addressed through a more structured and formal resolution process.

Solution Channel is a dispute resolution alternative developed by Charter. Solution Channel is the means by which a current employee, a former employee, an applicant for employment, or Charter can efficiently and privately resolve covered employment-based legal disputes. Solution Channel provides a number of tangible benefits:



**Benefits of Solution Channel**

- Internal Review
- Impartial Decisions
- Speedy Resolutions
- Flexibility
- Direct Involvement
- Fair and Equitable
- Cost Efficient
- Streamlined Procedures

Solution Channel is not intended to be a substitute for the manner in which routine conflicts, concerns, and issues in the workplace are handled. Solution Channel is reserved for the resolution of certain legal disputes that arise in the course of the pre-employment and employment relationship.

Contract workers assigned to provide services to Charter or Charter customers are not eligible to participate in Solution Channel.

## SOLUTION CHANNEL AT A GLANCE

The process involves multiple steps, any of which may result in resolution of the dispute. If necessary, the last step is final and binding arbitration of the dispute. An overview of the rules and the dispute resolution process follows.

> While Charter believes that nearly all workplace disputes can be resolved through Charter's Open Door Policy and other informal avenues, Solution Channel affords an efficient and less costly way to resolve those issues that are better resolved through a more formal process.

## GENERAL RULES

1. Unless there is an agreement to the contrary, Solution Channel is the exclusive means of resolving employment-related legal disputes that are covered under this Program.

2. With limited exceptions, participation in Solution Channel is a condition of consideration for employment with Charter, and a condition of working at Charter.

3. Upon implementation of Solution Channel, current employees will be provided a 30-day opt-out period. Those employees will be covered by Solution Channel unless they opt out. Those employees covered by a collective bargaining agreement or other employment agreement are excluded from Solution Channel unless expressly allowed under those agreements (although nothing in this document shall limit the applicability of any arbitration or other dispute resolution provision contained in those agreements).

4. Applicants who choose to be considered for employment with Charter are required to accept Charter's Mutual Arbitration Agreement.

5. By participating in Solution Channel, the right (a) of a current or former employee or applicant to initiate or pursue a covered claim against Charter or for Charter to initiate or pursue a covered claim against a current or former employee or applicant acting in the scope of employment in a court of law or equity is waived; (b) to have a covered claim heard by a court, judge, or jury is waived; and (c) to bring or pursue a covered claim as a representative or member of a class, collective, or representation action is waived.

6. Participation in Solution Channel does not bar a claimant from filing or pursuing a charge or complaint with a government agency. However, either party may choose to request that the government agency defer its investigation or processing of the charge or complaint pending the outcome of the dispute through Solution Channel.

7. A claim must be submitted to Solution Channel within the time period established by the applicable statute of limitations.

8. A submitted claim may be amended to clarify, add or remove information or allegations and related claims. A claim may not be amended later than the day of the informal conference with the arbitrator.

9. A respondent to a claim may submit a counterclaim (or claim against the other party), that will be reviewed and/or arbitrated with the original claim.

10. Absent extraordinary circumstances, any claim submitted through Solution Channel will generally be resolved within one year.

11. Should a covered claim proceed to arbitration, the American Arbitration Association (AAA) will be the administrator of the claim. Charter will pay the AAA administrative fees and the arbitrator's fees and expenses. All other costs, fees and expenses associated with the arbitration, including without limitation each party's attorneys' fees, will be borne by the party incurring the costs, fees and expenses.

12. The arbitrator will apply the burdens of proof and law applicable to the claim, had the claim been brought in court.

13. At the discretion of the arbitrator, the prevailing party may recover any remedy that the party would have been allowed to recover had the dispute been brought in court.

14. Questions, concerns, or comments related to Solution Channel should be directed to SolutionChannel@charter.com.

Charter believes that Solution Channel is the best way to resolve covered employment-related legal disputes. In an effort to ensure you and Charter benefit from this Program, Charter will absorb most of the administrative costs of arbitration if a claimant decides to arbitrate a covered claim.

## INITIATING A CLAIM

1.  A claimant (an eligible current employee, former employee, applicant for employment, or Charter) will use a dedicated web-based portal to electronically submit a claim.

2.  The claim should describe in detail the nature of the dispute, the date of and persons involved in the alleged misconduct or violation, and the remedy requested.

3.  Once the claim is submitted, an automated email response will be sent to the claimant, confirming submission of the claim.

All covered claims must be timely submitted as required under the Program.

All covered claims must be timely submitted as required under the Program in order to be considered. Untimely claims will not be internally reviewed or arbitrated through Solution Channel.

## INTERNAL CLAIM REVIEW

1.  Upon receipt, the claim will be reviewed to determine whether the claim is covered by Solution Channel.

2.  If the claim is not covered, the claimant will be notified by email and the claim may be referred to Employee Relations, EthicsPoint, or closed.

3.  If the claim is covered, there will be further review of the claim by Charter.

4.  A summary of Charter's decision following its review will be emailed to the claimant.

5.  The claimant will notify Charter by email whether he or she wishes to proceed to arbitration.

**ARBITRATING A DISPUTE**

1. Once a party is notified of a claimant's desire to proceed to arbitration to resolve the dispute, the AAA will be notified by Charter and an arbitrator will be jointly selected by the parties.

2. The parties will meet telephonically with the arbitrator to schedule a mutually convenient date, time, and place for the arbitration hearing.

3. Prior to the scheduled hearing, the parties will engage in discovery or the exchange of information, which may include answering written questions (interrogatories), exchanging documents, and taking the deposition testimony of witnesses.

4. An evidentiary hearing will be held at which witnesses will be asked to testify under oath. A hearing may be waived only by agreement of both parties.

5. Following the hearing, the arbitrator will issue a final and binding written decision.

# What Happens After a Claim Is Submitted?



## The Claim is Reviewed Internally

**COVERED CLAIM**

Claimant notified of decision after internal review

If claimant accepts internal resolution, claim closed

**EXCLUDED CLAIM**

Claim Closed

Claimant Notified



## A Claimant May Choose to Arbitrate

CHOOSE TO ARBITRATE

JOINTLY SELECT ARBITRATOR

EXCHANGE DOCUMENTS AND INFORMATION

PARTICIPATE IN ARBITRATION HEARING

FINAL AND BINDING DECISION OF ARBITRATOR

# What You Need to Know About Solution Channel

## RIGHTS AND RESPONSIBILITIES

As participants in Solution Channel, you and Charter have a right to:

- A hearing and decision by a neutral arbitrator on a covered legal claim, if the claim is not resolved informally

- Representation by an attorney at each party's own expense

- Resolution of a covered legal claim generally within a year of a claim being filed

- Damages or other remedies allowed by law, as deemed appropriate by the arbitrator

You and Charter are responsible for:

- Meeting all Program deadlines

- Participating in Solution Channel in good faith, including providing truthful information and not pursuing claims to harass or threaten the other party

- Complying with all Program rules

## WHO IS COVERED

### Applicants
All applicants must agree to participate in Solution Channel as a condition of being considered for employment at Charter. Applicants offered employment will be required to participate in Solution Channel throughout and following their employment with Charter.

### Current Employees
Current employees at the effective date of Solution Channel will be enrolled in the Program, unless the employee opts out. Employees covered by a collective bargaining agreement or other employment agreement are excluded from Solution Channel (although nothing in this document shall limit the applicability of any arbitration or other dispute resolution provision contained in those agreements).

### Former Employees
Former employees who did not opt out of Solution Channel will remain enrolled in the Program.

### Charter
Charter and its affiliates and subsidiaries are enrolled in Solution Channel.

13

## COVERED AND EXCLUDED CLAIMS

All disputes, claims, and controversies that could be asserted in court or before an administrative agency or for which you or Charter have an alleged cause of action related to pre-employment, employment, employment termination or post-employment-related claims, whether the claims are denominated as tort, contract, common law, or statutory claims (whether under local, state or federal law), are covered by and must be resolved through Solution Channel, unless expressly excluded below.

Employee claims that are covered by and must be resolved through Solution Channel include without limitation, claims for:

- Unlawful termination, failure to hire or failure to promote

- Unlawful discrimination, harassment or retaliation (including such claims based upon race, color, national origin, sex, pregnancy, age, religion, sexual orientation, disability, and any other prohibited grounds)

- Wage and hour-based claims, including claims for unpaid wages, commissions, or other compensation or penalties (including meal and rest break claims, claims for inaccurate wage statements, claims for reimbursement of expenses)

- Claims arising under the Family Medical Leave Act, the Americans with Disabilities Act and/or similar state laws (including unlawful denial of or interference with a leave of absence, claims for unlawful denial of accommodation or failure to engage in the interactive process)

- Claims arising under whistleblower laws or for violations of the Sarbanes-Oxley Act

- Claims for violations of the Occupational Safety and Health Act or other safety or occupational health laws, whether arising before, during or after the termination of employment

- Claims related to background checks and any and all other pre-employment and employment checks, including any claims brought under the Fair Credit Reporting Act and/or similar federal, state or local statutes or ordinances

The following Charter claims are covered and must be resolved through Solution Channel:

- Collection of overpaid wages and commissions

- Recovery of reimbursed tuition

- Recovery of relocation reimbursement

- Damage to or loss of Charter property

- Recovery of unauthorized charges on Company credit card

No covered claims between a person enrolled in Solution Channel and Charter, may be pursued in a court. All covered claims may only be pursued on an individual basis. Individuals participating in this Program waive their right to bring a covered claim in court and on behalf of a group or class of individuals.

In the event a dispute between you and Charter is not arbitrable under Solution Channel for any reason and is pursued in court, you and Charter agree to waive any right to a jury trial that might otherwise exist.

The following employee claims are **excluded** from and will not be resolved through Solution Channel:

- Claims for workers' compensation benefits
- Claims for unemployment compensation benefits
- Claims arising under the National Labor Relations Act
- Claims arising under the Employee Retirement Income Security Act, or for breach of employee benefits or welfare plans
- Claims arising under separation or severance agreements or non-compete agreements (unless arbitration is provided for under the terms of the agreement)
- Claims for violations of the Health Information Portability and Accountability Act
- Claims related to corrective action that do not result in termination of employment
- Claims older than the statute of limitations applicable to such claims
- Claims related to intellectual property

The following Charter claims are **excluded** from and will not be resolved through Solution Channel:

- Claims of theft or embezzlement, or any criminal conduct
- Claims related to intellectual property
- Claims that have already been filed in federal or state court at the time of the effective date of the Mutual Arbitration Agreement, provided that such claims were not previously subject to any arbitration agreement
- Claims covered by a collective bargaining agreement, a severance agreement, a non-compete agreement, or a written employment contract (although nothing in this document shall limit the applicability of any arbitration or other dispute resolution provision contained in those agreements)
- Claims for injunctive or other equitable relief related to unfair competition and the taking, use or unauthorized disclosure of trade secrets or confidential information

## HOW TO SUBMIT A CLAIM

If you are unable to informally resolve your employment-related legal concern to your satisfaction, you may submit a covered claim by following these steps:

### Solution Channel Website

- Access the Solution Channel website at www.CharterSolutionChannel.com from any computer or mobile device.
- Register so that you can obtain login credentials to access the claims submission web page.
- Login credentials will be emailed to you.

### Completing the Claim Form

- Log in at the Solution Channel website, and you will be directed to the Solution Channel claim portal.
- Click Start.
- Complete the claim form accurately and completely. In the form, you will describe the nature of your claim, the basis for your claim, and the remedy you are seeking.
- Save any information you wish to include in the claim form before exiting the form.
- You may save information and exit, and then later add additional information by logging into the site and selecting your claim.

### Acknowledgment and Submission of the Claim

- When you have completed the form and are ready to submit your claim, you must acknowledge and attest to the accuracy of the information in the form and then click Submit Claim. The date you submit the completed claim form to Charter will determine whether the claim was timely filed.
- You will receive an email confirming receipt of the claim, along with a claim number. You should keep a copy of this information. Charter will also receive an automated notification that your claim has been submitted.
- If you require an accommodation, or are otherwise unable to submit a claim using the portal, you must send your request for assistance by email to Charter at SolutionChannel@charter.com.

## DEADLINES AND TIMELINES

- You must submit a covered claim before the end of the statute of limitations applicable to the claim. You have the right to consult with an attorney regarding the applicable statute of limitations or your claim in general.

- Charter will communicate to you whether the claim is arbitrable within **10 days** after the claim is submitted.

- Charter will complete its internal review of an arbitrable claim and issue its determination, within **60 days** after the claim is submitted.

- You must indicate whether you wish to proceed with an arbitration hearing within **15 days** after receiving the determination.

- If you indicate that you wish to proceed with an arbitration hearing, the parties will have **10 days** to select an arbitrator.

- An informal conference with the arbitrator will typically be scheduled for within **10 days** after the arbitrator is selected and confirmed to preside over the matter.

- The parties will have up to **90 days** after the informal conference with the arbitrator, to exchange information or conduct other discovery.

- The arbitration hearing will generally occur within **180 days** after the informal conference with the arbitrator, and will generally last one or two days.

- The parties will be permitted to submit post-hearing briefs to the arbitrator within **45 days** after the arbitration.

- The arbitrator will issue a decision and the matter will be fully resolved, generally no later than one year after the submission of the claim.

It is imperative that you comply with the employee deadlines highlighted above to preserve your rights under Solution Channel. Deadlines will not be postponed or extended absent mutual agreement of the parties or good cause shown by the party requesting postponement.

## KEY ELEMENTS OF ARBITRATION

### Selecting an Arbitrator

If you are not satisfied with Charter's decision following the internal claim review and decide to proceed with arbitration of your claim, you must notify Charter of your intention to proceed with arbitration.

If you decide to move forward with arbitration, the next step is for the parties to jointly select an arbitrator. Charter will obtain from the AAA a list of five potential arbitrators deemed by AAA to have significant experience arbitrating employment claims.

17

Charter will email the list to you, and you will have the first opportunity to strike the name of an arbitrator that you do not wish to preside over the arbitration. After you strike a name and communicate your decision to Charter by email, Charter will then have the same opportunity to strike one name from the list and send you an email with Charter's decision. The parties continue to take turns striking names until there is just one arbitrator name left on the list.

The remaining arbitrator on the list will serve as the arbitrator, so long as he or she is available within the timelines required by this Program. Charter will notify AAA of the parties' choice for arbitrator, and will notify you by email when the arbitrator has been confirmed to preside over the claim.

### The Initial Conference

After the arbitrator is appointed, an informal telephone conference is held between the arbitrator and both parties and their legal representatives (if applicable). In cooperation with the arbitrator, the parties will identify the steps needed to prepare for the hearing and may set dates for submission of witness lists, exhibits, any briefs, and the hearing. The arbitrator may also discuss the law and burdens of proof that apply and any other issues relating to how the parties will proceed toward and during the arbitration hearing.

Either party may challenge the arbitrability of a claim until the day of the initial conference with the arbitrator.

All decisions or orders of the arbitrator will be documented in a letter or other written format for both parties.

### Exchanging Information and Preparing for Hearing

The parties will have 90 days to exchange information and take depositions. Information is generally exchanged through written questions or requests for documents, called interrogatories, requests for production, or third party subpoenas. Each party will be permitted to take up to four (4) depositions and allowed up to 20 total interrogatories (including subparts) and up to 15 total requests for documents to the other party, whether the interrogatories and requests for documents are sent at one time or in increments. Each party will bear the cost of taking depositions, including court reporter and witness fees.

Any disagreements regarding the exchange of information or depositions will be resolved by the arbitrator to allow a full and equal opportunity to all parties to present evidence that the arbitrator deems material and relevant to the resolution of the dispute.

The arbitrator has the discretion to draw an adverse inference against a party who fails to timely cooperate in the exchange of information.

### What to Expect During the Hearing

An arbitration hearing is not as formal as a trial. These hearings will be held, at Charter's expense, at a hotel meeting or conference room or similar, neutral location within 100 miles of your last Charter work location, unless another location is mutually agreed upon.

The arbitrator is typically seated between the parties. The parties may call witnesses to testify, and any testifying witness under oath will be seated near the arbitrator. A court reporter will usually be seated near the witness seat to transcribe all testimony and substantive statements of the arbitrator and parties or their representatives.

After the arbitrator makes initial remarks and tells the parties about some ground rules for the arbitration, the arbitrator may allow each party or their legal representative to make an opening statement. These statements are followed by witness testimony, with the claimant calling his or her witnesses first. Witnesses will be subject to direct and cross examination. The parties will bear the same burden of proof and production of evidence regarding the claim as would apply if the claim had been brought in court. At the end of all of the witness testimony, the parties may also have the chance to make closing arguments to the arbitrator.

Following the hearing, the parties will be given the opportunity to submit written, post-hearing briefs to the arbitrator. The arbitrator will issue a written opinion containing the arbitrator's findings, decision and any award. The arbitration decision will be final and binding as to the claim arbitrated by the parties, but will have no binding effect in any other proceeding.



# Key Terms to Know and Understand

Because Solution Channel is the process utilized at Charter to resolve most legal disputes related to employment, it is important to know and understand the meaning of terms associated with and used to explain Solution Channel. Following is an alphabetized glossary of key terms and how they are defined for purposes of Solution Channel.

American Arbitration Association – Founded in 1926, the American Arbitration Association (AAA) is a non-profit public service organization dedicated to the resolution of disputes through alternative procedures. AAA will preside over disputes that proceed to arbitration through Solution Channel.

Arbitration – A hearing or other proceeding where a legal dispute between Charter and a current employee, former employee, or applicant for employment is formally presented to a neutral third party for final and binding resolution. During arbitration, the parties (claimant and respondent) are also permitted to present evidence that supports their position.

Arbitrator – A neutral and objective third party jointly selected by the claimant and respondent involved in a legal dispute. The arbitrator acts as an impartial judge in that he or she examines and weighs the value and credibility of evidence presented during arbitration, reviews and analyzes the applicable laws, and reaches a final and binding decision that resolves the dispute.

Brief – A written explanation of a party's position and arguments in a legal dispute. Both the claimant and respondent are generally given the opportunity to submit a brief to the arbitrator. Depending upon the nature of the dispute, the arbitrator may request that the parties submit a pre-hearing brief and/or a post-hearing brief.

Claim – A legal demand made by a person or party seeking monetary or non-monetary compensation or another remedy for a loss suffered as the result of a legal dispute. Through Solution Channel, a current employee, former employee, or applicant for employment can resolve eligible employment-related claims asserted against Charter. Similarly, Solution Channel is the means by which Charter will resolve qualifying employment-related claims it may assert against a current or former employee. Solution Channel does not allow claims to be brought by a group or class of current employees, former employees, or applicants for employment. Under Solution Channel, claims can only be brought by or on behalf of an individual, or by or on behalf of Charter.

21

Claimant – The person or party that initiates a claim. A claim may be brought by a current employee, a former employee, an applicant for employment, or Charter.

Claim Form – The official statement and description of a claim asserted by a person or party.

Decision – A written summary and analysis prepared by the arbitrator following an arbitration proceeding. The decision typically includes factual findings, an overview of the applicable laws, the arbitrator's final and binding decision, the rationale for the decision, and any monetary or nonmonetary remedy awarded to the claimant.

Discovery – The period during which the claimant and respondent exchange documents and other evidence related to the claim. Discovery may be in written form, the deposition testimony of a witness, or other tangible things such as audio recordings, video recordings, pictures, and/or social media postings.

Dispute – A disagreement of a legal nature between Charter and a current employee, a former employee, or an applicant for employment. Solution Channel is the mechanism for resolving covered employment-related disputes.

Evidence – Documents, testimony, written statements, and other tangible items that prove or disprove facts relating to a claim.

Final and Binding – A term used to describe a decision of the arbitrator that generally cannot be appealed to any other person or body and is enforceable like a court ruling or judgment.

Legal Representative – An attorney authorized to act on behalf of Charter or a claimant during the arbitration process. You may involve a legal representative, but this is not required. Each party bears the cost of an attorney, unless the arbitrator orders otherwise.

Remedy – The relief or damages awarded by an arbitrator to the claimant if the arbitrator finds in favor of the claimant. The type of relief will vary, based on the nature of the claim, but will be limited to the form of relief that would be available in court or through an administrative agency.

Respondent – The party who is defending a claim.

Statute of Limitations – The period of time during which the law allows an individual or entity to pursue a particular type of claim. If an individual or entity files a claim beyond this period of time, the claim will not be covered by Solution Channel and the claimant will be notified that the claim has been closed. For example, if the statute of limitations for filing a claim to collect a debt is two years, then the claim must be filed no later than two years after the debt was first owed, otherwise, the statute of limitations has run and the claim will be closed. Also, to be timely, any claim that must be filed with an administrative agency or body as a precondition or prerequisite to filing the claim in court, must be filed with Solution Channel within the time period by which the charge, complaint or other similar document would have had to be filed with the agency or other administrative body. If you file a charge or complaint with an administrative agency or body, any participation by Charter in the proceeding shall not be deemed a waiver of your obligation to arbitrate your claims pursuant to this Agreement. By participating in this Program, you waive any argument that Charter's participation in such a proceeding acts as a waiver or modification of the parties' agreement to arbitrate. If an aggrieved party pursues an administrative charge or complaint and files a timely complaint with Solution Channel, the arbitration shall proceed as quickly as possible under these Guidelines.

Testimony – Oral statements made under oath and transcribed by a court reporter, at either a deposition or an arbitration.

Waiver – An agreement to give up a right in exchange for receiving a benefit.



©2017 Charter Communications



## NOTICE

**PLEASE READ THE FOLLOWING MUTUAL ARBITRATION AGREEMENT ("AGREEMENT") CAREFULLY.  IF YOU ACCEPT THE TERMS OF THE AGREEMENT (WHETHER YOU ARE AN APPLICANT, CURRENT EMPLOYEE, OR FORMER EMPLOYEE), YOU ARE AGREEING TO SUBMIT ANY COVERED EMPLOYMENT-RELATED DISPUTE BETWEEN YOU AND CHARTER COMMUNICATIONS (CHARTER) TO BINDING ARBITRATION. YOU ARE ALSO AGREEING TO WAIVE ANY RIGHT TO LITIGATE THE DISPUTE IN A COURT AND/OR HAVE THE DISPUTE DECIDED BY A JURY.**

## MUTUAL ARBITRATION AGREEMENT

A.  **Arbitration Requirement.** You and Charter mutually agree that, as a condition of Charter considering your application for employment and/or your employment with Charter, any dispute arising out of or relating to your pre-employment application and/or employment with Charter or the termination of that relationship, except as specifically excluded below, must be resolved through binding arbitration by a private and neutral arbitrator, to be jointly chosen by you and Charter.

B.  **Covered Claims.** You and Charter mutually agree that the following disputes, claims, and controversies (collectively referred to as "covered claims") will be submitted to arbitration in accordance with this Agreement:

1.  all  disputes, claims, and controversies that could be asserted in court or before an administrative agency or for which you or Charter have an alleged cause of action related to pre-employment, employment, employment termination or post-employment-related claims, whether the claims are denominated as tort, contract, common law, or statutory claims (whether under local, state or federal law), including without limitation claims for: collection of overpaid wages and commissions, recovery of reimbursed tuition or relocation expense reimbursement, damage to or loss of Charter property, recovery of unauthorized charges on company credit card; claims for unlawful termination, unlawful failure to hire or failure to promote, wage and hour-based claims including claims for unpaid wages, commissions, or other compensation or penalties (including meal and rest break claims, claims for inaccurate wage statements, claims for reimbursement of expenses); unlawful discrimination or harassment (including such claims based upon race, color, national origin, sex, pregnancy, age, religion, sexual orientation, disability, and any other prohibited grounds), claims for unlawful retaliation, claims arising under the Family Medical Leave Act, Americans with Disabilities Act or similar state laws, including unlawful denial of or interference with a leave of absence, claims for unlawful denial of accommodation or failure to engage in the interactive process, whistleblower claims, claims for violations of the Sarbanes-Oxley Act, claims for violations of Occupational Safety and Health Administration or other safety or occupational health, whether arising before, during or after the termination of your employment, claims related to background and any and all other pre-employment and employment checks, including any claims brought under the Fair Credit Reporting Act and/or similar federal, state or local statutes or ordinances;

2.  all disputes, claims, and controversies set forth in Section B.1 above, whether made against Charter, or any of its subsidiaries, parent, or affiliated entities, or its individual officers, directors, shareholders, agents, managers, or employees (in an official or personal capacity, if such claim against the employee arises from or in any way relates to your pre-employment or employment relationship with Charter); and

3.  all disputes related to the arbitrability of any claim or controversy.

© 2017 Charter Communications          Version Date – September 25, 2017



C. **Excluded Claims.** All other claims not covered under Section B above will not be submitted to arbitration under this Agreement.  In addition, the following claims are specifically excluded from arbitration under this Agreement:

1. Claims for workers' compensation benefits (other than retaliation for pursuing such claims);

2. Claims for unemployment compensation benefits (other than retaliation for pursuing such claims);

3. Claims arising under the National Labor Relations Act;

4. Claims for violations of the Employee Retirement Income Security Act of 1974, or for breach of employee benefits or welfare plans that contain procedures for resolution of disputes under those plans, which shall be governed by those procedures;

5. Claims arising under the Health Insurance Portability and Accountability Act of 1996;

6. Claims for injunctive or other equitable relief related to unfair competition and the taking, use or unauthorized disclosure of trade secrets or confidential information;

7. Claims arising under separation or severance agreements or non-compete agreements (unless arbitration is provided for under the terms of the agreement);

8. Claims related to corrective action or other performance management that does not result in termination of employment;

9. Claims older than the statute of limitations applicable to such claims;

10. Claims of theft or embezzlement or any criminal conduct;

11. Claims over the validity of any party's intellectual property rights;

12. Any claims covered by a collective bargaining agreement, a severance agreement, or a written employment contract (although nothing in this Agreement shall limit the applicability of any arbitration or other dispute resolution provision contained in those agreements);

13. Any claims expressly non-arbitrable by statute, including 12 U.S.C. §5567(d)(2); 7 U.S.C. §26(n); or 18 U.S.C. §1514A(e)(2);

14. Any claims that have already been filed in federal or state court at the time you execute this Agreement, provided that such claims were not previously subject to any arbitration agreement.

Nothing in this Agreement shall prevent you from filing and pursuing the following: an administrative proceeding before the Equal Employment Opportunity Commission (EEOC) or an equivalent state or local agency (although if you choose to pursue the claim, any proceeding on the merits or for damages will be subject to arbitration); a proceeding before the National Labor Relations Board (NLRB); a claim for medical and/or disability benefits under applicable workers' compensation laws; or a claim for unemployment compensation benefits.

D. **Individual Claims Limitation and Representative, Collective, and Class Action Waiver.** You and Charter agree that both parties may only bring claims against the other party in their individual capacity and not as a plaintiff or class member in any purported class or representative proceeding, whether those claims are covered claims under Section B, or excluded claims under Section C.  Additionally, the arbitrator shall not be permitted to order consolidation of claims or a representative, class, or collective, arbitration.

Version Date – September 25, 2017



E.   **Time Limits.** The aggrieved party must give written notice of the claim, in the manner required by this Agreement, within the time limit established by the applicable statute of limitations for each legal claim being asserted.  To be timely, any claim that must be filed with an administrative agency or body as a precondition or prerequisite to filing the claim in court, must be filed with Solution Channel within the time period by which the charge, complaint or other similar document would have had to be filed with the agency or other administrative body.  Whether a demand for arbitration is untimely is an affirmative defense, and will be decided by the arbitrator before any hearing on the merits of the aggrieved party's claim.  If you file a charge or complaint with an administrative agency or body, any participation by Charter in the proceeding shall not be deemed a waiver of your obligation to arbitrate your claims pursuant to this Agreement.  You agree not to assert, and agree to waive, any argument that Charter's participation in such a proceeding acts as a waiver or modification of the parties' agreement to arbitrate.

F.   **Claim.** To pursue arbitration of a dispute under this Agreement, you must first submit a written claim at www.CharterSolutionChannel.com, a site hosted by a third party designated by Charter. In your claim, you must (1) describe the nature and basis of the claim or dispute, (2) set forth the specific relief sought, and (3) include a sworn verification that the dispute is covered by this Agreement and that the information submitted in the notice is accurate.  In the event that Charter intends to seek arbitration of a dispute under this Agreement, it must send by certified mail to the individual's last known address, a written claim that meets the requirements of this Section F.

G.   **Location.** Any arbitration hearing conducted under this Agreement will take place within 100 miles of the Charter office to which you last reported during your employment as of the date of the filing of the Notice, or the Charter office at which you sought employment, unless another location is mutually selected by the parties.

H.   **Selection of Arbitrator.** The arbitration shall be held before one arbitrator who is a current member of the American Arbitration Association (AAA) and is listed on the Employment Dispute Resolution Roster.  Within 45 days after submission of the claim, Charter will request from the AAA a list of at least five arbitrators willing to hear and decide the dispute.  Within 20 days after receipt of the list from the AAA, the parties will select an arbitrator to hear and resolve the dispute and will notify the AAA of the selection of an arbitrator.

I.   **Conduct of Arbitration.**

   1.   *Rules.*  Arbitration hearings will be conducted pursuant to the Solution Channel Program Guidelines and the arbitrator shall have the sole authority to determine whether a particular claim or controversy is arbitrable.

   2.   *Authority of the Arbitrator.*  The arbitrator will decide all discovery disputes related to the arbitration.  Unless the parties agree to submit written arguments in lieu of a hearing on the merits of the claim[s], the arbitrator will schedule and conduct an evidentiary hearing, at which the arbitrator will hear testimony and receive evidence.  The arbitrator shall apply the governing law applicable to any substantive claim asserted, including the applicable law necessary to determine when the claim arose and any damages.

   3.   *Waiver of Hearing.*  The parties may, at any time prior to a hearing, mutually agree to forego a hearing, and instead submit all evidence and argument to the arbitrator in writing.

   4.   *Burden of Proof.*  The arbitrator will apply the burdens of proof and law applicable to the claim, had the claim been adjudicated in court.

   5.   *Decision.*  The arbitrator will issue a decision within 30 days after the close of an arbitration hearing, or at a later time on which the parties agree.  The decision will be signed and dated by the arbitrator, and will contain



express findings of fact and the legal reasons for the decision and any award, except as otherwise provided for under the Federal Arbitration Act.

J.    **Enforcement of the Decision.** Judgment on the arbitrator's decision may be entered in any court having jurisdiction over the matter, within 45 days following its issuance.

K.    **Arbitration Costs.** Charter will pay the AAA administrative fees and the arbitrator's fees and expenses.  All other costs, fees and expenses associated with the arbitration, including without limitation each party's attorneys' fees, will be borne by the party incurring the costs, fees and expenses.  The parties agree and acknowledge, however, that the failure or refusal of either party to submit to arbitration as required by this Agreement will constitute a material breach of this Agreement.  If any judicial action or proceeding is commenced in order to compel arbitration, and if arbitration is in fact compelled or the party resisting arbitration submits to arbitration following the commencement of the action or proceeding, the party that resisted arbitration will be required to pay to the other party all costs, fees and expenses that they incur in compelling arbitration, including, without limitation, reasonable attorneys' fees.

L.    **Jury Trial and Litigation Waiver.** You and Charter understand that, by agreeing to arbitration, both parties are waiving their right to demand a jury in any claim that is subject to arbitration under this Agreement.  In addition, in the event a dispute between you and Charter is not arbitrable under this Agreement for any reason and is pursued in court, you and Charter agree to waive any right to a jury trial that might otherwise exist.  Although this Agreement does not preclude either party from filing timely charges with any applicable administrative agency, neither party will ever seek or accept any damages, remedies, or other relief (any right to which is hereby waived) except through the binding arbitration process set forth in this Agreement.

M.   **Conflicts.** In the event of a conflict between this Agreement and the Solution Channel Program Guidelines, the terms of this Agreement will control.

N.    **No Retaliation.** Charter will not retaliate against you for seeking, in good faith, to resolve a dispute pursuant to this Agreement.

O.    **Employment-At-Will.** This Agreement in no way alters the at-will employment relationship between you and Charter.  You and Charter are free to terminate the employment relationship at any time for any lawful reason, and your employment is not for any specific duration.

P.    **Entire Agreement.** This Agreement sets for the complete agreement of the parties on the subject of resolution of the covered disputes, and supersedes any prior or contemporaneous oral or written understanding on this subject; provided, however, that this Agreement will not apply to the resolution of any charges, complaints, or lawsuits that have been filed with an administrative agency or court before the Effective Date of this Agreement.

Q.    **Severability.** The parties explicitly acknowledge and agree that the provisions of this Agreement are both reasonable and enforceable.  However, if any portion or provision of this Agreement (including, without implication of limitation, any portion or provision of any section of this Agreement) is determined to be illegal, invalid, or unenforceable by any court of competent jurisdiction and cannot be modified to be legal, valid, or enforceable, the remainder of this Agreement shall not be affected by such determination and shall be valid and enforceable to the fullest extent permitted by law, and said illegal, invalid, or unenforceable portion or provision shall be deemed not to be a part of this Agreement.  The only exception to this severability provision is, should the dispute involve a representative, collective or class action claim, and the representative, collective, and class action waiver (Section D) is found to be



invalid or unenforceable for any reason, then this Agreement (except for the parties' agreement to waive a jury trial) shall be null and void with respect to such representative, collective, and/or class claim only, and the dispute will not be arbitrable with respect to such claim(s).

R.   **Federal Arbitration Act.** This Agreement will be governed by the Federal Arbitration Act.

S.   **Consideration.** You agree that Charter has offered you sufficient consideration for this Agreement, including, without limitation, consideration of your application for employment with Charter, your employment with Charter, and/or Charter's mutual agreement to arbitrate disputes.

T.   **Termination.** This Agreement survives the termination of your employment with Charter (including if you are later re-employed by and/or if your employment with Charter terminates again).

U.   **Voluntary.** You acknowledge that you have carefully read this Agreement, fully understand what it means, and are entering into it voluntarily.

V.   **Effective Date.** This Agreement is effective and you are legally bound by the terms of Charter's Solution Channel and this Agreement, as of the date of your consent to participate in Solution Channel.

EXHIBIT 2

| | |
|---|---|
| **From:** | Paul Marchand </O=CHARTER COMMUNICATIONS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN= 1EBF6C9DAC6F4BC2AE0754F77DCB8233-R> |
| **Sent:** | Friday, October 6, 2017 1:09 PM |
| **To:** | Harper, Lionel E |
| **Subject:** | Charter's Code of Conduct and Employee Handbook |

View web version



October 6, 2017

We should all take personal pride in ensuring our company acts with integrity and respect. We strive to do the right thing – no matter the circumstance or the situation.

Our reputation and the creation of long-term value rest on how we conduct ourselves individually and collectively as a company. In this regard, our behavior is governed by the standards, guidelines and policies outlined in a few key resources. These resources explain what you should expect in the workplace, as well as the company's expectations of you.

Our *Code of Conduct* embodies our business ideals, describes behavior employees should strive to model, and provides the framework for reporting ethical concerns in the workplace. The *Employee Handbook* sets forth the policies, guidelines and rules that govern workplace behavior. Further integrating our three legacy companies, we have refreshed Charter's *Code of Conduct* and *Employee Handbook* to ensure we're all abiding by the same standards. The basic principles and values that guide our daily decisions remain unchanged. The *Code of Conduct* and *Employee Handbook* are available on Panorama. The *Employee Handbook* includes references and links to various policies. We also have various business unit policies and other corporate policies to guide our activity. You are encouraged to review and familiarize yourself with the *Code of Conduct,* the *Employee Handbook* and these additional policies. We'll continue to see success in the marketplace by putting our customers first, acting with integrity and making professionalism our daily routine.

Even with clearly articulated standards, guidelines and policies, we understand that workplace

conflicts arise from time to time. The vast majority of these will be appropriately resolved through informal channels (such as speaking directly to your supervisor, manager or local human resources representative), though we also recognize that some employment-based disputes may be better addressed through a more structured and formal resolution process, similar to the process that was already the standard at Time Warner Cable and for our senior executives, which has covered over 40,000 Charter employees. In the unlikely event of a dispute not resolved through the normal channels, Charter has launched *Solution Channel*, a program that allows you and the company to efficiently resolve covered employment-related legal disputes through binding arbitration.

By participating in *Solution Channel*, you and Charter both waive the right to initiate or participate in court litigation (including class, collective and representative actions) involving a covered claim and/or the right to a jury trial involving any such claim. More detailed information about *Solution Channel* is located on Panorama. Unless you opt out of participating in *Solution Channel* within the next 30 days, you will be enrolled. Instructions for opting out of *Solution Channel* are also located on Panorama.

Thank you for doing your part to make Charter a positive, supportive and professional place to work. We are proud of our company and how we behave.

Paul Marchand                           Rick Dykhouse
Executive Vice President,                Executive Vice President,
Chief Human Resources Officer            General Counsel and Corporate Secretary

E-MAIL CONFIDENTIALITY NOTICE:
The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message or any attachment is strictly prohibited.

© 2017 Charter Communications

This email was sent to Lionel.Harper@charter.com from PaulMarchandEVP@charter.com
Receive in Plain Text

# EXHIBIT 3



## SOLUTION CHANNEL

Support & Resources          Report an Issue          Solution Channel

# Solution Channel

## *Charter's Program for Resolution of Employment-Based Legal Disputes*

## Our Commitment
Charter is committed to creating and maintaining a work environment where employees are treated fairly, respectfully, honestly, professionally, and with integrity.

## Dealing With Conflict in the Workplace
Charter offers a number of ways to address work-related concerns if they arise. Charter maintains an Open Door Policy that allows employees to freely share ideas, make suggestions, and express concerns informally and without repercussion. You are encouraged to confer with your supervisor, another leader, or the HR team, to discuss any employment-related ideas, suggestions, or concerns. Ethics or compliance issues should be reported through EthicsPoint.

Charter is confident that the vast majority of workplace conflicts will be appropriately resolved through less formal channels. However, we also recognize that there may be some employment-based disputes that are best addressed through a more structured and formal resolution process.

## Introduction to Solution Channel
Solution Channel is a dispute resolution alternative developed by Charter, where a current employee, a former employee, an applicant for employment, or Charter can efficiently and privately resolve covered employment-based legal disputes. Solution Channel is not intended to be a substitute for the manner in which routine conflicts, concerns, and issues in the workplace are handled. Rather, it is reserved for the resolution of certain legal disputes that arise during the course of the employment and pre-employment relationship. Participation in Solution Channel means that you and Charter agree

to waive any right to participate in court litigation involving covered disputes and to arbitrate those disputes that are not successfully resolved following the internal review phase of the process.

## At a Glance

Through Solution Channel, Charter is committed to reaching a mutually satisfactory resolution of covered legal disputes. The process involves multiple steps, any of which may result in resolution of the dispute. If necessary, the last step is final and binding arbitration of the dispute. Solution Channel offers a number of tangible benefits, including the following:

**Fair, Equitable and Speedy Resolutions.** It can take years to resolve a claim in court, but Solution Channel offers the opportunity to have claims heard and decided by a neutral arbitrator within a year after a claim is filed.

**Cost Efficient.** Charter pays for the arbitrator, the arbitration site, and the claim filing fees. The speedy resolution available through Solution Channel reduces the costs and attorneys' fees that might typically be incurred in court litigation.

**Direct Involvement.** Claims are decided by an independent, neutral arbitrator that the employee and Charter jointly select from a panel of experienced arbitrators.

**Streamlined Procedures.** Court litigation involves numerous hearings, depositions, and other proceedings, but arbitrations involve fewer steps, allowing a case to be resolved within a year of a claim being filed.

## Key Documents

* Mutual Arbitration Agreement
* Program Guidelines

## Submitting a Claim Through Solution Channel

To utilize Solution Channel, you must submit a claim online. To submit a claim or check the status of a claim you previously filed, go to www.CharterSolutionChannel.com.

Submitted claims will first be reviewed by Charter to determine whether they are covered by Solution Channel. If a claim is covered by Solution Channel, it will then be reviewed internally by Charter. Claims not resolved at this phase in the process may proceed to arbitration.

# EXHIBIT 4



## NOTICE

PLEASE READ THE FOLLOWING MUTUAL ARBITRATION AGREEMENT ("AGREEMENT") CAREFULLY.  IF YOU ACCEPT THE TERMS OF THE AGREEMENT (WHETHER YOU ARE AN APPLICANT, CURRENT EMPLOYEE, OR FORMER EMPLOYEE), YOU ARE AGREEING TO SUBMIT ANY COVERED EMPLOYMENT-RELATED DISPUTE BETWEEN YOU AND CHARTER COMMUNICATIONS (CHARTER) TO BINDING ARBITRATION. YOU ARE ALSO AGREEING TO WAIVE ANY RIGHT TO LITIGATE THE DISPUTE IN A COURT AND/OR HAVE THE DISPUTE DECIDED BY A JURY.

## MUTUAL ARBITRATION AGREEMENT

A.   **Arbitration Requirement.** You and Charter mutually agree that, as a condition of Charter considering your application for employment and/or your employment with Charter, any dispute arising out of or relating to your pre-employment application and/or employment with Charter or the termination of that relationship, except as specifically excluded below, must be resolved through binding arbitration by a private and neutral arbitrator, to be jointly chosen by you and Charter.

B.   **Covered Claims.** You and Charter mutually agree that the following disputes, claims, and controversies (collectively referred to as "covered claims") will be submitted to arbitration in accordance with this Agreement:

1.    all  disputes, claims, and controversies that could be asserted in court or before an administrative agency or for which you or Charter have an alleged cause of action related to pre-employment, employment, employment termination or post-employment-related claims, whether the claims are denominated as tort, contract, common law, or statutory claims (whether under local, state or federal law), including without limitation claims for: collection of overpaid wages and commissions, recovery of reimbursed tuition or relocation expense reimbursement, damage to or loss of Charter property, recovery of unauthorized charges on company credit card; claims for unlawful termination, unlawful failure to hire or failure to promote, wage and hour-based claims including claims for unpaid wages, commissions, or other compensation or penalties (including meal and rest break claims, claims for inaccurate wage statements, claims for reimbursement of expenses); unlawful discrimination or harassment (including such claims based upon race, color, national origin, sex, pregnancy, age, religion, sexual orientation, disability, and any other prohibited grounds), claims for unlawful retaliation, claims arising under the Family Medical Leave Act, Americans with Disabilities Act or similar state laws, including unlawful denial of or interference with a leave of absence, claims for unlawful denial of accommodation or failure to engage in the interactive process, whistleblower claims, claims for violations of the Sarbanes-Oxley Act, claims for violations of Occupational Safety and Health Administration or other safety or occupational health, whether arising before, during or after the termination of your employment, claims related to background and any and all other pre-employment and employment checks, including any claims brought under the Fair Credit Reporting Act and/or similar federal, state or local statutes or ordinances;

2.    all disputes, claims, and controversies set forth in Section B.1 above, whether made against Charter, or any of its subsidiaries, parent, or affiliated entities, or its individual officers, directors, shareholders, agents, managers, or employees (in an official or personal capacity, if such claim against the employee arises from or in any way relates to your pre-employment or employment relationship with Charter); and

3.    all disputes related to the arbitrability of any claim or controversy.



C.  **Excluded Claims.** All other claims not covered under Section B above will not be submitted to arbitration under this Agreement.  In addition, the following claims are specifically excluded from arbitration under this Agreement:

1.  Claims for workers' compensation benefits (other than retaliation for pursuing such claims);

2.  Claims for unemployment compensation benefits (other than retaliation for pursuing such claims);

3.  Claims arising under the National Labor Relations Act;

4.  Claims for violations of the Employee Retirement Income Security Act of 1974, or for breach of employee benefits or welfare plans that contain procedures for resolution of disputes under those plans, which shall be governed by those procedures;

5.  Claims arising under the Health Insurance Portability and Accountability Act of 1996;

6.  Claims for injunctive or other equitable relief related to unfair competition and the taking, use or unauthorized disclosure of trade secrets or confidential information;

7.  Claims arising under separation or severance agreements or non-compete agreements (unless arbitration is provided for under the terms of the agreement);

8.  Claims related to corrective action or other performance management that does not result in termination of employment;

9.  Claims older than the statute of limitations applicable to such claims;

10.  Claims of theft or embezzlement or any criminal conduct;

11.  Claims over the validity of any party's intellectual property rights;

12.  Any claims covered by a collective bargaining agreement, a severance agreement, or a written employment contract (although nothing in this Agreement shall limit the applicability of any arbitration or other dispute resolution provision contained in those agreements);

13.  Any claims expressly non-arbitrable by statute, including 12 U.S.C. §5567(d)(2); 7 U.S.C. §26(n); or 18 U.S.C. §1514A(e)(2);

14.  Any claims that have already been filed in federal or state court at the time you execute this Agreement, provided that such claims were not previously subject to any arbitration agreement.

Nothing in this Agreement shall prevent you from filing and pursuing the following: an administrative proceeding before the Equal Employment Opportunity Commission (EEOC) or an equivalent state or local agency (although if you choose to pursue the claim, any proceeding on the merits or for damages will be subject to arbitration); a proceeding before the National Labor Relations Board (NLRB); a claim for medical and/or disability benefits under applicable workers' compensation laws; or a claim for unemployment compensation benefits.

D.  **Individual Claims Limitation and Representative, Collective, and Class Action Waiver.** You and Charter agree that both parties may only bring claims against the other party in their individual capacity and not as a plaintiff or class member in any purported class or representative proceeding, whether those claims are covered claims under Section B, or excluded claims under Section C.  Additionally, the arbitrator shall not be permitted to order consolidation of claims or a representative, class, or collective, arbitration.



E.  **Time Limits.** The aggrieved party must give written notice of the claim, in the manner required by this Agreement, within the time limit established by the applicable statute of limitations for each legal claim being asserted.  To be timely, any claim that must be filed with an administrative agency or body as a precondition or prerequisite to filing the claim in court, must be filed with Solution Channel within the time period by which the charge, complaint or other similar document would have had to be filed with the agency or other administrative body.  Whether a demand for arbitration is untimely is an affirmative defense, and will be decided by the arbitrator before any hearing on the merits of the aggrieved party's claim.  If you file a charge or complaint with an administrative agency or body, any participation by Charter in the proceeding shall not be deemed a waiver of your obligation to arbitrate your claims pursuant to this Agreement.  You agree not to assert, and agree to waive, any argument that Charter's participation in such a proceeding acts as a waiver or modification of the parties' agreement to arbitrate.

F.  **Claim.** To pursue arbitration of a dispute under this Agreement, you must first submit a written claim at www.CharterSolutionChannel.com, a site hosted by a third party designated by Charter. In your claim, you must (1) describe the nature and basis of the claim or dispute, (2) set forth the specific relief sought, and (3) include a sworn verification that the dispute is covered by this Agreement and that the information submitted in the notice is accurate.  In the event that Charter intends to seek arbitration of a dispute under this Agreement, it must send by certified mail to the individual's last known address, a written claim that meets the requirements of this Section F.

G.  **Location.** Any arbitration hearing conducted under this Agreement will take place within 100 miles of the Charter office to which you last reported during your employment as of the date of the filing of the Notice, or the Charter office at which you sought employment, unless another location is mutually selected by the parties.

H.  **Selection of Arbitrator.** The arbitration shall be held before one arbitrator who is a current member of the American Arbitration Association (AAA) and is listed on the Employment Dispute Resolution Roster.  Within 45 days after submission of the claim, Charter will request from the AAA a list of at least five arbitrators willing to hear and decide the dispute.  Within 20 days after receipt of the list from the AAA, the parties will select an arbitrator to hear and resolve the dispute and will notify the AAA of the selection of an arbitrator.

I.  **Conduct of Arbitration.**

    1.  *Rules.*  Arbitration hearings will be conducted pursuant to the Solution Channel Program Guidelines and the arbitrator shall have the sole authority to determine whether a particular claim or controversy is arbitrable.

    2.  *Authority of the Arbitrator.*  The arbitrator will decide all discovery disputes related to the arbitration.  Unless the parties agree to submit written arguments in lieu of a hearing on the merits of the claim[s], the arbitrator will schedule and conduct an evidentiary hearing, at which the arbitrator will hear testimony and receive evidence.  The arbitrator shall apply the governing law applicable to any substantive claim asserted, including the applicable law necessary to determine when the claim arose and any damages.

    3.  *Waiver of Hearing.*  The parties may, at any time prior to a hearing, mutually agree to forego a hearing, and instead submit all evidence and argument to the arbitrator in writing.

    4.  *Burden of Proof.*  The arbitrator will apply the burdens of proof and law applicable to the claim, had the claim been adjudicated in court.

    5.  *Decision.*  The arbitrator will issue a decision within 30 days after the close of an arbitration hearing, or at a later time on which the parties agree.  The decision will be signed and dated by the arbitrator, and will contain



express findings of fact and the legal reasons for the decision and any award, except as otherwise provided for under the Federal Arbitration Act.

J. **Enforcement of the Decision.** Judgment on the arbitrator's decision may be entered in any court having jurisdiction over the matter, within 45 days following its issuance.

K. **Arbitration Costs.** Charter will pay the AAA administrative fees and the arbitrator's fees and expenses. All other costs, fees and expenses associated with the arbitration, including without limitation each party's attorneys' fees, will be borne by the party incurring the costs, fees and expenses. The parties agree and acknowledge, however, that the failure or refusal of either party to submit to arbitration as required by this Agreement will constitute a material breach of this Agreement. If any judicial action or proceeding is commenced in order to compel arbitration, and if arbitration is in fact compelled or the party resisting arbitration submits to arbitration following the commencement of the action or proceeding, the party that resisted arbitration will be required to pay to the other party all costs, fees and expenses that they incur in compelling arbitration, including, without limitation, reasonable attorneys' fees.

L. **Jury Trial and Litigation Waiver.** You and Charter understand that, by agreeing to arbitration, both parties are waiving their right to demand a jury in any claim that is subject to arbitration under this Agreement. In addition, in the event a dispute between you and Charter is not arbitrable under this Agreement for any reason and is pursued in court, you and Charter agree to waive any right to a jury trial that might otherwise exist. Although this Agreement does not preclude either party from filing timely charges with any applicable administrative agency, neither party will ever seek or accept any damages, remedies, or other relief (any right to which is hereby waived) except through the binding arbitration process set forth in this Agreement.

M. **Conflicts.** In the event of a conflict between this Agreement and the Solution Channel Program Guidelines, the terms of this Agreement will control.

N. **No Retaliation.** Charter will not retaliate against you for seeking, in good faith, to resolve a dispute pursuant to this Agreement.

O. **Employment-At-Will.** This Agreement in no way alters the at-will employment relationship between you and Charter. You and Charter are free to terminate the employment relationship at any time for any lawful reason, and your employment is not for any specific duration.

P. **Entire Agreement.** This Agreement sets for the complete agreement of the parties on the subject of resolution of the covered disputes, and supersedes any prior or contemporaneous oral or written understanding on this subject; provided, however, that this Agreement will not apply to the resolution of any charges, complaints, or lawsuits that have been filed with an administrative agency or court before the Effective Date of this Agreement.

Q. **Severability.** The parties explicitly acknowledge and agree that the provisions of this Agreement are both reasonable and enforceable. However, if any portion or provision of this Agreement (including, without implication of limitation, any portion or provision of any section of this Agreement) is determined to be illegal, invalid, or unenforceable by any court of competent jurisdiction and cannot be modified to be legal, valid, or enforceable, the remainder of this Agreement shall not be affected by such determination and shall be valid and enforceable to the fullest extent permitted by law, and said illegal, invalid, or unenforceable portion or provision shall be deemed not to be a part of this Agreement. The only exception to this severability provision is, should the dispute involve a representative, collective or class action claim, and the representative, collective, and class action waiver (Section D) is found to be

| 4



invalid or unenforceable for any reason, then this Agreement (except for the parties' agreement to waive a jury trial) shall be null and void with respect to such representative, collective, and/or class claim only, and the dispute will not be arbitrable with respect to such claim(s).

R.   **Federal Arbitration Act.** This Agreement will be governed by the Federal Arbitration Act.

S.   **Consideration.** You agree that Charter has offered you sufficient consideration for this Agreement, including, without limitation, consideration of your application for employment with Charter, your employment with Charter, and/or Charter's mutual agreement to arbitrate disputes.

T.   **Termination.** This Agreement survives the termination of your employment with Charter (including if you are later re-employed by and/or if your employment with Charter terminates again).

U.   **Voluntary.** You acknowledge that you have carefully read this Agreement, fully understand what it means, and are entering into it voluntarily.

V.   **Effective Date.** This Agreement is effective and you are legally bound by the terms of Charter's Solution Channel and this Agreement, as of the date of your consent to participate in Solution Channel.

Version Date – September 25, 2017

# EXHIBIT 5

## Solution Channel

**Lionel Harper**

| Electronic Opt-Out Acknowledgment |
|---|
| I am a participant in Solution Channel |

|  |  |
|---|---|
| **Employee ID:** | 6034111 |
| **Hire Date:** | 09/18/2017 |
| **Business Unit:** | MRKTG, Marketing |
| **Location:** | CA10481, 5797 Eastside Rd |
| **Participation Date:** | November 6, 2017 |

# EXHIBIT 6

**From:** Jamin Soderstrom <jamin@soderstromlawfirm.com>
**Sent:** Friday, May 24, 2019 5:56 PM
**To:** Onaka, Robin <robin.onaka@morganlewis.com>
**Cc:** McGuigan, Kathryn T. <kathryn.mcguigan@morganlewis.com>; Antonopoulos, Nicole L. <nicole.antonopoulos@morganlewis.com>; Diana Alderete <diana@soderstromlawfirm.com>
**Subject:** RE: Lionel Harper v. Charter Communications LLC, et al.

[EXTERNAL EMAIL]
Dear Nicole,

Thank you for your letter.

The fact that Charter identified a different form of arbitration agreement a month after the arbitration was completed is not a good reason to disturb the arbitrator's ruling or for Harper to dismiss claims that the arbitrator found are not arbitrable. Moreover, based on the fact that Harper had no reasonable notice of or actual knowledge of the other form of agreement (apparently, neither did Charter), and based on the fact that the agreement itself is unconscionable and unenforceable, Harper would not be bound by the terms of this separate agreement even if he knew about it.

We intend on moving forward with the case in a manner consistent with the arbitrator's ruling.

Best regards,
Jamin

---

**From:** Onaka, Robin <robin.onaka@morganlewis.com>
**Sent:** Wednesday, May 22, 2019 1:10 PM
**To:** Jamin Soderstrom <jamin@soderstromlawfirm.com>
**Cc:** McGuigan, Kathryn T. <kathryn.mcguigan@morganlewis.com>; Antonopoulos, Nicole L. <nicole.antonopoulos@morganlewis.com>
**Subject:** Lionel Harper v. Charter Communications LLC, et al.

Dear Mr. Soderstrom,

Attached please find correspondence of this date from Nicole Antonopoulos regarding the above-referenced matter.  You will also receive a hard copy via regular mail.  Thank you.

**Robin Onaka**
Legal Secretary
**Morgan, Lewis & Bockius LLP**
One Market, Spear Street Tower | San Francisco, CA 94105
Direct: +1.415.442.1669 | Main: +1.415.442.1000 | Fax: +1.415.442.1001
robin.onaka@morganlewis.com | www.morganlewis.com
Assistant to: Robert Jon Hendricks, Amy McGeever
           Nicole L. Antonopoulos and Michele C. Stamatopoulos

DISCLAIMER
This e-mail message is intended only for the personal use
of the recipient(s) named above. This message may be an
attorney-client communication and as such privileged and
confidential and/or it may include attorney work product.
If you are not an intended recipient, you may not review,
copy or distribute this message. If you have received this
communication in error, please notify us immediately by
e-mail and delete the original message.