UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| LIONEL HARPER, individually and on behalf of all others similarly situated and all aggrieved employees,<br><br>Plaintiff,<br><br>v.<br><br>CHARTER COMMUNICATIONS, LLC, CHARTER COMMUNICATIONS, INC., and DOES 1 through 25,<br><br>Defendant. | No. 2:19-cv-00902 WBS DMC<br><br>MEMORANDUM AND ORDER RE: CHARTER'S MOTION TO COMPEL ARBIRATION, DISMISS PUTATIVE CLASS CLAIMS, AND STAY THE PAGA CLAIMS; AND RE: PLAINTIFF'S MOTION TO CONFIRM ARBITRATION AWARD AND ENTER JUDGMENT. |

----oo0oo----

Plaintiff Lionel Harper initiated this putative class action against defendants Charter Communications, LLC, and Charter Communications, Inc. (collectively "the Charter defendants" or "Charter") following a JAMS arbitration award confirming that Harper's wage-and-hour dispute is inarbitrable. Plaintiff moves this court to confirm that arbitration award and enter judgment on it as if it had been rendered in this court.

1

(Docket No. 9.) The Charter defendants not only oppose this motion (Docket No. 15), but they also move this court to compel arbitration of plaintiff's individual claims, dismiss the putative class claims, and stay plaintiff's PAGA claims. (Docket No. 11.)

I. Factual and Procedural Background

The Charter defendants market and sell telecommunications services nationwide, including in California. (Notice of Removal, Ex. A ("Compl.") ¶ 9 (Docket No. 1-1).) From approximately September 2017 to March 2018, plaintiff worked for the Charter defendants as a salesperson in California. (Id. ¶ 5.)

Upon hire, plaintiff signed a "Mutual Agreement to Arbitrate." (Soderstrom Decl., Ex. 1 ("JAMS Arbitration Agreement") (Docket No. 9-1).) That agreement required arbitration of "any and all claims, disputes, and/or controversies between [plaintiff] and Charter arising from or related to [plaintiff's] employment with Charter." (Id.) It designated JAMS as the arbitration provider and stated that JAMS Employment Arbitration Rules & Procedures and JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness would govern the arbitration of claims between plaintiff and Charter. (Id.) The JAMS Arbitration Agreement also included a waiver of representative, collective, and class actions (the "Waiver") and a severance and so-called "poison pill" provision. That provision stated that if the Arbitration Agreement or any part thereof was found to be void or unenforceable, then:

> [T]he remainder of the Agreement shall be enforced without the invalid, unenforceable, or unconscionable clause or term, or the application of the clause or term shall be limited as to avoid any invalid, unenforceable, or unconscionable result. The only exception to this severability provision is, should the dispute involve a representative, collective or class action claim, and the [Waiver] is found to be invalid or unenforceable for any reason, then this entire Agreement (except for the parties' agreement to waive a jury trial) shall be null and void and the dispute will not be arbitrable.

(Id.)

On October 6, 2017, while plaintiff was still employed by the Charter defendants, Charter adopted a new arbitration agreement that required arbitration of claims via "Solution Channel," Charter's employment-based legal dispute resolution program. Unlike the JAMS Arbitration Agreement, the Solution Channel Arbitration Agreement provides for arbitration under the auspices and pursuant to the rules of the American Arbitration Association. (Def.'s Mot. to Compel Arbitration at 4.) Charter announced this change via e-mail to all active non-Union employees below the level of Executive Vice President, plaintiff among them. (See Knapper Decl., Ex. B (Docket No. 11-2).) Defendant states that the Solution Channel announcement email "indicated to Employees, including Plaintiff, that they would be enrolled in Solution Channel, and bound by the new Arbitration Agreement, unless they opted out within 30 days." (Def.'s Mot. to Compel Arbitration at 3.) Plaintiff did not opt out and, as a result, defendant contends, all of his claims against Charter are subject to the terms of the new Solution Channel Arbitration Agreement. (Id.)

Plaintiff alleges that during his employment with

Charter, Charter violated a variety of wage and hour laws by, for example, failing to pay overtime wages, failing to pay minimum wage for all hours worked, failing to provide rest breaks or pay premium wages in lieu of rest breaks, and failing to provide accurate wage statements. (See Compl. ¶¶ 22-76.) In May 2018, after the termination of his employment with defendant, plaintiff contacted JAMS and asked to mediate his grievances against Charter. JAMS then contacted Charter regarding this request and Charter responded stating:

> While Charter is willing to arbitrate Mr. Harper's claims, the Company is not willing to Mediate them, as that is not part of the Company's Solution Channel process, to which he is bound. Can you check with Mr. Harper and see if he is interested in Arbitrating his claims?

(Soderstrom Decl., Ex. 2 (Docket No. 9-1).)

Though Charter's initial response to the mediation-inquiry mentioned the "Solution Channel process," subsequent correspondence from Charter's counsel makes clear that defendant sought to enforce the JAMS Arbitration Agreement against plaintiff. Specifically, on July 3, 2018, Zachary Shine, outside counsel for Charter, sent plaintiff's counsel a letter requesting that Harper stipulate to arbitration of his claims against Charter. That letter continued:

> Mr. Harper, at the time of his hire, entered into a Mutual Arbitration Agreement ("Agreement") with Charter in which he agreed to arbitrate all employment-related claims. A copy of the agreement, which was acknowledged by Mr. Harper, is enclosed with this letter. The Agreement states "that any and all claims, disputes, and/or controversies between you and Charter arising

4

>           from or related to your employment with Charter
>           shall be submitted exclusively to and determined
>           exclusively by binding arbitration before a
>           single Judicial Arbitration and Mediation
>           Services, Inc. ("JAMS") arbitrator under the
>           Federal Arbitration Act, 9 U.S.C. § 1 et seq."
>           We understand Mr. Harper has already initiated
>           the alternative dispute resolution process with
>           JAMS, and are hopeful he will continue to abide
>           by his agreement to submit any claims he intends
>           to assert against Charter to binding arbitration.
>           . . . Please let me know at your earliest
>           convenience whether Mr. Harper will stipulate to
>           binding arbitration with JAMS pursuant to the
>           Mutual Arbitration Agreement.

(Id., Ex. 4.) Attached to that letter was a copy of the JAMS Arbitration Agreement plaintiff signed when he commenced his employment with Charter. Shine's July 3, 2018, letter contained no mention of the Solution Channel Agreement.

Plaintiff acquiesced to defendant's demand for binding arbitration through JAMS. In September 2018, he filed a PAGA notice with the California Labor and Workforce Development Agency. (Soderstrom Decl., Ex. 7 (Docket No. 9-1).) Plaintiff did not receive notice of the agency's intent to investigate the Labor Code violations he alleged within 65 days and, on November 19, 2018, he filed a Demand for Arbitration and Request for Rulings as to Inarbitrability with JAMS. (Id, Ex. 8.) Plaintiff's demand asked the arbitrator to rule on: (1) whether the arbitrator had the authority to decide all enforceability, scope, and arbitrability issues; (2) whether the entire Arbitration Agreement is "null and void" by its own terms; and (3) whether arbitration jurisdiction existed beyond the ability of the arbitrator to rule that the Arbitration Agreement was

5

"null and void." (Id.)

After Harper filed his demand with JAMS, Charter paid its share of the JAMS arbitration costs and fees and participated in the selection of the Honorable Rebecca J. Westerfield (Ret.) as the arbitrator. (Id. ¶ 11.) Following a preliminary hearing, the arbitrator ordered Charter to produce no later than February 22, 2019 "any job application related or onboarding documents [Harper] may have completed, signed, acknowledged, or been provided" and "any employee handbooks or other policies, acknowledgements, or agreements that governed [Harper's] employment." (Id., Ex. 12.) Charter produced documents in response to this discovery order. (Id. ¶ 15.)

Harper then filed a motion for threshold rulings from the arbitrator as to the inarbitrability of plaintiff's claims. (Id., Ex. 13.) Charter responded to that motion and argued that plaintiff's claims were arbitrable pursuant to the JAMS Arbitration Agreement. (Id., Ex. 14.) On April 25, 2019, the arbitrator issued an award granting Harper's motion, finding that plaintiff's wage-and-hour claims were inarbitrable, and dismissing the arbitration for lack of arbitration jurisdiction. (Id., Ex. 16.)

At no point during the five-month pendency of the JAMS arbitration did the Charter defendants assert that the JAMS Arbitration Agreement was superseded by the Solution Channel Arbitration Agreement. On May 3, 2019, Harper initiated this action in California state court. (See Compl.) It was not until several weeks later that defendant first sought to enforce its rights under the Solution Channel Agreement. Specifically, on

6

May 22, 2019, defendant's counsel wrote to plaintiff's counsel and asked them to stipulate to "arbitrate his claims on an individual basis and dismiss his putative class and representative claims" pursuant to the Solution Channel Arbitration Agreement. (Soderstrom Decl., Ex. 17.) Plaintiff declined to so stipulate. (Id. ¶ 22.)

This series of events has led to the two motions presently before the court. Plaintiff moves the court to confirm the JAMS arbitration award and enter judgment. Defendant moves the court to enforce its rights under the Solution Channel Agreement by compelling arbitration of plaintiff's claims, dismissing the putative class claims, and staying plaintiff's PAGA claims.

II. Discussion

    A. Plaintiff's Motion to Confirm the Arbitration Award

Section 9 of the Federal Arbitration Act provides that:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9.

The Supreme Court has stated that, "[t]here is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies." Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 587 (2008). "An arbitrator's

7

decision must be upheld unless it is 'completely irrational,' or it constitutes a 'manifest disregard of law.'" <u>Todd Shipyards Corp. v. Cunard Line, Ltd.</u>, 943 F.2d 1056, 1060 (9th Cir. 1991) (quoting <u>French v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 784 F.2d 902, 906 (9th Cir. 1986)). As such, the confirmation of an arbitration award is typically "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." <u>Romero v. Citibank USA, Nat'l Ass'n</u>, 551 F.Supp.2d 1010, 1014 (E.D. Cal. 2008)(Wanger, J.)(quoting <u>Florasynth, Inc. v. Pickholz</u>, 750 F.2d 171, 176 (2d Cir. 1984)).

The Charter defendants have not filed an application to modify, correct, or vacate the arbitration award under 9 U.S.C. §§ 10 or 11. Instead, the Charter defendants' opposition advances three arguments against the confirmation of the JAMS arbitration award. The court will address each in turn.

    1.    <u>Enforceability of the JAMS agreement.</u>

First, Charter contends that this court cannot confirm an arbitration award based on an agreement that was terminated and is unenforceable. See <u>Toal v. Tardif</u>, 178 Cal. App. 4th 1208, 1221 (4th Dist. 2009)("[B]efore a court may confirm an arbitration award, the court must first find the existence of a valid arbitration agreement."). Since the Solution Channel Arbitration Agreement contains an integration clause, Charter argues, the JAMS Arbitration Agreement was terminated when the parties entered into the Solution Channel Arbitration Agreement in November, 2017. (Def.'s Opp. to Pl.'s Mot. to Confirm Arbitration Award at 8.) Plaintiff contends that the parties did have a valid agreement to arbitrate before JAMS because even if

8

the Solution Channel Arbitration Agreement was at some point the operative agreement between the parties, it was superseded in November 2018 when the parties revived the JAMS Arbitration Agreement.

When determining whether a valid and enforceable agreement to arbitrate exists, district courts apply "general state-law principles of contract interpretation." Goldman, Sachs & Co. v. City of Reno, 747 F.3d 733, 743 (9th Cir. 2014). In California, the essential elements of contract are: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and, (4) sufficient cause or consideration. Cal. Civ. Code § 1550. All four elements are manifest in the parties' November 2018 ascension to the JAMS Arbitration Agreement.

Charter's request that Harper stipulate to binding arbitration pursuant to the JAMS Arbitration Agreement was an offer which Harper accepted when he filed his demand with JAMS on November 19, 2018. With the exception of the PAGA waiver, the JAMS Arbitration Agreement was indisputably a lawful object. Moreover, the parties exchanged consideration by relinquishing their rights to pursue alternate means of dispute resolution. See GGNSC Louisville St. Matthews LLC v. Badgett, 728 F. App'x 436, 443 (6th Cir. 2018)(holding that parties exchanged consideration for second arbitration agreement that allowed them to litigate disputes when they gave up their contractual obligation to arbitrate pursuant to a prior arbitration agreement).

If the parties did not have an agreement to arbitrate pursuant to the JAMS Arbitration Agreement, why did Charter

9

1 | participate in the selection of a JAMS arbitrator? (Soderstrom
2 | Decl. ¶ 11.) Why did Charter pay its share of the JAMS
3 | arbitration fees? (Id.) Why did Charter brief the issue of
4 | arbitrability before the JAMS arbitrator (id. Ex. 14) and
5 | participate in discovery related to that issue (id. ¶ 15)?
6 | These were all "outward manifestations of consent" to the JAMS
7 | Arbitration Agreement that would "lead a reasonable person to
8 | believe" that the parties had contracted to arbitrate pursuant to
9 | the JAMS Arbitration Agreement. See Meyer v. Benko, 55 Cal. App.
10 | 3d 937, 942-43 (2d Dist. 1976) ("The existence of mutual consent
11 | [to a contract] is determined by objective rather than subjective
12 | criteria, the test being what the outward manifestations of
13 | consent would lead a reasonable person to believe.")

14 | For these reasons, the court finds that, at the time of
15 | the arbitrator's award, the parties had an enforceable agreement
16 | to arbitration pursuant to the JAMS Arbitration Agreement.
17 | Accordingly, the court rejects the Charter defendants' argument
18 | that the JAMS Arbitration Agreement was unenforceable and that,
19 | therefore, the arbitration award based on that agreement is
20 | unconfirmable.

### 2. Parties' Agreement to Court Enforcement of Arbitration Award

Defendant's second argument in opposition to the confirmation of the arbitration award is that this court may not confirm the arbitration award because the JAMS Arbitration Agreement does not expressly provide for court enforcement of arbitration awards. Defendant supports this argument by reference to Varley v. Tarrytown Assocs., Inc., 477 F.2d 208, 210

(2d Cir. 1973).[1] In that case, the Second Circuit held that a party's ascent to an agreement providing for the settlement of controversies by arbitration pursuant to the rules of the American Arbitration Association did not constitute consent to the court enforcement of arbitration awards. Crucially, however, "[a]t the time Varley was decided, there was "nothing in the [AAA Commercial Arbitration Rules] which indicate[d] that the parties thereby consent[ed] to the entry of judgment upon an award." Swissmex-Rapid S.A. de C.V. v. SP Sys., LLC, 212 Cal. App. 4th 539, 549 n.8 (2d Dist. 2012).

In contrast to the agreement at issue in Varley, the JAMS Arbitration Agreement at issue in this case explicitly incorporates the JAMS Rules by reference. Those Rules, in turn, explicitly provide that, "[t]he Parties to an Arbitration under these Rules shall be deemed to have consented that judgment upon the Award may be entered in any court having jurisdiction thereof." JAMS Comprehensive Arbitration Rules & Procedures Rule 25. Thus, both defendant Charter and plaintiff "consented that judgment upon the [arbitration award] may be entered in any court having jurisdiction thereof." See id.

### 3. Finality of JAMS Arbitration Award

Defendant's third and final argument in opposition to

---

[1] Defendant also relies on Oklahoma City Assocs. v. Wal-Mart Stores, Inc., 923 F.2d 791 (10th Cir. 1991). In that case, the court ruled that a defendant did not implicitly consent to the AAA Rules through its action during the proceedings. Thus, defendant's reliance on Oklahoma City Assocs. is misplaced since that holding did not consider the case in which, as here, the parties' arbitration agreement expressly incorporates extrinsic arbitration rules.

11

plaintiff's Motion to Confirm Arbitration Award and Enter Judgment is that the arbitration award in this case is not final. Under 9 U.S.C § 10 (a)(4), a district court may vacate an arbitration award where the arbitrator "so imperfectly" executed her powers that "a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C § 10 (a)(4). Defendant contends that the arbitrator's decision on the inarbitrability of plaintiff's claims is not a "final" and confirmable award because it did not conclusively resolve the merits of plaintiff's claims.

This position is undermined by the weight of relevant case law, which indicates that a ruling on arbitrability is a confirmable "final award." See e.g., Towers, Perrin, Forster & Crosby, Inc. v. Brown, 732 F.2d 345, 348 (3d Cir. 1984)("What little case law there is on point indicates that the decision that a dispute is or is not arbitrable is conclusive of that issue."). The court accordingly finds that the arbitration award in this case "do[es] not serve as a preparation or a basis for further decisions by the arbitrator" and "has finally and conclusively disposed of a separate and independent claim and therefore may be confirmed although [the order does] not dispose of all the claims that were submitted to arbitration." See Glob. Gold Min. LLC v. Caldera Res., Inc., 941 F. Supp. 2d 374, 383 (S.D.N.Y. 2013)(quotations omitted)(quoting Zeiler v. Deitsch, 500 F.3d 157, 169 (2d Cir. 2007)).

The parties had a valid and enforceable agreement to submit issues related to the arbitrability of the JAMS Arbitration Award to a JAMS arbitrator, and the JAMS Arbitration

12

Agreement explicitly provided for the confirmation of any resultant arbitration awards by a court. Moreover, the arbitrator's Order Dismissing Arbitration (Soderstrom Decl., Ex. 16) was a "final" order confirmable under 9 U.S.C. § 9. Finally, the court has reviewed the Order Dismissing Arbitration and finds no evidence that it is "completely irrational" or constitutes a "manifest disregard of the law." See French, 784 F.2d at 906. For those reasons, the court will grant plaintiff's Motion to Confirm Arbitration Award and Enter Judgment.

> B. Defendant's Motion to Compel Arbitration of Plaintiff's Individual Claims under the Solution Channel Arbitration Agreement, and to Dismiss the Putative Class Claims, and Stay the PAGA Claims
>
> 1. Motion to Compel Arbitration of Plaintiff's Individual Claims

Defendant contends that plaintiff's complaint was filed was filed "in violation of his agreement to arbitrate." (Mot. to Compel Arbitration at 5.) It moves this court to compel arbitration pursuant to the Solution Channel Arbitration Agreement. Plaintiff opposes Charter's Motion to Compel Arbitration on the grounds that the Solution Channel Arbitration was superseded by the parties' assent to arbitrate pursuant to the JAMS Arbitration Agreement in November 2018.

Both plaintiff and defendant advance a variety of arguments about the validity or invalidity of the Solution Channel Arbitration Agreement as applied to Harper. The court need not reach these arguments because assuming arguendo that the Solution Channel Arbitration Agreement was binding and valid on the parties, the court finds that the parties' ascension to the

13

terms of the JAMS Arbitration Agreement in November 2018, as discussed supra, superseded and extinguished any rights and obligations they may have had pursuant to the Solution Channel Arbitration Agreement.

In California, novation, the "substitution of a new obligation for an existing one," Cal. Civ. Code § 1530, has four essential elements: (1) "A previous valid obligation"; (2) "the agreement of all the parties to the new contract"; (3) "the extinguishment of the old contract"; and (4) "the validity of the new one." Young v. Benton, 21 Cal. App. 382, 384 (3d Dist. 1913). Where there has been novation, "the rights and duties of the parties must be governed by the new agreement alone, and a failure to perform (thereunder) does not, under any theory of rescission or revivor, operate to breathe new life into the dead and extinguished obligation." Alexander v. Angel, 37 Cal. 2d 856, 862 (1951)(quotations and citation omitted).

The court assumes for the purpose of this analysis alone that the Solution Channel Arbitration Agreement was valid as to Harper and Charter. It has previously found that the parties agreed to a new contract in November 2018. The court's analysis of whether a novation has occurred, then, will focus on the third and fourth elements of novation, i.e. whether the JAMS Arbitration Agreement superseded the Solution Channel Arbitration Agreement, and whether, for the purposes of this novation analysis, the JAMS Arbitration Agreement was "valid."

With respect to the third element, the key inquiry in determining whether the JAMS Arbitration Agreement extinguished the Solution Channel Arbitration Agreement is "whether the

14

parties intended their writing [the JAMS Arbitration Agreement] to serve as the exclusive embodiment of their agreement." Posephny v. AMN Healthcare Inc., No. 18-CV-06284-KAW, 2019 WL 452036, at *4 (N.D. Cal. Feb. 5, 2019)(quoting Masterson v. Sine, 68 Cal. 2d 222, 225 (1968). The presence of an integration clause in a contract is a factor which "may help resolve" this issue, but it is not dispositive. See Kanno v. Marwit Capital Partners II, L.P., 18 Cal. App. 5th 987, 1001 (4th Dist. 2017)(quoting Masterson, 68 Cal. 2d at 225). Rather, collateral agreements must be examined "to determine whether the parties intended the subjects of negotiation it deals with to be included in, excluded from, or otherwise affected" by the purportedly integrated writing. See Masterson, 68 Cal. 2d at 226.[2]

The JAMS Arbitration Agreement contains an integration clause. It states that, "[t]his Arbitration Agreement supersedes any other agreement to arbitrate previously in place between you and Charter." (See JAMS Arbitration Agreement.) The Solution

---

[2] The Charter defendants cite Halvorsen v. Aramark Unif. Servs., Inc., 65 Cal. App. 4th 1383, 1388 (1998)(citation and quotation omitted), for the proposition that "[t]here cannot be a valid express contract and an implied contract, each embracing the same subject, but requiring different results." That case is easily distinguishable from the instant matter. In Halvorsen, the plaintiff argued that the defendant had breached an implied-in-fact agreement not to terminate him except for cause. The court rejected this argument and held that "factors supporting a finding of an implied-in-fact employment agreement are irrelevant when . . . there is an express agreement." Id. Unlike the plaintiff in Halvorsen, Harper is not claiming that there is an implied-in-fact contract between the parties. Rather, plaintiff is arguing that the Solution Channel Arbitration Agreement was superseded in November 2018 by a different express contract, i.e. the JAMS Arbitration Agreement.

Channel Arbitration Agreement expressly pertained the arbitration of claims between the parties. For example, it proscribed how employees like Harper should initiate claims against Charter and detailed the timeline on which the parties would select an arbitrator. (See Knapper Decl. Ex D.) As such, the Solution Channel Arbitration Agreement is clearly an "agreement to arbitrate" within the meaning of the JAMS Arbitration Agreement integration clause. Given this, the third element of novation, i.e. the extinguishment of the old contract, is satisfied.

With regard to the fourth and final element of novation, the validity of the new contract, at first blush it may appear that the arbitrator's ruling, confirmed by this court, finding plaintiff's claims inarbitrable under the JAMS agreement is inconsistent with a finding that that agreement constituted a valid contract. However, in the context of novation, the judicial inquiry into the validity of the putative new contract is typically narrowly focused on issues of contract formation that would render the contact void ab initio. See Beckwith v. Sheldon, 165 Cal. 319, 324 (1913)(noting that courts evaluating whether novation has taken place routinely "look no further than . . . whether the new contract was entered into without fraud and with an agreement of minds that it was to be substituted for the existing obligation."); see also Restatement (Second) of Contracts § 279 ("[T]o the extent that the substituted contract is vulnerable on such grounds as mistake, misrepresentation, duress or unconscionability, recourse may be had on the original duty."). See also Airs Int'l, Inc. v. Perfect Scents Distributions, Ltd., 902 F. Supp. 1141, 1149 (N.D. Cal.

1995)(holding that if the parties' second contract is "ultimately determined invalid in its inception because . . . it was procured by fraud, the purported rescission of the [first] contract would be ineffective and the [first] contract would be revived."); Rejuso v. Brookdale Senior Living Communities, Inc., No. CV 17-5227-DMG (RAO), 2018 WL 6173384 (C.D. Cal. Nov. 13, 2018)(reviving prior arbitration agreement after finding that the parties' most recent arbitration agreement was unconscionable).

In cases where the new contract was not unconscionable, was entered into without fraud, and was merely void on statutory grounds, several courts have held that the "invalid" contract may serve as the basis for novation. See Producers' Fruit Co. of California v. Goddard, 75 Cal. App. 737, 755 (3d Dist. 1925)(holding that "if legally unobjectionable in all other respects," a contract invalid under the statute of frauds may serve as the basis of a novation); George Foreman Assocs., Ltd. v. Foreman, 389 F. Supp. 1308 (N.D. Cal. 1974), aff'd on other grounds, 517 F.2d 354 (9th Cir. 1975)(declining to revive prior contract even after finding that parties' most recent agreement was void and unenforceable under California law); Thiele v. Merrill Lynch, Pierce, Fenner & Smith, 59 F. Supp. 2d 1067, 1072 (S.D. Cal. 1999)("The fact that the [Old Workers Benefit Protection Act] prevents enforcement of this arbitration clause as to some of [plaintiff's] claims does not revive the arbitration clauses in the earlier agreements.").

In the instant case, the JAMS Arbitration Agreement's waiver of representative claims under PAGA is unenforceable as a matter of state law. (See Soderstrom Decl. Ex 16 at 3-5 ("Order

17

Dismissing Arbitration")(Docket No. 9-1).  See also Iskanian v. CLS Transportation Los Angeles, LLC, 59 Cal. 4th 348 (2014).  The remainder of the JAMS Arbitration Agreement (save for the parties' agreement to waive a jury trial) is void because of the "poison pill" provision contained within the agreement.  See Soderstrom Decl. Ex 16 at 7-9.)  Thus, though almost all of the JAMS Arbitration Agreement is invalid and unenforceable, this invalidity is due to state law and the terms of the contract, not to any fraud or unconscionability.  Thus, like the "new" contracts at issue in Goddard, 75 Cal. App. 737, and George Foreman Associates, 517 F.2d 354, the JAMS Arbitration Agreement is "valid" for the purposes of the court's novation analysis.[3]

In light of the foregoing, the court finds that there was a novation and that any rights the parties may have had pursuant to the Solution Channel Arbitration Agreement were rendered "dead and extinguished" by the parties' ascension to the JAMS Arbitration Agreement in November 2018.  See Alexander v. Angel, 37 Cal. 2d 856, 862 (1951).

2. Motion to Dismiss Plaintiff's Class Claims

Charter's Motion to Dismiss Plaintiff's Class Claims

---

[3] Plaintiff argues alternatively that even if the Solution Channel Arbitration Agreement is binding on the parties, Charter has waived its right to compel arbitration under that agreement.  Waiver of a right to arbitration occurs when a party: (1) has knowledge of its right to compel arbitration; (2) acts inconsistently with that right; and (3) in doing so, prejudices the party opposing arbitration.  See Fisher v. A.G. Becker Paribas Inc., 791 F.2d 691, 694 (9th Cir. 1986).  The court need not reach plaintiff's waiver argument, however, because it finds that any rights and obligations the parties may have had under the Solution Channel Arbitration Agreement were superseded by the JAMS Arbitration Agreement in November 2018.

argues that plaintiff cannot assert class claims against Charter because he is subject to the class action waiver in the Solution Channel Arbitration Agreement. The court has already found that any rights the parties may or may not have had pursuant to the Solution Channel Arbitration Agreement were superseded and extinguished by the JAMS Arbitration Agreement. See supra. Accordingly, plaintiff is not bound the by the Solution Channel Arbitration Agreement's class action waiver and the court will deny defendant's Motion to Dismiss Plaintiff's Class Claims.

### 3. Motion to Stay Plaintiff's PAGA Claims

Concurrent with their Motion to Compel Arbitration and their Motion to Dismiss, defendants move this court to stay plaintiff's PAGA claims pending the arbitration of plaintiff's individual claims. See Aviles v. Quik Pick Express, LLC, 703 F. App'x 631, 632 (9th Cir. 2017)(instructing district court to stay plaintiff's PAGA claims during arbitration of his individual claims). The Charter defendants argue that staying plaintiff's PAGA claims would promote judicial economy and allow the avoidance of res judicata and collateral estoppel issues. (Mot. to Compel Arbitration at 15-16.) In light of the fact that this court will neither compel arbitration of plaintiff's individual claims nor dismiss his class claims, defendant's argument is moot.

IT IS THEREFORE ORDERED that plaintiff's Motion to Confirm Arbitration Award and Enter Judgment (Docket No. 9) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendant's Motion to Compel

Arbitration of Plaintiff's Individual Claims, Dismiss the Putative Class Claims, and Stay the PAGA Claims (Docket No. 11) be, and the same hereby is, DENIED.

Dated: August 6, 2019

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE