SODERSTROM LAW PC
Jamin S. Soderstrom, Bar No. 261054
jamin@soderstromlawfirm.com
3 Park Plaza, Suite 100
Irvine, California 92614
Tel:    (949) 667-4700
Fax:    (949) 424-8091
**Attorneys for Plaintiffs**

MORGAN, LEWIS & BOCKIUS LLP
Kathryn T. McGuigan, Bar No. 232112
kathryn.mcguigan@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA  90071-3132
Tel:    +1.213.612.2500
Fax:    +1.213.612.2501

MORGAN, LEWIS & BOCKIUS LLP
Zachary W. Shine, Bar No. 271522
zachary.shine@morganlewis.com
Nicole L. Antonopoulos, Bar No. 306882
nicole.antonopoulos@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA  94105
Tel:    +1.415.442.1000
Fax:    +1.213.612.2501
**Attorneys for Defendant**
**Charter Communications, LLC**

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIONEL HARPER and DANIEL SINCLAIR, individually and on behalf of all others similarly situated and all aggrieved employees,<br><br>Plaintiffs,<br><br>v.<br><br>CHARTER COMMUNICATIONS, LLC,<br><br>Defendant. | Case No. 2:19-cv-01749-WBS-DMC<br><br>**JOINT STATEMENT OF DISCOVERY DISAGREEMENT CONCERNING PLAINTIFF HARPER'S MOTION TO COMPEL FURTHER DISCOVERY RESPONSES AND PRODUCTION OF DOCUMENTS AND ESI**<br><br>Judge:       Magistrate Judge Cota<br>Date:        June 3, 2020<br>Time:        10:00 a.m. (telephonic hearing)<br>Location:    Redding Federal Courthouse<br>Courtroom:   304 |

1

1

**TABLE OF CONTENTS**

2

**Page(s)**

I.      DETAILS OF THE PARTIES' CONFERENCES................................................................. 7

II.     NATURE OF THE ACTION AND OF PERTINENT FACTUAL DISPUTES. ....................... 7

III.    CONTENTIONS OF EACH PARTY AS TO EACH CONTESTED ISSUE. ........................... 8

   A.   Harper's Contentions........................................................................................ 8

      1.  Plaintiffs are being prejudiced by Charter's obstruction and delay............................ 8

      2.  Plaintiffs seek an order compelling the following information and records..................... 10

      3.  Harper is entitled to obtain this class and representative PAGA discovery. ................... 16

         a. Harper's discovery requests are proportional to the case..................................... 17

         b. Charter's objections are boilerplate and should be overruled. ............................. 18

         c. Class member information and records are relevant and discoverable. ...................... 18

   B.   Charter's Contentions. ..................................................................................... 21

IV.     SPECIFIC DISCOVERY REQUESTS IN DISPUTE. ........................................................ 29

V.      CONCLUSION. .................................................................................................... 78

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*A. Farber & Partners, Inc. v. Garber*,
   234 F.R.D. 186 (C.D. Cal. 2006) ................................................................. 18

5

*Adalpa v. Fowler Packing Co.*,
   310 F.R.D. 583 (E.D. Cal. 2015) ................................................ 62, 66, 68

6

7

*Adamov v. Pricewaterhouse Coopers LLP*,
   2017 WL 6558133 (E.D. Cal. Dec. 22, 2017 ........................................ 19, 20

8

9

*Arredondo v. Sw. & Pacific Specialty Fin., Inc.*,
   2019 WL 6128657 (E.D. Cal. Nov. 19, 2019) ............................ 19, 62, 65, 68

10

11

*Bright v. Dennis Garber & Assoc., Inc.*,
   2011 WL 13150146 (C.D. Cal. Nov. 15, 2011) ........................................ 18

12

*Brown v. Cinemark USA, Inc.*,
   705 F. App'x 644 (9th Cir. 2017) ................................................................. 20

13

14

*Brum v. MarketSource, Inc.*,
   2018 WL 3861558 (E.D. Cal. Aug. 14, 2018) .......................... 19, 32, 37, 62, 65, 68

15

16

*Carrington v. Starbucks Corp.*,
   30 Cal. App. 5th 504 (2018) ................................................................. 20

17

*Coleman v. Jenny Craig, Inc.*,
   2013 WL 2896884 (S.D. Cal. 2013) ........................... 24, 29, 33, 38, 50, 63, 67

18

19

*DeLodder v. Aerotek, Inc.*,
   2009 WL 10674457 (C.D. Cal. 2009) ............................................ 25, 34, 38, 64

20

*Dolarian Capital, Inc. v. SOC, LLC*,
   2012 WL 4026818 (E.D. Cal. Sept. 12, 2012) ................................................ 18

21

22

*Doninger v. Pacific Northwest Bell, Inc.*,
   564 F.2d 1304 (9th Cir. 1977) ................................................ 21, 33, 37

23

24

*Duran v. U.S. Bank Nat'l Assoc.*,
   59 Cal. 4th 1 (2014) ................................................................. 73, 74

25

*Francisco v. Emeritus Corporation*,
   2017 WL 11036693 (C.D. Cal. 2017) ............................................ 21, 32, 37

26

27

*Franco v. Bank of America*,
   2009 WL 8729265 (S.D. Cal. 2009) ............................................ 24, 33, 38, 50

28

JOINT STATEMENT OF DISCOVERY DISAGREEMENT CONCERNING PLAINTIFF HARPER'S MOTION TO COMPEL
FURTHER DISCOVERY RESPONSES AND PRODUCTION OF DOCUMENTS AND ESI

*Gomez v. J. Jacobo Farm Labor Contractor, Inc.*,
   2018 WL 2198711 (E.D. Cal. May 14, 2018) ........................................ 19, 31, 36

*Goro v. Flower Foods, Inc.*,
   2018 WL 3956018 (S.D. Cal. Aug. 17, 2018) ...................................................... 32

*Goro v. Flowers Foods, Inc.*,
   2019 WL 6252499 (S.D. Cal. Nov. 22, 2019) ...................................................... 16

*Guzman v. Chipotle Mexican Grill, Inc.*,
   2018 WL 6092730 (N.D. Cal. Nov. 21, 2018) ...................................... 19, 31, 36

*Hallett v. Morgan*,
   296 F.3d 732 (9th Cir. 2002) ............................................................... 16, 21

*Hamilton v. Wal-Mart Stores, Inc.*,
   2019 WL 1949456 (C.D. Cal. Mar. 4, 2019) ...................................................... 20

*Harris v. Best Buy Stores, L.P.*,
   2017 WL 3948397 (N.D. Cal. Sept. 8, 2017) ............................................. 31, 37

*Hill v. Eddie Bauer*,
   242 F.R.D. 556 (C.D. Cal. 2007) ...................................................................... 62

*Kaminske v. JP Morgan Chase Bank N.A.*,
   2010 WL 5782995 (C.D. Cal. May 21, 2010) ...................................................... 20

*Kang v. Credit Bureau Connection, Inc.*,
   2020 WL 1689708 (N.D. Cal. Feb. 6, 2019) ...................................................... 20

*Kim v. Reins Int'l Cal., Inc.*,
   9 Cal. 5th 73 (2020) .................................................................................. 45, 77

*Limon v. Circle K Stores Inc.*,
   2020 WL 1503448 (E.D. Cal. Mar. 30, 2020) ...................................... 19, 32, 37

*Mantolete v. Bolger*,
   767 F.2d 1416 (9th Cir. 1985) ...................... 21, 30, 33, 35, 37, 40, 41, 43, 45

*Marti v. Baires*,
   2012 WL 2029720 (E.D. Cal. June 5, 2012) ...................................................... 18

*Martinet v. Spherion Atlantic Enterprises, LLC*,
   2008 WL 2557490 (S.D. Cal. 2008) ...................................... 23, 24, 33, 38, 50

*McCullough v. Office Depot, Inc.*,
   2011 WL 13272504 (C.D. Cal. 2011) ...................................... 26, 34, 38

*Micro Motion, Inc. v. Kane Steel Co., Inc.*,
   894 F.2d 1318 (Fed. Cir. 1990) ...................... 23, 30, 33, 35, 38, 40, 42, 44, 46, 49, 63, 66

*Nguyen v. Baxter Healthcare Corp.*,
　275 F.R.D. 503 (C.D. Cal. 2011)......................................................24, 28, 29, 33, 38, 49, 63, 66, 67

*Quintana v. Claire's Boutiques, Inc.*,
　2014 WL 234219 (N.D. Cal. Jan. 21, 2014)...........................................................................62, 66, 68

*Rix v. Lockheed Martin Corporation*,
　2010 WL 11594931 (S.D. Cal. 2010)....................................................................................25, 34, 38,, 64

*Romero v. Select Employment Servs., Inc.*,
　2020 WL 2084967 (C.D. Cal. Mar. 31, 2020) ...........................................................................19, 28

*Romo v. GMRI, Inc.*,
　2013 WL 11310656 (C.D. Cal. Jan. 25, 2013)...........................................................................62, 65, 68

*Salgado v. O'Lakes*,
　2014 WL 7272784 (E.D. Cal. 2014) ............................................................................24, 26, 33, 38, 49

*Sansone v. Charter Communications, Inc.*,
　2019 WL 460728 (S.D. Cal. Feb. 6, 2019)...........................................................19, 27, 31, 36, 42, 47

*Shasta Linen Supply, Inc. v. Applied Underwriters Inc.*,
　2018 WL 402235 (E.D. Cal. Jan. 12, 2018) ...........................................................................18, 27

*Shaw v. Experian Information Solutions, Inc.*,
　306 F.R.D. 293 (S.D. Cal. 2015) ..................................................................................................21

*Silva v. Avalonbay Communities, Inc.*,
　2015 WL 11438549 (C.D. Cal. 2015) ...........................................................................24, 34, 38, 50

*Talavera v. Sun Maid Growers of Cal.*,
　2017 WL 495635 (E.D. Cal. Feb. 6, 2017) ...........................................................................62, 65, 68

*Taylor v. County of Calaveras*,
　2019 WL 6341131 (E.D. Cal. Nov. 27, 2019) ............................................................................18

*Thomas v. Cendant Mortgage*,
　No. 03-1672, 2005 WL 579903 (E.D. Pa. Mar. 11, 2005) ...........................30, 35, 40, 42, 44, 46

*Urena v. Central Cal. Almond Growers Ass'n*,
　2019 WL 2390042 (E.D. Cal. June 6, 2019) ...........................................................19, 31, 36, 42, 46

*Vallabharpurapu v. Burger King Corp.*,
　276 F.R.D. 611 (N.D. Cal. 2011) ...........................................................................................21, 32, 37

*Williams v. Cintas Servs. Corporate Servs., Inc.*,
　2018 WL 3689665 (N.D. Cal. Aug. 3, 2018) ...........................................................................19, 31, 36

*Williams v. Veolia Trans. Servs., Inc.*,
　2008 WL 7389430 (C.D. Cal. 2008) ...........................................................................22, 33, 37, 49, 63, 66

5

*Williams v. Superior Court,*
   3 Cal. 5th 531 (2017) .................................................................................... 20, 31

*Zacharia v. Wal–Mart Stores, Inc.,*
   142 F. Supp. 3d 949 (C.D. Cal. Nov. 3, 2015) ............................................... 20

**Statutes**

Cal. Code Regs. tit. 8, § 11040(1)(C) ....................................................................... 22

Cal. Code Regs. tit. 8, § 11040(2)(M) ...................................................................... 22

Cal. Civ. Proc. Code § 1799.1 ............................................................. 30, 36, 42, 46

Cal. Civ. Proc. Code § 3344 ................................................................ 30, 36, 42, 46

**Rules**

Fed. R. Civ. P. 23(a)(1) ..................................................................................... 34, 39

Fed. R. Civ. P. 26(b)(1) ............................................................................................ 16

Fed. R. Civ. P. 34(b)(2)(B) ....................................................................................... 18

Pursuant to Local Rule 251 and the May 4, 2020 Stipulation, Dkt. 59, Plaintiff Lionel Harper and Defendant Charter Communications, LLC ("Charter") submit this Joint Statement of Discovery Disagreement Concerning Plaintiff Harper's Motion to Compel Further Discovery Responses and Production of Documents and ESI.

## I.      DETAILS OF THE PARTIES' CONFERENCES.

The parties discussed Harper's discovery requests and Charter's responses during a January 16, 2020 teleconference, a March 5, 2020 teleconference, a March 18, 2020 teleconference, and a May 11, 2020 teleconference. They also exchanged written and email correspondence concerning Harper's discovery requests between December 2019 and May 2020. Notwithstanding these meet and confer efforts, they were unable to reach agreement on the scope and timing of class and representative PAGA discovery.

## II.     NATURE OF THE ACTION AND OF PERTINENT FACTUAL DISPUTES.

This is a wage-and-hour action involving individual, class, and representative PAGA claims. *See* Dkt. 45 (FAC). Plaintiffs seek to represent two classes—an Outside Salesperson Class and a Commissions Class—and various subclasses. FAC ¶ 12. Plaintiffs' claims related to the Outside Salesperson Class are based on Charter's alleged misclassification of employees in California as "exempt" outside salespersons. FAC ¶ 9. Plaintiffs' claims related to the Commissions Class are based on Charter's alleged failure to get signed copies of commission agreements, give signed receipts, and properly calculate and pay commissions. FAC ¶ 10. Plaintiffs' representative claims under the Private Attorneys General Act, Cal. Labor Code § 2698 et seq. ("PAGA") are based on the same alleged violations of the Labor Code. FAC ¶¶ 74–78. Charter denies Plaintiffs' allegations and claims, contends it has complied with all applicable laws, and contends that Plaintiffs' class and representative PAGA claims are inappropriate for class certification and are unmanageable.

Plaintiffs' claims allege: (1) failure to pay minimum wages; (2) failure to pay overtime wages; (3) failure to provide meal periods or pay premium wages; (4) failure to provide rest breaks or pay premium wages; (5) unlawful deduction of wages; (6) failure to provide accurate wage statements; (7) failure to pay all wages owed upon termination; (8) failure to provide timely and complete copies of

7

JOINT STATEMENT OF DISCOVERY DISAGREEMENT CONCERNING PLAINTIFF HARPER'S MOTION TO COMPEL
FURTHER DISCOVERY RESPONSES AND PRODUCTION OF DOCUMENTS AND ESI

1   employment records; (9) violation of California's Unfair Competition Law ("UCL"); and (10) violations

2   giving rise to civil penalties under PAGA. *See generally* FAC & Exhibit 2 ("PAGA Notice").

3       Harper contends that he is entitled to discover all information and records relevant to his class

4   and representative PAGA claims, including: class member contact information and position history; class

5   member employment records such as wage statements, commission statements, training records, signed

6   copies of commission plans and signed receipts (if any exist), and similar records; and each version of

7   an employee handbook, commission plan, timekeeping policy, and similar policies that Charter used

8   during the relevant time period. Harper believes at least four positions are covered by his claims—

9   Account Executive, Direct Sales Representative, Outside Sales Representative, and Retail Sales

10  Associate—and he is seeking information and records for class members and aggrieved employees

11  statewide for the period from November 2014 to the present.

12      Charter contends Harper is not entitled to any class-wide pre-certification discovery. Should this

13  Court order any pre-certification discovery, it should be severely limited since Harper has not set forth a

14  *prima facie* case for class certification under Rule 23 of the Federal Rules of Civil Procedure and has not

15  shown his discovery requests are likely to produce substantiation of his class allegations. Harper's

16  discovery requests are also grossly overbroad, unduly burdensome, infringe on Constitutionally protected

17  third party privacy rights, and constitute a speculative fishing expedition. Based on extensive information

18  and documents already produced by Charter and the evidence and allegations offered by Harper, Charter

19  contends that if pre-certification discovery is allowed, at most, pre-certification class and representative

20  PAGA discovery should be limited to Harper's specific position (Account Executive) and Harper's

21  specific work location (Redding, California). Should Plaintiffs certify a class, the Court may then allow

22  broader discovery regarding the merits of Plaintiffs' case and Charter's defenses.

23  **III.   CONTENTIONS OF EACH PARTY AS TO EACH CONTESTED ISSUE.**

24      **A.   <u>Harper's Contentions.</u>**

25          **1.   Plaintiffs are being prejudiced by Charter's obstruction and delay.**

26      Charter has produced some information and records related to Plaintiffs' *individual* claims

27  alleging that they were misclassified as "exempt" outside salespersons both during and after their

28  "training weeks," and that their commissions were not properly calculated and paid. Soderstrom Decl. ¶

8

1, Ex. 1 (meet and confer emails from March 5 to May 15, 2020). But Charter still refuses to produce relevant and discoverable information and records related to Plaintiffs' class and representative PAGA claims. *Id.* ¶ 2, Ex. 2 (meet and confer emails from May 20–21, 2020).

The first time Charter agreed to any class and representative PAGA discovery was May 20, 2020, five days *after* the date the parties' set to try to reach an agreement and avoid this motion and three months *after* Judge Shubb denied its motion to strike Plaintiffs' class and representative PAGA allegations and claims.[1] Dkt. 56 at 12 ("[T]he court will deny defendant's motion to strike the class allegations to allow discovery to proceed," and "As previous courts have found, manageability issues [for representative PAGA claims] are better addressed after discovery has concluded and class certification is determined."); *see also* Dkt. 34 § IV ("All discovery . . . is left open, save and except that it shall be so conducted as to be completed by August 28, 2020."). But Charter has improperly insisted that class and representative PAGA discovery be limited to one specific position (Account Executives) and one specific location (Redding, California). Soderstrom Decl. ¶ 2, Ex. 2. Instead of providing support for its position, Charter simply recites the generic terms "overbroad," "unduly burdensome," and "fishing expedition," and demands that Harper substantiate his class and representative PAGA claims *before* he is obtains any of the discovery he is seeking. *Id.* Of course, the discovery Harper is seeking is the evidence he will use to substantiate his claims, but all of it is in Charter's possession. *Id.*

Charter's position ignores: (1) Judge Shubb's order denying its motion to strike; (2) the plausibility of Plaintiffs' class and representative PAGA claims and proposed class and aggrieved employee definitions in the FAC; (3) the fact that representative PAGA claims are not subject to Rule 23 requirements; and (4) the factual bases and reasonable inferences that support Plaintiffs' allegations that Charter is committing statewide violations that affect all employees who it classified as "exempt" outside salespersons and/or who were eligible for commissions (including but not limited to Account Executives, Direct Sales Representatives, Outside Sales Representatives, and Retail Sales Associates). *Id.*

---

[1] Charter waited to send its May 20 meet and confer email after business hours on a Wednesday, knowing Harper would have to wait at least two weeks to get a hearing on this motion. Every action Charter has taken has been designed to shorten the time Harper will have to prepare a motion for class certification using relevant information and records and to obtain witness statements.

Harper twice agreed to withdraw pending discovery motions, without prejudice, in an attempt to reach an agreement on the scope and timing of class and representative PAGA discovery. Dkt. 49; Dkt. 59. And Harper diligently tried for months to obtain the class and representative PAGA discovery to which he is entitled without court intervention. *See* Soderstrom Decl. ¶ 1, Ex. 1 (meet and confer emails from March 5 to May 15, 2020). Charter left Harper with no other choice.

Any further delay will prejudice Plaintiffs' right and ability to seek class certification and to prosecute representative PAGA claims that are not subject to class certification requirements. The Court should compel Charter to produce all of the class and representative PAGA discovery Harper has requested in the requests identified in this motion.

### 2. Plaintiffs seek an order compelling the following information and records.

This motion concerns Interrogatories 2–7, and Requests for Production ("RFPs") 7–17, 20, 28, and 30, 32–34, which Harper served on September 27, 2019 and to which Charter responded on November 21, 2019. *See* Soderstrom Decl. ¶ 3, Ex. 3 (Harper's Interrogatories); *id.* ¶ 4, Ex. 4 (Charter's Interrogatory Responses); *id.* ¶ 5, Ex. 5 (Harper's RFPs); *id.* ¶ 6, Ex. 6 (Charter's RFP Responses).

Harper respectfully asks the Court to order Charter to serve complete supplemental responses and to produce the following information and records, in native form (where feasible) or in searchable PDF form, by no later than June 12, 2020:[2]

**Harper Interrogatory 2:** **"IDENTIFY the CONTACT INFORMATION and POSITION HISTORY for each DIRECT SALES EMPLOYEE."**[3] This request seeks information concerning all current and former employees who worked for Charter in

---

[2] Any further delay would require a third continuance of the deadline to file a motion for class certification and, perhaps, a continuance of other discovery and motion deadlines. Dkt. 34 (Scheduling Order); Dkt. 52 (First Modification Order); Dkt. 60 (Second Modification Order). Presently, the deadline for Plaintiffs to file a motion for class certification is July 8, 2020, the hearing on the motion is August 24, 2020, discovery is set to close August 28, 2020, and the motions cut-off is September 18, 2020.

[3] Harper's discovery requests used the term DIRECT SALES EMPLOYEES because Charter used the term "direct sales" in certain records to identify who it considered "exempt" outside salespersons. Harper has treated the terms "DIRECT SALES EMPLOYEES" and "exempt outside salespersons" as synonymous for pleading and discovery purposes. At a minimum, this request covers Account Executives, Direct Sales Representatives, and Outside Sales Representatives. Only Charter knows what other positions fall within this definition and whether the position titles have changed over time.

California at any time since November 19, 2014 and who Charter classified as an "exempt" outside salesperson. All of these employees are putative class members and most are alleged aggrieved employees. All of them are also potential witnesses who Charter has exclusive access to. Charter needs to produce a "class list" that identifies the contact information and position history for each of these employees.

**Harper Interrogatory 3:** "IDENTIFY the CONTACT INFORMATION and POSITION HISTORY for each COMMISSION EMPLOYEE."[4] This request seeks information concerning all current and former employees who worked for Charter in California at any time since November 19, 2014 and who were eligible to earn commissions. All of these employees are putative class members and most are alleged aggrieved employees. All of them are also potential witnesses who Charter has exclusive access to. Charter needs to produce a "class list" that identifies the contact information and position history for each of these employees.

**Harper Interrogatory 4:** "IDENTIFY each LOCATION at which any DIRECT SALES EMPLOYEE was expected or required to perform work." This requests asks Charter to identify each location in California (e.g., each office or sales territory) where it assigned one or more employees who it classified as "exempt" outside salespersons. Charter has not disclosed how many offices and sales territories it has in California and has insisted that only the Redding office/sales territory is relevant.

**Harper Interrogatory 5:** "IDENTIFY each DIRECT SALES EMPLOYEE and COMMISSION EMPLOYEE who opted out of any version of arbitration agreement YOU have used." Charter has said it may try to enforce arbitration agreements against certain class members (it cannot enforce any arbitration agreements with respect to

---

[4] Harper used the term COMMISSION EMPLOYEES to help categorize (a) "exempt" outside salespersons who earned commissions (e.g., Account Executives, Direct Sales Representatives, Outside Sales Representatives) and are members of *both* the Outside Salesperson Class *and* the Commissions Class, and (b) other employees who earned commissions but were not classified as "exempt" outside salespersons (e.g., Retail Sales Associates) and are members of *only* the Commissions Class.

11

JOINT STATEMENT OF DISCOVERY DISAGREEMENT CONCERNING PLAINTIFF HARPER'S MOTION TO COMPEL
FURTHER DISCOVERY RESPONSES AND PRODUCTION OF DOCUMENTS AND ESI

1    aggrieved employees). If Charter will stipulate that it will not assert arbitration as a

2    defense or in opposition to class certification, Harper will withdraw this request.

3    **Harper Interrogatory 6:**    **"IDENTIFY each DIRECT SALES EMPLOYEE and**

4    **COMMISSION EMPLOYEE who YOU contend has settled, released, or waived any**

5    **of the claims being made in the operative complaint in this action."** Charter has not

6    disclosed whether any responsive documents exist. If Charter will stipulate that it will not

7    assert settlement, release, or waiver as a defense or in opposition to a motion for class

8    certification, Harper will withdraw this request.

9    **Harper Interrogatory 7:**    **"IDENTIFY each DIRECT SALES EMPLOYEE and**

10   **COMMISSION EMPLOYEE who YOU contend agreed to and is bound by the**

11   **Solution Channel."** If Charter will stipulate that it will not assert arbitration in connection

12   with the "Solution Channel" program as a defense or in opposition to class certification,

13   Harper will withdraw this request.

14   **Harper RFP 7:**    **"Each version of a sales compensation or commission agreement,**

15   **plans, and schedule that YOU use or have used for calculating and paying**

16   **commission, bonus, or other incentive compensation wages to COMMISSION**

17   **EMPLOYEES."** Charter produced the version of its Commission Plan that applied to

18   Harper (but not Sinclair). Charter has not produced a copy of a Commission Plan that was

19   signed by Plaintiffs, a signed receipt showing Plaintiffs received a copy, or any other

20   version of its Commission Plan that applied to other COMMISSION EMPLOYEES.

21   Charter needs to produce each version of its Commission Plan used between November

22   19, 2014 and the present. If Charter contends that any COMMISSION EMPLOYEES got

23   signed copies and gave signed receipts, Charter also needs to produce those signed copies

24   and receipts.

25   **Harper RFP 11:**    **"Each DOCUMENT showing a meal period that YOU provided to,**

26   **that was taken by, or that was waived by a DIRECT SALES EMPLOYEE."** Harper

27   does not expect there to be any responsive records because Charter classified all DIRECT

28   SALES EMPLOYEES as "exempt" outside salespersons during their entire

12

employment—including their training weeks when they did not spend a majority of their working hours performing outside sales activities—and did not provide them with any designated meal periods or rest breaks. Charter refuses to confirm whether any responsive records exist. If responsive records do exist, Harper proposes a 20% sampling.

**Harper RFP 13:**      **"Each DOCUMENT showing a rest break that YOU provided to, that was taken by, or that was waived by a DIRECT SALES EMPLOYEE."** Harper does not expect there to be any responsive records because Charter classified all DIRECT SALES EMPLOYEES as "exempt" outside salespersons during their entire employment—including their training weeks when they did not spend a majority of their working hours performing outside sales activities—and did not provide them with any designated meal periods or rest breaks. Charter refuses to confirm whether any responsive records exist. If responsive records do exist, Harper proposes a 20% sampling.

**Harper RFP 15:**      **"Each wage statement that YOU provided to DIRECT SALES EMPLOYEES and COMMISSION EMPLOYEES."** Charter has produced Plaintiffs' wage statements, and Plaintiffs' counsel has separately reviewed one "Direct Sales Representative" employee's wage statements. The wage statements confirm: Charter did not keep track of daily or weekly hours worked for "exempt" outside salespersons; did not pay minimum, overtime, or premium wages to "exempt" outside salespersons; Charter did not pay commissions during training weeks; and Charter did not pay any minimum, overtime, or premium wages or waiting time penalties upon termination. Harper proposes a 20% sampling.

**Harper RFP 16:**      **"Each incentive compensation or commission statement or similar DOCUMENT that YOU provided to COMMISSION EMPLOYEES."** Charter has produced commission summaries for Plaintiffs and a confidential version of its Commission Plan that applied to Harper. Charter has not produced a *signed* copy of a Commission Plan or a *signed* receipt. This request seeks commission summaries and any *signed* plans and receipts for all COMMISSION EMPLOYEES. Harper proposes a 20% sampling.

13

**Harper RFP 17:**     **"Each time sheet or similar DOCUMENT that shows or reflects the number of hours worked by DIRECT SALES EMPLOYEES."** Charter has not produced any time sheets or timecards for Plaintiffs. But Charter has produced a "Time Detail" for Harper showing how and when Charter kept track of his vacation, sick, and personal leave hours, and confirming Charter did not keep track of his daily or weekly hours worked because he was classified as "exempt" for his entire employment, including during his training weeks. Soderstrom Decl. ¶ 7, Ex. 7 (Time Detail). Charter needs to produce any timesheets, timecards, or Time Detail reports it maintained for DIRECT SALES EMPLOYEES, which will help show Charter treated them identically with respect to their "exempt" classification and their daily and weekly hours worked. Harper proposes a 20% sampling.

**Harper RFP 28:**     **"Each 'Offer Letter' or similar correspondence YOU sent to a DIRECT SALES EMPLOYEE or COMMISSION EMPLOYEE offering employment and describing the terms of employment."** Charter has produced the Offer Letter it sent to Harper, which shows Charter classified him as "exempt," told him he was not eligible for overtime, and told him he was eligible for commissions. Soderstrom Decl. ¶ 8, Ex. 8 (Offer Letter). Charter needs to produce any Offer Letters it sent to DIRECT SALES EMPLOYEES and COMMISSION EMPLOYEES, which records will help show Charter treated them identically with respect to their exempt status and/or commission eligibility. Harper proposes a 20% sampling.

**Harper RFP 30:**     **"Each DOCUMENT related to training YOU conduct or have conducted for DIRECT SALES EMPLOYEES."** Charter has produced a training "Transcript Report" for Harper which shows that his "training weeks" lasted over three weeks and that Charter's training program was designed to take at least two weeks. Soderstrom Decl. ¶ 9, Ex. 9 (Training Transcript Report). Charter has also produced some training materials that help confirm that "training" activities do not constitute "outside sales" activities. Charter needs to produce any similar training transcript reports and materials that it used with other DIRECT SALES EMPLOYEES, which records will help

14

show that Charter imposed mandatory training weeks for all "exempt" outside salesperson positions (not just Account Executives) before they started performing "outside sales" activities. These records will confirm that class members and aggrieved employees were misclassified as "exempt" during their training weeks. Harper proposes a 20% sampling.

**Harper RFP 32:** **"Each DOCUMENT that sets forth or describes YOUR policies and practices related to monitoring or tracking the whereabouts of DIRECT SALES EMPLOYEES."** Charter has produced confidential "leads list" reports that it used for both Plaintiffs to determine when they visited a customer in the field and tried to make a sale. Charter needs to produce these same reports or any similar reports for other DIRECT SALES EMPLOYEES, which records will help confirm that "exempt" outside salespersons were misclassified during their training weeks because did not start trying to make sales in the field until after their training. Harper proposes a 20% sampling.

**Harper RFP 33:** **"Each DOCUMENT showing the job duties or responsibilities for each position that is or has been held by a DIRECT SALES EMPLOYEE."** Charter has produced a job requisition for Harper which identifies some of his job duties or responsibilities and which confirms he was classified as "exempt" for his entire employment (including his training weeks) and was eligible for commissions. Soderstrom Decl. ¶ 10, Ex. 10 (Requisition). Charter needs to produce requisitions or similar records for other positions that were held by DIRECT SALES EMPLOYEES (e.g., Direct Sales Representative, Outside Sales Representative), which records will help confirm that those positions were also classified as "exempt" for their entire employment (including training weeks) and were also eligible for commissions. If requisitions for each relevant position have changed over time, Charter needs to produce each version used between November 19, 2014 and the present.

**Harper RFP 34:** **"All severance agreements, waiver agreements, releases, opt-outs, or similar DOCUMENTS that YOU have received from a DIRECT SALES EMPLOYEE or COMMISSION EMPLOYEE."** Charter has not disclosed whether any responsive documents exist. If Charter will stipulate that it will not assert settlement,

15

1    release, or waiver as a defense or in opposition to a motion for class certification, Harper

2    will withdraw this request.

3    **Harper RFPs 8, 9, 10, 12, 14, & 20:** These requests seek records setting forth Charter's written

4    policies concerning: employee classification; calculation and payment of wages;

5    providing meal periods and rest breaks to "exempt" outside salespersons; preparing wage

6    statements and commission statements; and timekeeping for "exempt" outside

7    salespersons. Charter has produced several older policies that only applied to Plaintiffs

8    (e.g., several older versions of an Employee Handbook, a 2017 Timekeeping Policy). This

9    request seeks any other written policies (or other versions) relevant to Plaintiffs' claims

10   that applied to DIRECT SALES EMPLOYEES or COMMISSION EMPLOYEES from

11   November 19, 2014 to the present.

12       **3.      Harper is entitled to obtain this class and representative PAGA discovery.**

13   Harper is entitled to obtain the class and representative PAGA discovery he is seeking.

14   Specifically, Harper is entitled to:

15       obtain discovery regarding any nonprivileged matter that is relevant to any
         party's claim or defense and proportional to the needs of the case,
16       considering the importance of the issues at stake in the action, the amount
         in controversy, the parties' relative access to relevant information, the
17       parties' resources, the importance of the discovery in resolving the issues,
         and whether the burden or expense of the proposed discovery outweighs its
18       likely benefit. Information within this scope of discovery need not be
         admissible to be discoverable.
19

20   Fed. R. Civ. P. 26(b)(1).

21   "The party seeking to compel discovery has the burden of establishing that his request satisfies

22   the relevancy requirements of Rule 26(b)(1)." *Goro v. Flowers Foods, Inc.*, 2019 WL 6252499, at *3

23   (S.D. Cal. Nov. 22, 2019) (quoting *Bryant v. Ochoa*, 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009).

24   District courts have broad discretion to determine relevancy for discovery purposes." *Id.* (citing *Hallett*

25   *v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). "Thereafter, the party opposing discovery has the burden

26   of showing that the discovery should be prohibited, and the burden of clarifying, explaining[,] or

27   supporting its objections." *Id.* (quoting *Bryant*, 2009 WL 1390794, at *1).

28

16

JOINT STATEMENT OF DISCOVERY DISAGREEMENT CONCERNING PLAINTIFF HARPER'S MOTION TO COMPEL
FURTHER DISCOVERY RESPONSES AND PRODUCTION OF DOCUMENTS AND ESI

Harper's requested discovery is relevant to Plaintiffs' class and representative PAGA claims and Charter's defenses; proportional to the needs of the case; and necessary for Plaintiffs to satisfy their class certification burdens and to establish state-wide violations which would support the pursuit of civil penalties under PAGA. Charter cannot meet its burden to show Harper's requested discovery is irrelevant, improper, unduly burdensome, or premature.

### a.     Harper's discovery requests are proportional to the case.

Charter is a large company with substantial resources and sophisticated house and outside counsel. It employs thousands of employees throughout California. Its internal systems and databases, and its production of records to date, show that it maintains most information and records as electronically stored information ("ESI") and that it can use searching, sorting, and exporting tools to reduce its discovery burden and produce a large amount of information and records.

None of the records Harper is seeking through this motion are privileged, and the Stipulated Protective Order entered by this Court many months ago protects any records that contain private, confidential, or proprietary information. Dkt. 43 (SPO).

Charter has possession, custody, and control over the information and records Harper is seeking, and there is no other source or means by which Plaintiffs can obtain such information and records. And the claims in this case implicate thousands of current and former employees and place many millions of dollars in wages and penalties in controversy even if the case was limited solely to one position. *See, e.g.*, Dkt. 1 at 11–17 (stating there was over $8 million in controversy, even limiting the claims to only Account Executives). If Charter has any viable "burden" or "proportionality" objections that can be substantiated, such concerns can easily be addressed using an appropriate sampling procedure.[5]

///

///

---

[5] One concern Plaintiffs have expressed to Charter is that a "sampling" that is too small would leave the data and records subject to an argument that they are not "statistically significant" for purposes of establishing liability and/or assessing damages or civil penalties. Plaintiffs therefore need either (1) a sample size that Charter agrees is "statistically significant," or (2) a stipulation or order that requires Charter to produce additional data and records in the future on a fixed or rolling basis. Plaintiffs are willing to consider a smaller sampling if Charter will stipulate to a future production or otherwise stipulate to "statistical significance."

**b.      Charter's objections are boilerplate and should be overruled.**

Charter's objections are general, boilerplate, and improper. *Taylor v. County of Calaveras*, 2019 WL 6341131, at *4 (E.D. Cal. Nov. 27, 2019) ("Generic, boilerplate objections to discovery are not sufficient."); *Marti v. Baires*, 2012 WL 2029720, at *7 (E.D. Cal. June 5, 2012) (observing "the attempt to evade disclosure through reliance on boilerplate objections is an abuse of the discovery process"); *Dolarian Capital, Inc. v. SOC, LLC*, 2012 WL 4026818, at *2 (E.D. Cal. Sept. 12, 2012) (holding a party resisting discovery must make some showing as to how each discovery request is not relevant and/or is overly broad and unduly burdensome); *Bright v. Dennis Garberg & Assoc., Inc.*, 2011 WL 13150146, at *5 (C.D. Cal. Nov. 15, 2011) (overruling general objections in a class and representative PAGA action because they "do not explain or analyze on an individualized basis, why each particular document request is objectionable, and thus are inadequate"); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) (overruling general, boilerplate, and conclusory objections).

Charter was required to "state *with specificity* the grounds for objecting to the request, *including the reasons*." Fed. R. Civ. P. 34(b)(2)(B) (emphasis added). Charter's objections did not comply with these basic discovery requirements and should be overruled.

**c.      Class member information and records are relevant and discoverable.**

Harper has a right to obtain class member information and employment records and Charter's relevant policies and plans because they are all relevant to Plaintiffs' claims and Charter's defenses and would help Plaintiffs satisfy their burden to certify a class action and prove violations on a class and/or representative PAGA basis. *See Shasta Linen Supply, Inc. v. Applied Underwriters Inc.*, 2018 WL 402235, at *4 (E.D. Cal. Jan. 12, 2018) ("Plaintiffs are entitled to full class discovery at this juncture, including requested personal contact information;" denying motion for protective order after Judge Shubb had already denied bifurcation of class and merits discovery.).

Charter cannot simply ignore Judge Shubb's order denying its motion to strike Plaintiffs' class and representative PAGA claims, ignore Plaintiffs' plausible allegations in the FAC, ignore other records and inferences Plaintiffs have identified that strongly suggest Charter has committed statewide violations against its DIRECT SALES EMPLOYEES and COMMISSION EMPLOYEES. Put differently, Charter cannot unilaterally limit Plaintiffs' class and representative PAGA claims and allegations to one position

18

and one location to try to avoid class certification and statewide liability on the representative PAGA claims. Plaintiffs have affirmative burdens to prove class certification is appropriate and liability exists, and they are entitled to discovery that would be helpful to meeting their burdens.

"Especially when the material is in the possession of the defendant, the court should allow the plaintiff enough discovery to obtain evidence as to whether a class action is maintainable." *Sansone v. Charter Communications, Inc.*, 2019 WL 460728, at *6–9 (S.D. Cal. Feb. 6, 2019) (quoting *Adamov v. Pricewaterhouse Coopers LLP*, 2017 WL 6558133, at *2 (E.D. Cal. Dec. 22, 2017, and granting motion to compel class discovery in wage-and-hour case against Charter related to "vacation pay").

The types and amounts of information and records Harper is seeking in this action is common in employment wage-and-hour cases and routinely produced before class certification is decided. *See, e.g.*, *Romero v. Select Employment Servs., Inc.*, 2020 WL 2084967, at *2–3 (C.D. Cal. Mar. 31, 2020) (ordering production of class member information); *Limon v. Circle K Stores Inc.*, 2020 WL 1503448, at *4–7 (E.D. Cal. Mar. 30, 2020) (ordering production of class member information and records, without sampling, and including members who may be bound by arbitration agreements; observing defendant "seeks to litigate Rule 23 class certification prematurely" to try to avoid class discovery); *Arredondo v. Sw. & Pacific Specialty Fin., Inc.*, 2019 WL 6128657, at *2 (E.D. Cal. Nov. 19, 2019) (ordering production of class member information and sampling of records); *Urena v. Central Cal. Almond Growers Ass'n*, 2019 WL 2390042, at *6–7 (E.D. Cal. June 6, 2019) (ordering production of class member information); *Guzman v. Chipotle Mexican Grill, Inc.*, 2018 WL 6092730, at *2–3 (N.D. Cal. Nov. 21, 2018) (ordering production of class member information); *Brum v. MarketSource, Inc.*, 2018 WL 3861558, at *6 (E.D. Cal. Aug. 14, 2018) (ordering production of class member information and sampling of records); *Williams v. Cintas Servs. Corporate Servs., Inc.*, 2018 WL 3689665, at * (N.D. Cal. Aug. 3, 2018) (ordering production of class member information and observing court "cannot fathom why Defendant would not confirm whether Plaintiff's list of positions encompasses those employees who were subject to similar wage and hour policies that worked in classifications that had similar job responsibilities"); *Gomez v. J. Jacobo Farm Labor Contractor, Inc.*, 2018 WL 2198711, at *4 (E.D. Cal. May 14, 2018) (ordering production of all requested class member records and finding that "Plaintiff's class-wide discovery requests for documents including the class list, work schedules and payroll records

goes directly to her ability to certify the class under Rule 23"); *Adamov v. Pricewaterhouse Coopers LLP*, 2017 WL 6558133, at *1–3 (E.D. Cal. Dec. 22, 2017) (ordering production of class member information and records).

The fact that Rule 23 class certification requirements do not apply to representative PAGA claims makes Harper's discovery requests even less objectionable because the representative PAGA claims substantially overlap with the class claims. *Hamilton v. Wal-Mart Stores, Inc.*, 2019 WL 1949456, at *9 (C.D. Cal. Mar. 4, 2019) (finding that a majority of district courts have held that class certification requirements do not apply to representative PAGA actions and observing that the California Supreme Court has held that "discovery in PAGA actions is as broad as discovery in class actions"); *Zacharia v. Wal–Mart Stores, Inc.*, 142 F. Supp. 3d 949, 954–58 (C.D. Cal. Nov. 3, 2015) (observing a majority of courts have held that Rule 23 does not apply to PAGA claims); *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 507 (2018) (affirming PAGA judgment following bifurcated bench trial where the parties used representative evidence to cover thousands of employees across thousands of store locations); *Brown v. Cinemark USA, Inc.*, 705 F. App'x 644, 645 (9th Cir. 2017) (observing the importance of *Williams v. Superior Court*, 3 Cal. 5th 531 (2017) and confirming PAGA does not require allegations to "satisfy a particular threshold of weightiness, beyond the requirements of nonfrivolousness generally applicable to any civil filing" and reversing dismissal of PAGA claims).

If Harper has any burden to show a "prima facie" case for satisfying Rule 23's class certification requirements (which burden would not apply to representative PAGA discovery), he has easily met that burden based on the plausible allegations in the FAC and the other information, records, and arguments he has submitted in support of his motion. Dkt. 46 (FAC ¶¶ 8–19); Dkt. 56 at 12; *Kang v. Credit Bureau Connection, Inc.*, 2020 WL 1689708, at *2 (N.D. Cal. Feb. 6, 2019) ("A plaintiff is not required to make a prima facie Rule 23 showing to obtain pre-certification discovery."); *Limon*, 2020 WL 1503488, at *3 (same); *Kaminske v. JP Morgan Chase Bank N.A.*, 2010 WL 5782995, at *2 (C.D. Cal. May 21, 2010) (observing "nothing in *Doninger* and *Mantolete* suggests that a prima facie showing is mandatory in all cases, and it very well may be the case that courts routinely do not require such a showing").

The Court should reject Charter's generic, boilerplate, and unsubstantiated objections and arguments. Harper's requests are not vague and ambiguous. They are not premature. There is a

20

reasonable factual and legal basis for Harper's contention that all or part of his proposed classes will be certified and that he will establish Charter's liability for Labor Code violations on a statewide basis. His requests are not a speculative fishing expedition, and they are not limited solely to one specific position (Account Executive) and one specific location (Redding, California). The Court should grant this motion and order Charter to serve complete supplemental responses and produce all requested information and records (or a statistically significant sampling of records, as the Court deems appropriate) by June 12, 2020.

**B.      Charter's Contentions.**

Plaintiff misses the point. We are in federal court. "[T]he right to discovery, even plainly relevant discovery, is not limitless." *Francisco v. Emeritus Corporation*, 2017 WL 11036693, at *2 (C.D. Cal. 2017). "While federal policy generally favors a party's right to discovery, special considerations apply to discovery during the pre-certification stage of a putative class action." *Id.* Contrary to Plaintiff's unsubstantiated assertions, simply brining a class and PAGA action, does not entitle him to unlimited class-wide discovery. In fact, federal courts are not required to authorize any pre-certification discovery. *Id.* Rather, "[d]istrict courts have broad discretion to control the class certification process, and '[w]hether or not discovery will be permitted ... lies within the sound discretion of the trial court.'" *Id.*, *see also, Shaw v. Experian Information Solutions, Inc.*, 306 F.R.D. 293, 297 (S.D. Cal. 2015). Even if *some* pre-certification discovery is permitted, the district court retains broad discretion to determine which issues should be deemed relevant to the certification of a class. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

Plaintiff applies the wrong standard for this Court to consider in determining whether it should permit him to engage in this class-wide fishing expedition. Plaintiff argues, "Charter cannot meet its burden to show Harper's requested discovery is irrelevant, improper, unduly burdensome, or premature." However, before a class has been certified, courts will permit such class-wide discovery only if the plaintiff can show it "would substantiate the class allegations or if plaintiff makes a *prima facie* showing that the requirements of Rule 23 are satisfied." *Vallabharpurapu v. Burger King Corp.*, 276 F.R.D. 611, 615 (N.D. Cal. 2011); *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985); *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977) ("[W]here the plaintiffs fail to make even a

*prima facie* showing of Rule 23's prerequisites … the burden is on the plaintiff to demonstrate that discovery measures are likely to produce persuasive information substantiating the class action allegations."). A plaintiff's mere "speculative inference" of class-wide violations "is not sufficient to show that discovery as to all [putative class members]" is warranted. *Williams v. Veolia Trans. Servs., Inc.*, 2008 WL 7389430, at *2 (C.D. Cal. 2008).

Here, Plaintiff has not made a *prima facie* showing that the Rule 23 requirements have been satisfied. Nor has Plaintiff explained how discovery related to positions he never held, and locations at which he never worked, would substantiate his vague and ambiguous class allegations. As to Plaintiff's vaguely defined and unascertainable "outside salesperson" class, the issue is classification. Plaintiff must show common facts that would render all those in his putative class "misclassified" as exempt outside salespersons. In California, the outside salesperson exemption applies to an employee, "who customarily and regularly works more than half the working time away from the employer's place of business selling tangible or intangible items or obtaining orders or contracts for products, services, or use of facilities." Cal. Code Regs. tit. 8, §§ 11040(1)(C), (2)(M). Thus, to substantiate his class allegations, Plaintiff must produce evidence of some class-wide policy, practice or treatment resulting in misclassification of all of the various positions in his "outside salesperson" class. But Plaintiff has not offered any evidence of statewide policies, practices or treatment. In fact, Plaintiff cannot even identify which positions are included in his vaguely defined and unascertainable class. Rather, the only factual *allegations* related to the putative "outside salesperson" class are based on the *individualized* treatment of Harper. It is undisputed Harper only worked at one Charter location – Redding, California – and only held one position – Account Executive. Harper claims the specific duties he was individually assigned by his manager rendered him non-exempt, rather than an exempt outside salesperson. Specifically, in the FAC, Plaintiff claim he was "not asked or required to perform any 'outside sales' activities during [his] training" and was "assigned numerous duties following [his] training that were not 'outside sales' duties…" FAC ¶ 9. Plaintiff's claims regarding commissions are similarly specific to Plaintiff. He claims Charter did not give him a signed copy of his commission agreement, did not obtain a signed receipt of his agreements, failed to properly calculate his commissions, and failed to timely pay his commissions.

Based on these narrow, individualized allegations, Harper asks this Court to infer that all other outside salespersons and commissions-eligible employees in California, no matter their position or location, were similarly treated. But *Plaintiff cannot even identify which positions are in his proposed classes*. Essentially, Plaintiff seeks class-wide discovery to determine whether his entirely speculative inferences can be substantiated. That is the definition of a fishing expedition. Before filing a class action, or really any lawsuit, a plaintiff is required to at least do some pre-litigation diligence. "The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim. That the discovery might uncover evidence showing that a plaintiff has a legitimate claim does not justify the discovery request." *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990). In the class action context, a plaintiff must have some factual basis to believe his individual claims are appropriate for class treatment before bringing a class action. A plaintiff cannot simply file his individual claims as a class action and then fish to see if anyone else might have a similar claim.

In wage-and-hour actions similar to the present case, plaintiffs seeking discovery related to "all California-based, hourly, non-exempt employees" must show "good cause warranting this type of expansive discovery." *Martinet v. Spherion Atlantic Enterprises, LLC*, 2008 WL 2557490, at *2 (S.D. Cal. 2008). The plaintiff in *Martinet*, like the Plaintiff here, brought a class and PAGA action and sought expansive discovery covering employees at its locations throughout the State of California. *Id*. The court denied plaintiff's request for statewide discovery absent evidence in support of plaintiff's allegations in her complaint. *Id*. Similarly, in *Williams v. Veolia Transp. Services, Inc.*, 2008 WL 7389430, at *2-3 (C.D. Cal. 2008), the plaintiff alleged her employer denied her and others meal periods, rest breaks, and proper payment of overtime, and sought to represent a class of all non-exempt employees who worked for the employer in California. 2008 WL 7389430 at *2. The plaintiff moved to compel class-wide discovery. *Id*. at *1. Citing *Mantolete*, the court found plaintiff must make a *prima facie* showing that the class action requirements of Rule 23 are satisfied before allowing such extensive discovery. *Id*. The court concluded:

> Even accepting Plaintiffs' representations (the court notes that Plaintiffs submitted no declarations even from named plaintiffs), based on the record before the court, ***Plaintiffs appears to rely solely on an inference*** that if

drivers missed meal periods and rest breaks, and were not paid proper overtime under the AVTA contract, then all of [the employer's] other non-exempt employees in other job classifications or contracts must have suffered the same fate. ***Essentially, Plaintiffs seek discovery to determine whether the inference can be substantiated. Such a speculative inference is not sufficient to show that discovery as to all of [employer's] non-exempt and/or hourly paid employees in California … is likely to produce substantiation of class allegations***.

*Id.* at *2 (emphasis added).

Where, as here, the plaintiff has not presented any evidence, or even factual allegations, of class-wide violations, even if some pre-certification discovery is allowed, courts have routinely limited class discovery to the plaintiff's location and position. *See, e.g., Salgado v. O'Lakes*, 2014 WL 7272784, at *5 (E.D. Cal. 2014) (denying state-wide discovery in wage and hour suit where, "Plaintiff present[ed] no evidence to support his assumptions about other [employer] facilities," and finding, "[n]umerous district courts have concluded that plaintiffs were not entitled to discovery from locations where they never worked absent some evidence to indicate company-wide violations."); *Nguyen v. Baxter Healthcare Corp.*, 275 F.R.D. 503, 507-08 (C.D. Cal. 2011) (limiting discovery to plaintiff's position and location "[b]ecause Plaintiff has failed to produce any evidence of company-wide violations" and the plaintiff "has produced no declarations or testimony or documents that would warrant expanding her discovery beyond" the facility where he worked); *Coleman v. Jenny Craig, Inc.*, 2013 WL 2896884, at *8 (S.D. Cal. 2013) (rejecting broader scope of discovery where alleged company-wide violations were based solely on plaintiff's testimony, which the court concluded was "an assumption the Court finds insufficient to justify expanding discovery beyond Plaintiff's market."); *Martinet*, WL 2557490 at *2 (limiting discovery to the office where plaintiff worked until such time that plaintiff can show evidence of company-wide violations – also limiting time period due to named plaintiff's "relevantly short period of employment."); *Franco v. Bank of America*, 2009 WL 8729265, at *4 (S.D. Cal. 2009) (limiting discovery to the offices where the plaintiff worked and had evidence of violations because he had "not provided sufficient facts to support his claim of a company-wide policy and practice...")*; Silva v. Avalonbay Communities, Inc.*, 2015 WL 11438549, at *2-3 (C.D. Cal. 2015) (denying class-wide discovery in wage and hour suit where plaintiff presented "no evidence, through declaration, interrogatory response or otherwise, that any other employee experienced the same treatment as he alleges he suffered, or that others were subjected to the same unlawful practices.").

In *Rix v. Lockheed Martin Corporation*, 2010 WL 11594931, at *1 (S.D. Cal. 2010), the plaintiff, a former Industrial Security Representative ("ISR") at defendant's Palmdale, California facility, brought a wage and hour class action on behalf of all ISRs at all of defendant's California locations, alleging all ISRs were misclassified as exempt. The plaintiff argued that because defendant admitted it classified all ISRs as exempt, he should be entitled to contact and other information for all ISRs at all California locations. The defendant argued the plaintiff was not entitled to statewide contact information, "because Plaintiff did not make a *prima facie* showing to the Magistrate Judge that all putative class members were **_mis_**classified as exempt." *Id.* (emphasis in original). The court agreed, finding the plaintiff "has not made a *prima facie* case of misclassification. While Plaintiff adequately demonstrates that Defendant classified all ISRs across the state as exempt, Plaintiff offers nothing to address whether the classification was improper. Thus, Plaintiff has not met his burden in demonstrating that such information is discoverable at this time." *Id.* at *2. Accordingly, the court limited the disclosure of contact information to individuals who held the same position as plaintiff and worked at the same location. *Id.* The court explained, while it "understands Plaintiff's concerns regarding his ability to obtain information necessary for a class certification motion, the Court notes that the Magistrate Judge's Order does not preclude Plaintiff from seeking this additional information at a later date. Indeed, information obtained from the Palmdale ISRs may provide Plaintiff with information sufficient to establish a *prima facie* case of misclassification, which would in turn warrant an expansion" of the requested discovery. *Id.*

Similarly, in *DeLodder v. Aerotek, Inc.*, 2009 WL 10674457, at *1-2 (C.D. Cal. 2009), the plaintiffs, a Recruiter at defendant's San Diego, California office and a Recruiter at defendant's Northridge, California, office, alleged they and other Recruiters were misclassified as exempt employees and were subjected to various wage and hour violations. They sought contact information for all employees who worked as Recruiters in California for the entire class period. *Id.* at *2. The plaintiffs argued "they need contact information for Recruiters and Account Recruiting Managers 'in order to prove that there is a state-wide pattern and practice of misclassifying these employees as exempt, failing to pay them overtime, and failing to pay waiting time penalties to those employees who were terminated but did not recover all wages due to them upon termination.'" *Id.* In ruling in favor of defendant, and denying *any* pre-certification class-wide discovery, the court found, "Plaintiffs did not make a *prima facie*

showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied, or that discovery is likely to produce substantiation of the class allegations." *Id*. at *3. The court held, "[t]he employer's classification alone is not sufficient," and denied plaintiffs' request for contact information in its entirety "at this stage of the proceedings." *Id*.

In *McCullough v. Office Depot, Inc.*, 2011 WL 13272504 (C.D. Cal. 2011), the plaintiff brought a putative statewide class action lawsuit against his employer, alleging "several California Labor Code workplace violations, in particular that non-exempt hourly paid employees were not paid for all hours worked because Defendant did not record the employees' hours." *Id*. at *1. The plaintiff, who only worked a one warehouse location, sought class member names and contact information for the entire putative class, as well as time records, clock-in and clock-out records and wage statements for all class members. *Id*. In limiting pre-certification discovery to the location at which the plaintiff worked, the court held, plaintiff "has not made any showing that what happened to him at the Signal Hill warehouse location also occurred or is likely to have occurred at any other location in California, or even so would be anything other than an unconnected, discretionary decision of another manager at another location." It also found, "Plaintiff does not make any showing of a general policy applicable to all of Defendant's locations or to any location other than Signal Hill." *Id*. at *2.

In *Salgado*, unlike here, the plaintiff made a number of allegations of "uniform policies, practices and procedures" resulting in alleged wage and hour violations. 2014 WL 7272784, at *2-3 (E.D. Cal. 2014). Plaintiff then sought wage statement, payroll and time-keeping records, as well as contact information, for putative class members at the defendants' facilities throughout California. *Id*. at *4. Even though the plaintiff made *allegations* of statewide violations, the court ruled in favor of the defendant and limited pre-certification discovery to the location at which the plaintiff worked. *Id*. at *4. The court reasoned, "Plaintiff only ever worked at the Turlock–Teg Facility and other than his allegations, Plaintiff presents no evidence to support his assumptions about other LOL facilities." *Id*. It further held, "Plaintiff's proposition that allegations of violations at his facility tends to indicate violations at all other California LOL facilities is mere speculation and insufficient to compel discovery on that scale." *Id*. Thus, "there is no basis at this time to require discovery beyond the facility where Plaintiff worked." *Id*.

Plaintiff completely glosses over this analysis. Not only does he fail to show a *prima facie* case for class relief under Rule 23, he does not even attempt to explain *why or how* the far-reaching discovery he seeks is likely to produce substantiation of his overbroad and vague class allegations. Importantly, with regard to the putative outside salesperson class, Plaintiff must show how the requested information is likely to produce substantiation of his allegations that individuals in his Account Executive position, as well as positions outside of his position – positions he *cannot even identify* – were <u>mis</u>classified as exempt outside salespersons. Yet Plaintiff forgoes this entire analysis and demands that this Court blindly compel all requested discovery without actually analyzing the facts of this case. Charter, on the other hand, has proposed a reasonable solution. At this pre-certification stage, where Plaintiff has not alleged or offered evidence of any state-wide policies, practices or treatment, Charter has agreed to produce contact information for all Account Executives (Plaintiff's position) who worked at Charter's Redding, California location (Plaintiff's location) during the class period. This proposal is very reasonable and in line with numerous other cases in this circuit addressing similar factual scenarios.

The cases cited by Plaintiff are easily distinguishable. *Shasta Linen Supply, Inc. v. Applied Underwriters Inc.*, 2018 WL 402235 (E.D. Cal. 2018) was not an employment case. Rather, the plaintiff sought "restitution/disgorgement for Plaintiff and the putative class as a result of Defendants' unlawful business practices, including the use of an unfiled, void and illegal 'collateral agreement' in the collection of excessive fees and expenses for the workers' compensation insurance arrangements between Defendants and Plaintiffs." *Id*. at *1. None of the same issues are present in this case.

In *Sansone v. Charter Communications, Inc.*, 2019 WL 460728, at *1 (S.D. Cal. 2019), unlike here, the plaintiffs articulated a defined, ascertainable class and presented evidence of uniform, class-wide treatment. Specifically, they defined the class as, "all persons who were employed by TWC Administration LLC in the state of California whose employment with TWC Administration LLC was transitioned to Charter Communications, LLC without being paid out the vacation wages they had accrued at TWC Administration LLC." *Id*., fn 2. They then made the class-wide allegation, and offered evidence, that defendants failed to pay out accrued and unused vacation wages when they were terminated by TWC before being rehired by Charter. *Id*. Because, unlike Harper, the plaintiffs were able

1   to provide evidence of class-wide violations applicable to a well-defined putative class, the court found

2   plaintiffs were able to establish a *prima facie* case under Rule 23(a) and allowed class-wide discovery.

3   In *Romero v. Select Employment Services, Inc.*, 2020 WL 2084967, at *1 (C.D. Cal. 2020), the

4   plaintiffs also sought to represent a well-defined class of employees whom they identified by their

5   specific job titles. The plaintiffs "argue[d] that production of the class list will likely substantiate class

6   allegations in terms of numerosity and commonality." *Id*. at *2. Specifically, they "challenge[d] what

7   they contend are Cal Rehab's company-wide written policies governing meal periods in violation of

8   California law." *Id*. The polices were produced in discovery and, on their face, violated California law.

9   *Id*. Based on this evidence, the court agreed to order production of all contact information requested by

10  plaintiffs *because* "Plaintiffs' evidence is sufficient to show a company-wide policy at this stage of the

11  proceedings." *Id*.

12  Here, Plaintiff has not produced, or even alleged, evidence of statewide policies, practices or

13  treatment justifying the expansive statewide discovery he seeks nor has he explained how the requested

14  discovery would substantiate his class allegations. The rest of the cases cited by Plaintiff are similarly

15  distinguishable. Moreover, none of the cases cited by Plaintiff deal with discovery where, as here, the

16  plaintiff is alleging misclassification.

17  Defendant has also objected to Plaintiff's expansive discovery on relevancy, privacy and

18  proportionality grounds and maintains those objections. In particular, Plaintiff has not explained how

19  production of wage statements and payroll data is remotely relevant to his allegations of

20  misclassification. Here, it is undisputed Account Executives and other exempt outside salespersons were

21  treated as exempt from California's applicable wage and hour laws. But, as referenced above, the fact

22  that all putative class members were treated as exempt is irrelevant for class-certification purposes.

23  Moreover, Harper's requests for putative class member payroll data, including wage statements,

24  implicate significant privacy interests that third-party employees have in their compensation and wage

25  information. *Nguyen*, 275 F.R.D. at 512–13 ("Pay check stubs contain more confidential and sensitive

26  information than simply time records or contact information"). In *Nguyen*, the court denied the plaintiff's

27  request for payroll records because they contained "confidential and sensitive information" which

28

1  outweighed "Plaintiff's need for the information." 275 F.R.D. at 513-14; *see also*, *Coleman*, 2013 WL

2  2896884 at *11.

3  Plaintiff has not made the requisite showing that the alleged misclassification that he allegedly

4  experienced at the Charter location at which he worked also occurred with regard to *all* of Charter's

5  exempt outside salespersons, regardless of position, at *all* of Charter's California locations. Nor has he

6  offered evidence that the unique treatment to which he claims to have been subjected related to

7  commissions was experienced by anyone else; especially anyone outside of his position or location. In

8  fact, Plaintiff still cannot identify the other positions about which he seeks discovery. As such, Plaintiff

9  is not entitled to the names, contact information and position history of putative class members statewide

10  (Interrogatory Nos. 2 and 3) or the identity of every putative class members statewide who is bound by

11  the Solution Channel arbitration agreement, opted out of arbitration, or settled, released or waived claims

12  (Interrogatory Nos. 5, 6 and 7). Nor is Plaintiff entitled to all of the putative class members' wage

13  statements, commission plans and commission statements (Request Nos. 7, 15 and 16), offer letters and

14  job descriptions (Request Nos. 28 and 33) and severance agreements, waiver agreements, releases and

15  opt-outs (Request No. 34).

16  **IV.**     **SPECIFIC DISCOVERY REQUESTS IN DISPUTE.**

17  Each written discovery request for which Harper seek an order, compelling further responses

18  and/or the production of information and records, and each of Charter's responses and objections, are

19  provided below. The parties also state their respective positions on each discovery request.

20  **INTERROGATORY NO. 2:**

21  IDENTIFY the CONTACT INFORMATION and POSITION HISTORY for each DIRECT

22  SALES EMPLOYEE.

23  "POSITION HISTORY" means (1) the title of the position(s) held, (2) the dates of employment

24  in each position, and (3) the location(s) at which such employee performed work in each position.

25  "DIRECT SALES EMPLOYEE" or "DIRECT SALES EMPLOYEES" means any individual

26  who performed work for YOU in California at any time from November 19, 2014 to the present in a

27  position that sold or attempted to sell YOUR products and services at a customer's home, work, or

28  business location instead of one of YOUR retail, call center, or office locations.

**RESPONSE TO INTERROGATORY NO. 2:**

Charter objects to Plaintiff's special definition of the terms "YOU" on the ground that it renders the Interrogatory compound, overly broad, vague and ambiguous, and unduly burdensome because it includes not only Charter but also its "affiliates, directors, officers, employees, representatives, and any other person or entity acting on Charter Communications, LLC's behalf." Charter further objects that Plaintiff's definition of "DIRECT SALES EMPLOYEES" is vague, ambiguous, overly broad, and unduly burdensome. Charter further objects to this Interrogatory on the ground that Plaintiff is attempting to conduct class discovery without making a *prima facie* showing that the requirements of Rule 23 are satisfied or that the discovery is likely to produce substantiation of the class allegations. *Mantolete v. Bolger,* 767 F.2d 1416, 1424 (9th Cir. 1985). Pre-certification discovery is "not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it; the plaintiff must have some basis in fact for the action." *Thomas v. Cendant Mortgage,* No. 03-1672, 2005 WL 579903, at *3 (E.D. Pa. Mar. 11, 2005); *see also Micro Motion, Inc. v. Kane Steel Co., Inc.,* 894 F.2d 1318, 1327 (Fed. Cir. 1990) ("[t]he discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim. That the discovery might uncover evidence showing that a plaintiff has a legitimate claim does not justify the discovery request."). This Interrogatory is thus premature, overly broad as to scope, disproportionate, and unduly burdensome and oppressive and harassing to the extent it seeks discovery concerning individuals other than the named Plaintiff when this matter has not been certified as a class action, no *prima facie* grounds for class certification exist, and individuals other than Plaintiff are not otherwise a party to or participants in this action. Discovery of the sought-after information should be phased and considered only following a ruling on class certification. Charter further objects to this Interrogatory on the grounds that it is unduly burdensome and oppressive and seeks information not relevant to the case and not proportional to the needs of the case, including that the burden or expense of the proposed discovery outweighs any putative benefit. Charter further objects to this Interrogatory on the ground that it seeks information the release of which would be a violation of any individual's right of privacy under Article I, section 1 of the California Constitution, or Sections 1799.1 and 3 344 of the California Civil Code, or any other constitutional, statutory or common law right of privacy of any person. Charter also

1   objects that this interrogatory is premature because Plaintiff filed a Motion for Leave to File First

2   Amended Complaint, which is pending before this Court and will not be heard until December 16, 2019.

3   Charter intends to file a motion to strike class allegations and thus objects that Plaintiff's interrogatory

4   is premature until the Court issues a decision on Charter's anticipated motion and Plaintiff's request for

5   leave to amend his complaint.

6        Harper's Position. All of Charter's objections are generic, boilerplate, and should be overruled.

7   The definition of DIRECT SALES EMPLOYEE is not vague, ambiguous, overly broad, and unduly

8   burdensome. Harper has identified several covered positions without the benefit of discovery (Account

9   Executive, Direct Sales Representative, Outside Sales Representative), and Charter is perfectly capable

10  of determining (and likely has already determined over the last six months) which of its employees

11  engaged it "direct sales" and were therefore classified as "exempt" outside salespersons. Charter's

12  authority cited for limiting pre-certification discovery is neither binding nor applicable because Harper

13  has made plausible allegations of statewide violations, has set forth a prima facie case for class

14  certification, and has representative PAGA claims that are not subject to Rule 23 requirements. *See*

15  *Williams*, 3 Cal. 5th at 537 (contact information of aggrieved employees is "an essential prerequisite to

16  effectively seeking group relief" without any "good cause" requirement or basis for "restricting discovery

17  more narrowly."). Judge Shubb rejected Charter's request for phased or bifurcated discovery and denied

18  Charter's motion to strike class and representative PAGA allegations. The class member and aggrieved

19  employee information sought by this request is relevant, discoverable, and routinely produced in cases

20  similar to this one. *Urena*, 2019 WL 2390042, at *6–7 (entire class list, including members who may be

21  bound by arbitration agreement); *Sansone*, 2019 WL 460728, at *6–9 (class list sample of around 1,200

22  members, including members who may be bound by Charter's same arbitration agreements); *Guzman*,

23  2018 WL 6092730, at *2–3 (class list sample of 2,000 members); *Williams*, 2018 WL 3689665, at *3

24  (class list sample of 25-50% where class size was 3,000 to 6,000 members); *Gomez*, 2018 WL 2198711,

25  at *4–5 (entire class list and all timekeeping and payroll records for class members); *Adamov*, 2017 WL

26  6558133, at *1–3 (entire class list and "full production" of numerous requested class records); *Harris v.*

27  *Best Buy Stores, L.P.*, 2017 WL 3948397 (N.D. Cal. Sept. 8, 2017) (class list sample of 500 members;

28  requiring production of all records related to class member employment termination records to the extent

31

they are kept "in a searchable, electronic format—database or otherwise"); *Brum*, 2018 WL 3861558, at *5–6 (class list of 7,400 members). The information goes directly to Plaintiffs' ability to prove numerosity and obtain favorable witness statements that support class certification and liability arguments. *Limon*, 2020 WL 1503448, at *4 ("Concerning the identity of the putative class members, district courts in this Circuit have often found that 'as a general rule, before class certification has taken place, all parties are entitled to equal access to persons who potentially have an interest in or relevant knowledge of the subject of the action, but who are not yet parties.' For that reason, discovery of the putative class members' identifying information is routinely allowed."). Any privacy concerns are addressed by the Stipulated Protective Order, and it is too late for Charter to insist on an opt-out procedure that would conflict with the deadlines in the Scheduling Order. *Goro v. Flower Foods, Inc.*, 2018 WL 3956018, at *9 (S.D. Cal. Aug. 17, 2018) ("Generally, federal courts in this circuit have held that a protective order, in lieu of a *Belaire-West* notice, sufficiently protects putative class members and aggrieved employees' privacy interests in the confidentiality of their contact information."); *Brum v. MarketSource, Inc.*, 2018 WL 3861558, at *6 (E.D. Cal. Aug. 14, 2018) (ordering information for 7,400 employees be produced within seven days of approval of protective order). The Court should order Charter to produce the requested information by June 12, 2020.

     <u>Charter's Position</u>.

     Charter maintains its objections are entirely proper and asserts it is not required to produce any class-wide documents or information based on Plaintiff's allegations and his evidence presented to date. However, as a compromise, Charter has agreed to provide the requested contact information as it relates to Account Executives (Plaintiff's position) at Charter's Redding, California location (Plaintiff's location) during the class period.

     "[T]he right to discovery, even plainly relevant discovery, is not limitless." *Francisco v. Emeritus Corporation*, 2017 WL 11036693, at *2 (C.D. Cal. 2017). "While federal policy generally favors a party's right to discovery, special considerations apply to discovery during the pre-certification stage of a putative class action." *Id*. Before a class has been certified, courts will permit class-wide discovery only if the plaintiff can show it "would substantiate the class allegations or if plaintiff makes a *prima facie* showing that the requirements of Rule 23 are satisfied." *Vallabharpurapu v. Burger King Corp.*, 276

32

JOINT STATEMENT OF DISCOVERY DISAGREEMENT CONCERNING PLAINTIFF HARPER'S MOTION TO COMPEL
FURTHER DISCOVERY RESPONSES AND PRODUCTION OF DOCUMENTS AND ESI

F.R.D. 611, 615 (N.D. Cal. 2011); *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985); *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977) ("[W]here the plaintiffs fail to make even a *prima facie* showing of Rule 23's prerequisites … the burden is on the plaintiff to demonstrate that discovery measures are likely to produce persuasive information substantiating the class action allegations."). A plaintiff's mere "speculative inference" of class-wide violations "is not sufficient to show that discovery as to all [putative class members]" is warranted. *Williams v. Veolia Trans. Servs., Inc.*, 2008 WL 7389430, at *2 (C.D. Cal. 2008). "The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim. That the discovery might uncover evidence showing that a plaintiff has a legitimate claim does not justify the discovery request." *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990).

Where, as here, the plaintiff has not presented any evidence, or even factual allegations, of class-wide violations, even if some pre-certification discovery is allowed, courts have routinely limited class discovery to the plaintiff's location and position. *See, e.g., Salgado v. O'Lakes*, 2014 WL 7272784, at *5 (E.D. Cal. 2014) (denying state-wide discovery in wage and hour suit where, "Plaintiff present[ed] no evidence to support his assumptions about other [employer] facilities," and finding, "[n]umerous district courts have concluded that plaintiffs were not entitled to discovery from locations where they never worked absent some evidence to indicate company-wide violations."); *Nguyen v. Baxter Healthcare Corp.*, 275 F.R.D. 503, 507-08 (C.D. Cal. 2011) (limiting discovery to plaintiff's position and location "[b]ecause Plaintiff has failed to produce any evidence of company-wide violations" and the plaintiff "has produced no declarations or testimony or documents that would warrant expanding her discovery beyond" the facility where he worked); *Coleman v. Jenny Craig, Inc.*, 2013 WL 2896884, at *8 (S.D. Cal. 2013) (rejecting broader scope of discovery where alleged company-wide violations were based solely on plaintiff's testimony, which the court concluded was "an assumption the Court finds insufficient to justify expanding discovery beyond Plaintiff's market."); *Martinet*, WL 2557490 at *2 (limiting discovery to the office where plaintiff worked until such time that plaintiff can show evidence of company-wide violations – also limiting time period due to named plaintiff's "relevantly short period of employment."); *Franco v. Bank of America*, 2009 WL 8729265, at *4 (S.D. Cal. 2009) (limiting

discovery to the offices where the plaintiff worked and had evidence of violations because he had "not provided sufficient facts to support his claim of a company-wide policy and practice..."); *Silva v. Avalonbay Communities, Inc.*, 2015 WL 11438549, at *2-3 (C.D. Cal. 2015) (denying class-wide discovery in wage and hour suit where plaintiff presented "no evidence, through declaration, interrogatory response or otherwise, that any other employee experienced the same treatment as he alleges he suffered, or that others were subjected to the same unlawful practices."); *Rix v. Lockheed Martin Corporation*, 2010 WL 11594931, at *1 (S.D. Cal. 2010) (same); *DeLodder v. Aerotek, Inc.*, 2009 WL 10674457, at *1-2 (C.D. Cal. 2009) (same); *McCullough v. Office Depot, Inc.*, 2011 WL 13272504 (C.D.Cal. 2011) (same).

Plaintiff completely glosses over this analysis. Rather, he summarily concludes he has "made plausible allegations of statewide violations" and has "set forth a prima facie case for class certification" without explanation or analysis. But Plaintiff does not actually identify any "statewide violations." In fact, Plaintiff cannot even identify which positions are within his ill-defined class. He also does not set forth a *prima facie* case for class certification under Rule 23. He does not even address the Rule 23 requirements. At most, Plaintiff abruptly concludes, again without analysis or explanation, the requested "information goes directly to Plaintiffs' ability to prove numerosity and obtain favorable witness statements that support class certification and liability arguments." To establish numerosity, Plaintiff must simply show, "the class is so numerous that joinder of all members is impracticable." Fed. Rule Civ. Proc. 23(a)(1). Plaintiff could show numerosity by identifying the *number* of putative class members. But, for some reason, Plaintiff has not requested this information. Instead, he has skipped ahead and demands the personal contact information and position history for all putative class members, including individuals in positions he cannot identify. This information is not necessary or relevant to show numerosity. Plaintiff also fails to identify what "favorable witness statements" he believes these individuals will provide. Finally, establishing some vague "liability arguments" is not a basis for obtaining this discovery at the *pre-certification stage*. At this pre-certification stage, where Plaintiff has not alleged or offered evidence of any state-wide policies, practices or treatment, Charter's offer to produce contact information for all Account Executives (Plaintiff's position) who worked at Charter's

34

Redding, California location (Plaintiff's location) during the class period is entirely reasonable and in line with numerous other cases in this circuit addressing similar factual scenarios.

**INTERROGATORY NO. 3:**

IDENTIFY the CONTACT INFORMATION and POSITION HISTORY for each COMMISSION EMPLOYEE.

"COMMISSION EMPLOYEE" or "COMMISSION EMPLOYEES" means any individual who performed work for YOU in California at any time from November 19, 2014 to the present and who was eligible to earn incentive compensation such as bonus or commission wages based on a "Commission Agreement," "Sales Compensation Plan," "Sales Compensation Plan Schedule," or similar document.

**RESPONSE TO INTERROGATORY NO. 3:**

Charter objects to Plaintiff's special definition of the terms "YOU" on the ground that it renders the Interrogatory compound, overly broad, vague and ambiguous, and unduly burdensome because it includes not only Charter but also its "affiliates, directors, officers, employees, representatives, and any other person or entity acting on Charter Communications, LLC's behalf." Charter further objects that Plaintiff's definition of "COMMISSION EMPLOYEE(S)" is vague, ambiguous, overly broad, and unduly burdensome. Charter further objects to this Interrogatory on the ground that Plaintiff is attempting to conduct class discovery without making a *prima facie* showing that the requirements of Rule 23 are satisfied or that the discovery is likely to produce substantiation of the class allegations. *Mantolete* v. *Bolger,* 767 F .2d 1416, 1424 (9th Cir. 1985). Pre-certification discovery is "not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it; the plaintiff must have some basis in fact for the action." *Thomas* v. *Cendant Mortgage,* No. 03-1672, 2005 WL 579903, at *3 (E.D. Pa. Mar. 11, 2005); *see also Micro Motion, Inc.* v. *Kane Steel Co., Inc.,* 894 F.2d 1318, 1327 (Fed. Cir. 1990) ("[t]he discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim. That the discovery might uncover evidence showing that a plaintiff has a legitimate claim does not justify the discovery request."). This Interrogatory is thus premature, overly broad as to scope, disproportionate, and unduly burdensome and oppressive and harassing to the extent it seeks discovery concerning individuals other than the named Plaintiff when this matter has not been certified as a class action, no

35

*prima facie* grounds for class certification exist, and individuals other than Plaintiff are not otherwise a party to or participants in this action. Discovery of the sought-after information should be phased and considered only following a ruling on class certification. Charter further objects to this Interrogatory on the grounds that it is unduly burdensome and oppressive and seeks information not relevant to the case and not proportional to the needs of the case, including that the burden or expense of the proposed discovery outweighs any putative benefit. Charter further objects to this Interrogatory on the ground that it seeks information the release of which would be a violation of any individual's right of privacy under Article I, section 1 of the California Constitution, or Sections 1799.1 and 3344 of the California Civil Code, or any other constitutional, statutory or common law right of privacy of any person. Charter also objects that this interrogatory is premature because Plaintiff filed a Motion for Leave to File First Amended Complaint, which is pending before this Court and will not be heard until December 16, 2019. Charter intends to file a motion to strike class allegations and thus objects that Plaintiff's interrogatory is premature until the Court issues a decision on Charter's anticipated motion and Plaintiff's request for leave to amend his complaint.

Harper's Position. All of Charter's objections are generic, boilerplate, and should be overruled. The definition of COMMISSION EMPLOYEE is not vague, ambiguous, overly broad, and unduly burdensome. Harper has identified several covered positions without the benefit of discovery (Account Executive, Direct Sales Representative, Outside Sales Representative, and Retail Sales Associate), and Charter is perfectly capable of determining (and likely has already determined over the last six months) which of its employees were eligible for commissions. Charter's authority cited for limiting pre-certification discovery is neither binding nor applicable because Harper has made plausible allegations of statewide violations, has set forth a prima facie case for class certification, and has representative PAGA claims that are not subject to Rule 23 requirements. *See Williams*, 3 Cal. 5th at 537. Judge Shubb rejected Charter's request for phased or bifurcated discovery and denied Charter's motion to strike class and representative PAGA allegations. The class member and aggrieved employee information sought by this request is relevant, discoverable, and routinely produced in cases similar to this one. *Urena*, 2019 WL 2390042, at *6–7; *Sansone*, 2019 WL 460728, at *6–9; *Guzman*, 2018 WL 6092730, at *2–3; *Williams*, 2018 WL 3689665, at *3; *Gomez*, 2018 WL 2198711, at *4–5; *Adamov*, 2017 WL 6558133,

36

JOINT STATEMENT OF DISCOVERY DISAGREEMENT CONCERNING PLAINTIFF HARPER'S MOTION TO COMPEL
FURTHER DISCOVERY RESPONSES AND PRODUCTION OF DOCUMENTS AND ESI

at *1–3; *Harris*, 2017 WL 3948397; *Brum*, 2018 WL 3861558, at *5–6. The information goes directly to Plaintiffs' ability to prove numerosity and obtain favorable witness statements that support class certification and liability arguments. *Limon*, 2020 WL 1503448, at *4. Any privacy concerns are addressed by the Stipulated Protective Order, and it is too late for Charter to insist on a *Belaire-West* notice procedure that would conflict with the deadlines in the Scheduling Order. *Goro*, 2018 WL 3956018, at *9; *Brum*, 2018 WL 3861558, at *6. The Court should order Charter to produce the requested information by June 12, 2020.

Charter's Position.

Charter maintains its objections are entirely proper and asserts it is not required to produce any class-wide documents or information based on Plaintiff's allegations and his evidence presented to date. However, as a compromise, Charter has agreed to provide the requested information as it relates to Account Executives (Plaintiff's position) at Charter's Redding, California location (Plaintiff's location) during the class period.

"[T]he right to discovery, even plainly relevant discovery, is not limitless." *Francisco v. Emeritus Corporation*, 2017 WL 11036693, at *2 (C.D. Cal. 2017). "While federal policy generally favors a party's right to discovery, special considerations apply to discovery during the pre-certification stage of a putative class action." *Id*. Before a class has been certified, courts will permit class-wide discovery only if the plaintiff can show it "would substantiate the class allegations or if plaintiff makes a *prima facie* showing that the requirements of Rule 23 are satisfied." *Vallabharpurapu v. Burger King Corp.*, 276 F.R.D. 611, 615 (N.D. Cal. 2011); *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985); *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977) ("[W]here the plaintiffs fail to make even a *prima facie* showing of Rule 23's prerequisites … the burden is on the plaintiff to demonstrate that discovery measures are likely to produce persuasive information substantiating the class action allegations."). A plaintiff's mere "speculative inference" of class-wide violations "is not sufficient to show that discovery as to all [putative class members]" is warranted. *Williams v. Veolia Trans. Servs., Inc.*, 2008 WL 7389430, at *2 (C.D. Cal. 2008). "The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim. That the discovery might uncover evidence showing that a plaintiff has a legitimate claim does

37

1   not justify the discovery request." *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1327 (Fed.

2   Cir. 1990).

3           Where, as here, the plaintiff has not presented any evidence, or even factual allegations, of class-

4   wide violations, even if some pre-certification discovery is allowed, courts have routinely limited class

5   discovery to the plaintiff's location and position. *See, e.g., Salgado v. O'Lakes*, 2014 WL 7272784, at *5

6   (E.D. Cal. 2014) (denying state-wide discovery in wage and hour suit where, "Plaintiff present[ed] no

7   evidence to support his assumptions about other [employer] facilities," and finding, "[n]umerous district

8   courts have concluded that plaintiffs were not entitled to discovery from locations where they never

9   worked absent some evidence to indicate company-wide violations."); *Nguyen v. Baxter Healthcare*

10  *Corp.*, 275 F.R.D. 503, 507-08 (C.D. Cal. 2011) (limiting discovery to plaintiff's position and location

11  "[b]ecause Plaintiff has failed to produce any evidence of company-wide violations" and the plaintiff

12  "has produced no declarations or testimony or documents that would warrant expanding her discovery

13  beyond" the facility where he worked); *Coleman v. Jenny Craig, Inc.*, 2013 WL 2896884, at *8 (S.D.

14  Cal. 2013) (rejecting broader scope of discovery where alleged company-wide violations were based

15  solely on plaintiff's testimony, which the court concluded was "an assumption the Court finds insufficient

16  to justify expanding discovery beyond Plaintiff's market."); *Martinet*, WL 2557490 at *2 (limiting

17  discovery to the office where plaintiff worked until such time that plaintiff can show evidence of

18  company-wide violations – also limiting time period due to named plaintiff's "relevantly short period of

19  employment."); *Franco v. Bank of America*, 2009 WL 8729265, at *4 (S.D. Cal. 2009) (limiting

20  discovery to the offices where the plaintiff worked and had evidence of violations because he had "not

21  provided sufficient facts to support his claim of a company-wide policy and practice..."); *Silva v.*

22  *Avalonbay Communities, Inc.*, 2015 WL 11438549, at *2-3 (C.D. Cal. 2015) (denying class-wide

23  discovery in wage and hour suit where plaintiff presented "no evidence, through declaration,

24  interrogatory response or otherwise, that any other employee experienced the same treatment as he alleges

25  he suffered, or that others were subjected to the same unlawful practices."); *Rix v. Lockheed Martin*

26  *Corporation*, 2010 WL 11594931, at *1 (S.D. Cal. 2010) (same); *DeLodder v. Aerotek, Inc.*, 2009 WL

27  10674457, at *1-2 (C.D. Cal. 2009) (same); *McCullough v. Office Depot, Inc.*, 2011 WL 13272504 (C.D.

28  Cal. 2011) (same).

Plaintiff completely glosses over this analysis. Rather, he summarily concludes he has "made plausible allegations of statewide violations" and has "set forth a prima facie case for class certification" without explanation or analysis. But Plaintiff does not actually identify any "statewide violations." In fact, Plaintiff cannot even identify which positions are within his ill-defined class. He also does not set forth a *prima facie* case for class certification under Rule 23. He does not even address the Rule 23 requirements. At most, Plaintiff abruptly concludes, again without analysis or explanation, the requested "information goes directly to Plaintiffs' ability to prove numerosity and obtain favorable witness statements that support class certification and liability arguments." To establish numerosity, Plaintiff must simply show, "the class is so numerous that joinder of all members is impracticable." Fed. Rule Civ. Proc. 23(a)(1). Plaintiff could show numerosity by identifying the *number* of putative class members. But, for some reason, Plaintiff has not requested this information. Instead, he has skipped ahead and demands the personal contact information and position history for all putative class members, including individuals in positions he cannot identify. This information is not necessary or relevant to show numerosity. Plaintiff also fails to identify what "favorable witness statements" he believes these individuals will provide. Finally, establishing some vague "liability arguments" is not a basis for obtaining this discovery *at the pre-certification stage*. At this pre-certification stage, where Plaintiff has not alleged or offered evidence of any state-wide policies, practices or treatment, Charter's offer to produce contact information for all Account Executives (Plaintiff's position) who worked at Charter's Redding, California location (Plaintiff's location) during the class period is entirely reasonable and in line with numerous other cases in this circuit addressing similar factual scenarios.

**INTERROGATORY NO. 4:**

IDENTIFY each LOCATION at which any DIRECT SALES EMPLOYEE was expected or required to perform work.

"LOCATION" means both (i) the specific address of the store or office to which a DIRECT SALES EMPLOYEE was assigned, and (ii) the territory within which the DIRECT SALES EMPLOYEE was expected or required to perform work for YOU (e.g., "Redding," or "Shasta County," or whatever description YOU used to communicate an authorized sales territory or region).

///

39

**RESPONSE TO INTERROGATORY NO. 4:**

Charter objects to Plaintiff's special definition of the terms "YOU" on the ground that it renders the Interrogatory compound, overly broad, vague and ambiguous, and unduly burdensome because it includes not only Charter but also its "affiliates, directors, officers, employees, representatives, and any other person or entity acting on Charter Communications, LLC's behalf." Charter further objects that Plaintiff's definition of "DIRECT SALES EMPLOYEE" is vague, ambiguous, overly broad, and unduly burdensome. Charter further objects to this Interrogatory on the ground that Plaintiff is attempting to conduct class discovery without making a *prima facie* showing that the requirements of Rule 23 are satisfied or that the discovery is likely to produce substantiation .of the class allegations. *Mantolete v. Bolger,* 767 F.2d 1416, 1424 (9th Cir. 1985). Pre-certification discovery is "not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it; the plaintiff must have some basis in fact for the action." *Thomas v. Cendant Mortgage,* No. 03-1672, 2005 WL 579903, at *3 (E.D. Pa. Mar. 11, 2005); *see also Micro Motion, Inc. v. Kane Steel Co., Inc.,* 894 F.2d 1318, 1327 (Fed. Cir. 1990) ("[t]he discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim. That the discovery might uncover evidence showing that a plaintiff has a legitimate claim does not justify the discovery request."). This Interrogatory is thus premature, overly broad as to scope, disproportionate, and unduly burdensome and oppressive and harassing to the extent it seeks discovery concerning individuals other than the named Plaintiff when this matter has not been certified as a class action, no *prima facie* grounds for class certification exist, and individuals other than Plaintiff are not otherwise a party to or participants in this action. Discovery of the sought-after information should be phased and considered only following a ruling on class certification. Charter further objects to this Interrogatory on the grounds that it is unduly burdensome and oppressive and seeks information not relevant to the case and not proportional to the needs of the case, including that the burden or expense of the proposed discovery outweighs any putative benefit. Charter also objects that this interrogatory is premature because Plaintiff filed a Motion for Leave to File First Amended Complaint, which is pending before this Court and will not be heard until December 16, 2019. Charter intends to file a motion to strike class

1   allegations and thus objects that Plaintiff's interrogatory is premature until the Court issues a decision on

2   Charter's anticipated motion and Plaintiff's request for leave to amend his complaint.

3          Harper's Position. All of Charter's objections are generic, boilerplate, and should be overruled.

4   This request simply seeks the locations and/or sales territories in California where Charter assigned

5   DIRECT SALES EMPLOYEES to work. If Charter intends to argue that each location/sales territory

6   had materially different employment requirements that materially affected how it classified, trained, and

7   paid its "exempt" outside salespersons, then Harper is entitled to know where these locations/sales

8   territories are and why they are materially different than the location/sales territory where Plaintiffs both

9   worked (Redding, California). The Court should order Charter to produce the relevant information by no

10  later June 12, 2020 or state that it will not assert location-specific defenses or arguments in opposition to

11  class certification.

12         Charter's Position.

13         Charter agrees to provide a supplemental response to this request. Thus, Plaintiff's motion is moot

14  as to this request.

15  **INTERROGATORY NO. 5:**

16         IDENTIFY each DIRECT SALES EMPLOYEE and COMMISSION EMPLOYEE who opted

17  out of any version of arbitration agreement YOU have used.

18  **RESPONSE TO INTERROGATORY NO. 5:**

19         Charter objects to Plaintiff's special definition of the terms "YOU" on the ground that it renders

20  the Interrogatory compound, overly broad, vague and ambiguous, and unduly burdensome because it

21  includes not only Charter but also its "affiliates, directors, officers, employees, representatives, and any

22  other person or entity acting on Charter Communications, LLC's behalf." Charter further objects that

23  Plaintiff's definitions of "DIRECT SALES EMPLOYEE" and "COMMISSION EMPLOYEE" are

24  vague, ambiguous, overly broad, and unduly burdensome. Charter further objects to this Interrogatory

25  on the ground that Plaintiff is attempting to conduct class discovery without making a *prima facie*

26  showing that the requirements of Rule 23 are satisfied or that the discovery is likely to produce

27  substantiation of the class allegations. *Mantolete* v. *Bolger,* 767 F.2d 1416, 1424 (9th Cir. 1985). Pre-

28  certification discovery is "not intended as a fishing expedition permitting the speculative pleading of a

41

case first and then pursuing discovery to support it; the plaintiff must have some basis in fact for the action." *Thomas* v. *Cendant Mortgage,* No. 03-1672, 2005 WL 579903, at *3 (E.D. Pa. Mar. 11, 2005); *see also Micro Motion, Inc.* v. *Kane Steel Co., Inc.,* 894 F.2d 1318, 1327 (Fed. Cir. 1990) ("[t]he discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim. That the discovery might uncover evidence showing that a plaintiff has a legitimate claim does not justify the discovery request."). This Interrogatory is thus premature, overly broad as to scope, disproportionate, and unduly burdensome and oppressive and harassing to the extent it seeks discovery concerning individuals other than the named Plaintiff when this matter has not been certified as a class action, no *prima facie* grounds for class certification exist, and individuals other than Plaintiff are not otherwise a party to or participants in this action. Discovery of the sought-after information should be phased and considered only following a ruling on class certification. Charter further objects to this Interrogatory on the grounds that it is unduly burdensome and oppressive and seeks information not relevant to the case and not proportional to the needs of the case, including that the burden or expense of the proposed discovery outweighs any putative benefit. Charter further objects to this Interrogatory on the ground that it seeks information the release of which would be a violation of any individual's right of privacy under Article I, section of the California Constitution, or Sections 1799.1 and 3344 of the California Civil Code, or any other constitutional, statutory or common law right of privacy of any person. Charter also objects that this interrogatory is premature because Plaintiff filed a Motion for Leave to File First Amended Complaint, which is pending before this Court and will not be heard until December 16, 2019. Charter intends to file a motion to strike class allegations and thus objects that Plaintiff's interrogatory is premature until the Court issues a decision on Charter's anticipated motion and Plaintiff's request for leave to amend his complaint.

    <u>Harper's Position</u>. All of Charter's objections are generic, boilerplate, and should be overruled. Charter has indicated that it may assert arbitration as a defense and/or in opposition to class certification. Harper is therefore entitled to discovery related to this potential defense and/or basis for opposing class certification. Charter cannot refuse Harper discovery that is necessary to evaluate and address Charter's defenses. *Urena*, 2019 WL 2390042, at *6–7; *Sansone*, 2019 WL 460728, at *6–9. While arbitration will not impact Harper's representative PAGA claims and many (perhaps most) of his class claims, he is

entitled to learn what putative class members have opted out of what version(s) of Charter's arbitration agreements. Ultimately, whether any putative class members' claims should be compelled to arbitration should be decided after class certification is decided (assuming class certification is granted in whole or in part). The Court should order Charter to produce the requested information by June 12, 2020 or stipulate that it will not assert arbitration as a defense or in opposition to class certification.

Charter's Position.

Charter agrees to provide the requested information as it relates to Account Executives at Charter's Redding, California location. As explained above, Plaintiff is not entitled to the identity of putative class members outside of Account Executives at Charter's Redding, California location. However, Charter agrees to provide the total number of putative class members who have opted out of an arbitration agreement.

**INTERROGATORY NO. 6:**

IDENTIFY each DIRECT SALES EMPLOYEE and COMMISSION EMPLOYEE who YOU contend has settled, released, or waived any of the claims being made in the operative complaint in this action.

This includes but is not limited to any individual, class, or collective settlement agreements, severance agreements, or similar agreements, releases, or waivers that YOU may have with DIRECT SALES EMPLOYEES and/or COMMISSION EMPLOYEES.

**RESPONSE TO INTERROGATORY NO. 6:**

Charter objects to Plaintiff's special definition of the terms "YOU" on the ground that it renders the Interrogatory compound, overly broad, vague and ambiguous, and unduly burdensome because it includes not only Charter but also its "affiliates, directors, officers, employees, representatives, and any other person or entity acting on Charter Communications, LLC's behalf." Charter further objects that Plaintiff's definitions of "DIRECT SALES EMPLOYEE" and "COMMISSION EMPLOYEE" are vague, ambiguous, overly broad, and unduly burdensome. Charter further objects to this Interrogatory on the ground that Plaintiff is attempting to conduct class discovery without making a *prima facie* showing that the requirements of Rule 23 are satisfied or that the discovery is likely to produce substantiation of the class allegations. *Mantolete v. Bolger,* 767 F.2d 1416, 1424 (9th Cir. 1985). Pre-

43

certification discovery is "not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it; the plaintiff must have some basis in fact for the action." *Thomas v. Cendant Mortgage,* No. 03-1672, 2005 WL 579903, at *3 (E.D. Pa. Mar. 11, 2005); *see also Micro Motion, Inc. v. Kane Steel Co., Inc.,* 894 F.2d 1318, 1327 (Fed. Cir. 1990)("[t]he discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim. That the discovery might uncover evidence showing that a plaintiff has a legitimate claim does not justify the discovery request."). This Interrogatory is thus premature, overly broad as to scope, disproportionate, and unduly burdensome and oppressive and harassing to the extent it seeks discovery concerning individuals other than the named Plaintiff when this matter has not been certified as a class action, no *prima facie* grounds for class certification exist, and individuals other than Plaintiff are not otherwise a party to or participants in this action. Discovery of the sought-after information should be phased and considered only following a ruling on class certification. Charter further objects to this Interrogatory on the grounds that it is unduly burdensome and oppressive and seeks information not relevant to the case and not proportional to the needs of the case, including that the burden or expense of the proposed discovery outweighs any putative benefit. Charter further objects to this Interrogatory on the ground that it seeks information the release of which would be a violation of any individual's right of privacy under Article I, section 1 of the California Constitution, or Sections 1799 .1 and 3344 of the California Civil Code, or any other constitutional, statutory or common law right of privacy of any person. Charter also objects that this interrogatory is premature because Plaintiff filed a Motion for Leave to File First Amended Complaint, which is pending before this Court and will not be heard until December 16, 2019. Charter intends to file a motion to strike class allegations and thus objects that Plaintiff's interrogatory is premature until the Court issues a decision on Charter's anticipated motion and Plaintiff's request for leave to amend his complaint.

Harper's Position. All of Charter's objections are generic, boilerplate, and should be overruled. Charter has indicated that it may assert settlement, severance, release, or waiver as defenses and/or in opposition to class certification. Harper is therefore entitled to discovery related to these potential defenses and/or bases for opposing class certification. Charter cannot refuse Harper discovery that is necessary to evaluate and address Charter's defenses. While settlement, severance, release, and waiver

44

may not impact Harper's representative PAGA claims, *see Kim v. Rein*s *Int'l Cal., Inc.*, 9 Cal. 5th 73, 80 (2020), and many (perhaps most) of his class claims, he is entitled to learn what putative class members may have settled, released, or waived the claims involved in this action. The Court should order Charter to produce the requested information by June 12, 2020 or stipulate that it will not assert settlement, severance, release, and/or waiver as a defense or in opposition to class certification.

       <u>Charter's Position</u>.

       Charter maintains its objections to this request. The requested information is vague and ambiguous. Charter further objects to this Request on the grounds that it is unduly burdensome and oppressive and seeks information not relevant to the case and not proportional to the needs of the case, including that the burden or expense of the proposed discovery outweighs any putative benefit. Charter further objects to this Request to the extent that it seeks information in which individuals have a legitimate expectation or right of privacy or confidentiality under California law, and any other constitutional, statutory, or common law right. Plaintiff offers no authority for his baseless assertion he is entitled to this information. He also has not explained how this information would in any way substantiate his class allegations. Charter maintains its objections and will not produce this information.

**INTERROGATORY NO.** 7:

       IDENTIFY each DIRECT SALES EMPLOYEE and COMMISSION EMPLOYEE who YOU contend agreed to and is bound by the Solution Channel.

**RESPONSE TO INTERROGATORY NO.** 7:

       Charter objects to Plaintiff's special definition of the terms "YOU" on the ground that it renders the Interrogatory compound, overly broad, vague and ambiguous, and unduly burdensome because it includes not only Charter but also its "affiliates, directors, officers, employees, representatives, and any other person or entity acting on Charter Communications, LLC's behalf." Charter further objects that Plaintiff's definitions of "DIRECT SALES EMPLOYEE" and "COMMISSION EMPLOYEE" are vague, ambiguous, overly broad, an unduly burdensome. Charter further objects to this Interrogatory on the ground that Plaintiff is attempting to conduct class discovery without making a *prima facie* showing that the requirements of Rule 23 are satisfied or that the discovery is likely to produce substantiation of the class allegations. *Mantolete v. Bolger,* 767 F .2d 1416, 1424 (9th Cir. 1985). Pre-certification

discovery is "not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it; the plaintiff must have some basis in fact for the action." *Thomas v. Cendant Mortgage,* No. 03-1672, 2005 WL 579903, at *3 (E.D. Pa. Mar. 11, 2005); *see also Micro Motion, Inc. v. Kane Steel Co., Inc.,* 894 F.2d 1318, 1327 (Fed. Cir. 1990)("[t]he discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim. That the discovery might uncover evidence showing that a plaintiff has a legitimate claim does not justify the discovery request."). This Interrogatory is thus premature, overly broad as to scope, disproportionate, and unduly burdensome and oppressive and harassing to the extent it seeks discovery concerning individuals other than the named Plaintiff when this matter has not been certified as a class action, no *prima facie* grounds for class certification exist, and individuals other than Plaintiff are not otherwise a party to or participants in this action. Discovery of the sought-after information should be phased and considered only following a ruling on class certification. Charter further objects to this Interrogatory on the grounds that it is unduly burdensome and oppressive and seeks information not relevant to the case and not proportional to the needs of the case, including that the burden or expense of the proposed discovery outweighs any putative benefit. Charter further objects to this Interrogatory on the ground that it seeks information the release of which would be a violation of any individual's right of privacy under Article I, section 1 of the California Constitution, or Sections 1799.1 and 3344 of the California Civil Code, or any other constitutional, statutory or common law right of privacy of any person. Charter also objects that this interrogatory is premature because Plaintiff filed a Motion for Leave to File First Amended Complaint, which is pending before this Court and will not be heard until December 16, 2019. Charter intends to file a motion to strike class allegations and thus objects that Plaintiff's interrogatory is premature until the Court issues a decision on Charter's anticipated motion and Plaintiff's request for leave to amend his complaint.

    **Harper's Position**. All of Charter's objections are generic, boilerplate, and should be overruled. The "Solution Channel" is a program related to arbitration. Charter has indicated that it may assert arbitration as a defense and/or in opposition to class certification. Harper is therefore entitled to discovery related to this potential defense and/or basis for opposing class certification. Charter cannot refuse Harper discovery that is necessary to evaluate and address Charter's defenses. *Urena*, 2019 WL 2390042, at *6–

7; *Sansone*, 2019 WL 460728, at *6–9. While arbitration will not impact Harper's representative PAGA claims and many (perhaps most) of his class claims, he is entitled to learn what putative class members Charter contends are covered by the Solution Channel. Ultimately, whether any putative class members' claims should be compelled to arbitration should be decided after class certification is decided (assuming class certification is granted in whole or in part). The Court should order Charter to produce the requested information by June 12, 2020 or stipulate that it will not assert arbitration as a defense or in opposition to class certification.

Charter's Position.

Charter agrees to provide the requested information as it relates to Account Executives at Charter's Redding, California location. As explained above, Plaintiff is not entitled to the identity of putative class members outside of Account Executives at Charter's Redding, California location. However, Charter agrees to provide the total number of putative class members who are bound to arbitrate their claims under Solution Channel.

**REQUEST FOR PRODUCTION NO. 7:**

Each version of a sales compensation or commission agreement, plans, and schedule that YOU use or have used for calculating and paying commission, bonus, or other incentive compensation wages to COMMISSION EMPLOYEES.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Charter incorporates in full herein its General Objections. Charter objects that Plaintiff's definition of "COMMISSION EMPLOYEES" is vague, ambiguous, overly broad, and unduly burdensome. This Request fails to state with reasonable particularity the documents sought. Charter objects that this Request assumes facts not in evidence. Charter further objects to this Request on the grounds that it is unduly burdensome and oppressive and seeks information not relevant to the case and not proportional to the needs of the case, including that the burden or expense of the proposed discovery outweighs any putative benefit. Charter further objects to this Request to the extent it seeks documents and/or information that are protected by the attorney client and/or attorney work product privileges. Charter further objects to this Request on the grounds it is premature, overly broad as to scope, disproportionate to the needs of the case under the Federal Rules, and unduly burdensome, oppressive

1   and harassing to the extent it seeks discovery concerning individuals other than the named Plaintiff when

2   this matter has not been certified as a class action, no *prima facie* grounds for class certification exist,

3   and individuals other than Plaintiff are not otherwise a party to, or participants in, this action. Discovery

4   of the sought-after information should be phased and considered only following a ruling on class

5   certification. Charter also objects that this Request is premature because Plaintiff filed a Motion for Leave

6   to File First Amended Complaint, which is pending before this Court and will not be heard until

7   December 16, 2019. Charter intends to file a motion to strike class allegations and thus objects that

8   Plaintiff's Request is premature until the Court issues a decision on Charter's anticipated motion and

9   Plaintiff's request for leave to amend his Complaint.

10          Subject to, and without waiving, the foregoing objections, Charter responds as follows:

11   Charter agrees to produce the written compensation and commission policy that applied to Plaintiff

12   during his employment subject to a protective order. Charter agrees to produce these documents within

13   5 days after the Court signs the parties' protective order.

14          Harper's Position. All of Charter's objections are generic, boilerplate, and should be overruled.

15   Charter's production of the version of the Commission Plan that applied to Harper (without a signed

16   copy or a signed receipt) does not relieve it of the obligation to produce other versions that applied to

17   other COMMISSION EMPLOYEES. Harper is entitled to learn (1) how many versions Charter used, (2)

18   the similarity of the calculation and payment terms between versions, and (3) whether Charter also failed

19   to give signed copies and give signed receipts from other class members. If the versions are materially

20   similar in relevant ways, and/or if Charter also failed to give signed copies and get signed receipts from

21   other class members, then this discovery will help Plaintiffs' obtain class certification and prove

22   statewide liability. Charter is not entitled to withhold these relevant discovery and then argue that

23   Plaintiffs failed to meet their burdens of proof. Charter should be ordered to produce by June 12, 2020

24   all versions of its Commission Plan that existed from November 19, 2014 to the present and any *signed*

25   copies and *signed* receipts that exist (or a 20% sampling so the parties and the Court can determine what

26   percentage of employees actually got signed copies and gave signed receipts).

27   ///

28   ///

1   <u>Charter's Position</u>.

2        Charter has already produced the commission plan applicable to Account Executives, the position

3   held by Plaintiff. Plaintiff's claims regarding commissions are specific to Plaintiff. He has not offered

4   any evidence, or even allegations, of class-wide policies, practices or treatment. Specifically, he claims

5   Charter did not give him a signed copy of his commission agreement, did not obtain a signed receipt of

6   his agreements, failed to properly calculate his commissions, and failed to timely pay his commissions.

7   Based on these narrow, individualized allegations, Harper asks this Court to infer that all other

8   commission-eligible employees in California, no matter their position or location, were similarly treated.

9   But *Plaintiff cannot even identify which positions are in his proposed classes*. Essentially, Plaintiff seeks

10  class-wide discovery to determine whether his entirely speculative inferences can be substantiated. That

11  is the definition of a fishing expedition. Before filing a class action, or really any lawsuit, a plaintiff is

12  required to at least do some pre-litigation diligence. "The discovery rules are designed to assist a party

13  to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis

14  for a claim. That the discovery might uncover evidence showing that a plaintiff has a legitimate claim

15  does not justify the discovery request." *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1327

16  (Fed. Cir. 1990); *Williams v. Veolia Trans. Servs., Inc.*, 2008 WL 7389430, at *2 (C.D. Cal. 2008) (A

17  plaintiff's mere "speculative inference" of class-wide violations "is not sufficient to show that discovery

18  as to all [putative class members]" is warranted).

19        Where, as here, the plaintiff has not presented any evidence, or even factual allegations, of class-

20  wide policies, practices or treatment, even if some pre-certification discovery is allowed, courts have

21  routinely limited class discovery to the plaintiff's location and position. *See, e.g., Salgado v. O'Lakes*,

22  2014 WL 7272784, at *5 (E.D. Cal. 2014) (denying state-wide discovery in wage and hour suit where,

23  "Plaintiff present[ed] no evidence to support his assumptions about other [employer] facilities," and

24  finding, "[n]umerous district courts have concluded that plaintiffs were not entitled to discovery from

25  locations where they never worked absent some evidence to indicate company-wide violations."); 

26  *Nguyen v. Baxter Healthcare Corp.*, 275 F.R.D. 503, 507-08 (C.D. Cal. 2011) (limiting discovery to

27  plaintiff's position and location "[b]ecause Plaintiff has failed to produce any evidence of company-wide

28  violations" and the plaintiff "has produced no declarations or testimony or documents that would warrant

expanding her discovery beyond" the facility where he worked); *Coleman v. Jenny Craig, Inc.*, 2013 WL 2896884, at *8 (S.D. Cal. 2013) (rejecting broader scope of discovery where alleged company-wide violations were based solely on plaintiff's testimony, which the court concluded was "an assumption the Court finds insufficient to justify expanding discovery beyond Plaintiff's market."); *Martinet*, WL 2557490 at *2 (limiting discovery to the office where plaintiff worked until such time that plaintiff can show evidence of company-wide violations – also limiting time period due to named plaintiff's "relevantly short period of employment."); *Franco v. Bank of America*, 2009 WL 8729265, at *4 (S.D. Cal. 2009) (limiting discovery to the offices where the plaintiff worked and had evidence of violations because he had "not provided sufficient facts to support his claim of a company-wide policy and practice...")*; Silva v. Avalonbay Communities, Inc.*, 2015 WL 11438549, at *2-3 (C.D. Cal. 2015) (denying class-wide discovery in wage and hour suit where plaintiff presented "no evidence, through declaration, interrogatory response or otherwise, that any other employee experienced the same treatment as he alleges he suffered, or that others were subjected to the same unlawful practices."). Charter has already produced the commission plan applicable to Account Executives. At this pre-certification stage, Charter is not required to produce anything more.

**REQUEST FOR PRODUCTION NO. 8:**

Each DOCUMENT that sets forth or describes YOUR policies and practices related to YOUR classification of DIRECT SALES EMPLOYEES.

This request includes but is not limited to records showing who, what, when, where, and why YOU classify DIRECT SALES EMPLOYEES as exempt, non-exempt, hourly, salaried, "outside salesperson," "inside salesperson," "commissioned salesperson," and any similar employment classifications YOU use or have used for DIRECT SALES EMPLOYEES.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Charter incorporates in full herein its General Objections. Charter objects that the term "classification" is vague, ambiguous, and overbroad. Charter further objects to this Request to the extent it calls for a legal conclusion and speculation. Charter objects that Plaintiff's definition of "DIRECT SALES EMPLOYMENTS" is vague, ambiguous, overly broad, and unduly burdensome. This Request fails to state with reasonable particularity the documents sought. Charter objects that this Request

50

JOINT STATEMENT OF DISCOVERY DISAGREEMENT CONCERNING PLAINTIFF HARPER'S MOTION TO COMPEL
FURTHER DISCOVERY RESPONSES AND PRODUCTION OF DOCUMENTS AND ESI

1  assumes facts not in evidence. Charter further objects to this Request on the grounds that it is unduly

2  burdensome and oppressive and seeks information not relevant to the case and not proportional to the

3  needs of the case, including that the burden or expense of the proposed discovery outweighs any putative

4  benefit. Charter further objects to this Request to the extent it seeks documents and/or information that

5  are protected by the attorney client and/or attorney work product privileges. Charter further objects to

6  this Request to the extent that it seeks information in which individuals have a legitimate expectation or

7  right of privacy or confidentiality under California law, and any other constitutional, statutory, or

8  common law right. Charter further objects to this Request to the extent that it seeks individualized

9  information about purported class members on the ground that individualized discovery regarding

10  putative class members is an abuse of the class action procedure, premature, and unduly burdensome and

11  oppressive. Charter further objects to this Request on the grounds it is premature, overly broad as to

12  scope, disproportionate to the needs of the case under the Federal Rules, and unduly burdensome,

13  oppressive and harassing to the extent it seeks discovery concerning individuals other than the named

14  Plaintiff when this matter has not been certified as a class action, no *prima facie* grounds for class

15  certification exist, and individuals other than Plaintiff are not otherwise a party to, or participants in, this

16  action. Discovery of the sought-after information should be phased and considered only following a

17  ruling on class certification. Charter also objects that this Request is premature because Plaintiff filed a

18  Motion for Leave to File First Amended Complaint, which is pending before this Court and will not be

19  heard until December 16, 2019. Charter intends to file a motion to strike class allegations and thus objects

20  that Plaintiff's Request is premature until the Court issues a decision on Charter's anticipated motion and

21  Plaintiff's request for leave to amend his complaint.

22      Harper's Position. All of Charter's objections are generic, boilerplate, and should be overruled.

23  Harper is simply seeking any written policies Charter followed from November 19, 2014 to the present

24  concerning how, why, and when it classified its DIRECT SALES EMPLOYEES. If the other records

25  Charter produces are the only responsive records (e.g., offer letters, time details, employee handbooks,

26  timekeeping policies), then there would be no additional records to produce. Charter should be ordered

27  to produce by June 12, 2020 any responsive records that exist and have not already been produced.

28  ///

1    <u>Charter's Position</u>.

2    Charter agrees to provide a supplemental response to this request. Thus, Plaintiff's motion is moot

3    as to this request.

4    **REQUEST FOR PRODUCTION NO. 9:**

5    Each DOCUMENT that sets forth or describes YOUR policies and practices related to calculating

6    and paying wages for DIRECT SALES EMPLOYEES and COMMISSION EMPLOYEES.

7    This includes but is not limited to policies related to YOU calculating and paying salary, hourly,

8    bonus, commission, and piece rate wages. This does not include actual time sheets, wage statements, or

9    incentive compensation/commission statements, which records are requested specifically below.

10   **RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

11   Charter incorporates in full herein its General Objections. Charter objects that Plaintiff's

12   definitions of "DIRECT SALES EMPLOYEES" and "COMMISSION EMPLOYEES" are vague,

13   ambiguous, overly broad, and unduly burdensome. This Request fails to state with reasonable

14   particularity the documents sought. Charter objects that this Request assumes facts not in evidence.

15   Charter further objects to this Request on the grounds that it is unduly burdensome and oppressive and

16   seeks information not relevant to the case and not proportional to the needs of the case, including that

17   the burden or expense of the proposed discovery outweighs any putative benefit. Charter further objects

18   to this Request to the extent it seeks documents and/or information that are protected by the attorney-

19   client and/or attorney work product privileges. Charter further objects to this Request to the extent that

20   it seeks information in which individuals have a legitimate expectation or right of privacy or

21   confidentiality under California law, and any other constitutional, statutory, or common law right.

22   Charter further objects to this Request to the extent that it seeks individualized information about

23   purported class members on the ground that individualized discovery regarding putative class members

24   is an abuse of the class action procedure, premature, and unduly burdensome and oppressive. Charter

25   further objects to this Request on the grounds it is premature, overly broad as to scope, disproportionate

26   to the needs of the case under the Federal Rules, and unduly burdensome, oppressive and harassing to

27   the extent it seeks discovery concerning individuals other than the named Plaintiff when this matter has

28   not been certified as a class action, no *prima facie* grounds for class certification exist, and individuals

other than Plaintiff are not otherwise a party to, or participants in, this action. Discovery of the sought-after information should be phased and considered only following a ruling on class certification. Charter also objects that this Request is premature because Plaintiff filed a Motion for Leave to File First Amended Complaint, which is pending before this Court and will not be heard until December 16, 2019. Charter intends to file a motion to strike class allegations and thus objects that Plaintiff's Request is premature until the Court issues a decision on Charter's anticipated motion and Plaintiff's request for leave to amend his complaint.

Subject to, and without waiving, the foregoing objections, Charter responds as follows:

With this Response, Charter agrees to produce the written compensation and commission policy that applied to Plaintiff during his employment subject to a protective order. Charter agrees to produce these documents within 5 days after the Court signs the parties' protective order.

Harper's Position. All of Charter's objections are generic, boilerplate, and should be overruled. Harper is simply seeking any written policies Charter followed from November 19, 2014 to the present concerning how it calculated and paid wages to DIRECT SALES EMPLOYEES and COMMISSION EMPLOYEES. If the other records Charter produces are the only responsive records (e.g., offer letters, employee handbooks, wage statements, commission statements, commission plans and schedules), then there would be no additional records to produce. Charter should be ordered to produce by June 12, 2020 any responsive records that exist and have not already been produced.

Charter's Position.

To the extent this request is limited to formal written policies about paying wages to outside salespersons and commission-eligible employees, Charter agrees to provide a supplemental response to this request. Thus, Plaintiff's motion is moot as to this request.

**REQUEST FOR PRODUCTION NO. 10:**

Each DOCUMENT that sets forth or describes YOUR policies or practices related to providing meal periods to DIRECT SALES EMPLOYEES.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Charter incorporates in full herein its General Objections. Charter objects that Plaintiff's definition of "DIRECT SALES EMPLOYEES" is vague, ambiguous, overly broad, and unduly

burdensome. Charter objects that this Request assumes facts not in evidence. Charter further objects to this Request on the grounds that it is unduly burdensome and oppressive and seeks information not relevant to the case and not proportional to the needs of the case, including that the burden or expense of the proposed discovery outweighs any putative benefit. Charter further objects to this Request to the extent it seeks documents and/or information that are protected by the attorney-client and/or attorney work product privileges. Charter further objects to this Request to the extent that it seeks information in which individuals have a legitimate expectation or right of privacy or confidentiality under California law, and any other constitutional, statutory, or common law right. Charter further objects to this Request to the extent that it seeks individualized information about purported class members on the ground that individualized discovery regarding putative class members is an abuse of the class action procedure, premature, and unduly burdensome and oppressive. Charter further objects to this Request on the grounds it is premature, overly broad as to scope, disproportionate to the needs of the case under the Federal Rules, and unduly burdensome, oppressive and harassing to the extent it seeks discovery concerning individuals other than the named Plaintiff when this matter has not been certified as a class action, no *prima facie* grounds for class certification exist, and individuals other than Plaintiff are not otherwise a party to, or participants in, this action. Discovery of the sought-after information should be phased and considered only following a ruling on class certification. Charter also objects that this Request is premature because Plaintiff filed a Motion for Leave to File First Amended Complaint, which is pending before this Court and will not be heard until December 16, 2019. Charter intends to file a motion to strike class allegations and thus objects that Plaintiff's Request is premature until the Court issues a decision on Charter's anticipated motion and Plaintiff's request for leave to amend his complaint.

Harper's Position. All of Charter's objections are generic, boilerplate, and should be overruled. Harper is simply seeking any written policies Charter followed from November 19, 2014 to the present concerning whether, when, and how it provided designated meal periods to DIRECT SALES EMPLOYEES. If the other records Charter produces are the only responsive records (e.g., employee handbooks, timekeeping policies), then there would be no additional records to produce. Charter should be ordered to produce by June 12, 2020 any responsive records that exist and have not already been produced.

1    Charter's Position.

2          Charter agrees to provide a supplemental response to this request. Thus, Plaintiff's motion is moot

3    as to this request.

4    **REQUEST FOR PRODUCTION NO. 11:**

5          Each DOCUMENT showing a meal period that YOU provided to, that was taken by, or that was

6    waived by a DIRECT SALES EMPLOYEE.

7    **RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

8          Charter incorporates in full herein its General Objections. Charter objects that Plaintiff's

9    definition of "DIRECT SALES EMPLOYEES" is vague, ambiguous, overly broad, and unduly

10   burdensome. This Request fails to state with reasonable particularity the documents sought. Charter

11   objects that this Request assumes facts not in evidence. Charter further objects to this Request on the

12   grounds that it is unduly burdensome and oppressive and seeks information not relevant to the case and

13   not proportional to the needs of the case, including that the burden or expense of the proposed discovery

14   outweighs any putative benefit. Charter further objects to this Request to the extent it seeks documents

15   and/or information that are protected by the attorney-client and/or attorney work product privileges.

16   Charter further objects to this Request to the extent that it seeks information in which individuals have a

17   legitimate expectation or right of privacy or confidentiality under California law, and any other

18   constitutional, statutory, or common law right. Charter further objects to this Request to the extent that

19   it seeks individualized information about purported class members on the ground that individualized

20   discovery regarding putative class members is an abuse of the class action procedure, premature, and

21   unduly burdensome and oppressive. Charter further objects to this Request on the grounds it is premature,

22   overly broad as to scope, disproportionate to the needs of the case under the Federal Rules, and unduly

23   burdensome, oppressive and harassing to the extent it seeks discovery concerning individuals other than

24   the named Plaintiff when this matter has not been certified as a class action, no *prima facie* grounds for

25   class certification exist, and individuals other than Plaintiff are not otherwise a party to, or participants

26   in, this action. Discovery of the sought-after information should be phased and considered only following

27   a ruling on class certification. Charter also objects that this Request is premature because Plaintiff filed

28   a Motion for Leave to File First Amended Complaint, which is pending before this Court and will not be

heard until December 16, 2019. Charter intends to file a motion to strike class allegations and thus objects that Plaintiff's Request is premature until the Court issues a decision on Charter's anticipated motion and Plaintiff's request for leave to amend his complaint.

  <u>Harper's Position</u>. All of Charter's objections are generic, boilerplate, and should be overruled. Harper does not expect there to be any responsive records because Charter classified all DIRECT SALES EMPLOYEES as exempt for their entire employment, including during their training weeks when they did not spend a majority of their working hours performing "outside sales." But Charter refuses to confirm that there are no responsive records and refuses to confirm that it never provided designated meal periods to "exempt" employees or kept track of any meal periods taken or waived by DIRECT SALES EMPLOYEES, either during or after their training weeks. Charter should be ordered to produce by June 12, 2020 any responsive records or to confirm that no responsive records exist.

  <u>Charter's Position</u>.

  Charter agrees to provide a supplemental response to this request. Thus, Plaintiff's motion is moot as to this request.

**REQUEST FOR PRODUCTION NO. 12:**

  Each DOCUMENT that sets forth or describes YOUR policies and practices related to providing rest breaks to DIRECT SALES EMPLOYEES.

  This request includes but is not limited to providing standard rest breaks and cool-down rest breaks.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

  Charter incorporates in full herein its General Objections. Charter objects that Plaintiff's definition of "DIRECT SALES EMPLOYEES" is vague, ambiguous, overly broad, and unduly burdensome. This Request fails to state with reasonable particularity the documents sought. Charter objects that this Request assumes facts not in evidence. Charter further objects to this Request on the grounds that it is unduly burdensome and oppressive and seeks information not relevant to the case and not proportional to the needs of the case, including that the burden or expense of the proposed discovery outweighs any putative benefit. Charter further objects to this Request to the extent it seeks documents and/or information that are protected by the attorney client and/or attorney work product privileges.

Charter further objects to this Request to the extent that it seeks information in which individuals have a legitimate expectation or right of privacy or confidentiality under California law, and any other constitutional, statutory, or common law right. Charter further objects to this Request to the extent that it seeks individualized information about purported class members on the ground that individualized discovery regarding putative class members is an abuse of the class action procedure, premature, and unduly burdensome and oppressive. Charter further objects to this Request on the grounds it is premature, overly broad as to scope, disproportionate to the needs of the case under the Federal Rules, and unduly burdensome, oppressive and harassing to the extent it seeks discovery concerning individuals other than the named Plaintiff when this matter has not been certified as a class action, no *prima facie* grounds for class certification exist, and individuals other than Plaintiff are not otherwise a party to, or participants in, this action. Discovery of the sought-after information should be phased and considered only following a ruling on class certification. Charter also objects that this Request is premature because Plaintiff filed a Motion for Leave to File First Amended Complaint, which is pending before this Court and will not be heard until December 16, 2019. Charter intends to file a motion to strike class allegations and thus objects that Plaintiff's Request is premature until the Court issues a decision on Charter's anticipated motion and Plaintiff's request for leave to amend his complaint.

　　　　Harper's Position. All of Charter's objections are generic, boilerplate, and should be overruled. Harper is simply seeking any written policies Charter followed from November 19, 2014 to the present concerning whether, when, and how it provided designated rest breaks to DIRECT SALES EMPLOYEES. If the other records Charter produces are the only responsive records (e.g., employee handbooks, timekeeping policies), then there would be no additional records to produce. Charter should be ordered to produce by June 12, 2020 any responsive records that exist and have not already been produced.

　　　　Charter's Position.

　　　　Charter agrees to provide a supplemental response to this request. Thus, Plaintiff's motion is moot as to this request.

///

///

**REQUEST FOR PRODUCTION NO. 13:**

Each DOCUMENT showing a rest break that YOU provided to, that was taken by, or that was waived by a DIRECT SALES EMPLOYEE.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Charter incorporates in full herein its General Objections. Charter objects that Plaintiff's definition of "DIRECT SALES EMPLOYEES" is vague, ambiguous, overly broad, and unduly burdensome. Charter objects that this Request assumes facts not in evidence. Charter further objects to this Request on the grounds that it is unduly burdensome and oppressive and seeks information not relevant to the case and not proportional to the needs of the case, including that the burden or expense of the proposed discovery outweighs any putative benefit. Charter further objects to this Request to the extent that it seeks individualized information about purported class members on the ground that individualized discovery regarding putative class members is an abuse of the class action procedure, premature, and unduly burdensome and oppressive. Charter further objects to this Request to the extent that it seeks information in which individuals have a legitimate expectation or right of privacy or confidentiality under California law, and any other constitutional, statutory, or common law right. Charter further objects to this Request to the extent it seeks documents and/or information that are protected by the attorney-client and/or attorney work product privileges. Charter further objects to this Request on the grounds it is premature, overly broad as to scope, disproportionate to the needs of the case under the Federal Rules, and unduly burdensome, oppressive and harassing to the extent it seeks discovery concerning individuals other than the named Plaintiff when this matter has not been certified as a class action, no *prima facie* grounds for class certification exist, and individuals other than Plaintiff are not otherwise a party to, or participants in, this action. Discovery of the sought-after information should be phased and considered only following a ruling on class certification. Charter also objects that this Request is premature because Plaintiff filed a Motion for Leave to File First Amended Complaint, which is pending before this Court and will not be heard until December 16, 2019. Charter intends to file a motion to strike class allegations and thus objects that Plaintiff's Request is premature until the Court issues a decision on Charter's anticipated motion and Plaintiff's request for leave to amend his complaint.

1    <u>Harper's Position</u>. All of Charter's objections are generic, boilerplate, and should be overruled.

2    Harper does not expect there to be any responsive records because Charter classified all DIRECT SALES

3    EMPLOYEES as exempt for their entire employment, including during their training weeks when they

4    did not spend a majority of their working hours performing "outside sales." But Charter refuses to

5    confirm that there are no responsive records and refuses to confirm that it never provided designated rest

6    breaks to "exempt" employees or kept track of any rest breaks taken or waived by DIRECT SALES

7    EMPLOYEES, either during or after their training weeks. Charter should be ordered to produce by June

8    12, 2020 any responsive records or to confirm that no responsive records exist.

9         <u>Charter's Position</u>.

10        Charter agrees to provide a supplemental response to this request. Thus, Plaintiff's motion is moot

11   as to this request.

12   **REQUEST FOR PRODUCTION NO. 14:**

13        Each DOCUMENT that sets forth or describes YOUR policies and practices related to preparing

14   and issuing wage statements, pay stubs, commission statements, and similar documents for DIRECT

15   SALES EMPLOYEES and COMMISSION EMPLOYEES.

16        This request includes but is not limited to records showing when and how YOU review the

17   underlying time or sales records, how such documents are prepared and issued, and whether and how

18   any modifications or revisions are made to such documents.

19   **RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

20        Charter incorporates in full herein its General Objections. Charter objects that the term "similar

21   documents" is vague, ambiguous, and overbroad. Charter further objects that Plaintiff's definitions of

22   "DIRECT SALES EMPLOYEES" and "COMMISSION EMPLOYEES" are vague, ambiguous, overly

23   broad, and unduly burdensome. This Request fails to state with reasonable particularity the documents

24   sought. Charter further objects to this Request on the grounds that it is unduly burdensome and oppressive

25   and seeks information not relevant to the case and not proportional to the needs of the case, including

26   that the burden or expense of the proposed discovery outweighs any putative benefit. Charter further

27   objects to this Request to the extent it seeks documents and/or information that are protected by the

28   attorney-client and/or attorney work product privileges. Charter further objects to this Request to the

extent that it seeks information in which individuals have a legitimate expectation or right of privacy or confidentiality under California law, and any other constitutional, statutory, or common law right. Charter further objects to this Request to the extent that it seeks individualized information about purported class members on the ground that individualized discovery regarding putative class members is an abuse of the class action procedure, premature, and unduly burdensome and oppressive. Charter further objects to this Request on the grounds it is premature, overly broad as to scope, disproportionate to the needs of the case under the Federal Rules, and unduly burdensome, oppressive and harassing to the extent it seeks discovery concerning individuals other than the named Plaintiff when this matter has not been certified as a class action, no *prima facie* grounds for class certification exist, and individuals other than Plaintiff are not otherwise a party to, or participants in, this action. Discovery of the sought-after information should be phased and considered only following a ruling on class certification. Charter also objects that this Request is premature because Plaintiff filed a Motion for Leave to File First Amended Complaint, which is pending before this Court and will not be heard until December 16, 2019. Charter intends to file a motion to strike class allegations and thus objects that Plaintiff's Request is premature until the Court issues a decision on Charter's anticipated motion and Plaintiff's request for leave to amend his complaint.

Subject to, and without waiving, the foregoing objections, Charter responds as follows:

With this Response, Charter is producing wage statements it issued to Plaintiff.

<u>Harper's Position</u>. All of Charter's objections are generic, boilerplate, and should be overruled. Harper is simply seeking any written policies Charter followed from November 19, 2014 to the present concerning how it prepared and issued wage statements and commission statements. If Charter followed any written policies, those policies should be produced if they applied to DIRECT SALES EMPLOYEES or COMMISSION EMPLOYEES. Charter should be ordered to produce by June 12, 2020 any responsive records or to confirm that no responsive records exist.

<u>Charter's Position</u>.

To the extent this request is limited to formal written policies about preparing and issuing wage statements, pay stubs, and/or commission statements to outside salespersons and commission-eligible

employees, Charter agrees to provide a supplemental response to this request. Thus, Plaintiff's motion is moot as to this request.

**REQUEST FOR PRODUCTION NO. 15:**

Each wage statement that YOU provided to DIRECT SALES EMPLOYEES and COMMISSION EMPLOYEES.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Charter incorporates in full herein its General Objections. Charter objects that Plaintiff's definitions of "DIRECT SALES EMPLOYEES" and "COMMISSION EMPLOYEES" are vague, ambiguous, overly broad, and unduly burdensome. Charter further objects to this Request on the grounds that it is unduly burdensome and oppressive and seeks information not relevant to the case and not proportional to the needs of the case, including that the burden or expense of the proposed discovery outweighs any putative benefit. Charter further objects to this Request to the extent that it seeks individualized information about purported class members on the ground that individualized discovery regarding putative class members is an abuse of the class action procedure, premature, and unduly burdensome and oppressive. Charter further objects to this Request to the extent that it seeks information in which individuals have a legitimate expectation or right of privacy or confidentiality under California law, and any other constitutional, statutory, or common law right. Charter further objects to this Request on the grounds it is premature, overly broad as to scope, disproportionate to the needs of the case under the Federal Rules, and unduly burdensome, oppressive and harassing to the extent it seeks discovery concerning individuals other than the named Plaintiff when this matter has not been certified as a class action, no *prima facie* grounds for class certification exist, and individuals other than Plaintiff are not otherwise a party to, or participants in, this action. Discovery of the sought-after information should be phased and considered only following a ruling on class certification. Charter also objects that this Request is premature because Plaintiff filed a Motion for Leave to File First Amended Complaint, which is pending before this Court and will not be heard until December 16, 2019. Charter intends to file a motion to strike class allegations and thus objects that Plaintiff's Request is premature until the Court issues a decision on Charter's anticipated motion and Plaintiff's request for leave to amend his complaint.

Subject to, and without waiving, the foregoing objections, Charter responds as follows:

61

1    With this Response, Charter is producing wage statements it issued to Plaintiff.

2    <u>Harper's Position</u>. All of Charter's objections are generic, boilerplate, and should be overruled.

3   Production of wage statements for class members and aggrieved employees. "*This type of evidence is*

4   *routinely held discoverable in wage and hour litigation.*" *Romo v. GMRI, Inc.*, 2013 WL 11310656, at

5   *5 (C.D. Cal. Jan. 25, 2013) (emphasis in original) (ordering production of wage statements and time

6   sheets for 20% of the "dozens" of locations statewide covering around 4,000 employees); *Arredondo*,

7   2019 WL 6128657, at *2 (ordering production of all time, schedule, break, wage, and payroll records for

8   over 1,100 employees, subject to an opt-out procedure); *Brum*, 2018 WL 3861558, at *6 (observing that

9   a "small sample will substantially hinder [plaintiffs'] ability to demonstrate commonality and typicality

10   among the putative class members" and ordering at 10% sampling of wage statements and 30% sampling

11   of time and payroll records); *Talavera v. Sun Maid Growers of Cal.*, 2017 WL 495635, at *4 (E.D. Cal.

12   Feb. 6, 2017) (ordering 10% sampling for time, punch, and pay records); *Adalpa v. Fowler Packing Co.*,

13   310 F.R.D. 583, 590 (E.D. Cal. 2015) (ordering 25% sampling of time and pay records, subject to an opt-

14   out procedure); *Quintana v. Claire's Boutiques, Inc.*, 2014 WL 234219, at *2 (N.D. Cal. Jan. 21, 2014)

15   (ordering 20% sampling for time and payroll records, provided the defendant "does not challenge the

16   representative nature of that sample"); *Hill v. Eddie Bauer*, 242 F.R.D. 556, 564–66 (C.D. Cal. 2007)

17   (observing that a sampling should be "statistically significant" and ordering sampling of time and wage

18   records for every employee at eight stores for every fourth month during the class period). The wage

19   statements will confirm that Charter treated its DIRECT SALES EMPLOYEES the same with respect to

20   calculating and paying wages, failing to keep track of hours worked, failing to pay premium wages,

21   failing to itemize all required information, and calculating and timing commissions. The wage statements

22   will also confirm that Charter treated its COMMISSION EMPLOYEES the same with respect to

23   calculating and timing commissions. The wage statements will also enable Plaintiffs to assess the number

24   of violations that occurred, the number of pay periods, and the proper assessment of damages and

25   penalties. Charter maintains wage statements in electronic form and can easily identify, collect, and

26   produce them without undue burden or delay. Charter should be ordered to produce by June 12, 2020 a

27   random 20% sampling of wage statements for all DIRECT SALES EMPLOYEES and COMMISSION

28   EMPLOYEES.

1    _Charter's Position_.

2        Charter has already produced Plaintiff's wage statements. Charter is required to produce nothing

3    more. Plaintiff has not offered any evidence, or even allegations, of class-wide policies, practices or

4    treatment. Yet, based on his narrow, individualized allegations, Harper asks this Court to infer that all

5    other outside salespersons and commission-eligible employees in California, no matter their position or

6    location, were similarly treated. But _Plaintiff cannot even identify which positions are in his proposed_

7    _classes_. Essentially, Plaintiff seeks class-wide discovery to determine whether his entirely speculative

8    inferences can be substantiated. That is the definition of a fishing expedition. Before filing a class action,

9    or really any lawsuit, a plaintiff is required to at least do some pre-litigation diligence. "The discovery

10   rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery,

11   not to find out if it has any basis for a claim. That the discovery might uncover evidence showing that a

12   plaintiff has a legitimate claim does not justify the discovery request." _Micro Motion, Inc. v. Kane Steel_

13   _Co., Inc._, 894 F.2d 1318, 1327 (Fed. Cir. 1990); _Williams v. Veolia Trans. Servs., Inc._, 2008 WL

14   7389430, at *2 (C.D. Cal. 2008) (A plaintiff's mere "speculative inference" of class-wide violations "is

15   not sufficient to show that discovery as to all [putative class members]" is warranted).

16       Additionally, requests for payroll data, including wage statements, implicate significant privacy

17   interests that third-party employees have in their compensation and wage information. _Nguyen_, 275

18   F.R.D. at 512–13 ("Pay check stubs contain more confidential and sensitive information than simply time

19   records or contact information"). In _Nguyen_, the court denied the plaintiff's request for payroll records

20   because they contained "confidential and sensitive information" which outweighed "Plaintiff's need for

21   the information." 275 F.R.D. at 513-14; _see also_, _Coleman_, 2013 WL 2896884 at *11. The Court should

22   do the same here.

23       Plaintiff's only justification for production of wage statements for other putative class members

24   is grossly misguided. Plaintiff claims, "[t]he wage statements will confirm that Charter treated its

25   DIRECT SALES EMPLOYEES the same with respect to calculating and paying wages, failing to keep

26   track of hours worked, failing to pay premium wages, failing to itemize all required information, and

27   calculating and timing commissions." That may be relevant in a wage and hour case involving non-

28   exempt employees. But treating other categories of employees "the same" is not a justification for the

class discovery Plaintiff seeks in this case. Plaintiff seems to forget this is primarily a misclassification case. Thus, Plaintiff must show how this requested information is likely to produce substantiation of his allegations that individuals in his Account Executive position, as well as positions outside of his position – positions he *cannot even identify* – were *mis*classified (not just "classified") as exempt outside salespersons. Yet Plaintiff forgoes this entire analysis and demands that this Court blindly compel all requested discovery so he can show Plaintiff and others in positions he cannot identify were classified "the same" – an irrelevant finding. *See Rix v. Lockheed Martin Corporation*, 2010 WL 11594931, at *2 (S.D. Cal. 2010) (limiting pre-certification discovery because plaintiff "has not made a *prima facie* case of misclassification. While Plaintiff adequately demonstrates that Defendant classified all ISRs across the state as exempt, Plaintiff offers nothing to address whether the classification was improper. Thus, Plaintiff has not met his burden in demonstrating that such information is discoverable at this time."); *DeLodder v. Aerotek, Inc.*, 2009 WL 10674457, at *1-2 (C.D.Cal., 2009) (limiting pre-certification discovery, finding "[t]he employer's classification alone is not sufficient.")

Plaintiff's only other justification for this discovery is, "[t]he wage statements will also enable Plaintiffs to assess the number of violations that occurred, the number of pay periods, and the proper assessment of damages and penalties." This is strictly a damages analysis that is entirely premature at the pre-certification stage of this litigation. Damages should only be addressed after a class is certified and some amount of liability is determined. Moreover, this information may be obtained by way of interrogatories as opposed to this overly burdensome request for the actual wage statements of the entire putative class of employees.

**REQUEST FOR PRODUCTION NO. 16:**

Each incentive compensation or commission statement or similar DOCUMENT that YOU provided to COMMISSION EMPLOYEES.

This request is seeking the records YOU give to COMMISSION EMPLOYEES showing when, how, and how much incentive compensation (e.g., commission or bonus) wages they have earned.

///

///

///

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Charter incorporates in full herein its General Objections. Charter objects that the term "similar DOCUMENT" is vague, ambiguous, and overbroad. Charter further objects that Plaintiff's definition of "COMMISSION EMPLOYEES" is vague, ambiguous, overly broad, and unduly burdensome. Charter further objects to this Request on the grounds that it is unduly burdensome and oppressive and seeks information not relevant to the case and not proportional to the needs of the case, including that the burden or expense of the proposed discovery outweighs any putative benefit. Charter further objects to this Request to the extent that it seeks individualized information about purported class members on the ground that individualized discovery regarding putative class members is an abuse of the class action procedure, premature, and unduly burdensome and oppressive. Charter further objects to this Request to the extent that it seeks information in which individuals have a legitimate expectation or right of privacy or confidentiality under California law, and any other constitutional, statutory, or common law right. Charter further objects to this Request on the grounds it is premature, overly broad as to scope, disproportionate to the needs of the case under the Federal Rules, and unduly burdensome, oppressive and harassing to the extent it seeks discovery concerning individuals other than the named Plaintiff when this matter has not been certified as a class action, no *prima facie* grounds for class certification exist, and individuals other than Plaintiff are not otherwise a party to, or participants in, this action. Discovery of the sought-after information should be phased and considered only following a ruling on class certification. Charter also objects that this Request is premature because Plaintiff filed a Motion for Leave to File First Amended Complaint, which is pending before this Court and will not be heard until December 16, 2019.

Subject to, and without waiving, the foregoing objections, Charter responds as follows:

With this Response, Charter is producing wage statements and commission statements regarding Plaintiff.

Harper's Position. All of Charter's objections are generic, boilerplate, and should be overruled. Production of commission statements for class members and aggrieved employees who were eligible for commissions is no different than producing wage statements. *Romo*, 2013 WL 11310656, at *5; *Arredondo*, 2019 WL 6128657, at *2; *Brum*, 2018 WL 3861558, at *6; *Talavera*, 2017 WL 495635, at

65

*4; *Adalpa*, 310 F.R.D. at 590; *Quintana*, 2014 WL 234219, at *2. The commission statements will confirm that Charter calculated and paid (and timed the payment of) commissions in an identical or substantially similar manner for all COMMISSION EMPLOYEES. Charter maintains commission statements in electronic form and can easily identify, collect, and produce them without undue burden or delay. Charter should be ordered to produce a random 20% sampling of commission statements for COMMISSION EMPLOYEES by June 12, 2020.

> Charter's Position.

Charter has already produced Plaintiff's wage statements and commission statements in response to this request. Charter is required to produce nothing more. Plaintiff has not offered any evidence, or even allegations, of class-wide policies, practices or treatment. Yet, based on his narrow, individualized allegations, Harper asks this Court to infer that all other commission-eligible employees in California, no matter their position or location, were similarly treated. But *Plaintiff cannot even identify which positions are in his proposed classes*. Essentially, Plaintiff seeks class-wide discovery to determine whether his entirely speculative inferences can be substantiated. That is the definition of a fishing expedition. Before filing a class action, or really any lawsuit, a plaintiff is required to at least do some pre-litigation diligence. "The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim. That the discovery might uncover evidence showing that a plaintiff has a legitimate claim does not justify the discovery request." *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990); *Williams v. Veolia Trans. Servs., Inc.*, 2008 WL 7389430, at *2 (C.D. Cal. 2008) (A plaintiff's mere "speculative inference" of class-wide violations "is not sufficient to show that discovery as to all [putative class members]" is warranted).

Additionally, requests for payroll data implicate significant privacy interests that third-party employees have in their compensation and wage information. *Nguyen*, 275 F.R.D. at 512–13 ("Pay check stubs contain more confidential and sensitive information than simply time records or contact information"). In *Nguyen*, the court denied the plaintiff's request for payroll records because they contained "confidential and sensitive information" which outweighed "Plaintiff's need for the

1   information." 275 F.R.D. at 513-14; *see also*, *Coleman*, 2013 WL 2896884 at *11. The Court should do

2   the same here.

3   **REQUEST FOR PRODUCTION NO. 17:**

4         Each time sheet or similar DOCUMENT that shows or reflects the number of hours worked by

5   DIRECT SALES EMPLOYEES.

6   **RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

7         Charter incorporates in full herein its General Objections. Charter objects that the term "similar

8   DOCUMENT" is vague, ambiguous, and overbroad. Charter further objects that Plaintiff's definition of

9   "DIRECT SALES EMPLOYEES" is vague, ambiguous, overly broad, and unduly burdensome. Charter

10  further objects to this Request on the grounds that it is unduly burdensome and oppressive and seeks

11  information not relevant to the case and not proportional to the needs of the case, including that the

12  burden or expense of the proposed discovery outweighs any putative benefit. Charter further objects to

13  this Request to the extent that it seeks individualized information about purported class members on the

14  ground that individualized discovery regarding putative class members is an abuse of the class action

15  procedure, premature, and unduly burdensome and oppressive. Charter further objects to this Request to

16  the extent that it seeks information in which individuals have a legitimate expectation or right of privacy

17  or confidentiality under California law, and any other constitutional, statutory, or common law right.

18  Charter further objects to this Request on the grounds it is premature, overly broad as to scope,

19  disproportionate to the needs of the case under the Federal Rules, and unduly burdensome, oppressive

20  and harassing to the extent it seeks discovery concerning individuals other than the named Plaintiff when

21  this matter has not been certified as a class action, no *prima facie* grounds for class certification exist,

22  and individuals other than Plaintiff are not otherwise a party to, or participants in, this action. Discovery

23  of the sought-after information should be phased and considered only following a ruling on class

24  certification. Charter also objects that this Request is premature because Plaintiff filed a Motion for Leave

25  to File First Amended Complaint, which is pending before this Court and will not be heard until

26  December 16, 2019. Charter intends to file a motion to strike class allegations and thus objects that

27  Plaintiff's Request is premature until the Court issues a decision on Charter's anticipated motion and

28  Plaintiff's request for leave to amend his complaint.

1    <u>Harper's Position</u>. All of Charter's objections are generic, boilerplate, and should be overruled.

2    Production of time records for class members and aggrieved employees is a basic and common

3    requirement in wage-and-hour cases like this one. *Romo*, 2013 WL 11310656, at \*5; *Arredondo*, 2019

4    WL 6128657, at \*2; *Brum*, 2018 WL 3861558, at \*6; *Talavera*, 2017 WL 495635, at \*4; *Adalpa*, 310

5    F.R.D. at 590; *Quintana*, 2014 WL 234219, at \*2. Because Charter classified its DIRECT SALES

6    EMPLOYEES as "exempt," Plaintiffs do not expect there to be any time sheets or timecards or clock-

7    in/clock-out records. Accordingly, based on Plaintiffs' understanding of Charter's practices and the

8    existing records, Plaintiffs expect that the "Time Detail" records (i.e., records confirming that Charter

9    classified DIRECT SALES EMPLOYEES as exempt, did not keep track of hours worked, and only

10   recorded vacation, sick, and personal leave time) will be the only responsive records. Charter maintains

11   "Time Detail" records in electronic form and can easily identify, collect, and produce them without undue

12   burden or delay. Charter should be ordered to produce a random 20% sampling of time detail records for

13   DIRECT SALES EMPLOYEES by June 12, 2020 and to confirm no other responsive records exist.

14        <u>Charter's Position</u>.

15        Charter agrees to provide a supplemental response to this request. Thus, Plaintiff's motion is moot

16   as to this request.

17   **REQUEST FOR PRODUCTION NO. 20:**

18        Each DOCUMENT that sets forth or describes YOUR policies and practices related to keeping

19   track of, recording, and reporting DIRECT SALES EMPLOYEES' hours worked.

20   **RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

21        Charter incorporates in full herein its General Objections. Charter further objects that Plaintiff's

22   definition of "DIRECT SALES EMPLOYEES" is vague, ambiguous, overly broad, and unduly

23   burdensome. Charter further objects to this Request on the grounds that it is unduly burdensome and

24   oppressive and seeks information not relevant to the case and not proportional to the needs of the case,

25   including that the burden or expense of the proposed discovery outweighs any putative benefit. Charter

26   further objects to this Request to the extent that it seeks individualized information about purported class

27   members on the ground that individualized discovery regarding putative class members is an abuse of

28   the class action procedure, premature, and unduly burdensome and oppressive. Charter further objects to

this Request to the extent that it seeks information in which individuals have a legitimate expectation or right of privacy or confidentiality under California law, and any other constitutional, statutory, or common law right. Charter further objects to this Request to the extent it seeks documents and/or information that are protected by the attorney-client and/or attorney work product privileges. Charter further objects to this Request on the grounds it is premature, overly broad as to scope, disproportionate to the needs of the case under the Federal Rules, and unduly burdensome, oppressive and harassing to the extent it seeks discovery concerning individuals other than the named Plaintiff when this matter has not been certified as a class action, no *prima facie* grounds for class certification exist, and individuals other than Plaintiff are not otherwise a party to, or participants in, this action. Discovery of the sought-after information should be phased and considered only following a ruling on class certification. Charter also objects that this Request is premature because Plaintiff filed a Motion for Leave to File First Amended Complaint, which is pending before this Court and will not be heard until December 16, 2019. Charter intends to file a motion to strike class allegations and thus objects that Plaintiff's Request is premature until the Court issues a decision on Charter's anticipated motion and Plaintiff's request for leave to amend his complaint.

Subject to, and without waiving, the foregoing objections, Charter responds as follows:

With this Response, Charter is producing its handbook, which includes polices regarding timekeeping.

Harper's Position. All of Charter's objections are generic, boilerplate, and should be overruled. Harper is seeking all written policies that Charter followed from November 19, 2014 to the present concerning how it kept track of, recorded, and reported DIRECT SALES EMPLOYEES hours worked. Charter has produced several versions of its Employee Handbook, but it has not confirmed that it has produced all versions of its Employee Handbook that applied to DIRECT SALES EMPLOYEES from November 19, 2014 to the present. Charter has also produced one 2017 version of a Timekeeping Policy, but is has not but it has not produced all versions of its Timekeeping Policy that applied to DIRECT SALES EMPLOYEES from November 19, 2014 to the present. Charter should be ordered to produce by June 12, 2020 any additional responsive records or to confirm that no responsive records exist.

///

69

1    <u>Charter's Position</u>.

2    Charter agrees to provide a supplemental response to this request. Thus, Plaintiff's motion is moot

3    as to this request.

4    **REQUEST FOR PRODUCTION NO. 28:**

5    Each "Offer Letter" or similar correspondence YOU sent to a DIRECT SALES EMPLOYEE or

6    COMMISSION EMPLOYEE offering employment and describing the terms of employment.

7    This request includes but is not limited to correspondence that offered an initial position and

8    correspondence sent when an employee changed positions.

9    **RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

10   Charter incorporates in full herein its General Objections. Charter objects that the term "similar

11   correspondence" is vague, ambiguous, and overbroad. Charter further objects that Plaintiff's definitions

12   of "DIRECT SALES EMPLOYEES" and "COMMISSION EMPLOYEES" are vague, ambiguous,

13   overly broad, and unduly burdensome. Charter further objects to this Request on the grounds that it is

14   unduly burdensome and oppressive and seeks information not relevant to the case and not proportional

15   to the needs of the case, including that the burden or expense of the proposed discovery outweighs any

16   putative benefit. Charter further objects to this Request to the extent that it seeks information in which

17   individuals have a legitimate expectation or right of privacy or confidentiality under California law, and

18   any other constitutional, statutory, or common law right. Charter further objects to this Request to the

19   extent it seeks documents and/or information that are protected by the attorney-client and/or attorney

20   work product privileges. Charter further objects to this Request to the extent that it seeks individualized

21   information about purported class members on the ground that individualized discovery regarding

22   putative class members is an abuse of the class action procedure, premature, and unduly burdensome and

23   oppressive. Charter further objects to this Request on the grounds it is premature, overly broad as to

24   scope, disproportionate to the needs of the case under the Federal Rules, and unduly burdensome,

25   oppressive and harassing to the extent it seeks discovery concerning individuals other than the named

26   Plaintiff when this matter has not been certified as a class action, no *prima facie* grounds for class

27   certification exist, and individuals other than Plaintiff are not otherwise a party to, or participants in, this

28   action. Discovery of the sought-after information should be phased and considered only following a

70

ruling on class certification. Charter also objects that this Request is premature because Plaintiff filed a Motion for Leave to File First Amended Complaint, which is pending before this Court and will not be heard until December 16, 2019. Charter intends to file a motion to strike class allegations and thus objects that Plaintiff's Request is premature until the Court issues a decision on Charter's anticipated motion and Plaintiff's request for leave to amend his complaint.

Subject to, and without waiving, the foregoing objections, Charter responds as follows:

With this Response, Charter is producing Plaintiff's personnel file, which contains the written offer letter that Charter sent to Plaintiff.

Harper's Position. All of Charter's objections are generic, boilerplate, and should be overruled. Harper is seeking all offer letters that Charter sent to class members and aggrieved employees from November 19, 2014 to the present. The offer letters will confirm: the starting dates for employment (which will coincide with the dates the employees started their "training weeks" and/or should have been given signed commission plans and required to give signed receipts); the "exempt" or "non-exempt" classification; and the eligibility for commissions. Charter should be ordered to produce a random 20% sampling of offer letters by June 12, 2020.

Charter's Position.

Charter has already produced Plaintiff's offer letter. Plaintiff's justification for this request as to everyone in his putative class makes no sense. Plaintiff fails to explain why documentation of start dates, exempt vs. non-exempt classification, and eligibility for commission are likely to produce substantiation of his overbroad and vague class allegations. Moreover, the burden of locating and gathering offer letters for every single putative class member far outweighs any benefit of this information.

**REQUEST FOR PRODUCTION NO. 30:**

Each DOCUMENT related to training YOU conduct or have conducted for DIRECT SALES EMPLOYEES.

This request includes but is not limited to training materials, attendance records, class or lecture schedules, homework requirements or modules, and similar records, and also includes in person, telephonic, online, or other forms of training YOU provided to DIRECT SALES EMPLOYEES.

///

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Charter incorporates in full herein its General Objections. Charter further objects that Plaintiff's definition of "DIRECT SALES EMPLOYEES" is vague, ambiguous, overly broad, and unduly burdensome. Charter further objects to this Request on the grounds that it is unduly burdensome and oppressive and seeks information not relevant to the case and not proportional to the needs of the case, including that the burden or expense of the proposed discovery outweighs any putative benefit. Charter further objects to this Request to the extent that it seeks information in which individuals have a legitimate expectation or right of privacy or confidentiality under California law, and any other constitutional, statutory, or common law right. Charter further objects to this Request to the extent it seeks documents and/or information that are protected by the attorney-client and/or attorney work product privileges. Charter further objects to this Request to the extent that it seeks individualized information about purported class members on the ground that individualized discovery regarding putative class members is an abuse of the class action procedure, premature, and unduly burdensome and oppressive. Charter further objects to this Request on the grounds it is premature, overly broad as to scope, disproportionate to the needs of the case under the Federal Rules, and unduly burdensome, oppressive and harassing to the extent it seeks discovery concerning individuals other than the named Plaintiff when this matter has not been certified as a class action, no *prima facie* grounds for class certification exist, and individuals other than Plaintiff are not otherwise a party to, or participants in, this action. Discovery of the sought-after information should be phased and considered only following a ruling on class certification. Charter also objects that this Request is premature because Plaintiff filed a Motion for Leave to File First Amended Complaint, which is pending before this Court and will not be heard until December 16, 2019. Charter intends to file a motion to strike class allegations and thus objects that Plaintiff's Request is premature until the Court issues a decision on Charter's anticipated motion and Plaintiff's request for leave to amend his complaint.

Harper's Position. All of Charter's objections are generic, boilerplate, and should be overruled. Harper is seeking all training records for DIRECT SALES EMPLOYEES from November 19, 2014 to the present. Charter has already produced a training "Transcript Report" for Harper that confirms he was required to participate in mandatory training for at least two weeks and that his training actually lasted

more than three weeks. Soderstrom Decl. ¶ 9 &11, Ex. 9 (Training Transcript Report). Charter has also produced *some* training materials that confirm the training activities were not "outside sales" activities. These records strike directly at the core of Plaintiffs' class and representative PAGA allegations that Charter misclassified its DIRECT SALES EMPLOYEES as "exempt" outside salespersons *during their training weeks*. *Duran v. U.S. Bank Nat'l Assoc.*, 59 Cal. 4th 1, 21 n. 14 (2014) (observing that outside salesperson *trainees* were "*properly* classified as *nonexempt*" during their "training weeks"). Charter should be ordered to produce by June 12, 2020 a random 20% sampling of training transcript reports (or similar records), and any other training materials that Charter used with DIRECT SALES EMPLOYEES from November 19, 2014 to the present.

Charter's Position.

Charter has already produced hundreds of pages of documents related to training for Account Executives, the position held by Plaintiff. As explained above, discovery related to other positions that Plaintiff never held, and locations at which Plaintiff never worked, is not justified based on the evidence and allegations offered by Plaintiff to date. Please see above for more analysis of this issue.

**REQUEST FOR PRODUCTION NO. 32:**

Each DOCUMENT that sets forth or describes YOUR policies and practices related to monitoring or tracking the whereabouts of DIRECT SALES EMPLOYEES.

This includes any practices related to monitoring when DIRECT SALES EMPLOYEES are in one of YOUR offices, when they are at their home, and when they are in the field, and any practices related to tracking the location of vehicles or equipment used by DIRECT SALES EMPLOYEES.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

Charter incorporates in full herein its General Objections. Charter objects that the phrase "related to monitoring or tracking the whereabouts" is ambiguous, overbroad, and unduly burdensome. Charter further objects that Plaintiff's definition of "DIRECT SALES EMPLOYEES" is vague, ambiguous, overly broad, and unduly burdensome. Charter further objects to this Request on the grounds that it is unduly burdensome and oppressive and seeks information not relevant to the case and not proportional to the needs of the case, including that the burden or expense of the proposed discovery outweighs any putative benefit. Charter further objects to this Request to the extent that it seeks information in which

individuals have a legitimate expectation or right of privacy or confidentiality under California law, and any other constitutional, statutory, or common law right. Charter further objects to this Request to the extent that it seeks individualized information about purported class members on the ground that individualized discovery regarding putative class members is an abuse of the class action procedure, premature, and unduly burdensome and oppressive. Charter further objects to this Request to the extent it seeks documents and/or information that are protected by the attorney client and/or attorney work product privileges. Charter further objects to this Request on the grounds it is premature, overly broad as to scope, disproportionate to the needs of the case under the Federal Rules, and unduly burdensome, oppressive and harassing to the extent it seeks discovery concerning individuals other than the named Plaintiff when this matter has not been certified as a class action, no *prima facie* grounds for class certification exist, and individuals other than Plaintiff are not otherwise a party to, or participants in, this action. Discovery of the sought-after information should be phased and considered only following a ruling on class certification. Charter also objects that this Request is premature because Plaintiff filed a Motion for Leave to File First Amended Complaint, which is pending before this Court and will not be heard until December 16, 2019. Charter intends to file a motion to strike class allegations and thus objects that Plaintiff's Request is premature until the Court issues a decision on Charter's anticipated motion and Plaintiff's request for leave to amend his complaint.

 <u>Harper's Position</u>. All of Charter's objections are generic, boilerplate, and should be overruled. Charter has already produced confidential "leads lists" for Plaintiffs. Harper is seeking the same or similar records for DIRECT SALES EMPLOYEES from November 19, 2014 to the present that show where they were working (i.e., whether they were trying to make sales in the field during their training weeks). These records will help confirm that "exempt" outside salespersons were misclassified during their training weeks because did not start trying to make sales in the field until after their training. These records strike directly at the core of Plaintiffs' class and representative PAGA allegations that Charter misclassified its DIRECT SALES EMPLOYEES as "exempt" outside salespersons *during their training weeks*. *Duran*, 59 Cal. 4th at 21 n. 14. Charter should be ordered to produce by June 12, 2020 a random 20% sampling of "leads lists" (or similar records), and any other records that show such employees' whereabouts during the workday from November 19, 2014 to the present.

1    Charter's Position.

2    Charter agrees to provide a supplemental response to this request. Thus, Plaintiff's motion is moot

3    as to this request.

4    **REQUEST FOR PRODUCTION NO. 33:**

5    Each DOCUMENT showing the job duties or responsibilities for each position that is or has been

6    held by a DIRECT SALES EMPLOYEE.

7    This request includes but is not limited to job descriptions or requirements that YOU post for the

8    public as well as any internal job descriptions or requirements.

9    **RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

10   Charter incorporates in full herein its General Objections. Charter further objects that Plaintiff's

11   definition of "DIRECT SALES EMPLOYEES" is vague, ambiguous, overly broad, and unduly

12   burdensome. Charter further objects to this Request on the grounds that it is unduly burdensome and

13   oppressive and seeks information not relevant to the case and not proportional to the needs of the case,

14   including that the burden or expense of the proposed discovery outweighs any putative benefit. Charter

15   further objects to this Request to the extent it seeks documents and/or information that are protected by

16   the attorney-client and/or attorney work product privileges. Charter further objects to this Request to the

17   extent that it seeks individualized information about purported class members on the ground that

18   individualized discovery regarding putative class members is an abuse of the class action procedure,

19   premature, and unduly burdensome and oppressive. Charter further objects to this Request on the grounds

20   it is premature, overly broad as to scope, disproportionate to the needs of the case under the Federal

21   Rules, and unduly burdensome, oppressive and harassing to the extent it seeks discovery concerning

22   individuals other than the named Plaintiff when this matter has not been certified as a class action, no

23   *prima facie* grounds for class certification exist, and individuals other than Plaintiff are not otherwise a

24   party to, or participants in, this action. Discovery of the sought-after information should be phased and

25   considered only following a ruling on class certification. Charter also objects that this Request is

26   premature because Plaintiff filed a Motion for Leave to File First Amended Complaint, which is pending

27   before this Court and will not be heard until December 16, 2019. Charter intends to file a motion to strike

28

75

class allegations and thus objects that Plaintiff's Request is premature until the Court issues a decision on Charter's anticipated motion and Plaintiff's request for leave to amend his complaint.

Subject to, and without waiving, the foregoing objections, Charter responds as follows:

With this Response, Charter is producing the written job description that applied to Plaintiff during his employment.

Harper's Position. All of Charter's objections are generic, boilerplate, and should be overruled. Charter has already produced a "job requisition" for Harper's specific position from 2017. Soderstrom Decl. ¶ 10-11, Ex. 10 (Job Requisition). Harper is seeking the same or similar records for all other positions held by DIRECT SALES EMPLOYEES (e.g., Direct Sales Representatives and Outside Sales Representatives) from November 19, 2014 to the present, as well as any revisions to the position descriptions made over time. These records will allow Plaintiffs to compare the job duties and responsibilities for different DIRECT SALES EMPLOYEE positions and confirm they were all classified as "exempt" for their entire employment (including training weeks) and were eligible for commissions. Charter should be ordered to produce by June 12, 2020 a job requisition or description for every position held by a DIRECT SALES EMPLOYEE (i.e., every position that Charter classified as an "exempt" outside salesperson from November 19, 2014 to the present), along with any revisions to such job requisition or description made over time.

Charter's Position.

Charter has already produced the Account Executive job description, the position held by Plaintiff. As explained above, discovery related to other positions that Plaintiff never held, and locations at which Plaintiff never worked, is not justified based on the evidence and allegations offered by Plaintiff to date. Please see above for further analysis of this issue.

**REQUEST FOR PRODUCTION NO. 34:**

All severance agreements, waiver agreements, releases, opt-outs, or similar DOCUMENTS that YOU have received from a DIRECT SALES EMPLOYEE or COMMISSION EMPLOYEE.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Charter incorporates in full herein its General Objections. Charter objects that the term "similar DOCUMENTS" is vague, ambiguous, and overbroad. Charter further objects that Plaintiff's definitions

of "DIRECT SALES EMPLOYEES" and "COMMISSION EMPLOYEE" is vague, ambiguous, overly broad, and unduly burdensome. Charter further objects to this Request on the grounds that it is unduly burdensome and oppressive and seeks information not relevant to the case and not proportional to the needs of the case, including that the burden or expense of the proposed discovery outweighs any putative benefit. Charter further objects to this Request to the extent that it seeks information in which individuals have a legitimate expectation or right of privacy or confidentiality under California law, and any other constitutional, statutory, or common law right. Charter further objects to this Request to the extent that it seeks individualized information about purported class members on the ground that individualized discovery regarding putative class members is an abuse of the class action procedure, premature, and unduly burdensome and oppressive. Charter further objects to this Request to the extent it seeks documents and/or information that are protected by the attorney-client and/or attorney work product privileges. Charter further objects to this Request on the grounds it is premature, overly broad as to scope, disproportionate to the needs of the case under the Federal Rules, and unduly burdensome, oppressive and harassing to the extent it seeks discovery concerning individuals other than the named Plaintiff when this matter has not been certified as a class action, no *prima facie* grounds for class certification exist, and individuals other than Plaintiff are not otherwise a party to, or participants in, this action. Discovery of the sought-after information should be phased and considered only following a ruling on class certification. Charter also objects that this Request is premature because Plaintiff filed a Motion for Leave to File First Amended Complaint, which is pending before this Court and will not be heard until December 16, 2019. Charter intends to file a motion to strike class allegations and thus objects that Plaintiff's Request is premature until the Court issues a decision on Charter's anticipated motion and Plaintiff's request for leave to amend his complaint.

Harper's Position. All of Charter's objections are generic, boilerplate, and should be overruled. Charter has indicated that it may assert settlement, severance, release, or waiver as defenses and/or in opposition to class certification. Harper is therefore entitled to discovery related to these potential defenses and/or bases for opposing class certification. Charter cannot refuse Harper discovery that is necessary to evaluate and address Charter's defenses. While settlement, severance, release, and waiver may not impact Harper's representative PAGA claims, *see Kim*, 9 Cal. 5th at 80, and many (perhaps

most) of his class claims, he is entitled to learn what putative class members may have settled, released, or waived the claims involved in this action. The Court should order Charter to produce the requested information by June 12, 2020 or stipulate that it will not assert settlement, severance, release, and/or waiver as a defense or in opposition to class certification.

   <u>Charter's Position</u>.

   Charter maintains its objections to this request. The requested information is vague and ambiguous. Charter further objects to this Request on the grounds it is unduly burdensome and oppressive and seeks information not relevant to the case and not proportional to the needs of the case, including that the burden or expense of the proposed discovery outweighs any putative benefit. Charter further objects to this Request to the extent that it seeks information in which individuals have a legitimate expectation or right of privacy or confidentiality under California law, and any other constitutional, statutory, or common law right. Plaintiff offers no authority for his baseless assertion he is entitled to this information. He also has not explained how this information would in any way substantiate his class allegations. Charter maintains its objections and will not produce these documents.

## V.  CONCLUSION.

   Harper respectfully asks the Court to grant this motion and order Charter to service complete supplemental responses and produce the requested information and records by June 12, 2020.

   Charter respectfully requests that this Court deny Plaintiff's motion in its entirety.

Respectfully submitted,


Dated: May 27, 2020      SODERSTROM LAW PC

              By: <u>*/s/ Jamin S. Soderstrom*</u>

              *Counsel for Plaintiffs, Putative Class Members, and Aggrieved Employees*


Dated: May 27, 2020      MORGAN LEWIS & BOCKIUS LLP

              By: <u>*/s/ Zachary W. Shine*</u>

              *Counsel for Defendant Charter Communications, LLC*