**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LIONEL HARPER, et al., | No. 2:19-CV-0902-WBS-DMC |
| Plaintiffs, | |
| v. | ORDER |
| CHARTER COMMUNICATIONS, LLC, et al., | |
| Defendants. | |

Plaintiffs Lionel Harper and Daniel Sinclair, who are proceeding with retained counsel, bring this civil action pursuant to California's Private Attorney General Act (PAGA), California Labor Code § 2698, et seq. Plaintiffs allege violations of California statutory law with respect to the failure to pay certain wages. The matter proceeds in this Court based on diversity jurisdiction. Pending before the Court are separate discovery motions filed by Plaintiffs. See ECF Nos. 117 (Plaintiffs' motion to compel) and 118 (Plaintiffs' motion for sanctions).

The parties appeared before the undersigned for a hearing in Redding, California, on April 28, 2021, at 10:00 a.m. Jamin Soderstrom, Esq., appeared telephonically for Plaintiffs. Kathryn McGuigan, Esq., and Zachary Shine, Esq., appeared telephonically for Defendant Charter Communications, LLC.

/ / /

# I. BACKGROUND

**A.** **<u>Plaintiffs' Allegations</u>**

This action currently proceeds on Plaintiffs' first amended complaint against

Defendants Charter Communications, LLC, and Charter Communications, Inc. (Charter). <u>See</u>

ECF No. 45. Plaintiffs allege the following background facts:

> 8. Charter markets and sells various services, including television, Internet, and phone services, in California and nationwide.
> 9. Plaintiffs worked for Charter in California as salespersons. Harper worked for Charter from September 2017 to March 2018, and Sinclair worked for Charter from January 2015 to December 2016. Charter considered Plaintiffs to be "outside salespersons" during their entire employment and treated them as exempt employees. But Plaintiffs were not exempt outside salespersons. Plaintiffs were not asked or required to perform any "outside sales" activities during their training and they were thus misclassified as exempt during their training. Plaintiffs also were assigned numerous duties following their training that were not "outside sales" duties, the performance of which caused them not to spend a majority of their working hours each day or week performing outside sales. These non-outside sales duties included, but were not limited to, customer service and installation scheduling activities and work performed at Charter's offices or at a home office. They were thus misclassified as exempt following their training as well. During their employment, Plaintiffs worked with numerous other employees who were subject to Charter's same policies and practices and who were also misclassified as exempt outside salespersons, both during training and following training. Plaintiffs' working experience gave them a thorough understanding of Charter's employment policies and practices with respect to employees who Charter classified as exempt outside salespersons.
> 10. During their employment, Plaintiffs and other employees (including but not limited to outside salespersons) were also eligible to receive and did receive incentive compensation in the form of commission wages. But Charter's commission payment practices and policies were unlawful. First, Charter did not give to Plaintiffs and other employees a signed copy of commission agreements that set forth the methods by which their commission wages would be computed and paid. Second, Charter did not obtain from Plaintiffs and other employees a signed receipt for any such agreements. Third, Charter failed to properly calculate and pay all commission wages that were due to Plaintiffs and other employees. And fourth, Charter paid commission wages on a monthly basis and/or weeks after the wages were earned instead of for the pay period in which they were earned.
> 11. Plaintiffs personally experienced and witnessed Charter engaging in these unlawful and unfair business practices and Charter continues to engage in these unlawful and unfair business practices to this day.

<u>Id.</u> at 3-4.

/ / /

/ / /

Plaintiffs state they are bringing the action on behalf of themselves and "on behalf of two classes and various subclasses of employees who worked for Charter in California at any time between November 19, 2014, through final judgment. . . ." ECF No. 45, pg. 4. The alleged classes and subclasses are as follows:

Outside Salesperson Class

Unpaid Minimum Wages Subclass
Unpaid Overtime Wages Subclass
Meal Period Subclass
Rest Break Subclass
Wage Statement Subclass
Termination Subclass

Commission Class

Underpaid Commission Subclass
No Signed Agreement Subclass
Wage Statement Subclass
Termination Subclass

Id. at 4-6.

In support of the class allegations, Plaintiffs also allege the following common questions of law and fact:

a. whether Charter improperly classified Plaintiffs and other outside salespersons as exempt during training;

b. whether Charter improperly classified Plaintiffs and other outside salespersons as exempt after training;

c. whether Charter accurately kept track of Plaintiffs' and other outside salespersons' working hours;

d. whether Charter paid minimum wages for all hours worked by Plaintiffs and other outside salespersons;

e. whether Charter paid overtime wages for all hours worked over 8 in a workday and 40 in a workweek by Plaintiffs and other outside salespersons;

f. whether Charter provided Plaintiffs and other outside salespersons with timely, uninterrupted, off-duty 30-minute meal periods each day they worked at least 5 hours in a workday, and a second meal period each day they worked at least 10 hours in a workday, or paid them an additional hour of pay at their regular rate on each day such meal periods were not provided;

///

g.  whether Charter provided Plaintiffs and other outside salespersons with timely, uninterrupted, off-duty 10-minute rest breaks for every 4 hours of work, or major fraction thereof, or paid them an additional hour of pay at their regular rate on each day such rest periods were not provided;

h.  whether Charter paid Plaintiffs and other outside salespersons all wages due upon termination, or paid waiting time penalties when such wages were not timely paid;

i.  whether Plaintiffs and other employees who were eligible to be paid commission wages signed a written commission agreement, were given a signed copy of the agreement, and provided Charter with a signed receipt;

j.  whether Plaintiffs and other employees who were eligible to be paid commission wages had wages underpaid, reduced, deducted, or clawed back based on terms they did not expressly agree to in a signed writing that was given to them;

k.  whether Charter timely paid all commission wages in the pay periods in which they were earned; and

l.  whether Charter paid Plaintiffs and other employees who were eligible for commission wages all wages due upon termination, or paid waiting time penalties when such wages were not timely paid.

ECF No. 45, pgs. 6-7.

**B.  <u>Procedural History</u>**

The operative first amended complaint was filed on December 13, 2019.  <u>See</u> ECF No. 45.  On January 10, 2020, Charter moved to dismiss and/or strike the first amended complaint.  <u>See</u> ECF No. 48.  The matter was heard by the District Judge on February 24, 2020, who issued a decision on February 26, 2020, granting Charter's motion as to Plaintiffs' claim for injunctive and declaratory relief and in all other respects denied the motion.  <u>See</u> ECF Nos. 55 (hearing minutes) and 56 (order).  Relevant to the current discovery disputed, the District Judge ruled: "[T]he court will deny defendant's motion to strike the class allegations to allow discovery to proceed."  ECF No. 56, pg. 12.

The case is currently governed by a modified scheduling order issued, pursuant to the parties' stipulation, by the District Judge on February 2, 2021.  <u>See</u> ECF No. 104.  Pursuant to the current scheduling order, discovery closes on August 30, 2021.  <u>See</u> <u>id.</u>

/ / /

/ / /

4

While Plaintiffs have filed a motion for class certification, the District Judge vacated the hearing on that motion pending resolution of Plaintiffs' motion to further modify the schedule and for leave to file a second amended complaint, which is set to be heard on June 1, 2021.  See ECF No. 127 (DJ order).

## II.  DISCUSSION

### A.   Motion to Compel

Plaintiffs seek an order compelling Charter to provide further responses to interrogatory nos. 2, 3, and 5, and requests for production nos. 1, 16, 30, 35, 36, 37, 50, 51, 52, and 53.  See ECF No. 117, pgs. 2-6 (Plaintiffs' notice of motion).

The purpose of discovery is to "remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." United States v. Chapman Univ., 245 F.R.D. 646, 648 (C.D. Cal. 2007) (quotation and citation omitted). Rule 26(b)(1) of the Federal Rules of Civil Procedure offers guidance on the scope of discovery permitted:

> Parties may obtain discovery regarding any nonprivileged information that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the
> discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Under Rule 37 of the Federal Rules of Civil Procedure, "a party seeking discovery may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). The court may order a party to provide further responses to an "evasive or incomplete disclosure, answer, or response." Fed. R. Civ. P. 37(a)(4). "District courts have 'broad discretion to manage discovery and to control the course of litigation under Federal Rule of Civil Procedure 16.'" Hunt v. County of Orange, 672 F.3d 606, 616 (9th Cir. 2012) (quoting Avila v. Willits Envtl. Remediation Trust, 633 F.3d 828, 833 (9th Cir. 2011)).

The party moving to compel bears the burden of informing the court (1) which discovery requests are the subject of the motion to compel, (2) which of the responses are disputed, (3) why the party believes the response is deficient, (4) why any objections are not justified, and (5) why the information sought through discovery is relevant to the prosecution of this action. McCoy v. Ramirez, No. 1:13-cv-1808-MJS (PC), 2016 U.S. Dist. LEXIS 75435, 2016 WL 3196738, at *1 (E.D. Cal. June 9, 2016); Ellis v. Cambra, No. 1:02-cv-5646-AWI-SMS PC, 2008 U.S. Dist. LEXIS 24418, 2008 WL 860523, at *4 (E.D. Cal. Mar. 27, 2008).

"Relevance for purposes of discovery is defined very broadly." Garneau v. City of Seattle, 147 F.3d 802, 812 (9th Cir. 1998). "The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." Bryant v. Ochoa, No. 07cv200 JM (PCL), 2009 U.S. Dist. LEXIS 42339, 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009) (internal citation omitted).

1.    Interrogatories

At issue are Charter's supplemental responses to Plaintiffs' interrogatory nos. 2, 3, and 5. These interrogatories were the subject of prior motions to compel and the Court's October 21, 2020, order granting those motions. See ECF No. 87. In the prior motions, Plaintiffs argued they are entitled statewide discovery prior to class certification. The Court agreed, overruled Charter's boilerplate objections, and directed Charter to serve supplemental responses by November 2, 2020. See id.

Charter served unverified supplemental responses to interrogatory nos. 2, 3, and 5 on November 2, 2020. See ECF No. 125-2, pgs. 1-11 (Exhibit 1 to Soderstrom declaration). Charter provided a verification on February 11, 2021. See ECF No. 125-1, pg. 2 (Soderstrom declaration). On March 8, 2021, Charter provided Plaintiffs a spreadsheet showing position histories for putative class members hired in or before October 2020. See id. Charter served a verified further supplemental response to interrogatory no. 5 on February 19, 2021. See ECF No. 125-2, pgs. 12-24 (Exhibit 2 to Soderstrom declaration).

a.     <u>Interrogatory Nos. 2 and 3</u>

In interrogatory no. 2, Plaintiffs ask Charter to:

> Identify the CONTACT INFORMATION and POSITION HISTORY for each DIRECT SALES EMPLOYEE.

ECF No. 125-2, pg. 5 (Exhibit 1 to Soderstrom declaration).

In interrogatory no. 3, Plaintiffs seek the same information for Charter's commission employees. <u>See id.</u> at 7. In the November 2, 2020, supplemental response to interrogatory no. 2, Charter stated:

> Subject to and without waving [sic] the foregoing objections, Charter responds as follows: Pursuant to Magistrate Judge Dennis M. Cota's October 21, 2020, Order (Dkt. 87), Charter will produce a list of all persons employed by Charter in California between November 19, 2014, and the present who Charter classified as exempt under the outside salesperson exemption.

<u>Id.</u> at 6.

Similarly, Charter provided the following supplemental response to interrogatory no. 3:

> Subject to and without waving [sic] the foregoing objections, Charter responds as follows: Pursuant to Magistrate Judge Dennis M. Cota's October 21, 2020, Order (Dkt. 87), Charter will produce a list of all persons employed by Charter in California between November 19, 2014, and the present who were eligible to earn commissions.

<u>Id.</u> at 8.

In the instant motion to compel, Plaintiffs contend:

> Charter made its supplemental response "subject to and without waiving" its objections. But the Court overruled Charter's objections and ordered Charter to serve verified supplemental responses by November 2, 2020. Charter violated the Court's order by serving *unverified* supplemental responses on November 2, 2020 any by not serving a Class List until December 10, 2020. But the list did not include each putative class member's "position history" (which lets Plaintiff identify the dates and pay periods each putative class member held a covered position). Based on the February 17 Stipulation, Charter finally produced an updated Class List with position histories on March 8, 2021, but it failed to update the Class List to include recently hired putative class members as the February 17 Stipulation required. Plaintiffs asked Charter to identify the spreadsheets it produced that contain updated class member information with recently hired putative class members as part of the meet and confer process. Charter still has not pointed Plaintiffs to such information even though it agreed to promptly meet and confer on such issues in the February 17 Stipulation.
> The Court should overrule Charter's objections again, order Charter to produce an updated Class List that includes recently hired putative class member[s] <u>by no later than May 5, 2021</u>. . . .

* * *

Interrogatory 3 is substantially similar to Interrogatory 2 above, it simply focuses on Commission Employees. For the same reasons explained for Interrogatory 2 above, the Court should overrule Charter's objections and order Charter to produce an updated Class List that includes recently hired putative class member[s] <u>by no later than May 5, 2021</u>. . . .

ECF No. 125, pgs. 15-16, 18 (Joint Statement, emphasis in original).

Charter responds as follows:

Integratory No. 2 seeks a class list that includes position history for all 9,000+ employees. Plaintiffs agree Charter "produced an updated Class List with position histories on March 8, 2021." Charter has fully and completed [sic] responded to this request. . . .

* * *

As with Interrogatory No. 2, Charter has already produced a class list with position history in response to this request. Charter asserts the same arguments regarding this interrogatory.

<u>Id.</u> at 16, 18.

Regarding Charter's objections, Plaintiffs' position is persuasive. Charter's supplemental responses asserted seven boilerplate objections to all of the interrogatories as to which supplemental responses were provided. These objections were not asserted in the context of any particular interrogatory. In the October 21, 2020, order, the Court overruled Charter's boilerplate objections because they violated Federal Rule of Civil Procedure 34(b)(2)(B). The Court stated:

Rule 34(b)(2)(B) requires objections to state with specificity both the basis and reasons for an objection. . . . As to each specific discovery request, Charter simply "incorporates in full its General objections." See e.g. ECF No. 62-3, pg. 57 (Charter's response to Plaintiff Harper's request for production no. 1). Notably, though Charter's general objections to Plaintiff Harper's requests for production cite constitutional privacy concerns, Charter does not specifically explain in response to each request how such concerns are implicated.

ECF No. 87, pg. 12.

The Court overruled Charter's boilerplate objections and directed Charter to "serve supplemental responses which contain objections which are specific to the interrogatory at issue and which explain why a particular objection is being made." <u>Id.</u>

Charter's supplemental responses to interrogatory nos. 2 and 3 similarly violate Rule 34(b)(2)(B). Moreover, to the extent Charter objects to a specific interrogatory, Charter's supplemental responses fail to comply with the Court's prior order. Once again, Charter's objections will be overruled. The Court also orders that any objections are now waived.

As to Charter's supplemental responses to interrogatory nos. 2 and 3, Plaintiffs contend Charter has not provided updated information naming recently hired putative class members, contrary to the parties' stipulation of February 17, 2021. The stipulation has been filed at ECF No. 112. Relative to a list of putative class members responsive to interrogatory nos. 2 and 3, the parties agreed: "Charter agrees to produce an updated Class List on or before March 8, 2021, that identifies any 'Direct Sales Employees' and 'Commission Employees' in California who were hired since December 10, 2020, and that includes a complete 'position history' for each putative class member." Id. at 4. As Plaintiffs concede in the joint statement, Charter provided the agreed list on the agreed date.

Plaintiffs' counsel states in support of the instant motion that "Charter sent an updated spreadsheet showing position histories for class members hired in or before October 2020, but Charter still has not identified recently hired putative class members. . . ." ECF No. 125-1, pg. 2 (Soderstrom declaration). Counsel has not, however, attached the list provided by Charter on March 8, 2021. It is, therefore, impossible to evaluate Plaintiffs' assertion that the list fails to comply with the parties' stipulation. Moreover, Plaintiffs never define the phrase "recently hired" and the phrase does not appear in the relevant portion of the parties' stipulation. For these reasons, Plaintiffs' argument that Charter violated the parties' stipulation is unpersuasive.

Nonetheless, the Court finds that Charter has continued to fail to adequately respond to interrogatory nos. 2 and 3 as directed by the Court following the prior discovery motions. The Court overruled Charter's boilerplate objections and directed Charter to provide supplemental responses by November 2, 2020. While Charter served supplemental responses by the court-ordered deadline, Charter's supplemental responses did not answer interrogatory nos. 2 or 3. Instead, Charter said that it "will provide a list" at some unspecified time in the future,

contrary to the Court's order that responsive information be provided by November 2, 2020. Moreover, as discussed at the outset, Charter has continued to assert improper boilerplate objections.

Plaintiffs' motion to compel will be granted as to interrogatory nos. 2 and 3. Charter's objections are deemed waived, and Charter will be directed to provide responsive information consistent with the parties' February 17, 2021, stipulation. Specifically, Charter will be directed to produce an updated Class List, as that phrase is used in the parties' agreement, that identifies any "Direct Sales Employees" and "Commission Employees" in California who were hired since December 10, 2020.

b.      Interrogatory No. 5

In interrogatory no. 5, Plaintiffs ask Charter to:

> IDENTIFY each DIRECT SALES EMPLOYEE and COMMISSION EMPLOYEE who opted out of any version of arbitration agreement YOU have used.

ECF No. 125-2, pg. 16 (Exhibit 2 to Soderstrom declaration).

Charter served the following supplemental response on November 2, 2020:

> Subject to and without waving [sic] the foregoing objections, Charter responds as follows: Information about which employees within the putative Outside Salesperson Class and putative Commissions Class are bound by arbitration agreement will be included on the class list which will be produced in accordance with Magistrate Judge Dennis M. Cota's October 21, 2020, Order (Dkt. 87).

<u>Id.</u> at 17.

On February 19, 2021, Charter served the following further supplemental response:

> Subject to and without waving [sic] the foregoing objections, Charter responds as follows: With this response, Charter is producing a supplemental version of the class list identifying which employees within the putative Outside Salesperson Class and putative Commissions Class are bound by arbitration agreements.

<u>Id.</u>

/ / /

/ / /

/ / /

10

1    In the pending motion to compel, Plaintiffs argue:

2        Charter made its supplemental and further supplemental responses
3    "subject to and without waiving" its objections. But the Court overruled
     Charter's objections and ordered Charter to serve verified supplemental
     responses by November 2, 2020. Charter violated the Court's order by
4    serving *unverified* supplemental responses on November 2, 2020. Charter
     still has not identified the putative class members who opted out of
5    arbitration over five-and-a-half months after its objections were overruled
     and it was ordered to provide such information. Even in its untimely further
6    supplemental response served February 19, 2021, Charter stood by the same
     objections the Court overruled and said it would identify *other* information
7    (i.e., whether Charter believes a class member is bound by an arbitration
     agreement and class action waiver) that is not responsive to Interrogatory 5.
8    Charter did not agree to provide this information until after Plaintiffs filed
     this motion, and even now Charter has not prioritized its efforts to provide
9    this court-ordered information. Charter says it "repeatedly" advised Plaintiffs
     of its position, but a quick review of the meet and confer correspondence
10   shows that is not true.
         The Court should overrule Charter's objections again, order Charter
11   to identify all putative class members who opted out of any version of
     arbitration agreement by no later than May 5, 2021. . . .
12
     ECF No. 125, pgs. 20-21 (Joint Statement).
13

14   According to Charter:

15       As Charter has repeatedly informed Plaintiffs, Charter is in the
     process of locating and producing this final piece of information related to
16   "out outs." As Charter has told Plaintiffs through multiple meet and confers,
     the information sought by this request is not centrally located and the broad
17   classes as defined by Plaintiffs require Defendant to search records in
     numerous business units, across different reporting structures, and in several
18   different systems. Charter continues to work diligently to comply with this
     request and will have this information to Plaintiffs before the Court hears this
19   motion, thus mooting this request.

20   Id. at 21.

21       Plaintiffs' position is persuasive.  As discussed above, the Court ordered Charter to

22   respond to interrogatory no. 5 by November 2, 2020.  And again, neither of Charter's

23   supplemental responses answer the interrogatory.  "Will be produced" and "is producing" are

24   non-responsive, particularly given Charter's admission in the joint statement that interrogatory

25   no. 5 still has not been answered despite the Court's prior order.  Moreover, again violating the

26   Court's prior order, Charter continues to assert improper boilerplate objections.  Finally, as to

27   Charter's complaint regarding the volume of records which must be searched, that objection is not

28   well-taken.  If Charter had been experiencing difficulty complying with the Court's November 2,

2020, deadline, the time to have brought the issue to the Court attention would have been <u>before</u> that deadline, not after in the context of a subsequent motion to compel months later.

Plaintiffs' motion to compel will be granted as to interrogatory no. 5. Charter's objections are deemed waived and Charter will be ordered to provide responsive information.

## 2. <u>Requests for Production</u>

At issue are Charter's responses to Plaintiff's request for production nos. 1, 16, 30, 35, 36, 37, 50, 51, 52, and 53. Request for production nos. 16 and 30 were the subject of the prior motions to compel and the Court's October 21, 2020, order. <u>See</u> ECF No. 87. The Court granted the prior motions, overruled Charter's improperly asserted objections, and directed Charter to serve supplemental responses and produce documents by November 2, 2020. <u>See</u> <u>id.</u> Charter served supplemental responses to request for production nos. 16 and 30 on November 2, 2020. <u>See</u> ECF No. 125-2, pgs. 32-42 (Exhibit 4 to Soderstrom declaration).

### a. <u>Request for Production No. 1</u>

In request for production no. 1, Plaintiffs seek:

> Each DOCUMENT that HARPER signed or acknowledged, whether physically, electronically, or otherwise, related to his employment with YOU.

<u>Id.</u> at 28.

In Charter's initial response, Charter informed Plaintiffs that Plaintiff Harper's personnel file would be produced. <u>See</u> <u>id.</u> at 29. Charter served an amended/supplemental response on February 28, 2020. <u>See</u> <u>id.</u> at 30. In this further response, Charter stated that various policy handbooks would also be produced. <u>See</u> <u>id.</u> In both the initial and amended responses, Charter raised a number of general boilerplate objections to all of Plaintiff Harper's document requests. <u>See</u> <u>id.</u> at 27-28. Charter also raised the following objections specific to request for production no. 1:

> . . . Charter objects that the terms and/or phrases "acknowledged" and "related to his employment" are vague, ambiguous, overbroad, and unintelligible. Charter further objects to this Request on the ground that it fails to state with reasonable particularity the documents sought. Charter further objects to this Request on the grounds that it is unduly burdensome and oppressive and seeks information not relevant to the case and not proportional to the needs of the case, including that the burden or expense of

12

the proposed discovery outweighs any putative benefit. . . .

Id. at 28-29.

According to Plaintiffs:

> Charter's general and generic objections should be overruled. Charter has produced some documents that Harper signed or acknowledged (such as some of the documents listed in his onboarding details). But Charter is still refusing to produce the actual native documents/ESI that allegedly show Harper electronically signed a commission agreement in September 2017 via its online Synygy commissions portal. *See, e.g.*, Dkt. 94 ¶¶ 20-23 (Charter witness purporting to describe ESI data); Dkt. 111 at 26 (order denying Charter's MSJ and observing Charter still has not produced documentation substantiating what it alleges constitute electronic signatures and commission plan receipts). The Federal Rules do not permit Charter to pick and choose what form it wants to produce documents or information in: they allow the requesting party to specify the form (in this case, Plaintiffs requested "native" form), and require the responding party to object to such specification and then satisfy its burden of showing why it should not be required to produce the documents/ESI in the requested form. Charter waived its objection to produce documents/ESI in "native" form by not asserting it in its responses, and cannot avoid such production now. Moreover, using an adverse witness without personal knowledge and who is not a custodian of records to provide "detailed information" in a declaration does not constitute producing a document/ESI in response to a written discovery request. And Charter's designated witness (Brad Beck) confirmed he has seen formal "reports" exported from Synygy, Optymyze, and Callidus. If such reports were destroyed during the pendency of this action, that creates serious spoliation issues.
>
> The Court should order Charter to promptly produce the actual native document/ESI (apparently a Synygy "report") that contains Harper's alleged acknowledgement and electronic signature, or preclude Charter from relying on such documents/ESI in its defense.

ECF No. 125, pg. 23 (joint statement).

Plaintiffs add:

> . . . More than a year later [after Charter amended its original response], Charter still has not produced the actual report/record that charter allegedly captured from the "Synygy" commissions portal in September 2017 related to Harper's commission agreement. Charter says the native data in the report/record represents Harper's electronic signature. Charter has tried to rely on the alleged data in its defense, but it still has not produced any actual, native record or report showing such data or the manner in which it was captured and maintained.

ECF No. 125-1, pg. 2 (Soderstrom declaration).

/ / /

/ / /

Charter responds:

> Fed. Rules Civil Proc. 34 requires parties to produce documents "as they are kept in the usual course of business," and that "A party need not produce the same electronically stored information in more than one form." Charter already produced detailed information about Harper's acknowledgment of receipt of his commission plan (showing he acknowledged receipt at 2:36 p.m. on 9/29/17). Charter has also produced a highly detailed explanation of the Synygy acknowledgment process. As explained numerous times to Plaintiffs, Defendant no longer uses the Synygy portal and cannot access it to obtain a "report" or whatever "documents" Plaintiffs seems to believe exist. Defendant produced the information as maintained and provided to it by its vendor. Plaintiffs may be dissatisfied with this format, but Defendant is not obligated to, nor is it able to, produce the information in some other formal Plaintiffs' counsel speculates exists.

ECF No. 125, pgs. 23-24 (joint statement).

As with requests for production no. 16, discussed below, Charter attempts to hide behind the fact that it no longer uses a certain computer program, or "portal," to access and generate employee personnel data. Certainly, only Charter can access or request data maintained by a previous vendor or computer program. Charter is now required to produce every single document and or piece of data, whether electronic or in paper, relating to Plaintiff Harper's employment with Charter, regardless of the vendor used to originally produce or store such data.

b.    <u>Request for Production Nos. 16 and 30</u>

In request for production nos. 16 and 30 – which were the subject of the prior motions to compel – Plaintiffs seek:

> Each incentive compensation or commission statement or similar DOCUMENT that YOU provided to COMMISSION EMPLOYEES.
> This request is seeking the records YOU give to COMMISSION EMPLOYEES showing when, how, and how much incentive compensation (e.g., commission or bonus) wages they have earned.

* * *

> Each DOCUMENT relating to training YOU conduct or have conducted for DIRECT SALES EMPLOYEES.
> This request includes but is not limited to training materials, attendance records, class or lecture schedules, homework requirements or modules, and similar records, and also includes in-person, telephonic, online, or other forms of training YOU Provided to DIRECT SALES EMPLOYEES.

ECF No. 125-2, pgs. 35, 37-38 (Exhibit 4 to Soderstrom declaration).

/ / /

In Charter's initial response, Charter stated that wage statements and commission statements for Plaintiff Harper would be produced. See id. at 36. Following the Court's order granting Plaintiffs' prior motions to compel as to request for productions nos. 16 and 30, Charter served supplemental responses on November 2, 2020. In the supplemental responses to both document requests, Charter provided the same statement: "Pursuant to Magistrate Judge Dennis M. Cota's October 21, 2020, Order (Dkt. 87), Charter will produce a 10% sampling of documents within its possession, custody or control responsive to this request." Id. at 36, 40.

In the current motion to compel related to request for production nos. 16 and 30, Plaintiffs argue as follows regarding document request no. 16:

> Charter made its supplemental response "subject to and without waiving" its objections. But the Court overruled Charter's objections. Plaintiffs agreed in the February 17 Stipulation to accept a reduced 2% sampling, but Charter still has not produced all of the sampling documents. Charter unilaterally and improperly limited its production to one type of commission earnings statement and a single year (2020), *even though* its other productions show it keeps commission information in multiple forms and it has such information dating back to at least early 2015. Soderstrom Decl. ¶ 4, Ex. 4. To the extent Charter is now claiming that it no longer has access to pre-2020 commission earnings statements or ESI, Charter never revealed this information before the evening this brief was filed (April 21, 2021), and this raises serious spoliation issues as Callidus was not used until 2020 and Charter had notice of the scope of this dispute by no later than September 2018. Charter's claim that it "has explained this to Plaintiffs several times" is untrue. No meet and confer correspondence shows any such statement or explanation, and Charter has not discussed this position with Plaintiffs in any phone conference.
>     The Court should overrule Charter's objections again, order Charter to produce all responsive records (including pre-2020 commission earnings statements) for the agreed 2% sampling by <u>no later than May 5, 2021</u>. . . .

ECF No. 125, pg. 25 (joint statement).

Charter responds:

> Defendant has provided a verified response that all commission statements that exist for the 2% sampling Plaintiffs agreed to have been produced. Similar to Request for Production No. 1, this request seeks documents that do not exist, as Defendant no longer has access to or uses the prior programs that generated such records. As such, the only commission statements Charter has in its possession, custody or control responsive to this request, are from the Callidus program that has been in use since 2020. Charter has already explained this to Plaintiffs several times. The fact that Plaintiffs are unsatisfied with this response and want Charter to essentially create "commission statements" that no longer exist is beyond the scope of what any discovery rules provide. Defendant is simply under no obligation to

15

do so. As Defendant has produced all responsive documents in its possession, custody or control, Plaintiff's motion must be denied.

Id. at 26.

As to document request no. 30, Plaintiffs contend:

Charter made its supplemental response "subject to and without waiving" its objections. But the Court overruled Charter's objections. Plaintiffs later agreed in the February 17 Stipulation to accept training materials associated with multi-day, one week, or multi-week training courses or "sessions." But Charter still has not produced all of the non-sampling training materials. Charter's corporate representative witness for training (Iba Dawson) confirmed at deposition that Charter has updated its Account Executive training materials since 2017 (the last version Charter produced for the AE position), and she was unable to confirm whether the most recent versions for the Direct Sales Rep and Multi-Tenant Sales Rep positions are the 2019 versions (the last version Charter produced for the DSR and MTSR positions). Soderstrom Decl. ¶ 4, Ex. 4. Plaintiffs can look at the training transcript report spreadsheet Charter produced and identify versions that were "retired" (the 2017 AE version) and see newer versions, and look at other training courses which appear to be new in 2020. To the extent Charter now claims such versions do not exist or have already been produced (and that representation is actually correct, which Plaintiffs highly doubt based on Ms. Dawson's sworn testimony), that was the whole point of the February 17 Stipulation provision that required Charter to promptly meet and confer on issues raised by Plaintiffs.
The Court should overrule Charter's objections again, order Charter to produce all responsive multi-day, one week, or multi-week training course or session materials by no later than May 5, 2021. . . .

Id. at 28-29.

Charter responds:

Defendant has produced all documents within its possession, custody or control responsive to this request. Nonetheless, Plaintiffs now seek to compel materials which Defendant's witness stated at deposition may or may not be the same materials previously produced by Defendant. Plaintiffs' request is based on nothing more than pure speculation. Charter cannot produce documents that are not in its possession, custody or control. As Defendant has correctly stated that all responsive materials have been produced, Plaintiff's motion should be denied as it relates to this request.

Id. at 29.

As to both document requests, Plaintiffs add:

. . .Charter supplemented its original responses on November 2, 2020 in connection with the Court's Discovery Orders. Dkt. 87. But Charter failed to comply with the Court's Discovery Orders, and Plaintiffs eventually stipulated to accept a reduced sampling and a narrower set of non-sampling training materials. Dkt. 112. Charter still has only produced a reduced 2%

16

sampling of a single type of commission earnings statement covering a single year (2020), even though the Court's Discovery Orders and the February 17 Stipulation were not limited to a single type of statement or a single year, and even though the Class Period extends from November 2014 to the present and the PAGA Period extends from September 2017 to the present. *See* Dkt. 111 at 7-13 (discussing the applicable limitations periods). As shown in the meet and confer correspondence, Charter's earlier document productions show that Charter maintains commission earnings statements/information dating back to at least January 2015, and it can collect and produce such statements/ information in multiple forms. *See* Exhibit 9 below. And even after Plaintiffs agreed to accept a more limited set of training materials associated with a multi-day, one week, or multi-week orientation or training course of "session," Charter still has not produced the Account Executive training materials updated since 2017 (which its corporate representative designee Iba Dawson admitted exist), and still has not confirmed whether the 2019 version of training materials for other covered positions is the current/most-recent version. *Id.* Charter remains in breach of the Court's Discovery Orders and the February 17 Stipulation.

ECF No. 125-1, pg. 3 (Soderstrom declaration).

At the outset, the Court finds that Charter's November 2, 2020, supplemental responses fail to comply with the Court's prior discovery order. In granting Plaintiffs' prior motions, the Court overruled Charter's improperly asserted objections and directed Charter to produce responsive documents by November 2, 2020, on a rolling basis. In its supplemental responses, served on November 2, 2020, Charter stated it "will produce" a sampling of responsive documents. Again, "will produce" is not the same as "has produced," which is what the Court ordered.

With respect to request for production no. 16, Charter says it now can only produce documents from 2020 forward because "no longer has access to or uses the prior programs that generated such records" prior to that time period. This explanation seems patently obstructive. First, why didn't Charter tell the Court about this issue at the October 2020 hearing on the prior motions? Second, if the Court were to accept Charter's explanation, any large company could avoid potentially damaging discovery simply by constantly switching computer programs used to generate such discovery and say that it cannot produce the discovery because of the program change.

It seems clear that responsive documents do in fact exist. Charter has not stated otherwise. Because Plaintiffs certainly have no ability to access responsive documents through

17

previously used software, Charter must do so.  Plaintiffs' motion to compel will be granted as to request for production no. 16.

Regarding request for production no. 30, the Court rejects the notion that Plaintiffs' position is based on pure speculation.  To the contrary, Plaintiffs' position that Charter has not produced all training materials responsive to this request is based on the deposition testimony of Charter's corporate representative, Iba Dawson.

In the parties' February 17, 2021, discovery stipulation, Charter agreed to provide: (1) "All commission statements for 180 randomly sampled employees in California comprised of 94 'Direct Sales Employees' and 86 'Commission Employees,' ECF No. 112, pg. 2, ¶ 1(c); and (2) "All training material associated with a multi-day, one-week, or multi-week orientation or training 'session' that Charter used from November 19, 2014, through the date of production for each 'Direct Sales Employee' position," id. at 4, ¶ 3(d).  Plaintiffs' motion to compel will be granted as to request for production no. 30 and Charter will be directed to produce documents, without objection, consistent with the parties' agreement.

### c.  Request for Production Nos. 35, 36, and 37

These three requests for production of documents were served on November 4, 2020.  See ECF No. 125-1, pg. 3 (Soderstrom declaration).  Charter responded on December 4, 2020.  See id.  In request for production no. 35, Plaintiffs seek:

> All DOCUMENTS related to YOU giving COMMISSION EMPLOYEES a copy of the commission plan electronically.
> For avoidance of doubt, this requests seeks the records, information, and/or data related to the Synygy, PeopleSoft, or other program or system YOU used to give a copy of a commission plan to a COMMISSION EMPLOYEE electronically as described in YOUR supplemental response to Sinclair Interrogatory No. 12 dated November 2, 2020.

ECF No. 125-2, pg. 45 (Exhibit 5 to Soderstrom declaration).

In request for production no. 36, Plaintiffs seek:

> All DOCUMENTS related to YOU obtaining from COMMISSION EMPLOYEES an electronic acknowledgement of receipt of a commission plan.
> For avoidance of doubt, this requests seeks the records, information, and/or data related to the Synygy, PeopleSoft, or other program or system YOU used to obtain from a COMMMISSION EMPLOYEE an electronic acknowledgement of receipt as described in YOUR supplemental response to

18

1    Sinclair Interrogatory No. 14 dated November 2, 2020.

2         Id. at 45-46.

3    As to both, Charter responded that it will produce responsive documents.  See id. at 45, 46.

4         In request for production no. 37, Plaintiffs seek:

5              All DOCUMENTS constituting or reflecting a "signed receipt" for a
         commission plan that YOU obtained from a COMMISSION EMPLOYEE.
6              For avoidance of doubt, this request seeks any signed copy of the
         acknowledgement page in a commission plan that Charter stores in paper or
7         electronic form in a COMMISSION EMPLOYEE's personnel file or in
         another location.
8
         Id. at 46.
9

10   In response, Charter stated that it has already produced "documents describing these programs."

11   Id. at 47.  Charter also objected to the production of paper copies of signed acknowledgement

12   pages as burdensome and oppressive because "it would require an individual examination of all

13   physical files related to potentially thousands of employees in hundreds of different locations."

14   Id.

15        As to these requests, Plaintiffs contend:

16              . . . Charter waived its objections by agreeing to "produce responsive
         documents within its possession, custody or control" for RFPs 35 and 36.
17         But it failed to do so. In the February 17 Stipulation, Charter again agreed to
         produce "All commission plan 'data' (captured via Synygy, Optymyze,
18         and/or Callidus)" for a 2% sampling by no later than March 8, 2021.
         Charter's designated witness (Brad Beck) said he has seen reports exported
19         from Synygy, Optymyze, and Callidus. But instead of producing the actual
         "native" reports in its possession showing the actual data captured and
20         maintained by Charter or its vendor, Charter or its counsel instead purported
         to collect and repackage the actual data into a spreadsheet created for
21         purposes of this litigation. The documents/ESI Plaintiffs are seeking and
         Charter agreed to collect and produce represent the *actual* native data that
22         shows whether a putative class member and aggrieved employee
         electronically signed the relevant commission plan documents. Charter still
23         has not produced any of the actual reports it obtained from its Synygy,
         Optymyze, and Callidus portals, and it is improperly trying to repackage the
24         underlying information into a new form (e.g., Charter or counsel-created
         spreadsheet) instead of producing it in its original, native form so Plaintiffs
25         can see what was actually captured. No sampling is needed for the electronic
         reports, and the Court should find Charter waived its request for a sampling
26         by failing to comply with its response served on December 4, 2020 and with
         the February 17 Stipulation. With respect to RFP 37, Charter admitted on
27         April 13, 2021 that it still has not collected the agreed sampling of all of the
         physically signed agreements/receipts that exist despite agreeing to do so by
28         March 8, 2021. Plaintiffs remain willing to accept a sampling of *physically*

                                      19

*signed* commission agreements or receipts that exist. Charter also has not produced all of the relevant Synygy, Optymyze, and Callidus training class materials or "guide" that it has used with putative class members. Charter's own training transcripts show the training classes it has used, but it has not produced and materials or guides for such classes. Charter has tried to rely on old versions of these guides in its defense, and can easily identify, collect, and produce a complete set of guides that were used during the class period.

ECF No. 125-1, pgs. 3-4 (Soderstrom declaration).

As to all three documents requests, Charter responds:

Charter has produced both hard copies of signed commission plan acknowledgments and the electronic commission plan acknowledgments in the format maintained by Charter for nearly all of the individuals in the sampling agreed upon by Plaintiffs. As stated numerous times to Plaintiffs' counsel, Charter is currently locating and producing the small handful of remaining documents/information. . . . Contrary to Plaintiffs' speculative belief, the electronic acknowledgments have been produced in the format in which Charter maintains that information. Charter is under no obligation to recreate data in a manner that Plaintiffs prefer. Charter has also produced all of the Synygy, Optymyze and Callidus training guides in its possession, custody or control. Plaintiffs' motion should be denied as to this request as well.

ECF No. 125, pgs. 31, 32, 34 (joint statement).

In the February 17, 2021, discovery stipulation, Charter agreed to produce: "All commission plan 'data' (captured via Synygy, Optymyze, and/or Callidus) for 180 randomly sampled employees in California comprised of 94 'Direct Sales Employees' and 86 'Commission Employees,' ECF No. 112, pg. 3, ¶ 1(d). Charter admits that it has not complied with this agreement by stating that "nearly all" information has been produced. And Charter has not sufficiently explained why the "native" data cannot be produced. Charter will be ordered to live up to its end of the agreement and produce the documents and/or data responsive to these requests consistent with the parties' agreement. Given the parties' stipulation to produce documents over a limited sampling of 180 employees, Charter's objection that collecting responsive data would be burdensome is overruled.

d. Request for Production Nos. 50, 51, 52, and 53

These document requests were served on February 24, 2021, in response to Charter's supplemental responses to Plaintiff Harper's interrogatory nos. 5, 6, and 7, that identify certain putative class members Charter contends are bound by arbitration agreements. See ECF

1    No. 125-1, pg. 4 (Soderstrom declaration).  Charter served responses on March 26, 2021.  <u>See</u> <u>id.</u>

2           In request for production no. 50, Plaintiffs seek:

3                All DOCUMENTS that evidence, refer, or relate to a purported
agreement to arbitrate between YOU and a DIRECT SALWS EMPLOYEE.

4               This request seeks, without limitation, each email, notice,
acknowledgement, physically or electronically signed copy, data record, opt

5          out, or other document that shows or suggests a DIRECT SALES
EMPLOYEE had notice of and agree to or opted out of any version of an

6          agreement to arbitrate (including but not limited to V1 effective 12/01/2014,
V1 effective 12/16/2016, V2 effective 1/3/2017, V3 effective 10/6/2017, and

7          Solution Channel).

8           ECF No. 125-2, pg. 51 (Exhibit 6 to Soderstrom declaration).

9    In request for production no. 51, Plaintiffs seek:

10               All DOCUMENTS that evidence, refer, or relate to any purported
waiver of bringing or participating in a class action by a DIRECT SALES

11          EMPLOYEE.

12           <u>Id.</u> at 52.

13    In request for production no. 52, Plaintiffs seek:

14               All DOCUMENTS that evidence, refer, or relate to a purported
agreement to arbitrate between YOU and a COMMISSION EMPLOYEE.

15               This request seeks, without limitation, each email, notice,
acknowledgement, physically or electronically signed copy, data record, opt

16          out, or other document that shows or suggests a COMMISSION
EMPLOYEE had notice of and agree to or opted out of any version of an

17          agreement to arbitrate (including but not limited to V1 effective 12/01/2014,
V1 effective 12/16/2016, V2 effective 1/3/2017, V3 effective 10/6/2017, and

18          Solution Channel).

19           <u>Id.</u> at 52-53.

20    In request for production no. 53, Plaintiffs seek:

21               All DOCUMENTS that evidence, refer, or relate to any purported
waiver of bringing or participating in a class action by a COMMISSION

22          EMPLOYEE.

23           <u>Id.</u> at 53.

24

25    In its March 26, 2021, responses to these document requests, Charter provided the same response

26    as follows subject to objections:

27               . . .Charter already produced a list of all putative class members that
are bound by arbitration agreement (CHA/HAR 031916-031917) as well as

28          copies of the responsive arbitration agreement (CHA/HAR 035997-036007).

Id. at 51, 52, 53, and 54.

In the current motion to compel, Plaintiffs contend that Charter refused to meet and confer on these document requests, instead standing on its position that it should not be required to produce responsive documents until after class certification is decided. See ECF No. 125-1, pg. 4 (Soderstrom declaration). In the joint statement, Charter responds as follows for all four requests:

> Charter supplemented the complete class list, which includes all putative class members, with detailed information showing who is bound by an arbitration agreement, and which arbitration agreement applies. Charter has also produced an exemplar of each arbitration agreement that applied/applies to each employee. Plaintiffs have made no showing as to why such information is inadequate, or any argument to defeat Defendant's objections that producing arbitration agreements for over 9,000 employees is not burdensome or oppressive. To the extent Plaintiffs believe they will have grounds to object to the use of this data as evidence in support of a motion that has not yet been filed, Plaintiffs are free to file objections to evidence. But they may not obtain a ruling related to evidence in the guise of this motion to compel discovery. This is not the proper vehicle for such arguments.

ECF No. 125, pgs. 36, 37, 38, and 39 (joint statement).

Plaintiffs' seek through requests for production nos. 50-53 actual documents and/or electronic data. Charter's offer of a putative list of class members is non-responsive. Similarly, an "exemplar" arbitration agreement does not respond to the requests. Charter's current production of a list is non-responsive to the requests at issue. Plaintiffs' motion will be granted as to request for production nos. 50, 51, 52, and 53. Charter will be directed to produce all data and/or documents upon which it may rely in asserting the existence of enforceable arbitration agreement. Such production shall be satisfied by a random 2% sampling (180 putative class members).

**B.**     **Motion for Sanctions**

In their motion for sanctions "and further discovery orders," Plaintiffs seek an order imposing the following eight "sanctions" on Charter for violation of the Court's October 21, 2020, discovery order and the parties' February 17, 2021, discovery stipulation:

> Sanction 1     In opposing class certification, Charter be prohibited from referring to or relying on nay documents or information that

were responsive to Plaintiffs' discovery requests that were the subject of the discovery order and/or stipulation but were not produced or disclosed by March 8, 2021.

Sanction 2    In opposition class certification, Charter be prohibited from arguing or asking the Court to draw an inference that any documents or information that were responsive to Plaintiffs' discovery requests that were the subject of the discovery order and/or stipulation but were not produced or disclosed by March 8, 2021, would weigh against one or more of Rule 23's requirements.

Sanction 3    In opposing class certification, Charter be precluded from arguing that the non-sampling and sampling documents and information that it did produce by March 8, 2021, are not representative of the proposed classes and subclasses.

Sanction 4    In opposing class certification, Charter be prohibited from arguing that Rule 23's requirements are not satisfied because certain putative class members allegedly agreed to arbitrate their claims and/or waived their right to participate in a class or representative action.

Sanction 5    Charter be ordered to promptly collect and produce on a rolling basis the greater of (i) the 10% court-ordered sampling or (ii) a sampling percentage that Charter agrees is representative of the class and/or group of covered aggrieved employees in the event that class certification is granted and/or the Court rules that the representative PAGA claims can proceed. The sampling documents shall include: wage statements, offer letters, commission earning statements, commission plan acknowledgement "data," physically signed commission plan documents, and training transcripts. Charter's production shall conclude no later than 21 calendar days after the date of the Court's class certification and/or PAGA order.

Sanction 6    Charter be ordered by May 10, 2021, to identify on a privilege log all communications with the representative who signed the verification (Jametra Shanks) that were related to Charter's preparation, review, and approval of each supplemental interrogatory response served on November 2, 2020, February 11, 2021, and February 19, 2021.

///

Sanction 7    Charter be ordered to respond substantively and in writing to Plaintiffs' future discovery meet and confer correspondence within three court days.

Sanction 8    Charter be ordered to pay the reasonable expenses, including attorneys' fees, incurred by Plaintiffs due to Charter's failure to fully comply with the discovery order and/or discovery stipulation.

ECF No. 118, pgs. 2-3.

23

In opposition Plaintiffs' motion, Charter first argues the motion was improperly noticed under Eastern District of California Local Rule 251(e) on just 14 days' notice. See ECF No. 126, pg. 5. Under Local Rule 251, discovery motions are generally proper on 21 days' notice. See Local Rule 251(a). An exception to this rule is when "the only relief sought by the motion is the imposition of sanctions." Local Rule 251(e) (emphasis added). Here, Plaintiffs acknowledge that they do not seek only sanctions. Specifically, Plaintiffs' motion is captioned: "Plaintiffs' Motion for Evidentiary Sanctions and Further Discovery Orders." ECF No. 118, pg. 1. Thus, it is clear Plaintiffs' are not seeking only sanctions and, for this reason, Plaintiffs' motion is not proper on the 14 days' notice given. Plaintiffs' non-compliance with the notice provisions of Local Rule 251 is a sufficient reason to deny Plaintiffs' motion for sanctions and other relief without prejudice.

Moreover at this juncture, the Court is not **yet** inclined to consider Plaintiffs' requests as related to Sanctions 1, 2, 3, 4, 5, 6, and 7. Plaintiffs' motion will be denied without prejudice as to such sanctions requests. The Court will, however, impose appropriate monetary sanctions consistent with Sanction 8 requested by Plaintiffs. Plaintiffs' counsel will be directed to file a declaration of costs and expenses associated with the current motions and Charter will be provided an opportunity to respond.

### III. CONCLUSION

Charter appears to be engaging in delaying tactics regarding, in particular, discovery associated with sampling of employee data which would support Plaintiffs' motion for class certification. Following the hearing on the prior discovery motions, the Court ordered discovery be provided by November 2, 2020. Instead of providing discovery, Charter served supplemental responses on November 2, 2020, indicating that it will provide discovery at some unspecified time in the future. Nothing was provided by November 2, 2020. Plaintiffs could have immediately sought Rule 37 sanctions for Charter's non-compliance but did not. Instead, Plaintiffs engaged in further meet-and-confer efforts culminating in the February 17, 2021, discovery agreement which reduced the sampling size from 10% to 2% and required discovery

be provided by March 8, 2021. As part of that agreement, and in a further sign of good faith, Plaintiffs agreed to withdraw a pending motion for Rule 37 sanctions. Charter failed to produce documents by the agreed date and this motion followed. The Court will now reduce the parties' February 17, 2021, discovery stipulation to a formal order.

Accordingly, IT IS HEREBY ORDERED that:

1. The parties' February 17, 2021, discovery stipulation, ECF No. 112, is adopted as the order of this Court, with the exception of the date by which discovery would be produced;

2. All discovery agreed to be provided by Charter in the February 17, 2021, agreement and ordered below shall be produced **no later than 5:00 p.m. Pacific Daylight Time on May 10, 2021**;

3. Plaintiffs' motion to compel, ECF No. 117, is granted as outlined below;

4. Plaintiffs' motion to compel is granted as to interrogatory nos. 2 and 3; Charter's objections are waived; Charter is ordered to produce an updated Class List, as that phrase is used in the parties' stipulation, that identifies any "Direct Sales Employees" and "Commission Employees" in California who were hired since December 10, 2020;

5. Plaintiffs' motion to compel is granted as to interrogatory no. 5; Charter's objections are waived; Charter is ordered to provide responsive information;

6. Plaintiffs' motion to compel is granted as to request for production no. 1; Charter is ordered to produce all responsive documents and/or raw data, whether in electronic form or in paper, regardless of the vendor or program used to prepare or store such information, related to Plaintiff Harper's employment with Charter;

7. Plaintiffs' motion to compel is granted as to request for production nos. 16 and 30; Charter is ordered to produce all documents responsive to these requests, consistent with the parties' discovery stipulation; if it continues to be Charter's position that all responsive documents have been produced, it shall so confirm in writing without objection by the deadline specified above;

8. Plaintiffs' motion to compel is granted as to request for production nos. 35,

36, and 37; Charter is ordered to produce all documents responsive to these requests for a 2% random sampling of putative class member employees, consistent with the parties' discovery stipulation, without objection;

9. Plaintiffs' motion to compel is granted as to request for production nos. 50, 51, 52, and 53; Charter is ordered to produce all responsive documents for a 2% random sampling; Charter shall produce any documents or other information is may rely upon to assert and prove the existence of enforceable arbitration agreements;

10. Except for monetary sanctions, Plaintiffs' motion for sanctions and other relief, ECF No. 118, is denied without prejudice to re-filing consistent with the notice provisions of Local Rule 251(a); and

11. As to monetary sanctions, Plaintiffs shall file and serve a declaration of costs and expenses on or before May 10, 20201; Charter may file and serve a response within 3 days of the date of service of Plaintiffs' declaration; upon the filing of the parties' declarations, the Court will, by separate order and without a subsequent hearing, impose appropriate monetary sanctions against Charter.

Dated: May 4, 2021

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE