**Jamin S. Soderstrom, Bar No. 261054**
**SODERSTROM LAW PC**
**1 Park Plaza, Suite 600**
**Irvine, California 92614**
**Tel:    (949) 667-4700**
**Fax:    (949) 424-8091**
**jamin@soderstromlawfirm.com**

*Counsel for Plaintiffs, Proposed Class Members,*
*and Aggrieved Employees*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LIONEL HARPER, DANIEL SINCLAIR, HASSAN TURNER, LUIS VAZQUEZ, and PEDRO ABASCAL, individually and on behalf of all others similarly situated and all aggrieved employees,** | **Case No. 2:19-cv-00902-WBS-DMC** |
| **Plaintiffs,** | **SECOND AMENDED CLASS AND PAGA ACTION COMPLAINT** |
| **v.** | |
| **CHARTER COMMUNICATIONS, LLC,** | **DEMAND FOR JURY TRIAL** |
| **Defendant.** | |

Plaintiffs LIONEL HARPER ("Harper"), DANIEL SINCLAIR ("Sinclair"), HASSAN TURNER ("Turner"), LUIS VAZQUEZ ("Vazquez"), and PEDRO ABASCAL ("Abascal") (collectively, "Plaintiffs"), bring this action against Defendant CHARTER COMMUNICATIONS, LLC ("Charter"), and allege as follows:

## JURISDICTION & VENUE

1.      This action is brought by Plaintiffs individually and on behalf of a class of similarly situated employees who performed work for Charter in California during the relevant time periods. The Court has general jurisdiction over this action under Code Civ. Proc., § 410.10. The amounts of wages, damages, and penalties sought by Plaintiffs exceed the jurisdictional minimum and will be established according to proof at trial.

2.      Venue is proper under Code Civ. Proc., §§ 395 and 395.5, because Charter resides in this county and because a substantial portion of the events forming the basis of this action occurred in this county.

3.      On September 14, 2018, Harper complied with the requirements of Labor Code section 2699.3(a) by providing written notice via online filing to the Labor and Workforce Development Agency ("LWDA"), and via certified mail return receipt requested to Charter, of the specific provisions of the Labor Code alleged to have been violated, including the facts and theories that support the alleged violations. Harper did not receive notice from the LWDA that it intended to investigate the violations alleged in Harper's written notice. Harper therefore has complied with Labor Code section 2699.3's notice requirements and is authorized to commence a civil action under the Private Attorneys General Act, Lab. Code § 2698 et seq. ("PAGA"). On September 9, 2020, Harper and Sinclair filed an amended written PAGA notice with the LWDA and provided a copy via certified mail return receipt requested to Charter. A copy of the amended written PAGA notice, which includes a copy of the original written PAGA notice, is attached as **Exhibit 1**.

4.      On November 19, 2018, Harper filed with JAMS a Demand for Arbitration and Request for Ruling as to Inarbitrability based on a delegation requirement in Harper and Charter's written agreement to arbitrate. The Honorable Rebecca J. Westerfield (Retired) was appointed by JAMS as the arbitrator. On April 25, 2019, the arbitrator issued a final award, styled an Order Dismissing Arbitration,

dismissing the arbitration in its entirety for lack of arbitration jurisdiction because the agreement to arbitrate was null and void based on "poison pill" provision and none of the claims were arbitrable. A copy of the final award issued by the arbitrator is attached as **Exhibit 2**.

## PARTIES

5.     Plaintiff LIONEL HARPER is a resident of California. Harper worked for Charter as an Account Executive ("AE") salesperson in California from September 2017 to March 2018.

6.     Plaintiff DANIEL SINCLAIR is a resident of California. Sinclair worked for Charter as an AE salesperson in California from January 2015 to April 2017.

7.     Plaintiff HASSAN TURNER is a resident of California. Turner worked for Charter as a Direct Sales Rep ("DSR") salesperson in California from June 2018 to October 2018.

8.     Plaintiff LUIZ VAZQUEZ is a resident of California. Vazquez worked for Charter as a DSR salesperson in California from November 2019 to March 2020.

9.     Plaintiff PEDRO ABASCAL is a resident of California. Abascal worked for Charter as a DSR salesperson in California from November 2019 to January 2020.

10.     Defendant CHARTER COMMUNICATIONS, LLC is a company doing business in California. CHARTER COMMUNICATIONS, LLC employed Plaintiffs and similarly situated individuals in California.

## BACKGROUND

11.     Charter markets and sells various products and services, including television, internet, and phone services, in California and nationwide.

12.     Plaintiffs worked for Charter in California as salespersons. Harper worked for Charter as an AE in Redding from September 2017 to March 2018. Sinclair worked for Charter as an AE in Redding from January 2015 to December 2016. Turner worked for Charter as a DSR in Irwindale from June to October 2018. Vazquez worked for Charter as a DSR in Bakersfield from November 2019 to March 2020. Abascal worked for Charter as a DSR in Anaheim from November 2019 to January 2020.

13.     **Misclassified as Exempt.** Charter classified Plaintiffs and other employees who held AE, DSR, and similar positions (including Community Sales Specialist and Multi-Tenant Sales Rep) as "exempt" outside salespersons during their entire employment. But Plaintiffs and similarly situated

employees were not exempt outside salespersons during their entire employment. Charter required and expected them to participate in at least two full weeks of mandatory orientation and training activities ("training weeks"). Charter required and expected them to spend most of their working hours during their training weeks performing activities inside its offices and observing experienced employees while "shadowing" them inside and outside its offices. Charter did not require or expect them to perform "outside sales" activities for more than 50% of their working hours during their training weeks," and Charter misclassified them as exempt during their training weeks.

14.     During their employment, Plaintiffs worked with numerous other employees who were subject to Charter's same policies and practices and who were also misclassified as exempt outside salespersons during their training weeks. Plaintiffs' working experience gave them a thorough understanding of Charter's employment policies and practices with respect to employees who Charter classified as exempt outside salespersons during their training weeks.

15.     Harper and Sinclair also were misclassified as exempt outside salespersons during their post-training weeks. Charter assigned them numerous duties following their training weeks that were not "outside sales" duties, the performance of which caused them to spend a majority of their working hours each day or week performing inside and non-sales duties instead of outside sales duties. These inside and non-sales duties included, but were not limited to, validating leads lists, calling potential and current customers on the phone, emailing potential and current customers, drafting written proposals, team meetings, various administrative matters, customer service, and installation scheduling activities.

16.     **Commission Violations.** During their employment, Plaintiffs and other employees (including but not limited to employees who Charter classified as "outside salespersons") were also eligible to receive and did receive incentive compensation in the form of commission and commission allowance/bonus wages. But Charter's commission payment practices and policies were unlawful and resulted in the late and underpayment of commission and commission allowance/bonus wages.

17.     First, Charter did not give Plaintiffs and other commission-eligible employees a fully signed copy of the commission agreements that applied to their positions and that set forth the methods by which their commission and commission allowance/bonus wages would be computed and paid. Second, Charter did not obtain from Plaintiffs and other commission-eligible employees a signed receipt

showing Charter gave them a fully signed commission agreement. Third, Charter failed timely calculate and pay all commission and commission allowance/bonus wages that were due to Plaintiffs and other commission-eligible employees. Fourth, Charter paid commission and commission allowance/bonus wages on a monthly or quarterly basis, weeks after the wages were reasonably calculable and earned, instead of paying them for the pay period in which they were earned. Fifth, Charter's commission wage statements did not accurately itemize the inclusive dates of the period for which employees were being paid. Sixth, Charter's commission wage statements did not accurately itemize the gross or net wages being paid to the employee during the pay period when commission or commission allowance/bonus wages were paid separately from regular bi-weekly wages.

18.     Plaintiffs personally experienced and witnessed Charter engaging in these unlawful and unfair business practices, and Charter continues to engage in these unlawful and unfair business practices to this day.

**CLASS ACTION ALLEGATIONS**

19.     Plaintiffs bring this action as a class action under Federal Rule of Civil Procedure 23 on behalf of two overarching classes and various subclasses of employees who worked for Charter in California at any time between November 19, 2014 through final judgment (the "Class Period"). The members of the classes and subclasses are so numerous that joinder of all class members is impracticable. Plaintiffs reserve the right to amend the following class and subclass definitions before the Court determines whether class certification is appropriate, or thereafter upon leave of Court:

**Outside Salesperson Class**

All persons who worked for Charter in California at any time between November 19, 2014 and the date of the certification order in a position that Charter classified as "exempt" based on the outside salesperson exemption.

**Minimum and Overtime Wages Subclass**

All Outside Salesperson Class members who worked over 8 hours in a day or over 40 hours in a week during their training weeks.

///

///

1    **Meal Period Subclass**

2    All Outside Salesperson Class members who worked over 5 hours at least one day during

3    their training weeks but were not provided a designated 30-minute off-duty meal period.

4    **Rest Break Subclass**

5    All Outside Salesperson Class members who worked over 3.5 hours at least one day

6    during their training weeks but were not provided a designated 10-minute off-duty rest

7    break.

8    **Wage Statement Subclass**

9    All Outside Salesperson Class members who received at least one wage statement

10    covering a training week.

11    **Termination Subclass**

12    All Outside Salesperson Class members whose employment has terminated.

13    **UCL Subclass**

14    All Outside Salesperson Class members who worked between November 19, 2014 and

15    November 18, 2015.

16    **Commissions Class**

17    All persons who worked for Charter in California at any time between November 19, 2014 and

18    the date of the certification order in a position that was eligible to earn commissions.

19    **Monthly Commission Period Subclass**

20    All Commissions Class members who were paid at least one commission or commission

21    allowance based on a monthly or quarterly commission period.

22    **Wage Statement Subclass**

23    All Commissions Class members who received a wage statement that included a monthly

24    or quarterly commission or commission allowance payment.

25    **Termination Subclass**

26    All Commissions Class members whose employment has terminated.

27    ///

28    ///

SECOND AMENDED CLASS AND PAGA ACTION COMPLAINT

**UCL Subclass**

All Commissions Class members who worked between November 19, 2014 and November 18, 2015.

20.    Common questions of law and fact exist and include, but are not limited to:

a.    whether Charter improperly classified Plaintiffs and other employees as "exempt" outside salespersons during their training weeks;

b.    whether Charter accurately kept track of Plaintiffs' and other outside salespersons' working hours during their training weeks;

c.    whether Charter paid minimum wages for all hours worked by Plaintiffs and other outside salespersons during their training weeks;

d.    whether Charter paid overtime wages for all hours worked over 8 in a workday and 40 in a workweek by Plaintiffs and other outside salespersons during their training weeks;

e.    whether Charter provided Plaintiffs and other outside salespersons, during their training weeks, with timely, uninterrupted, off-duty 30-minute meal periods each day they worked at least 5 hours in a workday, and a second meal period each day they worked at least 10 hours in a workday, or paid them an additional hour of pay at their regular rate on each day such meal periods were not provided;

f.    whether Charter provided Plaintiffs and other outside salespersons, during their training weeks, with timely, uninterrupted, off-duty 10-minute rest breaks for every 4 hours of work, or major fraction thereof, or paid them an additional hour of pay at their regular rate on each day such rest periods were not provided;

g.    whether Charter paid Plaintiffs and other outside salespersons during their training weeks all wages due upon termination, or paid waiting time penalties when such wages were not timely paid;

h.    whether Charter timely paid all commission and commission allowance/bonus wages for the pay periods in which they were earned;

i.       whether Charter's commission wage statements accurately itemized the inclusive dates of the period for which employees were being paid;

j.       whether Charter's commission wage statements accurately itemized the gross or net wages being paid to the employee during the pay period when commission or commission allowance/bonus wages were paid separately from regular bi-weekly wages; and

k.       whether Charter paid Plaintiffs and other employees who were eligible for commission wages all wages due upon termination, or paid waiting time penalties when such wages were not timely paid.

21.    Plaintiffs are members of each of the classes and subclasses they seek to represent and Plaintiffs suffered harm and damages as a result of Charter's conduct alleged herein.

22.    Plaintiffs' claims are typical of the claims of other class members and Plaintiffs have the same interests as other class members.

23.    Plaintiffs will fairly and adequately represent and protect the interests of the class members. Plaintiffs have retained able counsel experienced in employment and class action litigation. Plaintiffs' interests are not antagonistic to the interests of other class members.

24.    The questions of fact and law common to Plaintiffs and members of the classes and subclasses predominate over any questions affecting only individual members.

25.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all class members is impractical. Moreover, since the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation makes it practically impossible for the class members to individually redress the wrongs committed against them.

26.    The classes and appropriate subclasses are readily definable and prosecution of this action as a class action will eliminate the possibility of repetitive litigation. There will be no difficulty in the management of this action as a class action.

///

///

SECOND AMENDED CLASS AND PAGA ACTION COMPLAINT

## CAUSES OF ACTION

### Count One

### Failure to Pay Minimum Wages for All Hours Worked

27.     Plaintiffs incorporate all prior paragraphs.

28.     Labor Code sections 1182.12, 1194, and 1197 requires employers to pay at least the legal minimum wage for all hours worked by nonexempt employees in California.

29.     As a matter of policy and practice, Charter misclassified Plaintiffs and members of the Outside Salesperson Class as exempt employees during multiple mandatory training weeks and failed to pay them the required minimum wages for all hours worked. Specifically, but without limitation, Charter classified Plaintiffs and Outside Salesperson Class members as exempt employees during their training weeks and required and expected them to work a full day of training and then complete homework after the workday ended. The training and homework required them to work more than 8 hours in a day and 40 hours in a week, but Charter did not keep track of or pay Plaintiffs or Outside Salesperson Class members all wages owed during training. Consistent with Charter's requirements and expectations, Plaintiffs and Outside Salesperson Class members did not spend a majority of their working hours performing both "outside" and "sales" activities during their training weeks.

30.     As a matter of policy and practice, Charter continued to misclassify Harper and Sinclair as exempt employees during their post-training weeks, and failed to properly keep track of all hours worked and pay them the required minimum wages for all hours worked. Harper and Sinclair routinely worked over 8 hours in a day and 40 hours in a week during their post-training weeks, but they were not required or expected to spend, and they did not spend, a majority of their working hours each week performing "outside sales" activities. Instead, they were required and expected to spend, and they did spend, a majority of their working hours each week performing "inside" activities at Charter's offices or a home office and performing non-sales activities such as customer service and installation scheduling.

31.     As a result of these policies and practices, Charter did not pay Plaintiffs and Outside Salesperson Class members all of the minimum wages they were due for their training weeks. Charter

also did not pay Harper and Sinclair all of the minimum wages they were due for their post-training weeks.

32.     Plaintiffs and Outside Salesperson Class members were deprived of the minimum wages they were owed for their training weeks as a direct result of Charter's unlawful actions. And Harper and Sinclair also were deprived of the minimum wages they were owed for their post-training weeks as a direct result of Charter's unlawful actions. Charter has violated Labor Code sections 1182.12, 1194, and 1197, and under Labor Code section 1194.2, Plaintiffs and Outside Salesperson Class members are entitled to recover all unpaid minimum wages, liquidated damages, interest, costs, and reasonable attorneys' fees.

## Count Two

### Failure to Pay Overtime Wages for All Overtime Hours Worked

33.     Plaintiffs incorporate all prior paragraphs.

34.     Labor Code section 510 requires employers to compensate all nonexempt employees at 1.5 times their regular hourly rate for all hours worked over 8 hours in a day and over 40 hours in a week, and two times their regular hourly rate for all hours worked over 12 hours in a day or over 8 hours on the seventh day of the week.

35.     As a matter of policy and practice, Charter failed to pay Plaintiffs and Outside Salesperson Class members the required overtime wages for all hours worked during their training weeks. Specifically, but without limitation, Charter classified Plaintiffs and Outside Salesperson Class members as exempt employees during their training weeks and required and expected them to work a full day of training and then complete homework after the workday ended. The training and homework required them to work more than 8 hours in a day and 40 hours in a week, but Charter did not keep track of or pay Plaintiffs or Outside Salesperson Class members any overtime wages owed for the time worked over 8 hours in a day and 40 hours in a week during training. Consistent with Charter's requirements and expectations, Plaintiffs and Outside Salesperson Class members did not spend a majority of their working hours performing both "outside" and "sales" activities during their training weeks.

36.     As a matter of policy and practice, Charter also misclassified Harper and Sinclair as exempt during their post-training weeks and failed to properly keep track of all hours worked and pay

SECOND AMENDED CLASS AND PAGA ACTION COMPLAINT

overtime wages for all hours worked over 8 hours in a day or 40 hours in a week. Harper and Sinclair routinely worked over 8 hours in a day and 40 hours in a week during their post-training weeks, but they were not required or expected to spend, and they did not spend, a majority of their working hours performing both "outside" and "sales" activities. Consistent with Charter's requirements and expectations, they spent a majority of their time performing "inside" activities at Charter's offices or a home office and performing non-sales activities such as customer service and installation scheduling.

37.     As a result of these policies and practices, Charter did not pay Plaintiffs and Outside Salesperson Class members all of the overtime wages they were due for their training weeks. Charter also did not pay Harper and Sinclair all of the overtime wages they were due for their post-training weeks.

38.     Plaintiffs and Outside Salesperson Class members were deprived of the overtime wages they were owed for their training weeks as a result of Charter's unlawful actions. And Harper and Sinclair also were deprived of the overtime wages they were owed for their post-training weeks as a direct result of Charter's unlawful actions. Charter has violated Labor Code sections 510 and 1197, and Plaintiffs and Outside Salesperson Class members are entitled to recover all unpaid overtime wages, interest, costs, and reasonable attorneys' fees.

## **Count Three**

### **Failure to Provide Meal Periods or Pay Premium Wages In Lieu Thereof**

39.     Plaintiffs incorporate all prior paragraphs.

40.     Labor Code section 512 requires employers to provide nonexempt employees an off-duty, uninterrupted 30-minute meal period if the employee works more than five hours in a day, and a second off-duty, uninterrupted 30-minute meal period if the employee works more than 10 hours in a day. These meal periods must be free of all work duties.

41.     Charter misclassified Plaintiffs and Outside Salesperson Class members during their training weeks because it did not require and expect them to spend, and they did not spend, a majority of their working hours performing both "outside" and "sales" activities. Charter also misclassified Harper and Sinclair during their post-training weeks because it did not require and expect them to spend, and they did spend, a majority of their working hours performing both "outside" and "sales" activities.

SECOND AMENDED CLASS AND PAGA ACTION COMPLAINT

42.     As a result of the misclassification, Charter failed to provide timely, off-duty, uninterrupted 30-minute meal periods to Plaintiffs and Outside Salesperson Class members during their training weeks, and Charter failed to compensate them one additional hour of pay at their regular hourly rate for each meal period that was not provided or was missed, shortened, interrupted, on-duty, or untimely during their training weeks. Charter also failed to provide timely, off-duty, uninterrupted 30-minute meal periods to Harper and Sinclair during their post-training weeks, and Charter failed to compensate them one additional hour of pay at their regular hourly rate for each meal period that was not provided or was missed, shortened, interrupted, on-duty, or untimely during their post-training weeks.

43.     Charter's meal period policies did not cover or apply to Plaintiffs and Outside Salesperson Class members based on the exempt classification. Charter did not require or allow Plaintiffs and Outside Salesperson Class members to clock-out and clock-in for any meals that were taken, did not accurately record the existence and length of any meals taken, and knowingly suffered, permitted, or required work to be performed during what should have been an off-duty 30-minute meal period. Charter failed to provide compliant meal periods to Plaintiffs and Outside Salesperson Class members during their training weeks, and to Harper and Sinclair during their post-training weeks.

44.     Charter never paid Plaintiffs or Outside Salesperson Class members any premium wages for meal periods that were not provided or that were untimely, missed, shortened, interrupted, or on-duty during their training weeks. Charter also never paid Harper and Sinclair any premium wages for meal periods that were not provided or that were untimely, missed, shortened, interrupted, or on-duty during their post-training weeks.

45.     Charter has violated Labor Code sections 512 and 226.7, and Plaintiffs and Outside Salesperson Class members are entitled to recover premium wages in the amount of one additional hour of pay at their regular rates of pay for each violation during their training weeks, as well as costs and reasonable attorneys' fees. Harper and Sinclair are also entitled to recover premium wages in the amount of one additional hour of pay at their regular rates of pay for each violation during their post-training weeks, as well as costs and reasonable attorneys' fees.

///

**Count Four**

**Failure to Provide Rest Breaks or Pay Premium Wages In Lieu Thereof**

46.     Plaintiffs incorporate all prior paragraphs.

47.     Labor Code section 226.7 requires employers to provide nonexempt employees a rest period mandated by an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health. Under paragraph 12 of the governing Industrial Wage Order, employers must permit nonexempt employees to take 10 minutes of rest for every four hours worked, taken in the middle of the work period unless impracticable. Under Labor Code section 226.7 and paragraph 12 of the governing Industrial Wage Order, when employers do not provide compliant rest breaks, they must pay employees an additional hour of pay at the employees' regular rate of pay for each violation.

48.     Charter misclassified Plaintiffs and Outside Salesperson Class members during their training weeks because it did not require and expect them to spend, and they did not spend, a majority of their working hours performing both "outside" and "sales" activities. Charter also misclassified Harper and Sinclair during their post-training weeks because it did not require and expect them to spend, and they did spend, a majority of their working hours performing both "outside" and "sales" activities.

49.     As a result of the misclassification, Charter failed to provide timely, off-duty, uninterrupted 10-minute rest breaks to Plaintiffs and Outside Salesperson Class members during their training weeks, and Charter failed to compensate them one additional hour of pay at their regular hourly rate for each rest break that was not provided or was missed, shortened, interrupted, on-duty, or untimely during their training weeks. Charter also failed to provide timely, off-duty, uninterrupted 10-minute rest breaks to Harper and Sinclair during their post-training weeks, and Charter failed to compensate them one additional hour of pay at their regular hourly rate for each rest break that was not provided or was missed, shortened, interrupted, on-duty, or untimely during their post-training weeks.

50.     Charter's rest break policies did not cover or apply to Plaintiffs and Outside Salesperson Class members based on the exempt classification. Charter did not require or allow Plaintiffs and Outside Salesperson Class members to clock-out and clock-in for any rest breaks that were taken, did

not accurately record the existence and length of any rest breaks taken, and knowingly suffered, permitted, or required work to be performed during what should have been an off-duty 10-minute rest break. Charter failed to provide compliant rest breaks to Plaintiffs and Outside Salesperson Class members during their training weeks, and to Harper and Sinclair during their post-training weeks.

51.     Charter never paid Plaintiffs or Outside Salesperson Class members any premium wages for rest breaks that were not provided or that were untimely, missed, shortened, interrupted, or on-duty during their training weeks. Charter also never paid Harper and Sinclair any premium wages for rest breaks that were not provided or that were untimely, missed, shortened, interrupted, or on-duty during their post-training weeks.

52.     Charter has violated Labor Code section 226.7, and Plaintiffs and Outside Salesperson Class members are entitled to recover premium wages in the amount of one additional hour of pay at their regular rates of pay for each violation during their training weeks, as well as costs and reasonable attorneys' fees. Harper and Sinclair are also entitled to recover premium wages in the amount of one additional hour of pay at their regular rates of pay for each violation during their post-training weeks, as well as costs and reasonable attorneys' fees.

### Count Five

**Unlawful Calculation, Deduction, and Payment of Commission Wages**

53.     Plaintiffs incorporate all prior paragraphs.

54.     Charter recruits and incentivizes employees like Plaintiffs by emphasizing their ability to earn incentive compensation such as commissions and bonuses. However, Charter imposes unlawful, unclear, and unfair incentive compensation terms on such employees, and then fails to timely pay all amounts owed under such terms.

55.     Charter does not obtain a fully signed and complete commission agreement from each commission-eligible employee, does not give a fully signed copy to each commission-eligible employee, and does not obtain a signed receipt from each commission-eligible employee.

56.     When Charter pays monthly or quarterly commission or commission allowance/bonus wages, it does not do so on a timely basis because it improperly delays the calculation and payment of such wages by multiple weeks even though the wages are reasonably calculable shortly after the monthly

SECOND AMENDED CLASS AND PAGA ACTION COMPLAINT

or quarterly commission period ends.

57.     **Section 2751.** Under California Labor Code section 2751, when an employer enters into a contract of employment and the contemplated payment method includes commissions, the contract must "set forth the method by which the commissions shall be computed and paid" and the employer "shall give a signed copy of the contract to every employee who is a party thereto and shall obtain a signed receipt for the contract from each employee."

58.     The Labor Code requires a complete commission agreement (include any attachments and addendums) to be signed by both the employer and the employee on or before the date the agreement starts applying to the employee. The Labor Code also requires the employer to obtain a receipt that is signed by the employee, identifies what was signed and when, and is capable of being kept as part of the employee's personnel file and provided to the employee upon request.

59.     Charter violated Section 2751 in multiple ways. First, Charter did not give Plaintiffs and commission-eligible employees fully signed copies of the commission agreements (with attachment and any addendums) on or before the dates agreements became effective and applied to them. Second, Charter did not obtain receipts that were signed by the employee, identified what was signed and when, and were in a form capable of being placed in the employee's personnel file and provided upon request. Third, Charter modified and amended the terms of its commission agreements without providing fully signed copies of the amended documents to, and obtaining signed receipts from, Plaintiffs and commission-eligible employees. Fourth, Charter relied on methods for the timing, calculation, and payment of commission and commission allowance wages that were not clearly and expressly set forth in the applicable commission plan documents and were not expressly and knowingly approved by Plaintiffs and commission-eligible employees in a fully signed writing.

60.     Charter chose not to adopt or use a policy, system, or functionality where employees placed their signatures on the applicable commission agreements, they were provided with a copy of the fully signed agreements, and a copy or receipt was stored in a form that was capable of retention in a personnel file and production upon request.

61.     Even when a fully signed commission agreement did exist (i.e., when an employee physically signed copy and receipt of a commission agreement and Charter placed the receipt in an

SECOND AMENDED CLASS AND PAGA ACTION COMPLAINT

employee's personnel file), Charter did not clearly and specifically set forth in the agreement the timing of when commission and commission allowance/bonus wages would be calculated, earned, and paid.

62.   Plaintiffs and other employees did not expressly or knowingly agree to any delayed calculation, earning, or payment of their commission and commission allowance/bonus wages, and any provision that did provide for delayed calculation, earning, or payment of commission or commission allowance/bonus wages was adhesive, construed strictly against Charter, and unconscionable.

63.   **Section 204.** Under California Labor Code section 204, wages—including commission wages—must be attributed to and paid for the semimonthly pay period in which they were earned.

64.   Charter violated Section 204 each time it failed to pay monthly and quarterly commission and commission allowance/bonus wages for the pay period in which they were earned. Instead of paying commission and commission allowance/bonus wages when they were reasonably calculable and earned, Charter intentionally and unnecessarily delayed calculating and paying Plaintiffs' and commission-eligible employees' commission and commission allowance wages, waiting weeks (and often more than a month) to pay commission and commission allowance wages even though such wages were reasonably calculable and earned on or within several days of the end of the commission period.

65.   **Sections 221, 223, and 224.** California Labor Code sections 221, 223, and 224 protect employees against unlawful deductions of their earned wages. Under Section 221, "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." Relatedly, under Section 223, "Where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract." Section 224 authorizes certain deductions that an employee "expressly authorize[s] in writing," but forbids deductions that amount to a "rebate or deduction from the standard wage . . . pursuant to wage agreement or statute."

66.   Charter did not pay Harper and Sinclair all of the commission wages they were owed. Charter unlawfully and unfairly calculated, deducted, reconciled, clawed back, or reassigned commission wages that were earned by and should have been paid to Harper and Sinclair. Charter violated Sections 221, 223, and 224 when it failed to correctly and fairly calculate and pay Harper and Sinclair the full amounts of commission wages that were or should have been earned, and each time it

deducted, reduced, clawed back, or otherwise reconciled or failed to pay Harper's and Sinclair's full amount of commission wages owed.

67.     Charter has violated Labor Code sections 204 and 2751 for Plaintiffs and all commission-eligible employees. Plaintiffs were not given a fully signed commission agreement (with all attachments and addendums) on or before the dates such agreement became applicable to their employment, they did not give a signed receipt that was capable of being stored in their personnel file and produced upon request, and they did not expressly and knowingly agree to any delayed calculation and payment of commission and commission allowance/bonus wages.

68.     Charter has also violated Labor Code sections 221, 223, and 224 for Harper and Sinclair. Harper and Sinclair are entitled to recover the amount of reductions, deductions, or other reconciliations or reassignments for commission wages unlawfully taken and/or not paid by Charter, as well as interest, costs, and reasonable attorneys' fees.

## Count Six

### Failure to Provide Accurate Wage Statements

69.     Plaintiffs incorporate all prior paragraphs.

70.     Labor Code section 226(a) provides that employers shall furnish their employees with accurate itemized statements in writing showing, among other things, gross wages earned, total hours worked, all deductions, net wages earned, all applicable hourly rates and the corresponding number of hours worked at each hourly rate, and the inclusive dates of the period for which the employee is paid.

71.     Labor Code section 226(e) provides that employees are deemed to suffer injury if an employer fails to provide accurate and complete information as required by any one or more items of subsection (a), and the employee cannot promptly and easily determine from the wage statement alone: the amount of the gross wages or net wages paid to the employee during the pay period, total hours worked by the employee, all deductions, the inclusive dates of the period for which the employee is paid, or all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

72.     Charter failed to provide Plaintiffs, Outside Salesperson Class members, and Commissions Class members with accurate wages statements that reflected the total hours worked, all

deductions, all gross and net wages earned and paid during a pay period (including minimum, overtime, and commission wages), and the inclusive dates of the period for which the employee is being paid monthly or quarterly commission or commission allowance wages.

73.     Specifically: (a) many pre-2016 wage statements did not include the inclusive dates of the relevant pay period and only included the end date; (b) many commission and commission allowance/bonus wages were included on wage statements that were separate from the regular bi-weekly wage statement, and employees needed to examine both statements to try to determine the amount of the gross wages and net wages paid to the employee during the relevant pay period; (c) monthly and quarterly commission and commission allowance/bonus wages were not attributed to and paid for the pay periods in which they were earned; (d) the inclusive dates of the period for which monthly and quarterly commission and commission allowance/bonus wages were paid were not accurately itemized on commission wage statements; (e) prior to 2017,[1] Charter did not accurately keep track of and include on wage statements the total hours worked by Outside Salesperson Class members; (f) wage statements never reflected any premium wages being paid to Plaintiffs and Outside Salesperson Class members for meal periods or rest breaks that were not provided or that were late, shortened, missed, or on-duty, during training weeks (and for Harper and Sinclair during their post-training weeks); and (g) Plaintiffs and class members' final wage statements failed to accurately itemize and pay all overtime, premium, and commission wages due and the inclusive dates of the applicable pay periods, and they failed to pay any waiting time penalties.

74.     Charter's violations were knowing and intentional and several of them are continuing. At all relevant times, Charter has been: aware of Labor Code section 226's requirements; aware that it delays the calculation and payment of earned commission and commission allowance wages by multiple weeks; aware that it does not accurately itemize working hours and rate-of-pay information on wage statements that cover direct salespersons' training weeks; aware that the dates in its commission wage statements do not match the dates for which monthly and quarterly commission and commission

---

[1] Prior to 2017, Charter was required to include on employees' wage statements—including outside salespersons' wage statements—the total hours worked in a pay period. It did not do so for employees it classified as outside salespersons. California Labor Code section 226 was amended effective January 1, 2017 to exempt outside salespersons from the requirement that the total hours worked in each pay period be included on each employee's wage statement.

SECOND AMENDED CLASS AND PAGA ACTION COMPLAINT

allowance wages are calculated, earned, or paid; and represented by experienced counsel and other employees with knowledge of Labor Code section 226's requirements. Charter knows employees cannot quickly and easily determine from each wage statement alone all of the information it is required to accurately itemize on wage statements, and Charter expects them to refer to other sources to determine the information that is required to be accurately itemized on their wage statements.

75.     Charter's failure to accurately itemize the required information on wage statements was not an isolated or unintentional payroll error due to a clerical or inadvertent mistake. Charter failed to adopt a set of policies, procedures, and practices that fully complied with Section 226 prior to the alleged violations, and still has not adopted a compliant set of policies, procedures, and practices.

76.     Plaintiffs, Outside Salesperson Class members, and Commissions Class members suffered injury as a result of Charter's violations and they are entitled to recover the greater of their actual damages or statutory penalties, as well as costs and reasonable attorneys' fees.

## Count Seven

### Failure to Pay All Wages Owed Upon Termination

77.     Plaintiffs incorporate all prior paragraphs.

78.     Labor Code section 201 provides that discharged employees are entitled to be paid all wages due at the time of discharge, and Labor Code section 202 provides that employees who quit without at least 72 hours' notice are entitled to be paid all wages due within 72 hours of quitting. Under Labor Code section 203, willful failure to timely pay discharged and quitting employees all wages due requires employers to pay waiting time penalties in the amount of one day's compensation at the employees' regular rates of pay for each day the wages are not paid, up to 30 days.

79.     Charter willfully failed to timely and accurately calculate and pay all due and unpaid wages to Plaintiffs, Outside Salesperson Class members, and Commissions Class members whose employment has terminated, and Charter did not pay any waiting time penalties to terminated employees. As discussed above, Charter did not accurately record all hours worked and all meal periods and rest breaks taken late, missed, shortened, or interrupted, during Plaintiffs' and Outside Salesperson Class members' training weeks or during Harper's and Sinclair's post-training weeks, and Charter did not pay all minimum, overtime, or premium wages earned and owed upon termination. Charter also did

not timely or correctly pay all commission and commission allowance/bonus wages that were earned and owed to Plaintiffs and Commissions Class members upon termination. Consequently, when Charter paid Plaintiffs and other former employee class members' final paychecks, they were all miscalculated and too small.

80.     Plaintiffs, Outside Salesperson Class members, and Commissions Class members whose employment has terminated are entitled to recover waiting time penalties, costs, and reasonable attorneys' fees.

**Count Eight**

**Failure to Provide Timely and Complete Copies of Employment Records**

81.     Plaintiffs incorporate all prior paragraphs.

82.     Labor Code section 226(b)-(c) requires employers to keep for a least three years copies of Plaintiff's wage statements and to provide them within 21 days of the date of a request. Labor Code section 1198.5(a)-(c) requires employers to provide employees within 30 days from the date of a request copies of their personnel records.

83.     On June 5, 2018, Harper, through his counsel via a written and signed authorization, requested that Charter provide copies of his personnel file, including all wage statements, instruments he signed or acknowledged concerning his employment, and other records concerning his obtaining and holding of employment, pursuant to Labor Code sections 226, 432, and 1198.5. On July 3, 2018, counsel for Charter responded to Harper's request in writing and refused to produce any records, taking the position that (i) an email sent by Harper to a JAMS representative inquiring about the possibility of a mediation constituted "the pendency of [a] lawsuit in the court with original jurisdiction" during which time Charter's obligations under Labor Code section 1198.5 ceases, and (ii) only an employee personally, not an employee's authorized legal representative, is entitled to request copies of records under Labor Code sections 226 and 432.

84.     Charter failed to produce any records under Labor Code sections 226, 432, and 1198.5 within the statutory time periods. On July 18, 2018, more than six weeks after Harper's written request, Charter finally consented to producing such records to Harper's counsel. Charter did not seek any information verifying Harper's or his counsel's identities within the statutory time periods for

production. Charter ultimately produced an incomplete set of Harper's records on September 4, 2018, 13 weeks after his initial written request. Charter failed to provide copies of any offer letter, all records related to Harper's performance and obtaining/holding employment, the employee handbook that governed Harper's employment, and signed copies or acknowledgements of such records, including a signed copy of any commission agreement or receipt. Charter did not provide copies of several "corrective action" reports that were prepared for and/or signed by Harper until September 2020, more than two years after his written request.

85.    On October 2, 2019, Sinclair, through his counsel via a written and signed authorization, requested that Charter provide copies of his personnel file, including all wage statements, instruments he signed or acknowledged concerning his employment, and other records concerning his obtaining and holding of employment, pursuant to Labor Code sections 226, 432, and 1198.5. This time Charter produced by mail "a copy of [Sinclair's] personnel file" with a cover letter dated October 17, 2019. The production included an incomplete set of Sinclair's wage statements, several additional documents Sinclair had signed or acknowledged related to his employment, and a copy of Charter's Employee Handbook dated October 9, 2017 (a year after Sinclair's employment had terminated). Similar to Harper, Charter did not provide copies of any offer letter, all records related to Sinclair's performance and obtaining/holding employment, the employee handbook that actually governed Sinclair's employment in 2015 and 2016, or signed copies or acknowledgements of such records, including a signed copy of any commission agreement or receipt or an arbitration agreement. Charter has never provided copies of all of Sinclair's wage statements, and Charter did not provide copies of several "corrective action" reports that were prepared for and/or signed by Sinclair until September 2020, nearly a year after his written request.

86.    On April 8, 2020, Turner, through his counsel via a written and signed authorization, requested that Charter provide copies of his personnel file, including all wage statements, instruments he signed or acknowledged concerning his employment, and other records concerning his obtaining and holding of employment, pursuant to Labor Code sections 226, 432, and 1198.5. Twenty-six days later on May 4, 2020, Charter produced via email to his counsel "a copy of [Turner's] personnel file." Charter produced copies of Turner's wage statements five days after the statutory period under Section 226 had

SECOND AMENDED CLASS AND PAGA ACTION COMPLAINT

ended. Charter did not produce a signed copy of any commission agreement or receipt or an acknowledgment related to the background check report Charter obtained for Turner.

87.    Harper's, Sinclair's, and Turner's written and signed requests for their personnel files and wage statements, and their use of counsel to submit such requests to Charter, were reasonable and authorized by law. Charter's failure and refusal to timely provide Harper, Sinclair, Turner, or their counsel with complete copies of such records within the statutory periods was not reasonable or excused.

88.    Charter violated Labor Code sections 226 and 1198.5. Harper, Sinclair, and Turner are each entitled to recover a $750 statutory penalty, costs, and reasonable attorneys' fees for the violation of Section 226. Harper, Sinclair, and Turner are each entitled to recover another $750 statutory penalty, costs, and reasonable attorneys' fees for the violation of Section 1198.5.

### Count Nine

### Violation of California's Unfair Competition Law ("UCL")

89.    Plaintiffs incorporate all prior paragraphs.

90.    California Business and Professions Code section 17200 ("UCL") defines unfair competition as an "unlawful" or "unfair" business act or practice.

91.    Charter is a "person" under UCL section 17021.

92.    Charter has engaged and continues to engage in business practices that are both unlawful and unfair and therefore violate the UCL.

93.    Charter's failures described above—including the failures to timely and properly pay all minimum, overtime, and commission wages, the taking of unlawful commission wages reductions and deductions, and the misclassification of Outside Salesperson Class members during their training weeks and misclassification of Harper and Sinclair during their post-training weeks—all constitute unlawful acts and practices prohibited by the Labor Code and UCL. These failures also independently constitute unfair acts and practices under the UCL.

94.    As a result of its unlawful and unfair acts and practices, Charter has reaped and continues to reap unfair benefits and illegal profits at the expense of Plaintiffs, Outside Salesperson Class members, and Commissions Class members.

95.    Charter should be made to disgorge its ill-gotten gains and restore to Plaintiffs, Outside

Salesperson Class members, and Commissions Class members as restitution the wrongfully withheld wages to which they are entitled, as well as interest.

96.     This action is designed to ensure the enforcement of important rights affecting the public interest generally and the interests of a large number of employees. The necessity and financial burden of private enforcement is great, and the risks to Plaintiffs for stepping forward are also significant. Plaintiffs are thus entitled to recover reasonable attorneys' fees upon prevailing, and, in the interest of justice, such fees should not be paid out of the recovery. *See* Cal. Code Civ. Proc. § 1021.5.

**Count Ten**

**PAGA Civil Penalties**

97.     Plaintiffs incorporate all prior paragraphs.

98.     Plaintiffs are aggrieved employees under PAGA. On September 14, 2018, Harper timely filed a written PAGA notice with the LWDA and sent a copy of such notice by certified mail return receipt requested to Charter. He and Sinclair sent a first amended written PAGA notice on September 9, 2020. Harper is authorized to bring a civil action against Charter under PAGA and to recover civil penalties under PAGA. The representative PAGA claims allege the same Labor Code violations in Counts 1 through 8 above, and seek to recover civil penalties for such violations on behalf of the State of California, Plaintiffs, and all outside salespersons and commission-eligible employees in California employees who were aggrieved by the violations identified and alleged in this action during the relevant PAGA period (September 14, 2017 through the date of judgment).

99.     Harper identifies and seeks to recover civil penalties on behalf of all class members who are also aggrieved employees under PAGA for the following Labor Code violations and any other violations discovered during the pendency of this action:

a.     Failure to calculate and pay minimum and overtime wages in violation of Labor Code sections 510, 1182.12, and 1197;

b.     Failure to provide timely, complete, uninterrupted, and off-duty meal periods and rest breaks in violation of Labor Code sections 226.7 and 512;

c.     Unlawful application of commission agreements and unlawful deductions in violation of Labor Code sections 221, 223, 224;

SECOND AMENDED CLASS AND PAGA ACTION COMPLAINT

d.  Failure to give fully signed commission agreements, and failure to obtain signed receipts, in violation of Labor Code section 2751;

e.  Failure to pay all wages earned upon termination or quitting and failure to pay waiting time penalty wages in violation of Labor Code sections 201, 202, and 203;

f.  Failure to pay all wages earned at least twice during each calendar month in violation of Labor Code section 204;

g.  Failure to maintain accurate and complete records and issue accurate wage statements in violation of Labor Code sections 226 and 1174(d); and

h.  Failure to timely provide a copy of personnel records upon request in violation of Labor Code sections 226 and 1198.5.

100.  Harper seeks to recover civil penalties on behalf of the State of California and all aggrieved employees who performed work for Charter during the relevant PAGA time period under the sections of the Labor Code identified above, under Labor Code sections 201, 202, 203, 204, 210, 223, 225.5, 226, 226.3, 226.7, 256, 510, 512, 558, 558.1, 1174, 1174.5, 1182.12, 1194, 1194.2, 1197, 1197.1, 1197.5, 1198.5, 1206, 2699, and 2751, and under any additional Labor Code sections that Charter violated as determined during the pendency of this action.

101.  Harper further seeks to recover reasonable costs and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all Outside Salesperson Class members, Commissions Class members, and aggrieved employees, pray for the following relief:

A.  Certification of this action as a class action with appropriate classes and subclasses;

B.  Designation of Plaintiffs as class representatives and counsel for Plaintiffs as class counsel;

C.  An award of all unpaid or underpaid minimum, overtime, and premium wages, with interest;

D.  An award of actual and liquidated damages;

E.  Statutory penalties;

F.  Civil penalties;

G.    Restitution and disgorgement;

H.    Pre-judgment and post-judgment interest as allowed by law;

I.    Reasonable attorneys' fees and costs under the Labor Code and/or under Cal. Code Civ. Proc. § 1021.5; and

J.    Such additional and further relief as this Court may deem just and proper.

Dated: June 4, 2021                         SODERSTROM LAW PC

By: */s/ Jamin S. Soderstrom*

*Counsel for Plaintiffs, Proposed Class Members,*

*and Aggrieved Employees*

**JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury of all issues triable by jury.

Dated: June 4, 2021                         SODERSTROM LAW PC

By: */s/ Jamin S. Soderstrom*_____

*Counsel for Plaintiffs, Proposed Class Members,*

*and Aggrieved Employees*

# EXHIBIT 1



SODERSTROM
LAW

| 3 Park Plaza, Suite 100 | 949.667.4700 (phone) |
| Irvine, California 92614 | 949.424.8091 (facsimile) |
| soderstromlawfirm.com | jamin@soderstromlawfirm.com |

September 9, 2020

**BY ONLINE FILING**

Labor & Workforce Development Agency
Attn: PAGA Administrator
1515 Clay Street, Suite 801
Oakland, California 94612
PAGA@dir.ca.gov

**BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

| Charter Communications, LLC | Copy via email to Charter's counsel: |
| Attn: Legal Department | |
| 7800 Crescent Executive Dr. | Morgan, Lewis & Bockius LLP |
| Charlotte, North Carolina 28217 | Zachary W. Shine |
| | One Market, Spear Street Tower |
| | San Francisco, California 94105 |
| | zachary.shine@morganlewis.com |

> Re:   *First Amended Notice of Violations of the California Labor Code*
> Original Notice Dated Sept. 14, 2018; Filing No. LWDA-CM-618622-18

To Whom It May Concern:

Soderstrom Law PC represents Lionel Harper and Daniel Sinclair ("Employees"), each of whom is a former employee of Charter Communications, LLC and possibly one or more of its affiliates (collectively, "Defendant"). In accordance with California Labor Code section 2699.3, and on behalf of Employees and all other aggrieved employees who suffered from one or more of the alleged violations, this First Amended Notice of Violations of the Labor Code gives written notice to the Labor & Workforce Development Agency and to Defendant of serious and ongoing violations of the Labor Code that have occurred and/or been discovered through reasonable diligence and additional investigation since the Original Notice was filed and mailed on September 14, 2020.

Each Employee is an "aggrieved employee" as the term is used in California's Private Attorneys General Act, Labor Code § 2698 *et seq.* ("PAGA"). The additional violations described below occurred in connection with Employees' and other workers' employment in California with

September 9, 2020
PAGA Administrator
Charter Communications, LLC
Page 2 of 3

Defendant, and Employees have personal knowledge of such violations. On information and belief, the original and additional violations are ongoing.

All of the facts, theories, and violations previously alleged and set forth in the original notice letter are hereby expressly incorporated by reference into this First Amended Notice. This First Amended Notice is intended to supplement and not replace the allegations in the Original Notice, a copy of which is attached as Exhibit 1. Unless we are notified of an investigation by the Administrator within the period established by Section 2699.3, Soderstrom Law PC intends to commence and/or supplement existing claims in connection with a civil action brought against Defendant for the violations described in the Original Notice and this First Amended Notice and to seek all civil penalties and injunctive and declaratory remedies available on behalf of the State.

**I.      LIABLE EMPLOYER**

As Employees' employer, Defendant is liable for any and all violations of the Labor Code committed against Employee and all other aggrieved employees who performed work in California during the relevant time period and for the civil penalties provided for by the Labor Code.

**II.     AGGRIEVED EMPLOYEES**

Harper worked for Defendant in California from September 2017 to March 2018. Harper worked with many other employees during his employment, and his experience gave him a thorough understanding of Defendant's employment policies and practices. As detailed below and in the Original Notice, Harper personally suffered from Defendant's Labor Code violations and witnessed and learned of the same and other violations committed against other employees.

Sinclair worked for Defendant in California from January 2015 until around April 4, 2017. Sinclair worked with many other employees during his employment, and his experience gave him a thorough understanding of Defendant's employment policies and practices. Sinclair personally suffered from Defendant's Labor Code violations and witnessed and learned of the same and other violations committed against other of Defendant's employees in California, as detailed below and as previously described in the Original Notice.

**III.    ADDITIONAL KNOWN LABOR CODE VIOLATIONS**

Defendant committed the following additional Labor Code violations against Employees. Upon information and belief, Defendant continues to commit the same or substantially similar violations to this day. The following violations are in addition to the violations previously alleged and identified in the Original Notice.

**A.      Failure to Timely Provide a Copy of Personnel Records Relating to the Employee's Performance or to any grievance Concerning the Employee**

Under Labor Code section 1198.5, an employer must provide employees, within 30 days from the date of a request, "a copy of the personnel records that the employer maintains relating

September 9, 2020
PAGA Administrator
Charter Communications, LLC
Page 3 of 3

to the employee's performance or to any grievance concerning the employee." Defendant failed to do so for each Employee.

In a letter dated June 5, 2018, Harper, through his counsel via a written and signed authorization, requested that Defendant provide copies of his personnel file pursuant to Labor Code section 1198.5. And in a letter dated October 2, 2019, Sinclair, through his counsel via a written and signed authorization, requested that Defendant provide copies of his personnel file pursuant to Labor Code section 1198.5.

It was not until September 4, 2020, however, that Defendant revealed and produced for the first time copies of various "corrective action reports" that Defendant maintained relating to Harper's and Sinclair's performance and to Defendant's grievances concerning them. Defendant's concealment and delayed production of such personnel records—over two years *after* Harper requested his personnel records and nearly one year *after* Sinclair requested his personnel records—constitutes a clear and direct violation of Labor Code section 1198.5.

Upon information and belief, Charter has also failed to produce copies of all responsive employment records for other employees who have request their personnel records and other files under Labor Code sections 226, 432, and/or 1198.5. Charter's policy and practice is to resist producing and to improperly limit the scope of any production of such records.

Defendant's violations of Labor Code sections 1198.5 has aggrieved Employees and other current and former employees who have requested their personnel records and similar records under Labor Code sections 226, 432, and 1198.5.

## IV.   CIVIL PENALTIES FOR LABOR CODE VIOLATIONS

In addition to the violations and Labor Code sections identified in the Original Notice, Defendant is also liable for civil penalties based on new violations of Labor Code section 1198.5 committed against Employees.

Please contact me at 949.667.4700 or jamin@soderstromlawfirm.com if you would like to discuss this matter.

Very truly yours,

SODERSTROM LAW PC

Jamin S. Soderstrom

*Enclosure* (Original Notice dated Sept. 14, 2018)

# EXHIBIT 1

**ORIGINAL PAGA NOTICE DATED SEPTEMBER 14, 2018**



3 Park Plaza, Suite 100
Irvine, California 92614
soderstromlawfirm.com

949.667.4700 (phone)
949.424.8091 (facsimile)
jamin@soderstromlawfirm.com

September 14, 2018

**BY ONLINE FILING**

Labor & Workforce Development Agency
Attn: PAGA Administrator
1515 Clay Street, Suite 801
Oakland, California 94612
PAGA@dir.ca.gov

**BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

| | |
|---|---|
| Charter Communications, LLC<br>Attn: Legal Department<br>7800 Crescent Executive Dr.<br>Charlotte, North Carolina 28217<br><br>Charter Communications, Inc.<br>Attn: Legal Department<br>400 Atlantic Street<br>Stamford, Connecticut 06901 | Copy via email to Charter's counsel:<br><br>Morgan, Lewis & Bockius LLP<br>Zachary W. Shine<br>One Market, Spear Street Tower<br>San Francisco, California 94105<br>zachary.shine@morganlewis.com |

Re:     *Notice of Violations of the California Labor Code*

To Whom It May Concern:

Soderstrom Law PC represents Lionel Harper ("Employee"), a former employee of Charter Communications, LLC, Charter Communications, Inc., and possibly one or more of their affiliates (collectively, "Defendant"). In accordance with California Labor Code section 2699.3, and on behalf of Employee and all aggrieved employees, this letter gives written notice to the Labor & Workforce Development Agency and to Defendant of serious and ongoing violations of the California Labor Code.

Employee is an "aggrieved employee" as the term is used in California's Private Attorneys General Act, Labor Code § 2698 *et seq.* ("PAGA"). The violations described below occurred during or in connection with his and other workers' employment with Defendant, and he has

September 14, 2018
PAGA Administrator
Charter Communications, LLC
Charter Communications, Inc.
Page 2 of 7

personal knowledge of such violations. On information and belief, the violations are ongoing. Accordingly, unless we are notified of an investigation by the Administrator within the period established by Section 2699.3, Soderstrom Law PC intends to commence and/or supplement existing claims in connection with a civil action brought against Defendant for the violations described herein and to seek all civil penalties available on behalf of the State.

## I.   LIABLE EMPLOYER

Defendant markets and sells various services, including television, Internet, and phone services, to consumers in California and nationwide. As Employee's employer, Defendant is liable for any and all violations of the Labor Code committed against Employee and all other aggrieved employees who performed work in California during the relevant time period and for the civil penalties provided for by the Labor Code.

## II.   AGGRIEVED EMPLOYEES

Employee is a resident of Redding, California. From September 2017 to March 2018, Employee worked for Defendant in California. Employee worked with many other employees during his employment, and his experience gave him a thorough understanding of Defendant's employment policies and practices. As detailed below, Employee personally suffered from Defendant's Labor Code violations and witnessed and learned of the same and other violations committed against other of Defendant's employees in California.

## III.   KNOWN LABOR CODE VIOLATIONS

Defendant committed the following Labor Code violations against Employee and/or other employees who performed work for Defendant in California. Upon information and belief, Defendant continues to commit the same or substantially similar violations to this day.

### A.   Failure to Accurately Calculate and Pay Minimum Wages and Overtime Wages in Violation of Labor Code Sections 510, 1182.12, and 1197 and the Governing Industrial Wage Order

Under Labor Sections 1182.12 and 1197 as well as paragraph 4 of the governing Industrial Wage Order, an employer must pay an employee at least the minimum applicable wage, as set by the statutes and Department of Industrial Relations, for all hours that the employee has been suffered or permitted to work. Additionally, under Labor Code section 510 and paragraph 3 of the governing Industrial Wage Order, an employer must compensate an employee at the rate of no less than one and one-half times the employee's regular rate of pay for any work in excess of eight hours in one day, any work in excess of 40 hours in one work week, and the first eight hours worked on the seventh day of work in any one work week. Any work in excess of 12 hours in one day and any work in excess of eight hours on any seventh day of a workweek must be compensated at a rate no less than twice the employee's regular rate of pay.

September 14, 2018
PAGA Administrator
Charter Communications, LLC
Charter Communications, Inc.
Page 3 of 7

As a matter of policy and practice, Defendant failed to pay Employee and other employees the required minimum and overtime wages for all hours worked. Specifically, but without limitation, Defendant regularly required employees during training to work a full day and then complete homework after the work day ended. The training and homework combined required employees to work more than 8 hours in a day, but Defendant did not keep track of or pay employees all wages owed for the time worked over 8 hours in a day or 40 hours in a week during training. Defendant further failed to properly keep track of all hours worked outside of training weeks and failed to pay employees all wages owed for the time worked over 8 hours in a day or 40 hours in a week.

As a result of these policies and practices, Defendant does not pay its training employees and post-training employees all of the minimum and overtime wages they are due, does not maintain complete records of all time worked, and does not provide accurate wage statements.

Defendant's violations of Labor Code Sections 510, 1182.12, and 1197 and paragraphs 3 and 4 of the governing Wage Order have aggrieved Employee and other similarly situated employees in California.

**B.     Failure to Provide Uninterrupted Meal Periods and Rest Breaks and Failure to Pay Premium Wages in Violation of Labor Code Sections 226.7, 512(a), and the Governing Industrial Wage Order**

Under Labor Code section 512(a) and paragraph 11 of the governing Industrial Wage Order, an employer may not require its employees to work more than five hours per day without providing an off-duty, uninterrupted meal period of not less than 30 minutes, and it may not require its employees to work more than 10 hours a day without providing a second 30-minute meal period. A meal period must begin no later than the end of the fifth hour of work. And under Labor Code section 226.7 and paragraph 11 of the governing Wage Order, if the employer does not provide these required meal breaks, the employer must pay the employee an additional hour of pay for each workday that the meal period is not provided.

Additionally, under paragraph 12 of the governing Industrial Wage Order, an employer must permit its employees to take 10 minutes of rest for every four hours worked or major fraction thereof, taken in the middle of the work period unless impracticable. And under Labor Code section 226.7 and paragraph 12 of the governing Wage Order, if the employer does not provide the required rest breaks, the employer must pay the employee an additional hour of pay for each workday that a rest period is not provided.

Defendant fails to provide timely, off-duty, uninterrupted 30-minute meal periods to nonexempt employees like Employee and fails to compensate them one additional hour of pay for each meal period that is missed, shortened, interrupted, on-duty, or untimely. Defendant does not require or allow Employee and other nonexempt employees to clock-out and clock-in for each meal period and accurately record the existence and length of each meal period taken, and

September 14, 2018
PAGA Administrator
Charter Communications, LLC
Charter Communications, Inc.
Page 4 of 7

knowingly suffers, permits, or requires work to be performed during what should be a meal period. Defendant fails to provide compliant meal periods and rest breaks both during training weeks and after training weeks.

Defendants' violations of Labor Code Sections 512 and 226.7, and paragraphs 11 and 12 of the governing Wage Order have aggrieved Employee and other similarly situated employees.

### C.   Unlawful Commission Deductions in Violation of Labor Code Sections 221, 223, 224, and 2751

California Labor Code sections 221, 223, and 224 protect employees against unlawful deductions of their earned wages. Under Section 221, "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." Relatedly, under Section 223, "Where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract." Section 224 authorizes certain deductions that an employee "expressly authorize[s] in writing," but forbids deductions that amount to a "rebate or deduction from the standard wage . . . pursuant to wage agreement or statute." Additionally, under California Labor Code section 2751, when an employer enters into a contract of employment and the contemplated payment method includes commissions, the contract must "set forth the method by which the commissions shall be computed and paid."

Defendant recruits and incentivize sales employees like Employee by emphasizing their ability to earn commissions. However, Defendant imposes unlawful and unfair incentive compensation terms and then fails to pay all amounts owed under such terms. The terms result in Defendant unlawfully and unfairly keeping, failing to pay, and/or deducting Employee's and other employees' commission wages.

Defendant also fails to perform all of its obligations under the terms and unfairly construes the terms and modifies the terms in its favor.

Defendant has not paid Employee and similarly situated employees all of the commission wages they are owed, and has unlawfully and unfairly deducted, reconciled, or clawed back commission wages that were properly earned.

Defendant violated Sections 221, 223, and 224 each time it failed to correctly and fairly calculate and pay earned commission and each time it has deducted, clawed back, or otherwise reconciled Employee's and other employees' incentive compensation. Defendant further relied on methods for the computation and payment of commissions that are not set forth in the applicable terms in violation of Section 2751. Defendant's violations of Labor Code Sections 221, 223, 224, and 2751 have aggrieved Employee and similarly situated employees.

///

September 14, 2018
PAGA Administrator
Charter Communications, LLC
Charter Communications, Inc.
Page 5 of 7

**D.      Willful Failure to Pay All Wages Earned Upon An Employee's Termination or Quitting and Failure to Pay Penalty Wages in Violation of Labor Code Sections 201, 202, and 203**

Under Labor Code sections 201 and 202, an employer must pay an employee all unpaid wages immediately upon that employee's termination or within 72 hours if the employee has quit without providing advanced notice. And under Labor Code section 203, if an employer willfully fails to comply with Sections 201 or 202, the employee is entitled to continued wages up to 30 days from the date the unpaid wages were originally due to when they were actually paid.

Defendant fails to timely and accurately pay Employee and other employees who are terminated or quit all due but unpaid wages, and Defendant does not pay any wages as waiting time penalties. As discussed above, Defendant does not accurately record all hours worked and all meal period and rest breaks taken late, missed, shortened, or interrupted, and Defendant does not pay premium wages when a compliant meal period or rest break is not provided. Nor does Defendant pay all incentive compensation that is earned and payable. Consequently, when Defendant paid Employee and other former employees' final paychecks, they were all miscalculated and too small.

Defendant's violations of Labor Code section 201 and 202 have aggrieved Employee and other former employees who were terminated or quit. Defendant's failure to pay penalty wages under Labor Code section 203 has further aggrieved Employee and other former employees.

**E.      Failure to Pay All Wages Earned at Least Twice During Each Calendar Month in Violation of Labor Code Section 204**

Under Labor Code section 204, an employer must pay all wages earned by any employee, other than those mentioned in Sections 201, 201.3, 202, 204.1, or 204.2, twice during each calendar month, on days designated in advance by the employer as the regular paydays.

Defendant's failures described above—including the failure to pay all minimum and overtime wages due, the failure to pay premium wages in lieu of compliant meal periods and rest breaks, and the failure to properly calculate and pay all commission wages—caused it also to fail to pay all wages  earned by Employee and similarly situated employees at least twice monthly.

Defendant's violations of Labor Code section 204 have aggrieved Employee and other similarly situated employees because they were not timely or accurately paid all wages earned at least twice each month.

///

///

///

September 14, 2018
PAGA Administrator
Charter Communications, LLC
Charter Communications, Inc.
Page 6 of 7

F.      **Failure to Maintain Accurate Records and Wage Statements in Violation of Labor Code Sections 226 and 1174(d) and the Governing Industrial Wage Order**

Under Labor Code section 1174(d), an employer must maintain at least three years of accurate payroll records reflecting each employee's hours worked daily and the wages paid to them. And under paragraph 7 of the governing Industrial Wage Order, these records must also show the employee's rate of pay, when each work period began and ended, and when meal periods and split shift intervals occurred.

Labor Code section 226 and paragraph 7 of the governing Wage Order further require an employer to provide its employees with accurate, semi-monthly itemized wage statements that reflect the employee's gross and net wages earned, total hours worked, all deductions, the inclusive dates of the pay period, and all applicable hourly rates.

As explained above, Defendant failed to keep accurate records reflecting Employee's and other employees' hours worked and when meal periods occurred. Defendant also failed to provide accurate wages statements that reflected the total hours worked, all deductions, and all gross and net wages earned, including commission wages. Employee's wage statements never reflected any premium wage being paid for late, shortened, missed, or on-duty meal periods or rest breaks. Employee's final several wage statements also failed to accurately record the time worked, wages due, and inclusive dates of the applicable pay periods.

Defendant's willful violations of Labor Code sections 226 and 1174(d) and the governing Wage Order have aggrieved Employee and other similarly situated employees.

G.      **Failure to Timely Provide a Copy of Personnel Records Upon Request in Violation of Labor Code Sections 226, 432, and 1198.5**

Under Labor Code section 226(c), an employer must provide employees, within 21 calendar days from the date of a request, copies of the records required to be kept under section 226(a) (i.e., wage statements).

Under Labor Code section 432, an employer must provide employees a copy of any instrument that the employee signed related to his or her obtaining or holding of employment.

Under Labor Code section 1198.5, an employer must provide employees, within 30 days from the date of a request, copies of their personnel records.

In a letter dated June 5, 2018, Employee, through his counsel via a written and signed authorization, requested that Defendant provide copies of his personnel file, including all wage statements, instruments he signed or acknowledged concerning his employment, and other records

September 14, 2018
PAGA Administrator
Charter Communications, LLC
Charter Communications, Inc.
Page 7 of 7

concerning his obtaining and holding of employment, pursuant to Labor Code sections 226, 432, and 1198.5.

On July 3, 2018, counsel for Defendant responded to Employee's request in writing refusing to produce any records and took the position that (i) an email sent by Employee to a JAMS representative inquiring about the possibility of a mediation constituted "the pendency of [a] lawsuit in the court with original jurisdiction" during which time its obligations under Labor Code section 1198.5 ceases, and (ii) only an employee personally, not an employee's authorized legal representative, is entitled to request copies of records under Labor Code sections 226 and 432.

Defendant failed to produce any records under Labor Code sections 226, 432, and 1198.5 within the statutory time periods. On July 18, 2018, more than six weeks after Employee's written request, Defendant finally consented to producing such records to Employee's counsel. Defendant ultimately produced an incomplete set of Employee's records on September 4, 2018, 13 weeks after Employee's initial written request. Defendant failed to provide copies of any offer letter, all records related to Employee's performance and obtaining/holding employment, the employee handbook that governed Employee's employment, any signed copies or acknowledgements of such records.

Defendant's violation of Labor Code sections 226, 432, and 1198.5 has aggrieved Employee.

## IV.   CIVIL PENALTIES FOR LABOR CODE VIOLATIONS

Due to the above-described violations and similar violations that may be identified after further investigation or during discovery, Defendant is liable as an employer for specific or default civil penalties as provided by Labor Code section 2699 as well as Labor Code sections 201, 202, 203, 204, 210, 223, 225.5, 226, 226.3, 226.7, 256, 510, 512, 558, 558.1, 1174, 1174.5, 1182.12, 1194, 1194.2, 1197, 1197.1, 1197.5, 1198.5, and 1206.

Please contact me at 949.667.4700 or jamin@soderstromlawfirm.com if you would like to discuss this matter.

Very truly yours,

SODERSTROM LAW PC

Jamin S. Soderstrom

# EXHIBIT 2

Hon. Rebecca J. Westerfield (Ret.)
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111
Tel: (415) 982-5267
Fax: (415) 982-5287

ARBITRATOR

## JAMS ARBITRATION

| | |
|---|---|
| LIONEL HARPER, | REF NO. 1100104486 |
| Claimant, | |
| v. | ORDER DISMISSING ARBITRATION |
| CHARTER COMMUNICATIONS, LLC, CHARTER COMMUNICATIONS, INC., and DOES 1 to 25, | |
| Respondents. | |

## I.     **Introduction**

Claimant Lionel Harper ("Harper") brings this arbitration against

Respondents Charter Communications, LLC and Charter Communications, Inc.

(collectively, "Charter") for (1) Failure to pay minimum wages for all hours

1

worked; (2) Failure to pay overtime wages for all overtime hours worked; (3) Failure to provide meal periods or pay premium wages in lieu thereof; (4) Failure to provide rest breaks or pay premium wages in lieu thereof; (5) Unlawful deduction of wages under Section 221; (6) Failure to provide accurate wage statements; (7) Failure to pay all wages owed upon termination; (8) Failure to provide timely and complete copies of employment records; (9) Violation of California's Unfair Competition Law; and (10) PAGA civil penalties. These causes of action arise from Harper's employment with Charter from September 2017 until March 2018. When Harper was hired by Charter, he agreed to a Mutual Agreement to Arbitrate ("Arbitration Agreement").

Currently before the Arbitrator is Harper's Motion for Threshold Rulings Regarding Arbitrability. In this Motion, Harper seeks the following threshold rulings from the Arbitrator:

(1) The Arbitrator has the authority to decide all issues related to enforceability, scope, and arbitrability raised in the Demand.

(2) The Arbitration Agreement is "null and void" by its own terms because it includes invalid and unenforceable waivers of the right to bring representative claims, the right to act as a representative of the State and other aggrieved employees, and the right to seek public injunctive relief in any form.

(3) Because the Arbitration Agreement is "null and void," the Arbitrator has no jurisdiction over Harper's claims, and the arbitration must be dismissed in its entirety.

## II.   Analysis

### A.   The Arbitrator has authority to decide all issues related to enforceability, scope, and arbitrability raised in the Demand

Harper contends that the Arbitrator has authority to decide whether the Arbitration Agreement is "null and void." Charter does not dispute this point.

Rule 11 of the JAMS Rules provides that the "Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter."

> **B.     The Arbitration Agreement includes an invalid and unenforceable Waiver**
>
> 1.     The pre-dispute Waiver of Harper's right to bring or participate in a representative PAGA action is invalid and unenforceable.

Harper argues that the waiver in the Arbitration Agreement ("Waiver") is invalid and unenforceable because it is a pre-dispute waiver of Harper's right to bring or participate in a representative action brought under PAGA. The Waiver provides:

> You and Charter understand, acknowledge and agree that the terms of this Agreement include a waiver of any rights that you or Charter may have to bring or participate in an action against each other on a representative, class, or collective basis and understand and agree that the arbitrator shall not be permitted to order consolidation of claims or a representative, class, or collective, arbitration. This waiver does no take away or restrict your or Charter's rights to pursue your or its own claims, but only requires that any such claims be pursued in your or Charter's own individual capacity, rather than on an representative, class, or collective basis.

In <u>Iskanian v. CLS Transportation Los Angeles LLC</u>, 59 Cal. 4th 348 (2014), the California Supreme Court held that where an employment agreement compels the waiver of representative claims under the PAGA, it is contrary to public policy and unenforceable as a matter of state law. <u>Id.</u> at 384. The Court further concluded that the FAA does not preempt this state law rule against waiver of an employee's right to bring a representative PAGA action since the FAA aims to ensure an efficient forum for the resolution of private disputes whereas a PAGA action is a dispute between an employer and the state Labor and Workforce Development Agency. <u>Id.</u>

3

Charter does not directly dispute the applicability of <u>Iskanian</u> to the Waiver at issue here. Instead, it contends that Charter is attempting to evade arbitration by bringing a PAGA claim. It states that Harper "simply has a private dispute with his former employer," and it points to the relief sought by Harper, and more specifically, the individual, non-PAGA, relief set forth in the Arbitration Demand. Charter cites to <u>Esparza v KS Industries, L.P.</u>, 13 Cal. App. 5th 1228 (2017). In <u>Esparza</u>, the defendant appealed from an order denying its motion to compel arbitration of a dispute with its former employee. It contended that <u>Iskanian</u> prevented arbitration of claims only in representative actions that seek "civil penalties" and not unpaid wages payable solely to the aggrieved employee. The appellate court examined <u>Iskanian</u> and found that because the plaintiff's claims for unpaid wages under PAGA constituted a private dispute that was subject to arbitration under the arbitration agreement and FAA, rather than non-arbitrable claim for civil penalties. <u>Id</u>. at 1246.

Charter seeks to apply <u>Esparza</u> so that the Arbitrator will find that this is really a suit to recover victim-specific damages and interest on an individual basis and an attempt to make an end run around arbitration by styling it a PAGA action. However, <u>Esparza</u> itself did not make such a determination regarding the plaintiff employee's case before it. Instead, the court remanded the case and directed the trial court to conduct further proceedings to allow the plaintiff to state his intention about pursuing claims for unpaid wages and any other types of individualized relief, and if he chooses to do so, then those claim would be arbitrated while the remainder of the litigation is stayed. <u>Id</u>. at 1247. If, however, plaintiff intended to limit his claims to PAGA representative claims seeking civil penalties and waive claims for individualized relief, the court can proceed on those claims without the need for arbitration. <u>Id</u>.

Here, while Harper's Demand for Arbitration contains a majority of causes

4

of action seeking individualized relief, it also asserts a cause of action for PAGA
civil penalties.  Neither Esparza nor any authority raised by Charter allows the
Arbitrator to ignore this cause of action and find that Harper is using the PAGA
cause of action as "an end run around arbitration," even assuming this is true.
Thus, the issue remains whether the Waiver at issue is unenforceable, and under
Iskanian, the Arbitrator finds that it is unenforceable because it compels the waiver
of representative claims under PAGA.

> 2.    Requiring Harper to act only in his "individual capacity" does
> not improperly waive his right to act as a representative of the State
> and other aggrieved employees.

Harper further contends that the Waiver is invalid and unenforceable
because it prohibits him from acting in any capacity other than his "individual
capacity," and this necessarily prevents him from serving as the State's
representative.  As Charter contends, Harper cites no authority in support of this
assertion.  Essentially, Harper seeks to expand Iskanian to bar waivers that use the
language "individual capacity," but the Arbitrator finds no basis for doing so.

> 3.    Requiring Harper to act only in his "individual capacity" does
> not improperly prevent him from seeking representative and public
> injunctive relief in any forum.

In a final argument regarding the Waiver, Harper contends that the Waiver is
invalid and unenforceable because it prevents Harper from seeking representative
and public injunctive relief in any forum.  In McGill v. Citibank, N.A., 2 Cal 5th
945, 951 (2017), the Court held that an arbitration provision that purports to waive
the right to request in any forum public injunctive relief is invalid and
unenforceable under California law.

In its Opposition, Charter relies on Magana v. DoorDash, Inc., 343 F. Supp.
3d 891, 900 (N.D. Cal. 2018), which set out two issues to consider in determining

5

whether an arbitration agreement prevents all adjudication of public injunctive relief in any forum. <u>Magana</u> is instructive here. First, the court considers whether plaintiff's complaint actually seeks public injunctive relief under California law. <u>Id</u>. Second, if it does, the court considers whether the arbitration agreement prevents plaintiff from adjudicating a claim for such relief in any forum. <u>Id</u>.

Charter argues both that Harper does not seek public injunctive relief and that the Agreement does not prevent Harper from adjudicating a claim for injunctive relief in any forum. With respect to the first issue, "public injunctive relief under the UCL . . . is relief that has 'the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public. Relief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff – or to a group of individuals similarly situated to the plaintiff – does not constitute public injunctive relief." <u>McGill</u>, 2 Cal. 5th at 955. Because Harper seeks injunctive relief for his California Labor Code claims in his Demand, he does not assert a claim for public injunctive relief as in <u>Magana</u>. <u>See</u> <u>Magana</u>, 343 F. Supp. 3d at 901 (the court found that the claims under California Labor Code "have the primary purpose and effect of redressing and preventing harm to [the employer's] employees" and that "the injunctive relief he seeks would be entirely opposite of what McGill requires – any benefit to the public would be derivative of and ancillary to the benefit to [the employer's] employees.")

Second, the Arbitration Agreement does not prevent adjudication of public injunctive relief in any forum because the Arbitrator may adjudicate a claim for such relief. While Harper argues that the Arbitration Agreement has a representative, class and collective action waiver provision, the <u>McGill</u> court held that a claim for public injunctive relief is not a class, collective, or representative action. <u>McGill</u>, 2 Cal. 5th at 959-61. As Charter points out, the Agreement states "[t]his waiver does not take away or restrict your or Charter's right to pursue your

6

or its own claims, but only requires that any such claims be pursued in your or Charter's own individual capacity." As such, Harper can seek public injunctive relief in arbitration. Thus, the Arbitrator finds that requiring Harper to act only in his "individual capacity" does not improperly prevent him from seeking representative and public injunctive relief in any forum.

C. **The invalid and unenforceable Waiver triggers the poison pill and renders the entire Arbitration Agreement "null and void" by its own terms**

Harper contends that the invalid and unenforceable Waiver triggers the "poison pill" and renders the entire Arbitration Agreement null and void by its own terms. The poison pill provision, as Harper refers to it, in the Arbitration Agreement provides:

> [S]hould the dispute involve a representative, collective or class action claim, and the REPRESENTATIVE, COLLECTIVE, AND CLASS ACTION WAIVER is found to be invalid or unenforceable for any reason, then this entire Agreement (except for the parties' agreement to waive a jury trial) shall be null and void and the dispute will not be arbitrable.

Given the plain meaning of this language, Harper's contention has merit.

In opposition, Charter argues that the "straightforward meaning" of this provision is, if an employee brings a representative, collective or class action claim, and the waiver is found to be invalid or unenforceable, then no part of the arbitration provision applies to that claim – i.e., the arbitration provision is null and void in its entirety only as to the representative, collective or class action claim. However, Charter's interpretation is at odds with the language used in the Agreement and places a limitation not supported by the words chosen. As Harper points out, Charter could have drafted this provision narrowly, but it did not. He points to the following language found in another case:

> The Representative Action Waiver will be severable from this
> Agreement in any case in which there is a final judicial determination
> that the Representative Action Waiver is invalid, unenforceable,
> unconscionable, void or voidable.  In such instances and where the
> claim is brought as a private attorney general, such private attorney
> general claim must be ignored in a civil court of competent
> jurisdiction, but all other provisions of this Agreement, including
> without limitation the Class Action Waiver, will continue to apply.

Murphy v. HRB Green Res., LLC, 2016 WL 11527027 at *5 (N.D. Cal. Oct. 14,

2016).  Instead, the provision agreed to by the parties in this case clearly states that

"this *entire* Agreement shall be null and void and the dispute will not be

arbitrable."

Harper cites to a few district court cases wherein the court rejected Charter's

same argument that the Arbitrator should construe the poison pill provision

narrowly.  In McArdle v. AT&T Mobility LLC, 2017 WL 4354998 (N.D. Cal. Oct.

2, 2017), the court stated that "Defendant's proposed construction of this sentence

ignores the agreement's use of the word 'entirety' and attempts to read in limiting

language that does not exist, such as adding the words 'as to the specific claim' at

the end of the paragraph."  Similarly, in Roberts v. AT&T Mobility, LLC, 2018

WL 1317346 at *8-9 (N.D. Cal. Mar. 14, 2018, the court stated that "had it been so

intended, the nullification provision could have referred to nullification of the

'subsection' or 'paragraph'; it did not.  Instead, it refers to 'the entirety of the

arbitration provision.'"  The Arbitrator agrees with the reasoning of the courts in

these cases.

Charter also seeks to have the arbitrable and non-arbitrable claims severed

so that the arbitrable claims are sent to arbitration.  However, the cases relied on by

Charter for this proposition do not involve the existence of the poison pill

provision.  Indeed, Harper acknowledges that but for the poison pill provision,

severance would be possible.

8

Charter further asserts that because there is a reading of this provision that would allow for severing a non-arbitrable claim to allow it to proceed in court, with all other claims sent to arbitration, this provision must be interpreted that way. It relies on the federal policy favoring arbitration and quotes from a Supreme Court holding that an order compelling arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986). Here, the provision at issue is neither ambiguous nor susceptible of Charter's desired interpretation.

Thus, the Arbitrator finds that because the pre-dispute Waiver of Harper's right to bring or participate in a representative PAGA action is invalid and unenforceable, the poison pill provision is triggered, thereby rendering the Arbitration Agreement null and void.

**D.    Because the Arbitration Agreement is null and void, the Arbitrator has no jurisdiction over Harper's claims**

Based on the determinations set forth above, the Arbitration Agreement is null and void. While the FAA reflects a "liberal federal policy favoring arbitration," it also reflects "the fundamental principle that arbitration is a matter of contract." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (citations omitted). As such, "courts must place arbitration agreements on an equal footing with other contracts, . . ., and enforce them according to their terms . . . ." Id.; see also Epic Systems Corp. v. Lewis, 138 S. Ct. 1612, 1621 (2018) (Supreme Court noted that the Arbitration Act requires courts "vigorously" to "enforce arbitration agreements according to their terms"). Here, the Arbitration Agreement contains a Waiver that is found to be invalid and enforceable. Under the same Arbitration Agreement, such a finding renders the entire Agreement null and void and the dispute not arbitrable. The Arbitrator therefore has no jurisdiction over

9

Harper's claims set forth in the Demand, and consequently, the arbitration must be dismissed in its entirety.

## III.   **Conclusion**

Accordingly, the Arbitrator dismisses Claimant Lionel Harper's Demand for Arbitration.

DATED:   April 25, 2019

Hon. Rebecca Westerfield (Ret.)
Arbitrator

10

## PROOF OF SERVICE BY EMAIL & U.S. MAIL

Re: Harper, Lionel vs. Charter Communications, Inc.
Reference No. 1100104486

I, Melissa Ornstil, Esq., not a party to the within action, hereby declare that on April 25, 2019, I served the attached Order Dismissing Arbitration on the parties in the within action by Email and by depositing true copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United States Mail, at San Francisco, CALIFORNIA, addressed as follows:

Jamin Soderstrom Esq.
Soderstrom Law PC
3 Park Plaza
Suite 100
Irvine, CA   92614
Tel: 949-667-4700
Email: jamin@soderstromlawfirm.com
   Parties Represented:
   Lionel Harper

Zachary Shine Esq.
Morgan, Lewis & Bockius LLP
One Market
Spear Street Tower
San Francisco, CA   94105-1596
Tel: 415-442-1000
Email: zachary.shine@morganlewis.com
   Parties Represented:
   Charter Communications, Inc.
   Charter Communications, LLC

Kathryn T. McGuigan Esq.
Morgan, Lewis & Bockius LLP
300 S Grand Ave
22nd Floor
Los Angeles, CA   90071-3132
Tel: 213-612-7390
Email: kathryn.mcguigan@morganlewis.com
   Parties Represented:
   Charter Communications, Inc.
   Charter Communications, LLC

I declare under penalty of perjury the foregoing to be true and correct. Executed at San Francisco, CALIFORNIA on April 25, 2019.

Melissa Ornstil, Esq.