1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                       EASTERN DISTRICT OF CALIFORNIA

10                              ----oo0oo----

11

12   LIONEL HARPER, DANIEL SINCLAIR,      No. 2:19-cv-00902 WBS DMC
     HASSAN TURNER, LUIS VAZQUEZ, and
13   PEDRO ABASCAL, individually and
     on behalf of all others
14   similarly situated and all           ORDER RE: PLAINTIFFS' MOTION
     aggrieved employees,                 TO MODIFY THE SCHEDULING
15                                         ORDER AND FOR LEAVE TO FILE A
                    Plaintiffs,            THIRD AMENDED COMPLAINT
16
          v.
17
     CHARTER COMMUNICATIONS, LLC,
18
                    Defendant.
19

20

21                              ----oo0oo----

22          Plaintiffs Lionel Harper, Daniel Sinclair, Hassan

23   Turner, Luis Vazquez, and Pedro Abascal ("plaintiffs") brought

24   this putative class action against their former employer, Charter

25   Communications, alleging various violations of the California

26   Labor Code.  Among other things, plaintiffs allege that Charter

27   misclassified them and other California employees as "outside

28   salespersons," failed to pay them overtime wages, failed to

                                    1

1  provide meal periods or rest breaks (or premium wages in lieu

2  thereof), and provided inaccurate wage statements.  (See

3  generally Second Amended Complaint ("SAC") (Docket No. 147).)

4  Plaintiffs now move to modify the scheduling order and for leave

5  to amend their complaint a third time.  (Mot. for Leave to Amend

6  (Docket No. 174).)

7  I.   Factual Background

8      Charter is a broadband connectivity company and cable

9  operator serving business and residential customers under the

10  Spectrum brand, among others.  Plaintiffs Harper and Sinclair

11  worked as small/medium sized business Account Executives ("AEs")

12  at Charter's Redding, California location.  (SAC at ¶¶ 5-6, 12.)

13  Plaintiffs Turner, Vazquez, and Abascal worked as Direct Sales

14  Representatives ("DSRs") at Charter's Irwindale, Bakersfield, and

15  Anaheim, California locations, respectively.  (Id. at ¶¶ 7-9,

16  12.)  Plaintiffs allege that Charter classifies AEs and DSRs as

17  "exempt" employees.  (See id. at ¶ 13.)

18      Plaintiffs claim that Charter erroneously classified

19  them as exempt employees by mistakenly classifying them as

20  "outside salespersons."  (See id.; Cal. Code Regs. tit. 8,

21  § 11070.)  Under California law, "outside salespersons" are

22  exempt from overtime, minimum wage, meal period, and rest period

23  requirements.  See Cal. Lab. Code § 1171.  Importantly, under

24  California case law, employees are only subject to the outside

25  salesperson exception if their employer actually had an

26  expectation that they spend more than half their time outside the

27  office engaged in sales activities, and if that expectation was

28  reasonable.  See Ramirez v. Yosemite Water Co., 20 Cal. 4th 785,

1   790 (Cal. 1999).  Plaintiffs' claim is essentially that Charter

2   did not actually expect them to spend 50% of their time outside

3   of the office both during and after their training weeks, and

4   that even if it did, that expectation was unreasonable given the

5   number of tasks Charter expected them to complete that required

6   them to be in the office.  (See generally SAC (Docket No. 147).)

7          Plaintiffs' claims of failure to pay overtime wages,

8   failure to provide meal periods or rest breaks (or premium wages

9   in lieu thereof), and failure to provide accurate wage statements

10  are derivative of their misclassification claim.  Because Charter

11  misclassified them, plaintiffs contend, Charter necessarily

12  failed to pay them overtime and failed to provide necessary rest

13  and meal breaks.  (See id.)  Plaintiffs further claim that

14  Charter failed to pay them commission wages to which they were

15  entitled and provided them with inaccurate and misleading wage

16  statements.[1]  (Id.)

17         Plaintiffs seek to represent two classes of Charter

18  employees: (1) all California employees who were classified as

19  exempt outside salespersons, and (2) all California employees who

20  were in positions eligible to earn commission wages.  (See id. at

21  ¶ 19.)

22  II.  Procedural Background

23         Plaintiff Harper filed his initial complaint in Shasta

24  _____

25         [1]   Plaintiffs also claim that Charter failed to pay them
    all wages owed upon termination, failed to provide them with
26  employment records, and violated the California UCL.  (See
    generally SAC (Docket No. 147).)  Plaintiff Harper also brings a
27  representative claim under PAGA on behalf of aggrieved employees,
    including plaintiffs, alleging the same aforementioned Labor Code
28  violations.  (See id.)

1  County Superior Court on May 3, 2019.  Charter removed the case
2  to this court on May 17, 2019. (Docket No. 1.)  Harper sought
3  leave to amend his complaint and add another named plaintiff,
4  Daniel Sinclair, on October 30, 2019. (Docket No. 36.)  The
5  court granted Harper's request on December 13, 2019. (See First
6  Amended Complaint (Docket No. 45).)   The two plaintiffs sought
7  leave to again amend their complaint to add three additional
8  named plaintiffs, Hassan Turner, Luis Vazquez, and Pedro Abascal,
9  on April 16, 2021. (Docket No. 121.)  The court granted their
10  request on June 3, 2021. (Docket No. 146.)

11          The court issued a pretrial scheduling order on October
12  9, 2019. (Docket No. 34.)  The parties amended the scheduling
13  order via stipulation on seven occasions: on January 29, May 4,
14  June 25, September 17, and December 11, 2020, and again on
15  January 29 and June 23, 2021. (Docket Nos. 49, 59, 69, 82, 91,
16  102, 158.)  On December 18, 2020, Charter filed a motion for
17  summary judgment. (Docket No. 93.)  The court denied most of
18  Charter's motion on February 16, 2021, holding that triable
19  issues of fact existed as to the majority of plaintiffs' claims,
20  including whether plaintiffs were misclassified as "outside
21  salespersons." (See Docket No. 111.)

22          After withdrawing their initial motion for class
23  certification pursuant to the court's order granting plaintiffs
24  leave to file the Second Amended Complaint (Docket No. 146),
25  plaintiffs filed a renewed motion for class certification on June
26  14, 2021. (Docket No. 149.)

27          Defendant then filed a motion to compel arbitration
28  against plaintiff Harper on July 9, 2021 (Docket No. 162), a

4

1   partial motion to dismiss on the same day (Docket No. 163), and a

2   motion to compel arbitration against plaintiffs Turner, Vazquez,

3   and Abascal on August 6, 2021 (Docket No. 165).

4          On August 30, 2021, plaintiffs filed the instant motion

5   to modify the scheduling order and for leave to file a Third

6   Amended Complaint ("TAC"), (see Mot. for Leave to Amend (Docket

7   No. 174)), and the court heard oral argument on October 4, 2021.

8   Plaintiffs' motion seeks to make various changes to the

9   complaint, namely adding allegations related to the PAGA claims;

10  adding plaintiffs Sinclair, Turner, Vazquez, and Abascal as

11  proposed PAGA representatives; adding proposed arbitration

12  subclasses; adding allegations relating to plaintiffs' UCL claim;

13  and adding allegations relating to tolling and relation back of

14  various claims.  (See generally id.)

15  III. Discussion

16         Once the district court has issued a pretrial

17  scheduling order pursuant to Federal Rule of Civil Procedure 16,

18  which establishes a timetable for amending pleadings, that rule's

19  standards control the court's analysis of whether leave to amend

20  a pleading should be granted.  See Johnson v. Mammoth

21  Recreations, Inc., 975 F.2d 604, 607-08 (9th Cir. 1992).  Under

22  Rule 16, "[a] schedule may be modified only for good cause and

23  with the judge's consent."  Fed. R. Civ. P. 16(b)(4).

24         "Unlike [Federal Rule of Civil Procedure] 15(a)'s

25  liberal amendment policy which focuses on the bad faith of the

26  party seeking to interpose an amendment and the prejudice to the

27  opposing party, Rule 16(b)'s 'good cause' standard primarily

28  considers the diligence of the party seeking the amendment."

Johnson, 975 F.2d at 609.  "If that party was not diligent, the inquiry should end."  Id.  Although "the focus of the inquiry is upon the moving party's reasons for seeking modification," a court may also consider prejudice to the opposing party in making its determination.  Id.

Once a party seeking amendment has shown "good cause," it must also show that the amendment is proper under Rule 15. See id. at 608 (citations omitted).  Under that rule, "[t]he court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2); see also Johnson, 975 F.2d at 607 (Rule 15 embodies a "liberal amendment policy").  However, leave should not be granted under Rule 15 if amendment (1) would cause prejudice to the opposing party, (2) is sought in bad faith, (3) creates undue delay, or (4) is futile.  Chudacoff v. Univ. Med. Ctr. of S. Nev., 649 F.3d 1143, 1153 (9th Cir. 2011) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

"Because Rule 16(b)'s 'good cause' inquiry essentially incorporates the first three factors, if a court finds that good cause exists, it should then deny a motion for leave to amend only if such amendment would be futile."  J & J Sports Prods., Inc. v. Maravilla, 2:12-cv-02899 WBS EFB, 2013 WL 4780764, at *1 (E.D. Cal. Sept. 5, 2013); see also Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2004) ("Futility alone can justify the denial of a motion for leave to amend.").

A.   PAGA Amendments

Plaintiffs seek leave to amend the Second Amended Complaint to (1) add allegations regarding amended PAGA notices they subsequently submitted to California's Labor Workforce

1   Development Agency ("LWDA"), which they updated to include

2   plaintiffs Sinclair, Turner, Vazquez, and Abascal, and add those

3   plaintiffs as proposed PAGA representatives in this action; and

4   (2) add alleged violations of Labor Code section 432.5, which

5   were also submitted to the LWDA through the amended notices.

6   (Mot. for Leave to Amend at 2-3 (Docket No. 174); Docket No. 174-

7   2, Exh. 1.)

8          Charter opposes plaintiffs' motion, arguing that

9   because plaintiffs Sinclair, Turner, Vazquez, and Abascal joined

10  those amended notices after PAGA's one-year statute of

11  limitations had run and this litigation had commenced -- and

12  because the amended notices added other claims and allegations

13  after the statute of limitations had run -- the amended notices

14  cannot serve as predicates for the PAGA allegations plaintiffs

15  seek to add to their complaint.  (See Opp. to Mot. for Leave to

16  Amend at 9-14 (Docket No. 188).)  Accordingly, Charter contends,

17  plaintiffs' requested amendments do not demonstrate the requisite

18  diligence, are futile, or both.  (See id.)  For the following

19  reasons, the court agrees.

20          1.   PAGA Background and Requirements

21          California's Private Attorney General Act ("PAGA"),

22  Cal. Lab. Code §§ 2698 et seq., was enacted to remedy systemic

23  underenforcement of worker protections.  Williams v. Super. Ct.,

24  3 Cal. 5th 531, 545 (2017).  To achieve this goal, PAGA allows an

25  employee to bring a civil action against an employer for

26  violations of the Labor Code.  See Cal. Lab. Code § 2699(a).

27          In doing so, PAGA "deputiz[es] employees harmed by

28  labor violations to sue on behalf of the state," in part for the

1   benefit of "other affected employees."  <u>Williams</u>, 3 Cal. 5th at

2   545.  A deputized employee "act[s] as [a] private attorney[ ]

3   general, . . . with the understanding that labor law enforcement

4   agencies . . . retain primacy over private enforcement efforts."

5   <u>Arias v. Super. Ct.</u>, 46 Cal. 4th 969, 980 (2009); <u>see also</u> <u>Kim v.</u>

6   <u>Reins Int'l Cal., Inc.</u>, 9 Cal. 5th 73, 86 (2020) ("The

7   Legislature's sole purpose in enacting PAGA was to augment the

8   limited enforcement capability of the [LWDA] by empowering

9   employees to enforce the Labor Code as representatives of the

10  Agency.  Accordingly, a PAGA claim is an enforcement action

11  between the LWDA and the employer, with the PAGA plaintiff acting

12  on behalf of the government.") (internal quotations and citations

13  omitted, alterations in original).

14        The LWDA safeguards this primacy through PAGA's notice

15  requirement.  "First, . . . the employee must give 'written

16  notice . . . to the [LWDA] and the employer of the specific

17  provisions . . . alleged to have been violated, including the

18  facts and theories to support the alleged violation.'"  <u>Alcantar</u>

19  <u>v. Hobart Serv.</u>, 800 F.3d 1047, 1056 (9th Cir. 2015) (quoting

20  Cal. Lab. Code § 2699.3(a)(1)); <u>see</u> <u>Arias</u>, 46 Cal. 4th at 981

21  (same).  Then, if the LWDA notifies the employee and employer

22  within 60 days that it does not intend to investigate the alleged

23  violation(s), or if no notice is provided within 65 days, the

24  employee may bring a PAGA action to recover civil penalties.

25  Cal. Lab. Code §§ 2699.3(a)(2)(A), 2699(a).

26        PAGA's notice requirement was implemented to "allow[ ]

27  the [LWDA] to act first on more serious violations such as wage

28  and hour violations and give employers an opportunity to cure

1  less 'serious' violations." <u>Dunlap v. Super. Ct.</u>, 142 Cal. App.

2  4th 330, 338-39 (2d Dist. 2006) (quoting Cal. S. Rules Comm.,

3  Off. of S. Floor Analyses, Bill Analysis for SB1809, at 5-6 (Aug.

4  27, 2004)); <u>see also</u> <u>Alcantar</u>, 800 F.3d at 1057 (notice

5  requirement exists "to allow the [LWDA] to intelligently assess

6  the seriousness of the alleged violations" and "permit the

7  employer to determine what policies or practices are being

8  complained of so as to know whether to fold or fight"); <u>Williams</u>,

9  3 Cal. 5th at 545-46 (purpose of LWDA notice requirement "is to

10 afford . . . the LWDA[ ] the opportunity to decide whether to

11 allocate scarce resources to an investigation, a decision better

12 made with knowledge of the allegations an aggrieved employee is

13 making and any basis for those allegations").  To effectuate

14 these goals, courts adjudicating PAGA claims require that

15 plaintiffs serving as PAGA representatives have "compl[ied] with

16 the statute's notice requirements" before bringing suit.  <u>See</u>

17 <u>Alcantar</u>, 800 F.3d at 1056; <u>Brown v. Ralphs Grocery Co.</u>, 28 Cal.

18 App. 5th 824, 834-36 (2d Dist. 2018); <u>Khan v. Dunn-Edwards Corp.</u>,

19 19 Cal. App. 5th 804, 808-810 (2d Dist. 2018).

20           2.   <u>Addition of PAGA Representatives</u>

21        As noted above, an aggrieved employee bringing a PAGA

22 claim does so on behalf of the state and for the benefit of other

23 aggrieved employees.  (<u>See also</u> SAC at ¶¶ 98-99 (establishing

24 that plaintiff Harper seeks to pursue "representative PAGA

25 claims" "on behalf of all class members who are also aggrieved

26 employees under PAGA") (Docket No. 147).)  Accordingly, and as

27 counsel for plaintiffs conceded at oral argument, it would be

28 redundant to have multiple employees serve as PAGA

1   representatives here, given that doing so would not expand the

2   PAGA action's scope.  At the outset, this indicates that

3   plaintiffs lack good cause to amend the complaint to add

4   plaintiffs Sinclair, Turner, Vazquez, and Abascal as PAGA

5   representatives.[2]

6           Further, although neither the parties nor the court

7   have identified precedent addressing whether plaintiffs may add

8   PAGA representatives to an existing action based on late-filed

9   amendments to another, current representative's original LWDA

10   notice, available precedent and the legislative intent behind

11   PAGA's notice requirement suggest that they cannot.

12           "Proper notice under [Labor Code] section 2699.3 is a

13   'condition' of a PAGA lawsuit," Brown, 28 Cal. App. at 835

14   (quoting Williams, 3 Cal. 5th at 545), i.e., a requirement that

15   must be satisfied before a plaintiff may bring a civil PAGA

16   action.  See Brown, 28 Cal. App. at 841 (noting "the intent of

17   the Legislature to require compliance with administrative

18   procedures as a condition to filing an action" under PAGA);

19   Mazzei v. Regal Ent. Grp., SACV 13-1284-DOC (AGRx), 2013 WL

20   6633079, at *5 (C.D. Cal. Dec. 13, 2013) (describing "PAGA's

21   administrative exhaustion requirements" as a "condition

22

23           [2]   Plaintiffs argue that the court should grant their
     motion because, among other reasons, PAGA allows multiple
24   employees to serve as PAGA representatives in one action.  (See
     Pl.'s Reply at 11-12 (citing Julian v. Glenair, Inc., 17 Cal.
25   App. 5th 853, 873 (2d Dist. 2017)) (Docket No. 190).)  Even if
     multiple employees may jointly file a PAGA action, however, in
26   determining whether to grant plaintiffs leave to file a Third
     Amended Complaint, the operative question is whether they have
27   good cause to do so.  See Fed. R. Civ. P. 16; Johnson, 975 F.2d
     at 608-10.
28

1   precedent" to suit) (citation omitted).  To enable the LWDA to

2   decide whether to investigate alleged violations itself, and as a

3   condition of the LWDA's delegation of enforcement authority to

4   individual employees, "proper notice" under PAGA requires that

5   employees seeking to serve as PAGA representatives in civil

6   actions first notify the LWDA within one year of an alleged Labor

7   Code violation.  See Brown, 28 Cal. App. 5th at 839.

8        Plaintiffs Sinclair, Turner, Vazquez, and Abascal did

9   not do so.  Rather, although their terms of employment with

10  Charter ended in April 2017, October 2018, March 2020, and

11  January 2020, respectively, (SAC at ¶¶ 6-9 (Docket No. 147)),

12  Sinclair did not join plaintiff Harper's LWDA notice via

13  amendment until September 2020, (see id., Ex. 1), and Turner,

14  Vazquez, and Abascal did not do so until June 2021, (see Mot. for

15  Leave to Amend, Ex. 2 (Docket No. 174-2)), well after this PAGA

16  action had commenced.  None filed a notice prior to these

17  amendments.  (See SAC (Docket No. 147).)

18       Accordingly, these plaintiffs have not satisfied PAGA's

19  administrative exhaustion requirements, and therefore amending

20  the Second Amended Complaint's PAGA claim to add them as

21  additional PAGA representatives would be futile.  This conclusion

22  receives support from prior decisions by courts in California,

23  which have repeatedly dismissed PAGA claims or denied amendments

24  thereto where plaintiffs had not notified the LWDA within one

25  year of the violations they sought to challenge in court and

26  before bringing a PAGA action.  See Brown, 28 Cal. App. 5th at

27  839-44; Briggs v. OS Rest. Servs., LLC, LA CV18-08457 JAK (AFMx),

28  2020 WL 6260001, at *9 (C.D. Cal. Aug. 26, 2020); Mazzei, 2013 WL

1    6633079, at *5; Wong v. AT&T Mobility Servs. LLC, CV 10-8869-GW

2    (FMOx), 2012 WL 8527485, at *2 (C.D. Cal. July 2, 2012).

3            Plaintiffs argue that, notwithstanding these

4    deficiencies, equitable tolling and relation back principles

5    allow them to tether the amended notices to the original notice

6    Harper submitted, such that they too may be considered to have

7    given timely and proper notice to the LWDA.  (See Mot. for Leave

8    to Amend at 12-14 (Docket No. 174).)  While Federal Rule of Civil

9    Procedure 15 allows plaintiffs to amend pleadings in civil suits

10   when the amendment "relates back" to the date of the original,

11   see Fed. R. Civ. P. 15(c), California courts have made clear that

12   the relation-back doctrine cannot be used as an end-run around

13   PAGA's administrative exhaustion requirement, nor can equitable

14   tolling.  See Esparza v. Safeway, Inc., 36 Cal. App. 5th 42, 62-

15   63 (2019); Brown, 28 Cal. App. 5th at 840-42.  Although Williams

16   v. Veolia Transportation Services, Inc., upon which plaintiffs

17   rely, (see Pl's Reply at 8-9 (Docket No. 190)), applied equitable

18   tolling to an LWDA notice, see CV 08-2582-GW(AGRx), 2012 WL

19   12960640, at *2 (C.D. Cal. June 28, 2012), the California Court

20   of Appeal has since specifically rejected that decision's

21   approach, noting its failure to "consider the legislative intent"

22   behind PAGA's notice requirement.  See Brown, 28 Cal. App. 5th at

23   841.[3]

24   _____

25       [3]    In seeking leave to amend the complaint to add these
     plaintiffs as PAGA representatives, plaintiffs also cite a
26   provision in the PAGA statute enabling plaintiffs to amend
     complaints to add causes of action under PAGA as a matter of
27   right.  (See Pl's Reply at 12 n.9 (citing Cal. Lab. Code
     § 2699.3(a)(2)(C)) (Docket No. 190).)  However, that provision
28   specifically provides that such amendments must be made "within

1          Moreover, even if plaintiffs could properly add

2    additional PAGA representatives via plaintiff Harper's amended

3    notices, they have already foregone at least one opportunity to

4    do so.  Plaintiff Sinclair was named in plaintiffs' First Amended

5    Notice, submitted to the LWDA on September 9, 2020.  (See SAC,

6    Ex. 1 (Docket No. 147).)  After accounting for the mandatory 65-

7    day post-notice waiting period before a plaintiff may bring a

8    PAGA action, see Cal. Lab. Code § 2699.3(a)(2)(A), nearly seven

9    months passed before plaintiffs filed the Second Amended

10   Complaint, in which they did not include Sinclair as a proposed

11   PAGA representative.  (See SAC (Docket No. 147).)  Plaintiffs had

12   ample opportunity to add him as one at that time, which would

13   have obviated the need for another amendment.  Because the

14   instant motion fails to explain why they did not, it fails to

15   show the requisite diligence to justify further leave to amend.

16          Similarly, plaintiffs first sought leave to add Turner,

17   Vazquez, and Abascal as plaintiffs to this action on April 16,

18   2021, 49 days before they filed the Second Amended Complaint.

19   (Docket Nos. 121, 147.)  Given that Harper and Sinclair

20   undoubtedly knew of their intention to seek leave to add the

21   other plaintiffs to this action in advance of doing so, it is not

22   clear why plaintiffs could not have filed an amended notice with

23

24   60 days of the time periods specified in [section 2699.3]," a
     requirement plaintiffs have not satisfied here.  See Cal. Lab.
25   Code § 2699.3(a)(2)(C); see also, e.g., Hoang v. Vinh Phat
     Supermarket, Inc., 2:13-cv-704 WBS GGH, 2013 WL 4095042, at *6-8
26   (E.D. Cal. Aug. 13, 2013) (finding plaintiffs cured failure to
     notify LWDA before filing suit by doing so ten days after filing
27   and by amending complaint within statutory period provided by
     section 2699.3(a)).
28

1   the LWDA seeking to add them at that time, such that plaintiffs
2   could then have added them as proposed PAGA representatives in
3   the Second Amended Complaint as well.  Notwithstanding the
4   futility issues discussed above, this suggests that plaintiffs
5   were insufficiently diligent to warrant a third round of
6   amendments, which would further delay resolution of pending
7   motions.  See Johnson, 975 F.2d at 609 (noting that parties'
8   failure to adhere to the scheduling order "undermine[s] the
9   court's ability to control its docket" and "disrupt[s] the
10  agreed-upon course of the litigation").

11          Because plaintiffs have not shown the good cause
12  required to gain leave to amend to add plaintiffs Sinclair,
13  Turner, Vazquez, and Abascal as PAGA representatives, and because
14  such amendment would be futile, the court will not grant leave to
15  do so.

16              3.   Addition of Labor Code Section 432.5 Allegations

17          Plaintiffs also seek leave to amend the complaint to
18  add alleged violations of Labor Code section 432.5 to Harper's
19  PAGA claim.  (See Mot. for Leave to Amend at 10 (Docket No.
20  174).)  They do so to challenge Charter's assertion of an
21  arbitration agreement against them in May 2021, relying on an
22  amended notice from June 11, 2021, which notified the LWDA of
23  these alleged violations.  (See id.; Pl's Reply at 11 (Docket No.
24  190).)

25          Whether or not this amendment was timely submitted
26  within PAGA's statute of limitations, a point on which the
27  parties disagree, (see Opp. to Mot. for Leave to Amend at 12-13
28  (Docket No. 188); Pl.'s Reply at 11 (Docket No. 190)), it was not

                                14

1  submitted prior to commencement of this PAGA suit.  As discussed

2  above, "proper notice" under PAGA requires that an employee

3  notify the LWDA of an alleged Labor Code violation <u>before</u>

4  commencing a civil PAGA suit in which they assert that claim.

5  See <u>Esparza</u>, 36 Cal. App. 5th at 62-63; <u>Brown</u>, 28 Cal. App. 5th

6  at 840; <u>Wong</u>, 2012 WL 8527485, at *2.  Because plaintiffs did not

7  do so here, the court concludes that the amendment they seek to

8  make would be futile, and therefore denies them leave to amend to

9  add the alleged section 432.5 violations to their PAGA claim.

10        The court recognizes that plaintiffs allege that the

11  section 432.5 violations occurred in June 2021, well after

12  plaintiff Harper initiated this PAGA action, meaning it was

13  impossible for them to have notified the LWDA of these alleged

14  violations prior to the current action.  However, "PAGA claims

15  are different from conventional civil suits," <u>Kim</u>, 9 Cal. 5th at

16  86, and unlike private causes of action created by other Labor

17  Code provisions, it is not a vehicle by which an employee may

18  freely challenge any alleged Labor Code violation they have

19  experienced.  <u>See</u> <u>id.</u> ("[C]ivil penalties recovered on the

20  state's behalf are intended to 'remediate present violations and

21  deter future ones,' <u>not</u> to redress employees' injuries.")

22  (quoting <u>Williams</u>, 3 Cal. 5th at 546).

23        Rather, as discussed above, proper compliance with

24  PAGA's notice requirements, including the requirement that such

25  notice be given before filing suit, is an express condition of

26  the LWDA's grant of authority to aggrieved employees to enforce

27  the Labor Code on the state's behalf.  <u>See</u> <u>Brown</u>, 28 Cal. App.

28  5th at 835; <u>Williams</u>, 3 Cal. 5th at 545; <u>Kim</u>, 9 Cal. 5th at 86.

1   Although this may mean that in certain cases employees are unable

2   to add new alleged violations to existing PAGA claims in a

3   previously filed case, California has imposed these notice

4   requirements so that it may "retain primacy over private

5   enforcement efforts," Arias, 46 Cal. 4th at 980, a goal that

6   would be undermined were these requirements not enforced.

7        B.   Arbitration Subclasses

8             Plaintiffs also seek leave to amend the Second Amended

9   Complaint to add proposed arbitration subclasses, which would

10  include members of each proposed class whom "Charter contends are

11  bound by a JAMS and/or Solution Channel arbitration agreement."

12  (Mot. for Leave to Amend at 2 (Docket No. 174); Proposed TAC

13  Redline at ¶ 19 (Docket No. 174-3).)

14            It is unclear to the court what plaintiffs think they

15  would accomplish by such an amendment.  However, in their motion,

16  plaintiffs acknowledge that "amending a complaint to plead

17  updated proposed class and subclass definitions is unnecessary."

18  (Mot. for Leave to Amend at 7 n.1 (Docket No. 174).)  By doing

19  so, they concede that they lack the good cause required to obtain

20  leave to make these amendments.  See Fed. R. Civ. Proc. 16(b)(4).

21  Accordingly, the court will deny the motion as to the proposed

22  arbitration subclasses.

23       C.   Tolling and Relation Back

24            Plaintiffs also seek leave to amend the Second Amended

25  Complaint to add allegations regarding tolling and relation back

26  principles with respect to various claims, including plaintiff

27  Harper's PAGA claim.  (Mot. for Leave to Amend at 2 (Docket No.

28  174).)  The inapplicability of these doctrines in the PAGA

16

1   context is discussed above, rendering these amendments futile to

2   the extent that they are intended to support Harper's PAGA claim.

3           To the extent that the amendments are intended to

4   support other claims, plaintiffs do not contend that they were

5   unable to include these allegations in the recently filed Second

6   Amended Complaint.  Rather, they simply contend that they assumed

7   their original allegations were adequate because Charter did not

8   challenge their sufficiency until its recent motion to dismiss,

9   and they indicate that the proposed amendments are intended to

10  preempt that motion.  (Id. at 9-10; see Mot. to Dismiss (Docket

11  No. 163).)

12          To allow plaintiffs leave to amend each time a

13  defendant alleges a deficiency in the most recent amended

14  complaint, before the court can evaluate that alleged deficiency,

15  would be to set up "a continually moving target."  Kane v.

16  Chobani, Inc., 973 F. Supp. 2d 1120, 1136 (N.D. Cal. 2014),

17  vacated on other grounds sub nom. Kane v. Chobani, LLC, 645 F.

18  App'x 593, 594 (9th Cir. 2016).  The court has already granted

19  plaintiffs leave to file the Second Amended Complaint -- after

20  deciding a motion for summary judgment, and after plaintiffs

21  filed a motion for class certification -- and barely four months

22  have elapsed since then.  Plaintiffs cannot continue to amend

23  their complaint indefinitely, particularly this late in this

24  case.  "[A]t some point, the litigation must be resolved."  Id.

25          Because plaintiffs' request for leave to amend to

26  include these allegations does not demonstrate diligence, the

27

28

17

1    court will deny the motion as to these amendments.[4]

2          D.    UCL Claim

3          Lastly, plaintiffs seek to amend the Second Amended

4    Complaint to allege, for purposes of their UCL claim, that they

5    lack an adequate remedy at law for wages owed for a period prior

6    to the expiration of the Labor Code's statute of limitations, as

7    well as for violations of Labor Code provisions that do not

8    create a private right of action.  (Mot. for Leave to Amend at 2

9    (Docket No. 174); Proposed TAC Redline at ¶ 98 (Docket No. 174-

10   3).)  Again, plaintiffs admit that these proposed amendments are

11   in response to Charter's motion to dismiss, which they here seek

12   to preempt.  (Mot. for Leave to Amend at 9 (Docket No. 174).)

13         As indicated above, the court will not grant plaintiffs

14   leave to amend so that they may evade an already filed motion to

15   dismiss, particularly where they have not shown that it was not

16   possible or practicable to include such amendments in the Second

17   Amended Complaint.  At this late stage, the time to cure any

18   deficiencies challenged in defendant's motion would be after

19   resolution thereof, if the court permits plaintiffs to do so.

20   Because plaintiffs have not shown good cause for leave to amend

21   their UCL claim, the court declines grant it at this time.

22

23

24

25

---

26         [4]    Moreover, as with their request to amend to add
     arbitration subclasses, plaintiffs here also admit that the
27   amendments are unnecessary.  (See Mot. for Leave to Amend at 10
     (Docket No. 174).)  If that is plaintiffs' position, it is hard
28   to see how Rule 16's "good cause" requirement is satisfied.

1          IT IS THEREFORE ORDERED that plaintiffs' motion to

2 modify the scheduling order and for leave to file a Third Amended

3 Complaint (Docket No. 174) be, and the same hereby is, DENIED.

4 Dated:  October 12, 2021

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

19