UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| LIONEL HARPER, DANIEL SINCLAIR, HASSAN TURNER, LUIS VAZQUEZ, and PEDRO ABASCAL, individually and on behalf of all others similarly situated and all aggrieved employees,<br><br>                Plaintiffs,<br><br>      v.<br><br>CHARTER COMMUNICATIONS, LLC,<br><br>                Defendant. | No. 2:19-cv-00902 WBS DMC<br><br><br>ORDER RE: DEFENDANT'S MOTIONS<br>TO COMPEL ARBITRATION |

----oo0oo----

        Plaintiffs Lionel Harper, Daniel Sinclair, Hassan Turner, Luis Vazquez, and Pedro Abascal ("plaintiffs") brought this putative class action against their former employer, Charter Communications, alleging various violations of the California Labor Code.  Among other things, plaintiffs allege that Charter misclassified them and other California employees as "outside salespersons," failed to pay them overtime wages, failed to

1

1    provide meal periods or rest breaks (or premium wages in lieu

2    thereof), and provided inaccurate wage statements.  (See

3    generally Second Amended Complaint ("SAC") (Docket No. 147).)

4    Charter now moves to (1) compel arbitration of plaintiff Harper's

5    claims and stay the action and (2) compel arbitration of

6    plaintiff Turner, Vazquez, and Abascal's claims and dismiss them

7    from the case.  (Mots. to Compel Arbitration (Docket Nos. 162,

8    165).)[1]

9    I.   Facts & Procedural History

10        Much of this case's factual background is set forth in

11   the court's accompanying Order Re: Plaintiffs' Motion to Modify

12   the Scheduling Order and for Leave to File a Third Amended

13   Complaint.  Accordingly, the court will not repeat it here except

14   where relevant to the instant motions.

15        A.   Plaintiff Harper

16        Plaintiff Harper worked for Charter from September 2017

17   to March 2018.  (SAC at ¶ 5 (Docket No. 147).)  Upon hire, Harper

18   signed an agreement to arbitrate "any and all claims, disputes,

19   and/or controversies between [Harper] and Charter arising from or

20   related to [Harper's] employment with Charter," designating JAMS

21

22        [1]   The parties have requested that the court take judicial
     notice of two filings in Harper's related FEHA case, other
23   documents filed in this litigation, the American Arbitration
     Association's rules and procedures, and two unpublished Los
24   Angeles Superior Court decisions addressing Charter's motions to
     compel arbitration in other cases.  (See Docket Nos. 171, 184,
25   185.)  Plaintiffs object to Charter's request as to the Los
     Angeles Superior Court decisions.  (See Docket No. 191.)  Because
26   the court does not find these materials relevant to this matter
     or helpful in deciding any of the issues currently before the
27   court, however, the court declines to take judicial notice of
     these materials.

28

1    as the arbitration provider and stating that JAMS rules,

2    procedures, and policies would govern arbitrations under that

3    agreement (the "JAMS Agreement").  (Order re Mot. to Compel Arb.

4    at 2 (Docket No. 24).)  The JAMS Agreement included a waiver of

5    representative, collective, and class actions (the "Waiver") and

6    a severance and so-called "poison pill" provision.  (Id. at 2.)

7    The severance provision stated that if any part of the agreement

8    was found to be void or unenforceable, that part would be severed

9    and the remainder enforced.  (Id. at 2-3.)  It went on to state

10   one exception (the "poison pill"): that if a dispute involved a

11   representative, collective, or class action claim, and the Waiver

12   were found to be invalid or unenforceable, "then th[e] entire

13   Agreement . . . shall be null and void and the dispute will not

14   be arbitrable."  (Id. at 3.)

15          In October 2017, while Harper was still employed by

16   Charter, Charter adopted a new arbitration agreement requiring

17   arbitration of claims via "Solution Channel," Charter's

18   employment-based legal dispute resolution program, which provided

19   for arbitration under the rules of the American Arbitration

20   Association (the "Solution Channel Agreement").  (Id. at 3.)

21   When announcing the change, Charter notified employees that they

22   would be bound by the Solution Channel Agreement unless they

23   opted out within thirty days.  (Id.)  Harper did not do so.

24   (Id.)

25          In November 2018, Harper filed a Demand for Arbitration

26   and Request for Rulings as to Inarbitrability with JAMS, seeking

27   a ruling on whether his employment-related grievances against

28   Charter could be arbitrated under the JAMS Agreement.  (Id. at 5-

                                   3

1  6.)  Charter consented to and participated in the ensuing

2  arbitration process with JAMS, and in April 2019 an arbitrator

3  issued an award finding that Harper's wage-and-hour claims were

4  inarbitrable and dismissing the arbitration.  (Id. at 6; see Mot.

5  to Confirm Arb. Award, Ex. 16 ("Order of Dismissal"), at 157-66

6  (Docket No. 9-1).)

7          Specifically, the arbitrator determined that because

8  pre-dispute waivers of representative claims brought under PAGA

9  are unenforceable under California law, the JAMS Agreement Waiver

10  could not be enforced.  (Order of Dismissal at 159-61 (Docket No.

11  9-1) (citing Iskanian v. CLS Transp. L.A. LLC, 59 Cal. 4th 348,

12  384 (2014)).)  The arbitrator accordingly determined that this

13  activated the poison pill, nullifying the entire agreement.

14  (Id. at 163-65.)  The arbitrator rejected Charter's argument that

15  the poison pill be limited so as to nullify the agreement only as

16  to the representative, collective, or class action claim at issue

17  as contrary to the JAMS Agreement's plain text, which included no

18  such limitation.  (Id.)

19          In May 2019, after Harper had initiated this action in

20  state court, Charter sought to enforce the Solution Channel

21  Agreement against Harper, who refused.  (Order re Mot. to Compel

22  Arb. at 6-7 (Docket No. 24).)  In August 2019, this court

23  confirmed and entered judgment pursuant to the JAMS arbitration

24  award.  (Id. at 19.)  Further, the court found that there had

25  been a novation as a result of Charter's acquiescence to

26  arbitration under the JAMS Agreement rather than the Solution

27  Channel Agreement, held that any rights Charter had as against

28  Harper under the Solution Channel Agreement with respect to his

4

1   wage-and-hour claims were thus "dead and extinguished," and

2   denied a motion by Charter to compel arbitration under the

3   Solution Channel Agreement.  (Id. at 18-20.)[2]

4        In May 2021, Harper again sought employment with

5   Charter via an online application.  (Fries Decl. at ¶ 16, Ex. D

6   (Docket No. 162-1).)  When proceeding through Charter's online

7   application, applicants are presented with a webpage featuring

8   information about Charter's Solution Channel Agreement, with

9   links to the agreement itself and to Solution Channel Program

10  Guidelines, both of which applicants may save and print.  (Id. at

11  ¶¶ 7-10.)  To proceed with their application, applicants are

12  required to affirmatively agree to be bound by the Solution

13  Channel Agreement by clicking an "I Agree" button.  (Id. at

14  ¶ 11.)  They are informed that if they do not agree, they will be

15  removed from consideration for employment; their application is

16  not submitted, and they are given the option to begin the

17  application process again.  (Id. at ¶¶ 12-13.)  On May 23, 2021,

18  Harper consented to the Solution Channel Agreement and submitted

19  an online application to Charter.  (Id. at ¶ 16, Ex. D.)

20  _____

21       [2]  In late 2019, the court also adjudicated a separate,
    related action between Harper and Charter brought under

22  California's Fair Employment and Housing Act ("FEHA").  See
    Harper v. Charter Comms., LLC, 2:19-cv-01749 WBS DMC, 2019 WL

23  6918280 (E.D. Cal. Dec. 18, 2019).  There, Harper had also sought
    to arbitrate his FEHA claims under the JAMS agreement, but this

24  time Charter did not participate.  Id. at *2.  The court held
    that because "Charter did not engage with [Harper's] FEHA claims"

25  in the manner it had with his wage-and-hour claims, there had
    been no novation of arbitration agreements with respect to the

26  FEHA claims.  Id. at *3.  After determining that the Solution
    Channel Agreement applied to Harper's FEHA claims and was valid,

27  the court granted a motion by Charter to compel arbitration of
    those claims under that agreement.  Id. at *3-6.

28

1          B.    Plaintiffs Turner, Vazquez, and Abascal

2          In addition to consenting to the Solution Channel

3   Agreement in order to complete Charter's online application,

4   individuals who accept offers of employment from Charter are

5   again required to consent to the same agreement, or else they

6   cannot become a Charter employee.  (Fries Decl. re Turner at

7   ¶¶ 9-18 (Docket No. 165-2).)  Plaintiff Turner submitted an

8   online application on May 23, 2018, consenting to the Solution

9   Channel Agreement, and subsequently completed Charter's employee

10  onboarding process, consenting to the agreement again.  (Id. at

11  ¶¶ 8, 19, Exs. A & B.)  Plaintiff Vazquez did the same,

12  submitting his application on October 9, 2019.  (Fries Decl. re

13  Vazquez at ¶¶ 8, 19, Exs. A & B.)  Plaintiff Abascal did as well,

14  submitting his application on November 5, 2019.  (Fries Decl. re

15  Abascal at ¶¶ 8, 19, Exs. A & B.)

16         C.    The Solution Channel Agreement

17         The Solution Channel Agreement contains several

18  provisions currently at issue.  It requires parties to the

19  agreement to resolve "all disputes, claims and controversies that

20  could be asserted in court or before an administrative agency for

21  which you or Charter have an alleged cause of action related to

22  pre-employment, employment, employment termination or post-

23  employment-related claims," including wage-and-hour-related

24  claims, through binding arbitration.  (Fries Aff., Ex. C

25  ("Solution Channel Agreement"), at §§ A, B(1) (Docket No. 165-

26  2).)

27         The agreement specifically excludes certain claims from

28  arbitration, including "[a]ny claims that have already been filed

6

1  in federal or state court at the time you execute this Agreement,

2  provided that such claims were not previously subject to any

3  arbitration agreement." (Id. at § C(14).)  It also includes a

4  merger clause, providing that the Solution Channel Agreement

5  represents the complete agreement between parties on the

6  resolution of covered disputes, but noting that "this Agreement

7  will not apply to the resolution of any charges, complaints, or

8  lawsuits that have been filed with an administrative agency or

9  court before the Effective Date of this Agreement." (Id. at

10  § P.)  Finally, like the JAMS Agreement, the Solution Channel

11  Agreement includes a waiver of representative, class, or

12  collective action claims. (Id. at § D.)

13  II.  Analysis

14       The Federal Arbitration Act ("FAA") provides that a

15  written provision in a "contract evidencing a transaction

16  involving commerce to settle by arbitration a controversy

17  thereafter arising out of such contract . . . shall be valid,

18  irrevocable, and enforceable, save upon such grounds as exist at

19  law or in equity for the revocation of any contract." 9 U.S.C.

20  § 2.  Because arbitration is a matter of contract, "the central

21  . . . purpose of the FAA is to ensure that private agreements to

22  arbitrate are enforced according to their terms." Stolt-Nielsen

23  S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 682 (2010)

24  (internal quotations omitted); see also Perry v. Thomas, 482 U.S.

25  483, 490 (1987) (under the FAA, arbitration agreements "must be

26  rigorously enforced") (internal quotations omitted, alterations

27  adopted).

28       The FAA "leaves no place for the exercise of discretion

7

1   by a district court, but instead mandates that district courts

2   shall direct the parties to proceed to arbitration on issues as

3   to which an arbitration agreement has been signed." Dean Witter

4   Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985). Accordingly,

5   "the FAA limits courts' involvement to determining (1) whether a

6   valid agreement to arbitrate exists and, if it does, (2) whether

7   the agreement encompasses the dispute at issue." Cox v. Ocean

8   View Hotel Corp., 533 F.3d 1114, 1119 (9th Cir. 2008) (internal

9   quotations omitted).

10      "[A]s a matter of federal law, any doubts concerning

11  the scope of arbitrable issues should be resolved in favor of

12  arbitration, whether the problem at hand is a construction of the

13  contract language itself or an allegation of waiver, delay, or

14  like defense to arbitrability." Moses H. Cone Mem'l Hosp. v.

15  Mercury Const. Corp., 460 U.S. 1, 24-25 (1983); see Poublon v.

16  C.H. Robinson Co., 846 F.3d 1251, 1259 (9th Cir. 2017) (same).

17  Upon a showing that a party has failed to comply with a valid

18  arbitration agreement, the district court must issue an order

19  compelling arbitration.  See Cohen v. Wedbush, Noble Cooke, Inc.,

20  841 F.2d 282, 285 (9th Cir. 1988).

21      The primary exception to courts' obligation to enforce

22  arbitration agreements under the FAA comes from the Act's "saving

23  clause," which "allows courts to refuse to enforce arbitration

24  agreements 'upon such grounds as exist at law or in equity for

25  the revocation of any contract.'" Epic Sys. Corp. v. Lewis, 138

26  S. Ct. 1612, 1622 (2018) (quoting 9 U.S.C. § 2).  Such "generally

27  applicable contract defenses" most frequently include "fraud,

28  duress, or unconscionability," but do not include "defenses that

1  apply only to arbitration." <u>AT&T Mobility LLC v. Concepcion</u>, 563

2  U.S. 333, 339 (2011) (internal quotations omitted).

3      A.  <u>Applicability of the Solution Channel Agreement</u>

4      Charter seeks to compel plaintiffs Harper, Turner,

5  Vazquez, and Abascal to submit their California Labor Code and

6  Unfair Competition Law ("UCL") claims to arbitration on an

7  individual basis. (<u>See</u> Mot. to Compel Arb. re Harper at 1

8  (Docket No. 162); Mot. to Compel Arb. re Turner, Vazquez, &

9  Abascal at 1 (Docket No. 165).) Plaintiffs contend that to do

10 so, Charter must prove that (1) a valid agreement to arbitrate

11 exists and (2) the agreement encompasses the claims Charter seeks

12 to arbitrate. (<u>See</u> Opp. to Mot. to Compel Arb. at 16-17 (citing

13 <u>Chiron Corp. v. Ortho Diagnostic Sys., Inc.</u>, 207 F.3d 1126, 1130

14 (9th Cir. 2000)) (Docket No. 172); Opp. to Mot. to Compel Arb. at

15 14 (same) (Docket No. 173).)

16     Turner, Vazquez, and Abascal acknowledge that they each

17 executed the Solution Channel Agreement both when applying for

18 employment with Charter and when accepting their jobs, (<u>see</u> Opp.

19 to Mot. to Compel Arb. at 9-11 (Docket No. 173)), and Harper

20 acknowledges that he did when re-applying for employment with

21 Charter in May 2021, (<u>see</u> Opp. to Mot. to Compel Arb. at 14

22 (Docket No. 172)). On this basis, plaintiffs concede that a

23 valid agreement to arbitrate exists. (<u>See</u> <u>id.</u> at 17; Opp. to

24 Mot. to Compel Arb. at 14 (Docket No. 173).) Accordingly, the

25 question becomes whether the agreement applies to plaintiffs'

26 Labor Code and UCL claims, of which Charter seeks to compel

27

28

1  arbitration.[3]

2          The Solution Channel Agreement provides that "[y]ou and

3  Charter mutually agree that . . . any dispute arising out of or

4  relating to your pre-employment application and/or employment

5  with Charter or the termination of that relationship, except as

6  specifically excluded below, must be resolved through binding

7  arbitration."  (Solution Channel Agreement at § A (Docket No.

8  165-2).)  This is followed by a section titled "Covered Claims,"

9  (id. at § B), which specifies that such disputes include "wage

10 and hour-based claims including claims for unpaid wages,

11 commissions, or other compensations or penalties (including meal

12 and rest break claims, claims for inaccurate wage statements,

13 [and] claims for reimbursement of expenses)," (id. at § B(1)).

14 The parties do not dispute that the claims of which Charter seeks

15 to compel arbitration clearly fall into this category.

16          However, that section is followed by another, titled

17 "Excluded Claims," which lists a variety of claims to which the

18 "Covered Claims" section does not apply.  (See id. at § C.)

19 Notably for purposes of the instant motions, these include "[a]ny

20 claims that have already been filed in federal or state court at

21 the time you execute this Agreement, provided that such claims

22 were not previously subject to any arbitration agreement."  (Id.

23

---

24          [3]    Although at oral argument the parties briefly discussed
25 whether questions of arbitrability should themselves be submitted
   to an arbitrator, neither party raised this issue in their
26 briefing.  Accordingly, this court will decide whether
   plaintiffs' claims are arbitrable rather than submit the issue to
27 the arbitrator.  See also Momot v. Mastro, 652 F.3d 982, 987 (9th
   Cir. 2011) (gateway issues of arbitrability are presumptively
28 reserved for the court).

1   at § C(14).)   The aforementioned merger clause, which appears

2   later in the agreement, also provides that "this Agreement will

3   not apply to the resolution of any charges, complaints, or

4   lawsuits that have been filed with an administrative agency or

5   court before the Effective Date of this Agreement."   (Id. at

6   § P.)

7           Plaintiffs argue that these two provisions operate to

8   exclude plaintiffs Vazquez and Abascal's claims from mandatory

9   arbitration under the agreement.   Specifically, they argue that

10  because plaintiff Harper had already filed this action by the

11  time Vazquez and Abascal executed the agreement, their claims

12  qualify as having "already been filed in . . . court" and having

13  "been filed with a[ ] . . . court before the Effective Date of

14  th[e] Agreement" under these provisions.[4]   (See Opp. to Mot. to

15  Compel Arb. at 15-19 (Docket No. 173).)

16          They argue the same as to Harper, given that he

17  executed the operative agreement in May 2021, after bringing this

18  action, and contend that his claims "were not previously subject

19  to any agreement" pursuant to section C(14) because the

20  agreements he previously signed were no longer in effect by May

21  2021.   (See Opp. to Mot. to Compel Arb. at 16-22 (Docket No.

22  172).)   In light of the differing arguments put forward with

23  respect to Harper and to the other plaintiffs for whom Charter

24  seeks to compel arbitration, the court will address the two

25  _____

26       [4]   Plaintiffs do not make this argument with respect to
     plaintiff Turner, as he had already executed the agreement when
27   this litigation began, and therefore they concede that sections
     C(14) and P do not apply to him.   (See Opp. to Mot. to Compel
28   Arb. at 17 n.6 (Docket No. 173).)

1  groups separately.

2      1.   Plaintiffs Turner, Vazquez, and Abascal

3          Charter argues that Vazquez and Abascal improperly seek

4  to avoid arbitration by, in essence, piggybacking off of Harper's

5  already-filed claims, which they did not join until well after

6  executing the agreement.  (See Def.'s Reply at 5-10 (Docket No.

7  182).)  It contends that because section C creates exceptions to

8  section B's requirement that various claims be arbitrated, the

9  two sections must be read together, and that because section B by

10  its terms applies to "claims . . . for which you or Charter have

11  an alleged cause of action," the exclusion contained in section

12  C(14) is properly read to exclude only already-filed claims

13  between the signing party and Charter, rather than any already-

14  filed claims to which Charter is a party.  (Solution Channel

15  Agreement at § B(1) (emphasis added) (Docket No. 165-2); see id.

16  at 5-6.)  The court agrees.

17          Because, as a general matter, contract interpretation

18  is a matter of state law, the court looks to California law in

19  construing these provisions.  See DIRECTV, Inc. v. Imburgia, 577

20  U.S. 47, 54 (2015) (citing Volt Info. Scis., Inc. v. Bd. of Trs.

21  of Leland Stanford Junior Univ., 489 U.S. 468, 474 (1989)).

22  Three provisions of the California Civil Code, governing the

23  interpretation of contracts, are relevant here.  First, "[t]he

24  language of a contract is to govern its interpretation, if the

25  language is clear and explicit, and does not involve an

26  absurdity."  Cal. Civ. Code § 1638.  Second, "[a] contract must

27  be so interpreted as to give effect to the mutual intention of

28  the parties as it existed at the time of contracting, so far as

12

1   the same is ascertainable and lawful."  <u>Id.</u> at § 1636.  Third,

2   "[t]he whole of a contract is to be taken together, so as to give

3   effect to every part, if reasonably practicable, each clause

4   helping to interpret the other."  <u>Id.</u> at § 1641.

5          Under these provisions, it is clear that section C(14)

6   of the agreement cannot be read to prevent arbitration of Vazquez

7   and Abascal's claims by virtue of Harper's previously filed

8   claim.  Because section C specifically lists exclusions to

9   section B, the two must be read together.  <u>See also</u> <u>id.</u>  Per

10  section B's clear language, claims covered under that section —

11  and thus excluded under section C — are those between "You"

12  (i.e., the individual signatory) "and Charter."  This clearly

13  signifies an intention to require arbitration of claims — and

14  thus, under section C, exclude from arbitration — only claims

15  that might arise as between the signatory and Charter.  <u>See</u> <u>id.</u>

16  at §§ 1636, 1638.  To allow signatories to avoid arbitration of

17  otherwise-covered claims by joining suits filed by individuals

18  not party to the contract would plainly frustrate this intention.

19         For similar reasons, section P likewise does not

20  exclude Vazquez and Abascal's claims from arbitration.  As noted

21  above, the Solution Channel Agreement's core provisions specify

22  that it applies to disputes between "You and Charter."  Although

23  section P does not directly incorporate this language in the

24  manner that section C does, to apply it in plaintiffs' preferred

25  manner would run counter to the contract's central purpose, which

26  is to require arbitration of disputes.  <u>See</u> <u>id.</u> at § 1636.  And

27  to the extent that this omission creates a conflict between

28  sections P and C(14), "in a contract, when a general and

particular provision are inconsistent, the latter is paramount to
the former," meaning that "a particular intent will control a
general one that is inconsistent with it." Karpinski v. Smitty's
Bar, Inc., 246 Cal. App. 4th 456, 464 (1st Dist. 2016) (internal
quotation marks and citation omitted).

For these reasons, together with the FAA's mandate that
any doubts as to an arbitration agreement's applicability be
resolved in favor of arbitration, see Moses H. Cone Mem'l Hosp.,
460 U.S. at 24–25; Poublon, 846 F.3d at 1259, the court concludes
that the Solution Channel Agreement applies to compel arbitration
of Vazquez and Abascal's claims.  Plaintiffs do not contest that
the agreement applies to Turner's claims, and sections C(14) and
P clearly do not exclude them, as this action had not yet been
filed at the time he executed the agreement.  Accordingly, the
court concludes that the Solution Channel Agreement applies to
Turner's claims as well.

### 2.  Plaintiff Harper

Plaintiffs also contend that section P of the agreement
excludes Harper's claims from its coverage.  (See Opp. to Mot. to
Compel Arb. at 18-19 (Docket No. 172).)  They further argue that,
because this court confirmed the JAMS arbitrator's award finding
that the JAMS agreement was "null and void," and because it
subsequently held that Charter's acquiescence to the JAMS
arbitration effected a novation of Harper's first Solution
Channel contract — rendering it "dead and extinguished" —
Harper's claims do not qualify as "previously subject to any
arbitration agreement" under section C(14).  (See id. at 20-22.)
Accordingly, they argue that section C(14) excludes Harper's

14

1   claims from coverage under the agreement as well.  (See id.)

2        As noted above, section C(14) provides that the

3   agreement excludes "[a]ny claims that have already been filed in

4   federal or state court at the time you execute this Agreement,

5   provided that such claims were not previously subject to any

6   arbitration agreement."  (Solution Channel Agreement at § C(14)

7   (Docket No. 165-2).)  Thus, because it is undisputed that

8   Harper's claims had already been filed in court when he executed

9   the agreement, (see Opp. to Mot. to Compel Arb. at 20 (Docket No.

10  172)), the only question is whether those claims "were . . .

11  previously subject to any arbitration agreement," (Solution

12  Channel Agreement at § C(14) (Docket No. 165-2)).  The court

13  concludes that they were.

14       While Harper was employed by Charter, he consented to

15  the JAMS Agreement, and later to the Solution Channel Agreement.

16  Plaintiffs argue that the JAMS arbitrator's determination that

17  the JAMS Agreement was invalid means that Harper's claims were

18  never "subject to" that agreement, contending that claims are

19  only "subject to" an arbitration agreement if they are validly

20  required to be arbitrated under that agreement.  (See Opp. to

21  Mot. to Compel Arb. at 20 (Docket No. 172).)

22       The court assumes, for these purposes, that plaintiffs'

23  construction of "subject to" is correct, such that Harper's

24  claims were not "previously subject to" the JAMS Agreement.  Even

25  so, it is clear that they were nonetheless "previously subject

26  to" the Solution Channel Agreement.  Although this court

27  determined that there was a subsequent novation, extinguishing

28  that agreement, the fact remains that for a period of time --

1    beginning when Harper first executed the Solution Channel

2    Agreement and ending with Charter's acquiescence to the JAMS

3    arbitration -- Charter could have asserted the Solution Channel

4    Agreement against Harper with respect to any wage-and-hour claims

5    he had.  Under the plain meaning of "previous" -- earlier in time

6    -- Harper's claims, at the time he executed the Solution Channel

7    Agreement in May 2021, were "previously subject to" the earlier-

8    signed copy of the same agreement.  As such, Harper's claims are

9    not excluded from arbitration under section C(14).[5]

10         To the extent that Harper challenges Charter's ability

11   to compel him to arbitrate his individual claims arising out of

12   his prior employment because his latest execution of the Solution

13   Channel Agreement occurred when he applied for another position,

14   (see id. at 14), at least one other district court in California

15   has already held that the Solution Channel Agreement applies in

16   such circumstances.  In Durruthy v. Charter Communications, LLC,

17   like in this case, the plaintiff was hired by Charter, was later

18   terminated, subsequently reapplied for employment, and in doing

19   so executed the agreement, which Charter then sought to enforce

20   against her.  Durruthy, 20-CV-1374-W-MSB, 2020 WL 6871048, at *1

21   (S.D. Cal. Nov. 23, 2020).  As the court in the Southern District

22   _____

23   [5]    Plaintiffs contend that to find that Harper's claims
     were previously subject to the initial Solution Channel
24   Agreement, the court would need to reconsider whether that
     agreement was extinguished by the previously mentioned novation,
25   which they argue the court is precluded from doing under the law
     of the case doctrine.  (See Opp'n to Mot. to Compel Arb. at 21
26   (Docket No. 172).)  However, plaintiffs are mistaken in their
     logic, as finding that an applicable agreement had terminated is
27   not the same as concluding that it was never applicable in the
     first place.  Although the court did the former, it did not do
28   the latter.

of California observed:

> The Agreement covers "any dispute arising out of or relating to [an applicant's] preemployment application and/or employment with Charter or the termination of that relationship . . . ."  The Agreement does not limit its application to future employment, nor does it exclude claims from prior employment periods.  Therefore, an objective reading supports that "employment" reasonably means any employment period between the two parties of the agreement. . . . . Plaintiff's alleged lack of consent to arbitrate claims from her prior employment period with Defendant are absent from the Agreement, and "unexpressed subjective intentions are irrelevant . . . ."

Id. at *4-5 (quoting Martinez v. BaronHR, Inc., 51 Cal. App. 5th 962, 970 (2020)) (alterations in original).  This court agrees with the Durruthy court's analysis of this issue.[6]

For the foregoing reasons, the court concludes that the Solution Channel Agreement applies to Harper's claims.

B.    Unconscionability

Plaintiffs also argue that the Solution Channel Agreement is unconscionable. (See id. at 22-38; Opp. to Mot. to Compel Arb. at 19-34 (Docket No. 173).)  If true, this would mean that the contract was not validly entered into in the first instance, allowing the court to invalidate the agreement pursuant to the FAA's saving clause.  See Concepcion, 563 U.S. at 339.

"Unconscionability under California law has 'both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the

---

[6]    This court's agreement with the Durruthy court's evaluation of the Solution Channel Agreement, however, does not extend to its unconscionability analysis.

1  latter on overly harsh or one-sided results.'"  Kilgore v.

2  KeyBank, Nat'l Ass'n, 673 F.3d 947, 963 (9th Cir. 2012) (quoting

3  Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th

4  83, 99 (2000)).  While courts "use a 'sliding scale' in analyzing

5  these two elements . . . . [n]o matter how heavily one side of

6  the scale tips . . . , both procedural and substantive

7  unconscionability are required for a court to hold an arbitration

8  agreement unenforceable."  Id. (citing Armendariz, 24 Cal. 4th at

9  99).

10        This court previously assessed whether the Solution

11  Channel Agreement is unconscionable in the related action between

12  plaintiff Harper and Charter.  See Harper v. Charter Comms., LLC,

13  2:19-cv-01749 WBS DMC, 2019 WL 6918280, at *5-6 (E.D. Cal. Dec.

14  18, 2019).  There, the court determined that the agreement was

15  not procedurally unconscionable, relying in large part on the

16  fact that when Harper was first confronted with the Solution

17  Channel Agreement, it was via an email notifying employees of

18  their ability to opt out of the agreement within thirty days.

19  Id. at *1, 5 (citing Kilgore v. KeyBank, Nat'l Ass'n, 718 F.3d

20  1052, 1058-59 (9th Cir. 2013) (en banc) (deeming an arbitration

21  agreement not procedurally unconscionable because it noted the

22  option to opt out within sixty days of signing)).  Here, on the

23  other hand, there is no indication that plaintiffs were given the

24  same option to opt out; indeed, they assert that they received

25  none, (see Opp. to Mot. to Compel Arb. at 24 (Docket No. 172);

26  Opp. to Mot. to Compel Arb. at 21 (Docket No. 173)), which

27  Charter does not contest, (see Def.'s Reply at 15-17 (Docket No.

28  182); Def.'s Reply at 16-18 (Docket No. 183)).

18

1       The Ninth Circuit has previously held that an

2  arbitration agreement was procedurally unconscionable where it

3  was presented to employees "on an adhere-or-reject basis," with

4  no opportunity to opt out.  See Ingle v. Circuit City Stores,

5  Inc., 328 F.3d 1165, 1172 (9th Cir. 2003); see also Steele v. Am.

6  Mortg. Mgmt. Servs., 2:12-cv-00085 WBS JFM, 2012 WL 5349511, at

7  *4-5 (E.D. Cal. Oct. 26, 2012) (holding pre-employment

8  arbitration agreement procedurally unconscionable because it did

9  not contain an opt-out clause).  Conversely, it has also held

10  that an arbitration agreement that included an opt-out provision

11  was not procedurally unconscionable.  See Mohamed v. Uber Techs.,

12  Inc., 848 F.3d 1201, 1211 (9th Cir. 2016).

13       Thus, an arbitration agreement that individuals are

14  required to sign as a condition of employment, with no ability to

15  opt out, is procedurally unconscionable, though Ninth Circuit

16  precedent also establishes that this form of procedural

17  unconscionability is "low" on California's sliding scale

18  analysis.  See Poublon, 846 F.3d at 1261.  In such a situation,

19  if "there is no other indication of oppression or surprise, then

20  the agreement will be enforceable unless the degree of

21  substantive unconscionability is high."  Id.

22       Regardless of the particular degree of procedural

23  unconscionability present here, however, in order for their

24  unconscionability defense to succeed, plaintiffs must also show

25  that the agreement is substantively unconscionable.  See Kilgore,

26  673 F.3d at 963.  And as this court previously held in the

27  related action between Harper and Charter, in which Charter

28  sought to enforce the Solution Channel Agreement against him with

1   respect to claims not present in the current litigation, the

2   agreement is not substantively unconscionable.  See Harper, 2019

3   WL 6918280, at *5-6.[7]  Because the agreement at issue in this

4   litigation is the same as the one upon which the court ruled in

5   the separate litigation, and plaintiffs do not allege that it has

6   changed,[8] the court again concludes that the Solution Channel

7   Agreement is not substantively unconscionable.

8        Because the Solution Channel Agreement is not

9   substantively unconscionable, plaintiffs' unconscionability

10  defense must fail.

11       C.   California Labor Code Section 432.6

12       [7]   Specifically, the court determined that (1) the
    Solution Channel review process was not one-sided, as Harper
13  contended, but rather its requirements applied equally to
    employees and to Charter; (2) the agreement did not enable
14  Charter to conclusively decide whether a claim is arbitrable,
    instead providing claimants the ability to proceed with
15  arbitration on this and other issues; and (3) a provision of the
    agreement requiring "each party [to] bear its own attorney's fees
16  regardless of the action brought," although unenforceable under
    California law, could be severed pursuant to the agreement's
17  severability clause in light of the court's determination that
    the agreement was "not otherwise permeated by unconscionability."
18  See Harper, 2019 WL 6918280, at *5-6 (citing Serpa v. Cal. Sur.
    Investigations, Inc., 215 Cal. App. 4th 695, 709-10 (2d Dist.
19  2013)).
         [8]   Although plaintiff Harper refers to the Solution
20  Channel Agreement to which he consented the first time as the
    "Old SC Agreement" and the one to which he consented when re-
21  applying as the "New SC Agreement," his bases for these
    differences in nomenclature are that the former was included in
22  an email informing him that he could opt out, whereas the latter
    was not — not that the agreement itself had changed.  (See Opp.
23  to Mot. to Compel Arb. at 9 n.1 (Docket No. 172).)
         Moreover, the Solution Channel Agreement is dated
24  September 25, 2017 — well before plaintiffs Turner, Vazquez, and
    Abascal first applied for employment with Charter — further
25  indicating that it had not changed between when plaintiff Harper
    first signed it and when they did.  (See Solution Channel
26  Agreement (Docket No. 165-2); supra Section II.B.)

27

28

1          Finally, in supplemental briefing, plaintiffs argue

2     that the Ninth Circuit's recent decision in Chamber of Commerce

3     of the United States v. Bonta, — F.4th —, 2021 WL 4187860 (9th

4     Cir. Sept. 15, 2021), precludes enforcement of the Solution

5     Channel Agreement against Harper.  (See Not. of Supp. Auth. at 2

6     (Docket No. 196).)  That decision upheld part of California Labor

7     Code section 432.6, which prohibits employers from "requir[ing]

8     any applicant for employment or any employee to waive any right,

9     forum, or procedure" established under the Labor Code or

10    California Fair Employment and Housing Act as a condition of

11    employment, on the basis that it was not preempted by the FAA.[9]

12    See id. at *4-10; Cal. Lab. Code § 432.6(a).

13         Plaintiffs contend that under Chamber of Commerce,

14    Charter's use of the Solution Channel Agreement violates section

15    432.6 because Harper's consent to the agreement was a mandatory

16    condition for consideration of his application and for any

17    subsequent employment, with no ability to opt out.  (See Not. of

18    Supp. Auth. at 2 (Docket No. 196).)  Per Chamber of Commerce's

19    clear language, however, whether this requirement violated

20    section 432.6 has no effect on the court's present decision to

21    enforce the Solution Channel Agreement: "§ 432.6 does not make

22    invalid or unenforceable any agreement to arbitrate, even if such

23    agreement is consummated in violation of the statute."  2021 WL

24    4187860, at *7 (emphasis added); see also 2021 WL 4187860, at *6

25

26         [9]    Because section 432.6 came into effect after Turner,
      Vazquez, and Abascal executed the Solution Channel Agreement, but
27    before Harper did in May 2021, plaintiffs only contend that the
      Ninth Circuit's decision applies to Harper.  (See Not. of Supp.
28    Auth. at 2 n.1 (Docket No. 196).)

                                   21

1  ("§ 432.6 cannot be used to invalidate, revoke, or fail to

2  enforce an arbitration agreement . . . .").

3          The most that Chamber of Commerce does to aid employees

4  who seek to challenge arbitration agreements is to simply

5  reaffirm the applicability of the FAA's saving clause to

6  arbitration agreements under section 432.6.  See id. at *6

7  (citing Cal. Lab. Code § 432.6(f) ("Nothing in this section is

8  intended to invalidate a written arbitration agreement that is

9  otherwise enforceable under the [FAA].")) (other citations

10  omitted).  In doing so, the Ninth Circuit observed, in dicta:

11          [A]n employee may attempt to void an
           arbitration agreement that he was compelled
12          to enter as a condition of employment on the
           basis that it was not voluntary.  If a court
13          were to find that such a lack of
           voluntariness is a generally applicable
14          contract defense that does not specifically
           target agreements to arbitrate, the
15          arbitration agreement may be voided in
           accordance with saving clause jurisprudence.
16

17  Id. at *9.  However, here the court has addressed Harper's

18  "generally applicable contract defense[s]" and determined that

19  they do not apply here.  Chamber of Commerce thus has no impact

20  on this decision.

21          For the foregoing reasons, the court will grant

22  Charter's motions to compel arbitration of plaintiffs Harper,

23  Turner, Vazquez, and Abascal's individual claims.

24      D.   Motions to Dismiss or Stay Judicial Proceedings

25          In its motion to compel arbitration of Harper's Labor

26  Code and UCL claims, Charter requests that, should the court

27  grant that motion, the court stay this case -- including Harper's

28  PAGA claim -- pending arbitration of the other claims.  (See Mot.

22

to Compel Arb. re Harper at 23-24 (Docket No. 162).)   Charter
suggests that although it has not sought arbitration of the PAGA
claim, staying proceedings as to the PAGA claim would avoid
conflicting rulings between this court as to the PAGA claim and
the arbitrator as to the other claims.   (See id. at 24.)
Plaintiffs oppose this request, pointing out that because this
court will not be bound by any rulings the arbitrator might make,
staying Harper's PAGA claim would not in fact avoid conflicting
rulings.   (See Opp. to Mot. to Compel Arb. at 38-39 (Docket No.
172).)   They further argue that proceedings as to the PAGA claim
should not be stayed because of the distinct nature of a PAGA
claim, which belongs to the state rather than to Harper.   (See
id. at 39.)

          Further, in its motion to compel arbitration of Turner,
Vazquez, and Abascal's claims, Charter also requests that, should
the court grant that motion, the court dismiss those plaintiffs
from the case.   (See Mot. to Compel Arb. re Turner, Vazquez, &
Abascal at 20-21 (Docket No. 165).)   Plaintiffs oppose this
request and instead request that the court stay proceedings as to
these plaintiffs pending arbitration of their individual claims.
(See Opp. to Mot. to Compel Arb. at 35 (Docket No. 173).)   In
response to the court's questioning at oral argument, counsel for
plaintiffs indicated that they preferred a stay of plaintiff
Sinclair's individual claims pending arbitration of the other
plaintiffs' individual claims.

          The FAA provides that, where a suit presents "issue[s]
referable to arbitration under an agreement in writing for such
arbitration," the court "shall on application of one of the

1    parties stay the trial of the action until such arbitration has

2    been had."  9 U.S.C. § 3.  Further, the Supreme Court has stated

3    that "[i]n some cases, it may be advisable to stay litigation

4    among the nonarbitrating parties pending the outcome of the

5    arbitration."  Moses H. Cone Memorial Hosp. v. Mercury Constr.

6    Corp., 460 U.S. 1, 20 n.23 (1983).

7              Because plaintiffs have requested a stay of Turner,

8    Vazquez, and Abascal's individual claims, the court will stay

9    those claims pending arbitration.  Additionally, because Charter

10   has requested that the court otherwise stay this case pending

11   arbitration of Harper's individual claims, because plaintiffs'

12   counsel supported a stay of Sinclair's individual claims at oral

13   argument, and because the court agrees that a stay of Sinclair's

14   claims pending arbitration is "advisable," the court will stay

15   Sinclair's individual claims pending arbitration as well.

16             However, because a stay would impede vindication of

17   California's interests in enforcing the Labor Code through

18   representative PAGA actions, discussed above, and because the

19   PAGA claim represents a distinct "action" in this case, the court

20   will not stay Harper's PAGA claim.  See Jarboe v. Hanlees Auto

21   Grp., 53 Cal. App. 5th 539, 557 (1st Dist. 2020) ("Because a PAGA

22   claim is representative and does not belong to an employee

23   individually, an employer should not be able dictate how and

24   where the representative action proceeds.").

25             IT IS THEREFORE ORDERED that Charter's Motions to

26   Compel Arbitration (Docket Nos. 162, 165) be, and the same hereby

27   are, GRANTED.

28             IT IS FURTHER ORDERED that, as to the claims presented

in Counts One through Nine of the Second Amended Complaint only,
this action is STAYED pending arbitration of plaintiff Harper,
Turner, Vazquez, and Abascal's individual claims.

Dated:   October 12, 2021

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE