1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                          ----oo0oo----

11

12   LIONEL HARPER, DANIEL SINCLAIR,      No. 2:19-cv-00902 WBS DMC
     HASSAN TURNER, LUIS VAZQUEZ, and
13   PEDRO ABASCAL, individually and
     on behalf of all others
14   similarly situated and all          ORDER RE: DEFENDANT'S MOTION
     aggrieved employees,                TO DISMISS
15
                 Plaintiffs,
16
          v.
17
     CHARTER COMMUNICATIONS, LLC,
18
                 Defendant.
19

20                          ----oo0oo----

21

22        Plaintiffs Lionel Harper, Daniel Sinclair, Hassan

23   Turner, Luis Vazquez, and Pedro Abascal ("plaintiffs") brought

24   this putative class action against their former employer, Charter

25   Communications, alleging various violations of the California

26   Labor Code.  Among other things, plaintiffs allege that Charter

27   misclassified them and other California employees as "outside

28   salespersons," and consequently failed to pay them overtime

                                  1

1  wages, failed to provide meal periods or rest breaks (or premium

2  wages in lieu thereof), and provided inaccurate wage statements.

3  (See generally Second Amended Complaint ("SAC") (Docket No.

4  147).)

5       Charter now moves to dismiss (1) Count Five of

6  plaintiffs' second amended complaint, alleging unlawful

7  calculation, deduction, and payment of commission wages, to the

8  extent that it is based on alleged violations of Labor Code

9  sections 204 and 2751; (2) Count Nine of the complaint, alleging

10 violation of California's Unfair Competition Law ("UCL"), Cal.

11 Bus. & Prof. Code §§ 17200 et seq., in its entirety; and

12 (3) Count Ten of the complaint, alleging violation of

13 California's Private Attorney General Act ("PAGA"), Cal. Lab.

14 Code §§ 2698 et seq., in its entirety.  (See Mot. to Dismiss

15 (Docket No. 163).)

16 I.   Facts & Procedural History

17      Much of this case's factual and procedural background

18 is set forth in the court's accompanying Order addressing

19 plaintiffs' Motion to Modify the Scheduling Order and for Leave

20 to File a Third Amended Complaint.  Accordingly, the court will

21 not repeat it here except where relevant to the instant motion.

22      Plaintiffs worked for Charter in California, either as

23 Account Executives or as Direct Sales Representatives, for

24 varying periods from January 2015 until March 2020.  (SAC at

25 ¶¶ 5-9.)  Lionel Harper, the initial plaintiff in this action,

26 worked for Charter until March 2018.  (Id. at ¶ 5.)

27      On September 14, 2018, after his employment had ended,

28 Harper filed a notice with California's Labor and Workforce

1   Development Agency ("LWDA") (the "Notice"), sending a copy to

2   Charter, to notify them of Charter's alleged violations of the

3   Labor Code.  (See SAC, Ex. 2 ("Notice") at 1.[1])  In the Notice,

4   Harper identified himself as "a former employee of Charter

5   Communications, LLC," specified that he sent the letter "on

6   behalf of [himself] and all aggrieved employees," and noted that

7   he intended to bring a civil PAGA action absent notice from the

8   LWDA that it intended to investigate the alleged violations.

9   (See id. at 1-2.)

10        Following an arbitration through JAMS, and after Harper

11  did not receive notice from the LWDA that it intended to

12  investigate, on May 3, 2019 he filed a complaint against Charter

13  in Shasta County Superior Court (1) alleging the same Labor Code

14  violations, on behalf of himself and all similarly situated

15  individuals; (2) alleging violation of the UCL; and (3) bringing

16  a representative PAGA action seeking civil penalties for the

17  alleged Labor Code violations.  (See Docket No. 1-1.)

18        Charter removed the case to this court on May 17, 2019.

19  (See Docket No. 1.)  Harper subsequently amended his complaint

20  twice, to add plaintiffs Sinclair, Turner, Vazquez, and Abascal,

21  on December 13, 2019 and June 4, 2021.  (See Docket Nos. 45,

22  147.)  He also subsequently submitted three amended notices to

23  the LWDA, to reference the other plaintiffs and to add additional

24  detail, on September 9, 2020, June 11, 2021, and July 15, 2021.

25  (SAC, Ex. 1 (Docket No. 147); Opp. to Mot. to Dismiss, Exs. 1 &

26  _____

27        [1]   Plaintiffs' second amended complaint marks this notice
    as "Exhibit 1," though it is the second exhibit included in the
    complaint.  For purposes of this order, the court refers to
28  plaintiffs' exhibits by the sequence in which they appear.

1   2[2] (Docket No. 170-2).)

2   II.  Analysis

3        Federal Rule of Civil Procedure 12(b)(6) allows for

4   dismissal when the plaintiff's complaint fails to state a claim

5   upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).

6   The inquiry before the court is whether, accepting the

7   allegations in the complaint as true and drawing all reasonable

8   inferences in the plaintiff's favor, the complaint has stated "a

9   claim to relief that is plausible on its face."  Bell Atl. Corp.

10  v. Twombly, 550 U.S. 544, 570 (2007).

11       "The plausibility standard is not akin to a

12  'probability requirement,' but it asks for more than a sheer

13  possibility that a defendant has acted unlawfully."  Ashcroft v.

14  Iqbal, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the

15  elements of a cause of action, supported by mere conclusory

16  statements, do not suffice."  Id.  Although legal conclusions

17  "can provide the framework of a complaint, they must be supported

18  by factual allegations."  Id. at 679.

19       A.   Counts Five (Commission Payments) and Nine (UCL)

20       In light of the court's accompanying Order Re:

21  Defendant's Motions to Compel Arbitration, the court will deny

22  Charter's motion to dismiss Count Five of the Second Amended

23  Complaint in part and Count Nine in its entirety as moot, without

24  prejudice, as to plaintiffs Harper, Turner, Vazquez, and Abascal.

25  Further, because the court has stayed resolution of those claims

26  _____

    [2]     Plaintiffs' opposition to the instant motion likewise
27  labels multiple exhibits as "Exhibit 1."  The court refers to
    them in the same manner as noted in the previous footnote.

28

                                4

1    pending arbitration, (see id.), the court will also deny the same

2    portions of Charter's motion to dismiss as moot, without

3    prejudice, as to plaintiff Sinclair.  Because only the resolution

4    of plaintiff Harper's PAGA claim has not been stayed, in this

5    order the court will only substantively address Charter's motion

6    to dismiss Count Ten of the complaint.

7         B.    Count Ten (PAGA)

8              Charter seeks to dismiss plaintiff Harper's PAGA claim

9    in its entirety, contending that because of various alleged

10   deficiencies in Harper's initial notice to the LWDA, he has

11   failed to satisfy PAGA's administrative exhaustion requirement.

12   (See Mot. to Dismiss at 12-22 (Docket No. 163).)  In particular,

13   Charter argues that the Notice was fatally deficient for purposes

14   of the PAGA claim because the Notice (1) failed to identify the

15   "aggrieved employees" on whose behalf Harper sought to bring a

16   representative PAGA action, (2) failed to set forth sufficient

17   "facts and theories" to provide the LWDA an adequate basis for

18   deciding whether to investigate the alleged violations and to

19   provide Charter an adequate basis for deciding whether and how

20   vigorously to defend itself, and (3) omitted certain theories

21   under which Harper alleges Labor Code violations under his PAGA

22   claim; and because (4) the amended notices Harper subsequently

23   submitted to the LWDA cannot suffice to cure these deficiencies

24   because they were submitted after PAGA's statute of limitations

25   had run and after this litigation had commenced.  (See id.)

26             1.    PAGA Background and Requirements

27             PAGA was enacted to remedy systemic underenforcement of

28   worker protections.  Williams v. Super. Ct., 3 Cal. 5th 531, 545

1   (2017).  To achieve this goal, PAGA allows an employee to bring a

2   civil action against an employer for violations of the Labor

3   Code.  See Cal. Lab. Code § 2699(a).

4          "First, however, the employee must give 'written notice

5   . . . to the [LWDA] and the employer of the specific provisions

6   . . . alleged to have been violated, including the facts and

7   theories to support the alleged violation.'" Alcantar v. Hobart

8   Serv., 800 F.3d 1047, 1056 (9th Cir. 2015) (quoting Cal. Lab.

9   Code § 2699.3(a)(1)); see Arias v. Super. Ct., 46 Cal. 4th 969,

10  981 (2009) (same).  Then, if the LWDA notifies the employee and

11  employer within 60 days that it intends to investigate the

12  alleged violation(s), or if no notice is provided within 65 days,

13  the employee may bring suit.  Cal. Lab. Code § 2699.3(a)(2)(A).

14         PAGA's notice requirement was implemented to "allow[ ]

15  the [LWDA] to act first on more serious violations such as wage

16  and hour violations and give employers an opportunity to cure

17  less 'serious' violations." Dunlap v. Super. Ct., 142 Cal. App.

18  4th 330, 338-39 (2d Dist. 2006) (quoting Cal. S. Rules Comm.,

19  Off. of S. Floor Analyses, Bill Analysis for SB1809, at 5-6 (Aug.

20  27, 2004)); see also Alcantar, 800 F.3d at 1057 (notice

21  requirement exists "to allow the [LWDA] to intelligently assess

22  the seriousness of the alleged violations" and "permit the

23  employer to determine what policies or practices are being

24  complained of so as to know whether to fold or fight"); Williams,

25  3 Cal. 5th at 545-46 (purpose of LWDA notice requirement "is to

26  afford . . . the LWDA[ ] the opportunity to decide whether to

27  allocate scarce resources to an investigation, a decision better

28  made with knowledge of the allegations an aggrieved employee is

6

1   making and any basis for those allegations").

2   To effectuate these goals, courts adjudicating PAGA

3   claims require that plaintiffs serving as PAGA representatives

4   have "compl[ied] with the statute's notice requirements" before

5   bringing suit.  See Alcantar, 800 F.3d at 1056; Brown v. Ralphs

6   Grocery Co., 28 Cal. App. 5th 824, 834-36 (2d Dist. 2018); Khan

7   v. Dunn-Edwards Corp., 19 Cal. App. 5th 804, 808-810 (2d Dist.

8   2018).  "Considering the remedial nature of legislation meant to

9   protect employees," however, in evaluating compliance courts

10  "construe PAGA's provisions broadly, in favor of this

11  protection."  Kim v. Reins Int'l Cal., Inc., 9 Cal. 5th 73, 83

12  (2020).

13          2.   Amendments and Operative Notice

14  Plaintiffs argue that, to the extent the Notice might

15  have insufficiently described the "facts and theories" Harper

16  alleges in his PAGA claim, those inadequacies have been cured by

17  subsequently filed amended LWDA notices.  (See Opp. to Mot. to

18  Dismiss at 37-38 (Docket No. 170).)  However, as the court

19  explained in its accompanying Order addressing plaintiffs' Motion

20  for Leave to File a Third Amended Complaint, amended LWDA notices

21  filed after PAGA's statute of limitations has run and after a

22  civil PAGA action has commenced cannot support that PAGA claim.

23  Accordingly, in evaluating whether PAGA's notice requirements

24  have been satisfied in order to decide the instant motion, the

25  court will look to the original notice.

26          3.   Identification of Aggrieved Employees

27  In moving to dismiss plaintiff Harper's PAGA claim,

28  Charter first argues that the Notice was inadequate to satisfy

7

1  PAGA's prerequisites to suit because it did not specify who the
2  "aggrieved employees" Harper sought to represent were.  (Mot. to
3  Dismiss at 8 (Docket No. 163).)

4          Although PAGA's "facts and theories" provision does not
5  reference employees other than the one who submits a notice to
6  the LWDA and subsequently brings a civil action, see Cal. Lab.
7  Code § 2699.3(a)(1)(A), PAGA defines "aggrieved employee" as "any
8  person who was employed by the alleged violator and against whom
9  one or more of the alleged violations was committed," id. at
10 § 2699(c).  Courts interpreting PAGA's notice provisions have
11 also read into them a requirement that the other employees whom
12 the primary employee seeks to represent be sufficiently
13 identified.  See, e.g., Brown, 28 Cal. App. 5th at 836 n.5;
14 Briggs v. OS Rest. Servs., LLC, LA CV18-08457 JAK (AFMx), 2020 WL
15 6260001, at *8 (C.D. Cal. Aug. 26, 2020).

16         In Brown, the operative LWDA notice identified the
17 plaintiff as an "hourly-paid security guard," but referred to the
18 employees whom she sought to represent simply as "aggrieved
19 employees."  28 Cal. App. 5th at 830.  In light of the various
20 statutory violations alleged in the notice, however, which was
21 two pages long, the California Court of Appeal was able to "infer
22 . . . that the other 'aggrieved employees' [we]re non-exempted,
23 hourly-paid workers employed by defendants and against whom
24 defendants committed the alleged Labor Code Violations."  Id. at
25 830, 836 n.5.  On this basis, the court "conclude[d that] the
26 . . . Notice sufficiently identified the other aggrieved
27 employees."  Id. at 836 n.5.

28         By contrast, in Briggs, upon which Charter relies, (see

8

1    Def.'s Reply at 13 (Docket No. 187)), the notice "fail[ed] to

2    provide any specific factual allegations to support any of

3    Plaintiff[']s claims under the Labor Code," including identifying

4    the aggrieved employees the plaintiff sought to represent.  2020

5    WL 6260001, at *8.  Instead, it referred only to "other former

6    and current employees."  Id. at *6.  The Briggs court compared

7    this situation to that in a prior case, wherein the notice had

8    identified the aggrieved employees as "all other similarly

9    situated current and former non-exempt hourly employees of

10   Sunrise Senior Living Management during the four years preceding

11   the date of this notice," which the court had deemed adequate,

12   and determined that the Briggs plaintiff's notice was

13   insufficient.  Id. at *8 (citing Shiferaw v. Sunrise Senior

14   Living Mgmt., Inc., 2:13-cv-02171-JAK-PLAx, 2016 WL 6571270, at

15   *19 (C.D. Cal. Mar. 21, 2016)).

16          Here, Harper's notice is readily distinguishable from

17   the one in Briggs.[3]  Through his PAGA claim, Harper "seek[s] to

18   recover civil penalties . . . on behalf of the State of

19   California, Plaintiffs, and all outside salespersons and

20   commission-eligible employees in California . . . who were

21   aggrieved . . . during the relevant PAGA period."  (SAC at ¶ 98

22   ───────────────

23          [3]   Further, to the extent that the approaches taken by the
     courts in Briggs and Brown differ, this court will adopt the
24   approach taken in Brown, which appears to be the most relevant
     decision from a California court of appeal interpreting this
25   requirement.  See McSherry v. Block, 880 F.2d 1049, 1052, 1052
     n.2 (9th Cir. 1989) (state appellate courts' interpretations of
26   state statutes entitled to deference by federal courts except
     where in conflict with higher state courts or where the federal
27   court is "convinced that the highest court of the state would
     decide to construe the statute otherwise") (quoting West v. Am.
28   Tel. & Tel. Co., 311 U.S. 223, 237 (1940)) (alterations adopted).

1 (Docket No. 147).)  This is plainly more specific than the "other

2 former and current employees" referenced in the <u>Briggs</u> notice.

3          Further, although the Notice does not directly define

4 "aggrieved employees" as including "commission-eligible

5 employees," it nonetheless alleges that "[Charter] recruits and

6 incentivize[s] sales employees like [Harper] by emphasizing their

7 ability to earn commissions" and goes on to allege numerous

8 commission-related violations committed against them.  (<u>See</u>

9 Notice at 4 (Docket No. 147).)  This language readily lends

10 itself to the inference that "aggrieved employees" here includes

11 employees occupying sales roles who were paid -- or who were

12 eligible to be paid -- commissions.  <u>See</u> <u>Brown</u>, 28 Cal. App. 5th

13 at 836 n.5.

14          Likewise, although the Notice does not include

15 plaintiffs' allegation that many of the claimed violations were

16 due to Charter's alleged misclassification of them as outside

17 salespersons, as Charter observes, (<u>see</u> Mot. to Dismiss at 1, 16

18 (Docket No. 163)), it repeatedly refers to "nonexempt employees

19 like [Harper]."  (<u>E.g.</u>, Notice at 3 (Docket No. 147).)  The

20 complaint's basic contention as to this group of employees is

21 that they, like the named plaintiffs, were "misclassified as

22 exempt," i.e., exempt from Labor Code requirements the violation

23 of which the complaint alleges.  (<u>See</u> SAC at ¶¶ 13-15 (Docket No.

24 147).)  Although somewhat less strong than the inference

25 regarding commission-eligible employees, a similar inference may

26 also be drawn from the Notice as to employees referenced in the

27 complaint who were allegedly misclassified.  Accordingly, the

28 court concludes that the Notice adequately identifies the

1  "aggrieved employees."

2      In its reply, Charter also argues that, because the

3  portion of the Notice alleging violation of Labor Code sections

4  226, 432, and 1198.5 does not specify that employees other than

5  Harper experienced such violations, the Notice failed to advise

6  the LWDA that he sought to challenge these violations on a

7  representative basis, precluding him from doing so here.  (See

8  Def.'s Reply at 12 (Docket No. 187).)  In support of this

9  argument, Charter relies on Khan v. Dunn-Edwards Corp., 19 Cal.

10 App. 5th 804 (2d Dist. 2018).  There, the California Court of

11 Appeal held that because the plaintiff's notice specified that it

12 only advised the LWDA of his own claims against his employer,

13 making no reference whatsoever to any other current or former

14 employees, it failed to indicate that he sought to bring a

15 representative action, which is the only type of action that may

16 be brought under PAGA.  See id. at 809-10, 810 n.1.

17      Charter argues that under Khan, Harper may not

18 challenge alleged violations of sections 226, 432, or 1198.5

19 because the relevant portion of the Notice did not reference

20 other employees.  However, the Notice here is quite different

21 than the one in Khan.  Whereas in Khan, the plaintiff made clear

22 that his notice did not challenge any violations on behalf of

23 other employees, see id. at 807 (observing that the notice stated

24 that it "shall constitute written notice . . . of my claims

25 against my former employer," and that the plaintiff "admitted

26 that his notice . . . 'does not reference any other current or

27 former employee besides [him]'"), here the Notice states at its

28 outset, "[O]n behalf of Employee and all aggrieved employees,

11

1    this letter gives written notice to the [LWDA] and to [Charter]

2    of serious and ongoing violations of the California Labor Code,"

3    (Notice at 1 (Docket No. 147)).

4           Accordingly, the Notice makes clear that Harper sought

5    to challenge the violations alleged therein on a representative

6    basis, notwithstanding the fact that one portion of the Notice

7    does not specify this.  Indeed, in Khan, the court examined two

8    prior cases, one in which a plaintiff's notice "referred to

9    'employees' and employees' 'wage statements,'" and another in

10   which the notice "advised the agency that counsel represented

11   [the plaintiff] 'in a potential class action,'" and observed that

12   those notices had "sufficiently suggested claims on multiple

13   employees."  See Khan, 19 Cal. App. 5th at 809-10 (quoting York

14   v. Starbucks Corp., CV-08-07919 GAF (PJWx), 2012 WL 10890355, at

15   *4 (C.D. Cal. Nov. 1, 2012); Gonzalez v. Millard Mall Servs.,

16   Inc., 09-cv-2076-AJB(WVG), 2012 WL 3629056, at *3 (S.D. Cal. Aug.

17   21, 2012)).

18          Here, because the Notice's references to other

19   employees are even more prevalent, it sufficiently suggested that

20   Harper sought to pursue a representative claim as to all alleged

21   Labor Code violations, including sections 226, 432, and 1198.5.

22   See Mays v. Wal-Mart Stores, Inc., 354 F. Supp. 3d 1136, 1148-49

23   (C.D. Cal. 2019) (despite fact that notice's allegations of one

24   violation only referenced plaintiff, fact that notice's opening

25   language stated intent to represent "all impacted employees"

26   "sufficiently suggested claims on behalf of aggrieved employees"

27   for purposes of that violation, distinguishing Khan).

28          4.   Sufficiency of Facts and Theories in Notice

1    In its motion, Charter also argues that the Notice does

2    not set forth sufficient "facts and theories," as the term is

3    used in the PAGA statute, to have adequately informed the LWDA or

4    Charter of the alleged violations.  (See Mot. to Dismiss at 16-21

5    (Docket No. 163).)  Specifically, it argues that the Notice is

6    inadequate because it fails to reference plaintiffs' allegation

7    that they were misclassified.  (See id. at 16.)  It also contends

8    that many of the Notice's allegations merely recite the

9    requirements of the relevant Labor Code provisions and assert

10   that Charter did not comply with them, and argues that

11   consequently, the Notice does not satisfy PAGA's administrative

12   exhaustion requirement, requiring dismissal of Harper's PAGA

13   claim.  (See id. at 16-21.)

14       For support, Charter cites Alcantar, 800 F.3d 1047.

15   There, the plaintiff's notice, in its entirety, read as follows:

16       Our offices have been retained by Joseluis
         Alcantara [sic] (Plaintiff).  Plaintiff is a
17       former employee of ITW Food Equipment Group,
         LLC aka Hobart Service (Defendant).
18       Plaintiff contends that Defendant (1) failed
         to pay wages for all time worked; (2) failed
19       to pay overtime wages for overtime worked;
         (3) failed to include the extra compensation
20       required by California Labor Code section
         1194 in the regular rate of pay when
21       computing overtime compensation, thereby
         failing to pay Plaintiff and those who
22       earned additional compensation for all
         overtime wages due; (4) failed to provide
23       accurate wage statements to employees as
         required by California Labor Code section
24       226; (5) failed to provide reimbursement for
         work related expenses as required by Labor
25       Code § 2802; and, (6) failed to provide off-
         duty meal periods and to pay compensation
26       for work without off-duty meal periods to
         its California employees in violation of
27       California Labor Code sections 226.7 and
         512, and applicable Industrial Welfare
28       Commission orders.  Said conduct, in

                                13

1           addition to the forgoing, violated each
        Labor Code section as set forth in
2           California Labor Code section 2699.5.

3   Id. at 1057 (alterations in original).  As the Ninth Circuit

4   observed, "The only facts or theories that could be read into

5   this letter are those implied by the claimed violations of

6   specific sections of the California Labor Code—that [defendant]

7   failed to pay wages for time worked, failed to pay overtime wages

8   for overtime worked, failed to include the extra compensation

9   required by § 1194 in the regular rate of pay when computing

10  overtime compensation, and so on."  See id.  Accordingly, it held

11  that the notice -- "a string of legal conclusions with no factual

12  allegations or theories of liability to support them" -- was

13  "insufficient to allow the [LWDA] to intelligently assess the

14  seriousness of the alleged violations."  See id.

15          Since Alcantar, the California Supreme Court has also

16  spoken to the degree of detail that an LWDA notice must include.

17  In Williams, it stated that "[n]othing in . . . section 2699.3,

18  subdivision (a)(1)(A), indicates the 'facts and theories'

19  provided in support of 'alleged' violations must satisfy a

20  particular threshold of weightiness, beyond the requirements of

21  nonfrivolousness generally applicable to any civil filing."

22  Williams, 3 Cal. 5th at 545.

23          In Brown, the California Court of Appeal interpreted

24  these decisions in the course of evaluating the sufficiency of an

25  LWDA notice.  It observed that, under Alcantar's reasoning, "the

26  notice provision requires something more than bare allegations of

27  a Labor Code violation."  Brown, 28 Cal. App. 5th at 836 (citing

28  Alcantar, 800 F.3d at 1057).  However, it nonetheless took a

1  somewhat permissive approach.  For example, where the notice, in

2  alleging that the defendant failed to maintain accurate or

3  complete wage statements under Labor Code section 226, alleged a

4  "failure to include the [employer's] name and address" on those

5  statements, the court held that "[t]his minimal fact supports the

6  alleged violation, making the . . . Notice adequate."  See id. at

7  838.  Nevertheless, the court deemed the notice deficient as to

8  other claims, where, for example, the plaintiff simply alleged

9  that "she and other aggrieved employees 'did not take all meal

10 and rest periods and were not properly compensated for missed

11 meal and rest periods' in violation of [Labor Code] sections

12 226.7 and 512."  See id. at 837.

13        Brown thus most clearly illustrates the standard to be

14 applied in evaluating the sufficiency of an LWDA notice: Where an

15 allegation in an LWDA notice simply recites Labor Code

16 requirements and asserts that the defendant failed to adhere to

17 them, those allegations are typically insufficient to support a

18 PAGA claim as to those violations.  See id. at 836-38; Alcantar,

19 800 F.3d at 1057; Briggs, 2020 WL 6260001, at *7; Mays, 354 F.

20 Supp. 3d at 1147.  On the other hand, where an allegation

21 includes even "minimal fact[s]" beyond that, it is generally

22 sufficient to support an associated PAGA claim.  See Brown, 28

23 Cal. App. 5th at 838; Bowen v. Target Corp., EDCV 16-2587 JGB

24 (MRWx), 2020 WL 1931278, at *4-5 (C.D. Cal. Jan. 24, 2020)

25 (notice need not "lay out an intricate factual basis for [an

26 employee's] claims" or include "extensive specificity," but

27 rather is sufficient if it "does more than merely recite a

28 'string of legal conclusions'") (quoting Alcantar, 800 F.3d at

1  1056); Mays, 354 F. Supp. 3d at 1147 (notice "'is sufficient' . .

2  . if 'it contains some basic facts about the violations'")

3  (quoting Green v. Bank of Am., N.A., 634 F. App'x 188, 190 (9th

4  Cir. 2015)); see also Kim, 9 Cal. 5th at 83 (courts are to

5  "construe PAGA's provisions broadly, in favor of [employee]

6  protection").

7       Further, this court agrees with Judge Birotte in the

8  Central District of California that, where a complaint puts

9  forward multiple theories of recovery under a single section of

10 the Labor Code, the notice need not describe each and every one,

11 see Mays, 354 F. Supp. 3d at 1148, so long as it adequately

12 advises the LWDA of the scope of the alleged violations under

13 that section, see Williams, 3 Cal. 5th at 545-46.

14                 a.   Misclassification Allegations

15      At the outset, Charter argues that because plaintiffs'

16 overarching basis for their allegations is that Charter

17 misclassified them as exempt -- which Charter terms their

18 "central, indispensable theory" -- the Notice, in light of PAGA's

19 "facts and theories" requirement, cannot support Harper's PAGA

20 claim as to any alleged violation because it omits this detail.

21 (See Mot. to Dismiss at 16 (emphasis omitted) (Docket No. 163).)[4]

22 As precedent makes clear, however, this argument is unavailing.

23      Although aggrieved employees are required to at least

24 include some "minimal detail[s]" in LWDA notices beyond the

25 requirements of Labor Code provisions an employer has allegedly

26 violated, they are not required to comprehensively explain the

27 _____

28      [4]   Plaintiffs do not dispute that the Notice omits this
    detail.  (See Opp. to Mot. to Dismiss at 33-35 (Docket No. 170).)

1    basis of the alleged violations.  See Brown, 28 Cal. App. 5th at

2    836-38; Bowen, 2020 WL 1931278, at *5.  Nor are they required to

3    explain how a broader practice by an employer resulted, in turn,

4    in the individual alleged violations, so long as they provide

5    some details about those violations.  See Bowen, 2020 WL 1931278,

6    at *4-5 (rejecting argument that plaintiff's failure to

7    "specifically identify the theory of her on-premises rest period

8    claim" rendered her notice insufficient because the notice

9    nonetheless advised the LWDA of "some of the facts and theories

10   in her on-premises rest period claims . . . , including all

11   violated provisions of the Labor Code").  Accordingly, so long as

12   Harper's notice satisfies these standards, it is sufficient even

13   absent specific reference to misclassification.[5]

14

_____

15       [5]  Charter contends that, "as other courts have held,"
     Harper was "required" to include reference to misclassification
16   in the Notice.  (See Def.'s Reply at 13-14 (Docket No. 187).)
     However, the decisions Charter cites in support of this
17   contention have not, in fact, so held.  Sinohui, the only one
     that dismissed a PAGA claim, did so specifically because the
18   notice "assert[ed] no facts to support the alleged violations,"
     which failed to distinguish it from the notice in Alcantar.  See
19   Sinohui v. CED Ent., Inc., EDCV 14-2516-JLS (KKx), 2016 WL
     3406383, at *3-4 (C.D. Cal. June 14, 2016).  In fact, because of
20   this deficiency, the court expressly declined to reach arguments
     the defendant had made about misclassification.  See id. at *4.
21
         Conde, which upheld a PAGA claim where the notice
22   included the plaintiff's allegation that she had been
     misclassified, did so because this allegation represented one of
23   the few details of any kind the notice included beyond listing
     statutory requirements, distinguishing it from Alcantar; although
24   Conde found this detail sufficient, nowhere did it indicate that
     it was necessary.  See Conde v. Open Door Mktg., LLC, 223 F.
25   Supp. 3d 949, 971-72 (N.D. Cal. 2017).  In Stevens, where the
     plaintiff likewise alleged misclassification in her notice, the
26   court observed that this was one of many details it included, and
     concluded that together these were sufficient; again, the court
27   nowhere indicated that this particular detail was necessary.  See

28

                                    17

1                          b.   Labor Code Allegations

2              Charter also argues that most of the specific Labor

3  Code violations alleged in the Notice do not set forth "facts and

4  theories" sufficient to support the corresponding claims in

5  Harper's PAGA action, but rather simply list the relevant Labor

6  Code requirements and assert that Charter violated them.  (See

7  Mot. to Dismiss at 16-21 (Docket No. 163).)

8                          i.   Minimum and Overtime Wage Violations

9              The Notice's first set of allegations, alleging failure

10 to properly calculate and pay minimum and overtime wages in

11 violation of Labor Code sections 510, 1182.12, and 1197,

12 summarizes those sections' requirements: Employers must pay

13 employees at least the applicable minimum wage for all hours

14 worked, with specified overtime rates for hours worked beyond

15 eight hours in a day, forty hours in a week, and so on.  (See

16 Notice at 2 (Docket No. 147).)  It then states, in part:

17 "Defendant regularly required employees during training to work a

18 full day and then complete homework after the work day ended.

19 The training and homework combined required employees to work

20 more than 8 hours in a day, but Defendant did not keep track of

21 _____

22 Stevens v. Datascan Field Servs. LLC, 2:15-cv-00839-TLN-AC, 2016
   WL 627362, at *4 (E.D. Cal. Feb. 17, 2016).

23              Finally, Patel and Casida only discussed
   misclassification in the context of class actions, and neither
24 discussed PAGA's notice requirements, making them inapposite.
   See Patel v. Nike Retail Servs., Inc., 14-cv-04781-RS, 2016 WL
25 1241777, at *1, 4 (N.D. Cal. Mar. 29, 2016); Casida v. Sears
   Holdings Corp., 1:11-cv-01052 AWI JLT, 2012 WL 3260423, at *8
26 (E.D. Cal. Aug. 8, 2012), report and recommendation adopted, 2012
   WL 3763621 (E.D. Cal. Aug. 29, 2012).  Further, all of these
27 cases predated Brown and Williams, meaning they could not
   consider the guidance those decisions offered, as this court has.
28

                                    18

1   or pay employees all wages for the time worked over 8 hours in a

2   day or 40 hours in a week during training." (Id. at 3.)  It also

3   alleges that Charter likewise failed to track hours worked

4   outside of training weeks and consequently failed to pay

5   employees overtime wages.  (See id.)

6          By specifying that these alleged violations occurred

7   both during and after training periods, and that, during training

8   periods, they were the result of Charter requiring employees to

9   complete homework after a full day of work, the Notice does more

10  than repeat the statutory requirements and allege violation

11  thereof, thereby clearing the "minimal facts" threshold.  See

12  Brown, 28 Cal. App. 5th at 838.  It is therefore sufficient to

13  support Harper's PAGA claim as to Charter's alleged violations of

14  Labor Code sections 510, 1182.12, and 1197.

15                  ii.  Meal and Rest Break Violations

16          In its next set of allegations, alleging failure to

17  provide uninterrupted meal and rest breaks or pay premium wages

18  in lieu thereof in violation of Labor Code sections 226.7 and

19  512(a), the Notice proceeds in a similar fashion.  After

20  summarizing the statutory requirements, it alleges, in part, that

21  Charter "does not require or allow [Harper] and other nonexempt

22  employees to clock-out and clock-in for each meal period and

23  accurately record the existence and length of each meal period

24  taken." (Notice at 3 (Docket No. 147).)  In doing so, it

25  provides detail beyond that which is "implied by the claimed

26  violations of specific sections of the California Labor Code,"

27  Alcantar, 800 F.3d at 1057 -- in part because these sections make

28  no mention of clocking in or out for meal breaks, see Cal. Lab.

1  Code §§ 226.7, 512(a) -- and therefore is sufficient to support

2  the PAGA claim as to these alleged violations.

3                          iii. <u>Commission Wage Violations</u>

4              Next, the Notice alleges unlawful deductions of

5  commission wages in violation of Labor Code sections 221, 223,

6  224, and 2751.  (<u>See</u> Notice at 4 (Docket No. 147).)  After

7  listing the statutory requirements, the Notice goes on to allege,

8  in part, that Charter "recruits and incentivize[s] sales

9  employees like [Harper] by emphasizing their ability to earn

10 commissions," "fails to pay all amounts owed" under its allegedly

11 "unlawful and unfair compensation terms," and consequently "has

12 not paid [Harper] and similarly situated employees all of the

13 commission wages they are owed."  (<u>Id.</u>)  Because the Notice

14 provides additional context beyond that implied by the statutory

15 requirements, it gave the LWDA adequate notice under PAGA,

16 notwithstanding its failure to specify how the commission

17 compensation terms were allegedly unlawful and unfair, as Charter

18 argues it was required to do.  (<u>See</u> Mot. to Dismiss at 18 (Docket

19 No. 163).)

20             Charter argues that the commission-related allegations

21 are further deficient in that they do not include various

22 specific violations of section 2751 that plaintiffs allege in the

23 Second Amended Complaint, such as Charter's alleged failure to

24 give employees a fully signed copy of commission agreements or to

25 clearly state in those agreements when commissions would be

26 calculated, earned, and paid.  (<u>See</u> <u>id.</u> at 18-19.)  As noted

27 above, however, Harper was not required to describe each and

28 every alleged violation of a particular Labor Code section that

                                    20

1   he would ultimately include in the operative complaint, so long

2   as the allegations were sufficient to apprise the LWDA of the

3   scope of the violations.   See Mays, 354 F. Supp. 3d at 1148;

4   Williams, 3 Cal. 5th at 545-46.

5         In addition to the already-noted details, this portion

6   of the Notice also advised the LWDA that Charter allegedly "fails

7   to perform all of its obligations under the [compensation] terms"

8   and "relied on methods for the computation and payment of

9   commissions that are not set forth in [those] terms."  (Notice at

10  4 (Docket No. 147).)   While these allegations lack the detail

11  included in some of the other commission-related allegations,

12  together they adequately conveyed the scope of the alleged

13  violations to the LWDA.   Accordingly, this set of allegations is

14  sufficient to support Harper's PAGA claim as to the alleged

15  violations of sections 221, 223, 224, and 2751.

16                  iv.  Wage Statement Violations

17        The Notice also alleges failure to maintain accurate

18  records and wage statements in violation of Labor Code sections

19  226 and 1174(d).  (See id. at 6.)  After summarizing the

20  statutory requirements, the Notice alleges in part that Charter

21  "failed to keep accurate records reflecting [Harper]'s and other

22  employees' hours worked and when meal periods occurred" and that

23  some wage statements "also failed to record the time worked,

24  wages due, and inclusive dates of the applicable pay periods."

25  (Id.)

26        Unlike with the previous sets of allegations, Charter

27  does not appear to challenge the sufficiency of these allegations

28  to support related violations alleged in Harper's PAGA claim, but

1    rather contends that they omit wage statement-related allegations

2    included in the Second Amended Complaint, such that the PAGA

3    claim must be dismissed as to those allegations.  (See Mot. to

4    Dismiss at 19-20 (Docket No. 163).)  As discussed, however,

5    Harper was not required to describe every alleged violation of

6    each statute in the Notice.  Because it appears that all of the

7    allegations in the Second Amended Complaint that Charter here

8    challenges arise under section 226 of the Labor Code, and because

9    the Notice includes adequate information to apprise the LWDA of

10   the broad scope of the violations Harper alleges under that

11   section, the Notice is sufficient to support his PAGA claim as to

12   those allegations.

13        Charter also notes that some of the Second Amended

14   Complaint's wage statement-related allegations pertain to alleged

15   violations that occurred more than one year before the Notice was

16   filed.  (See id. at 20.)  It argues that because PAGA's statute

17   of limitations is one year, this provides a separate basis for

18   dismissal of Harper's PAGA claim to the extent that it alleges

19   wage statement violations that occurred outside of the statutory

20   period.  (See id.)

21        The court agrees.  However, although PAGA has a one-

22   year statute of limitations, it provides that the statute is

23   tolled during the pendency of the LWDA notice, i.e., up to 65

24   days.  See Cal. Lab. Code §§ 2699.3(a)(2),(d); Hill v. Genuine

25   Parts Co., 1:18-CV-1550 AWI SAB, 2019 WL 935976, at *2 (E.D. Cal.

26   Feb. 26, 2019).  Here, because 65 days passed after Harper

27   submitted the Notice on September 14, 2018, and the LWDA did not

28   respond, (see SAC at ¶ 3 (Docket No. 147)), the statute of

1  limitations was tolled for that period.  Accordingly, in his PAGA

2  claim, Harper may not challenge wage statement violations that

3  are alleged to have occurred prior to July 11, 2017, and the

4  court will grant Charter's motion on that limited basis.

5                    v.   Timely Payment Violations

6          Lastly, the Notice alleges failure to timely pay wages

7  during employment and upon termination, or to pay penalty wages

8  for late payment of wages upon termination, in violation of Labor

9  Code sections 201, 202, 203, and 204.  (See Notice at 5 (Docket

10 No. 147).)[6]  In addition to summarizing the statutory

11 requirements, the Notice alleges, in part, that because of other

12 previously mentioned alleged violations, such as failure to

13 record all hours worked or pay all commission wages owed, "when

14 [Charter] paid [Harper] and other former employees' final

15 paychecks, they were all miscalculated and too small," and

16 Charter "fail[ed] to pay all wages earned . . . at least twice

17 monthly."  (Id.)

18         Charter argues that these allegations are simply

19 derivative of the alleged overtime, minimum wage, commission, and

20 meal and rest break violations, and that because those alleged

21 violations were insufficient, these must be as well.  (See Mot.

22 to Dismiss at 20-21 (Docket No. 163).)  However, because the

23 court has already determined that the other allegations were

24 _____

25        [6]   The Notice also alleges failure to timely provide a
   copy of personnel records upon request in violation of Labor Code
26 sections 226, 432, and 1198.5.  (See Notice at 6-7 (Docket No.
   147).)  However, because Charter has not challenged the
27 sufficiency of the Notice as to those alleged violations, (see
   Mot. to Dismiss (Docket No. 163)), the court will not address
28 them here.

                                23

1    sufficient to support Harper's PAGA claim as to those alleged

2    violations, Charter's argument here must be rejected.

3          IT IS THEREFORE ORDERED that Charter's Motion to

4    Dismiss Count Five of plaintiffs' Second Amended Complaint in

5    part and Count Nine of plaintiffs' Second Amended Complaint in

6    its entirety be, and the same hereby is, DENIED without prejudice

7    to the motion being renewed in the event that the stay ordered in

8    the accompanying Order Re: Defendant's Motions to Compel

9    Arbitration is lifted;

10         IT IS FURTHER ORDERED that Charter's Motion to Dismiss

11   Count Ten of plaintiffs' Second Amended Complaint, insofar as it

12   is based on alleged violations of Labor Code Sections 226 and

13   1174(d) that occurred prior to July 11, 2017, be, and the same

14   hereby is, GRANTED;

15         AND IT IS FURTHER ORDERED that in all other respects

16   Charter's Motion to Dismiss Count Ten of plaintiffs' Second

17   Amended Complaint be, and the same hereby is, DENIED.

18   Dated:   October 12, 2021

19                           WILLIAM B. SHUBB
                             UNITED STATES DISTRICT JUDGE
20

21

22

23

24

25

26

27

28