UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| LIONEL HARPER, DANIEL SINCLAIR, HASSAN TURNER, LUIS VAZQUEZ, and PEDRO ABASCAL, individually and on behalf of all others similarly situated and all aggrieved employees,<br><br>Plaintiffs,<br><br>v.<br><br>CHARTER COMMUNICATIONS, LLC,<br><br>Defendant. | No. 2:19-cv-00902 WBS DMC<br><br>ORDER RE: MOTION TO COMPEL ARBITRATION OF PLAINTIFF HARPER'S PAGA CLAIM AND DISMISS REMAINING COUNT TEN CLAIMS |

----oo0oo----

This putative wage-and-hour class action, which has an extensive history before this court, includes claims under California's Private Attorney General Act ("PAGA"), Cal. Lab. Code §§ 2698 et seq., based on alleged labor code violations by defendant Charter Communications. The court previously ruled on a motion by Charter to compel arbitration of all claims brought by plaintiffs Harper, Turner, Vazquez, and Abascal, except for

1

plaintiff Harper's PAGA claims, deciding the motion in Charter's favor.  (Docket No. 202.)  The court subsequently stayed the action in its entirety, in part because of a case that was then pending before the United States Supreme Court, Viking River Cruises, Inc. v. Moriana, which had the potential to impact the PAGA claims in this action.  (Docket Nos. 261, 288.)  The Supreme Court has since issued a decision in that case, and the court has partially lifted the stay of this action to consider, among other things, a motion by Charter based on Viking River Cruises.  (Docket No. 292.)  That motion, through which Charter seeks to compel arbitration of a portion of Harper's PAGA claims and to dismiss the remainder, is now before the court.  (Mot. (Docket No. 293).)

I.   Legal Background

Specifically, Charter seeks to compel Harper to arbitrate his "individual" PAGA claims, as distinct from his "representative" PAGA claims.  (See id.)  A brief review of PAGA, Viking River Cruises, and California Supreme Court precedent will clarify the significance of these concepts, in part because, as the Supreme Court has explained, PAGA claims are considered "representative" in two distinct senses.

"PAGA authorizes any 'aggrieved employee' to initiate an action against a former employer 'on behalf of himself . . . and other current or former employees' to obtain civil penalties" that otherwise can be "recovered only by the State" in an enforcement action brought by California's Labor and Workforce Development Agency (LWDA).  Viking River Cruises, Inc. v. Moriana, 142 S. Ct. 1906, 1914 (2022) (quoting Cal. Lab. Code

2

Ann. § 2699(a)). "Although the statute's language suggests that an 'aggrieved employee' sues 'on behalf of himself or herself and other current or former employees,' California precedent holds that a PAGA suit is a 'representative action in which the employee plaintiff sues as an agent or proxy' of the State." Id. (quoting Cal. Lab. Code Ann. § 2699(a); Iskanian v. CLS Transp. L.A., LLC, 59 Cal. 4th 348 (2014)).  That any PAGA claims an aggrieved employee brings are asserted on behalf of the state is the first sense in which PAGA claims are "representative." See id. at 1916.  That the aggrieved employee may, on the state's behalf, assert those claims based not only on labor code violations he personally suffered, but also on violations "other current or former employees" suffered, is the second sense in which PAGA claims are "representative." Id.

In Iskanian, the California Supreme Court held that waivers of employees' right to bring "representative" PAGA claims, in the first sense, are barred under California law.  See Iskanian, 59 Cal. 4th at 383-84.  The Supreme Court termed this "Iskanian's principal rule." Viking River Cruises, 142 S. Ct. at 1916.  Iskanian further held that agreements to "arbitrate or litigate 'individual PAGA claims for Labor Code violations that an employee [personally] suffered,'" separately and apart from representative PAGA claims in the second sense -- i.e., PAGA claims for labor code violations suffered by other current and former employees -- are invalid. Id. at 1916-17 (quoting Iskanian, 59 Cal. 4th at 383) (other citation omitted).[1]  The

---

[1] In other words, Iskanian held "that PAGA claims cannot be split into arbitrable individual claims and nonarbitrable

3

Supreme Court termed this Iskanian's "secondary rule."  Id.

In Viking River Cruises, the United States Supreme Court overturned Iskanian's secondary rule, holding that it was preempted by the FAA.  See id. at 1923-24.  However, the Court upheld Iskanian's first rule, concluding that the FAA did not preempt California's bar on waivers of employees' ability to represent the state in PAGA actions.  See id. at 1924-26; People v. Maplebear Inc., 81 Cal. App. 5th 923, 2022 WL 2981169, at *6 n.4 (4th Dist. 2022) (recognizing same).  Accordingly, under Viking River Cruises, employees may waive the right to bring PAGA claims that are specifically premised on labor code violations they have personally suffered, but "waivers of the right to assert . . . claims [on the state's behalf] under PAGA" remain invalid.  MacClelland v. Cellco P'ship, -- F. Supp. 3d --, 2022 WL 2390997, at *9 (N.D. Cal. 2022); see Viking River Cruises, 142 S. Ct. at 1923-26; Shams v. Revature LLC, -- F. Supp. 3d --, 2022 WL 3453068, at *2 (N.D. Cal. 2022).

II.  Analysis

Based on Viking River Cruises and an arbitration agreement into which Harper and Charter entered, titled the "Solution Channel Agreement," Charter now seeks to compel Harper's "individual" PAGA claims -- i.e., only those premised on alleged labor code violations he personally suffered -- to arbitration.  (See Mot.)  Charter also asks that the court dismiss Harper's remaining PAGA claims -- i.e., those premised on alleged labor code violations suffered by other employees -- for

---

'representative' claims."  Id. at 1916.

4

1  lack of standing.  (See id.); see also Viking River Cruises, 142
2  S. Ct. at 1925 ("[A]s we see it, PAGA provides no mechanism to
3  enable a court to adjudicate non-individual PAGA claims once an
4  individual claim has been committed to a separate proceeding.
5  . . .  When an employee's own dispute is pared away from a PAGA
6  action, the employee is no different from a member of the general
7  public, and PAGA does not allow such persons to maintain suit.
8  As a result, [the employee] lacks statutory standing to continue
9  to maintain [his] non-individual claims in court, and the correct
10 course is to dismiss [his] remaining claims.").  Viking River
11 Cruises referred to this manner of separating PAGA claims into
12 "individual" and "non-individual" claims as "split[ting]" the
13 claims.  Id. at 1916.

   This court has previously enforced the Solution Channel
15 Agreement against Harper as to other claims asserted in this
16 action.  (See Docket No. 202; see also Docket No. 288 (denying
17 reconsideration of order compelling arbitration).)  In so doing,
18 the court held that the Agreement was not unconscionable.  (See
19 Docket No. 202 at 17-20.)  Although plaintiffs now reassert the
20 same arguments they previously presented as to why the Agreement
21 is unconscionable, none appear to be new, (see Opp. at 26-42
22 (Docket No. 294)), and the court declines to revisit its previous
23 conclusion.  Plaintiffs also reassert arguments the court
24 previously rejected as to why the Agreement does not apply to the
25 claims Charter seeks to arbitrate, (see id. at 23-26; Docket No.
26 202 at 9-12, 14-17), and the court likewise declines to revisit
27 its conclusion as to those arguments.

   The question thus becomes whether the Solution Channel

Agreement provides for the splitting of PAGA claims into "individual" and "non-individual" claims, as discussed in Viking River Cruises, such that the individual PAGA claims may be compelled to arbitration and the non-individual claims dismissed. In Viking River Cruises, the Court described the operative arbitration agreement as follows:

> The agreement contained a "Class Action Waiver" providing that in any arbitral proceeding, the parties could not bring any dispute as a class, collective, or representative PAGA action. It also contained a severability clause specifying that if the waiver was found invalid, any class, collective, representative, or PAGA action would presumptively be litigated in court. But under that severability clause, if any "portion" of the waiver remained valid, it would be "enforced in arbitration."

142 S. Ct. at 1916.

After holding that "the FAA preempts the rule of Iskanian insofar as [Iskanian] precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate," id. at 1924 -- Iskanian's secondary rule -- the Court explained the effect of that holding on the applicability of the arbitration agreement's representative PAGA waiver and severability clause:

> The agreement between Viking and Moriana purported to waive "representative" PAGA claims. Under Iskanian, this provision was invalid if construed as a wholesale waiver of PAGA claims. And under our holding, that aspect of Iskanian is not preempted by the FAA, so the agreement remains invalid insofar as it is interpreted in that manner. But the severability clause in the agreement provides that if the waiver provision is invalid in some respect, any "portion" of the waiver that remains valid must still be "enforced in arbitration." Based on this clause, Viking was entitled to enforce the agreement insofar as it mandated arbitration of Moriana's individual PAGA claim. The lower courts refused to do so based on [Iskanian's] rule that PAGA actions cannot be divided

        into individual and non-individual claims. Under our holding, that rule is preempted, so Viking is entitled to compel arbitration of Moriana's individual claim.

Id. at 1924-25.  Thus, although the agreement's waiver of "representative PAGA" claims was ambiguous as to the sense in which the term "representative" was used -- i.e., representative of the state, or representative of other employees -- the severability clause's provision requiring enforcement of "any 'portion' of the waiver that remains valid" required the Court to interpret the "representative PAGA" waiver as using the term "representative" in the second sense.  See id.

        Here, the Solution Channel Agreement includes a similar waiver of representative claims, although it does not reference PAGA by name.  The section is titled "Individual Claims Limitation and Representative, Collective, and Class Action Waiver" and provides:

> You and Charter agree that both parties may only bring claims against the other party in their individual capacity and not as a plaintiff or class member in any purported class or representative proceeding . . . . Additionally, the arbitrator shall not be permitted to order consolidation of claims or a representative, class, or collective, arbitration.

(Aff. of John Fries, Ex. B ("Solution Channel Agreement") § D (Docket No. 293-1).)

        Like the arbitration agreement in Viking River Cruises, the Solution Channel Agreement also contains a severability clause.  That clause provides in part:

> [I]f any portion or provision of this Agreement (including, without implication of limitation, any portion or provision of any section of this Agreement) is determined to be illegal, invalid, or unenforceable by any court of competent jurisdiction and cannot be modified to be legal, valid or enforceable, the remainder of this Agreement shall not be affected by

> such determination and shall be valid and enforceable to the fullest extent permitted by law, and said illegal, invalid, or unenforceable portion or provision shall be deemed not to be a part of this Agreement.

(Id. § Q.)  It goes on to provide:

> The only exception to this severability provision is, should the dispute involve a representative, collective or class action claim, and the representative, collective, and class action waiver (Section D) is found to be invalid or unenforceable for any reason, then this Agreement (except for the parties' agreement to waive a jury trial) shall be null and void with respect to such representative, collective, and/or class claim only, and the dispute will not be arbitrable with respect to such claim(s).

(Id.)

The Solution Channel Agreement's waiver of representative actions, like the "representative PAGA" action waiver in the arbitration agreement in Viking River Cruises, is ambiguous as to the meaning of "representative" as it applies to PAGA actions.  (See Solution Channel Agreement § D.)  Thus, under Viking River Cruises and Iskanian, "this provision [is] invalid if construed as a wholesale waiver of PAGA claims," and the Agreement "remains invalid insofar as it is interpreted in that manner." Viking River Cruises, 142 S. Ct. at 1924-25.  Because basic principles of contract interpretation require the court to construe ambiguities against the drafter of the contract, Sandquist v. Lebo Auto., Inc., 1 Cal. 5th 233, 248 (2016) (quoting Pac. Lumber Co. v. Indus. Accident Comm., 22 Cal. 2d 410, 422 (1943)), including in the context of an arbitration agreement, id. (citing Victoria v. Super. Ct., 40 Cal. 3d 734, 739 (1985)), the court interprets the waiver's prohibition on "representative" actions as including a waiver of employees'

8

right to bring a PAGA action on behalf of the state.

The waiver provision is therefore invalid under Iskanian unless its prohibition on representative PAGA actions (in the first sense of the term) can be severed under the Agreement's severability clause, as was the case in Viking River Cruises. Like the severability clause in that case, which required that "if any 'portion' of the waiver remained valid," that portion "would be 'enforced in arbitration,'" Viking River Cruises, 142 S. Ct. at 1916, here the Agreement's severability clause provides that "if any portion or provision of this Agreement" is determined to be invalid and "cannot be modified to be legal, valid or enforceable," that portion shall be severed and the remainder of the Agreement enforced, (Solution Channel Agreement § Q). Unlike the clause in Viking River Cruises, however, the Agreement's severability clause specifically exempts the "representative . . . action waiver" from severance, such that the Agreement "shall be null and void with respect to such representative . . . claim only, and the dispute will not be arbitrable with respect to such claim(s)." (Id.)

Because the court has concluded that the Agreement's representative action waiver is unenforceable as to PAGA claims as a matter of law, under the Agreement's severability clause, the Agreement is "null and void with respect to" such claims. Accordingly, the court concludes that the Solution Channel Agreement does not bar any portion of Harper's PAGA claims or require arbitration thereof. The instant motion will therefore be denied.

IT IS THEREFORE ORDERED that defendant Charter

Communications' motion to compel arbitration of plaintiff Harper's PAGA claims and to dismiss Count Ten of the operative complaint (Docket No. 293) be, and the same hereby is, DENIED.[2]

Dated: September 7, 2022

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[2] Defendant's motion for leave to file a surreply (Docket No. 285) is GRANTED. Defendant's surreply in response to Sinclair's Reply in Support of Class Certification shall be filed within 48 hours of the date of this Order. Plaintiff's request for judicial notice (Docket No. 295) is denied, as consideration of the documents for which plaintiff seeks notice is unnecessary to the court's resolution of the instant motion.