Joseph W. Ozmer II (SBN 316203)
jozmer@kcozlaw.com
Nathan D. Chapman (SBN 338735)
nchapman@kcozlaw.com
J. Scott Carr (SBN 136706)
scarr@kcozlaw.com
KABAT CHAPMAN & OZMER LLP
333 S. Grand Avenue, Suite 2225
Los Angeles, California 90071
Telephone: (213) 493-3980
Facsimile: (404) 400-7333

Attorneys for Defendant Charter Communications, LLC

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

LIONEL HARPER, DANIEL SINCLAIR, HASSAN TURNER, LUIS VAZQUEZ, and PEDRO ABASCAL, individually and on behalf of all others similarly situated and all aggrieved employees,

Plaintiffs,

vs.

CHARTER COMMUNICATIONS, LLC,

Defendant.

Case No. 2:19-cv-00902-WBS-DMC

Hon. William B. Shubb

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF LIONEL HARPER'S MOTION TO VACATE THE ORDER COMPELLING ARBITRATION AND LIFT STAY**

[*Filed concurrently with the Declarations of Nathan D. Chapman and Jennifer Page*]

Date: January 23, 2023
Time: 1:30 p.m.
Location: Courtroom 5, 14th Floor
Trial Date: None Set

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. RELEVANT FACTUAL BACKGROUND ..... 3

A. Harper Waits Over Four Months to Initiate Arbitration After the Court's Order Compelling Him to Arbitrate. ..... 3

B. Charter Timely Pays All Invoices Prior to November 23, 2022. ..... 3

C. A Clerical Error Results in a One-Week Delay in Payment of the $5,000 Advance Deposit Due in this Matter on November 23, 2022. ..... 3

D. Harper Demands the AAA Return This Dispute to the Court and Dismiss the Arbitration. ..... 5

III. ARGUMENT ..... 5

A. Standard of Review. ..... 5

B. Generally Applicable California Contract Principles Governing Material Breach and Waiver Directly Conflict with Section 1281.98., Which Creates Different Rules for Arbitration Agreements. ..... 6

1. *Generally Applicable California Contract Law Governing Material Breach.* ..... 6

2. *Generally Applicable California Contract Law Governing Waiver.* ..... 7

3. *Section 1281.98's Waiver and Material Breach Provisions Apply Only to Arbitration Agreements.* ..... 7

C. Section 1281.98 Violates the FAA's "Equal-Treatment" Principle, as it Singles Out Arbitration Agreements for Different (Punitive) Treatment. ..... 8

1. *Charter Did Not Materially Breach the Arbitration Agreement or Waive Its Right to Arbitrate Under Generally Applicable California Contract Principles.* ..... 9

2. *Case Law Confirms That Section 1281.98 Impermissibly Discriminates Against Arbitration Agreements and is Preempted by the FAA.* ..... 10

D. The Court Should Reject Harper's Improper Attempt to Gain a Windfall Recovery of Attorney's Fees Unrelated to Arbitration, Which Are Subject to Offset. ..... 12

E. The Court Should Deny Harper's Request to Lift the Stay in this Action. ..... 13

IV. CONCLUSION ..... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akeena Solar Inc. v. Zep Solar Inc.*,
No. C 09-05040 JSW, 2011 WL 2669453 (N.D. Cal. July 7, 2011) ....................................13

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....................................................................................................5

*Belyea v. Green Sky, Inc.*,
No. 20-cv-01693-JSC, 2022 WL 14965532 (N.D. Cal. Oct. 26, 2022) ......................... *passim*

*Brown v. MHN Gov't Servs., Inc.*,
No. 14-1449, 2014 WL 2472094 (N.D. Cal. June 3, 2014)..................................................14

*Doctor's Assocs., Inc. v. Casarotto*,
517 U.S. 681 (1996)..............................................................................................5, 10

*Espinoza v. Sup. Ct. of Los Angeles Cnty.*,
83 Cal. App. 5th 761 (2022) ...........................................................................8, 10, 11

*Gallo v. Wood Ranch USA, Inc.*,
81 Cal. App. 5th 621 (2022) ..........................................................................................11

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991)...............................................................................................5, 10

*Harper v. Charter Commc'ns, LLC*,
No. 2:19-CV-01749 ......................................................................................................12

*Integrated, Inc. v. Alec Fergusson Elec. Contractors*,
250 Cal. App. 2d 287 (1967) ...........................................................................................6

*Johnson v. Inos*,
619 F. App'x 651 (9th Cir. 2015) .....................................................................................13

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark*,
137 S. Ct. 1421 (2017).......................................................................................... *passim*

*Lamps Plus, Inc. v Varela*,
139 S. Ct. 1407 (2019)......................................................................................................5

*Leiter v. Handelsman*,
125 Cal. App. 2d 243 (1954) ........................................................................................6, 9

*McLellan v. Fitbit, Inc.*,
No. 16-cv-00036, 2018 WL 3549042 (N.D. Cal. July 24, 2018) ........................................6, 9

*Perry v. Thomas*,
482 U.S. 483 (1987) ... 6

*Preston v. Ferrer*,
552 U.S. 346 (2008) ... 6

*Roe v. SFBSC Mgmt.*,
No. 14-cv-03616, 2015 WL 1798926 (N.D. Cal. Apr. 17, 2015) ... 14

*Roesch v. De Monta*,
24 Cal. 2d 563 (1944) ... 7

*Sackett v. Spindler*,
248 Cal. App. 2d. 220 (1967) ... 6, 9

*Smart Modular Techs., Inc. v. Netlist, Inc.*,
No. 212CV02319TLNEFB, 2016 WL 5159524 (E.D. Cal. Sept. 21, 2016) ... 13

*Southland Corp. v. Keating*,
465 U.S. 1 (1984) ... 5, 6, 10

*Thomas v. Home Depot USA Inc.*,
No. C06-02705 MJJ, 2007 WL 2140917 (N.D. Cal. July 25, 2007) ... 13, 14

*Tribe v. U.S. Bureau of Reclamation*,
No. 19-CV-04405-WHO, 2021 WL 4482117 (N.D. Cal. Sept. 30, 2021) ... 13

*United States v. Fallbrook Pub. Util. Dist.*,
No. 51CV1247-GPC(RBB), 2017 WL 1281915 (S.D. Cal. Apr. 6, 2017) ... 13

*Wind Dancer Prod. Grp. V. Walt Disney Pictures*,
10 Cal. App. 5th 56 (2017) ... 7, 9

*Wyler v. Feuer*,
85 Cal. App. 3d 392 (1978) ... 6

**Statutes**

9 U.S.C. § 2 ... 12, 14

9 U.S.C. § 16 ... 14

Cal. Civ Proc. Code § 1281.98 ... *passim*

Cal. Civ. Proc. Code § 1286.2 ... 11

## I. INTRODUCTION

The Court should reject Harper's latest bad-faith attempt to avoid arbitration by capitalizing on an unintentional clerical error that resulted in a one-week delay in Charter's payment of a single mid-arbitration American Arbitration Association ("AAA") advance deposit invoice. Specifically, within hours after the AAA advised the Parties that Charter had failed to pay a $5,000 invoice by November 23, 2022, Harper demanded that the AAA immediately close the arbitration and return this dispute to the Court pursuant to Section 1281.98 of the California Code of Civil Procedure. Charter promptly investigated and confirmed that, due to a good-faith clerical error, the administrative assistant responsible for paying the AAA mistakenly believed she had paid the invoice, which was for an amount identical to that reflected on a separate invoice for Harper's related FEHA arbitration. Upon learning of the clerical error, Charter immediately paid the $5,000, resulting in no delay or other impact on the arbitration and no prejudice to Harper whatsoever. Nevertheless, the AAA (erroneously) closed the arbitration and Harper filed the instant motion.

Despite having suffered no prejudice or other harm, and despite Charter having timely paid ***every*** prior AAA invoice, Harper now demands that the Court restart this litigation by endorsing the California legislature's latest (illegal) anti-arbitration scheme, as reflected in Section 1281.98, and applying it to vacate its previous order compelling Harper to arbitrate his individual claims. As shown below, the Court must deny Harper's request under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., which preempts Section 1281.98.

Specifically, by implementing a statutory scheme that singles out arbitration agreements for different treatment, the California legislature unquestionably violated the FAA's equal-treatment principle. In operation, the statute deems any technical, non-prejudicial payment mistake involving an arbitration invoice to be a "material breach" of an arbitration agreement that operates as a waiver of the employer's arbitration rights and permits the employee to unilaterally rescind the arbitration agreement and recover punitive monetary sanctions (among other things). ***These arbitration-specific rules do not apply to any other types of contracts***, confirming (along with the statutory text) they were intended to replace—***in the arbitration context alone***—well-settled California contract law governing waiver and material breach. Indeed, Section 1281.98 directly conflicts with existing

California contract law and discriminates against arbitration agreements in violation of the FAA.

Harper's reliance on a handful of wrongly decided state and federal cases that have enforced this punitive, anti-arbitration scheme is misplaced. Plaintiff's cited cases provide nothing more than a cursory, results-oriented analysis of the preemption issue and ignore the fact that Section 1281.98 sets up ***different*** rules for arbitration agreements, regardless of whether they promote or inhibit arbitration, in violation of the FAA. Harper's false narrative that Section 1281.98 facilitates arbitration, like the cases he parrots, is not only sophistry, but is ***irrelevant,*** and the Court should reject it. Regardless, even if the "facilitate vs. impede" analysis was relevant, the statute is unquestionably designed to deter arbitration in the first instance and thwart its objectives by allowing the employee to unilaterally void an enforceable arbitration agreement and severely punishing the employer with sanctions under circumstances that do not exist outside of the arbitration context. Accordingly, because Section 1281.98 voids arbitration agreements and imposes sanctions ***on arbitration-specific grounds only***, it violates the FAA's equal-treatment principle and is preempted.

Alternatively, assuming, *arguendo*, that the FAA does not preempt Section 1281.98, the Court should deny Harper's request for an award of attorney's fees in the amount of $125,970. While the statute provides for the recovery of attorney's fees associated with the arbitration, Harper's overreaching request for an exorbitant windfall award is not warranted by the facts or the law, as he seeks to recover expenses unrelated to the arbitration. For example, much of the fees Harper seeks to recover he incurred unsuccessfully resisting arbitration and seeking appellate review of this Court's arbitration order, among other things. Moreover, given that Charter is entitled to recover its fees and costs incurred in compelling Harper to arbitration, it intends to file (at the appropriate time) a request for over $70,000 in attorney's fees associated with same, which would offset any fee award to Harper. Accordingly, at a minimum, this Court should defer ruling on any fee issue until Charter has had an opportunity to submit its request.

Finally, even if the Court grants Harper's request to vacate its prior order compelling arbitration, it should not grant his request to lift the pending stay because (1) no circumstances have changed with respect to Charter's appeal of the Court's order denying Charter's motion to compel arbitration of Harper's PAGA claim and (2) Charter will immediately appeal the Court's order

vacating its prior order compelling Harper's non-PAGA claims to arbitration.

## II. RELEVANT FACTUAL BACKGROUND

### A. Harper Waits Over Four Months to Initiate Arbitration After the Court's Order Compelling Him to Arbitrate.

On October 13, 2021, the Court compelled Harper's non-PAGA claims to individual arbitration through Charter's Solution Channel program. (Dkt. 202.) Harper waited nearly four months, to February 11, 2022, to file his claim, and Charter subsequently initiated the arbitration with the AAA. (Declaration of Nathan D. Chapman ("Chapman Decl.") ¶ 2; Dkt. 316 at 7.) The AAA promptly sent an initial billing invoice to Charter dated March 30, 2022 for payment of the administrative filing fee, which Charter timely paid. (*Id.*; *see* Declaration of Jennifer Page ("Page Decl.") Ex. D.)

### B. Charter Timely Pays All Invoices Prior to November 23, 2022.

By letter dated May 9, 2022, the AAA confirmed the appointment of the arbitrator and provided dates for arbitration management conference. (Chapman Decl. ¶ 3.) The Parties proceeded with the arbitration for several months, engaged in discovery (some of which is still outstanding), motion practice, and multiple conferences and hearings. (*Id.*) During this period, Charter received, and timely paid, six AAA billing invoices for this matter, totaling $19,559.50. (*Id.*; *see* Page Decl. Ex. D.)

### C. A Clerical Error Results in a One-Week Delay in Payment of the $5,000 Advance Deposit Due in this Matter on November 23, 2022.

The clerical error that caused Charter's delayed payment stemmed from the existence of two arbitrations involving Harper: (1) the arbitration the Court compelled in this case (the "Labor Code Arbitration"); and (2) the arbitration the Court compelled in Harper's FEHA case (the "FEHA Arbitration"). These arbitrations bear identical case names (*Lionel Harper vs. Charter Communications, LLC*), which appeared on the AAA's invoices. (Page Decl. ¶¶ 2–3 & Exs. A and B.) On October 24, 2022, AAA sent its most recent billing invoice in the Labor Code Arbitration, seeking payment in the amounts of (i) $4,659.50 for the arbitrator's compensation, and (ii) an additional $5,000 advance deposit for the Arbitrator's compensation, for a total payment of

$9,659.50. (Page Decl. ¶ 2, Ex. A.) The same day, the AAA sent a third request in the FEHA Arbitration, requesting an additional $5,000 advance deposit for the Arbitrator's compensation. (*Id.* ¶ 3, Ex. B.) All three amounts were purportedly due on November 23, 2022 by virtue of Section 1281.98. (*Id.* ¶ 4, Ex. C.)

Charter promptly approved all the payments, and Colleen Kohler, a Charter assistant responsible for assisting Jennifer Page, a Senior Manager in Charter's legal services department, with the payment of the AAA's arbitration fees for the Harper arbitrations, mailed a $5,000 check to the AAA on October 27, 2022, which the AAA applied toward the outstanding balance in the FEHA Arbitration. (*Id.* ¶¶ 1, 5.) Although a total of $9,659.50 was still outstanding in the Labor Code Arbitration, Ms. Kohler mistakenly believed that her earlier $5,000 payment had been applied toward the balance in the Labor Code Arbitration, so she sent the AAA a check for what she believed to be the remaining balance outstanding: $4,659.50. (*Id.* ¶¶ 6, 9.) The AAA received that check on November 1, 2022 and applied it toward the outstanding balance in the Labor Code Arbitration. (*Id.* ¶ 6, Ex. D.) At that point, Charter believed it had paid all outstanding invoices, even though there was $5,000 outstanding in the Labor Code Arbitration. (*See id.* ¶ 9.) On November 14, 2022, the AAA sent Charter a reminder email stating that Charter's outstanding balance in the Labor Code Arbitration was due to be paid on November 23, 2022. (*Id.* ¶ 7, Ex. E.) Ms. Kohler had previously confirmed that she had paid the $5,000 invoice for the Labor Code Arbitration. (*Id.* ¶ 7.)

On November 29, 2022, the AAA sent an email advising that it had "not received the $5,000 payment for the arbitrator's additional pre-hearing deposit requested and invoiced in our email dated October 24, 2022." (*Id.* ¶ 8, Ex. F.) Charter promptly investigated the matter and learned of Ms. Kohler's clerical error. (*Id.* ¶ 9.) Within 24 hours of the AAA's e-mail, Charter paid the outstanding $5,000 balance, which the AAA confirmed it received on November 30, 2022. (*Id.* ¶ 10, Ex. D.) Charter's one-week delay in paying the advance deposit did not delay or otherwise impact the arbitration as there were no pending case deadlines or scheduled hearings until 2023. (Chapman Decl. ¶ 4.)

**D. Harper Demands the AAA Return This Dispute to the Court and Dismiss the Arbitration.**

Even though Charter substantially complied with its payment obligations, causing no prejudice to Harper or any delay of the arbitration, his counsel e-mailed the AAA within hours, declaring Harper was "unilaterally elect[ing] to withdraw his claims from arbitration and to proceed with them in court." (*Id* ¶ 5, Ex. A.) Charter responded, explaining Ms. Kohler's genuine mistake, and requesting the AAA proceed with the arbitration. (*Id.*) The AAA replied that it "does not have the authority [to] supersede California Code of Civil Procedure 1281.98(b)(1)," and "if a court determines that the arbitration should be reopened, the AAA will abide by any court order provided." (*Id.*) On December 9, 2022, the AAA closed the case. (*Id.* ¶ 6, Ex. B.)

For the reasons shown below, the Court should reject Harper's opportunistic game of "gotcha" and order that this matter be returned to arbitration, consistent with the Court's prior order.

## III. ARGUMENT

**A. Standard of Review.**

Congress enacted the FAA "to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). The FAA is "intended to foreclose state legislative attempts to undercut the enforceability of arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984). The FAA preempts state rules that are "too tailor-made to arbitration agreements—subjecting them, by virtue of their defining trait, to uncommon barriers," *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1427 (2017). Accordingly, "courts may not invalidate arbitration agreements under state laws applicable *only* to arbitration agreements," such as state laws imposing special requirements "not applicable to contracts generally." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (emphasis in original); *see also Kindred*, 137 S. Ct. at 1428 & n.2.

The California legislature has repeatedly ignored these principles and passed laws specifically targeting arbitration agreements (such as Section 1281.98), which the Supreme Court has repeatedly held are preempted by the FAA. *See Lamps Plus, Inc. v Varela*, 139 S. Ct. 1407, 1417–18 (2019) (holding that California rule interpreting ambiguities against drafters of arbitration agreement was preempted); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 337–38, 352 (2011)

(holding that California rule declaring class-action waivers in arbitration agreements unconscionable was preempted); *Preston v. Ferrer*, 552 U.S. 346, 351–52, 362–63 (2008) (holding that California law requiring parties to exhaust administrative remedies before arbitration was preempted); *Perry v. Thomas*, 482 U.S. 483, 491 (1987) (holding that California law requiring judicial forum for wage disputes was preempted); *Southland Corp. v. Keating*, 465 U.S. 1, 5, 17 (1984) (holding that California law requiring judicial forum for claims under the California Franchise Investment Law was preempted). As shown below, Section 1281.98 is yet another example of the California legislature impermissibly singling out arbitration agreements for different treatment than other contracts.

**B. Generally Applicable California Contract Principles Governing Material Breach and Waiver Directly Conflict with Section 1281.98., Which Creates Different Rules for Arbitration Agreements.**

*1. Generally Applicable California Contract Law Governing Material Breach.*

Under California's ordinary contract rules, a partial breach of contract by one party does not permit the other side to unilaterally stop its own performance or rescind the contract unless the breach is material. *Wyler v. Feuer*, 85 Cal. App. 3d 392, 404 (1978); *Integrated, Inc. v. Alec Fergusson Elec. Contractors*, 250 Cal. App. 2d 287, 295 (1967) ("Ordinarily a party may unilaterally rescind a contract only where there has been a total or material breach by the other party."). And, to assess materiality, California courts consider several factors, including: (1) whether the breach denied the nonbreaching party the substantial benefit of its bargain, (2) whether the breaching party partially performed its obligations or has prepared to fully perform, and (3) whether the party's failure to perform was innocent or willful. *Sackett v. Spindler*, 248 Cal. App. 2d. 220, 229 (1967). Additionally, "[t]he general rule" in California contract law "is that time is not of the essence unless it has been made so by the express terms of [the] contract or is necessarily so from the very nature of the contract." *Leiter v. Handelsman*, 125 Cal. App. 2d 243, 250 (1954). Under these principles, a "short delay" in paying required fees "typically does not result in a material breach excusing the other side from its obligations." *See, e.g.*, *McLellan v. Fitbit, Inc.*, No. 16-cv-00036, 2018 WL 3549042, at *5 (N.D. Cal. July 24, 2018); *see also Belyea v. Green Sky, Inc.*, No.

20-cv-01693-JSC, 2022 WL 14965532, at *10 (N.D. Cal. Oct. 26, 2022) (finding late payment not a material breach).

*2. Generally Applicable California Contract Law Governing Waiver.*

Under California law, "[w]aiver is the intentional relinquishment of a known right," and "***always rests upon intent***."" *Roesch v. De Monta*, 24 Cal. 2d 563, 572 (1944) (emphasis supplied). In the contract context, waiver is a question of fact, and the intent of the waiving party is the "pivotal issue." *Wind Dancer Prod. Grp. V. Walt Disney Pictures*, 10 Cal. App. 5th 56, 78 (2017) (quotation marks omitted). "The waiver may be either express, based on the words of the waiving party, or implied, based on conduct indicating an intent to relinquish the right." *Id.* (quotation marks omitted). However, implied waiver only occurs when a party's acts "are so inconsistent with the intent to enforce the right as to induce a reasonable belief that such right has been relinquished." *Id.* (quotation marks omitted).

*3. Section 1281.98's Waiver and Material Breach Provisions Apply Only to Arbitration Agreements.*

As the party responsible for drafting the arbitration agreement, Section 1281.98 places the following stringent requirements on Charter regarding the payment of arbitration fees and costs:

> In an employment or consumer arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitration provider, that the drafting party pay certain fees and costs during the pendency of an arbitration proceeding, ***if the fees or costs required to continue the arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel the employee or consumer to proceed with that arbitration as a result of the material breach***.

CCP § 1281.98(a)(1) (emphasis supplied). The statute further penalizes the drafting party (Charter) for failure to comply with the strict requirements of subdivision (a) by granting the employee (Harper) the unilateral right to "[w]ithdraw the claim from arbitration and proceed in a court of appropriate jurisdiction." CCP § 1281.98(b)(1). The statutory scheme also provides the

withdrawing employee the right to recover attorney's fees and costs associated with the purportedly "abandoned" arbitration proceeding and subjects the employer to potential case terminating sanctions. *See* CCP § 1281.98(c)(1); CCP § 1281.99 (providing for fees, adverse inference instructions, and case terminating sanctions).[1] The statute makes no provision for instances of mistake, inadvertence, or excusable neglect, rendering ***any*** payment failure an automatic, potentially contract-voiding default. *See generally* CCP § 1281.98. Indeed, even if an employer sends a payment to the AAA via Federal Express for overnight delivery two days before the deadline but the plane carrying the payment crashes into a mountain and the payment is not delivered, the employer is deemed to be in material breach and to have waived its arbitration rights. *Espinoza v. Sup. Ct. of Los Angeles Cnty.*, 83 Cal. App. 5th 761, 777 (2022) (strictly enforcing Section 1281.97, which mirrors 1281.98 for initiation fees, even after acknowledging that doing so "may in some cases impose costs on drafting parties for innocent mistakes"). As shown below, this obvious anti-arbitration scheme eviscerates California law applicable to other contracts governing waiver and material breach and establishes arbitration-specific grounds for revocation of arbitration agreements that are impermissible under the FAA. *See Belyea*, 2022 WL 14965532, at *9.

### C. Section 1281.98 Violates the FAA's "Equal-Treatment" Principle, as it Singles Out Arbitration Agreements for Different (Punitive) Treatment.

Section 1281.98 is "tailor-made to arbitration agreements." *See Kindred*, 137 S. Ct. at 1427. This is evident from the plain text of the statute, which applies specifically to "employer or consumer arbitration," where the "arbitration provider" requires fees to be paid during the "arbitration proceeding." *See* CCP § 1281.98 (also referring to defaulting arbitration, waiving right to compel arbitration). By targeting arbitration agreements in this way, Section 1281.98 alters general California contract principles of material breach and waiver ***solely with respect to arbitration agreements*** by imposing the "uncommon barrier" of a strict 30-day window for the

[1] This case further highlights the California Legislature's complete disregard for generally applicable California law principles to discriminate against arbitration by using the term "abandoned" to refer to an arbitration that is unilaterally canceled by one party. CCP § 1281.98(c)(1). In no other contractual context would a party be found to have "abandoned" a contractual right by making one late payment under a contract, especially when it is undisputed that the reason for the late payment was a clerical error that was immediately corrected.

payment of arbitration fees and declaring as a matter of law that failure to meet the statutory deadline ***always*** constitutes a material breach and waiver of rights, no matter the circumstances. *See Kindred*, 137 S. Ct. at 1427.

*1. Charter Did Not Materially Breach the Arbitration Agreement or Waive Its Right to Arbitrate Under Generally Applicable California Contract Principles.*

Applying general California contract principles of material breach and waiver to the facts of this case confirms that Section 1281.98 impermissibly discriminates against arbitration agreements. First, with respect to material breach, as shown above, the general rule under California contract law is that "time is not of the essence unless it has been made so by the express terms of [the] contract," and a short delay (here, one week) in fulfilling a contract obligation would not result in a material breach that excuses the other side from its obligations. *See Leiter*, 125 Cal. App. 2d at 250; *McLellan*, 2018 WL 3549042, at *5. Here, the arbitration agreement did not specify that timely payment of arbitration fees was essential, and Charter's delay was insignificant and had no effect on the proceedings. Further, applying the materiality factors, it is obvious that Charter's delayed payment was immaterial because: (1) it did nothing to interfere with Harper's ability to arbitrate his claims, as the invoice at issue merely sought a *deposit* for the arbitrator's compensation for services she had not yet rendered, and Charter's delay had no discernable impact on the proceedings; (2) Charter had already substantially performed under the contract, timely paying nearly $20,000 dollars under six separate invoices; and (3) Charter's failure to timely pay was not willful; rather, it was an innocent mistake that Charter remedied within one week. *See Sackett*, 248 Cal. App. 2d at 229.

Second, Charter's delayed payment did not constitute a waiver of its right to compel arbitration under generally applicable California law. Indeed, the "pivotal issue" in the waiver context is the party's intent, and Charter acted in a manner that is entirely consistent with its rights under the arbitration agreement. *See Wind Dancer*, 10 Cal. App. 5th at 78. Charter had timely paid all prior invoices, intended to pay the $5,000 invoice at issue here, and, within 24 hours of learning of its clerical error, paid the outstanding balance. Thus, Charter did not expressly waive its arbitration rights, and its unintentional, good-faith error cannot constitute an implied waiver as a matter of law. *See id.*

Accordingly, under ordinary California contract law, Charter's delayed payment does not constitute a material breach or waiver.

*2. Case Law Confirms That Section 1281.98 Impermissibly Discriminates Against Arbitration Agreements and is Preempted by the FAA.*

In stark contrast to the foregoing analysis, under Section 1281.98, Charter is automatically deemed to be in material breach based on an immaterial payment technicality, without any regard to its intent, its attempts to perform, the terms of the Parties' arbitration agreement, or the effect on Harper's ability to arbitrate his claims (*i.e.*, none). Thus, as the express statutory text of Section 1281.98 confirms, the ***only*** reason the outcome is different here is that the contract at issue is an arbitration agreement. Such an outcome is flatly prohibited by the FAA. *Gilmer*, 500 U.S. at 24; *Keating*, 465 U.S. at 16; *Kindred*, 137 S. Ct. at 1427; *Casarotto*, 517 U.S. at 687.

In fact, the most recent federal case analyzing the FAA's preemption of this statute reached this precise conclusion.[2] *See Belyea*, 2022 WL 14965532, at *7 (holding CCP § 1281.97 preempted by FAA). There, the district court noted, consistent with the analysis above, that "waiver or breach for failure to pay [arbitration] fees are traditionally fact-specific inquiries rather than bright-line rules." *Id.* at *7. Noting that neither waiver nor breach would apply under the factual circumstances alleged in that case, the district court correctly concluded that the statute's "'strict' 30-day defense to enforceability is ***arbitration specific***." *Id.* (emphasis added).[3]

The *Belyea* court also rejected Harper's core argument, which merely parrots the fallacious reasoning of his cited cases (*i.e.*, that Section 1281.98 purportedly incentivizes arbitration), holding that regardless of how one characterizes the statute, it renders arbitration agreements unenforceable based on rules that do not apply to other contracts: "An arbitration-specific rule incentivizing arbitration by threatening invalidity or unenforceability [fares] no better under [the FAA] than a rule undermining arbitration via the same means." *Id.* This makes sense because the U.S. Supreme

[2] In *Belyea*, the district court analyzed the nearly identical statutory provisions contained under CCP § 1281.97, the sister provision to Section 1281.98.

[3] The district court also cited to the California appellate court's decision in *Espinoza* to further illustrate that, in a stark departure from normal contract principles, the statute provides no exceptions for substantial compliance, unintentional nonpayment, or absence of prejudice.

Court has unequivocally held that the FAA preempts state law that is "tailor-made to arbitration agreements—subjecting them, by virtue of their defining trait, to uncommon barriers." *Kindred*, 137 S. Ct. 1427.

Likewise, Section 1281.98 further places arbitration agreements on different footing than other contracts because it invests one party with unilateral discretion to determine whether to remain in arbitration. As *Belyea* correctly held, Section 1281.98's one-party, discretionary enforcement mechanism only further demonstrates that the statute singles out arbitration agreements for different treatment than other contracts: "What matters under CCP § 1281.9[8] is that the drafting party may no longer enforce the agreement if they miss a 30-day payment deadline—which, as shown above, is a condition unique to arbitration agreements in California. A rule affects the 'enforceability' of a contract when it determines that one side may enforce the contract, but the other may not." *Id*. at *8.

Finally, as *Belyea* recognized, any argument that Section 1281.98 is a purported procedural rule is unavailing because it is not an ordinary, generally applicable rule. *See id.* at *8. As *Belyea's* analysis confirms, the ***consequences*** of Section 1281.98—*i.e.*, voiding arbitration agreements—not its "procedural" moniker, is what matters for the preemption analysis: "Preemption occurs when an arbitration-specific rule invalidates, revokes, or makes unenforceable an arbitration agreement upon grounds that do not exist at law or in equity for the revocation of any contract."[4] *Id.* (quotation marks omitted.) Thus, Section 1281.98 is preempted because it creates arbitration-specific rules for the invalidation of contracts that do not apply outside the context of arbitration.

Accordingly, like *Belyea*, this Court should follow the clear, binding U.S. Supreme Court authority on this issue, which requires a finding that the FAA preempts Section 1281.98 because it "makes arbitration agreements unenforceable ***on grounds that exist in the arbitration context***

---

[4] The *Belyea* court also showed why the *Gallo* and *Espinoza* courts' reference to Section 1286.2 of the Code of Civil Procedure and their comparison of that statute to Sections 1281.97-98 in holding the latter to be a mere procedural rule is completely wrong. *See Gallo v. Wood Ranch USA, Inc.*, 81 Cal. App. 5th 621, 634 (2022); *Espinoza*, 83 Cal. App. 5th at 775-76. Indeed, Section 1286.2 "merely limits the judicial review of the merits of arbitration decisions, it does not render any agreement to arbitrate unenforceable or invalid." *Id.* In other words, while the consequences of § 1286.2's more limited judicial review could potentially harm a party, "those consequences have no bearing on the agreements' 'enforceability' or 'validity.' By contrast, CCP § 1281.9[8] explicitly redefines 'material breach' and 'waiver' in its text." *Id.*

***only***[,] . . . violat[ing] the equal-footing principle inherent in 9 U.S.C. § 2." *Id.* at *9.

**D. The Court Should Reject Harper's Improper Attempt to Gain a Windfall Recovery of Attorney's Fees Unrelated to Arbitration, Which Are Subject to Offset.**

Harper has relentlessly challenged and ignored this Court's decisions finding the Parties' arbitration agreement (the "SC Agreement") enforceable ever since the Court first decided the issue in Harper's related FEHA case in 2019. *Harper v. Charter Commc'ns, LLC*, No. 2:19-CV-01749 WBS-DMC, 2019 WL 6918280 (E.D. Cal. Dec. 19, 2019) ("FEHA Action"). For example, in the ***years*** since, Harper has repeated the same unconscionability challenges to the SC Agreement no fewer than four times, ignoring the Court's ruling in the FEHA Action including when he (1) opposed Charter's motion to compel arbitration in this case (Dkt. 172); (2) moved for reconsideration of the Court's order compelling arbitration in this case (Dkt. 284); (3) petitioned the Ninth Circuit for review of the enforceability of the SC Agreement (Dkt. 289); and (4) opposed Charter's motion to compel Harper's PAGA claim to individual arbitration (Dkt. 294.) Each time, Harper's arguments failed.

Now, Harper improperly seeks to recover the fees he incurred in those losing efforts via Section 1281.98, which provides that an employee may only recover attorney's fees incurred in the abandoned arbitration proceeding. *See* CCP § 1281.98(c)(1). Contrary to the statute, Harper's request of $125,970 in attorney's fees includes time spent on numerous filings and other tasks that occurred in this Court and before the Ninth Circuit, ***not in arbitration***. For example, he seeks to recover fees for the following: (1) opposing Charter's successful motion to compel him to arbitration; (2) preparing his motion for reconsideration of the Court's arbitration order; and (3) preparing his interlocutory appeal petition in the Ninth Circuit. None of the tasks reflected on counsel's billing records related to these matters (or any fees that were not incurred in the abandoned arbitration proceeding) may be recovered under the statute. *See* CCP § 1281.98(c)(1). Likewise, the statute does not authorize the Court to award Harper fees for preparing a purported "anti-SLAPP motion" that he never filed (in arbitration or otherwise) and has absolutely no relevance or connection to the arbitration.

Finally, any potential award of fees must be offset by the amounts Harper owes Charter

($71,628.33) pursuant to Section K of the Solution Channel Agreement for the fees it incurred in successfully compelling Harper to arbitration in the first instance. (*See* Chapman Decl. ¶ 7, Ex. C.) Charter initially sought this amount in the arbitration in the form of a counterclaim against Harper, but he moved to dismiss the counterclaim on jurisdictional grounds. (*Id.*) The arbitrator granted Harper's motion (erroneously) and dismissed the counterclaim "without prejudice" so Charter could file its motion for fees in this Court at the appropriate time. (*Id.* ¶ 7, Ex. D.) Charter intends to file this request for fees at the appropriate time—if/when the stay on Harper's individual claims is lifted. Thus, because Harper's fee request would be offset by Charter's fee request, the Court should defer ruling on any fee issues until the stay has been lifted and Charter has an opportunity to submit its request.

**E. The Court Should Deny Harper's Request to Lift the Stay in this Action.**

Finally, assuming *arguendo* that Section 1281.98 is not preempted by the FAA, this Court should deny Harper's request to lift the stay of this action, which the Court imposed *sua sponte* pending appeal of its order denying Charter's motion to compel Harper's PAGA claim to arbitration (Dkt. 311.) "Courts within the Ninth Circuit have recognized that the court may abandon its imposed stay of litigation if the circumstances that persuaded the court to impose the stay in the first place have changed significantly." *Tribe v. U.S. Bureau of Reclamation*, No. 19-CV-04405-WHO, 2021 WL 4482117, at *3 (N.D. Cal. Sept. 30, 2021) (quotation marks omitted); *see also Johnson v. Inos*, 619 F. App'x 651 (9th Cir. 2015) ("[T]he court did not err by requiring a showing of 'changed circumstances' as a prerequisite for lifting the stay."); *United States v. Fallbrook Pub. Util. Dist.*, No. 51CV1247-GPC(RBB), 2017 WL 1281915, at *2 (S.D. Cal. Apr. 6, 2017) (same); *Smart Modular Techs., Inc. v. Netlist, Inc.*, No. 212CV02319TLNEFB, 2016 WL 5159524, at *2 (E.D. Cal. Sept. 21, 2016) (same); *Akeena Solar Inc. v. Zep Solar Inc.*, No. C 09-05040 JSW, 2011 WL 2669453, at *3 (N.D. Cal. July 7, 2011) (same); *Thomas v. Home Depot USA Inc.*, No. C06-02705 MJJ, 2007 WL 2140917, at *1 (N.D. Cal. July 25, 2007) (lifting stay of proceedings because "[t]he grounds on which this Court originally issued the stay no longer exist").

Here, no circumstances have changed with respect to the appeal of the Court's order denying Charter's motion to compel arbitration of Harper's PAGA claim, which prompted the Court to stay

this action in the first instance. (Dkt. 311.) Indeed, the Court has already determined that a stay of these proceedings is "appropriate" given that the Court and the Parties would waste significant resources litigating the PAGA claim, only for the Ninth Circuit to nullify that effort by compelling the PAGA claim to individual arbitration. (*Id.*) *See Roe v. SFBSC Mgmt.*, No. 14-cv-03616, 2015 WL 1798926, at *4 (N.D. Cal. Apr. 17, 2015) (granting stay pending appeal of arbitration order, reasoning, "If the Ninth Circuit reverses this court's decision on arbitration, then what will speed have gained? Rushing ahead may buy little and waste much.").

Finally, the Court should not lift the stay because, if the Court grants the instant motion, Charter will immediately appeal that order for the reasons set forth above (*i.e.*, because Section 1281.98 is preempted by the FAA). *See* 9 U.S.C. 16(a). And if, after appeal, Harper is ordered back to arbitration, his arbitration will be re-opened, and the parties will continue from where they left off. *See Roe*, 2015 WL 1798926, at *4; *Brown v. MHN Gov't Servs., Inc.*, No. 14-1449, 2014 WL 2472094, at *4 (N.D. Cal. June 3, 2014) ("conclud[ing] that a stay pending . . . appeal is necessary to ensure judicial efficiency and to preserve the parties' time and resources"). Thus, the Court should leave the stay in place to preserve its and the Parties' resources and because it will serve the interests of efficiency.

## IV. CONCLUSION

For the reasons set forth above, Charter respectfully requests that the Court: (i) find and hold, as required by the FAA, that CCP § 1281.98 is preempted under 9 U.S.C. § 2; (ii) deny Harper's motion to vacate the court's order compelling arbitration; (iii) direct that the matter be returned to arbitration; and (iv) uphold the stay of Harper's individual, class, and PAGA claims.

Dated: December 23, 2022

KABAT CHAPMAN & OZMER LLP

By: *Nathan D. Chapman*

JOSEPH W. OZMER II
NATHAN D. CHAPMAN
J. SCOTT CARR

Attorneys for Defendant Charter Communications, LLC

**PROOF OF SERVICE**

**STATE OF GEORGIA, COUNTY OF FULTON**

I am employed in the County of Fulton, State of Georgia; I am over the age of 18 and not a party to the within action; one of my business addresses is 171 17th Street NW, Suite 1550, Atlanta, Georgia 30363.

On December 23, 2022, I served the foregoing document(s) described **DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF LIONEL HARPER'S MOTION TO VACATE THE ORDER COMPELLING ARBITRATION AND LIFT STAY** on the interested parties to this action by delivering a copy thereof in a sealed envelope addressed to each of said interested parties at the following address(es): SEE ATTACHED LIST

☐ **(BY MAIL)** I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service. This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our Firm's office address in Atlanta, Georgia. Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

☒ **(BY ELECTRONIC SERVICE)** by causing the foregoing document(s) to be electronically filed using the Court's Electronic Filing System which constitutes service of the filed document(s) on the individual(s) listed on the attached mailing list.

☐ **(BY EMAIL SERVICE)** I caused such document to be delivered electronically via e-mail to the e-mail address of the addressee(s) set forth in the attached service list.

☐ **(BY OVERNIGHT DELIVERY)** I served the foregoing document by FedEx, an express service carrier which provides overnight delivery, as follows: I placed true copies of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed to each interested party as set forth above, with fees for overnight delivery paid or provided for.

☐ **(BY PERSONAL SERVICE)** I caused such envelope to be delivered by hand to the offices of the below named addressee(s).

☒ (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under penalty of perjury that the above is true and correct.

Executed on December 23, 2022, at Atlanta, Georgia.

*Nathan D. Chapman*
Nathan D. Chapman

**SERVICE LIST**

Jamin S. Soderstrom
jamin@soderstromlawfirm.com
SODERSTROM LAW PC
1 Park Plaza, Suite 600
Irvine, CA 92614

*Attorneys for Plaintiffs*