Jamin S. Soderstrom, Bar No. 261054
jamin@soderstromlawfirm.com
SODERSTROM LAW PC
1 Park Plaza, Suite 600
Irvine, California 92614
Tel: (949) 667-4700
Fax: (949) 424-8091

*Counsel for Plaintiffs, Putative Class Members,
and Aggrieved Employees*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIONEL HARPER, DANIEL SINCLAIR, HASSAN TURNER, LUIS VAZQUEZ, and PEDRO ABASCAL, individually and on behalf of all others similarly situated and all aggrieved employees,<br><br>       Plaintiffs,<br><br>v.<br><br>CHARTER COMMUNICATIONS, LLC,<br><br>       Defendant. | Case No.   2:19-cv-00902-WBS-DMC<br><br>**PLAINTIFF LIONEL HARPER'S REPLY IN SUPPORT OF MOTION TO VACATE THE ORDER COMPELLING ARBITRATION AND LIFT STAY**<br><br>Judge:         Hon. William B. Shubb<br>Hearing Date:   January 23, 2023<br>Hearing Time:  1:30 p.m.<br>Location:     Courtroom 5, 14th Floor<br>Trial Date:    None set |

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ 3

INTRODUCTION ............................................................................................................... 6

CLARIFICATION OF RELEVANT FACTS ..................................................................... 7

THE COURT SHOULD REJECT CHARTER'S PREEMPTION ARGUMENTS ............ 9

A.   The FAA Requires Enforcement Of The Parties' Agreement According To Its Terms Even When It Means The Dispute Is Litigated Instead Of Arbitrated. ................................................. 9

B.   The Parties' Agreed That Charter Would Make Immediate Payments, And Charter Would Have 30 Days To Cure Payment Breaches Before They Became Material. ........................... 10

C.   The FAA Does Not Preempt The Parties' Agreement Or Section 1281.98. ........................... 14

    1.   Section 1281.98 lets parties agree to and modify its payment procedures and terms, and defines and lists the available remedies for a material breach. ..................................... 14

    2.   Section 1281.98 does not prohibit arbitration of particular claims or discriminate against arbitration agreements. ...................................................................................... 15

    3.   Section 1281.98 does not discourage arbitration or stand as an obstacle to the FAA's purposes. ........................................................................................................................ 16

THE COURT SHOULD AWARD HARPER HIS ATTORNEY FEES ............................. 18

THE COURT SHOULD LIFT THE STAY ...................................................................... 19

CONCLUSION ................................................................................................................. 20

# TABLE OF AUTHORITES

**Page(s)**

**Cases**

*Agerkop v. Sisyphian LLC*,
2021 WL 1940456 (C.D. Cal. Apr. 13, 2021) ................................................................. 14, 15

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ......................................................................... 9, 13, 16, 17

*Baypoint Mortgage Corp. v. Crest Premium Real Estate etc. Trust*,
168 Cal. App. 3d 818 (1985) ............................................................................. 12

*Belyea v. Green Sky, Inc.*,
--- F. Supp. 3d ---, 2022 WL 14965532 (N.D. Cal. Oct. 26, 2022) ........................... 12, 13, 17

*Conservatorship of Buchenau*,
196 Cal. App. 4th 1031 (2011) ......................................................................... 12

*Doctor's Associates, Inc. v. Casarotto*,
517 U.S. 681 (1996) ......................................................................................... 14

*Eliasieh v. Legally Mine, LLC*,
2020 WL 1929244 (N.D. Cal. Apr. 21, 2020) ................................................. 10

*Epic Systems Corp. v. Lewis*,
138 S. Ct. 1612 (2018) ..................................................................................... 17

*Espinoza v. Superior Court*,
83 Cal. App. 5th 761 (2022) ................................................................. 14, 15, 18

*Gallo v. Wood Ranch USA, Inc.*,
81 Cal. App. 5th 621 (2022) ................................................ 10, 12, 14, 16, 17

*Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga*,
175 Cal. App. 4th 1306 (2009) ......................................................................... 18

*Hammond Lumber Co. v. Richardson Bldg. & Engineering, Co.*,
209 Cal. 82 (1930) ........................................................................................... 10

*Henck v. Lake Hemet Water Co.*,
9 Cal. 2d 136 (1937) ....................................................................................... 12

*Hines v. Davidowitz*,
312 U.S. 52 (1941) ........................................................................................... 14

*Kindred Nursing Ctrs. Ltd. P'Ship v. Clark*,
137 S. Ct. 1421 (2017) ............................................................................. 13, 15

*Lamps Plus, Inc. v. Varela*,
139 S. Ct. 1407 (2019) ..................................................................................... 13

*McLellan v. Fitbit, Inc.*,
2018 WL 3549042 (N.D. Cal. July 24, 2018) ............................................ 12, 13, 17

*Morgan v. Sundance, Inc.*,
142 S. Ct. 1708 (2022) ....................................................................................... 9

*Mt. Diablo Med. Ctr. v. Health Net of Cal., Inc.*,
    101 Cal. App. 4th 711 (2002) ........................................................................... 14

*Nken v. Holder*,
    556 U.S. 418 (2009) ........................................................................................ 20

*Patterson v. Superior Court*,
    70 Cal. App. 5th 473 (2021) ........................................................................... 19

*Pennel v. Pond Union School Dist.*,
    29 Cal. App. 3d 832 (1973) ............................................................................. 16

*Perry v. Thomas*,
    482 U.S. 483 (1987) .................................................................................. 12, 14

*Postmates Inc. v. 10,356 Individuals*,
    2021 WL 540155 (C.D. Cal. Jan. 19, 2021) .............................. 14, 15, 16, 18

*Preston v. Ferrer*,
    552 U.S. 346 (2008) ........................................................................................ 13

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967) .......................................................................................... 9

*Ramirez v. Charter Communications, Inc.*,
    75 Cal. App. 5th 365 (2022) ........................................................................... 19

*Ramirez v. Charter Communications*,
    510 P.3d 404 (2022) ........................................................................................ 19

*Sanchez v. Valencia Holding Co., LLC*,
    61 Cal. 4th 899 (2015) .................................................................................... 12

*Sharabianlou v. Karp*,
    181 Cal. App. 4th 1133 (2010) ....................................................................... 19

*Sink v. Aden Enterprises, Inc.*,
    352 F.3d 1197 (9th Cir. 2003) .............................................................. 13, 17, 20

*Southland Corp. v. Keating*,
    465 U.S. 1 (1984) ............................................................................................ 13

*Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*,
    489 U.S. 468 (1989) ...................................................................... 9, 11, 14, 15

*Ward v. Crow Vote LLC*,
    2021 WL 6496849 (C.D. Cal. Nov. 29, 2021) ............................................... 20

*Wilson v. Lewis*,
    106 Cal. App. 3d 802 (1980) ........................................................................... 16

*Wong v. Stoler*,
    237 Cal. App. 4th 1375 (2015) ....................................................................... 16

**Statutes and Rules**

9 U.S.C. § 2 ............................................................................................... 14, 16

9 U.S.C. § 4 .................................................................................................... 9

Cal. Civ. Code § 1657 ........................................................................................................ 10

Cal. Civ. Code § 1688 ........................................................................................................ 16

Cal. Civ. Code § 1689(b)(2) ............................................................................................... 16

Cal. Civ. Code § 1691 ........................................................................................................ 16

Cal. Code Civ. Proc. § 1281.98 ................................................................................... passim

Cal. Code Civ. Proc. § 1281.98(a)(1) ................................................................................. 11

Cal. Code Civ. Proc. § 1281.98(a)(2) ..................................................................... 15, 17, 18

Cal. Code Civ. Proc. § 1281.98(b) ..................................................................................... 11

Cal. Code Civ. Proc. § 1281.98(c) ..................................................................................... 18

Cal. Code Civ. Proc. § 1281.99(a) ..................................................................................... 18

Fed. R. Evid. 602 ................................................................................................................. 8

Fed. R. Evid. 603 ................................................................................................................. 8

Fed. R. Evid. 802 ................................................................................................................. 8

Fed. R. Evid. 1002 ............................................................................................................... 8

**INTRODUCTION**

Charter's opposition to Harper's motion rests almost entirely on FAA preemption. But Charter's preemption arguments are based on a mistaken view of the parties' agreement, the relevant facts, and the governing authorities.

Charter disregards the fact that it *agreed* that the arbitration would be conducted in accordance with Section 1281.98's "due upon receipt," 30-day cure period, and material breach provisions. Charter could have specified different payment terms but chose not to. Charter breached its payment obligation by failing to pay the AAA's October 24, 2022 invoice (Invoice) by its due date (October 24). The breach became material under the terms of the parties' agreement when, after receiving notice of the overdue payment, Charter failed to cure the breach by the end of the agreed 30-day cure period (November 23). Harper then promptly gave notice of his election to rescind the contract on November 29. The parties were free to incorporate Section 1281.98 into their agreement, and the FAA requires enforcement of their agreement even when it means their dispute will be litigated instead of arbitrated.

Charter also misinterprets the scope of FAA preemption. The majority of courts that have considered the issue have held that the FAA *does not* preempt Section 1281.98.[1] Charter accuses the majority of courts of adopting "fallacious" reasoning, and Harper of "bad faith" and "sophistry." But the majority's reasoning is sound and their conclusions are correct. Section 1281.98 does not prohibit the arbitration of any claims, discriminate against arbitration, or stand as an obstacle to the accomplishment of the FAA's objectives. It *encourages* and *furthers* the FAA's speed and efficiency objectives by letting parties' agree on specific payment procedures and terms, providing a generous 30-day cure period, providing a clear definition of when a payment breach becomes material, and confirming the available remedies if a material breach occurs. The Court should join the majority and hold that the FAA does not preempt Section 1281.98.

The Court should grant Harper's motion, vacate its order compelling arbitration, award the requested attorney fees to place Harper in the position he would have been if Charter had never moved to compel arbitration, and lift the stay of his claims.

---

[1] Harper is not seeking certain available remedies, so parts of Section 1281.98 they are not at issue.

### CLARIFICATION OF RELEVANT FACTS

**Charter Did Not Timely Pay Any Invoices.** Charter argues that it substantially complied with its contractual payment obligations by "timely paying" all of the AAA's invoices prior to November 23, 2022. That simply is not true.

Charter picked the AAA to administer the arbitration and agreed to pay all "AAA administrative fees and the arbitrator's fees and expenses" related to the arbitration. Dkt. 162 at 21; Dkt. 162-1 Ex. B (Agreement §§ H and K). Charter knew the AAA's arbitration rules and payment terms when it picked the AAA and agreed to pay the AAA's invoices according to their terms without objection.[2] Dkt. 183 at 15 (stating the AAA Rules are incorporated into the parties' contract); Dkt. 185 Ex. 1 (AAA Rules[3]). The AAA's correspondence and invoices confirmed that Charter's payments were subject to Section 1281.98 and "due upon receipt," and that Charter had 30 days to cure a payment breach before it became material. Dkt. 316-2 Ex. 1 (detailed invoice showing prior invoices); Soderstrom Supp. Decl. ¶ 1, Ex. 1 (compilation of prior AAA correspondence and invoices).

Charter breached its contractual payment obligations multiple times prior to November 23, 2022 by failing to pay any invoices by their due dates. Dkt. 316-2 Ex. 1; Dkt. 321-10 (showing AAA received Charter's payments of March 30 invoice on April 1 (two days late), June 28 invoice on July 6 (eight days late), July 6 invoice on July 12 (six days late), October 5 invoice on October 19 (14 days late), and part of the October 24 invoice on November 1 (seven days late)).[4] Curing payment breaches before they

---

[2] Charter was managing many other arbitrations with the AAA in California in addition to Harper's separate FEHA arbitration. Soderstrom Supp. Decl. ¶ 2, Ex. 2 (AAA disclosure report showing Charter was involved in numerous California arbitrations in 2022).

[3] The AAA Rules describe Charter's obligations with respect to paying administrative fees (Rule 43), arbitrator compensation (Rule 44), expenses (Rule 45), and deposits (Rule 46), and they incorporate payment terms and schedules (page 26, www.adr.org/employmentfeeschedule). They also confirm that the AAA has the power to interpret and apply its own rules and procedures (Rule 48).

[4] The AAA let Charter pay invoices immediately via credit card or eCheck using its invoice payment webpage. Dkt. 316-2 Ex. 1; Soderstrom Supp. Decl. ¶ 3, Ex. 3 (screenshot of the AAA's invoice payment webpage). The AAA's payment webpage let Charter see invoice balances and due dates, and ensured that payments would be applied to specific arbitrations and associated with specific invoices). *Id.* For payments made by physical check, the AAA required Charter to submit a copy of the invoice with each payment, and to identify the arbitration case number on the actual check. Dkt. 316-2 Ex. 1. Charter's

become material is not the same as complying with a contractual obligation to pay invoices immediately upon receipt. Charter did not timely pay any invoices—all of its payments were late.

**An Administrative Assistant's Alleged Confusion Is Not Relevant.** Charter argues that an administrative assistant (Colleen Kohler) was allegedly "confused" about the existence of two separate arbitrations between Harper and Charter, and that her confusion is relevant to the materiality of Charter's breach. But Kohler did not attest to alleged confusion, realizations, beliefs, related communications, or undocumented actions, and her boss (Jennifer Page) and Charter's counsel cannot attest to those matters on her behalf. Dkt. 321-6 ¶¶ 5, 6, and 9; Dkt. 321-2 at 3. Harper objects based on foundation, hearsay, and the best evidence rule. Fed. R. Evid. 602, 603, 802, and 1002. Moreover, Charter demanded and the Court compelled to separate arbitrations (the FEHA arbitration in 2019 and the wage arbitration in 2021), and the AAA administered the arbitrations separately, gave them separate case numbers, and used separate correspondence and files.[5] Dkt. 321-7 to 321-9; Soderstrom Supp. Decl. ¶ 4.

Regardless of Kohler's alleged personal confusion and undocumented actions that Charter says she took, the AAA sent its correspondence and invoices to Charter's designated representatives (Page and Charter's counsel), and a November 14, 2022 reminder notice advising them that the AAA had not received full payment of the Invoice, the cure period ended on November 23, and Harper needed to consent to any extension. Dkt. 316-2 Exs. 1 and 2; Dkt. 321-11. Page admits she was aware the payment terms incorporated Section 1281.98, and that none of Charter's representatives confirmed the overdue payment status on the AAA's website or contacted the AAA in response to the reminder notice to inquire about the unpaid Invoice before the end of the cure period.[6] Dkt. 321-6 ¶ 4; Soderstrom Supp. Decl. ¶ 3, Ex. 3. Charter's investigation only came *after* Harper gave notice on November 29 of his election to rescind the contract, withdraw his claims from arbitration, and return to court.

---

chose not to use the AAA's website or follow the AAA's immediate payment procedures with respect to the Invoice.

[5] Charter's insistence on individual arbitrations for Harper and thousands of employees in California creates administrative difficulties involved in tracking, managing, conducting, and paying for the arbitrations, none of which relieve the parties' of their contractual rights and obligations.

[6] Charter suggests the AAA should have applied a check payment in the FEHA arbitration to the wage arbitration, Dkt. 321-2 at 3, but there is no evidence that the AAA misapplied any payment.

**THE COURT SHOULD REJECT CHARTER'S PREEMPTION ARGUMENTS**

**A.     The FAA Requires Enforcement Of The Parties' Agreement According To Its Terms Even When It Means The Dispute Is Litigated Instead Of Arbitrated.**

The "principal purpose" of the FAA is to "ensur[e] that private arbitration agreements are enforced *according to their terms*.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 334 (2011) (emphasis added). The FAA "make[s] 'arbitration agreements as enforceable as other contracts, but not more so.'" *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)). "The federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Id.* "Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind," and may not "favor arbitration over litigation." *Id.*

Based on this principal purpose, the FAA does not "prevent[] enforcement of agreements to arbitrate under different rules than those set forth in the Act itself," because "parties are generally free to structure their arbitration agreements as they see fit," and they may "specify by contract the rules under which that arbitration will be conducted." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989). The FAA does not require "arbitration under a certain set of procedural rules," it simply "ensure[s] the enforceability, *according to their terms*, of private agreements to arbitrate." *Id.* at 476. When "parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA." *Id.* Enforcement is required even when that means "the parties' dispute will be litigated rather than arbitrated." *Id.* at 487 (Brennen, J, dissenting). Parties can "agree[] that arbitration would *not* proceed in situations which fell within the scope of" such rules. *Id.* at 475 (emphasis added). This is because "the FAA does not confer a right to compel arbitration of any dispute at any time; it confers only the right to obtain an order directing that 'arbitration proceed *in the manner provided for in [the parties'] agreement*.'" *Id.* at 474–75 (quoting 9 U.S.C. § 4; emphasis in original). State rules that govern the conduct of arbitration and encourage arbitration do not offend or conflict with the FAA. *Id.* at 476.

Here, the parties' agreed to conduct the arbitration in accordance with the AAA's payment terms. Their agreement incorporated the AAA's rules and payment terms, which incorporated Section 1281.98

and required Charter to pay invoices immediately, gave Charter a 30-day cure period, defined material breach as a failure to pay an invoice by the end of the cure period, required Harper to consent to any extension, and listed the available remedies for a material breach. All of the AAA's correspondence and invoices cited and were sent in accordance with Section 1281.98. Charter and its designated representatives were aware of and agreed to these payment terms, and Charter never objected to or disputed any of the payment terms until *after* Harper had already elected to rescind the contract on November 29, 2022. *Eliasieh v. Legally Mine, LLC*, 2020 WL 1929244, at *1–2, 4 (N.D. Cal. Apr. 21, 2020) (reopening case after defendant failed to timely pay arbitration fees, and noting defendant did not timely object, the AAA had a right to follow its own procedures, and the AAA was not required to accept the defendant's offer of late payment).

Charter does not dispute that it agreed to the AAA's administration of the arbitration, agreed to pay all of the AAA's invoices, and agreed to conduct the arbitration in accordance with the AAA's payment terms, including their incorporation of Section 1281.98. What Charter "is really seeking is a right to keep the dispute in arbitration without following the arbitration rules [that it] expressly agreed to." *Gallo v. Wood Ranch USA, Inc.*, 81 Cal. App. 5th 621, 645 (2022). "The FAA does not sanction this outcome, for the FAA's goal is [to] put arbitration 'on *equal* footing' with other contracts, not to put one of the parties to the arbitration on *better* footing." *Id.* (emphasis in original; citation omitted).

**B.     The Parties' Agreed That Charter Would Make Immediate Payments, And Charter Would Have 30 Days To Cure Payment Breaches Before They Became Material.**

The parties' agreement required Charter to pay all of the AAA's invoices "upon receipt," and that Charter would have 30 days to cure payment breaches before they became material.

**Due Upon Receipt.** The "due upon receipt" term is consistent with California law's requirement that Charter's payment obligations were immediate because the contract did not specify different times for payment. Cal. Civ. Code § 1657 ("If no time is specified for the performance of an act required to be performed, a reasonable time is allowed. *If the act is in its nature capable of being done instantly— as, for example, if it consists in the payment of money only—it must be performed immediately upon the thing to be done being exactly ascertained.*") (emphasis added); *Hammond Lumber Co. v. Richardson Bldg. & Engineering, Co.*, 209 Cal. 82, 88 (1930) ("The time of payment not being fixed, the

presumption arises that it was due and payable immediately or on demand"). Charter breached the parties' agreement numerous times by paying each of the AAA's prior invoices late. Charter's prior breaches were not material, however, because Charter cured those payment breaches before the end of the agreed 30-day cure period, i.e., the time specified for any cure payments.

**30-Day Cure Period.** The parties were free to agree that arbitration would be conducted pursuant to the AAA's rules and payment terms, which incorporated Section 1281.98. *Volt*, 489 U.S. at 479. Section 1281.98 guaranteed Charter a 30-day cure period, with a right to request that Harper consent to extensions, before a breach would become material. Cal. Code Civ. Proc. § 1281.98(a)(1).

These terms confirmed the procedures to be followed in the arbitration, and they benefitted both parties. Harper had the benefit of prompt payments, certainty of a final deadline for each payment, the right to consent to any requested extensions, and the right to elect his preferred remedies if Charter failed to cure a payment breach within 30 days. Charter had the benefit of a generous 30-day cure period, certainty of a specific deadline for each payment, a clear understanding of when a payment breach would be material, a reminder notice to help avoid material breaches, multiple ways to make payments, and the right to ask Harper to consent to an extension. Harper could not rescind the contract based on Charter's prior payment breaches, even though they were recurrent, because Charter cured those breaches by the end of the agreed cure period and made them non-material. Rescinding the contract based on those breaches would have denied Charter the benefits of agreeing to a 30-day cure period.

**Free To Choose Other Payment Terms.** Charter could have bargained for different payment terms, because Section 1281.98 gives the parties the right to include "an express provision in the arbitration agreement stating the number of days in which the parties to the arbitration must pay any required fees or costs." Cal. Code Civ. Proc. § 1281.98(b). Charter could have specified, for example, that all payments are due 30 days after the date of an invoice. It could have specified a longer cure period. Or it could have specified that the parties would agree to any request for an extension of 21 days or less if made within three days of the date the AAA gave notice of a breach or non-performance. There are many possible alternative payment procedures and terms that Charter could have specified and asked Harper to agree to, and, based on the FAA's principal purpose and the express terms of Section 1281.98, the parties were free to agree to other payment procedures and terms. Unlike state laws that have been

found preempted by the FAA, Section 1281.98 does not have an anti-waiver provision that precludes parties from agreeing to different payment procedures and terms. *See, e.g.*, *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 923–24 (2015) (preempting California Civil Code section 1751 insofar as it barred class action waivers for arbitrable claims); *Perry v. Thomas*, 482 U.S. 483, 491–92 (1987) (preempting California Labor Code section 229 because it barred parties from waiving the right to litigate wage claims in court).

**Time Was of the Essence for *Curing* Breaches.** The terms of the parties' agreement confirms that time *was not* of the essence for Charter's payment of invoices by their due dates, but time *was* of the essence for Charter's payment of invoices by the end of the agreed 30-day cure period.

The agreed payment terms—confirmed by the AAA's correspondence, invoices, and reminder notice, and never disputed by Charter—clearly showed that paying invoices within 30 days of their due date was essential, and that failure to do so would constitute a material breach. "[I]t is not necessary that any special words should have been employed in order that the intent to make time of the essence be apparent." *Henck v. Lake Hemet Water Co.*, 9 Cal. 2d 136, 143–44 (1937); *Conservatorship of Buchenau*, 196 Cal. App. 4th 1031, 1039 (2011) ("essential time for performance may implied when so required by the very nature of the underlying contract"); *Baypoint Mortgage Corp. v. Crest Premium Real Estate etc. Trust*, 168 Cal. App. 3d 818, 826 (1985) ("The degree to which time is the essence and what constitutes timely performance under a contract must be construed from all of the terms of the agreement.").

Time was of the essence for *curing* payment breaches. Charter's designated representatives and counsel knew that not paying the Invoice by November 23 would be a material breach. "[T]he parties did *not* agree to let [Charter] commit [late payment] violations . . . with impunity." *Gallo*, 81 Cal. App. 5th at 645. The immediate payment obligation, 30-day cure period, and clear statement that failure to pay within 30 days is a material breach would be superfluous and meaningless if Charter had a reasonable time *after* the end of the cure period to pay invoices before a breach became material.

***McLellan* and *Belyea*.** Charter's reliance on *McLellan v. Fitbit, Inc.*, 2018 WL 3549042 (N.D. Cal. July 24, 2018) and *Belyea v. Green Sky, Inc.*, --- F. Supp. 3d ---, 2022 WL 14965532 (N.D. Cal. Oct. 26, 2022) is misplaced because their facts are distinguishable. In *McLellan*, the parties' had not

agreed to an immediate payment obligation, or that failure to make a payment within a specified number of days after a due date would be a material breach. 2018 WL 3549042, at *2–4 (showing defendant's payment was due 14 days after the AAA's request for payment, and defendant paid the invoice within 23 days of the due date). The plaintiff never declared a material breach, gave notice of rescission, or withdrew her claims from arbitration, and the AAA never closed the arbitration. *Id.* Without specific payment and cure terms and a specific definition of material breach, the defendant had a reasonable time to cure its breach and it did so. *Id.*

In *Belyea*, the parties' agreed that JAMS would administer the arbitration. 2022 WL 14965532, at *1. The court did not discuss the payment terms of the parties' agreement other than that JAMS issued an initial invoice to the defendant with "payment due upon receipt." *Id.* There was no evidence that the defendant had knowledge of Section 1281.97, or had agreed to conduct the arbitration under and abide by Section 1281.97. *Id.* There was no evidence the defendant had paid other invoices late and relied on and benefited from a 30-day cure period. *Id.* There was no evidence that JAMS closed the arbitration. *Id.* The court acknowledged that "every other court considering the issue to date has found that the FAA does not preempt CCP Section 1281.97." *Id.* at *6; *see also Sink v. Aden Enterprises, Inc.*, 352 F.3d 1197, 1198–99 (9th Cir. 2003) (affirming denial of motion to return case to arbitration where employer agreed to pay costs by specific date, did not pay, and a default order was entered 17 days later).

*McLellan* and *Belyea* do not address the fact that parties can *agree* to abide by the payment procedures and terms of Section 1281.98 or choose other payment procedures and terms, or address the fact that the "due upon receipt," 30-day cure period, and specific definition of material breach show that time is of the essence with respect to *curing* payment breaches.[7]

---

[7] Charter's reliance on certain other cases is also misplaced. *See, e.g.*, *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984) (preempting state law that rendered agreements to arbitrate franchise claims void and unenforceable); *Kindred Nursing Ctrs. Ltd. P'Ship v. Clark*, 137 S. Ct. 1421, 1425 (2017) (preempting state law that rendered arbitration agreements executed via powers of attorney unenforceable); *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1419 (2019) (finding courts "may not infer from an ambiguous agreement that parties have consented to arbitrate on a classwide basis" because such an inference would be inconsistent with the FAA's primary purpose of enforcing the agreement according to its terms and interfere with the fundamental attributes of arbitration, without finding California's general rule interpreting ambiguities against the drafter is preempted in other circumstances); *Concepcion*, 563 U.S. at 346–48 (preempting state law that let consumer demand classwide arbitration in contravention of the parties' agreement to bilateral arbitration); *Preston v. Ferrer*, 552 U.S. 346, 356 (2008) (preempting state law that granted Labor Commission exclusive jurisdiction to decide a dispute in contravention of

**C.      The FAA Does Not Preempt The Parties' Agreement Or Section 1281.98.**

As the Supreme Court determined in *Volt*, the FAA requires enforcement of arbitration agreements *according to their terms*, including terms providing that an arbitration will be conducted in accordance with state rules of arbitration. 489 U.S. at 479. Enforcing an agreement to abide by Section 1281.98 is "fully consistent with the goals of the FAA," even when it results in a dispute being litigated instead of arbitrated. *Id.* Charter's agreement to abide by Section 1281.98, and its failure to pay the Invoice by the end of the 30-day cure period, should end the matter.

If it does not end the matter, the court should join the majority of courts that have considered the issue and find that the FAA does not preempt the relevant parts of Section 1281.98. *Espinoza v. Superior Court*, 83 Cal. App. 5th 761, 779–87 (2022); *Gallo*, 81 Cal. App. 5th at 635–46; *Agerkop v. Sisyphian LLC*, 2021 WL 1940456, at *4–5 (C.D. Cal. Apr. 13, 2021); *Postmates Inc. v. 10,356 Individuals*, 2021 WL 540155, at *6–10 (C.D. Cal. Jan. 19, 2021).

"The FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration." *Volt*, 489 U.S. at 477. "[S]tate law may nonetheless be preempted to the extent that it actually conflicts with federal law—that is, to the extent that it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). "If a state law does not require a court to render [an] arbitration agreement invalid, there is no need to apply the savings clause tests [under 9 U.S.C. § 2] because there is no conflict." *Postmates*, 2021 WL 540155, at *7.

**1.      Section 1281.98 lets parties agree to and modify its payment procedures and terms, and defines and lists the available remedies for a material breach.**

Because the FAA does not require parties to agree to arbitrate under a certain set of rules, *Volt*, 489 U.S. at 476, the FAA "'leaves room for states to enact some rules affecting arbitration' that the parties may choose to adopt." *Gallo*, 81 Cal. App. 5th at 639 (quoting *Mt. Diablo Med. Ctr. v. Health*

---

arbitration agreement, and imposed "prerequisites" to enforcing arbitration agreements); *Perry*, 482 U.S. at 491–92 (preempting state law allowing litigation of wage claims "without regard to the existence of any private agreement to arbitrate"); *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 683 (1996) (preempting state law rendering contracts that do not include a notice of an arbitration clause typed in underlined capital letters on the first page unenforceable).

1   *Net of Cal., Inc.*, 101 Cal. App. 4th 711, 718 (2002)). Such rules "will, by definition, be arbitration

2   specific." *Id.* But the FAA does not preempt all arbitration-specific rules, especially rules that address

3   how arbitration will proceed. *Id.*; *Volt*, 489 U.S. at 479 (finding arbitration-specific rule that the parties

4   agreed to abide by was not preempted even though its application meant a court could stay or deny

5   arbitration altogether and the dispute would be litigated).

6       Section 1281.98's payment terms and deadlines that the parties incorporated into their agreement

7   are not mandatory. Section 1281.98 expressly allows parties to specify other payment terms if they so

8   choose. Cal. Code Civ. Proc. § 1281.98(a)(2). Charter had full and actual knowledge that the AAA's

9   payment procedures and terms incorporated Section 1281.98, and Charter did not ask Harper to agree

10   to any alternative payment terms or ask the AAA to apply other terms. Section 1281.98 does not require

11   the Court to invalidate the parties' agreement, it simply gives Harper the right to elect a remedy if

12   Charter's conduct during the arbitration satisfies the agreed definition of material breach.

13       **2.      Section 1281.98 does not prohibit arbitration of particular claims or discriminate**

14       **against arbitration agreements.**

15       The FAA "preempts any state rule discriminating on its face against arbitration—for example, a

16   'law prohibit[ing] outright the arbitration of a particular type of claim.'" *Espinoza*, 83 Cal. App. 5th at

17   779 (quoting *Kindred Nursing*, 137 S. Ct. at 1426 (2017)). "A state law is also displaced if it 'covertly

18   accomplishes the same objective by disfavoring contracts that (oh so coincidentally) have the defining

19   features of arbitration agreements." *Postmates*, 2021 WL 540155, at *7 (quoting *Kindred Nursing*, 137

20   S. Ct. at 1426).

21       "[S]ection 1281.98 do[es] not prohibit arbitration of a particular type of claim." *Agerkop*, 2021

22   WL 1940456, at *5 n.7. Section 1281.98 assumes that the parties agreed to arbitration, the arbitration

23   agreement is enforceable, and the claims and disputes submitted to arbitration are arbitrable. It does not

24   single out arbitration agreements for outright prohibition or disfavored treatment. Consistent with the

25   parties' freedom of contract, it lets parties agree to different payment procedures and terms if they so

26   choose. If the parties do not choose other payment terms, it provides them with specific payment terms

27   and deadlines, and it defines when a payment failure will be a material breach. If the non-breaching

28

party does not waive a material breach, it lists remedies the non-breaching party may elect, including rescission of the contract or compelling performance of the contract.[8]

Section 1281.98 "does not automatically render arbitration agreements unenforceable—it simply gives non-drafting parties the option to choose to litigate their claim in a court of appropriate jurisdiction or to compel arbitration." *Postmates*, 2021 WL 540115, at *8. Parties are aware of the options, and the options are only available if the paying party fails to pay within the agreed cure period. *Id.* Moreover, "[t]here is a difference between laws that invalidate arbitration agreements and laws that codify remedies available to *assist* arbitration." *Id.* (emphasis added). "Clearly, the FAA does not preempt state laws that make arbitration *more effective* by providing targeted remedies *in aid* of arbitration. [Section 1281.98 is] pro-arbitration, and federal preemption doctrine routinely allows additional state remedies for violations of arbitration agreements." *Id.*

Section 1281.98 ensures the parties to an arbitration agreement have notice and a clear understanding of their contractual payment rights and obligations, and lets parties modify the payment terms if they so choose. It "*encourages* speedy resolution *through arbitration*." *Id.* (emphasis added). Section 1281.98 "is not preempted by the FAA because it does not invalidate arbitration agreements and therefore there is no conflict with [9 U.S.C.] § 2." *Id.*

**3.    Section 1281.98 does not discourage arbitration or stand as an obstacle to the FAA's purposes.**

"Even if a state law does not single out arbitration agreements for outright prohibition or disfavored treatment, it still will be preempted by the FAA if it 'stand[s] as an obstacle to the accomplishment of the FAA's objectives." *Gallo*, 81 Cal. App. 5th at 640 (quoting *Concepcion*, 563 U.S. at 343). The first objective, discussed above, is the FAA's primary or central purpose: ensuring agreements are enforced according to their terms. *Id.* at 640–41 (citing numerous Supreme Court cases).

---

[8] Under California law, "[a] party to a contract may rescind if there is a material breach by the other party." *Pennel v. Pond Union School Dist.*, 29 Cal. App. 3d 832, 838 (1973); Cal. Civ. Code § 1689(b)(2). The non-breaching party may elect to either rescind or affirm the contract. *Wong v. Stoler*, 237 Cal. App. 4th 1375, 1384–85 (2015). "A contract is extinguished by its rescission." Cal. Civ. Code § 1688. The rescinding party must promptly give notice to the other party upon discovering the facts which entitle him to rescind. *Wong*, 237 Cal. App. 4th at 1385; Cal. Civ. Code § 1691. The notice of rescission need not be "formal an explicit" and on needs to "show[] the intention of the person rescinding to consider the contract at an end." *Wilson v. Lewis*, 106 Cal. App. 3d 802, 809–10 (1980). Harper elected to rescind, and he promptly gave notice of rescission on November 29, 2022.

The second objective is to further the "fundamental attribute of arbitration" which is "its 'promise of quicker, more informal, and often cheaper [dispute] resolutions for everyone involved." *Id.* at 641 (quoting *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 , 1621 (2018)); *Concepcion*, 563 U.S. at 345 (holding second goal is "encouragement of efficient and speedy dispute resolution").

"The mere fact that application of section [1281.98] in this case deprives [Charter] of the arbitral forum that it initially invoked does not warrant the conclusion that section [1281.98] is preempted by the FAA." *Gallo*, 81 Cal. App. 5th at 644. The parties' agreed to abide by Section 1281.98, which established specific payment procedures that would govern the arbitration. *Id.* The procedures specified dates, deadlines, potential extensions, and available remedies for a material breach. Charter could have agreed to different payment procedures and terms that may not have resulted in a material breach and rescission in these circumstances. Cal. Code Civ. Proc. § 1281.98(a)(2). Charter's arguments concerning alleged internal miscommunications, and its attempt to get the AAA to accept a payment 37-days late instead of closing the arbitration, may have been effective if the parties had agreed to *other* payment terms. *Gallo*, 81 Cal. App. 5th at 644–45.

Setting specific payment due dates, a generous cure deadline, a concrete definition of material breach, and a list of available remedies is not hostile to arbitration. It encourages arbitrations to proceed efficiently and speedily and helps avoid disputes over when a short breach of a payment obligation is material. *See, e.g.*, *McLellan*, 2018 WL 3549042, at \*2–4 (dispute over whether 23-day late payment material); *Sink*, 352 F.3d at 1198–99 (dispute over whether default 17 days after failure to pay was material). When parties agree to abide by them, and do abide by them, enforcing Section 1281.98's terms "honors the parties' intent and results in a faster proceeding." *Gallo*, 81 Cal. App. 5th at 645. Section 1281.98 is "a friend of arbitration and not its foe." *Id.*

Section 1281.98's confirmation that rescission is an available remedy for a material breach is not a "stick" that makes an arbitration agreement unenforceable. *Belyea*, 2022 WL 14965532, at \*7. It is simply confirmation of the availability of a remedy (common under California law) that Harper could elect in the event of a material breach. If the parties were nearing completion of the arbitration when Charter committed a material breach, Harper may have elected to affirm the agreement and compel Charter's performance so he could obtain the arbitrator's final award. Other parties have chosen to

compel performance when they preferred arbitration and the breaching party did not. *See, e.g.*, *Postmates*, 2021 WL 540155, at *3–4.

Ultimately, the cure period and available remedies only come into play *after* Charter has breached its payment obligation, received notice of an overdue payment, and then failed to pay again. The "30-day deadline [to cure a breach] is generous enough that a party exercising reasonable diligence reliably can meet it." *Espinoza*, 83 Cal. App. 5th at 785. It is not punitive, especially when the parties' were specifically aware of and agreed without objection to the 30-day cure period and the specific definition of material breach. Charter relied on the cure period for its previous payment breaches. If Charter wanted different payment terms that would not have resulted in a material breach and rescission in these circumstances, it could have proposed them. Cal. Code Civ. Proc. § 1281.98(a)(2). The Court should join the majority of courts and find that the FAA does not preempt Section 1281.98.

## THE COURT SHOULD AWARD HARPER HIS ATTORNEY FEES

Charter argues that awarding Harper all of the attorney fees he incurred related to the arbitration would be an undeserved windfall, and that the Court should wait on issuing a fee award because Charter may file a motion seeking its own attorney fees at some future point in this litigation. The Court should reject both arguments and award Harper his fees. Dkt. 316 ¶ 5 & Ex. 4; Soderstrom Supp. Decl. ¶ 5 (showing 34 hours related to the reply brief, above the 10.5-hour initial estimate). Charter does not dispute the reasonableness of Harper's counsel's 2022 hourly rate or any of the hours that he worked— it simply argues that some of the attorney fees he incurred as a result of Charter moving to compel arbitration should not be awarded because they were not incurred in the arbitration itself. Harper's request for $137,132.50 ($125,970 plus an additional $11,162.50 incurred in connection with this reply brief and an in-person hearing) is reasonable and appropriate and would restore him to the position he was in before Charter moved to compel arbitration.

Having elected to rescind the parties' arbitration agreement, Harper has a right to recover all of his attorney's fees and all costs related to the arbitration. Cal. Code Civ. Proc. §§ 1281.98(c), 1281.99(a). He has a right to be restored as close as possible to his position before Charter sought to compel arbitration, even though the former status quo cannot be exactly reproduced. *Wong*, 237 Cal. App. 4th at 1386; *Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga*, 175 Cal. App. 4th 1306, 1344

(2009) (finding rescission "demands restoration of parties to former positions as though contract never existed"); *Sharabianlou v. Karp*, 181 Cal. App. 4th 1133, 1146 (2010) (confirming recovery of attorney fees is appropriate in some cases following a rescission). Harper would not have incurred the attorney fees he is asking the Court to award if Charter had not sought to compel arbitration and then, after obtaining an order compelling arbitration, materially breached its payment obligations eight months into the arbitration. The fact that Harper won several motions and lost several motions in the interim, and prepared an anti-SLAPP motion to file in arbitration if the arbitrator decided to retain jurisdiction over Charter's counterclaim, does not change the fact that he incurred the attorney fees as a consequence of Charter's decision to move to compel arbitration. He would not be seeking these fees at this time if Charter had not materially breached the parties' agreement eight months into the arbitration. Granting his requested attorney fees related to the arbitration would restore him to the position he was in before Charter decided to compel arbitration.

Charter cites no authority to support its argument that the Court should delay ruling on Harper's request for fees simply because Charter intends to move, at some future stage of this litigation, for its own award of more than $70,000 in attorney fees pursuant to Section K. As the Court is already aware, multiple appellate courts have found that Section K is unenforceable as written, and the California Supreme Court will be resolving whether it is enforceable to any extent sometime in 2023. *Patterson v. Superior Court*, 70 Cal. App. 5th 473 (2021) (finding Section K unenforceable as written); *Ramirez v. Charter Communications, Inc.*, 75 Cal. App. 5th 365 (2022) (finding Section K unconscionable); *Ramirez v. Charter Communications*, 510 P.3d 404 (2022) (granting review). Charter's hope that it will find a way to recover some of its own attorney fees at some point in this litigation is unlikely and speculative at best. The Court should not delay ruling on Harper's fee request simply because some future motion may result in a separate fee award to Charter.

## THE COURT SHOULD LIFT THE STAY

The Court should lift the stay of Harper's claims. Charter's material breach and Harper's timely rescission constitutes a material change in circumstances in this case. Harper is not required to arbitrate any portion of the PAGA claims, *see* Dkt. 300, and he is no longer required to arbitrate his non-PAGA claims. Under Ninth Circuit authority, Charter is not entitled to a stay after it defaulted and the AAA

closed the arbitration. *Sink*, 352 F.3d at 1201. And Charter saying it may file another appeal does not address, let alone satisfy, the requirements for a discretionary stay pending appeal. *Nken v. Holder*, 556 U.S. 418, 433–34 (2009) (listing relevant factors and holding "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercised of discretion"); *Ward v. Crow Vote LLC*, 2021 WL 6496849, at *1 (C.D. Cal. Nov. 29, 2021) ("When a party files an interlocutory appeal from the denial of a motion to compel arbitration, a stay 'is not a matter of right, even if irreparable injury might otherwise result.'") (quoting *Nken*, 556 U.S. at 433). Considering the lengthy time this case has been pending already, it is appropriate and advisable to lift the stay of Harper's claims.

### CONCLUSION

The Court should grant Harper's motion, vacate the order compelling arbitration, award Harper's attorneys fees relevant to the arbitration, and lift the stay of his claims.

Dated: January 6, 2023

SODERSTROM LAW PC

By: /s/ Jamin S. Soderstrom

Counsel for Plaintiffs, Proposed Class Members, and Aggrieved Employees

HARPER'S REPLY IN SUPPORT OF MOTION TO VACATE ORDER COMPELLING ARBITRATION

1

**CERTIFICATE OF SERVICE**

2

    The undersigned certifies that on January 6, 2023, I caused the foregoing document to be served

3

on all counsel of record by the Court's CM/ECF electronic filing system.

4

                                        By: /s/ Jamin S. Soderstrom

5

                                            Jamin S. Soderstrom

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HARPER'S REPLY IN SUPPORT OF MOTION TO VACATE ORDER COMPELLING ARBITRATION