# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| LIONEL HARPER, et al., | No.  2:19-CV-0902-WBS-DMC |
| Plaintiffs, |  |
| v. | ORDER |
| CHARTER COMMUNICATIONS, LLC, et al., |  |
| Defendants. |  |

Plaintiffs Lionel Harper, Daniel Sinclair, Hassan Turner, Luis Vasquez, and Pedro Abascal, who are proceeding with retained counsel, bring this civil action pursuant to, among other theories, California's Private Attorney General Act (PAGA), California Labor Code § 2698, et seq.  Plaintiffs allege violations of California statutory law with respect to the failure to pay certain wages.  The matter proceeds in this Court based on diversity jurisdiction.

Pending before the Court are Plaintiffs' motion to compel, ECF No. 354, and Plaintiffs' motion for discovery sanctions, ECF No. 355.  The parties appeared for a hearing before the undersigned on February 14, 2024, at 10:00 a.m.  Jamin Soderstrom, Esq., appeared for Plaintiffs.  Nathan Chapman, Esq., appeared for Defendant Charter.  After hearing arguments and making rulings from the bench, the matter was submitted for issuance of a formal order.

/ / /

1

# I. BACKGROUND

A.     **Procedural History**

This action currently proceeds on Plaintiffs' second amended complaint.  See ECF No. 147.  On October 13, 2021, the District Judge denied leave to file a third amended complaint.  See ECF No. 201.  The parties are familiar with the factual allegations, which are not summarized here.

The procedural history for this case since October 13, 2021, has been tortured, involving numerous motions filed by both sides and heard by the District Judge, various stays, several interlocutory appeals to the Ninth Circuit, and several prior discovery motions (discussed below).  The relevant recent procedural history is summarized in the District Judge's December 14, 2023, order lifting the stay of proceedings.  See ECF No. 350.  The District Judge's summary is as follows:

> On October 10, 2021, the court stayed plaintiffs' individual claims and ordered Harper, Turner, Vazquez, and Abascal's claims to arbitration. [n.1: Sinclair did not sign an arbitration agreement, but the court also stayed his claims at his counsel's request. (See Docket No. 202 at 24)]. (Docket No. 202.) Harper's PAGA [Private Attorney General Action] claims were allowed to proceed in court. (Id.) A month later, the court lifted the stay as to Sinclair's claims at counsel's request. (Docket No. 223.)
> On January 6, 2022, the court stayed Harper's PAGA claims (Claim 10) pending the Supreme Court's decision in Viking River Cruises, Inc. v. Moriana, 142 S. Ct. 1906 (2022). (Docket No. 261.) On March 4, 2022, plaintiffs successfully moved for interlocutory appeal of the court's order compelling their arbitrations. (Docket No. 288.) The court accordingly stayed the entire case. (Id.) Plaintiffs then lost their appeal. (Docket No. 290.)
> On June 15, 2022, the Supreme Court issued a decision in Viking River Cruises. The court then lifted the stay only to hear parties' arguments regarding the effect of Viking River Cruises and Sinclair's then-pending class certification motion. (Docket No. 292.) Thereafter, the court denied defendant's motion to compel arbitration of Harper's PAGA claim. (Docket No. 300.) Defendant filed an interlocutory appeal of that decision (Docket No. 306), and the court in response stayed the entire case again on September 16, 2022. (Docket No. 311.)
> On January 12, 2023, the court continued the stay because of defendant's still-pending appeal regarding Harper's PAGA claims; Harper, Turner, Vazquez, and Abascal's pending arbitrations; and Sinclair's pending but stayed claims before the court. (Docket No. 323.) The January 12 stay has remained in effect since.
> In August and September of this year [2023], Turner and Vazquez's arbitrations, respectively, concluded with final judgments entered. (Docket Nos. 325, 330.) Turner and Vazquez have appealed. (Docket Nos. 326, 331.)

1
2
On October 25, 2023, the Ninth Circuit affirmed the court's denial of defendant's motion to compel arbitration of Harper's PAGA claim. (Docket No. 342.)

3
ECF No. 350, pgs. 2-3.

4
The District Judge ordered, among other things, that the stay of proceedings be lifted as to all

5
claims by Harper and Sinclair and that the parties submit a joint status report by January 2, 2024.

6
See id. at 8.

7
Ultimately, the District Judge entered a modified scheduling order on January 4,

8
2024, following submission of a joint status report pursuant to the December 14, 2023, order.  See

9
ECF No. 352.  The order imposes the following schedule:

| | |
|---|---|
| March 4, 2024 | Deadline to file motion for class certification. |
| April 29, 2024 | Hearing on motion for class certification (at 1:30 p.m., before District Judge). |
| May 17, 2024 | Deadline to disclose expert witnesses. |
| June 7, 2024 | Deadline to disclose rebuttal expert witnesses. |
| July 12, 2024 | Discovery cut-off. |
| July 19, 2024 | Dispositive motions filing deadline. |
| November 18, 2024 | Final pre-trial conference (at 1:30 p.m., before District Judge). |
| January 28, 2025 | Commencement of jury trial (at 9:00 a.m., before District Judge). |

Id.

**B.**     **Prior Discovery Motions and Orders**

The current motion to compel concerns items of discovery which have been

addressed in prior orders issued on October 21, 2020, and May 5, 2021.

1.     October 21, 2020, Order

On October 21, 2020, the Court issued an order addressing Plaintiffs' motion to

compel and directed Defendant to serve supplemental responses to interrogatories, provide a

contact list, and produce documents reflecting a 10% sampling.  See ECF No. 87, pg. 12.

/ / /

3

1          2.       May 5, 2021, Order

2          On May 5, 2021, the Court issued another order addressing a separate dispute over

3    written discovery.  See ECF No. 133.  After extensive briefing and expenditure of time by the

4    Court, the matter was resolved by way of a stipulation, which the Court adopted.  See id. at 25.  In

5    doing so, the Court observed:

6                        Charter appears to be engaging in delaying tactics regarding,
             in particular, discovery associated with sampling of employee data which
7            would support Plaintiffs' motion for class certification. Following the
             hearing on the prior discovery motions, the Court ordered discovery be
8            provided by November 2, 2020. Instead of providing discovery, Charter
             served supplemental responses on November 2, 2020, indicating that it will
9            provide discovery at some unspecified time in the future. Nothing was
             provided by November 2, 2020. Plaintiffs could have immediately sought
10           Rule 37 sanctions for Charter's non-compliance but did not. Instead,
             Plaintiffs engaged in further meet-and-confer efforts culminating in the
11           February 17, 2021, discovery agreement which reduced the sampling size
             from 10% to 2% and required discovery be provided by March 8, 2021. As
12           part of that agreement, and in a further sign of good faith, Plaintiffs agreed to
             withdraw a pending motion for Rule 37 sanctions. Charter failed to produce
13           documents by the agreed date and this motion followed. The Court will now
             reduce the parties' February 17, 2021, discovery stipulation to a formal
14           order.

15           Id. at 24-25.

16   Following submission of a supporting declaration, the Court awarded Plaintiffs monetary

17   sanctions in the amount of $13,333.00 on August 30, 2021.  See ECF No. 168.

18

19                   **II.  SUMMARY OF CURRENT DISCOVERY DISPUTE**

20          In the currently pending motion to compel, Plaintiffs seek an order compelling

21   further responses by Charter to 39 Requests for Production served by Plaintiff Harper, two

22   Interrogatories served by Plaintiff Harper, and three Interrogatories served by Plaintiff Sinclair.

23   See ECF No. 354.  In the parties' joint statement, the parties indicate that further meet-and-confer

24   efforts have resulted in a draft stipulation resolving the parties' disagreements concerning most of

25   the discovery dispute and that the parties will submit a stipulated order to formalize their

26   agreement.  See ECF No. 362.  Remaining at issue are the following: (1) Harper Request for

27   Production Nos. 10-13, 17, 30, 81, 82, 84, 86, 87, 100, and 102; and (2) Sinclair Interrogatory

28   Nos. 6-8.  See id. at 3-5.

                                                    4

Plaintiffs' pending motion to compel was filed concurrently with their motion for

discovery sanctions.  According to Plaintiffs:

> As described in their Motion for Discovery Sanctions (Dkt. 355), Plaintiffs eventually learned during the lengthy stay of this class and representative PAGA lawsuit that Charter had created and destroyed thousands of audio/video recordings of virtual classroom training sessions, training scheduling emails, training schedules and new hire kits, ride-along playbooks, and non-classroom training agendas, all of which are relevant to their claims and Charter's defenses. These are the records **most relevant** and **most responsive** to Plaintiffs' allegations dating back to September 2018, and to their formal discovery requests dating back to September 2019. Charter and its former counsel (who Charter fired in June 2021) concealed the existence of these records and misrepresented to
>
> Plaintiffs and the Court the efforts they were undertaking to identify and preserve all relevant and responsive records. The only reasons Plaintiffs did not raise these issues sooner are that (i) Plaintiffs' counsel foolishly believed Charter had issued timely and appropriate litigation-hold notices and would not violate its discovery obligations and the Court's orders so blatantly, and (ii) the lawsuit was stayed for around two years.
>
> * * *
>
> In December 2023, Charter's counsel negotiated a specific discovery agreement that served as the basis for the current case schedule. In January 2024, Charter immediately broke the agreement and its counsel started asking Plaintiffs to stipulate to new and far different discovery terms and a vastly extended production schedule. But when Plaintiffs' counsel asked Charter's counsel for realistic deadlines for Charter to produce records during a January 30, 2024 call, Charter's counsel stated they could not offer a deadline because "It's impossible to get answers and it's impossible to get documents." Plaintiffs have experienced the same frustrations for years.

ECF No. 362, pgs. 7, 8 (emphasis in original).

Plaintiffs contend that they have a right to obtain all responsive records before the

deadline to move for class certification, currently March 4, 2024, and with sufficient time to

prepare expert reports, currently due by May 17, 2024.  See id. at 8.  Plaintiffs ask the Court to

order Charter to:

> 1.      Produce all new non-sampling training records.
>
> 2.      Produce all records related to any meal periods or rest breaks that were provided to, taken by, or waived by trainees, including any audio/video recordings, scheduling emails, training schedules, and new hire kits, and non-classroom training agendas that Charter has not already destroyed.

/ / /

5

3.      Produce all records and communications sent to or from Charter's sales managers and/or training facilitators related to meal periods or rest breaks during training.

4.      Produce all records showing or reflecting trainees' hours worked inside and outside the office during training, including any audio/visual recordings, scheduling emails, training schedules and new hire kits, and non-classroom training agendas that Charter has not already destroyed.

5.      Produce all records related to changes Charter has made to its new hire training programs since 2018, including any drafts, comments, and related communications exchanged with or among training managers, training facilitators, and curriculum developers.

6.      Produce all records related to any training Charter provided to sales managers and/or training facilitators concerning new hire Direct Sales Employees, including any records showing or reflecting Charter's policies and practices regarding meal periods, rest breaks, hours worked, and activities during ride-along training.

7.      Produce all records related to any litigation hold-communications and document preservation, collection, and production-related communications since September 2018 concerning the claims and defenses in this action.

8.      Produce all records and communications related to Charter's purported analysis and summary of questionnaire data.

ECF No. 362, pgs. 8-10.

## III.  DISCUSSION

### A.   Motion to Compel

The purpose of discovery is to "remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." United States v. Chapman Univ., 245 F.R.D. 646, 648 (C.D. Cal. 2007) (quotation and citation omitted). Rule 26(b)(1) of the Federal Rules of Civil Procedure offers guidance on the scope of discovery permitted:

Parties may obtain discovery regarding any nonprivileged information that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery

6

1    need not be admissible in evidence to be discoverable.

2    Fed. R. Civ. P. 26(b)(1).

3    Under Rule 37 of the Federal Rules of Civil Procedure, "a party seeking discovery

4    may move for an order compelling an answer, designation, production, or inspection." Fed. R.

5    Civ. P. 37(a)(3)(B). The court may order a party to provide further responses to an "evasive or

6    incomplete disclosure, answer, or response." Fed. R. Civ. P. 37(a)(4). "District courts have 'broad

7    discretion to manage discovery and to control the course of litigation under Federal Rule of Civil

8    Procedure 16.'" Hunt v. County of Orange, 672 F.3d 606, 616 (9th Cir. 2012) (quoting Avila v.

9    Willits Envtl. Remediation Trust, 633 F.3d 828, 833 (9th Cir. 2011)).

10    Under Rule 37, the party moving to compel bears the burden of informing the

11    court (1) which discovery requests are the subject of the motion to compel, (2) which of the

12    responses are disputed, (3) why the party believes the response is deficient, (4) why any

13    objections are not justified, and (5) why the information sought through discovery is relevant to

14    the prosecution of this action. McCoy v. Ramirez, No. 1:13-cv-1808-MJS (PC), 2016 U.S. Dist.

15    LEXIS 75435, 2016 WL 3196738, at *1 (E.D. Cal. June 9, 2016); Ellis v. Cambra, No. 1:02-cv-

16    5646-AWI-SMS PC, 2008 U.S. Dist. LEXIS 24418, 2008 WL 860523, at *4 (E.D. Cal. Mar. 27,

17    2008).  Rule 37 also requires the moving party to meet and confer with the opposing party.  See

18    Fed. R. Civ. P. 37(a)(1).

19    The current dispute, which involves much of the same discovery addressed in the

20    Court's prior orders from October 2020 and May 2021, concerns Requests for Production of

21    Documents served by Plaintiff Harper and Interrogatories served by Plaintiff Sinclair.  Discussed

22    with the parties at the hearing were the following: (1) Harper Request for Production Nos. 10-13,

23    17, 30, 81, 82, 84, 86, 87, 100, and 102; and (2) Sinclair Interrogatory Nos. 6-8.  See id. at 3-5.

24    The parties have represented that the remaining items of discovery outlined in Plaintiffs' notice of

25    motion will be the subject of a negotiated resolution and forthcoming joint discovery stipulation.

26    / / /

27    / / /

28    / / /

7

As reflected in Plaintiffs' discovery requests, which were supplied to the Court prior to the hearing, the following definitions apply:

"YOU" and "YOUR" means Charter Communications, LLC, its affiliates, directors, officers, employees, representatives, and any other person or entity acting on Charter Communications, LLC's behalf.

"DOCUMENT" and "DOCUMENTS" mean any and all documents or electronically stored information as defined by Federal Rule of Civil Procedure 34 and includes but is not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations that is stored in any medium from which information can be obtained either directly or, if necessary, after translation, into a reasonably usable form. For avoidance of doubt, DOCUMENT and DOCUMENTS include all emails, text messages, phone call records, voicemails, Internet posts or pages, and other electronically stored communications, records, and files on a computer, phone, tablet, or other similar device or Internet storage space (e.g., cloud or server).

"DIRECT SALES EMPLOYEE" or "DIRECT SALES EMPLOYEES" means any individual who performed work for YOU in California at any time from November 19, 2014, to the present in a position that sold or attempted to sell YOUR products and services at a customer's home, work, or business location instead of one of YOUR retail, call center, or office locations.

With these definitions in mind, the Court next addresses each of the 16 disputed discovery items which are not part of ongoing meet-and-confer efforts and forthcoming joint discovery stipulation.

      1.   <u>Requests for Production of Documents</u>

At issue are Plaintiff Harper's Request for Production (RFP) Nos. 10-13, 17, 30, 81, 82, 84, 86, 87, 100, and 102.

      i.   <u>RFP Nos. 10-13</u>

Plaintiff Harper's requests are as follows:

RFP No. 10:   Each DOCUMENT that sets forth or describes YOUR policies or practices related to providing meal periods to DIRECT SALES EMPLOYEES.

RFP No. 11:   Each DOCUMENT showing a meal period that YOU provided to, that was taken by, or that was waived by a DIRECT SALES EMPLOYEE.

/ / /

/ / /

1                        RFP No. 12:    Each DOCUMENT that sets forth or describes YOUR

2                                            policies and practices related to providing rest breaks to DIRECT SALES ELOYEES. This request includes but

3                                            is not limited to providing standard rest breaks and cool-down rest breaks.

4                        RFP No. 13:    Each DOCUMENT showing a rest break that YOU

5                                            provided to, that was taken by, or that was waived by a DIRECT SALES EMPLOYEE.

6              These four requests were the subject of the Court's October 21, 2020, order

7 overruling Charter's boilerplate objections and directing supplemental responses.  In support of

8 the current motion, Plaintiffs have provided the Court with Charter's most recent supplemental

9 responses dated July 9, 2020 – before the October 2020 order.  Thus, it appears that Charter did

10 not serve supplemental responses after the October 2020 order was issued.  The responses below

11 were before the Court when it issued the October 2020 order.

12              As to each of these four requests, the July 2020 response from Charter is the same:

13                      Subject to and without waving the foregoing objections, Charter

14 responds as follows: To the extent this request concerns Plaintiff and other exempt outside salespersons Plaintiff seeks to represent, and refers to business records maintained by Charter, the requested documents are not

15 in Charter's possession, custody or control. Plaintiff and other exempt outside salespersons are exempt from California's meal and rest period

16 requirements.

17              When asked at the hearing why Charter did not supplement its responses following

18 the October 2020 order, Charter's counsel, who substituted in as counsel of record in June 2021,

19 stated that he was unaware that Charter's responses had not been supplemented as ordered.  At

20 the end of the hearing, Charter's counsel informed the Court that, while Charter had

21 supplemented its responses in November 2020 to some of the discovery discussed in the October

22 2020 order, Charter had not supplemented its responses to RFP Nos. 10-13.

23              Plaintiffs' motion to compel will be granted as to RFP Nos. 10-13.  The Court

24 expects Charter to supplement its responses to each of these requests consistent with the October

25 21, 2020, order.  The Court expects that the dispute as to these requests, which has been ongoing

26 for over three years, will be resolved.  Charter has had more than adequate time and admonishes

27 Charter's counsel that further excuses or unfulfilled promises of forthcoming discovery will not

28 be sufficient.

1

ii.    RFP No. 17

2          Plaintiff Harper requests:

3          RFP No. 17:   Each time sheet or similar DOCUMENT that shows or
                          reflects the number of hours worked by DIRECT
4                         SALES EMPLOYEES.

5          This request was also the subject of the October 21, 2020, order.  Plaintiffs have

6    provided the most current supplemental response, also dated July 9, 2020:

7                  Subject to and without waving the foregoing objections, Charter
          responds as follows: To the extent this request concerns Plaintiff and other
8         exempt outside salespersons Plaintiff seeks to represent, and is limited to
          business records maintained by Charter, Charter is not in possession, custody
9         or control of any responsive timesheets. Plaintiff and other exempt outside
          salespersons are exempt from California's timekeeping and overtime
10        requirements.

11                 As with RFP Nos. 10-13, Charter's most recent supplemental response to RFP No.

12   17 pre-dates the Court's October 2020 order.  Charter's counsel conceded at the hearing that,

13   while Charter served a supplemental response in compliance with the Court's October 2020 order

14   in November 2020, it did not supplement its response to RFP No. 17.  The Court will again order

15   Charter to serve a supplemental response to RFP No. 17 consistent with the October 21, 2020,

16   order.

17                                iii.    RFP No. 30

18         Plaintiff Harper requests:

19         RFP No. 30:   Each DOCUMENT related to training YOU conduct or
                          have conducted for DIRECT SALES EMPLOYEES.
20
                          This request includes but is not limited to training
21                        materials, attendance records, class or lecture schedules,
                          homework requirements or modules, and similar records,
22                        and also includes in person, telephonic, online, or other
                          forms of training YOU provided to DIRECT SALES
23                        EMPLOYEES.

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

1        This request was also the subject of the October 21, 2020, order, as well as the

2    May 5, 2021, order.  Plaintiffs have provided the most current supplemental response from

3    Charter, dated May 10, 2021, served by Charter in compliance with the prior orders:

4

5            Subject to and without waiving the foregoing objections, Charter responds as follows: Charter has already produced numerous pages of training-related documents for Account Executives during the period Harper was employed with Charter. With the response, Charter is producing all other training documents applicable to Harper within its possession, custody or control. Charter believes any other responsive documents no longer exist.

6

7

8        Charter's counsel represented in the joint statement filed in connection with the

9    pending motion to compel, and again at the hearing, that Charter is in the process of locating

10    responsive documents which were not produced by prior counsel before withdrawal in June 2021.

11    The Court will order Charter to complete this effort and serve supplemental responses and

12    produce responsive documents without objection.  Charter is expected to either make the

13    representation that all responsive documents have been produced, that there are no responsive

14    documents, or that further responsive documents are being produced.  After having addressed this

15    same discovery on two prior occasions, the Court expects Charter's response to be unequivocal

16    and clear.

17            iv.    RFP Nos. 81 and 82

18        Plaintiff Harper's requests are as follows:

19    RFP No. 81:    Each DOCUMENT related to any changes YOU have

20                 made to the "New Hire" training materials for the Account Executive, Direct Sales Representative, and Multi-Tenant

21                 Sales Representative positions since September 14, 2018.

22                 For avoidance of doubt and without limitation, this request seeks emails, notes, drafts, meeting invitations, recordings,

23                 memoranda, or other written or electronic communications and records showing, reflecting, or related to the changes that YOU made to the New Hire training materials since

24                 September 14, 2018.

25    RFP No. 82:    Each DOCUMENT related to any training YOU have

26                 provided since November 2014 to persons who have conducted or facilitated "New Hire" training for Account Executive, Direct Sales Representatives, and/or Multi-

27                 Tenant Sales Representative positions.

28    / / /

1                                          For avoidance of doubt and without limitation, this request
2                                   seeks the materials YOU provided to facilitators (I, II, III, or any other level), trainers (I, II, III, or any other level), or similar positions.

3

4          Neither of these requests was addressed in the Court's prior discovery orders.  As

5  to both, Plaintiffs have provided the Court with Charter's response, dated October 1, 2021.  For

6  both requests, Charter responded as follows:

7             Defendant objects to this Request to the extent it is served in violation of Plaintiff's obligation to arbitrate his claims against Defendant pursuant to

8  a valid, enforceable arbitration agreement. Defendant responds to this Request without prejudice to its right to compel Plaintiff to arbitrate his

9  claims pursuant to the Parties' stipulation dated June 23, 2021, and the Court's order approving the same dated June 25, 2021.

10             Defendant objects to this Request to the extent it seeks trade secrets or other confidential or proprietary research, development, commercial, or

11  business information. Defendant will produce such information, if requested and not otherwise objectionable, subject to a protective order.

12             Defendant objects to this Request as unreasonably duplicative of Harper's Request for Production Nos. 23, 24, 25, 26, 30, 67, and 74.

13  Defendant incorporates by reference all its responses and objections to those requests as if set forth herein.

14

15  In response to RFP No. 81, Charter added:

16             Defendant objects to this Request to the extent it seeks information protected from discovery under the attorney–client privilege, the work

17  product doctrine, and/or any other privilege recognized under the law. Defendant will not produce such information.

18             Defendant objects to this Request as overly broad, unduly burdensome, irrelevant, immaterial, and disproportional to the needs of this

19  case. This Request is particularly objectionable to the extent it purports to require Defendant to search for, collect, and produce every scrap of

20  information that might relate to changes to training materials, no matter how remote or immaterial its connection to any claim or defense in this action.

21  This Request is also harassing and unduly burdensome given that all versions of the relevant training materials, which reflect all changes to same during

22  the relevant period, have been produced in this litigation.
           Subject to and without waiving its General and Specific Objections,

23  Defendant states that it is unable to determine whether it is withholding any documents based on its objections because of the absurd overbreadth of this

24  Request.

25  In response to RFP No. 82, Charter added:

26             Defendant objects to this Request because it is overly broad, unduly burdensome, and seeks information that is irrelevant and immaterial to the

27  subject matter of the pending litigation and disproportional to the needs of the case. This Request is particularly objectionable because it is overbroad as

28  to subject matter in that it seeks documents related to "any training"

regardless of whether the training may be pertinent to Plaintiffs' claims or Defendant's defenses. For example, training provided to the subject individuals on Defendant's anti-discrimination or anti-harassment policies has absolutely no bearing on any issue in this case.

Subject to and without waiving its General and Specific Objections, Defendant states that it has already produced all relevant documents responsive to this Request related to training of Account Executives, Direct Sales Representatives, and/or Multi-Tenant Sales Representatives. Defendant is withholding irrelevant documents based on its objections that are unrelated to Account Executive, Direct Sales Representative, and/or Multi-Tenant Sales Representative training.

The Court finds that, as currently framed, RFP Nos. 81 and 82 are overbroad because they present Charter with the untenable demand of seeking out every scrap of paper that makes reference to a potentially responsive document. Nonetheless, after discussion with counsel at the hearing, it is clear that counsel have reached a mutual understanding of what is being requested. In the spirit of cooperation the Court expects, Charter's counsel stated that was no need for Plaintiffs to re-serve narrower versions of RFP Nos. 81 and 82.

Based on these representations, the Court will grant the motion to compel as to RFP Nos. 81 and 82. Charter is expected to continue and complete its search for responsive documents and to produce such documents or provide a clear unequivocal statement that there are no responsive documents. This order will be without prejudice to Plaintiffs' ability to seek further detail by way of tailored discovery requests.

v.    <u>RFP Nos. 84 and 86</u>

Plaintiffs Harper's requests are as follows:

RFP No. 84:    Each DOCUMENT related to rest or meal breaks during "New Hire" training that YOU have sent to or received from persons who have conducted or facilitated "New Hire" training for the Account Executive, Direct Sales Representative, and Multi-Tenant Sales Representative positions.

For avoidance of doubt and without limitation, this request seeks emails, text messages, memoranda, or other written or electronic communications and recordings sent to, received from, or concerning any rest or meal breaks facilitators and trainers are asked or expected to provide to participants in New Hire training Week 1 and/or Week 2.

/ / /

/ / /

13

RFP No. 86:   Each DOCUMENT related to rest or meal breaks during "New Hire" training that YOU have sent to or received from persons who supervise or manage the participants in the "New Hire" training for the Account Executive, Direct Sales Representative, and Multi-Tenant Sales Representative positions.

For avoidance of doubt and without limitation, this request seeks emails, text messages, memoranda, or other written and electronic communications and recordings sent to, received from, or concerning the daily or weekly schedules for New Hire training Week 1 and/or Week 2 participants, including but not limited to ride-along, shadowing, or field days.

Neither of these requests was addressed in the Court's prior discovery orders. As to both, Plaintiffs have provided the Court with Charter's response, dated October 1, 2021. For both requests, Charter responded as follows:

Defendant objects to this Request to the extent it is served in violation of Plaintiff's obligation to arbitrate his claims against Defendant pursuant to a valid, enforceable arbitration agreement. Defendant responds to this Request without prejudice to its right to compel Plaintiff to arbitrate his claims pursuant to the Parties' stipulation dated June 23, 2021, and the Court's order approving the same dated June 25, 2021.

Defendant objects to this Request to the extent it seeks information protected from discovery under the attorney–client privilege, the work product doctrine, and/or any other privilege recognized under the law. Defendant will not produce such information.

Defendant objects to this Request to the extent it seeks trade secrets or other confidential or proprietary research, development, commercial, or business information. Defendant will produce such information, if requested and not otherwise objectionable, subject to a protective order.

Defendant objects to this Request as unreasonably duplicative of Harper's Request for Production Nos. 23, 24, 25, 26, 30, 67, and 74. Defendant incorporates by reference all its responses and objections to those requests as if set forth herein.

In response to RFP No. 82, Charter added:

Defendant objects to this Request on the grounds that it is overly broad, unduly burdensome, seeks information that is irrelevant and immaterial to the subject matter of the pending litigation, and is disproportionate to the needs of the case. This Request is particularly objectionable because it lacks a temporal limitation. This Request is also objectionable to the extent it seeks documents related to meal breaks and rest breaks that are not associated with training of Account Executives, Direct Sales Representatives, and/or Multi-Tenant Sales Representatives.

Subject to and without waiving its General and Specific Objections, Defendant states that it has already produced all documents responsive to this Request. Defendant is not withholding any documents responsive to this

14

1    Request based on its objections.

2  In response to RFP No. 86, Charter added:

3             Defendant objects to this Request on the grounds that it is overly
      broad, unduly burdensome, seeks information that is irrelevant and
4      immaterial to the subject matter of the pending litigation, and is
      disproportionate to the needs of the case. This Request is particularly
5      objectionable because it lacks a temporal limitation. This Request is also
      objectionable because it purports to require Defendant to search for, collect,
6      review, and produce every scrap of information sent to or received from
      every supervisor or manager regarding every meal or rest break taken by
7      every putative class member during new hire training for an infinite period of
      time.
8             Subject to and without waiving its General and Specific Objections,
      Defendant states that it has already produced relevant documents reflecting
9      meal and rest breaks provided to putative class members after a reasonable
      diligent search. Defendant is not aware of whether it is withholding any other
10     documents based on its objections because of the absurd overbreadth of this
      Request.

11

12    Before discussion with counsel at the hearing, the Court was troubled by the

13  breadth of the categories of Charter employees potentially encompassed by the requests.

14  Counsel, however, both confirmed their mutual understanding of these requests as seeking

15  information related just to the three specific categories of employees mentioned – Account

16  Executive, Direct Sales Representative, Direct Sales Representative, and Multi-Tenant Sales

17  Representative.  Counsel further confirmed their mutual understanding of the definitions of these

18  three positions and the employees encompassed.  Further demonstrating the expected level of

19  civility and cooperation, counsel agreed that RFP Nos. 84 and 86 substantially overlap and that

20  Charter's counsel would work with Plaintiffs' counsel on creating search parameters which will

21  allow Charter to identify and produce documents responsive to both requests.  The Court will so

22  order and grant Plaintiffs' motion to compel as to RFP Nos. 84 and 86.

23                    vi.      RFP No. 87

24    Plaintiff Harper requests:

25    RFP No. 87:   Each DOCUMENT related to YOU tracking participant
                    attendance in "New Hire" training for the Account
26                  Executive, Direct Sales Representative, and Multi-Tenant
                    Sales Representative positions.

27

28  / / /

                                    15

1
2
3

> For avoidance of doubt and without limitation, this request seeks the actual attendance records and any emails, text messages, memoranda, or other written or electronic communications and recordings related to participant attendance in New Hire training Week 1 and/or Week 2.

4      This request has not been the subject of any prior order.  Plaintiffs have provided

5  Charter's October 1, 2021, response as follows:

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

> Defendant objects to this Request to the extent it is served in violation of Plaintiff's obligation to arbitrate his claims against Defendant pursuant to a valid, enforceable arbitration agreement. Defendant responds to this Request without prejudice to its right to compel Plaintiff to arbitrate his claims pursuant to the Parties' stipulation dated June 23, 2021, and the Court's order approving the same dated June 25, 2021.
>   Defendant objects to this Request to the extent it seeks information protected from discovery under the attorney–client privilege, the work product doctrine, and/or any other privilege recognized under the law. Defendant will not produce such information.
>   Defendant objects to this Request to the extent it seeks trade secrets or other confidential or proprietary research, development, commercial, or business information. Defendant will produce such information, if requested and not otherwise objectionable, subject to a protective order.
>   Defendant objects to this Request on the grounds that it is overly broad, unduly burdensome, seeks information that is irrelevant and immaterial to the subject matter of the pending litigation, and is disproportionate to the needs of the case. This Request is particularly objectionable because it lacks a temporal limitation. This Request is also objectionable because Defendant has already produced training transcripts for a 2% sample of the class.
>   Defendant objects to this Request as unreasonably duplicative of Harper's Request for Production Nos. 23, 24, 25, 26, 30, 67, and 74. Defendant incorporates by reference all its responses and objections to those requests as if set forth herein.
>   Subject to and without waiving its General and Specific Objections, Defendant states that it has already produced all documents responsive to this Request falling within the 2% sampling to which the parties agreed. Defendant is not withholding any documents from within that sample based on its objections.

22      At the hearing, Plaintiffs' counsel conceded that the information sought in RFP

23  No. 87 is already embraced in the more comprehensive RFP No. 30.  As discussed above, the

24  Court expects an appropriate supplemental response to RFP No. 30.  The Court will sustain

25  Charter's objection that RFP No. 87 is duplicative and deny Plaintiffs' motion to compel as to

26  this request.  This ruling, however, will be without prejudice to Plaintiffs' ability to serve further

27  requests should production of documents responsive to RFP No. 30 be inadequate.

28  ///

1                        vii.    <u>RFP No. 100</u>

2        Plaintiff Harper requests:

3        RFP No. 100:  All DOCUMENTS related to any communication YOU
had on or after September 14, 2018, with any of YOUR
4                    current or former employees, officers, agents, or
representatives related to the preservation or collection of
5                    documents or electronically stored information potentially
related to any of the allegations and claims in the
6                    September 14, 2018, PAGA Notice and/or this lawsuit.

7                    For avoidance of doubt and without limitation, this request
seeks all litigation hold-related communications and
8                    records, and all document collection-related
communications and records in Charter's possession,
9                    custody, or control. Excluded from this request are any
communication that was sent directly to Plaintiffs or their
10                   counsel.

11        This request has not been the subject of any prior order.  Plaintiffs have provided

12 Charter's January 24, 2024, response as follows:

13          Defendant objects to this Request to the extent it seeks information
protected from discovery under the attorney–client privilege, the work
14 product doctrine, Federal Rule of Civil Procedure 26, and/or any other
privilege recognized under the law. Defendant will not produce such
15 information.
         Defendant objects to this Request as overly broad, unduly
16 burdensome, irrelevant, immaterial, harassing, and disproportional to the
needs of this case. This Request is particularly objectionable to the extent it
17 seeks every communication with Charter employees, internally or otherwise,
about anything that might potentially be "related" to the collection and
18 preservation of documents and ESI, no matter how remote or immaterial its
connection to the claims, defenses and allegations in this litigation.
19          Defendant objects to this Request to the extent it seeks trade secrets
or other confidential or proprietary research, development, commercial, or
20 business information.
         Defendant is withholding documents based upon its objections,
21 including documents protected from disclosure by the attorney-client
privilege and work product doctrine, all of which were created after the
22 inception of this litigation.

23        Asked at the hearing about the absence of privilege logs supporting Charter's

24 objections, counsel informed the Court that the parties' practice by agreement in this case was not

25 to require privilege logs as to documents created after the case was filed.  Counsel also confirmed

26 that this request for production relates to Charter's litigation-hold materials.  Charter's counsel

27 stated that Charter could produce a privilege log of litigation-hold materials.  The Court will so

28 order and further direct that the privilege log and related documents be provided to the Court for

1    in camera review.  Should the documents to be submitted for in camera review encompass a large

2    volume of documents (thousands of pages or more), Charter's counsel is directed to contact the

3    Court's chambers for further direction.  On the assumption that a large volume of documents will

4    not be involved, the Court will set a date for submission of documents for in camera review.

5    Following submission, the Court will rule on Plaintiffs' motion to compel as to RFP No. 100.

6                           viii.    RFP No. 102

7              Plaintiff Harper requests:

8              RFP No. 102:  All DOCUMENTS related to YOUR review of the
                            questionnaire responses referred to in the Carr Declaration
9                           dated March 28, 2022, including YOUR communications
                            regarding the responses, analysis of each of the responses,
10                          and preparation of a related spreadsheet.

11                          For avoidance of doubt and without, this request seeks all
                            documents (including all drafts and emails) related to
12                          "Charter's analysis" of the questionnaire responses,
                            including its interpretation and categorization of each of the
13                          responses, its methodology in reviewing the responses and
                            determining percentages, and its interpretations and
14                          conclusions. *See* Dkts. 299, 299-1, 299-2, and 299-3.

15             This request has not been the subject of any prior order.  Plaintiffs have provided

16   Charter's January 24, 2024, response as follows:

17                  Defendant objects to this Request to the extent it seeks information
                 protected from discovery under the attorney–client privilege, the work
18               product doctrine, Federal Rule of Civil Procedure 26, and/or any other
                 privilege recognized under the law. This Request is particularly objectionable
19               because it seeks attorney–client privileged communications between
                 Defendant and its attorneys, and it seeks privileged attorney work product in
20               the form of drafts and emails between Defendant's attorneys. Defendant will
                 not produce such information.
21                  Defendant is withholding documents protected from disclosure by the
                 attorney-client privilege and work product doctrine, all of which were
22               created after the inception of this litigation.

23             At the hearing, Charter's counsel represented that the only responsive document is

24   prior counsel's spreadsheet, a document already in the possession of Plaintiff.  If that is the case,

25   Charter will be required to so state unequivocally and without objection in a supplemental

26   response.  Charter will be held to this representation.  Plaintiffs' motion to compel will be granted

27   as to RFP No. 102.

28   ///

                                          18

2.      Interrogatories

At issue are Plaintiff Sinclair's Interrogatory (Rog.) Nos. 6-8.  Plaintiff Sinclair asks the following questions:

> Rog. No. 6      Describe the training program(s) for each position YOU identified in connection with Interrogatory 4. For purposes of this interrogatory, "Describe" means to identify who provided the training; what the training involved; whether the training was mandatory or voluntary; when training occurred and for how long; and where the training occurred.

> Rog. No. 7      If YOU contend that any part of the training program(s) described in connection with Interrogatory 6 involved both "outside" and "sales" activities, explain the factual and legal basis for YOUR contention.

> Rog. No. 8      If YOU contend that any part of the training program(s) described in connection with Interrogatory 6 involved both "outside" and "sales" activities, explain the factual and legal basis for YOUR contention.

These interrogatories were addressed in the Court's October 21, 2020, order. Plaintiffs have provided Charter's November 2, 2020, supplemental responses in which, as to each interrogatory, Charter stated that it would produce sampling data pursuant to the October 2020 order.

At the hearing, the parties agreed that the information sought by these interrogatories is subsumed in the information sought by way of the RFPs discussed above. Based on this representation, and the Court's orders regarding RFPs, Plaintiffs' motion to compel will be denied as to Interrogatories 6-8.

## B.      Motion for Discovery Sanctions

Plaintiffs contend that Charter has concealed and destroyed thousands of records that are relevant to their misclassification-based claims (Counts 1-4, 6, 7, 9, and 10) and that Charter has violated prior discovery orders and made misrepresentations to avoid or delay discovery.  See ECF No. 355, pg. 2.  Plaintiffs seek primarily a default judgment sanction on these claims.  See id.  Alternatively, Plaintiffs seek less severe sanctions under Federal Rule of Civil Procedure 37 as follows: (1) nine separate issue sanctions in which certain matters are deemed established; (2) evidence preclusion sanctions; (3) mandatory adverse inference

19

1   sanctions; and (4) monetary sanctions.

2          The Court first addresses Plaintiffs' requests to seal documents in connection with

3   the motion for discovery sanctions.  See ECF Nos. 356 and 368.  Plaintiffs seek to have Exhibit 5

4   to the Soderstrom declaration at ECF No. 355-2 and Exhibit 2 to the Soderstrom declaration at

5   ECF No. 367-1 filed under seal.  See ECF Nos. 356 and 368.  These declarations were filed in

6   support of Plaintiffs' motion for discovery sanctions.  Redacted versions of both exhibits have

7   been filed on the public docket and unredacted versions have been submitted to the Court.

8   According to Plaintiffs, these exhibits should be ordered filed under seal because both were

9   designated as confidential by Charter pursuant to the parties' stipulated protective order.  See id.

10          Plaintiffs' requests will be denied.  A confidentiality agreement between the

11   parties does not per se constitute a compelling reason to seal documents.  See ECF No. 364

12   (District Judge order).  Beyond citing to the protective order, Plaintiffs' have not demonstrated a

13   need to seal these documents.  The public docket contains only redacted versions of these

14   documents.  Thus, the documents are not available to the public even in the absence of a sealing

15   order.

16          Turning to the substance of Plaintiffs' motion, Plaintiffs contend that discovery

17   sanctions under Rule 37 are warranted "based on Charter's failures to comply with the discovery

18   rules, violations of the Court's orders and parties' agreements, and destruction of thousands of

19   relevant and responsive documents and electronically stored information (collectively,

20   'records')."  ECF No. 355, pg. 11.  According to Plaintiffs:

21          Charter never raised any preservation issues with Plaintiffs or the
     Court during years of discovery and motion practice. Instead, Charter
22   repeatedly represented to Plaintiffs and the Court that it had complied with
     all of its discovery obligations and produced "all" relevant and responsive
23   records related to Direct Sales Employees' meal periods, rest breaks, hours
     worked, and training. [footnote 1 defining the term "Direct Sales Employees"
24   omitted].  Whenever Plaintiffs expressed skepticism and sought more
     information about Charter's training-related records, Charter denied any
25   misconduct and accused Plaintiffs of speculation, fishing expeditions, and
     harassment. Plaintiffs' skepticism was justified.
26          In 2023, Plaintiffs learned that Charter concealed and destroyed five
     categories of relevant and responsive records: (1) audio/video recordings of
27   the virtual classroom training sessions that Charter conducts for new hire
     Direct Sales Employees; (2) scheduling emails that Charter's
28   training facilitators send to the participants in its virtual classroom training

20

sessions; (3) new hire training schedules and kits that Charter gives to Direct Sales Employees for their training weeks; (4) "playbooks" that Charter uses for the ride-along portion of new hire training; and (5) training agendas that Charter uses for the non-classroom portion of new hire training. The records that Charter concealed and destroyed were common, objective evidence that showed what actually happens during new hire Direct Sales Employees' training weeks. The destroyed records would have proved Plaintiffs' misclassification-based claims and defeated Charter's class certification and merits defenses.

Id.

Plaintiffs claim the following violation of Charter's duty to preserve records: (1) Charter destroyed thousands of audio/video recordings of training sessions: (2) Charter destroyed thousands of standardized scheduling emails; (3) Charter destroyed thousands of new-hire training schedules; (4) Charter destroyed multiple playbooks used for ride-along training; and (5) Charter destroyed hundreds of training agendas.  See ECF No. 355, pgs. 15-20.

With respect to training sessions, Plaintiffs state that Charter's Director of Training and Development, Lynda Arnold, testified in June 2023 that, since 2014, Charter has required its training facilitators to collect all of Charter's training-related records, including audio/visual records, and to provide those record to Charter's counsel.  See id. at 15.  According to Plaintiffs, these records are relevant to Harper's Request for Production Nos. 10-13, 17, and 30, and Sinclair's Interrogatory Nos. 6-8.  See id. at 15-16.  Plaintiffs maintain that, despite their relevance to these requests for production, documents created since 2018 have not been produced:

Charter has not produced any of the audio/video recordings that were created since 2018. Soderstrom Decl. ¶ 5. Charter has never disputed that the recordings were destroyed, and it has never stated that any of them can be recovered or replaced. Id. Plaintiffs estimate that Charter has destroyed over 2,000 recordings since 2018. Id.

ECF No. 355, pg. 16.

Plaintiffs conclude that, because Charter required collection of these materials since 2014, and no such records since 2018 have been produced, Charter must have destroyed them.

As to scheduling emails, Plaintiffs state that Ms. Arnold testified in March 2023 that classroom training sessions were not permitted to extend beyond four hours without permission, and that she was not aware of ever providing permissions for extended training sessions.  See id. at 16.  Plaintiffs maintain that, contradicting this testimony, Plaintiffs are in

21

1   possession of various emails from June 2018 showing a training facilitator scheduling classroom

2   training for as many as 5.5 hours.  See id.  Ms. Arnold testified that she had never seen those

3   emails.  See id.  Then, in June 2023, Ms. Arnold testified that facilitators used template emails,

4   that she was familiar with these templates and approved them, and that facilitators were

5   responsible for sending these emails.  See id.  When asked about scheduling emails from

6   December 2019 showing that facilitators were telling trainees that classroom training would last

7   five or more hours on some days, Ms. Arnold stated that she was not aware of those emails.  See

8   id.  Plaintiffs contend the scheduling emails are responsive to Harper's Request for Production

9   Nos. 17 and 30.  Plaintiffs maintain that, as with the records concerning training sessions, Charter

10  has not produced any of the scheduling emails sent by its facilitators since 2019 even though they

11  are responsive to discovery requests.  See id. at 17.  Again, Plaintiffs conclude that these emails

12  must have been destroyed.  See id.

13        Regarding training schedules, Plaintiffs state that Director of Residential

14  Connectivity Raul Salcedo testified in March 2023 that some of the training schedule content had

15  changed since 2018 and that "the one that we have now is electronically provided" rather than

16  printed out.  See id. at 17.  Plaintiffs maintain that the training schedules are responsive to Harper

17  Request for Production Nos. 10-13, 17, and 30.  See id. at 18.  Nonetheless, Plaintiffs have never

18  received any of the new training schedules.  See id.  Again, Plaintiffs conclude that, based on

19  non-receipt, Charter must have destroyed these records.  See id.

20        As to playbooks, Plaintiffs state that Ms. Arnold testified in March 2023 that she

21  assumed a corporate curriculum manager was responsible for playbooks for training ride-alongs.

22  See id. at 18-19. Also in March 2023, Mr. Salcedo testified that Charter gives new hires ride-

23  along playbooks in additional classroom training workbooks.  See id. at 19.  Mr. Salcedo later

24  testified in June 2023 that playbooks are corporate documents.  See id.  According to Plaintiffs,

25  the playbooks are responsive to Harper's Request for Production No. 30, and Sinclair

26  Interrogatory Nos. 6-8.  See id.  Plaintiffs state that the only ride-along playbook they have ever

27  received is the October 2019 version.  See id.  Again, Plaintiffs assume that, because it has not

28  received other playbooks despite testimony from Ms. Arnold and Mr. Salcedo that they exist,

1    Charter must have destroyed them.  See id.

2         Finally, Plaintiffs claims that Charter destroyed materials related to training

3    agendas.  Plaintiffs state that Mr. Salcedo testified in June 2023 that Charter's sales leadership

4    provided "agendas" to new hire trainees for their non-classroom training.  See id.  Plaintiffs state

5    the training agendas are responsive to Harper's Request for Production Nos. 17 and 30 but that

6    Charter has never produced any training agendas.  See id. at 20.  As with the other categories of

7    supposedly destroyed evidence, Plaintiffs conclude that documents not produced must have been

8    destroyed.  See id.

9         In additional to the assertions above concerning spoliation of evidence, Plaintiff

10   assert: (1) Charter served non-compliant initial disclosures under Federal Rule of Civil Procedure

11   26; (2) Charter violated the Court's February 26, 2020, October 21, 2020, and May 5, 2021,

12   orders; (3) Charter violated various orders concerning production of sampling data; and (4)

13   Charter has made numerous misrepresentations and omissions to avoid or delay discovery.

14        Regarding initial disclosures, Plaintiffs contend that Charter's initial Rule 26

15   disclosures from November 2019 listed only one employee whom Charter knew possessed

16   relevant knowledge about the case.  See id. at 20.  Plaintiffs also state that Charter did not provide

17   documents it knew at the time were relevant, instead producing only "generic categories of

18   relevant documents."  Id.  Nonetheless, Plaintiffs maintain that Charter must have known of other

19   potential witnesses because it obtained their declarations.  See id. at n.5.  Plaintiffs accuse Charter

20   of using its inadequate Rule 26 disclosures to conceal the identities of employees who had

21   relevant knowledge about meal periods, rest breaks, hours worked, and training.  See id. at 21.

22   Notably, Charter has never supplemented its initial Rule 26 disclosures.  See id.

23        As to the Court's February 26, 2020, order denying Charter's motion to strike

24   PAGA claims, Plaintiffs contend:

25        Charter's gamesmanship continued in 2020. On February 26, 2020,
     the Court denied Charter's motion to strike the class and representative
26   PAGA claims and instructed the parties to "proceed through discovery and
     the class certification process" because "manageability issues are better
27   addressed after discovery has concluded and class certification is
     determined." Dkt. 56 at 12.
28

23

1

2

3

> Charter immediately violated the order. Instead of proceeding through class and representative PAGA discovery, Charter refused to engage in *any* class or representative PAGA discovery and forced Plaintiffs to file multiple motions to compel. Dkt. 47; Dkt. 57; Dkt. 62; Dkt. 76; Dkt. 78; Dkt. 84.

4

ECF No. 355, pg. 21.

5

Next, with respect to the Court's October 21, 2020, order, Plaintiffs contend that

6

Charter violated the October 21, 2020, order.  See ECF No. 355, pgs. 21-22.  According to

7

Plaintiffs:

8

9

10

11

12

13

14

15

16

> Charter immediately violated the order. It did not serve new supplemental responses to RFPs 10–13 or 17. Dkt. 118–2 at 12–30 (Nov. 2, 2020, RFP Supp. Responses). Its supplemental response to RFP 30 stated that future productions would be "[s]ubject to and without waiving the foregoing objections," all of which had been overruled. *Id.* at 27. Instead of responding substantively to Interrogatories 6–8, it agreed to "produce a 10% sampling of documents related to training Charter conducts or has conducted for [Direct Sales Employees]." Dkt. 118–2 at 53–56 (Nov. 2, 2020, Rog. Supp. Responses). But it did not reveal that it was withholding any responsive records or limiting its search for responsive records. Fed. R. Civ. P. 37(a)(4) ("an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond"). It did not produce *any* records on a rolling basis, and it did not produce *any* records responsive to RFPs 10–13 or 17. Soderstrom Decl. ¶ 12. It finally produced some non-sampling records (but no sampling records) on the December 10, 2020, deadline, and delayed producing additional responsive records for several more months. *Id.*

17

ECF No. 355, pg. 22.

18

As to the Court's May 5, 2021, order, Plaintiffs state that some records were

19

produced in May and September 2021 pursuant to this order.  See ECF No. 355, pg. 23.  Plaintiffs

20

add:

21

22

23

24

> Charter produced more training-related records in May and September 2021, including records that were dated from 2020 and earlier, thereby proving that its representations about having already produced "all" responsive records were false. Soderstrom Decl. ¶ 13. Charter also continued concealing and destroying audio/video recordings, scheduling emails, training schedules, ride-along playbooks, and training agendas in violation of both the October 21, 2020, order and the May 5, 2021 order.

25

ECF No. 355, pg. 23.

26

/ / /

27

/ / /

28

/ / /

24

1     Next, as to production of sampling data, Plaintiffs contend Charter has violated

2 numerous orders directing charter to provide records representing a sampling of documents in

3 various categories, including offer letters, training transcripts, wage statements, commission

4 statements, commission plan acknowledgement data, signed plan documents, arbitration-related

5 records, disposition reports, "knock reports," and leads lists.  See ECF No. 355, pgs. 23-24 (citing

6 ECF Nos. 112, 133, and 307-1).  By way of reference, ECF No. 112 is the parties' February 17,

7 2021, stipulation which was adopted in the May 5, 2021, order; ECF No. 133 is the May 5, 2021,

8 order; and ECF No. 307-1 is Charter's counsel's September 15, 2022, declaration in support of

9 Charter's ex parte application to extend discovery production deadlines.

10     A review of the docket reflects numerous extensions of the deadline to produce

11 sampling data.  The most recent extension was approved by the District Judge on September 16,

12 2022.  See ECF No. 309.  The District Judge extended the deadline to comply with the Court's

13 orders requiring Charter to complete its production of additional sampling documents and

14 electronically stored information "until the earlier of: (1) 14 days after the Court grants plaintiff

15 Sinclair's Renewed Motion for Class Certification, if at all; (2) 14 days after the Court denies

16 Charter's forthcoming motion to stay the PAGA claim pending appeal, if at all; or (3) 14 days

17 after the Ninth Circuit issues its mandate affirming this Court's order denying Charter's Motion

18 to Compel Arbitration of Harper's PAGA claim and dismiss count ten, if at all."  Id.

19     Also on September 16, 2022, the District Judge issued a separate order reimposing

20 a stay of all proceedings pending resolution of Charter's interlocutory appeal from the order

21 denying Charter's motion to compel arbitration.  See ECF No. 311.  On October 3, 2023, the

22 Ninth Circuit issued a memorandum disposition affirming the District Judge's denial of Charter's

23 motion to compel arbitration.  See ECF No. 333.  The mandate was issued on this Court's docket

24 on October 25, 2023.  See ECF No. 342.  On December 14, 2023, the District Judge lifted the

25 stay, triggering the 14-day deadline for completion of production of sampling data.  See ECF No.

26 350.

27 / / /

28 / / /

Against this backdrop, Plaintiffs argue in the current motion for discovery sanctions that Charter has violated the November 15, 2021, order.  See ECF No. 355, pg. 24. According to Plaintiffs:

> On November 15, 2021, the Court again ordered Charter to "provide the data for the 10% sample *on a rolling basis as soon as it becomes available*," and to "*complete* its production" by January 14, 2022. Dkt. 213 at 3 (emphasis added). Charter also violated this order by failing to produce *any* records on a rolling basis even though it had compiled the commission plan acknowledgement data by November 9, 2021, the offer letters by November 19, 2021, the training transcripts by November 22, 2021, and the wage statements by December 7, 2021 (probably earlier). Soderstrom Decl. ¶ 14, Ex. 11. For weeks, Charter simply sat on thousands of records that were available to be produced. *Id.*

ECF No. 355, pg. 24.

Plaintiffs also contend Charter has violated the September 16, 2022, order:

> On December 28, 2023, Charter violated yet another court order concerning the additional 10% sampling. Dkt. 309. On the deadline, it produced the offer letters, training transcripts, wage statements, and some of the commission statements/data that it had collected and then refused to produce two years earlier. *Id.* ¶ 15. But it failed to produce the additional sampling of commission plan acknowledgment data, physically signed commission plan documents and receipts, arbitration-related records and data, disposition reports, knock reports, and leads lists. *Id.* Charter did not seek an extension of the deadline before failing to include those records in its production. *Id.* Almost a month later during the week of January 22, 2024, Charter finally produced the additional sampling of commission plan acknowledgment data, disposition reports, knock reports, and leads lists it had collected in 2021. *Id.*

ECF No. 355, pg. 24.

Finally, Plaintiffs contend Charter's counsel have made numerous misrepresentations and omissions to delay and avoid discovery. See id. at 24-25.  First, Plaintiffs complain about misrepresentations allegedly made by Charter's former counsel:

> Early in discovery, Charter misrepresented that the only responsive training-related records were training transcripts; training modules; classroom training workbooks, guidebooks, and PowerPoint presentations; and customer leads lists and disposition reports. *Id.* ¶ 16. Charter also misrepresented that the only responsive records related to Direct Sales Employees' meal periods, rest breaks, and hours worked were the training workbooks, several PowerPoint slides, and wage statements that automatically recorded the equivalent of 40 hours of work per week. *Id.* Each time Plaintiffs pressed for more information about the existence of other potentially relevant and responsive records, Charter misrepresented that it had performed diligent searches, collected and produced "all" responsive

26

records, and stated that no other responsive records existed. *See, e.g., id.* ¶ 17, Ex. 12.

ECF No. 355, pgs. 24-25.

Plaintiffs also complain of continuing misrepresentations in 2024:

> Charter's misrepresentations and delays have continued in 2024. After the Court lifted the stay, Charter agreed to (1) produce an updated class list by January 22; (2) produce supplemental sampling records starting on January 22 to be completed by February 12; (3) produce supplemental non-sampling records starting on January 22 to be completed by February 12; (4) produce certain class member declarant records starting on January 22 to be completed by February 12; (5) respond to the preservation letter by January 22; and (6) notify Plaintiffs in writing by January 15 if it could not meet any of these deadlines. Soderstrom Decl. ¶ 18, Ex. 13. This agreement served as the basis for the proposed case schedule, which the Court has adopted. Dkt. 351; Dkt. 352.
> Charter immediately violated its agreement. It did not notify Plaintiffs by January 15 that it could not meet the agreed deadlines. Soderstrom Decl. ¶ 18. It did not produce an updated class list or updated position histories by January 22. *Id.* It did not start a rolling production of several categories of documents by January 22. *Id.* And it did not respond to Plaintiffs' preservation letter by January 22. *Id.* Even with court orders and detailed agreements, Plaintiffs cannot trust Charter to make truthful and accurate representations, or to comply with its basic discovery obligations and agreed deadlines.

ECF No. 355, pg. 25.

For a remedy, Plaintiffs seek various relief in the alternative as follows: (1) default judgment on its misclassification-based claims under Federal Rule of Civil Procedure 37(b); (2) issue sanctions under Rule 37(b); (3) preclusion sanctions under Rule 37(b); (4) mandatory adverse inference sanctions under Rule 37(b); (5) monetary sanctions under Rule 37(b); (6) evidence preclusion sanctions under Rule 37(c); and (7) sanctions under Rule 37(e) for spoliation of evidence.  See ECF No. 355, pgs. 25-40.

The Court finds that, at this point, Plaintiffs have not made a threshold showing of spoliation of evidence or other discovery abuses warranting the remedies sought.  The impetus for Plaintiffs' motion for discovery sanctions appears to be non-receipt of discovery which has been ordered by the Court and promised by Charter's counsel on numerous occasions, but which has not been forthcoming.  This is the subject of the companion motion to compel, discussed above, for which Plaintiff has, in large part, been granted relief.  While the Court is sympathetic to

1   Plaintiffs' frustration at obtaining discovery, the Court is not prepared at this time to recommend

2   the scope of severe sanctions requested, subject to Charter's expected compliance with this order

3   requiring production of documents.

4           The Court will therefore reserve any ruling on Plaintiffs' motion for discovery

5   sanctions until such time as Charter has complied with this order and Plaintiffs have received and

6   reviewed documents produced.  Should Plaintiffs continue to feel the need to seek discovery

7   sanctions following completion of this process, Plaintiffs will be required to file supplemental

8   briefing setting forth a more complete showing of spoliation and/or discovery misconduct, and

9   Charter will be required to provide a detailed point-by-point response.  To this end, and as

10  emphasized above, the Court expects Charter to be extremely clear in the supplemental responses

11  ordered here.  Charter is cautioned that sloppy or incomplete responses will re-open the door for

12  Plaintiffs' sanctions motion.  For now, the door is closed pending Charter's supplemental

13  responses.

14

15                      **IV.  CONCLUSION**

16          Accordingly, IT IS HEREBY ORDERED as follows:

17          1.     Plaintiffs' motion to compel, ECF No. 354, is GRANTED in part and

18  DENIED in part as explained below:

19                  a.     Plaintiffs' motion to compel is GRANTED as to Harper RFP Nos.

20                              10-13, 17, 30, 81, 82, 84, 86, and 102.

21                  b.     Plaintiffs' motion to compel is DENIED as to Harper RFP No. 87.

22                  c.     Plaintiffs' motion to compel is DENIED as to Sinclair Rog. Nos.

23                              6-8.

        2.     On or before close of business on February 23, 2024, Charter shall serve on

24  Plaintiff a privilege log relating to documents responsive to Harper RFP No. 100. In addition,

25  Charter is to submit to the Court for in camera review both the privilege log and the responsive

26  documents. On completion of the in camera review, the Court will issue a further ruling as to the

27  pending Motion to Compel as to Harper RFP No. 100.

28  / / /

1        3.      On or before close of business on March 20, 2024, Charter shall serve

2   supplemental responses to Harper RFP Nos. 10-13, 17, 30, 81, 82, 84, 86, and 102, and produce

3   documents responsive thereto.

4        4.      Plaintiffs' requests to seal documents, ECF Nos. 356 and 368, are

5   DENIED.

6        5.      This matter is set for a status conference before the undersigned on April

7   11, 2024, at 2:00 p.m. via Zoom to address the status of pending discovery.

8

9   Dated:  February 16, 2024

10   _____
    DENNIS M. COTA
11   UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28